### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Joint Administration Pending) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND
### FINAL ORDERS TO (I) CONTINUE EMPLOYEE BENEFITS
### PROGRAMS AND (II) GRANT RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion").

### RELIEF REQUESTED

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), authorizing the Debtors to continue employee compensation and benefits programs in the ordinary course. In addition, the Debtors request that the Court schedule a final hearing 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court to consider approval of this Motion on a final basis.

### JURISDICTION AND VENUE

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

the United States Bankruptcy Court for the District of Delaware (the "Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 1007, 2015.3(d), and 9006, and Local Rule 9013-1.

## BACKGROUND

5.      The Debtors, together with their non-debtor affiliates (collectively, "Bittrex"), operate cryptocurrency exchanges for both retail and institutional customers in several jurisdictions.   Bittrex, Inc. ("BUS"), a Georgia corporation, operates Bittrex's cryptocurrency exchange for U.S. customers, whereas two foreign non-debtor affiliates operate Bittrex's cryptocurrency exchange for non-U.S. customers.   The global Bittrex platform has approximately 1.55 million customers, including over 600,000 in the United States.

6.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* ("Hengel Declaration" or "First Day Declaration"), filed contemporaneously with this

Motion and incorporated by reference herein.[2]

7.     As described in more detail in the First Day Declaration, the Debtors commenced these Chapter 11 Cases for the purpose of allowing customer withdrawals, consistent with Bittrex's terms of service and applicable law, within an orderly wind down of Bittrex's U.S. and Malta operations.   Through these Chapter 11 Cases, the Debtors seek to complete the previously announced wind down of its U.S. business and implement the wind down of its Malta business, and accomplish, as soon as practicable, a comprehensive process that will: (a) maximize value for the Debtors' creditors and stakeholders; (b) maintain intact Bittrex's non-U.S. business operations (other than its Malta business) for the benefit of non-U.S. customers; and (c) fairly separate the non-U.S. operations.   Concurrent with the filing of this Motion, the Debtors have filed their proposed chapter 11 plan, which provides, among other things, that the Debtors' customers entitled to distributions will receive under the plan a 100 percent like-kind cryptocurrency distribution.  This means that with respect to customers, they will be entitled to access the Bittrex platform and withdraw cryptocurrencies consistent with the plan and with their allowed claims.  The Debtors do not intend to monetize cryptocurrencies reserved for like-kind distributions to holders of allowed customer claims, and any change in the value of such assets following the Petition Date would be borne by the Debtors' customers.

8.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**THE DEBTORS' WORKFORCE**

9.      Before the Petition Date, the Debtors employed approximately 96 individuals across the United States.  As a part of the orderly wind-down of the Debtors, many of those employees are now employed by Trexie Management, LLC ("Trexie") rather than the Debtors. Thus, as of the Petition Date, the Debtors only employed 13 individuals (each,  an "Employee" and collectively, the "Employees") on a full-time basis.   All of the Employees are salaried and exempt.  None of the Employees are represented by a union or collective bargaining unit.  The Debtors also appointed an independent director, Timothy Pohl, as an independent non-employee director (the "Independent Director").

10.      The Employees and the Independent Director perform functions critical to the wind-down of the Debtors' business operations.  The Employees and Independent Director include individuals with legal, compliance, finance,  executive, and other roles, who have institutional knowledge and who are intimately familiar with the Debtors' business.  Without the continued, uninterrupted services of their Employees and Independent Director, the Debtors' ability to conduct the orderly wind-down of their business and administer their estates will be substantially impaired and the estates could be severely and adversely affected.  Maintaining a properly-incentivized team is vital to completing an orderly wind-down of the Debtors' business, in order to maximize value for all of the Debtors' stakeholders.

11.      Moreover, the Employees rely exclusively on their compensation and benefits to pay their daily living expenses and to support their families.  These individuals could experience significant financial hardship were the Debtors not permitted to continue paying wages and salaries, providing employee benefits, and maintaining existing employee programs in the ordinary course of business. Accordingly, the Debtors respectfully submit that the relief requested herein is necessary and

appropriate under the facts and circumstances of these chapter 11 cases.

