# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 9 |

### INTERIM ORDER: (A) AUTHORIZING THE DEBTORS TO INCUR POST-PETITION DEBT, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF

This matter is before the Court on the Motion (the "Motion") of Desolation Holdings LLC and its affiliated debtors, Bittrex, Inc., Bittrex Malta Holdings Ltd., and Bittrex Malta Ltd., as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Bittrex"), in these chapter 11 cases (the "Chapter 11 Cases"), requesting entry of an interim order (this "Interim Order") and a final order (the "Final Order") pursuant to sections 105(a), 363, and 364 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (as amended, the "Local Bankruptcy Rules"):

   (a)  authorizing the Debtors to obtain post-petition financing from Aquila Holdings Inc. (or its designee) (the "DIP Lender"), consisting of a super-priority delayed draw credit facility in the principal amount of up to 700 BTC (the "DIP Loan") to be used for general wind down and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

liquidity purposes, including the payment of Administrative Expenses, as described herein and in that certain *Superpriority Debtor-In-Possession Credit Agreement*, dated May 8, 2023, by and among the DIP Lender, as lender, and the Debtors, as borrower (substantially in the form attached to the Motion, together with all schedules, exhibits and annexes thereto, and as any time amended, the "DIP Loan Agreement"), of which amount 250 BTC will be available under the DIP Loan on an interim basis (the "Interim Amount Limit") during the Interim Period (as defined below), on the terms and conditions set forth in the DIP Loan Documents (as defined in the DIP Loan Agreement) and in this Interim Order;

(b) authorizing the Debtors to execute and enter into the DIP Loan Documents and to perform all such other and further acts as may be required in connection with the DIP Loan Documents;

(c) authorizing the Debtors to use proceeds of the DIP Loan solely as expressly permitted in the DIP Loan Documents and in accordance with this Interim Order; pursuant to Bankruptcy Code section 364(c)(1), granting the DIP Lender an allowed super-priority administrative expense claim against the Debtors for the amounts advanced under the DIP Loan (the "DIP Super-priority Claims") (without the need to file any proofs of claim or request for payment of administrative expenses), with priority over any and all administrative expenses of any kind or nature, subject only to the Carve-Out, and the DIP Super-priority Claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof. Except as set forth in, or permitted by, this Interim Order, or with the consent of the DIP Lender, no other super-priority administrative expense claims shall be granted or allowed in the Chapter 11 Cases. The DIP Super-priority Claims shall be entitled to the full protection of section

364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(d) authorizing the Debtors to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Loan Documents as such amounts become due and payable;

(e) scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order, and in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion; and

(f) granting the Debtors such other and further relief as is just and proper.

Based upon the Court's review of the Motion, the exhibits attached thereto, the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration") and all matters brought to the Court's attention at the interim hearing, which was held on May 10, 2023, pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) (the "Interim Hearing"), and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, AND ADJUDGED,** that:[2]

1. <u>Disposition</u>. The Motion is hereby GRANTED, as and to the extent provided herein. Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by consent at or before the Interim Hearing, and all reservations of rights included therein, are hereby OVERRULED and DENIED.

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

2. <u>Jurisdiction; Core Proceeding</u>.  This Court has jurisdiction over the Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. <u>Service of Motion and Notice of Interim Hearing</u>.  The Debtors have caused to be served a notice of the Motion and the Interim Hearing, including a copy of the proposed Interim Order and Budget (as defined below), by electronic mail, telecopy transmission, hand delivery, overnight courier, or first class United States mail upon the Office of the United States Trustee (the "U.S. Trustee"), the consolidated 30 largest unsecured creditors of the Debtors, the Internal Revenue Service, all parties who have filed requests prior to the date of service for notices under Rule 2002 of the Bankruptcy Rules, and all parties known by a Debtor to hold or assert a lien on any asset of a Debtor.  The foregoing notice of the Motion, as it relates to this Interim Order and the Interim Hearing, is appropriate, due, and sufficient under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b), (c) and (d), and that no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4. <u>Petition Date</u>.  On May 8, 2023 (the "Petition Date"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, and each is continuing to manage its properties and to operate its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed for any Debtor herein.

