IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DESOLATION HOLDINGS LLC, *et al.*,[1] | ) ) ) | Case No. 23-10597 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | ) ) | **Hearing Date:** Jun. 7, 2023 at 11:00 a.m.(ET) **Obj. Deadline:** May 31, 2023 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF BERKELEY RESEARCH GROUP, LLC TO PROVIDE CO-CHIEF RESTRUCTURING OFFICERS AND ADDITIONAL PERSONNEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), (i) authorizing the Debtors to retain Berkeley Research Group, LLC ("BRG"), pursuant to the terms and conditions of that certain letter agreement dated March 27, 2023 (the "Engagement Letter")[2] between BRG and the Debtors, to (a) provide Robert Duffy and Evan Hengel to serve as Co-Chief Restructuring Officers (the "Co-CROs") and (b) provide additional staff (the "Additional Personnel" and, together with the Co-CROs, the "BRG Professionals") to support the Co-CROs

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein. Additionally, any capitalized terms used in this Application and not otherwise defined herein shall have the meanings given to them in the Engagement Letter.

and perform professional services; (ii) providing that the employment of the BRG Professionals is effective as of the Petition Date (as defined below) and (iii) granting certain related relief. A copy of the Engagement Letter is attached hereto as **Exhibit B**. In support of this Application, the Debtors rely upon the declaration of Evan Hengel (the "Hengel Declaration"), which is attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases (the "Chapter 11 Cases"), the Debtors and their estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order with respect to this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

3. Venue of these Chapter 11 Cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

**BACKGROUND**

5. On May 8, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On May 10, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases [D.I. 34]. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

7. A detailed description of the Debtors and their businesses, the reasons for commencing the Chapter 11 Cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration")[3] [D.I. 11], which is incorporated herein by reference.

**RELIEF REQUESTED**

8. By this Application, the Debtors request entry of the Order (i) authorizing the Debtors to retain BRG, to (a) provide Robert Duffy and Evan Hengel to serve as Co-CROs and (b) provide Additional Personnel to support the Co-CROs and perform professional services; (ii) providing that the employment of the BRG Professionals is effective as of the Petition Date; and (iii) granting certain related relief.

9. Based on the complexities associated with administering these Chapter 11 Cases and the estates, the Debtors have determined that they require the assistance of Co-CROs with

---

[3] Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the First Day Declaration.

specialized experience in bankruptcy and financial advisory services. Accordingly, the Debtors seek authority to employ BRG. The Debtors have determined that the retention of BRG is necessary, appropriate, and in the best interests of the Debtors' estates due to BRG's expertise and qualifications in performing the services required in these particular Chapter 11 Cases and for the reasons enumerated herein.

A.     **Qualification of Professionals**

10.     BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing restructuring, transaction advisory, litigation support, solvency, and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed business settings. In selecting interim management and associated support, the Debtors sought an advisor with experience in providing similar services in complex cases. The Debtors understand that BRG professionals have significant restructuring and industry experience assisting distressed companies with financial and operational challenges and working with management teams and boards of directors of large companies facing financial challenges similar to those of the Debtors.

11.     BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational restructurings across a wide array of industries, including cryptocurrency operations. Moreover, the professionals at BRG have assisted and advised debtors, independent boards, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including Voyager Digital Holdings, Inc., BlockFi, Inc., The Hertz Corporation, Genesis Global Holdco, LLC, SVB Financial Group, The Collected Group, LLC, Lucky Brand Dungarees, LLC, Stage Stores, Inc., Intelsat, SA, RentPath Holdings, Inc.,

4

Destination Maternity Corporation, Modell's Sporting Goods, Inc., Hospital Acquisition LLC (a.k.a LifeCare Health Partners), Avenue Stores, LLC, Fred's, Inc., Neiman Marcus Group LTD LLC, Aerogroup International (Aerosoles), Sports Authority Holdings, Inc, Videology, Inc., Century 21 Stores, Brookstone Holdings Corp., rue21, inc., RTW Retailwinds, Inc (a.k.a NY & Company), Samuels Jewelers, Inc., Charlotte Russe Holding, Inc. Christopher & Banks, Inc., and Le Tote, Inc.[4] BRG's business, experience, and expertise are further described in the Hengel Declaration.

