## **EXHIBIT C**

**Engagement Agreement**

**STANDARD SERVICES AGREEMENT**

This Agreement is entered into as of April 17, 2023, between Omni Agent Solutions, Inc. ("**Omni**") and Bittrex, Inc. (together with certain of its affiliates, the "**Company**"),[1] in preparation of, and in connection with, the Company's potential chapter 11 cases. The parties hereto agree as follows:

**Terms and Conditions**

I.   SERVICES

(a)   Omni agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

(b)   The Company acknowledges and agrees that Omni will often take direction from the Company's representatives, employees, agents and/or professionals (individually, a "**Company Party**") with respect to providing Services hereunder. The parties agree that Omni may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by a Company Party to the same extent as if such requests, advice, or information were provided by the Company.

(c)   The Company agrees and understands that Omni shall not provide the Company or any other party with legal advice.

II.   RATES

(a)   The services to be rendered by Omni will be billed at rates ranging from $40.00 to $250.00 per hour as per the rate structure attached hereto and incorporated herein by reference as **Exhibit "A"** (the "**Rate Structure**"). *Notwithstanding the foregoing, Omni has agreed to provide the Debtors with (i) a $15,000 discount towards prepetition fees (contingent upon the filing of at least one of the Company's chapter 11 cases), and (ii) a twenty (20%) percent discount on the standard hourly rates set forth below in Exhibit A.* The Company agrees to pay all fees and reasonable and documented out of pocket expenses incurred by Omni in connection with providing Services hereunder.

(b)   Rates may be adjusted annually on or after January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum. Omni shall provide sixty (60) days prior

---

[1] To be clear, the term "Company" shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

written notice of any such proposed increases.

(c) Omni shall be compensated monthly for services it performs on behalf of the Company during the preceding calendar month. Invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and any orders of the bankruptcy court.

(d) Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e) Upon execution of this Agreement, the Company shall pay Omni a retainer of $65,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f) The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g) The Company shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any Company error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h) Payments to Omni for services rendered under the terms of this Agreement may be remitted by the Company using either or both of the following methods:

    (i) **Wire Transmission**
        (Omni's wire information will be included on each monthly invoice)

    (ii) **Check**
        Omni Agent Solutions
        c/o Accounts Receivable
        5955 De Soto Avenue
        Suite 100

Woodland Hills, CA 91367

III.   RETENTION IN BANKRUPTCY CASE

(a)   If the Company commences one or more cases pursuant to the U. S. Bankruptcy Code (the "**Code**"), the Company shall, as soon as practicable, file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b)   If any Company chapter 11 case converts to a case under chapter 7 of the Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

IV.   CONFIDENTIALITY

(a)   Each of Omni and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b)   If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

V.   PROPERTY RIGHTS

(a)   The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.  The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of

Omni. Fees and expenses paid by the Company do not vest in the Company any rights in Omni's property. Such property is only being made available for the Company's use during and in connection with the Services provided by Omni hereunder.

(b) Upon the Company's request at any time while this Agreement is in effect, Omni shall immediately deliver to the Company and/or the Company's retained professionals, at the Company's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

VI. BANK ACCOUNTS

At the request of the Company and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.

VII. COMPANY DATA

(a) The Company is responsible for, and Omni does not verify, the accuracy of the programs, data, and other information it or any Company Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "**SOFAs and Schedules**"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all the SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Omni that before delivery of any information to Omni: (i) the Company has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Omni by the Company may be retained by Omni until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days written notice. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Omni.

(d) If Omni is retained pursuant to bankruptcy court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

VIII. TERM AND TERMINATION

(a) This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (a) bad faith, gross negligence, or willful misconduct of Omni that causes material harm to the Company's restructuring under chapter 11 of the Code, (b) the failure of the Company to pay Omni's invoices for more than sixty (60) days from the date of invoice or (c) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with the Company and/or the Company's professionals, it will not be paid.

(b) If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, the Company shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder. Following payment of such amounts, Omni shall promptly provide the Company with all materials required to be returned to the Company by the terms of this Agreement and all in-process deliverables in their then-current state of completion.

(d) If this Agreement is terminated, Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

IX.  NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

X.  INDEMNIFICATION

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Omni and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c) The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI. LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Omni's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII. GENERAL

(a) <u>Complete Agreement</u>. Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) <u>Severability</u>. If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) <u>Modification</u>. This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Omni.

(d) <u>Assignment</u>. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e) <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each

of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f) <u>Force Majeure</u>. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) <u>Location Services</u>. The Company will use its best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h) <u>Non-Solicitation</u>. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i) <u>Independent Contractors</u>. The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j) <u>Attorney's Fees</u>. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

(k) <u>Choice of Law</u>. The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(l) <u>Arbitration</u>. Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(m) <u>System Improvements</u>. Omni reserves the right to make changes in operating

procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy case.

      (n)    <u>Headers</u>. Article and Section headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement

XIII.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

    If to Omni:    Omni Agent Solutions, Inc.
                      5955 De Soto Avenue
                      Suite 100
                      Woodland Hills, CA 91367
                      Tel: (818) 906-8300
                      Attn: Brian K. Osborne, Pres. & CEO
                      Email: Bosborne@omniagnt.com

    If to the Company:    Bittrex, Inc., *et al.*
                      701 5th Ave, Suite 4200
                      Seattle, WA 98104
                      Attn:   David Maria
                                    General Counsel
                      Tel:    206-413-8559
                      Email: dmaria@bittrex.com

    And to Counsel:    Quinn Emanuel Urquhart & Sullivan, LLP
                      Pennzoil Place
                      711 Louisiana St., Suite 500
                      Houston, TX 77002
                      Attn:   Patricia B. Tomasco, Esq.
                      Tel:    713-221-7227
                      Email: pattytomasco@quinnemanuel.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

*[The rest of this page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____
Name:  Paul Deutch
Title:    Executive Vice President

Agreed and accepted this ___ day of April 2023.

**BITTREX, INC., ET AL.**

By: _____
       David Maria
       General Counsel

# EXHIBIT

# "A"

# 2023 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Analyst | $40.00 - $75.00 per hour |
| Consultants | $75.00 - $195.00 per hour |
| Senior Consultants | $200.00 - $240.00 per hour |
| Solicitation and Securities Services | $250.00 per hour |
| Technology/Programming | $85.00 - $155.00 per hour |

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE / COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Creditor Database | RATE / COST |
|---|---|
| Data storage | Under 10,000 records - No charge<br>Over 10,000 records - .08 per Record |
| Per image storage | No charge |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $20.00 per Month |
| Usage | $.0825 per Minute |
| Call center personnel | Standard Hourly Rates |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

20

# 2023 Rate Sheet



| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | $65.00 per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |
| **Case Docket / Claims Register** | No charge |
| **Virtual Data Rooms** | Quote upon request |
| **Solicitation and Tabulation** | **RATE / COST** |
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |
| **Public Debt and Equities Securities and/Rights Offerings Services** | **RATE / COST** |
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $200.00 per hour |
| **UST Reporting Compliance** | **RATE / COST** |
| Assist debtors to satisfy jurisdicational requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |
| **Liquidating / Disbursing Agent** | **RATE / COST** |
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, ... | Standard hourly rates apply |
| **Real-Time Reports** | **RATE / COST** |
| Claims dashboard | No charge |
| Claim reports | No charge |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | No charge |
| **Miscellaneous** | **RATE / COST** |
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |

21