**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| DESOLATION HOLDINGS, LLC, *et al.,*[1] | Case No. 23-10597 (BLS) (Jointly Administered) |
| Debtors. | **Hearing Date: June 7, 2023 at 11:00 a.m.** **Objections Due: June 2, 2023 at 4:00 p.m.**[2] |
| | **Re: D.I. 5, 37** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN A CONSOLIDATED LIST OF CREDITORS, (B) FILE A CONSOLIDATED LIST OF THE DEBTORS' FIFTY LARGEST UNSECURED CREDITORS, AND (C) WITHHOLD OR OMIT CERTAIN CONFIDENTIAL INFORMATION, (II) ESTABLISHING PROCEDURES FOR NOTIFYING THE PARTIES OF COMMENCEMENT, AND (III) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain a Consolidated List of Creditors, (B) File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, and (C) Withhold or Omit Certain Confidential Information, (II)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] The Objection Deadline was extended for the U.S. Trustee by consent.

*Establishing Procedures for Notifying the Parties of Commencement, and (III) Granting Related Relief* (the "Motion") [D.I. 5, 37] [3], and respectfully states:

## I.    **PRELIMINARY STATEMENT**

1.      The bankruptcy process operates, like the rest of the court system, on the bedrock principle of American jurisprudence that the public has a right of access to judicial records. Only under limited circumstances may a federal court restrict or deny that access.  Here, the Debtors seek authority for a wholesale redaction or omission from "any Filings with the Court or made publicly available in these Chapter 11 Cases," of the following information: (a) the names, physical addresses, email addresses, and any other contact information of the Debtors' customers, be they natural persons, corporations or other entities; and (b) the names, physical addresses, email addresses, and any other contact information of "other creditors and employees who are natural persons and reside in the United States or are  otherwise [sic] protected by the General Data Protection Regulation (the "GDPR")."[4] Mot. ¶ 27; Proposed Final Order ¶ 6 [D.I. 5].  The documents that would be subject to such redactions or omissions include (but are not limited to) the Debtors' Creditor Matrix,[5] Top 50 Creditor List, the Schedules and Statements, the claims register, proof of claims, affidavits of service, lists of parties in interest with whom professionals have connections, and any other Filings containing the names, addresses, email addresses or other information of customers, other creditors and employees of the Debtors.

---

[3]    The U.S. Trustee does not object to that portion of the Motion which seeks authority to maintain a consolidated list of creditors, or for approval of certain procedures to serve the notice of the commencement of the cases on creditors.

[4]    This language suggests that residents of the United States are protected by the GDPR. That would be true, if at all, only as to U.S. residents who were citizens of the European Union or the United Kingdom.  *See* Point IV.F below.

[5]    Any capitalized terms not defined herein shall have the definition set forth in the Motion.

2.     The U.S. Trustee does not object to the filing under seal of the addresses or email addresses of customers or other creditors who are natural persons.  The U.S. Trustee does, however, object to the omission or the sealing of the *names* of such customers and creditors, and the omission or sealing of the names, addresses and other contact information for customers or creditors who are not natural persons.

3.     Disclosure is a basic premise of bankruptcy law.  Indeed, it is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.  The Bankruptcy Code contains very limited and specific exceptions to the general rule that bankruptcy proceedings should be open and transparent.  The movant must demonstrate extraordinary circumstances and a compelling need to obtain protection to justify any such request.  This is especially true as to information required to be filed by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, such as the Creditor Matrix, Schedules, and Statements, and disclosure of the parties in interest with whom professionals have connections.  Here, with nothing more than vague statements supporting the request, the Debtors seek extremely broad authority to conduct a significant portion of the bankruptcy cases under seal. If the Motion is granted, the ability of interested parties to evaluate the Debtors and their bankruptcy process and to communicate with each other will be significantly curtailed.

4.     In addition to creating unfavorable precedent in this and other crypto industry chapter 11 cases, and in any other bankruptcy case in which a debtor has creditors who are customers, allowing the Debtors to file incomplete creditor lists and Schedules and Statements is a slippery slope.  Do the Debtors intend to conduct all of their claim objections under seal?  Will certain creditors' treatment in a plan be redacted?  Will objections to the disclosure statement

and confirmation also be sealed?  Will the hearings before the Court in these cases have to be repeatedly closed?  It is well settled that, as a matter of promoting the integrity of the judicial system, bankruptcy proceedings must be open and transparent.  Accordingly, the Debtors' request should be denied.

5.    As to the names of those customers and other creditors who are individual citizens of the United Kingdom or of member countries of the European Union, the Debtors assert only cursorily that the GDPR constrains them from disclosing information regarding such creditors, at the risk of incurring penalties.  The Motion fails to establish that a foreign statute supplants the disclosure requirements of the Bankruptcy Code and fails to establish any entitlement to relief.  Also not addressed in the Motion is the GDPR's "safe harbor" permitting the Debtors to disclose such information in the Debtors' exercise of their rights and duties in these bankruptcy cases.  In another cryptocurrency matter, the United States Bankruptcy Court for the Southern District of New York recently ruled that the debtors could not redact the names of customers and creditors who were natural persons, regardless of the country of their citizenship, but could redact their addresses and email addresses under 107(c) of the Code.  *See In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y 2022).  As to customers and creditors who were not natural persons, the court did not authorize the redaction of any information.  Although there have not been any published decisions from this Court on this  issue, there have been conflicting bench rulings.  *Compare In re Cred Inc., et al.* (20-12836 (JTD)), D.I. 277, Dec. 18, 2020, Tr. 113:20 – 114:16 (allowing redaction of customer names based on the finding that the evidence established such names to have some intrinsic value, the disclosure of which could affect the ability of the debtors to sell the list) *with In re FB Debt Financing Guarantor, LLC* (23-10025 (KBO)), Mar. 21, 2023, D.I. 425, Tr. 53:11 – 55:18 (ruling that debtors had failed to meet their burden under Code

section 107(c)(1) that disclosure of names alone is a "means of identification," or that the disclosure would create an undue risk of identity theft or other unlawful injury to the individual or the individual's property, or that the GDPR prevented disclosure of names alone, and if it did, whether the Court should give comity to that foreign law).[6]  The U.S. Trustee requests that the Court limit any relief granted to that authorized in *Celsius*.

6.      Finally, it appears the Debtors are seeking to avoid having to file unredacted versions under seal of any documents the Court permits to be redacted in the publicly-viewable version. Instead, the Debtors propose providing unredacted copies to the Court only "upon request."  Proposed Final Order ¶ 7.  Such proposal is contrary to the procedures for sealing set forth in the Local Rules of this Court.  Del. Bankr. L.R. 9018-1(d).

7.       For these reasons, set forth in more detail below, the Motion should be denied as it concerns omission or redaction of information, except as to allow the redaction, but not the omission, from public filings of the addresses and e-mail addresses – but not names – of natural persons who are customers or other creditors of the Debtors, with unredacted versions of such documents directed to be filed under seal with the Court.

## II.     JURISDICTION AND STANDING

8.      Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28

---

[6]    In *FB Debt Financing*, this Court indicated it could simply deny the motion, or give the debtors the opportunity to return, to attempt to prove harm to the natural persons covered by the GDPR, and to present expert testimony on what information and its usage is covered by the GDPR, and why the Court should grant comity to foreign law if indeed it applied.  Counsel to the debtors indicated they were not in a position to provide further briefing on the issue, and would therefore accept the Court's ruling.  *See* Tr. 3/21/23 55:19-24.

U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion and this Objection.

