**Exhibit B**

# Appendix B: Non-Disclosure, Non-Compete and Invention Agreement (Employee)

# NON-DISCLOSURE, NON-COMPETE, AND INVENTION AGREEMENT

In consideration of my employment, the continuation of my employment, and the compensation to be paid to me by Bittrex, Inc. ("Bittrex," "Employer," or the "Company"), I agree as follows:

1. For purposes of this Agreement:

    A. "Competing Services or Products" shall mean services, products or processes, of any person or organization other than Employer, in existence or under development, which are substantially the same, may be substituted for or applied to substantially the same end use as the services, products or processes with which I work during the time of my employment with Employer or about which I acquire Confidential Information through my work with Employer.

    B. "Competing Organization" shall mean any person or organization, including myself, engaged in, or about to become engaged in, production, distribution, marketing, providing or selling of a Competing Service or Product.

    C. "Confidential Information" shall mean all information relating to the present or planned business of Employer which has not been released publicly by authorized representatives of Employer. I understand that Confidential Information may include, but is not limited to, trade secrets and know-how, inventions, marketing research and programs, strategic plans, employee, customer, underwriter and other supplier information, information from customer records, financial data, mailing lists, software systems, operations and employee manuals. I understand further that Confidential Information also includes all information received by Employer under an obligation of secrecy to a third party.

2. I will exert my best efforts in the performance of my duties as an employee of Employer and will remain loyal to Employer during the term of my employment. During the term of my employment with Employer, I will not enter into any agency relationship with any third party whose interests might conflict with those of Employer. I do not presently, nor shall I, during the term of my employment with Employer, possess any significant interest, directly, through my family, or through organizations or trusts controlled by me, in any third party whose interests might conflict with those of Employer.

3. I will at all times preserve as confidential all Confidential Information that has been or may be obtained by me. I will not at any time, without written authority from

Employer, use for my own benefit or purposes, or disclose to others either during my employment or thereafter, except as required by my employment with Employer, any Confidential Information or any copy or any notes made from any Confidential Information. I will not remove any written documentation of Confidential Information from the premises of my Employer except as my duties shall require, and upon leaving my employment for any reason I will turn over to my supervisor or my supervisor's designee all written documentation of Confidential Information. I understand that my obligations with respect to Confidential Information shall continue even after leaving the Company for any reason. This provision shall not apply after Employer's information has been disclosed voluntarily to the public, has been developed independently and disclosed by others, or otherwise enters the public domain through lawful means.

4. ***Agreement not to compete.*** I agree that during the term of my employment, and for a period of six (6) months immediately after I leave my employment for any reason, I will not directly or indirectly:

    A. Engage in any business competitive with Employer within a thirty (30) mile radius of any office or branch of Employer. Engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, or (iii) becoming interested directly or indirectly in any such business. Employee agrees that this non-compete provision will not adversely affect Employee's livelihood.

    B. Solicit on my behalf or on behalf of any other person, firm, company or corporation, any person, firm, partnership, association, corporation, business organization, entity, or enterprise, the identity of which was made known to me, or about which I had specialized or confidential knowledge or contact by virtue of my employment by Company, and which:

        (1) has received any services from Company ("Customer"), or
        (2) has been contacted by me before the termination of my employment for the purpose, or with the intent, of providing services ("Prospective Customer").

    C. Request or advise any Customer, Prospective Customer or other person, firm, partnership, association, corporation, business organization, entity or enterprise having any business dealings with Company, to withdraw, curtail, change or cancel its business dealings with Company or otherwise interfere with Company's actual or prospective relationship with a Customer or Prospective Customer.

       D.       Encourage, induce or attempt to influence any employee of Company to terminate his or her employment.

**Initials** _____

    5.    ***Inventions.*** All ideas, marketing systems, computer programs or methods, formulae, inventions, discoveries, improvements, secrets, original works or processes or authorships, whether or not patentable or copyrightable (collectively "Inventions"), made or developed by me during my employment or within twelve (12) months after my employment ends, shall be the exclusive property of and owned by Employer.  I assign all of my rights, title and interest in and to all Inventions to Employer and I agree to provide Employer at its request and expense, such instruments and evidence as it may reasonably request to perfect, enforce and maintain Employer's rights to such Inventions.  I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C. §101, et. seq.).

