**EXHIBIT A**

**SECOND INTERIM ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 8 |

**SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PRE-PETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") and final order (the "Final Order"): (a) authorizing, but not directing, the Debtors to (i) continue to operate their cash management system (the "Cash Management System"); (ii) honor certain pre-petition obligations related thereto; and (iii) continue to perform Intercompany Transactions consistent with historical practice; (b) granting superpriority administrative expense status to post-petition intercompany balances; and (c) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, entered February 29, 2012; and that this Court having the power to enter a final order consistent with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1. The Motion is granted on a further interim basis as set forth herein.

2. A final hearing with respect to the Motion shall be held, if required, on or before **June 30, 2023**.

3. The Debtors are authorized, on an interim basis and in their sole discretion, to: (a) continue operating the Cash Management System, substantially as illustrated on Exhibit 1 attached hereto; (b) honor their pre-petition obligations related thereto; and (c) continue to perform Intercompany Transactions consistent with historical practice.

4. The Debtors are authorized, on an interim basis and in their sole discretion, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on Exhibit 2 attached hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) deposit funds in

and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (d) pay all pre-petition Bank Fees; and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5. The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-Possession"; *provided*, *further*, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

6. The Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

7. All Banks provided with notice of this Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts, or otherwise issued before the Petition Date, absent further direction from the Debtors.

8. The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be ascertainable.

9. In the course of providing cash management services to the Debtors, the Banks at which the Bank Accounts are maintained are authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising pre-petition or post-petition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred pre-petition or post-petition and regardless of whether the returned items relate to pre-petition or post-petition items or transfers.

10. Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; (c) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System; and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtor's account after the

Petition Date, regardless of the reason such item is returned or reversed (including, without limitation, for insufficient funds or a consumer's statutory right to reverse a charge).

11. The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided* that in the event the Debtors open a new bank account they shall open one at an authorized depository and shall timely indicate the opening of such account on the Debtors' monthly operating report and shall provide five (5) days advance notice of the opening of any new bank accounts or closing of any Bank Account to the U.S. Trustee.

12. Each of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

13. Those agreements existing between the Debtors and the Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Banks, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Bank (including, for the avoidance of doubt, any rights of a Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Bank agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

14. The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

15. Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; *provided* that each Debtor shall: (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the pre-petition or post-petition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices; and (b) beginning on the Petition Date, maintain (i) current records of intercompany balances; (ii) a Debtor by Debtor summary on a monthly basis of any post-petition Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month); and (iii) reasonable access to the Debtors' advisors with respect to such records.

16. Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

17. Those certain existing deposit and service agreements between the Debtors and the Banks shall continue to govern the post-petition cash management relationship between the Debtor and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination, chargeback, and fee provisions, shall remain in full force and effect.

18. The Debtors and the Banks may, without further order of the Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided* that in

the event the Debtors open a new bank account they shall open one at an authorized depository; *provided, further*, that the Debtors shall give five (5) days' notice of the opening of any new bank accounts or closing of any Bank Account to the U.S. Trustee.

19. The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to pre-petition amounts owed in connection with any Bank Fees.

20. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

21. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests

6

when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

22. Nothing in this Interim Order shall modify or impair the ability of any party in interest to contest how the Debtors account, including, without limitation, the validity or amount set forth in such accounting for any Intercompany Transaction or Intercompany Balance. The rights of all parties in interest with the respect thereto are fully preserved.

23. Notwithstanding any language to the contrary in the Motion or this Order, or any findings announced at the hearing, no provision of the Motion, this Order, or announced at the hearing constitutes a finding as to whether the Prepetition or Postpetition Cash Management System complies with federal or state securities laws.

24. Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto assets or transactions involving crypto assets are securities.

25. The Debtors shall have until June 30, 2023 to either come into compliance with section 345(b) of the Bankruptcy Code, or obtain a further or final extension from this Court.

26. As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

27. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

28. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

29. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

30. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

31. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

32. For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee by June 30, 2023. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

33. The Debtors shall maintain accurate and detailed records of all transfers, including but not limited to, intercompany transfers, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.

**<u>Exhibit 1</u>**

**Cash Management System Schematic**



**Exhibit 2**

**Bank Accounts**

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|---|---|---|---|---|
| 1 | Bittrex, Inc. | Customers Bank | 3217 | Operating Account |
| 2 | Bittrex, Inc. | Customers Bank | 0675 | OTC Account |
| 3 | Bittrex, Inc. | Customers Bank | 2017 | FBO Account |
| 4 | Bittrex, Inc. | United Texas Bank | 2423 | Dormant Account |
| 5 | Bittrex, Inc. | Prime Trust Bank | 4450 | FBO Account |
| 6 | Bittrex, Inc. | Prime Trust Bank | 1241 | Reserve Account |
| 7 | Bittrex, Inc. | Goldman Sachs | 2601 | Dormant Account |