## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DESOLATION HOLDINGS, LLC, et al. | Case No. 23-10597-BLS |
| | (Jointly Administered) |
| Debtors. | **Hearing Date: June 14, 2023**<br>**Objection Deadline (extended for the United**<br>**States): June 7, 2023** |

## UNITED STATES OF AMERICA'S OBJECTION TO THE DEBTORS' MOTION FOR AUTHORIZATION TO HONOR CUSTOMER WITHDRAWALS

The United States of America ("United States") respectfully represent as follows in support of its objection to the Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Withdrawals of Cryptocurrency Assets by Customers (the "Motion"):

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over these chapter 11 cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### FACTUAL BACKGROUND

2.      On May 8, 2022 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

3.      Prior to the Petition Date, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") and Financial Crimes Enforcement Network ("FinCEN")

investigated the Debtors for violations of federal laws, including the Bank Secrecy Act and doing business with foreign nationals in sanctioned nations.

4.      On December 22, 2022, OFAC and Debtor Bittrex, Inc. ("Bittrex") entered into a settlement agreement, whereby Bittrex is to pay OFAC an amount of $24,280,829.20 (the "OFAC Debt").

5.      Similarly, FinCEN and Bittrex agreed to entry of a consent order, whereby Bittrex was to pay FinCEN an amount of $29,280,829.20.  FinCEN and OFAC, however, agreed to provide Bittrex with a credit due to the OFAC Debt, and as such, Bittrex owes FinCEN an amount of $5,000,000.00 (the "FinCEN Debt").

6.      The Motion specifically discusses that the Debtors intend to subordinate debts owed to regulators and states if those debts are in the nature of disgorgement, fines or penalties, pursuant to section 726(a)(4) of the Bankruptcy Code, notwithstanding that Debtors filed this case under chapter 11.

7.      Indeed, the Debtors filed a liquidating plan (the "Plan") evidencing a 100% distribution to its customers who have cryptocurrency assets or fiat currency in accounts with the Debtors.  Docket No. 10 ("Plan") at Art. III.2 & 3.  The Plan also contains classes for the claims of general unsecured creditors and subordinated claims.  Plan at Art. III.4 & 5.  The Plan defines subordinated claims as any claim subordinated under section 510 or "as needed to satisfy the best interest of creditors test of 1129(a)(7)."  Plan at Art. I.A.109.

## OBJECTION

8.      The United States objects to the Motion for three reasons: (1) the critical vendor standard does not support the relief sought; (2) it is premature; and (3) it improperly attempts to subordinate creditors outside of a plan.  The Motion seeks to allow customers to

withdraw cryptocurrency assets and fiat currency before the confirmation date because all these issues will be settled in the Plan.  However, the settlement standard is not the critical vendor standard.  The Debtors have not demonstrated why the issues of ownership of cryptocurrency assets needs to be determined prior to the confirmation of the Plan.  Finally, siloing creditors into subordinated classes outside of the confirmation hearing is improper.  For these reasons, which are discussed more fully below, the Motion must be denied.

A.      **The Critical Vendor Standard Does Not Support the Relief Sought in the Motion**

9.      The Motion states that the Debtors believe they own the cryptocurrency assets in customer accounts, but to avoid costly litigation, desire to honor customer withdrawal requests.  Motion at 9.  Where there is a legal dispute that a debtor wishes to avoid litigating, the correct procedure is to file a motion seeking compromise authority under Bankruptcy Rule 9019.  This is not the basis of the Motion.

10.      Instead, the Motion is brought pursuant to the "critical vendor" standard.  The critical vendor standard allows debtors to pay certain creditors ahead of others, and ahead of confirmation, because these critical vendors, without payment, would cease providing goods and services critical to the debtor's operation, precipitating the collapse of the debtor's business and making reorganization impossible.  *See In re Kmart Corp.*, 359 F.3d 866, 872-73 (7th Cir. 2004) (explaining that basis for the critical vendors order "is the belief that vendors not paid for prior deliveries will refuse to make new ones" and "[w]ithout merchandise to sell, a retailer such as Kmart will fold"); *In re GVM,* 606 B.R. 220, 225-28 (Bankr. M.D. Pa. 2019) (adopting *Kmart*'s reasoning and critical vendor standard).  This is not the case here. Instead of reorganizing, the Debtors intend to liquidate and shutdown their exchange.  The Debtors shall soon have no business and no future customers, vendors, or creditors.

11. The Motion seeks to use the critical vendor standard to allow customers to withdraw all cryptocurrency assets and fiat currency because the Plan intends to pay them in full. However, the critical vendor standard does not support the relief sought as the Debtors are winding down and liquidating with no desire to preserve any going concern value.

**B.      The Motion's Settlement of Disputed Claims and Issues is Premature**

12. The Motion also seeks relief because the Debtors indends to settle these disputed claims of ownership and related issues at confirmation. As such, the Motion is premature—confirmation is months away.

13. The Motion fails to demonstrate why issues of ownership and debtor-creditor relationship need to be determined now, rather than at confirmation. While allowing customers to withdraw cryptocurrency assets may speed resolution of this case, no reason exists to determine ownership issues now to allow customer withdrawal. Issues of ownership and relationship can be preserved for confirmation, where whether the Debtors can actually confirm the Plan and pay all creditors in all priorities in full will be clearer.

14. Fairness and equity demand that if the OFAC and FinCEN Debts cannot be paid in full by confirmation, the United States should have a chance to prove that the cryptocurrency assets belong to the Debtors and can be clawed back from the customers as prepetition preferences and preconfirmation sub rosa distributions.

**C.      Determining Issues of Subordination or Classification at this Time is Inapprorpriate.**

15. Finally, although the Motion states that it intends to subordinate certain regulatory claims and the Plan creates classes of customers, general creditors and subordinated creditors, no merits decision has been made on the propriety of such classification and

subordination. The United States objects to any subordination of the OFAC and FinCEN Debts, and reserves its rights with respect to other issues of classification of claims.

16. Similarly, whether the customers hold in rem interests or claims against the Debtors is not an issue that needs to be determined now. Customers can, presently, be allowed to withdraw the cryptocurrency assets in accounts now, but should be subject to potential avoidance actions at confirmation should all creditors not be paid in full.

17. The United States should not be foreclosed from arguing that its claims are not capable of subordination or arguing on any other confirmation issue at this time. The Motion must be denied to the extent it seeks to foreclose these issues prior to confirmation.

WHEREFORE, the United States respectfully requests the Court deny the Motion and grant such other and further relief as the Court may deem just and proper.


Dated:    June 7, 2023                    Respectfully submitted,

**BRIAN M. BOYNTON**
**Principal Deputy Assistant Attorney General**

*/s/ Leah V. Lerman*
RUTH A. HARVEY
RODNEY A. MORRIS
LEAH V. LERMAN
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
(T) 202-307-0452
(F) 202-514-9163
(E) leah.v.lerman@usdoj.gov

*Counsel to the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June 2023, I caused a true and correct copy
of the foregoing objection to be served via electronic mail upon all parties receiving electronic
notice under the Court's CM/ECF system.


/s/ Leah V. Lerman
Leah V. Lerman