## EMPLOYEE COMPENSATION AND BENEFITS

12.     The Debtors believe that they do not have any Employee-related or Independent Director-related pre-petition obligations that are due and payable within the first 21 days of these bankruptcy cases.   However, the Debtors would like to ensure that they can continue their applicable pre-petition Wage Obligations, Withholding and Deductions Obligations, Reimbursable Expenses, Health and Welfare Coverage and Benefits, Workers' Compensation Programs, the 401(k) Retirement Savings Plan, Paid Leave, Non-Insider Severance Benefits, and certain other benefits that the Debtors have historically provided in the ordinary course (each as defined below, and collectively, the "Employee Compensation and Benefits").

13.     Subject to Court approval, the Debtors intend to continue their applicable pre-petition Employee Compensation and Benefits with respect to the Employees.   Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Employee Compensation and Benefits and/or to implement new programs, policies, and benefits in the ordinary course of business on a post-petition basis during these chapter 11 cases without the need for further Court approval, subject to applicable law.

14.     As of the Petition Date, the Debtors estimate that the total amount outstanding on account of the Employee Compensation and Benefits is approximately $0.

### I.    Employee Compensation

#### A.    Wage Obligations

15.    The Debtors pay Employees' wages, salaries, and other compensation (excluding bonuses, reimbursable expenses, severance, and paid leave) on a semimonthly basis in two-week arrears (collectively, the "Wage Obligations").  As of the Petition Date, the Debtors estimate that they owe approximately $0 in accrued and unpaid Wages (the "Unpaid Wages").  Out of an abundance of caution, the Debtors request authority to honor any pre-petition Wage Obligations as set forth below and to continue honoring the Wage Obligations on a post-petition basis in the ordinary course of business consistent with past practice.

#### B.    Independent Director Obligations

16.    The Debtors pay the Independent Director for his services as an independent director (the "Independent Director Obligations").  The Debtors pay the Independent Director $50,000 per month.  Continuing to pay the Independent Director is also critical to minimizing any disruptions to the Debtors' bankruptcy cases.  As of the Petition Date, the Debtors estimate that the Independent Director is owed $0.  Out of an abundance of caution, the Debtors request authority to continue honoring the Independent Director Obligations.

#### C.    Non-Employee Director Compensation (Final Order Only)

17.    The Debtors maintain several boards of directors, which include a total of nine non-Employee directors and one Employee director, Richie Lai, who is the chief executive officer of BUS (each, a "Director").  The Directors' fees are paid quarterly in arrears.  Directors are also entitled to expense reimbursement for reasonable out-of-pocket expenses in connection with travel and other business-related expenses arising from their Director duties (the "Director Compensation").

18.     The Debtors do not believe they owe any pre-petition amounts on account of the Director Compensation that will be payable in the first 21 days of these bankruptcy cases.

II.     **Withholdings, Deductions, and Payroll Processing**

        A.     **Withholding and Deduction Obligations**

19.     During each applicable payroll period, and subject to applicable law, the Debtors routinely deduct certain amounts from Employees' paychecks, including any garnishments, child support, or similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums (if applicable), 401(k) contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "Deductions").  The Debtors remit the Deductions to the appropriate third-party recipients.

20.     In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities.  The Debtors must also match the Employee Payroll Taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes," and the Payroll Taxes together with the Deductions, the "Withholding and Deduction Obligations").  The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities in accordance with remittance intervals and deadlines established by those taxing authorities.

21.     In the last twelve (12) months, the Debtors accumulated a monthly average of

approximately $260,000 on account of the Withholding and Deduction Obligations.  As of the Petition Date, the Debtors estimate that they owe approximately $0 on account of accrued but unpaid Withholding and Deduction Obligations.  Moreover, the Debtors believe that the Withholding and Deduction Obligations are not property of their estates.  However, out of an abundance of caution, the Debtors seek authority to remit the Withholding and Deduction Obligations to the respective third-party payees and to continue to honor and process the Withholding and Deduction Obligations on a post-petition basis in the ordinary course of business and consistent with past practices.