5. <u>Debtors' Stipulations</u>. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in Paragraph 26 below), each Debtor admits, stipulates, acknowledges, and agrees as follows:

   a. <u>Need for Financing</u>. An immediate and ongoing need exists for the Debtors to obtain the DIP Loan in order to permit, among other things, the orderly wind down of the operation of their U.S. and Malta businesses. The Debtors do not have sufficient available resources of working capital to orderly wind down their businesses without post-petition financing. The Debtors' ability to orderly wind down their U.S. and Malta businesses is essential to the Debtors' preservation of the value of their assets for distribution to all stakeholders, including customers and other creditors.

6. <u>Findings Regarding the DIP Loan</u>.

   a. <u>Good Cause</u>. Good cause has been shown for the entry of this Interim Order and authorization for the Debtors to incur DIP Obligations (as defined below) pursuant to the DIP Loan Agreement as hereinafter provided up to the Interim Amount Limit during the Interim Period. Each Debtor's need for financing of the type afforded by the DIP Loan Agreement is immediate and critical. Entry of this Interim Order will preserve the assets of each Debtor's estate and its value for distribution to all stakeholders. The terms of the proposed financing are fair and reasonable, reflect each Debtor's exercise of business judgment, and are supported by reasonably equivalent value and fair consideration.

   b. <u>Proposed DIP Loan</u>. The Debtors have requested that the DIP Lender establish the delayed draw DIP term loan facility pursuant to which the Debtors may obtain advances from time to time ("Advances") (the "DIP Loan," and collectively with all other debts, obligations, liabilities, and indemnities of the Debtors under the DIP Loan Documents, the "DIP Obligations"), all in accordance with and subject to the terms of the DIP Loan Documents. The DIP Lender is willing to establish the DIP Loan upon the terms and conditions set forth herein and in the DIP Loan Agreement, substantially in the form attached to the Motion, and the other DIP Loan Documents.

   c. <u>No Credit Available on More Favorable Terms</u>. The terms of the DIP Loan Documents are favorable and it is unlikely that better terms could otherwise be obtained. The Debtors are also unable to obtain unsecured credit allowable under Section 364(c)(1) of the Bankruptcy Code without granting DIP Super-priority Claims (as

defined in Paragraph 9 below) under the terms and conditions set forth in this Interim Order and in the DIP Loan Documents.

d. <u>Budget/Reporting</u>. The Debtors have prepared and annexed to this Interim Order as **Exhibit 1** hereto a budget (as at any time amended or supplemented with the written consent of the DIP Lender, the "Budget") which sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby and which the Debtors believe in good faith to be realistic and achievable. The DIP Lender is relying upon the Budget in entering into the DIP Loan Agreement. On the fourth business day of each calendar month from and after the initial advance of the DIP Loan, the Debtors shall deliver to the DIP Lender, in a form reasonably acceptable to the DIP Lender, a monthly variance report variance report showing all receipts and disbursements of the Debtors during the prior month and on a cumulative basis for the Chapter 11 Cases, along with any variances on a line item basis against the Budget.

e. <u>Certain Conditions to DIP Loan</u>. The DIP Lender's willingness to make DIP Loan pursuant to the DIP Loan Documents is conditioned upon, among other things, (i) the Debtors obtaining Court approval of the DIP Loan Agreement and all DIP Obligations of the Debtors and all rights and remedies of the DIP Lender thereunder; and (ii) the DIP Lender receiving, as a benefit for the prompt payment of all DIP Obligations, a super-priority on its claim as set forth herewith.

f. <u>Interim Hearing</u>. Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Bankruptcy Rule 4001-2, the Court has held the Interim Hearing and hereby authorizes Debtors to obtain DIP Loan during the period from the date of entry of this Order through the date on which the final hearing on the Motion pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) scheduled pursuant to Paragraph 24 of this Interim Order is concluded (the "Interim Period"), for purposes specified in the initial Budget.