      12.     Mr. Duffy, one of the proposed Co-CROs is the co-head of BRG's Corporate Finance Practice and a Managing Director at BRG who specializes in performance improvement, restructuring, and interim management. Mr. Duffy has over thirty-five years of experience advising clients, including companies, private equity firms, hedge funds, and lenders, on implementing operational improvements and repositioning businesses for future growth as well as maximizing value, recoveries, and financial returns in complex restructuring situations. Further, Mr. Duffy has served in CRO and interim COO roles, as well as working with senior management teams and boards of directors of large companies facing financial challenges similar to those of the Debtors.

      13.     Mr. Hengel, the other proposed Co-CRO is a Managing Director at BRG has more than fifteen years of experience in financial advisory, interim management services (including CFO, CRO, and Chairman of the Board) and working with senior management teams in the areas of financial and operational restructuring, business planning, mergers & acquisitions, and loan workouts. Further, Mr. Hengel has served as one of the lead financial advisory professionals for cryptocurrency clients including Voyager Digital, BlockFi, Inc., SALT Lending, and the Official Committee of Unsecured Creditors of Genesis Global.

---

[4]    The professionals were employed in certain of these engagements prior to joining BRG.

14.     Mr. Duffy, Mr. Hengel, and the Additional Personnel who will work on this matter have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtors under an order approving this Application. The BRG Professionals will work closely with the Debtors' management and other professionals throughout the chapter 11 process. By virtue of the expertise of its restructuring personnel, BRG is well qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases. In addition, as a result of performing prepetition advisory work for the Debtors, working closely with the Debtors' management and other professionals BRG, the Co-CROs and the Additional Personnel have acquired significant knowledge of the Debtors' businesses and are familiar with the Debtors' financial affairs, capital structure, operations, and related matters.

15.     Accordingly, the Debtors believe that the BRG Professionals are well-qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these Chapter 11 Cases. The Debtors submit that the designation of Robert Duffy and Evan Hengel as Co-CROs and the retention of BRG on the terms and conditions set forth herein are necessary and appropriate, in the best interest of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

B.     **Services to be Rendered**

16.     In accordance with the terms of the Engagement Letter and as more fully described in the Hengel Declaration, BRG has agreed that Mr. Duffy and Mr. Hengel will serve as the Debtors' Co-CROs and will assist the Debtors in identifying and implementing strategic options to maximize liquidity and profitability. In addition, BRG has agreed to provide Additional Personnel to assist the Co-CROs and perform professional services for the Debtors. The BRG

Professionals' rates, and other related information, are set forth in the Engagement Letter and summarized herein.

17. The Debtors have requested that the Co-CROs and the Additional Personnel provide the following professional services as independent consultants:

- (a) Serve as Co-CRO (Robert Duffy and Evan Hengel);
- (b) Assist with customer communications plan in advance of announcements and related restructuring;
- (c) Assist with operational segregation efforts between entities in U.S. and elsewhere;
- (d) Create intercompany matrix and help document policies and procedures;
- (e) Prepare the Company for eventual bankruptcy filing by assisting counsel with first day motions;
- (f) Help draft DIP term sheet and drive process to secure financing, if needed;
- (g) Help formulate restructuring plan and treatment of remaining liabilities of the estate; and
- (h) Assist with any other activities requested by Management;

18. Subject to Court approval, the Debtors seek to engage BRG pursuant to the Engagement Letter previously executed by and between the Debtors and BRG. In addition to the scope of services incorporated in the Engagement Letter, BRG will provide the following services during the bankruptcy proceeding:

- (a) In consultation with management of the Debtors, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders;
- (b) Oversee the activities of the Debtors in consultation with other advisors and the management team to effectuate the selected course of action;
- (c) Assist the Debtors and their management in developing cash flow projections and related methodologies and assist with planning for alternatives as requested by Debtors;
- (d) Assist the Debtors with preserving and securing future vendor and banking relationships given volatility in the industry;

  (e) Assist the Debtors in preparing for and operating in a chapter 11 bankruptcy proceeding, including negotiations with stakeholders, and the formulation of a reorganization strategy and plan of reorganization directed to preserve and maximize value;

  (f) Assist as requested by management in connection with the Debtors' development of their business plan, and such other related forecasts as may be required by creditor constituencies in connection with negotiations;

  (g) Provide information deemed by the Co-CROs to be reasonable and relevant to stakeholders and consult with key constituents as necessary;

  (h) To the extent reasonably requested by the Debtors, offer testimony before the Court with respect to the services provided by the Co-CROs and the Additional Personnel, and participate in depositions, including by providing deposition testimony, related thereto; and

  (i) Provide such other services as mutually agreed upon by the Co-CROs, BRG and the Debtors.

19. Mr. Duffy and Mr. Hengel are the senior professionals staffed by BRG on the engagement with the assistance of the Additional Personnel and, as set forth herein and in the Hengel Declaration, Mr. Duffy and Mr. Hengel have past experience with the Debtors, having provided consulting services prior to the Petition Date.

20. Mr. Duffy, Mr. Hengel, and BRG are well qualified and able to continue to provide restructuring management and advisory services to the Debtors in a cost-effective, efficient, and timely manner.

**C.** **No Duplication of Services**

21. The services to be provided by the Co-CROs and the Additional Personnel will complement, and not duplicate, the services to be rendered by the professionals retained in these Chapter 11 Cases. Further, BRG will coordinate with the Debtors' retained professionals to avoid unnecessary duplication of efforts. In light of BRG's, the Co-CROs', and the Additional Personnel's substantial experience and the complex nature of the Debtors' business and financial

affairs, the Debtors believe that BRG, the Co-CROs, and the Additional Personnel are well-qualified to advise them in these Chapter 11 Cases.

**D.      Use of Contractors**

22.     Notwithstanding anything in this Application to the contrary, BRG shall (i) to the extent that it uses the services of independent contractors or subcontractors (the "Contractors") in these Chapter 11 Cases, pass-through the cost of Contractors to the Debtors at the same rate that BRG pays the contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks and compensation procedures as required for BRG; and (iv) file with the Court such disclosures required by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**E.      Indemnification and Limitation of Liability**

23.     The Engagement Letter contains standard indemnification and limitation of liability language with respect to BRG's services, including, without limitation, an agreement by the Debtors to indemnify, hold harmless and defend the CRO, Additional Personnel, and BRG and its affiliates partners, directors, officers, employees and agents (collectively, the "BRG Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of the co-CROs and BRG that is the subject of the Engagement Letter except such liabilities that result from the gross negligence or willful misconduct of the BRG Parties.

24.     The Debtors and BRG believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for BRG and comparable firms providing restructuring services for engagement of this type and should be approved.

25.     The terms and conditions of the indemnification provisions were negotiated by the Debtors and BRG at arm's length and in good faith. The provisions contained in the Engagement

Letter, viewed in conjunction with the other terms of the Proposed Order, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require BRG's services to successfully navigate these Chapter 11 Cases.

26. Notwithstanding any provisions of the Engagement Letter to the contrary, in accordance with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol"), BRG has agreed otherwise, as set forth below:

(a) Notwithstanding anything to the contrary in the Engagement Letter, the Debtors are permitted to indemnify those persons acting as executive officers only on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, in addition to insurance coverage under the Debtors' director and officer insurance policies.

(b) There will be no indemnification of BRG or its affiliates.