9.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

10.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and this Objection.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

### III.      FACTUAL BACKGROUND

**General Case Background**

11.      On May 8, 2023, (the "Petition Date") the Debtors filed voluntary chapter 11 petitions.

12.      The Debtors, together with their non-debtor affiliates (collectively, "Bittrex"), operate cryptocurrency exchanges for both retail and institutional customers in several jurisdictions. Bittrex, Inc. ("BUS"), a Georgia corporation, operates Bittrex's cryptocurrency exchange for U.S. customers, whereas two foreign non-debtor affiliates operate Bittrex's cryptocurrency exchange for non-U.S. customers.

13.      The global Bittrex platform has approximately 1.2 million customers, including over 600,000 in the United States. Mot. ¶ 5.

14.      The Debtors assert that they commenced these Chapter 11 Cases for the purpose

of protecting their client base in the context of the orderly wind down of Bittrex's U.S. and Malta operations, a process that contemplates distributing to the Debtors' customers all of the cryptocurrency associated with their accounts. The Debtors seek to complete a wind down of the U.S. business and implement the wind down of the Malta business, and accomplish, as soon as practicable, a process that will (a) maximize value for the Debtors' creditors (including its customers) and other stakeholders; (b) leave intact Bittrex's non-U.S. business operations for the benefit of their several hundred thousand customers; and (c) to the extent necessary, "fairly" separate the non-U.S. operations. Mot. ¶ 8.

15.      Concurrent with the filing of this Motion, the Debtors have filed their proposed chapter 11 plan, which provides, among other things, that the Debtors' customers entitled to distributions will receive under the plan a 100 percent like-kind cryptocurrency distribution. With respect to customers, they will be entitled to access the Bittrex platform and withdraw cryptocurrencies consistent with the plan and with their allowed claims. The Debtors do not intend to monetize cryptocurrencies reserved for like-kind distributions to holders of allowed customer claims, and any change in the value of such assets following the Petition Date would be borne by the Debtors' customers. *Id.*

16.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Mot. ¶ 9.

17.      The U.S. Trustee has solicited interest in serving on an official committee of unsecured creditors.  As of the date this Objection was filed, the U.S. Trustee had not formed any official committees.

**The Motion and Supporting Declaration**

18.     On the Petition Date, the Debtors filed the Motion, seeking both interim and final

relief.

19.     On the Petition Date, Debtors filed the *Declaration of Evan Hengel, Co-Chief*

*Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions*

(the "Hengel Declaration" or "First Day Declaration") [D.I. 11].

20.     In the Hengel Declaration, Mr. Hengel stated that he is a Managing Director of

Berkeley Research Group ("BRG"), the Debtors' financial advisors, which was retained by the

Debtors on or about March 20, 2023 to assist in the process of preparing for chapter 11 filing.

Hengel Decl. ¶¶ 19, 21, 23.  A portion of his declaration addressed the relief sought in the

Motion.  In particular, Mr. Hengel stated the following (paraphrased) in support of that portion of

the Motion which seeks to redact information in Court filings relating to customers and creditors:

- The Debtors have maintained their customer list in strict confidence and the list is an important and valuable asset of the Debtors' estates. Third parties have shown interest in a potential acquisition of the Debtors' customer list, but the related discussions have been paused and, at this juncture, it is unclear whether they will or not resume in the future. Hengel Decl. Ex. A ¶ 10.

- The proposed omission is a measure that prevents customers' (but also other creditors' and employees') exposure to bad actors aiming to steal from (or cause other injury).  The inclusion of the customer UUIDs[7] in the Filings, compared to the disclosure of customers' names and other identifying information, sufficiently protects customers from the abovementioned risks because the UUIDs are not data that customers typically use on social media, or are normally included in records that are published online. Hengel Decl. Ex. A ¶ 11.

---

[7]     The Debtors provided each customer with a unique user ID (the "UUID[s]"), which (a) is information not available to other third parties; (b) is visible to a customer only after it has completed the process to login to its Bittrex account; (c) is not needed by customers to login to their Bittrex accounts; and (d) is not used for the identity verification process related to the Bittrex accounts.  Mot. ¶ 6.  In lieu of the customers' identifying information in the Filings, the Debtors will provide the related UUID for each customer.  Mot. ¶ 18.

- The disclosed information can be used to perpetrate identity theft and other scams aiming to injure the property of the targeted victims, or to locate and subject individuals to harassment, stalking or other violent acts. Moreover, the Debtors risk violating the GDPR, exposing the Debtors to potential civil liability and significant financial penalties. *Id.*

- The disclosure of customer personal data, together with their cryptocurrency balances in Bittrex's wallets, would make customers ripe targets of phishing, scamming, and even extortion.  Hengel Decl. Ex. A ¶ 12.

- The Bittrex exchange has not been hacked, thanks to its state-of-the-art security features. *Id.*

- BUS was concerned about its users becoming targets of phishing attacks and provided guidance to its customers on how to protect themselves.  BUS also received and tracked customer reports of being victims of phishing and scamming attacks.  *Id.*

- Given that the users of crypto exchanges are already being widely targeted by scammers, exposure of BUS's users' data, together with their cryptocurrency balances recorded by Bittrex, would result in a substantial increase of such criminal attempts.  *Id.*

- The GDPR imposes significant constraints on the processing (which includes the transferring or disclosing) of information relating to individuals (including names, home and email addresses, and business contacts) (the "Personal Data").  Hengel Decl. Ex. A ¶ 13.

- The GDPR has an extraterritorial reach, and it applies to the processing of Personal Data in the context of an establishment of a controller or processors in the European Economic Area ("EEA") or the United Kingdom ("UK"), regardless of whether the processing takes place in the EEA or the UK.  *Id.*

- Organizations outside the EEA/UK space can become subject to the GDPR when the Personal Data processing relates to individuals located in the EEA or UK, and violators of the GDPR risk severe penalties.  *Id.*

- The GDPR may apply to the Debtors because (a) BUS has thousands of individual customers who reside in an EEA member state or in the UK, or who are otherwise

citizens of those jurisdictions; and (b) Malta OpCo is an EEA entity required, in principle, to protect the Personal Data of its individual customers, independently of their nationality or residence.  *Id.*

- BUS's privacy policy for its users (the "Privacy Policy") assured them that BUS would protect their personal data, especially as the data relates to Know Your Customer ("KYC") and Anti-Money Laundering ("AML") information that BUS was required to collect by regulators.  Hengel Decl. Ex. A ¶ 14.

- Although the Privacy Policy contained a customary carveout for disclosure of personal data "if [BUS is] under a **duty to disclose or share [customer] personal data to comply with any legal obligation, judgment or under an order from a court, tribunal or authority**," making such personal data public in a court filing would run counter to the letter and spirit of BUS's contractual obligations under its Privacy Policy.  *Id.*

*See* Hengel Decl. Ex. A ("Evidentiary Support for First Day Pleadings") ¶¶ 10 -14 (emphasis added).[8]

21.     Mr. Hengel's declaration is the only evidence the Debtors have introduced to date in support of the Motion.  The statements quoted above are the only statements set forth in the Hengel Declaration concerning redaction of information in Court filings relating to customers and other creditors.

22.     Neither the Motion nor the Hengel Declaration indicate the number of natural persons who are customers or creditors of the Debtors and who are citizens of EU member countries or the UK.  Nor do the Debtors explain how they will determine which of their customers are citizens of EU or the UK, given that the only address the Debtors may have for

---

[8]     It is unclear whether the statements quoted above are based on Mr. Hengel's personal knowledge, or instead are based on Mr. Hengel's ". . . discussions with the Debtors' management team and advisors, [his] review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or [his] opinions based upon [his] experience and knowledge." Hengel Decl. ¶ 24.

certain of their customers are email addresses, and even for those customers who provided

mailing addresses, a mailing address does not establish citizenship.