       A.       I attach hereto as Exhibit A, a complete list of all Inventions, if any, made or conceived or first reduced to practice by me, alone or jointly with others prior to my employment relationship with Company that are relevant to Company's business, and I represent and warrant that such list is complete.  If no such list is attached to this Agreement, I represent that I have no such Inventions at the time of signing this Agreement.  If I use or incorporate an Invention in which I have an interest and that is not otherwise a Company Invention into any Company Invention, I hereby grant Company a non-exclusive, fully paid-up, perpetual, world-wide license of my interest in such Invention, to make, use, sell, offer for sale, import and sublicense, such Invention without restrictions of any kind.

       A.       Upon leaving my employment for any reason, I will turn over to my supervisor or my supervisor's designee all prototypes, computer programs and related matters, drawings, manuals, letters, brochures, agreements, reports, customer lists, customer data, mailing lists, research and all other material and records of any kind pertaining to any and all Inventions in my possession.  I will not retain or disclose any copies of such materials.

B.       I agree to execute, verify and deliver such documents and perform such other acts (including appearing as a witness) Employer may reasonably request to effect, perfect,

maintain or evidence such proprietary rights and the assignment thereof. In addition, I agree to execute, verify and deliver assignments of such proprietary rights to Employer or its designee. My obligation to assist Employer with respect to such proprietary rights shall continue beyond the termination of my employment, but I shall be compensated at a reasonable rate after my termination from employment for such time I actually spend at Employer's request.

       C.      Should Employer be unable, for any reason after reasonable effort, to secure my signature on any such document, I hereby irrevocably designate and appoint Employer and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to effect, perfect, maintain or evidence its ownership in the Inventions with the same legal force and effect as if executed by me. I hereby waive any and all claims of any nature which I now or may hereafter have for infringement of any proprietary rights in any Inventions assigned to Employer.

       D.      I understand that this Agreement does not apply to any Invention for which no equipment, supplies, facilities or trade secret information of Company was used and which was developed entirely on my own time, unless (a) the Invention relates (i) directly to Company's business or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the Invention results from any work I performed for Company.

       6.      In the event of any breach of this Agreement, Employer shall have full rights to injunctive relief, in addition to any other existing rights, without the requirement of posting any bond. The prevailing party shall recover all costs and reasonable attorney fees in connection with any action to enforce the parties' rights under this Agreement.

       7.      I understand and agree that this Agreement is not a guarantee of continued employment or rate of compensation for any period and that my employment with the Company is at-will, meaning either the Company or I can terminate the employment relationship at any time for any or no reason.

       8.      The obligations which I have undertaken in paragraphs 3, 4, and 5 of this Agreement shall survive if I leave the employment of Employer for any reason.

       9.      Employer has a right to make and enforce other policies, rules and regulations not contrary to this Agreement which will also govern my employment.

10. The provisions of the Agreement shall be severable, and in the event that any provision of it is found by any court to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. It is expressly agreed that, although the parties consider the restrictions contained herein reasonable as to the business interests to be protected, the time and geographic area, if such restrictions are found by any court having jurisdiction to be unreasonable because they are (or any of them is) too broad, then such restrictions shall nevertheless remain effective, but shall be considered amended as may be considered to be reasonable by such court, and as so amended shall be enforced.

11. I agree that, to promote uniformity in the interpretation of this and similar agreements, this Agreement shall be governed by the laws of the state of Washington without giving effect to provisions thereof related to choice of laws or conflict of laws. Except for a claim for temporary injunctive relief to preserve the status quo pending determination of the merits in arbitration, I agree that any dispute arising under this Agreement shall be resolved by arbitration. In the event, injunctive relief is sought, venue and jurisdiction of any such lawsuit involving this Agreement shall exist exclusively in state and federal courts in King County, Washington, unless injunctive relief is sought by Company and, in Company's judgment, may not be effective unless obtained in some other venue. I further agree that this Agreement sets forth the entire agreement between Employer and me, and shall not be amended or added to except in writing signed by Employer's President. All amendments or modifications to this Agreement must be approved by Employer. I understand that Employer may, at any time and without further action by me, assign this Agreement to any successor company. In the event of such an assignment, the assignee company shall succeed to all of the rights held by Employer under this Agreement. This Agreement is binding on me, my heirs, executors, personal representatives, successors and assigns.

12. Employer may waive any provision of this Agreement upon the prior written approval of Employer's Chief Executive Officer/President. The waiver of any breach of this agreement or failure to enforce any provision of this agreement shall not waive any later breach.

DATED:_____, 20_____.

**Employer:**

Bittrex, Inc.

Name_____

Title_____

Signature_____

## **Employee:**

_____
[print name]

_____
Employee Signature