### B.    Payroll Processing Fees

22.    The Debtors contract with UKG (the "Wage and Benefit Service Provider") as a third-party payroll service provider to support payroll processing and other payroll-related services related to certain Withholding and Deduction Obligations for the Debtors' Employees.  Payroll is processed approximately five days before the pay date and the Wage and Benefit Service Provider pulls the funds from the Debtors' accounts five days before the pay date.  The Debtors paid the Wage and Benefit Service Provider approximately $10,000 per month on account of such payroll services before the transition of many of the employees to Trexie, which were paid on a quarterly basis, typically mid-quarter (the "Payroll Processing Fees").  The Debtors estimate that going forward, the Debtors will pay approximately $1,500 per month whereas Trexie will pay approximately $8,500 per month.  As of the Petition Date, the Debtors estimate that they owe the Wage and Benefit Service Provider approximately $0 on account of the Payroll Processing Fees. Failure to pay the Wage and Benefit Service Provider in the future could lead to a delay in payroll processing and delayed disbursement of payroll taxes to the appropriate third parties to the detriment of the Employees and the Debtors' operations. Accordingly, out of an abundance of

caution, the Debtors seek authority to remit to the Wage and Benefit Service Provider the Payroll Processing Fees and to continue administering payroll post-petition in the ordinary course of business and consistent with past practices.

## III.   Reimbursable Expenses and Corporate Cards

### A.   Reimbursable Expenses

23.     In the ordinary course of business, the Debtors pay or reimburse Employees for certain reasonable and customary approved expenses that such Employees incur in the scope of their employment (the "Reimbursable Expenses").  Reimbursable Expenses typically include travel expenses and associated costs such as the cost of Wi-Fi during travel or for business development.  Generally, Employees incur Reimbursable Expenses through the use of personal funds, and the Employee may be held personally liable for any unpaid obligations.  The Debtors' inability to reimburse such expenses would impose hardship on such individuals where the obligations were incurred for the Debtors' benefit.  Employees must provide a receipt for Reimbursable Expenses.

24.     Employees who pay for their own Reimbursable Expenses up front apply for reimbursement of such expenses by submitting receipts to payroll@bittrex.com.  Once the Debtors determine that the charges are for allowable Reimbursable Expenses and comply with the Debtors' policies and procedures, the Debtors typically reimburse such Employees for the Reimbursable Expenses.  The Debtors pay approximately $3,000-$5,000 each quarter for these reimbursements.  Once reimbursements are processed, they are paid through payroll on a nontaxable basis.

25.     Reimbursable Expenses are incurred by the Employees as business expenses on the Debtors' behalf and with the understanding that such expenses will be reimbursed or otherwise covered by the Debtors.  The Debtors' inability to reimburse the Reimbursable Expenses or pay

the Corporate Card would impose a hardship on the Employees where such individuals incurred obligations for the Debtors' benefit.

26.     As of the Petition Date, the Debtors estimate that they owe approximately $0 to Employees on account of Reimbursable Expenses.  However, out of an abundance of caution and to avoid harming Employees who incurred Reimbursable Expenses, the Debtors seek authority to satisfy any accrued but unpaid pre-petition Reimbursable Expenses and to continue to pay the Reimbursable Expenses on a post-petition basis in the ordinary course of business and consistent with past practices.

### B.     Corporate Cards

27.     In addition to Reimbursable Expenses, the Debtors have historically provided approximately seven senior level Employees with credit cards (the "Corporate Cards") issued by American Express to cover legitimate business expenses, including travel expenses and certain vendor payments, incurred in the ordinary course of business in connection with their employment (the "Corporate Card Program").[3]  The Debtors are not seeking relief with respect to the Corporate Card Program in this Motion.  Instead, they are seeking authority to continue the Corporate Card Program in the ordinary course in the Cash Management Motion.

### IV.    Health and Welfare Coverage and Benefits

28.     The Debtors offered their Employees the ability to participate in a number of health insurance and benefits programs, including, among other programs, medical, dental, and vision coverage plans; life and accident insurance; disability insurance; health savings account, health

---

[3]     The Corporate Card Program is further described in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-petition Intercompany Balances, and (III) Granting Related Relief* (the "Cash Management Motion") filed contemporaneously herewith.

reimbursement account, and flexible spending account programs, and other employee benefit plans.

29.     As part of the orderly wind-down of the Debtors' operations, they transitioned many of the policies appliable to insurance and benefits programs to Trexie, including policies with Cigna (medical, prescription, and dental coverage), Unum (short and long term disability coverage and life insurance), VSP (vision coverage), and ISolved (administrator of flexible savings accounts, health reimbursement arrangements, and COBRA coverage).  Trexie has not yet set up a bank account, and until it does, BUS will pay required payments, separately account for payments on accounts of the Debtors' Employees from the employees of other Bittrex entities, and submit payments relating to employees of other Bittrex entities to Trexie for reimbursement.  After Trexie sets up its bank account, Trexie will pay required payments, account for payments on account of the Debtors' Employees separately from the employees of other Bittrex entities, and submit payments relating to the Debtors' employees to the Debtors for reimbursement.  The Debtors are in the process of transitioning their policy with Allstate (long term care insurance) to Trexie, but as of the Petition Date, have not completed that transition. The programs described above are referred to collectively as the "Health and Welfare Coverage and Benefits."