g. <u>Finding of Good Faith</u>. Based upon the record presented at the Interim Hearing, the DIP Loan was negotiated in good faith and at arm's-length between the Debtors and the DIP Lender. All of the DIP Obligations including, without limitation, the DIP Loan made pursuant to the DIP Loan Agreement and all other liabilities and obligations of any Debtors under this Interim Order owing to the DIP Lender shall be deemed to have been extended by the DIP Lender in "good faith," as such term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code. The DIP Lender

6

shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

h. <u>Immediate Entry</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the interim relief sought by the Motion, each Debtor's estate will be immediately and irreparably harmed pending the Final Hearing. The Debtors' consummation of the DIP Loan in accordance with the terms of this Interim Order and the DIP Loan Agreement is consistent with each Debtor's exercise of its fiduciary duties. Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules. No further notice of the relief sought at the Interim Hearing is necessary or required.

7. <u>Authorization of Interim Financing; Use of Proceeds</u>.

    a. The Court hereby authorizes and approves the Debtors' execution and delivery of the DIP Loan Agreement in substantially the form annexed to the Motion (with such changes, if any, as were made prior to or as a result of the Interim Hearing or are otherwise authorized to be made as amendments to the DIP Loan Agreement in accordance with this Interim Order) and all DIP Loan Documents.

    b. The Debtors are hereby authorized to borrow money pursuant to the DIP Loan Documents, on the terms and subject to the conditions, set forth in any DIP Loan Document and this Interim Order, up to an aggregate outstanding principal amount at any time not exceeding the sum of 700 BTC, plus applicable interest, expenses, fees and other charges payable in connection with such DIP Loan, and to incur any and all liabilities and obligations under the DIP Loan Documents and to pay all principal, interest, fees, expenses and other obligations provided for under the DIP Loan Documents (including any obligations, to the extent provided for in the DIP Loan Documents, to indemnify the DIP Lender).

    c. The DIP Lender shall not have any obligation or responsibility to monitor any Debtor's use of the DIP Loan, and the DIP Lender may rely upon each Debtor's representations that the amount of DIP Loan requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).

d. No proceeds of any DIP Loan shall be used to (i) make any payment in settlement or satisfaction of any pre-petition claim, unless such payment is permitted under the DIP Loan Documents and by order of this Court; or (ii) to make any payment otherwise prohibited by this Interim Order.

8. <u>Execution, Delivery and Performance of DIP Loan Documents</u>. The DIP Loan Documents may be executed and delivered on behalf of each Debtor by any officer, director, or agent of such Debtor, who by signing shall be deemed to represent himself or herself to be duly authorized and empowered to execute the DIP Loan Documents for and on behalf of such Debtor. The DIP Lender shall be authorized to rely upon any such person's execution and delivery any of the DIP Loan Documents as having been done with all requisite power and authority so to do, and the execution and delivery of any of the DIP Loan Documents or amendments thereto by any such person on behalf of such Debtor shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company, or other entity action (as applicable) of such Debtor. Upon execution and delivery thereof, each of the DIP Loan Documents shall constitute valid and binding obligations of each Debtor, enforceable against each Debtor in accordance with their terms for all purposes during its Chapter 11 Case, any subsequently converted case of such Debtor under Chapter 7 of the Bankruptcy Code (each, a "Successor Case"), and after the dismissal of its Chapter 11 Case with respect to those provisions of the DIP Loan Documents which expressly survive the Termination Date and any such dismissal. Subject to Paragraph 26 of this Interim Order, no obligation, payment, or transfer under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including, without limitation, under Sections 502(d), 544, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim. In furtherance of the provisions of

Paragraph 7 of this Interim Order, each Debtor is authorized to do and perform all acts: to make, execute and deliver all instruments and documents (including, without limitation, amendments, waivers, consents, and other modifications) and to pay all reasonable fees, costs and expenses in each case as may be necessary or, in the opinion of the DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, or as may otherwise be required or contemplated by the DIP Loan Documents.