(c) Finally, notwithstanding any provisions of the Engagement Letter to the contrary, BRG has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to BRG's engagement on these cases.

F. **Disinterestedness of Professionals**

27. The Debtors do not believe that BRG is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code. However, BRG has nonetheless provided information with respect to its connections with the Debtors, their creditors, and other related parties, as more specifically described herein and in the Hengel Declaration.

28. The Debtors understand that, except as set forth in the Hengel Declaration, to the best of BRG's knowledge, information, and belief, BRG has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of the foregoing, or the United States Trustee for the District of Delaware (the "U.S. Trustee") or any person employed in the

Office of the United States Trustee for the District of Delaware and does not hold any interest adverse to the Debtors' estate.

29.  As set forth in further detail in the Hengel Declaration, the Debtors do not owe BRG any amount for services performed or expenses incurred prior to the commencement of these Chapter 11 Cases, and, thus, BRG is not a prepetition creditor of the Debtors.

30.  The Debtors attach the Hengel Declaration, which discloses, among other things, any relationship that BRG, Mr. Duffy, Mr. Hengel, or any of the other BRG Professionals engaged on this matter have with the Debtors, their significant creditors, or other significant parties in interest known to BRG. In addition, as set forth in the Hengel Declaration, if any new material facts or relationships are discovered or arise, during the period of BRG's retention, BRG will make reasonable efforts to promptly provide the Court with a supplemental declaration.

31.  As stated above and in the Hengel Declaration, the Debtors do not believe that BRG holds or represents any interest adverse to the Debtors' estates. Accordingly, the Debtors submit that the retention of BRG is in the best interests of the Debtors, their estates, and their creditors, and should be approved by the Court.

**G.     Professional Compensation**

32.  BRG's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is conditioned upon its ability to be retained in accordance with BRG's customary terms and conditions of employment, as set forth in the Fees & Expenses section of the Engagement Letter (the "Fee and Expense Structure"). Pursuant to the terms of the Engagement Letter, the Co-CROs' fees for the provision of the services will be $125,000 per month. Fees for the Additional Personnel will be based on the actual hours worked, charged at BRG's standard hourly rates which

are in effect when the services are rendered. The current standard hourly rates for the BRG Professionals anticipated to be assigned to this case are as follows:

|  | Hourly Rate |
|---|---|
| Managing Directors | $1,050 - $1,250 |
| Associate Directors & Directors | $810 - $990 |
| Professional Staff | $395 - $795 |
| Support Staff | $175 - $350 |

33. BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business. Hourly rates may change in the future from time to time and are typically adjusted annually. Rate changes will be noted on the invoice for the first time period in which the revised rates become effective.

34. In addition to compensation for professional services rendered by the BRG Professionals, BRG also will be entitled to reimbursement for its reasonable costs and expenses incurred in connection with these Chapter 11 Cases, including, but not limited to, reasonable travel expenses (including lodging expenses and business meals), costs of reproduction, research, communications, our legal counsel, any applicable sales or excise taxes, and other direct expenses.

35. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by BRG and other comparable firms that render similar services under similar circumstances. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate BRG fairly for its work and to cover fixed and routine overhead expenses.

36. In the 90 days prior to the Petition Date, BRG received cash on account and payments totaling $689,518.96. As of the Petition Date, BRG holds $150,000 in cash on account (the "Cash on Account") from the Debtors, pursuant to the terms of the Engagement Letter.

37. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to the Petition Date, BRG may have incurred, but not invoiced, fees and reimbursable expenses that relate to the prepetition period. BRG intends to apply such amounts against the Cash on Account. As agreed with Debtors, the remaining Cash on Account will not be segregated by BRG in a separate account and will be held until the end of the Chapter 11 Cases and applied to BRG's final approved fees and expenses. Upon the termination of BRG's engagement, BRG will return any unused portion of the Cash on Account to the Debtors.