23.     A hearing on the interim relief sought in the Motion took place at the "first day"

hearing on May 10, 2023.  On May 10, 2023, the Court entered an order granting interim relief

on the Motion (the "Interim Order") and set the hearing to consider approval of final relief for

June 7, 2023 [D.I. 37, 42].

**The Debtors' Policies for Sharing Customer Information**

24.     The Bittrex, Inc. Privacy Policy – Version 3.2 (Dec. 31, 2019) (the "Privacy

Policy"), a copy of which is attached as **Exhibit A** hereto, includes the following regarding the

disclosure of customer information to third parties:

**DISCLOSURES OF YOUR PERSONAL DATA**

**We may have to share your personal data with the parties set out below for the purposes set out in the table in Section 5 above.**

- **External third parties.**
- Suppliers and external agencies that we engage to process information on our and/or your behalf, including to provide you with the information and/or materials that you have requested.
- Our subsidiaries, associates and agents where necessary to facilitate your relationship with us.
- **Regulators, law enforcement agencies, and other authorities who require reporting of processing activities, or may request information from us, in terms of applicable law and in certain circumstances.**
- Professional advisers such as consultants, bankers, professional indemnity insurers, brokers and auditors.
- Other organizations where exchange of information is for the purpose of fraud protection or credit risk reduction.
- Debt recovery agencies who assist us with the recovery of debts owed to us.
- Third parties to whom we may choose to sell, transfer, or merge parts of our business or our assets (successors in title). Alternatively, we may seek to acquire other businesses or merge with them. If a change happens to our business, then the new owners may use your personal data in the same way as set out in this Notice.

We require all third parties to respect the security of your personal data and to treat it in accordance with the law (including applicable data protection and privacy law). We do not allow our third party business partners or service providers to use your personal data for their own purposes and only permit them to process your personal data for specified purposes and in accordance with our documented instructions. Furthermore, these third parties access and process your data on the basis of strict confidentiality and subject to the appropriate security measures and safeguards.

**We may also disclose your data:**

- **if we are under a duty to disclose or share your personal data to comply with any legal obligation, judgment or under an order from a court, tribunal or authority, or**
- if we believe your actions are inconsistent with our user agreements or policies, or to protect the rights, property and safety of Bittrex or others, or
- in connection with, or during negotiations of, any merger, sale of company assets, financing or acquisition of all or a portion of our business by another company; or
- if we have your consent or at your direction.

We may also share aggregated or de-identified information, which cannot reasonably be used to identify you.

Privacy Policy at pp. 15-16 (emphasis added).

> 25.    The Privacy Policy further provides:

Section 5 entitled "HOW WE USE YOUR PERSONAL DATA" state that Bittrex will only use your personal data when applicable law allows us to and most commonly, in the following circumstances:

- Where we need to perform the contract we are about to enter into or have entered into with you in respect of your customer relationship with us.

- Where it is necessary for our legitimate interests (or those of a third party) and your interests and fundamental rights do not override those interests.

- **Where we need to comply with a legal or regulatory obligation.**

The Privacy Policy also describes all of the ways that the Debtors plan to use personal data and the legal basis that they rely upon to do so.  These ways including the fulfillment of external **mandatory reporting obligations that Bittrex may have to public, regulatory, law enforcement or tax authority.**
.
Privacy Policy at p. 9 (emphasis added).

## IV.   <u>LEGAL FRAMEWORK</u>

### A.  **Debtors in Bankruptcy Are Required to File**
### **Certain Information Regarding Their Creditors**

26.     The Bankruptcy Code states that the debtor "*shall* . . . file, unless the court orders otherwise - a schedule of assets and liabilities," and "a statement of the debtor's financial affairs," among other information.  11 U.S.C. § 521(a)(1)(B)(i, iii) (emphasis added).  Rule 1007-1(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") provides that a debtor, other than one under chapter 9, shall file schedules of assets and liabilities, of current income and expenditures, of executory contracts and unexpired leases, and a statement of financial affairs, among other documents.

27.     Bankruptcy Rule 1007(a)(1) requires that a debtor in a voluntary case "file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E/F, G and H as prescribed by the Official Forms."

28.     Rule 1007-2(a) of the Local Rules of this Court provide that "[i]n all voluntary cases, the debtor shall file with the petition a list containing the name and complete address of each creditor in such format as directed by the Clerk's Office Procedures."  Del. Bankr. L.R. 1007-2(a) (emphasis added).

29.     Debtors in chapter 11 and chapter 9 cases are also required to file Official Form 201, setting forth a list of creditors with the largest unsecured claims that are not insiders. That form requires the provision of the following information for such creditors:  name; complete mailing address; the name, telephone number and email address of a creditor contact; and the nature and amount of claim.

**B.** **The Right of Public Access to Judicial Records**

30.    In American jurisprudence, there is a long-standing, common law right of public access to court records.  *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 591 (1978) ([i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.")  The public's right of access envisions "a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." *In re Cendant Corp.*, 260 F.3d 183, 194 (3rd Cir. 2001) (citations omitted).

31.    The "access to civil proceedings and records promotes public respect for the judicial process." *Id.* (citations omitted).  Such access is "rooted in the public's First Amendment right to know about the administration of justice." *Motors Liquidation Co. Avoidance Action Trust v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 41 (Bankr S.D.N.Y. 2016).  This right is "firmly entrenched and well supported by policy and practical considerations." *Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21 F.3d 24, 26 (2d Cir. 1994).

32.    The right of public access has given rise to "a strong presumption and public policy in favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).  This presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . . [P]ublic monitoring is an essential feature of democratic control." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).  The Second Circuit has issued this pointed guidance:

> There must be a strong presumption against sealing any document that is
> filed with the court.  Our courts do not operate in secrecy.  Except on rare
> occasions and for compelling reasons, everything that courts do is subject
> to public scrutiny.  To hide from the public entire proceedings, or even

> particular documents or testimony forming a basis for judicial action that
> may directly and significantly affect public interests, would be contrary to
> the premises underling a free, democratic society.

*City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991).

### C.   The Right to Public Access Is Codified in the Bankruptcy Code

33.   In our bankruptcy system, it is widely acknowledged that the governmental interest is safeguarding public access to judicial records is "of special importance . . . , as unrestricted access to judicial records fosters confidence among creditors regarding fairness in the bankruptcy system." *Motors Liquidation*, 561 B.R. at 41, *quoting Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1, 7 (1st Cir. 2005) (*quoting In re Crawford*, 194 F.3d. 954, 960 (9th Cir. 1999). Described as "fundamental to the operation of the bankruptcy system and . . . the best means of avoiding any suggestion of impropriety that might or could be raised," the policy of open inspection, as applied in this Court, cannot be underestimated. *Motors Liquidation*, 561 B.R. at 41-42, *quoting In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984).

34.   The common law right of public access to judicial records has been codified in section 107(a) of the Bankruptcy Code. *Togut v. Deutsche Bank AG (In re Anthracite Capital Inc.)*, 492 B.R. 162, 170, 173 (Bankr S.D.N.Y. 2013); *see also Gitto Global*, 422 F.3d at 7-8 (section 107 supplants the common law of public access). Pursuant to § 107(a), papers filed in bankruptcy cases and the Court's dockets are "public records, open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Anthracite*, 492 B.R. at 170.