30.     As of the Petition Date, the Debtors estimate they owe approximately $0, in the aggregate, on account of unpaid Health and Welfare Coverage and Benefits with respect to the Employees.  Failure to continue the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult to retain the workforce. Accordingly, out of an abundance of caution, the Debtors seek authority to pay any pre-petition amounts owed on account of the Health and Welfare Coverage and Benefits and to continue the Health and Welfare Coverage and Benefits on a post-petition basis in the ordinary course of

business and consistent with past practices.

## V.    Workers' Compensation Program

31.    The Debtors maintain workers' compensation insurance for Employees at the levels required by applicable laws in the states in which the Debtors operate (collectively, the "Workers' Compensation Program").    The Debtors maintain coverage for the Workers' Compensation Program through the Hartford.  All Employees participate in the Workers' Compensation Program and each Employee is insured up to approximately $1,000,000 per occurrence pursuant to the workers' compensation policy with the Harford.  The Debtors pay approximately $22,445 annually for maintaining the Workers' Compensation Program.

32.    The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities were outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[4]

33.    As of the Petition Date, there are no open claims under the Workers' Compensation Program and the Debtors estimate that they owe approximately $0 on account of the Workers' Compensation Program.  Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the chapter 11 process.  Thus, the Debtors request the authority to (a) continue the Workers' Compensation Program in the ordinary course of business on a post-petition basis, and (b) modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

---

[4]    The Debtors' Workers' Compensation Program may change post-petition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.

## VI.     The 401(k) Plans

34.     The Debtors offer their eligible Employees the opportunity to participate in the Bittrex Retirement Plan, a 401(k) retirement savings plan (the "401(k) Retirement Savings Plan") administered by Principal Financial ("Principal").  The 401(k) Retirement Savings Plan allows for Employees to set aside money for retirement by making pre-tax contributions to the 401(k) and/or after-tax contributions to a Roth 401(k) up to limits set by the Internal Revenue Code.  Each Employee's 401(k) contributions are deducted automatically from each paycheck.  The Debtors match the Employees' 401(k) Retirement Savings Plan dollar-for-dollar up to 3% of the Employee's compensation, followed by 50% of the next 2% of the Employee's compensation (the "401(k) Retirement Savings Plan Contributions").  The Employee's contributions are fully vested on the Employee's date of hire. In the last twelve (12) months, the Debtors' payments and disbursements on account of the 401(k) Retirement Savings Plan Contributions totaled approximately $912,685.10.

35.     Trexie intends to, but has not yet, set up its own 401(k) retirement savings plan. Until it can do so, and to avoid any adverse impact to employees, the Debtors seek authority to make all required payments, separately account for payments made for Debtors' employees from those relating to employees of other Bittrex entities, and submit the latter payments to Trexie for reimbursement.  As of the Petition Date, the Debtors estimate that there is $0 outstanding with respect to the 401(k) Retirement Savings Plan.  Out of an abundance of caution, the Debtors request authority to honor any pre-petition obligations on account of the 401(k) Retirement Savings Plan and to continue the 401(k) Retirement Savings Plan on a post-petition basis until the transition to Trexie is complete.

## VII.   Paid Leave

36.   The Debtors maintained several paid and unpaid leave benefit programs for their Employees, providing paid leave for their Unlimited FTO Policy, Holidays, and providing unpaid leave for Family and Medical Leave (each as defined below, and collectively, the "Paid and Unpaid Leave").

37.   The Debtors offer an unlimited flexible time off policy ("Unlimited FTO Policy") to the Employees.   Under the Unlimited FTO Policy, exempt employees are afforded the flexibility to take planned time off for vacation, sick, or personal reasons to the extent the Employee's supervisors or managers have approved such leave.   As the Debtors employ an Unlimited FTO Policy, there is no accrual of unused FTO and thus Employees will not receive compensation for "unused" vacation time should they stop working for the Debtors for any reason.