9. <u>Super-priority Claims</u>. All DIP Obligations shall constitute joint and several allowed super-priority administrative claims (the "DIP Super-priority Claims") against the Debtors (without the need to file any proof of claim) pursuant to Section 364(c)(1) of the Bankruptcy Code having priority in right of payment over all other obligations, liabilities, and indebtedness of each Debtor, whether now in existence or hereafter incurred by any Debtor, and over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order approving the grant), 507, 546(c), 552(b) 726, 1113, or 1114 of the Bankruptcy Code. Such DIP Super-priority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to all pre-petition and post-petition property of Debtors and all proceeds thereof; *provided*, *however*, that the DIP Super-priority Claims shall be subject to the Carve-Out (as defined in Paragraph 14). In addition to all rights of indemnity and subrogation any Debtor may have under applicable law, each Debtor agrees that in the event such Debtor is the initial obligor of an Obligation (the "Obligor Debtor"), for which a payment is made by another Debtor (the "Paying Debtor"), the Obligor Debtor shall indemnify the Paying Debtor for the full amount of such

payment (in all cases after payment of the Obligations to the DIP Lender in full), and the Paying Debtor shall be subrogated to the rights of the party to whom such payment shall have been made to the extent of such payment (in all cases after payment of the Obligations to the DIP Lender in full).

10. <u>Repayment</u>. The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Loan Documents and as provided herein, without offset or counterclaim. Without limiting the generality of the foregoing, in no event shall any Debtor be authorized to offset or recoup any amounts owed, or allegedly owed, by the DIP Lender to any Debtor or any of its respective subsidiaries or affiliates against any of the DIP Obligations without the prior written consent of DIP Lender that would be affected by any such offset or recoupment, and no such consent shall be implied from any action, inaction or acquiescence by the DIP Lender. The DIP Loan will be made in BTC and repayment of the principal amount of the DIP Loan will be in BTC. All other DIP Obligations will be repaid, at the Debtors' option, in BTC, U.S. dollars, or any combination thereof. If the Debtors do not have sufficient BTC on hand to repay at maturity the full principal amount of the DIP Loan in BTC and there is a shortfall, the Debtors will use the currencies they possess at that time of repayment to acquire the additional BTC to pay that shortfall. The amount of BTC the Debtors may need to acquire to pay such shortfall shall be capped at a number of BTC equal to 110% of the value of the shortfall on the Petition Date.

11. <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the DIP Lender shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (subject to entry of the Final Order approving the grant) or the "equities

of the case" exception of section 552(b) of the Bankruptcy Code (subject to entry of the Final Order).

12. <u>Fees and Expenses of Estate Professionals</u>. Subject to the terms of the DIP Loan Agreement and the Budget, for so long as no Event of Default has occurred, each Debtor is authorized to use the DIP Loan to pay such compensation and expense reimbursement (collectively, "Professional Fees") of professional persons (including attorneys, financial advisors, accountants, investment bankers, claims and/or noticing agents, appraisers, and consultants) retained by any Debtor with Court approval or as an ordinary course professional (the "Debtors Professionals") or any official committee appointed in the Chapter 11 Cases (the "Committee") with Court approval (the "Committee Professionals," collectively with the Debtors Professionals, the "Professionals"), up to the amounts set forth for each Professional in the Budget and only to the extent that such compensation and expense reimbursement is allowed and approved by the Court (including through any interim compensation procedures approved by the Court); *provided*, *however*, that, notwithstanding anything herein or in any other order of this Court to the contrary, no proceeds of the DIP Loan shall be used to pay Professional Fees incurred for any Prohibited Purpose (as defined below).

13. <u>Section 506(c) Claims</u>. Effective upon entry of the Final Order, no costs or expenses of administration shall be imposed upon the DIP Lender pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Lender from the payments or proceeds remitted to the DIP Lender, and no such consent shall be implied from any action, inaction or acquiescence by the DIP Lender, provided that the Carve-Out is fully funded by the Debtors.