38. BRG will submit invoices to the Debtors consistent with the Fee and Expense structure and the Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by BRG for fees and expenses.

39. Because BRG is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtors request, on behalf of BRG, that BRG not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, BRG will file reports of staffing, compensation earned, and expenses incurred on a monthly basis (each a "Staffing Report") with the Court. Each Staffing Report shall contain summary charts which describe the services provided, including the number of hours worked by category, identify the compensation earned by each Additional Personnel, and itemize the expenses incurred for the relevant period. Time records shall (i) be appended to the Staffing Report, (ii) contain detailed time entries describing the task(s)

performed, and (iii) be organized by project category. Where BRG Professionals are providing services at an hourly rate, the time entries shall identify the time spent completing each task in half-hour increments; where BRG Professionals are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed. BRG's Staffing Reports shall be filed by the last day of the month for the previous month. BRG's first Staffing Report shall be filed by June 30, 2023 for the month of May. Objections or responses to the Staffing Reports shall be filed and served within fourteen (14) days of filing of the Staffing Report. For the avoidance of doubt, the Debtors submit that Mr. Duffy, Mr. Hengel, and the BRG Professionals are not, and shall not, be required to comply with Local Rule 2016-2.

40. The terms of retention for the Co-CROs and the Additional Personnel are consistent with and typical of compensation arrangements entered into by BRG and other comparable firms that render similar services under similar circumstances. The Debtors believe that the terms are reasonable, market-based, and designed to compensate BRG fairly for its work and to cover fixed and routine overhead expenses.

**BASIS FOR RELIEF**

41. The Debtors submit that the retention of the Co-CROs and the Additional Personnel is proper under section 363 of the Bankruptcy Code. Under applicable case law, in this and other jurisdictions, if the Debtors' proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of the debtor's business judgment, such use should be approved. See, e.g., *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re*

*Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

42. Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." See 11 U.S.C. § 105(a); see also *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Commc'ns Corp. v. The American Channel (In re Adelphia Commc'ns Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

43. The Debtors have engaged BRG to complete crucial, time-sensitive, and work-intensive projects. Accordingly, the Debtors submit that the decision to retain BRG, and employ Mr. Duffy and Mr. Hengel as Co-CROs, should be authorized because it is a sound exercise of the Debtors' business judgment. As set forth above, Mr. Duffy and Mr. Hengel have extensive experience as advisors for many companies undertaking restructuring efforts and the Additional Personnel are well qualified and equipped to support the Co-CROs and assist in restructuring advisory duties. BRG, Mr. Duffy, and Mr. Hengel in their capacity as Co-CROs, will provide services that are in the best interests of all parties in interest in these Chapter 11 Cases. Further, BRG will work with senior management as well as other employees to ensure that the Debtors

comply with the operational requirements imposed as a result of the filing of these Chapter 11 Cases. For the foregoing reasons, this Court should grant the relief requested in this Application.

## NOTICE

44. Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

## CONCLUSION

WHEREFORE the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  May 17, 2023
Wilmington, Delaware

Respectfully submitted,

/s/ *Kenneth J. Enos*
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Joshua Brooks (Delaware Bar No. 6765)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:  rbrady@ycst.com
         kenos@ycst.com
         jbrooks@ycst.com

- and -

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani (admitted pro hac vice)
Patricia B. Tomasco (admitted pro hac vice)
Daniel Holzman (admitted pro hac vice)
Alain Jaquet (admitted pro hac vice)
Razmig Izakelian (admitted pro hac vice)
Valerie Ramos (admitted pro hac vice)
Joanna D. Caytas (admitted pro hac vice)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
         pattytomasco@quinnemanuel.com
         danielholzman@quinnemanuel.com
         alainjaquet@quinnemanuel.com
         razmigizakelian@quinnemanuel.com
         valerieramos@quinnemanuel.com
         joannacaytas@quinnemanuel.com

*Proposed Counsel to the Debtors and Debtors in Possession*