### D.   The Limited Exception of Bankruptcy Code § 107(c)

35.   Despite its deep underpinnings, the right to public access to court records is "not absolute." *Nixon*, 435 U.S. at 598; *Motors Liquidation*, 561 B.R. at 42. "Every court has

supervisory power over its own records and files, and access has been denied where court files

might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *Orion Pictures*,

21 F.3d at 27 (noting that court may limit access where user's purpose is improper).

36.    Section 107(b)(1) of the Code provides that, "[o]n request of a party in interest,

the bankruptcy court shall, . . . protect an entity with respect to a trade secret or confidential

research, development or commercial information." 11 U.S.C. § 107(b)(1). Section 107(b) of

the Code provides a "narrow statutory exception" to public access in bankruptcy cases." *In re*

*Muma Services, Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002).

37.    Section 107(c)(1), added to the Code through the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005, "broadened the situations in which the court could protect

individuals from disclosure of sensitive information in light of the emerging problem of identity

theft." 2 *Collier on Bankruptcy* ¶ 107.LH[2] (16th ed.). The statute provides:

> (c)(1) The bankruptcy court, for cause, may protect an individual, with
> respect to the following types of information to the extent the court finds
> that disclosure of such information would create undue risk of identity
> theft or other unlawful injury to the individual or the individual's
> property:
>
>> (A) Any means of identification (as defined in section 1028(d) of title
>> 18) contained in a paper filed, or to be filed, in a case under this title.
>
>> (B) Other information contained in a paper described in subparagraph
>> (A).

11 U.S.C. § 107(c)(emphasis added).

38.    Section 1028(d)(7) of title 18 ("Fraud and related activity in connection with

identification documents, authentication features, and information") defines "means of

identification" as "any name or number that may be used, alone or in conjunction with any other

information, to identify a specific individual," including any –

> (A) name, social security number, date of birth, official State or
> government issued driver's license or identification number, alien

registration number, government passport number, employer or taxpayer identification number;

(B)  unique biometric data (such as finger print, voice print retina or iris image, or other unique physical representation);

(C)  unique electronic identification number, address, or routing code; or

(D)  telecommunication identifying information or access device (as defined in section 1029(e)).

18 U.S.C. § 1028(d)(7).

39.    The specific "purpose of § 107(c) is to set forth a limited exception to the general rule that all records are public." *In re French*, 401 B.R. 295, 305 (Bankr. E.D. Tenn. 2009). Accordingly, under the precise structure and deliberate terms of § 107(c), the Court, in the exercise of its discretion, *may* limit public access of certain identification information only if it determines that (1) *cause exists, and* (2) *to the extent* dissemination of the information would constitute an *undue risk* of identity theft. *Id*. (emphasis added).  The Supreme Court has "emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 1931 (2016).  "Undue," which appears as a modifier in section 107(c), is not defined in the Bankruptcy Code, and generally means "excessive or unwarranted." *Black's Law Dictionary* (3rd pocket ed. 2006). With regard to the statutory interpretation of modifiers, such as "undue," the Court has the "duty to 'give effect, if possible, to every clause and word of [the] statute.'" *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997) (interpreting "liquidated" and "noncontingent" as modifiers of "debts" in § 109(e)), *quoting United States v. Menasche*, 348 U.S. 528, 538-39 (1955).

40.    Given the express limitations in the statute permitting a bankruptcy court to "protect an individual" solely "to the extent" that "undue" risk is present, § 107(c)(1), like § 107 in general, "does not mandate sealing – only protection." *Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 753 (D. Del. 2018), *quoting Anthracite*, 492 B.R. at 180.  It follows

17

from this principle that the Court's consideration of a request for relief under § 107(c)(1)

necessarily entails a consideration of competing interests. *Id.*, 585 B.R. at 755-57.

**E.    The Debtors Have the Burden of Proof Under § 107(b)(1) and (c)(1)**

41.    In seeking to apply any exception to the general right of public access to judicial

records, codified by section 107(a) of the Bankruptcy Code, "[t]he burden is on the party who

seeks to overcome the presumption of access to show that the interest in secrecy outweighs the

presumption." *Cendant Corp.*, 260 F.3d at 194.   In *Cendant*, the Third Circuit Court of Appeals

further explained:

> [T]he party seeking the closure of a hearing or the sealing of part of the
> judicial record "bears the burden of showing that the material is the kind
> of information that courts will protect" and that "disclosure will work a
> *clearly defined and serious injury to the party seeking closure*."  In
> delineating the injury to be prevented, *specificity is essential*.  Broad
> allegations of harm, bereft of specific examples or articulated reasoning,
> are insufficient.

*Id.* (internal citations omitted, emphasis added).

42.    The moving party bears the burden of showing that a request to place documents

under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018

by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access."

*United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340

(D. Del. 1993); *accord Food Mgmt. Group,* 359 B.R. at 561 (Bankr. S.D.N.Y. 2007); *In re*

*Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).

43.    The burden of proof to seal or redact filed bankruptcy papers "is not an easy

burden nor should it be. . . . The party seeking impoundment must submit 'evidence the filing

under seal outweighs the presumption of public access to court records.'" *In re Creighton*, 490

B.R. 240, 244 (Bankr. N.D. Ohio 2013), *quoting Gitto/Global*, 321 B.R. at 373, *quoting In re*

*Muma Servs. Inc.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002).   "[S]ealing official documents," as

the Debtors would like, "should not be done without a compelling reason." *City of Hartford*, 942 F.2d at 135.

F.  **The General Data Protection Regulation**

44.     The EU's privacy law, known as the GDPR, became effective as of May 25, 2018, and establishes standards for entities that collect or process data on citizens and residents of EU member countries.[9]  At the unified EU level, the GDPR is administered by the European Commission ("EU Commission"), which is responsible for proposing EU-wide legislation, implementing decisions of EU member states, upholding EU treaties, and managing the EU's daily affairs.  Also, the European Data Protection Board, which includes representatives from data protection authorities of each EU member state, has promulgated guidelines for compliance with the GDPR.  *See* www.edpb.europa.eu.

45.     With respect to natural persons who are citizens of the UK, all data processing and collection of data prior to December 31, 2020 falls under EU's GDPR, because the UK was a member of the EU through that date.  Data collected after that date falls under the UK's GDPR, which can be accessed at https://uk-gdpr.org/.[10]  The UK's GDPR is substantially similar to the EU GDPR. Unless otherwise indicated, the Article numbers of the GDPR cited herein are the same Article numbers for both the EU and UK GDPR.

46.     An entity's obligations under the GDPR are determined by reference to whether the entity is a "controller" of information -- or merely a "processor" -- under the GDPR. Generally, a data processor is an entity that merely processes (*e.g.*, collects, stores or uses)

---

[9]     A copy of the GDPR can be accessed at https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=celex:32016R0679R(02) or https://gdpr.eu/tag/gdpr/.

[10]    *See* https://www.gdpreu.org/differences-between-the-uk-and-eu-gdpr-regulations/.

personal data on behalf or at the direction of a data controller.  GDPR Art. 4(8).  A data

controller is an entity that determines the purposes for which the personal data is processed, and

how the data is processed.  GDPR Art. 4(7) (an entity that "determines the purposes and means

of processing personal data").  The Debtors in these U.S. bankruptcy cases qualify as "data

controllers" under the GDPR.

47.     The GDPR protects the disclosure of "personal data," which includes "any

information relating to an identified or identifiable natural person ('data subject')."  GDPR Art.

4(1).  An "identifiable natural person" under the GDPR "is one who can be identified, directly or

indirectly, in particular by reference to an identifier such as a name, an identification number,

location data" and other attributes.  *Id*.

48.     Transactions involving the personal data of EU or UK citizens and residents who

are located within the EU or UK, or who are doing business with entities also based in the EU or

UK, are covered by the GDPR.  GDPR Art. 3.  The GDPR also has extraterritorial reach.  In

addition to EU and UK-based entities, the GDPR also applies to the processing by non-EU and

non-UK entities "of personal data of [individual] "data subjects who are in the [European]

Union," or the UK, regardless of citizenship, where the entity's processing generally concerns its

business or its monitoring of the data subjects' EU or UK-based behavior.  GDPR Art. 3(1, 2).