38.   In addition, the Debtors provide thirteen (13) paid holidays throughout the year, during which Employees are not required to work and are paid their base rate of pay (the "Holidays").   The Debtors also provide 14-20 weeks of paid family and/or medical leave for employees who have worked for a minimum of six months ("Family and Medical Leave").

39.   The Debtors believe that the continuation of the Unlimited FTO Policy in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases.   Further, the policies are broad-based programs upon which all Employees have come to depend.   The Debtors anticipate that their Employees will utilize any Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.   As a result, the Debtors seek authority to allow eligible Employees to use their Paid Leave post-petition in the ordinary course of business consistent with past practice.

**BASIS FOR RELIEF**

**I.      Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Obligations.**

40.      As discussed above, the Debtors do not believe that they owe any pre-petition amounts on account of the Employee Compensation and Benefits Obligations as of the Petition Date.  Out of an abundance of caution, the Debtors seek authority to pay pre-petition amounts due, and as applicable, only up to the priority caps set forth in Sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

**A.      Certain of the Employee Compensation and Benefits Are Entitled to Priority Treatment**

41.      Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).

**B.      Payment of Certain Employee Compensation and Benefits Is Required by Law**

42.      The Debtors, out of an abundance of caution, also seek authority to pay the Withholding and Deductions Obligations to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages.  Indeed, certain Withholding and Deduction Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).

Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that a state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between the debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding and Deduction Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding and Deduction Obligations to the proper parties in the ordinary course of business.

43.      Similarly, state laws require the Debtors to maintain the Workers' Compensation Programs.  If the Debtors fail to maintain the Workers' Compensation Programs, state laws may prohibit the Debtors from operating in those states.  Payment of all obligations related to the Workers' Compensation Programs is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

## II.    Payment of the Employee Compensation and Benefits Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity

44.      Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of pre-petition obligations in appropriate circumstances.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay pre-petition wages); *see also In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay pre-petition claims of suppliers who were potential lien claimants).  In authorizing payments of certain pre-petition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

45.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.*  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court specifically noted that satisfaction of pre-petition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

46.     Consistent with a debtor's fiduciary duties, courts have also authorized payment of pre-petition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of pre-petition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"); *see also In re James A. Phillips, Inc.*, 29 B.R. at 397 (considering section 363 in affirming decision allowing the debtor to pay pre-petition claims of suppliers who were potential lien claimants).  Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs*, 98 B.R. at 175.

47.     In addition, courts may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's

inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Under section 105(a), courts may authorize pre-plan payments of pre-petition obligations when essential to the continued operation of a debtor's business. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("The 'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of pre-petition obligations where such payments are critical to the debtor's reorganization."). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of pre-petition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See Ionosphere Clubs*, 98 B.R. at 176.

48.     As discussed above, the Debtors do not believe that any amounts are due on account of pre-petition obligations with respect to Employee Compensation and Benefits. However, out of an abundance of caution, the Debtors submit that, to the extent such amounts may exist, the payment of the Employee Compensation and Benefits represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors submit that payments with respect to pre-petition obligations be subject to following caps: $315,000 for Wage Obligations; $100,000 for Withholding and Deduction Obligations; $5,000 for Reimbursable Expenses; $25,000 for Health and Welfare Coverage Benefits; $5,000 for the Workers' Compensation Program, and $50,000 for the 401(k) Retirement Savings Plan. Paying pre-petition wages, employee benefits, and similar obligations will benefit the Debtors' estates and their creditors by allowing the Debtors to continue their orderly wind-down. Without the relief requested herein, Employees may seek alternative employment opportunities. Such a development

would deplete the Debtors' workforce, thereby hindering the Debtors' ability to successfully wind-down.  The loss of valuable Employees would be distracting at this crucial time when the Debtors need to focus on completing the wind-down of their operations.  Accordingly, there can be no doubt that the Debtors must do their utmost to retain their already reduced workforce by, among other things, continuing to honor all wage, benefit, and related obligations.

49.     In addition, the majority of Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses, and they have decided to stay on with the Debtors to complete the wind-down process.  Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor their obligations related thereto. Failure to satisfy such obligations will jeopardize Employee morale and loyalty at a time when Employee support is critical.  Furthermore, if this Court does not authorize the Debtors to honor their obligations under the insurance programs described herein, Employees will not receive health coverage and may therefore be obligated to pay certain healthcare claims that Trexie (and subsequently the Debtors) have not satisfied.  The loss of healthcare coverage will result in considerable anxiety for Employees (and likely Employee attrition) at a time when the Debtors need their Employees to perform their jobs at peak efficiency.  Additionally, Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at this critical juncture.