14. <u>Carve-Out</u>.  Notwithstanding anything in this Interim Order, any DIP Loan Documents, or any other order of this Court to the contrary, the DIP Obligations and the DIP Super-priority Claims in favor of the DIP Lender shall be subject and subordinate in all respects to the payment of the following Carve-Out.  As used in this Interim Order, the "Carve-Out" means, collectively, the aggregate amount needed for (i) accrued but unpaid fees, costs, and expenses of the professionals of the Debtors and the Committee incurred at any time prior to the DIP Lender's delivery of a Carve-Out Trigger Notice, up to the amounts set forth for each Professional in the Budget for such time period and only to the extent allowed by the Bankruptcy Court, (ii) professional fees, costs and expenses of the Debtors and the Committee incurred after delivery of a Carve-Out Trigger Notice not to exceed $250,000 with respect to the Professionals, to the extent allowed by the Bankruptcy Court, and (iii) the payment of fees and expenses pursuant to 28 U.S.C. § 1930; *provided*, that nothing in this Interim Order shall be construed to impair the ability of any party to object to the fees, expenses, reimbursements or compensation of any Professional, whether or not in excess of the coverage provided by the Carve-Out.  In no event shall the Carve-Out, or the funding of the DIP Loan to satisfy the Carve-Out, result in any reduction in the amount of the DIP Obligations.  "Carve-Out Trigger Notice" means written notice by the DIP Lender to the Debtors invoking the Carve-Out, which notice may be delivered at any time after the occurrence, and during the continuation, of an Event of Default.

15. <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out, nor the proceeds of the DIP Loan in any respect, shall be used to pay any Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following (each a "Prohibited Purpose"): (a) objecting to or contesting the validity or enforceability of this Interim Order or any DIP Loan; (b) asserting or prosecuting

any claim or cause of action against the DIP Lender, other than to enforce the terms of the DIP Loan or this Interim Order; (c) seeking to modify any of the rights granted under this Interim Order to the DIP Lender; or (d) objecting to, contesting, delaying, preventing or interfering in any way with the exercise of rights and remedies by the DIP Lender after the occurrence and during the continuance of an Event of Default, provided that the Debtors may contest or dispute whether an Event of Default has occurred and shall be entitled to any notice provisions provided in this Interim Order.

16. <u>Preservation of Rights Granted Under This Interim Order</u>.

   a. <u>Protection from Subsequent Financing Order</u>. There shall not be entered in any of the Chapter 11 Cases or in any Successor Case any order that authorizes the obtaining of credit or the incurrence of indebtedness by any Debtor (or any trustee or examiner) that is entitled to a security interest in any of the Debtors' assets or priority administrative status that is equal or senior to the DIP Super-priority Claims granted to the DIP Lender herein; *provided*, *however*, that nothing herein shall prevent the entry of an order that specifically provides for, as a condition to the granting of the benefits of clauses (i) or (ii) above, the full payment of all of the DIP Obligations, in the manner required by the DIP Loan Agreement, from the proceeds of such credit or indebtedness, and the termination of any funding commitments under the DIP Loan.

   b. <u>Rights Upon Dismissal, Conversion, or Consolidation</u>. If any of the Chapter 11 Cases are dismissed, converted, or substantively consolidated with another case, then neither the entry of this Interim Order nor the dismissal, conversion, or substantive consolidation of any of the Chapter 11 Cases shall affect the rights or remedies of the DIP Lender under the DIP Loan Documents or the rights or remedies of the DIP Lender under this Interim Order, and all of the respective rights and remedies hereunder and thereunder of the DIP Lender shall remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, or substantively consolidated. Unless and until full payment of all DIP Obligations, in the manner required by the DIP Loan Agreement, has occurred, it shall constitute an Event of Default if any Debtor seeks, or if there is entered, any order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Super-priority Claims shall

continue in full force and effect and shall maintain their priorities as provided in this Interim Order until full payment of all DIP Obligations, in the manner required by the DIP Loan Agreement, (ii) such DIP Super-priority Claims shall, notwithstanding such dismissal, remain binding on all parties in interest, (iii) the other rights granted by this Interim Order shall not be affected, including the rights granted by Paragraph 26 of this Interim Order, and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this Paragraph and otherwise in this Interim Order.