U.S. entities, for example, may be subject to the GDPR if they control or process data concerning

EU or UK citizens and residents.  *Id*.

49.     In the event that data controllers (e.g., the Debtors) collect personal data from an

individual "data subject" (e.g., a creditor of the Debtors), they must provide certain processing

information to the individual data subject, including contact information for the controller, the

purpose of the data collection, any intended recipients of the data, and whether the personal data

will be transferred outside the EU or UK.  GDPR Art. 13(1).  Processing personal data under the

GDPR is lawful if the data subject consents, if processing is necessary for contractual

performance, or if processing is "necessary for compliance with a legal obligation to which the

controller is subject," among others.  GDPR Art. 6(1).

50.    Within the particular territory of a given EU member, an independent public

authority, known under the EU GDPR as a "Supervisory Authority," and a "Commissioner"

under the UK GDPR, is responsible for monitoring compliance with the GDPR, enforcing the

GDPR's edicts, and conducting investigations.  The GDPR imposes a tiered structure of

corrective actions and administrative fines for violations of the GDPR, which are imposed by the

applicable Supervisory Authority or UK Commissioner.  A Supervisory Authority or UK

Commissioner may, for example, issue warnings for likely processing infringements of the

GDPR, issue reprimands for actual infringements, or suspend data flows to recipients in third

countries.  GDPR Art. 58(2).

51.    Also, "depending on the circumstances of each individual case" a Supervisory

Authority or UK Commissioner may impose administrative (*i.e.*, monetary) fines for

infringements of the GDPR.  GDPR Art. 83(1).  As an exercise of discretion, "[w]hen deciding

whether to impose an administrative fine and deciding on the amount of the administrative fine

in each individual case, due regard" must be given by the Supervisory Authority or UK

Commissioner to "the nature, gravity and duration of the infringement[,] taking into account the

nature[,] scope or purpose of the processing concerned," among other aggravating or mitigating

factors.  GDPR Art. 83(2).  A Supervisory Authority may impose an administrative fine of up to

€10.0 million, and the UK Commissioner up to 8.7 million pounds, or two percent of an

offending entity's global annual revenue for lesser processing infringements, and a fine of up to

€20.0 million, and the UK Commissioner up to 17.5 million pounds, or four percent of global annual revenue for other GDPR infringements, including the unauthorized transfer of personal data to third countries (*i.e.*, countries outside the EU or the UK).  GDPR Art. 83(4, 5).

52.      Pursuant to the GDPR, transfers of "personal data which are undergoing processing or are intended for processing after transfer to a third country" may "take place only if, subject to the other provisions of [the] Regulation," (*i.e.*, whether a GDPR-recognized legal basis applies to the processing of the data as a threshold matter), the data controller complies with certain "conditions" set forth in Chapter V of the GDPR.  GDPR Art. 44.  The Debtors' filings in these U.S. bankruptcy cases of documents containing Personal Information qualify under the GDPR as transfers of personal data to a third country.

53.      Generally, under GDPR Chapter 5, data processors such as the Debtors may transfer personal data to third countries such as the U.S. if they have met one of three conditions: (1) the EU Commission or a UK Commissioner has made a prior "adequacy decision" vis-à-vis the recipient third country; (2) the data processor has put in place one of several "appropriate safeguards;" or (3) if a specific "derogation" (*i.e.*, an exception) set forth in the GDPR applies. GDPR Arts. 45, 46, 49.  In these bankruptcy cases, it appears that solely the third condition – *i.e.*, the derogations in the GDPR – apply to the data transfers proposed by the Debtors in the Motion to Redact.[11]

---

[11]    The GDPR contains two antecedent conditions not applicable here.  First, under the GDPR, transfers of personal data to third countries also may first take place if covered by a prior "adequacy decision" of the EU Commission.  GDPR, Art. 45(1, 3).  Such a decision constitutes a finding by the EU Commission that the legal framework in place for the recipient third country provides an "adequate level of protection" for the personal data rights of EU individuals.  *Id.*  Because the EU Commission has made only a partial finding of adequacy with respect to the U.S., EU entities may transfer personal data to U.S. entities under GDPR Art. 45(1) only if covered by the Commission-approved EU-US Privacy Shield framework.  *See* www.privacyshield.gov.  To the extent that the Federal government and the Court are recipients of personal data of EU residents, they are neither eligible for nor signatories to the Privacy Shield.

54.    If a European or UK entity's transfer of personal data to a third country such as the U.S. is not covered by either a prior adequacy decision or an appropriate safeguard recognized under the GDPR, the data transfer may still be made under the GDPR if it is covered by one of the exceptions provided in GDPR Article 49 ("Derogations for specific situations"). Known in the GDPR as "derogations," the exceptions include:  the explicit consent of the individual data subject (*e.g.*, an employee) (GDPR Art. 49(1)(a)); the transfer is necessary for the performance of a contract between the individual and the data controller (GDPR Art. 49(1)(b)); or "***the transfer is necessary for the establishment, exercise or defence of legal claims***" ("Legal Claim Exception," GDPR Art. 49(1)(e) (emphasis added)).

## IV.    OBJECTION

55.    The Debtors have not overcome the long-standing presumption of the public's right to access court records.  It is well settled that honesty and full disclosure are paramount in bankruptcy.  The duty of disclosure is important in the chapter 11 context, where the debtor in possession serves as a trustee for the bankruptcy estate.  *In re Scott*, 172 F.3d 959, 967 n.6 (7th Cir. 1999).  In these cases, the Debtors have not overcome that presumption.

---

Second, in the absence of an adequacy decision pursuant to GDPR Art. 45(3), a data controller also may transfer personal data to a third country only if the controller has provided one of certain enumerated "appropriate safeguards."  GDPR Art. 46 (1, 2).  Such safeguards generally consist, among others, of:  instruments between public authorities involved in the transfers; binding inter-corporate rules approved by a Supervisory Authority; contracts with a third country recipient containing Supervisory Authority- or Commission-approved data protection clauses; a recipient's participation in a Supervisory Authority-approved code of conduct; or a recipient's certification by a Supervisory Authority.  GDPR Art. 46.

### A. The Debtors Have Not Established Grounds to Redact Customer Names Under Section 107(b) of the Bankruptcy Code

56.     The Debtors seek to redact or omit from all Filings (a) the customers' names, physical addresses, email addresses, and any other customers' contact information.  Mot. ¶ 27; Proposed Final Order ¶ 6 [D.I. 5].  The Debtors argue that such names effectively constitute a customer list, which is entitled to protection as confidential commercial information under section 107(b) of the Code and which, if disclosed, could allow competitors to poach those customers and interfere with the debtors' ability to sell their assets.  Mot. ¶ 17.

57.     Under section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (internal quotations omitted); *accord In re Borders Group, Inc.,* 462 B.R. 42, 47 (Bankr. S.D.N.Y., 2011).

58.     "The 'commercial information' exception is not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake." *Motors Liquidation Co.,* 561 B.R. at 43 (*quoting In re Dreier LLP*, 485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013)). "Evidence–not just argument–is required to support the extraordinary remedy of sealing." *Id.* at 43; *accord Dreier*, 485 B.R. at 823 (finding that "conclusory statements in [a declaration] are not probative").