50.     Accordingly, out of an abundance of caution, the Debtors respectfully request that the Court authorize the Debtors to pay any accrued and unpaid pre-petition amounts on account of the Employee Compensation and Benefits and to continue the Employee Compensation and Benefits on a post-petition basis in the ordinary course of business and consistent with past practices.

III.    **The Debtors Seek a Waiver of the Automatic Stay to the Extent It Applies to Workers' Compensation Claims**

51.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Section 362 of the Bankruptcy Code, however, permits a debtor or other party-in-interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

52.    If and to the extent that section 362(a) is applicable to claims under the Workers' Compensation Programs, the Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit current and former employees to proceed with any claims under the Workers' Compensation Program in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify the automatic stay, if and to the extent applicable, because the Debtors have an obligation to continue to abide by applicable workers' compensation laws and requirements, and interrupting the administration of any claims under the Workers' Compensation Program could have a detrimental effect on the financial well-being and morale of Employees and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties-in-interest.

## PROCESSING OF CHECK AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

53.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business.  In addition, under the Debtors' existing cash management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee

Compensation and Benefits obligations.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## THE REQUIREMENT OF BANKRUPTCY RULE 6003(b) ARE SATISFIED

54.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

55.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

56.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission

as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

57.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.;; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

58.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court  (a) enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, (b) enter the Final Order, substantially in the form attached hereto as **Exhibit B**, and (c) grant such other and further relief as is just and proper.

Date: May 8, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/  Robert S. Brady*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Joshua Brooks (Delaware Bar No. 6765)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: jbrooks@ycst.com

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Susheel Kirpalani *(pending pro hac vice)*
Patricia B. Tomasco *(pending pro hac vice)*
Daniel Holzman *(pending pro hac vice)*
Alain Jaquet *(pending pro hac vice)*
Razmig Izakelian *(pending pro hac vice)*
Valerie Ramos (*pending pro hac vice)*
Joanna D. Caytas *(pending pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**PROPOSED COUNSEL FOR THE DEBTORS**

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No.____ |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO
(I) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND
(II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to continue employee benefits programs in the ordinary course; and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, entered February 29, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing with respect to this Motion shall be held on **_____, 2023 at __:__ __.m (prevailing Eastern Time)**. Any objections or responses to entry of the proposed Final Order shall be filed on or before **__:__ __.m. (prevailing Eastern Time)** on **_____, 2023** and served on the following parties: (a) proposed co-counsel to the Debtors, (i) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave 22nd floor, New York, NY 10010, Susheel Kirpalani (susheelkirpalani@quinnemanuel.com); Patricia B. Tomasco (pattytomasco@quinnemanuel.com), Daniel Holzman (danielholzman@quinnemanuel.com), and qe-bittrex@quinnemanuel.com, and (ii) Young Conaway Stargatt & Taylor, LLP, Wilmington, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady (rbrady@ycst.com), Kenneth Enos (kenos@ycst.com), and Joshua Brooks (jbrooks@ycst.com); (b) counsel to any statutory committee appointed in these Chapter 11 Cases; (c) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter (richard.schepacarter@usdoj.gov); and (d) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. If no objections are timely filed, this Court may enter the Final Order without further notice or a hearing.

2

3.      The Debtors are authorized, but not directed, to continue and/or modify, change, or discontinue the Employee Compensation and Benefits and to honor and pay, in the ordinary course and in accordance with the Debtors' pre-petition policies and pre-petition practices, any obligations on account of the Employee Compensation and Benefits.

4.      Notwithstanding any other provision of this order, no payments to or on behalf of any individual employee or Trexie employee on account of pre-petition obligations shall exceed the amounts set forth in 11 U.S.C. §§ 507(a)(4) and 507(a)(5).

5.      The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any pre-petition amounts owed to their Employees.

6.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments, including outstanding claims with respect to Reimbursable Expenses, not otherwise due prior to the date of the Final Hearing.

7.      The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any insiders (as such term is defined in section 101(31) of the Bankruptcy Code) ("Insider") without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.  Nothing in the Motion or this Interim Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Interim Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  Nothing in the Motion or this Interim Order should be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code, and a separate motion will be filed for any requests that are governed by section

3

503(c) of the Bankruptcy Code; provided that nothing herein shall prejudice the Debtors' ability

to seek approval for such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

8.      Nothing herein shall be deemed to authorize the payment of any amounts in

satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the

Bankruptcy Code.