c. <u>Survival of Interim Order</u>. The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases or any Successor Case.

d. <u>No Discharge</u>. None of the DIP Obligations shall be discharged by the entry of any order confirming a plan of reorganization or liquidation in any of the Chapter 11 Cases and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, each Debtor has waived such discharge.

e. <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar date order establishing a deadline for the filing of proofs of claim entitled to administrative expense treatment under Section 503(b) of the Bankruptcy Code, the DIP Lender shall not be required to file any proof of claim with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Documents without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Loan Documents or prejudice or otherwise adversely affect any rights, remedies, powers, or privileges of the DIP Lender under any of the DIP Loan Documents or under this Interim Order.

17. <u>Amendments to DIP Loan Documents</u>. The Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms of the applicable DIP Loan Documents and without further order of the Court, any amendments to and modifications of any of such DIP Loan Documents on the following conditions: (a) the amendment or modification must not constitute a Material Change (as defined below) to the terms of such DIP Loan Documents and (b) copies of

the amendment or modification must be served upon counsel for the Committee (and, prior to the appointment of a Committee, upon the Debtors' consolidated 30 largest unsecured creditors), the U.S. Trustee and other interested parties specifically requesting such notice. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court. For purposes hereof, a "Material Change" shall mean a change to a DIP Loan Document that operates to shorten the DIP Loan or the maturity of the DIP Obligations, to increase the aggregate amount of the commitments of the DIP Lender under the DIP Loan, to increase the rate of interest other than as currently provided in or contemplated by the DIP Loan Documents, to add specific Events of Default, or to enlarge the nature and extent of remedies available to the DIP Lender following the occurrence of an Event of Default. Without limiting the generality of the foregoing, any amendment of a DIP Loan Document to postpone or extend any date or deadline therein (including, without limitation, the expiration of the term of the DIP Loan) shall not constitute a Material Change and may be effectuated by Debtors and the DIP Lender without the need for further approval of the Court.

18. Events of Default; Remedies.

   a. Events of Default. The occurrence of any "Event of Default" under (and as defined in) the DIP Loan Agreement shall constitute an Event of Default under this Interim Order.

   b. Default Remedies. Upon the occurrence and during the continuance of any Event of Default, the DIP Lender may (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court) by written notice to the Debtors, (a) send the Carve-Out Trigger Notice and (b) declare (i) the unpaid principal amount of and accrued interest on the Loans and (ii) all other DIP Obligations, immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by the Debtors, and the same shall forthwith become immediately due and payable, and the obligation of the DIP Lender to make any Loans, and the Commitment, shall thereupon terminate. Upon the occurrence and during the

continuance of any Event of Default, the DIP Lender shall be required to obtain the authority of this Court to exercise any rights and remedies of the DIP Lender forth in any of the Loan Documents, in addition to all rights and remedies allowed by the United States and any state thereof.

    c. <u>Rights Cumulative</u>. The rights, remedies, powers, and privileges conferred upon DIP Parties pursuant to this Interim Order shall be in addition to and cumulative with those contained in the applicable DIP Loan Documents.

19. <u>Effect of Stipulations on Third Parties; Deadline for Challenges</u>.

    a. Each Debtor's admissions, stipulations, agreements, and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 5 of this Interim Order, shall be binding upon such Debtor and any successor thereto (including, without limitation any Chapter 7 trustee or Chapter 11 trustee or examiner appointed or elected for such Debtor) under all circumstances and for all purposes.

    b. Each Debtor's admissions, stipulations, agreements, and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 5 of this Interim Order, shall be binding upon all other parties in interest (including, without limitation, any Committee) under all circumstances and for all purposes unless the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.