59.     To meet its burden to show that a request to place documents under seal falls within the parameters of Section 107(b), a movant "must demonstrate *extraordinary circumstances and compelling need* to obtain protection." *Food Mgmt.*, 359 B.R. at 561 (emphasis added)(*citing In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)).  In addition, "[t]he moving party bears the burden of demonstrating that the information it is seeking to protect from public viewing is both commercial and confidential." *In re Williams*, No. 15-71767,

2017 WL 6278764, at *3 (Bankr. W.D. Va. Dec. 8, 2017) (citing *In re Oldco M Corp.*, 466 B.R. 234, 237 (Bankr. S.D. N.Y. 2012) and *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr. S.D. N.Y. 2007)).

60.    The Debtors have not demonstrated extraordinary circumstances or a compelling need to omit the names of those customer and other creditors who are natural persons, or the names and addresses of those customer-creditors who are not natural persons.  Nor do the Debtors cite any authority holding that the type of information they seek to seal is both confidential and commercial information under the Bankruptcy Code.  *See, e.g., In re Motors Liquidation Co.,* 561 B.R. 36, 44 (Bankr. S.D.N.Y. 2016) (holding that the identities of the owners of 10% or more of the equity interests of a party in an adversary proceeding are not confidential commercial information and denying motion to seal). The Debtors provide only conclusory statements regarding the information's commercial importance, and "statements made by lawyers in briefs are not evidence." *Id*.  "To put it clearly, just because information may be 'confidential' does not mean it is 'commercial information' entitled to the extraordinary procedure of sealing." *Id*.

61.    The information the Debtors seek to conceal here falls directly into the category of information that is required to be disclosed when a party avails itself of the protections of the Bankruptcy Code.  *See* 11 U.S.C. § 521; Fed. R. Bankr. P. 1007; Del. Bankr. L.R. 1007-1(a) and 1007-2(a). The Debtors, who have voluntarily sought relief in this Court, have no basis for sealing the Creditor Matrix, Schedules, Statements, or the list of the largest unsecured creditors. Congress was clear that bankruptcy proceedings must be transparent, and transparency requires pleadings to be filed on the public docket unless narrow and enumerated exceptions apply.  Such exceptions do not apply here.

62.    The purpose of requiring a debtor to disclose all assets, liabilities and business dealings is to ensure that creditors have reliable and accurate information which they can rely on to determine the status of the debtor's financial affairs and to trace a debtor's financial history. *In re Haynes*, 549 B.R. 677, 687 (Bankr. D. S.C. 2016). The bankruptcy schedules and statements of affairs are designed to elicit certain information necessary to the proper administration and adjudication of the case. *Id*.

63.    As stated by the court in *Celsius*, the schedule of liabilities "constitute prima facie evidence of the validity and amount of the claims of creditors unless they are scheduled as disputed, contingent, or unliquidated," under Fed. R. Bankr. P. 3003. *Celsius,* 644 B.R. at 297. This transparency is "'important because creditors can look at the schedule and see whether their claim has been listed, and whether it is an undisputed claim, in which case, they don't have to file a proof of claim.'" *Id.* (quoting the court's statements at the hearing). The court further noted that "[e]nabling parties in interest and the public to see the identity of creditors and the amount of their claims, and then tracking the disposition and treatment of claims during the bankruptcy case, is important to the fairness and public perception of the bankruptcy process. Only in the rarest of cases should these ordinary expectations be upset." *Id.* [12]

64.    The disclosure of the identity of the Debtors' customers is also important because the amounts owed to the Debtors or the amounts which the Debtors owe are likely probative to

---

[12]    The Court in *Celsius* rejected the debtors' "anonymization" process, whereby the debtors would send individual e-mails to every account user that informed them of the amount at which their claim had been scheduled, and a number that would allow them to go to the claims agent's website to confirm the same. 644 B.R. at 287. The Court was not persuaded by this proposed solution, in part "because the public schedules do not merely serve the interests of individual creditors, but, rather, also serve the interests of creditors and the public in general—all parties and the public share an interest in complete transparency, with only the rarest of exceptions." *Id.* at 297.

the Debtors' ability to confirm its proposed chapter 11 plan.[13]   The Debtors have made no

showing that disclosure of the identities of some of its creditors are "reasonably [] expected to

cause the entity commercial injury."   *In re Alterra Healthcare Corp.,* 353 B.R. 66, 75 (Bankr.

D.Del., 2006). The Debtors simply cannot seek bankruptcy protection and then do business

behind a shield of secrecy.

65.     The Privacy Policy also provides that BUS may have to share personal data with

(i) external third parties, (ii) suppliers and external agencies, (iii) subsidiaries, associates, agents,

(iv) regulators, law enforcement agencies, and other authorities who require reporting of

processing activities, or may request information from us, in terms of applicable law and in

certain circumstances, (iv) professional advisers such as consultants, bankers, professional

indemnity insurers, brokers and auditors, (v) organizations where exchange of information is for

the purpose of fraud protection or credit risk reduction, (vi)  debt recovery agencies, (vii) and

other third parties in connection with a sale, transfer, or merger.  Privacy Policy p. 14.

66.     As the Privacy Policy allows customers names and contact information to be

shared with numerous third parties, it is not secret or confidential. Moreover, the Privacy Policy

allows the Debtors to share privacy information if legally required to do so, as they are here,

under the statutory requirements of the Bankruptcy Code.

67.     The Debtors have neither tried to meet their burden of showing more than

speculative harm, nor have they established that such relief is actually necessary to protect a

party from harm. As to customers who are natural persons, it is difficult to imagine how they

could be poached if all that is disclosed is their name, with no contact information.

68.     Like the Debtors in the present case, the debtors in *Celsius* sought authority to

---

[13]   *See* Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and Its Affiliated Debtors  [D.I.
10].

redact the names and addresses of all of their customers, whether natural persons or entities, arguing, as the Debtors do here, that such information was confidential commercial information and could lead to competitors "targeting the debtors customers and undermine[ing] the Debtors' ability to reorganize." *Celsius*, 644 B.R. at 291. The court rejected this argument, describing the debtors' "larger problem" to be the same as in the present case, which is that before and after they filed for bankruptcy, the debtors froze all customer accounts, refusing to permit any withdrawals. The court noted that such action "has not won many fans among the Debtors' customers." *Id.*[14]

69. The *Celsius* court recognized that it may be true, as the debtor's witness explained, that "it is expensive and time consuming for crypto companies to identify, attach, and enroll potential customers." *Id.* at 292. The court indicated, however, that it did "not believe that is sufficient evidence to support sealing of the names of all creditors." *Id.* As to individual creditors, the court rejected the idea that names alone, without e-mail and physical addresses linked to such names, meet the stand for confidential commercial information under section 107(b)(1), because "[n]ames alone are simply not enough to facilitate a competitor's theft." *Id.* at 293. The court pointed out that by sealing individual customers' home and email addresses to protect those customers under section 107(c), the debtors would also "gain protection of whatever commercial value may flow from that information." *Id.* at 292. The court emphasized, however, that it was granting that protection with respect to addresses of individual customers, not for corporate, LLP or LLC customers. *Id.* [15]

---

[14]   The *Celsius* court further noted that, as here, the Debtors did not address with evidence whether creditors who deposited crypto assets with the Debtors also maintain accounts with the debtors' competitors. *See id.* at 292.

[15]   In so doing, the *Celsius* court recognized rulings in other cases that reached different results, including the ruling of this Court in *Cred*. *See id.* at 292.