9.      The automatic stay of section 362(a) of the Bankruptcy Code, to the extent

applicable, is hereby lifted to permit, without further order of this Court: (a) current or former

Employees to proceed with their claims (whether arising prior to or subsequent to the Petition

Date) under the Workers' Compensation Programs in the appropriate judicial or administrative

forum; (b) insurers, including but not limited to The Hartford, and third-party administrators to

handle, administer, defend, settle, and/or pay workers' compensation claims and direct action

claims; (c) the Debtors to continue the Workers' Compensation Programs and pay any amounts

relating thereto in the ordinary course; and (d) insurers, including but not limited to the Hartford,

and third-party administrators providing coverage for any workers' compensation or direct action

claims to draw on any and all collateral and/or prefunded loss accounts provided by or on behalf

of the Debtors therefor, if and when the Debtors fail to pay and/or reimburse any insurers and

third-party administrators for any amounts in relation thereto.  The modification of the automatic

stay in this paragraph pertains solely to claims under the Workers' Compensation Programs and

direct action claims.

10.     Nothing herein (a) alters or amends the terms and conditions of the Workers'

Compensation Programs; (b) relieves the Debtors of any of their obligations under the Workers'

Compensation Programs; (c) precludes or limits, in any way, the rights of any insurer to contest

and/or litigate the existence, primacy, and/or scope of available coverage under the Workers'

Compensation Programs; or (d) creates a direct right of action against any insurers or third-party administrators where such right of action does not already exist under non-bankruptcy law.

11.     The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' pre-petition policies and practices.

12.     The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

13.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

14.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

15.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease

5

pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim. The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any pre-petition amounts owed to their Employees.

16.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

6

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. _____ |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE EMPLOYEE**
**BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) pay certain pre-petition employee wages, salaries, other compensation, and reimbursable employee expenses and (ii) continue employee benefits programs in the ordinary course, including payment of certain pre-petition obligations related thereto; and (b) granting related relief, all as more fully set forth in the Motion; and upon the Court having entered the Interim Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, entered February 29, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to continue and/or modify, change, or discontinue the Employee Compensation and Benefits and to honor and pay, in the ordinary course and in accordance with the terms of the Debtors' pre-petition policies and pre-petition practices, any obligations on account of the Employee Compensation and Benefits.

3. Notwithstanding any other provision of this order, no payments to or on behalf of any individual employee or Trexie employee on account of pre-petition obligations shall exceed the amounts set forth in 11 U.S.C. §§ 507(a)(4) and 507(a)(5).

4. The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) ("Insider") without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.  Nothing in the Motion, the Interim Order, or this Final Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Final Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

5.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code.

6.      The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any pre-petition amounts owed to their Employees.

7.      The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby lifted to permit, without further order of this Court: (a) current or former employees to proceed with their claims (whether arising prior to or subsequent to the Petition Date) under the Workers' Compensation Programs in the appropriate judicial or administrative forum; (b) insurers, including but not limited to The Hartford, and third-party administrators to handle, administer, defend, settle, and/or pay workers' compensation claims and direct action claims; (c) the Debtors to continue the Workers' Compensation Programs and pay any amounts relating thereto in the ordinary course; and (d) insurers, including but not limited to The Hartford, and third-party administrators providing coverage for any workers' compensation or direct action claims to draw on any and all collateral and/or prefunded loss accounts provided by or on behalf of the Debtors therefor, if and when the Debtors fail to pay and/or reimburse any insurers and third-party administrators for any amounts in relation thereto. The modification of the automatic stay in this paragraph pertains solely to claims under the Workers' Compensation Programs and direct action claims.

8.      Nothing herein (a) alters or amends the terms and conditions of the Workers' Compensation Programs; (b) relieves the Debtors of any of their obligations under the Workers'

Compensation Programs; (c) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Workers' Compensation Programs; or (d) creates a direct right of action against any insurers or third-party administrators where such right of action does not already exist under non-bankruptcy law.

9.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' pre-petition policies and practices.

10.     The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

11.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

12.     The Debtors shall not make any payments on account of any Non-Insider Severance Benefits arising after the Petition Date in violation of section 503(c) of the Bankruptcy Code; provided that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

13.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

14.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.