20. <u>Service of Interim Order</u>. Promptly after the entry of this Interim Order, the Debtors shall mail, by first class mail, a copy of this Interim Order, the Motion (and all exhibits attached to the Motion), and a notice of the Final Hearing, to (without duplication) counsel for the DIP Lender, the U.S. Trustee, counsel for the Committee (or, if the Committee has not been formed and selected counsel as of the entry of this Interim Order, then the Debtors' consolidated fifty largest unsecured creditors), the Internal Revenue Service, all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules prior to the time of such service, and all parties known by a Debtor to hold or assert a lien on any assets of a Debtor, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and

sufficient notice of the Final Hearing and the relief sought by the Debtors pursuant to the proposed Final Order.

21. <u>No Deemed Control</u>.  In determining to make any Advance under the DIP Loan, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, any Final Order, or the DIP Loan Documents, the DIP Lender shall not be deemed to be in control of any Debtor or its operations.

22. <u>Exculpation</u>.  Nothing in this Interim Order, the DIP Loan Documents, or any other document related to the DIP Loan shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the pre-petition or post-petition activities of any Debtor in the operation of its business or in connection with its restructuring efforts.

23. <u>Binding Effect; Successors and Assigns</u>.  The provisions of the DIP Loan Documents and this Interim Order, including all findings herein (subject to Paragraph 26 of this Interim Order) shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lender, the Debtors, the Committee, and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of any Debtor, any Chapter 7 trustee appointed or elected in a Successor Case, any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor), and shall inure to the benefit of DIP Lender and its respective successors and assigns.

24. <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order shall be held at **11:00 a.m., prevailing Eastern time on June 7 2023**, at the United States Bankruptcy Court, 824 Market Street North, Wilmington, Delaware 19801.  The Final Hearing may be adjourned or

postponed without further notice except as may be announced in open Court or posted on the Court's docket.  If any or all of the provisions of this Interim Order are modified, vacated, or stayed as the result of any Objection (as defined below) timely filed and asserted at the Final Hearing, then, without limiting the provisions of Paragraph 26 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to the protections afforded under Section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP Super-priority Claims granted herein and pursuant to the DIP Loan Documents with respect to all such DIP Obligations.

25. <u>Objection Deadline</u>.  If any party in interest shall have an objection to any of the provisions of this Interim Order, any provisions of the DIP Loan Documents, or any provisions of the proposed Final Order (collectively, an "Objection"), such party may assert such Objection at the Final Hearing, if a written statement setting forth the basis for such Objection is filed with the Court and concurrently served so as to be received on or before **4:00 p.m., prevailing Eastern time on May 31, 2023**, by the following: (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel for the Debtors, Quinn Emanuel Urquhart & Sullivan, LLP, Attn.: Patricia B. Tomasco, Joanna D. Caytas, 711 Louisiana Street, Suite 500, Houston, TX 77002; Quinn Emanuel Urquhart & Sullivan, LLP, Attn.: Daniel Holzman, 51 Madison Avenue, 22nd Floor, New York, New York 10010; email: pattytomasco@quinnemanuel.com, danielholzman@quinnemanuel.com, joannacaytas@quinnemanuel.com; and (c) counsel for the DIP Lender, Pachulski Stang Ziehl & Jones LLP, Attn.: Laura Davis Jones, 919 North Market Street, 17th Floor, Wilmington, DE 19801, email: ljones@pszjlaw.com.  If an objecting party shall fail to appear at the Final Hearing

and assert the basis for such Objection before the Court, such Objection shall be deemed to have been waived and abandoned by such objecting party.

26. <u>Effectiveness; Enforceability</u>. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Interim Order; and any stay of the effectiveness of this Interim Order that might otherwise apply is hereby waived for cause shown.

27. <u>Reservation</u>. Notwithstanding anything in this Order, the DIP Loan Documents or any related documents, nothing in this Order, the DIP Loan Documents or any related documents modifies, affects or impairs the United States of America's rights, claims or defenses of recoupment or setoff.

28. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any Chapter 11 plan for any Debtor notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

29. <u>Inconsistencies</u>. To the extent of any inconsistencies or conflicts between this Interim Order and the DIP Loan Documents, this Interim Order shall govern.

Dated: May 10th, 2023
Wilmington, Delaware

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**