70.     "The strong public policy of transparency and public disclosure in bankruptcy cases requires **very narrow exceptions and only on strong evidentiary showings**."   *Id.* at 292 (emphasis added).  In these cases, as in *Celsius*, the Debtors' evidentiary showing is insufficient to justify the wholesale sealing of creditors identities. *Id.*

**B.  The Debtors Have Not Established Grounds to Redact the Names of Customers and Creditors Who Are Natural Persons Under Section 107(c) of the Bankruptcy Code**

71.     The Debtors have made no attempt to satisfy their burden of proof under Bankruptcy Code § 107(c).  As that statute is applied in these cases, for the Court to exercise its discretion to protect the names of the Debtors' customers and other creditors who are natural persons, the Debtors must furnish evidence and make a concrete showing that filing *only the names*, with no other information, of such natural persons, "*would* create" an "*undue* risk" of identity theft or other unlawful injury to those employees or their property.  11 U.S.C. § 107(c) (emphasis added).

72.     This issue also was addressed in *Celsius.*  There, the court determined that "[i]dentifying the individual account holders by name, without physical and email addresses, is insufficient information to expose customers to risks of identity theft or personal danger."  644 B.R. at 293.  The court recognized that sealing such information from public disclosure "risks transforming the open and transparent bankruptcy process into something very different, which the Court is loath to do without a strong showing of real and not speculative risks."  *Id.*

73.     The Debtors in these cases have not set forth any facts demonstrating that disclosure of only the names of the Debtors' customers and creditors who are natural persons, without any other contact information, would create any risk, let alone any undue risk, of identity theft or other unlawful injury.   The Debtors provide, as an example, one incident that took place in another bankruptcy case in this District in 2017, but in that instance an address with provided

along with the name. Mot. ¶ 22 (discussing *In re Charming Charlie Holdings, Inc.*, No. 19-11534 (CSS)).  Contrarily, *In re Forever 21, Inc.,* although cited by the Debtors in support of their position, only involved the disclosure of addresses but not names.  Mot. ¶ 22.

74.     Moreover, the Privacy Policy, cited above, supports the argument that the information sought to be redacted does not meet any exception to section 107(a) of the Code. The Privacy Policy states that BUS may have to share personal data with:  (i) external third parties; (ii) suppliers and external agencies; (iii) subsidiaries, associates, and agents; (iv) regulators, law enforcement agencies, and other authorities who require reporting of processing activities, or may request information from [BUS], in terms of applicable law and in certain circumstances; (iv) professional advisers such as consultants, bankers, professional indemnity insurers, brokers and auditors; (v) organizations where exchange of information is for the purpose of fraud protection or credit risk reduction; (vi) debt recovery agencies; and (vii) other third parties in connection with a sale, transfer, or merger.  Privacy Policy p. 14.

75.     Consistent with the public right to access of judicial documents, Bankruptcy Code § 107(c) by its express terms requires both proof of undue risk – *i.e.*, not merely a slightly possible, theoretical risk – as well as a certainty of such undue risk.  11 U.S.C. § 107(c).  The modifier "undue" must be proven by a movant under § 107(c)(1), and not read out of the statute. *In re Mazzeo,* 131 F.3d 295, 302 (2d Cir., 1997).  In the Motion, the Debtors merely hypothesize, without the evidence required, that there is a possibility of just ordinary risk.  That simply does not suffice to fulfill the Debtors' heavy burden of proof under § 107(c).  *Cendant*, 260 F.3d at 194 ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient"); *see also Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 144-45 (2d Cir. 2016) ("'Broad and general findings' and 'conclusory assertion[s]' are

insufficient to justify deprivation of public access to the record, . . . 'specific, on-the-record findings' are required.") (*quoting United States v. Erie Cty.*, 763 F.3d 235, 243 (2d Cir. 2014) (internal quotations omitted).

76.     Without any additional proof establishing an "undue" risk of identity theft or other unlawful injury to the Debtors' customers and creditors who are natural persons by the mere disclosure of their names, the Motion must be denied under § 107(c)(1).

### C.     Names of Natural Persons Covered by the GDPR Should Not Be Redacted

77.     The Debtors request the redaction or omission of names and residential addresses of creditors who are natural persons, and are citizens of a member nation of the EU, or are UK citizens, covered by either the EU GDPR or the UK GDPR.  That aspect of the Motion should be denied because:  (i) the scope of the Debtors' request is excessive; (ii) the GDPR does not supersede U.S. bankruptcy law for purposes of the Motion; and (iii) the GDPR makes an exception for the filing of such information in these bankruptcy cases.  The Motion also appears to request that the names and addresses of natural persons who are residents of the United States be redacted, even if they are not customers of the Debtors, implying that they too are covered by the GDPR.  *See* Mot. ¶ 27.  However, as discussed above, the GDPR by its terms applies only to citizens of the European Union and the United Kingdom.

### 1.     The Bankruptcy Code, Not the GDPR, Controls Here

78.     The Debtors, which consented to the jurisdiction of this Court by filing voluntary petitions for bankruptcy relief, have failed to set forth any authority for their implied proposition that the GDPR supersedes U.S. interests, as implemented through the disclosure provisions of the Bankruptcy Code, the Bankruptcy Rules, and related law.  To the contrary, in these chapter 11 cases, the Court simply may not be bound by the GDPR.

79.     In this regard, in the analogous discovery context, the Supreme Court has weighed

in very clearly.  With respect to a French "blocking statute" that authorized criminal penalties for

the production of economic, commercial and financial documents in foreign judicial

proceedings, including U.S. proceedings, the Court unequivocally ruled: "It is well settled that

such [foreign blocking] statutes do not deprive an American court of the power to order a party

subject to its jurisdiction to produce evidence even though the act of production may violate that

statute."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dt. Ct. for the Southern Dt. of Iowa*,

482 U.S. 522, 544 n.29 (1987); *see also Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d. 409, 422-

25 (S.D.N.Y. 2016) (denying European banks' objections to discovery based on 1995 EU

Directive 95/46/EC (part of the UK Data Protection Act), because as a matter of comity, the

United States' national interests outweigh those of the UK); *Royal Park Investments SA/NV v.*

*HSBC Bank USA, N.A.*, Case No. 14-CV-8175 (LGS), 2018 WL 745994 (S.D.N.Y. Feb. 6, 2018)

(holding that plaintiff improperly withheld custodial information and substantially redacted

individual names and email addresses in deference to Belgian Data Privacy Act, which restricts

transfer of personal data to countries outside the EU).

80.     The *Celsius* court addressed this issue as well.  There, as here, the debtors sought

authorization to redact the names, email addresses, and home addresses of any citizens of the UK

or European Economic Area member countries, arguing that the disclosure of those names and

addresses would risk violating the UK GDPR and the EU GDPR, which would expose the

Debtors to potential civil liability and significant financial penalties. *Celsius*, 644 B.R. at 295.

The court noted that there, as here, the debtors provided "no legal authority explicitly dictating

why the UK GDPR and the EU GDPR should apply to the bankruptcy cases of the Debtors filed

in the United States, or specifically, why the foreign laws would take precedence in a situation

where United States law requires the disclosure of the information." *Id.* The court examined whether disclosure of the names and addresses of such natural persons could be protected under 107(c), but indicated that it remained "unconvinced, beyond speculation, that the disclosure of names alone (without email or physical addresses) presents an imminent risk of harm." *Id.* The court also indicated that it would "not treat the UK and EU citizens differently than the United States citizens implicated in this case filed in New York." *Id.* The court ruled that the Debtors could redact home addresses and email addresses of any individual, including those located in the UK or the EU member countries, but denied the proposed redaction of the names of the natural persons. *Id.* The U.S. Trustee believes the same result is warranted here.

81.    The Debtors should not be allowed to eviscerate the long-standing disclosure requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court and the long-standing policies underlying those authorities. While the UK and the EU have a legitimate interest in enforcing their own law, this Court's interest in enforcing the Bankruptcy Code in these cases is superior. The Debtors have put forth no proof whatsoever, let alone the plausible evidence required, that their applicable Supervisory Authority or UK Commissioner would unduly pursue enforcement action and issue penalties against them for obeying both U.S. law and a specific disclosure order of this Court.

### 2. Personal Information May Be Filed Under the GDPR Legal Claim Exception

82.    In addition, the Debtors have failed to discuss the GDPR's Legal Claim Exception, which facially appears to permit the disclosure of the names (as well as residential addresses) of EU and UK creditors in these bankruptcy cases. Pursuant to the Legal Claim Exception, the Debtors' transfer of the names of EU or UK creditors to a third country such as the U.S., by filing the same in these bankruptcy cases, is allowed to the extent that "the transfer

is necessary for the establishment, exercise or defence of legal claims."  GDPR, Art. 49(1)(e).

Recital 111 to the GDPR, which interprets the Legal Claim Exception, expressly provides that

under the exception, a transfer of data, such as the names of EU or UK creditors at issue here,

may take place where it is "occasional and necessary in relation to a contract or a legal claim,

regardless of whether in a judicial procedure or whether in an administrative or any out-of-court

procedure, including procedures before regulatory bodies."  GDPR Art. 49(1)(e), Recital 111.[16]

83.    According to official guidelines promulgated by the European Data Protection

Board, the Legal Claim Exception broadly "covers a range of activities."  *Guidelines 2/2018 on*

*Derogations of Article 49 Under Regulation 2016/679* (May 25, 2018) ("EDPB Guidelines").[17]

The EDPB Guidelines expressly provide that the Legal Claim Exception includes "actions by the

data exporter to institute procedures in a third country[,] for example commencing litigation or

seeking approval of a merger."  EDPB Guidelines § 2.5.  According to the European Data

Protection Board, such third-country procedures, *e.g.* – legal proceedings in a third country –

"must have a basis in law, including a formal, legal defined process," and "a close link is

necessary between a data transfer and a specific procedure regarding the situation in question."

*Id*.

84.    Here, it cannot be disputed that the requirements imposed by the Bankruptcy

Code, Bankruptcy Rules and Local Rules of this Court constitute a well-recognized, "formal,

---

[16]    A copy of Recital 111 may be found at https://gdpr.eu/Recital-111-Exceptions-for-certain-cases-of-international-transfers. The Recitals of the EU GDPR also apply to the UK GDPR.  *See* https://ukgdpr.fieldfisher.com/recitals/.

[17]    A copy of the EDPB Guidelines may be found at https://edpb.europa.eu/our-work-tools/our-documents/publication-type/guidelines_en.  The EDPB has not applied to UK since January 1, 2021.  https://edpb.europa.eu/sites/default/files/files/file1/edpb_statement_20201215_brexit_updated202101 13_en.pdf.  Nevertheless, the EDPB Guidelines may still be instructive in interpreting the UK GDPR with respect to the provisions discussed in this Objection, as such provisions in the UK GDPR are nearly identical to those of the EU GDPR.

legal defined process" within the meaning of EDPB Guidelines § 2.5.  It follows that, because

full disclosure of the names of all creditors is required under Bankruptcy Rule 1007(a)(1) and

Local Rule 1007-2(a), the Debtors' transfers of personal data to a third country under the GDPR,

*i.e.* – their filing of the names of EU or UK creditors in these U.S. bankruptcy cases – is

unquestionably "necessary for the establishment [and] exercise" of the Debtors' "legal claims" in

these U.S. bankruptcy cases.  GDPR Art. 49(1)(e).  By virtue of having voluntarily requested

relief under chapter 11 of the Bankruptcy Code, the Debtors subjected themselves to the non-

discretionary disclosure requirements of Bankruptcy Code section 521, Bankruptcy Rule

1007(a)(1) and Local Rule 1007-2(a).  Thus, the Debtors' filing of unredacted names of EU and

UK creditors -- *i.e.*, their transfers of personal data to a third country under the GDPR -- fulfills

the requisite "necessary" standard of the Legal Claim Exception of GDPR, Art. 49(1)(e).  For

these same reasons, the filing of the names of EU and UK creditors by the Debtors is "necessary"

within the meaning of Recital 111 to GDPR, Art. 49(1)(e), and such filing fulfills the "close

link" requirement of EDPB Guidelines § 2.5.

85.      In addition, the Debtors' disclosure of the names of EU and UK creditors in these

cases also squarely satisfies the requirement of the applicable GDPR Recital.  GDPR Art.

49(1)(e), Recital 111 (data transfers must be "occasional").  The Debtors are required to include

the names of EU and UK creditors in the Creditor Matrix, the Consolidated Top 50 Creditors

List and also in the Debtors' Schedules and Statements of Financial Affairs.  11 U.S.C. §

521(a)(1)(B), Bankruptcy Rules 1007(a)(1) and 1007-1(b), and Official Form 201.  Therefore, in

terms of GDPR Recital 111, the underlying "data transfers" of names of EU and UK creditors by

the Debtors will occur with only "occasional" frequency within the meaning of the Recital.

GDPR Art. 49(1)(e), Recital 111.

86.     Though the Debtors bear the burden of proof here, the Motion fails to bear any indication that they have pursued any threshold assessments of their risk of penalization under the GDPR.  There is, for example, no proof that the Debtors simply sought the consent of the EU and UK creditors to include their names in the Creditor Matrix, the Consolidated Top 50 Creditors List, and the Debtors' Schedules and Statements, rather than asking for extraordinary judicial relief.  GDPR Art. 49(1)(A).  The Motion also fails to demonstrate that the Debtors have made an inquiry with their applicable EU GDPR Supervisory Authority or UK Commissioner about the lawfulness of transferring the names of the EU and UK creditors to the U.S. by filing that information in these bankruptcy cases pursuant to the requirements of the Bankruptcy Rules and the Local Rules of this Court or seeking a permit from their Supervisory Authority or UK Commissioner to do so.   Particularly in light of the tenets of the Legal Claim Exception, of the discretion expressly given by the GDPR to the Debtors' Supervisory Authority or UK Commissioner, and of the strength of the American laws militating in favor of full disclosure in these bankruptcy cases, these types of diligence by the Debtors are crucial at this relatively early stage of the implementation of the GDPR, and critical to the Debtors' faithful fulfillment of their fiduciary duties here.

87.     For the reasons set forth above, the relief requested by the Motion as it regards EU and UK citizens who are individual customers-creditors of the Debtors should be denied, except so as to allow the redaction of their residential and email addresses.

### D.  The Debtors Must File Under Seal Unredacted Versions of All Documents They File in a Redacted Format

88.     In the event the Court grants any portion of the Debtors' Motion seeking to redact customer and creditor information, it appears that the Debtors are seeking to bypass the requirement that they file under seal an unredacted version of each redacted document filed.

Instead, the Debtors propose to provide such unredacted documents to the Court only "upon request." Under the Local Rules of this Court, it is not sufficient to simply file a redacted version of a document and nothing else, especially with respect to documents that are required by the Bankruptcy Code and the Bankruptcy Rules to be filed, such as the Creditor Matrix, and the Schedules and Statements. *See* Del. Bankr. L.R. 9018-1(d).

89.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the final relief requested by the Motion, as it concerns omission or redactions of information, except to allow for the redaction, and not the omission, from public filings of the addresses and email addresses – but not names – of natural persons who are customers or other creditors of the Debtors and grant any such other and further relief that the Court deems just and proper.

Respectfully Submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

Dated: June 2, 2023

By: */s/Richard L. Schepacarter*
Richard L. Schepacarter, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Richard.Schepacarter@usdoj.gov

37