**Exhibit A**

**Amendments to Bittrex, Inc. Schedules**

30457391.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

## GLOBAL NOTES AND STATEMENT OF
## LIMITATIONS, METHODOLOGY AND DISCLAIMERS
## REGARDING THE DEBTORS' SCHEDULES OF ASSETS
## AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Desolation Holdings LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors"), have filed these respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure, and rule 1007–1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

Evan Hengel, Co-Chief Restructuring Officer of Bittrex Inc., Desolation Holdings LLC, Bittrex Malta Holdings Ltd., and Bittrex Malta Ltd., has signed each set of the Schedules and Statements. Mr. Hengel is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Hengel has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors. Mr. Hengel has not (and could not have) personally verified the accuracy of each such statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor contact information.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's employer identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

avoidance of doubt, the Debtors hereby reserve all of their rights, including to amend and/or supplement the Schedules and Statements, as may be necessary or appropriate.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event will the Debtors or their agents, attorneys, and/or financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, each Debtor's respective Schedules and Statements. The Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[2] In the event that the Schedules and/or Statements differ from these Global Notes, the Global Notes control.

### **Global Notes and Overview of Methodology**

1.  **Description of Cases.** On May 8, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3] The Debtors' chapter 11 cases (the "Chapter 11 Cases") are being jointly administered for procedural purposes only under lead case *In re Desolation Holdings LLC*, Case No. 23-10597-BLS (D.I. 34). The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The

---

[2]  These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

[3]  Copies of publicly filed documents in these chapter 11 cases are available at https://cases.omniagentsolutions.com/?clientId=3662 (free of charge) or the Court's website at https://ecf.deb.uscourts.gov/ (for a fee).

information provided herein, except as otherwise noted, is reported as of the close of business on the Petition Date.

2. **Reservation of Rights**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to:  (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim against a Debtor ("Claim")[4] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated"; or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated").  Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated."  Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors.  Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, issues involving or defenses against Claims, substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation or rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.  Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.

(a) **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any Claim against any Debtor, any assertion made therein or herein, or a waiver of any Debtor's rights to dispute any Claim or assert any cause of action or defense against any party.

(b) **Recharacterization.**  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' business, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as

---

[4] For the purposes of these Global Notes, the term Claim shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired post-petition.

(c) **Classifications.** Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such Claim or contract or to setoff such Claims.

(d) **Estimates and Assumptions.** The preparation of the Schedules and Statements required the Debtors to make commercially reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates.

(e) **Causes of Action.** Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(f) **Intellectual Property Rights.** Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

(g) **Cryptocurrency.** Certain of the Debtors' assets are cryptocurrencies, or digital tokens based on a publicly accessible blockchain. Cryptocurrencies are unique assets. Certain laws and regulations that may be applicable to cryptocurrencies do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, local, and international jurisdictions. The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard. Furthermore, the Debtors have taken the position that cryptocurrency held on the Debtors' platform is property of the Debtors' estate pursuant to section 541 of the Bankruptcy Code, and the Debtors reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(h) **Insiders.** The Debtors have attempted to include all payments made on or within 12 months before the Petition Date to any individual or entity deemed an "insider." As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to unilaterally dictate corporate policy and the disposition of corporate assets. Certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the 12-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be, construed as an admission that those parties are insiders for the purpose of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.

3. **Methodology.**

(a) **Basis of Presentation.** Prior to the Petition Date, the Debtors relied on their Director of Finance and Accounting, including certain key personnel who worked closely with the Director of Finance and Accounting, as well as their outside accounting firm to maintain the Debtors' books and records. Information contained

in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Schedules and Statements have not, however, been subject to procedures that would typically be applied to financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP") or International Financial Reporting Standards ("IFRS") and are not intended to reconcile fully with any financial statements of each Debtor prepared under GAAP or IFRS. Therefore, combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that are substantially different from financial information that would be prepared on a consolidated basis under GAAP or IFRS. For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements on a consolidated basis. Unlike the consolidated financial statements, the Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time before the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

(b)    **Confidential or Sensitive Information.** There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, customer names and other information), or concerns for the privacy of an individual. The alterations will be limited to only what is necessary to protect the Debtor or applicable third party. The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court sealing or otherwise protecting such information from public disclosure. All such redacted information shall be made available as directed by orders of the Court or to the individual customer or creditor scheduled, as applicable.

(c)    **Duplication.** Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d)    **Net Book Value.** In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors. Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values. Market values may vary, sometimes materially, from net book values. The Debtors believe that it would be an inefficient use of estate assets for the Debtors

to obtain the current market values of their property. Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown.

Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(e)     **Property and Equipment.**  The Debtors' office property leases are set forth on Schedule G. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(f)     **Allocation of Liabilities.**  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and post-petition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and post-petition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(g)     **Undetermined Amounts.**  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

(h)     **Unliquidated Claim Amounts.**  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

(i)     **Totals.**  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent

there are unknown or undetermined amounts, the actual total may be different than the listed total.

**(j)**     <u>**Cryptocurrency.**</u>   Cryptocurrency values presented utilize market prices as of 11:59 p.m. UTC on the referenced date. Changes in valuation relate to conversions, liquidations, collections received in kind and periodic mark-to-market adjustments. The actual net realizable value may vary significantly. The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate for any purpose.

**(k)**     <u>**Paid Claims.**</u>   Pursuant to certain orders of the Court entered in the Debtors' Chapter 11 Cases shortly after the Petition Date (collectively, the "First Day Orders") as well as other orders of the Court, the Debtors have the authority to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order; as such, outstanding liabilities may have been reduced by any court-approved post-petition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. Regardless of whether such claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

**(l)**     <u>**Intercompany Receivables and Payables.**</u>   Receivables and payables among the Debtors as well as among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records. Intercompany receivable amounts listed include pre-filing transactions with verified amounts. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes.

**(m)**     <u>**Guarantees and Other Secondary Liability Claims.**</u>   The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G and H for the

affected Debtor or Debtors. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

**(n)**    **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including, without limitation, accrued salaries and employee benefit accruals. In addition and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other orders that may be entered by the Court. Additionally, certain immaterial or *de minimis* assets and liabilities may have been excluded.

**(o)**    **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars. The Debtors' methodology and assumptions regarding the calculation of the U.S. dollar value of cryptocurrency holdings is set forth in greater detail in paragraph 4(k) of these Global Notes.

**(p)**    **Setoffs.** The Debtors may incur certain setoffs and other similar rights during the ordinary course of business. Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their customers and/or suppliers. These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately. Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

**(q)**    **Customer Account Liabilities.** Any of the Debtors' customers who, as of the Petition Date, had cryptocurrency on the Bittrex platform are listed in redacted form on Schedule E/F, as noted in more detail below. A customer's cryptocurrency holdings listed in the Schedules may not accurately reflect such customer's cryptocurrency holdings in the event the Court grants *Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Withdrawals of Cryptocurrency Assets by Customers* set for a hearing on June 14, 2023 (D.I. 43) (the "Withdrawal Motion"). If customer claims should be adjusted to reflect a reconciliation in accordance with the Withdrawal Motion, the Debtors will, as soon as reasonably practicable, use commercially reasonable efforts to file an amendment to the Schedules.

If a customer account fails to meet the requirements of the terms of service currently in effect for such account, the Debtors listed the account as "contingent." A customer may bring  the account into compliance with the applicable terms of service by, for example, supplying missing account information required by various governmental regulators, either in a proof of claim or by performing a platform withdrawal. The Debtors detail this process in the "Frequently Asked Questions"

link at https://casedocs.omniagentsolutions.com/cmsvol2/pub_47475/7755e5a6-6ae6-4216-afa0-c4bdc1fef16f_Modified-Bittrex-FAQs.pdf.

(r) **Contingent Assets.** The Debtors believe that they may possess certain Claims and Causes of Action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any Claims, Causes of Action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such claims. Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

(s) **Executory Contracts.** Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G. The Debtors have excluded nondisclosure agreements entered into in connection with these Chapter 11 Cases to avoid any potential breach of such nondisclosure agreements.

(t) **Fiscal Year.** Each Debtor utilizes a calendar period reporting schedule that ends on or about December 31.

(u) **Claims of Third-Party Related Entities.** While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

(v) **Umbrella or Master Agreements.** Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement. The master service agreements have been listed in

Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

(w)     **Credits and Adjustments.**  The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a post-petition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, or other adjustments, including, but not limited to, the right to modify the Schedules, assert claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a post-petition basis.

(x)     **Payments.**  The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses, as described in the Cash Management Motion, as defined herein.  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

**4.     Specific Schedules Disclosures.**

(a)     **Schedule A/B, Questions 1 and 2 – Cash and Cash Equivalents; Cash on Hand.**  Details with respect to the Debtors' cash management system and bank accounts are provided in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Relate Relief* (the "Cash Management Motion") (D.I. 8) and any orders of the Court granting the relief requested in the Cash Management Motion (D.I. 39).  The Debtors do not hold any physical cash.  Accordingly, cash on hand held as of the Petition Date is disclosed on Schedule A/B, Question 3 in connection with **Schedule A/B, Question 7 – Deposits.**  The Debtors are required to make deposits from time to time with various vendors and other service providers in the ordinary course of business.  The Debtors have exercised reasonable efforts to report the current value of any deposits.  The Debtors may have inadvertently omitted deposits and conversely may have reported deposits that are no longer outstanding.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if deposits are incorrectly identified.

(b)     **Schedule A/B, Question 3 – Checking, Savings, Money Market, or Financial Brokerage Accounts.**  Amounts listed are as of the Petition Date for the corresponding Debtor and reflect the actual bank balance, not the net book value.

For the avoidance of doubt, the bank accounts and cash balances set forth on Schedule A/B, Question 3 include cash held in the "for the benefit of" accounts ("FBO Accounts") maintained by Customers Bank and Prime Trust Bank ("FBO Banks"), as described in the Cash Management Motion.

(c)     **Schedule A/B, Question 11 – Accounts Receivable.**  Intercompany receivables have been listed in Question 77.

(d)     **Schedule A/B, Question 15 – Non-Publicly Traded Stock.**  Ownership interests in subsidiaries, partnerships, and joint ventures have been listed in Schedule A/B, Question 15 as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.  As stated in the Voluntary Petitions filed by each Debtor, Freestone Management LLC owns 100 percent of the stock of Desolation Holdings LLC, Bittrex Malta Holdings Ltd. owns 100 percent of the stock of Bittrex Malta Ltd., and RBR Holdings, Inc. owns 100 percent of the stock of Bittrex Malta Holdings Ltd. and Bittrex, Inc.

(e)     **Schedule A/B, Question 55 – Real Property.**  The Debtors do not own any real property.  The Debtors' office property leases are set forth on Schedule G.

(f)     **Schedule A/B, Question 63 – Customer Lists, Mailing Lists, Other Compilations.**  Assets set forth in Schedule A/B, Question 63 do not include any net book value of the Debtors' relationships with their customers.

(g)     **Schedule A/B, Question 65 – Goodwill.**  All of the Debtors' goodwill was written off of the Debtors' balance sheet prior to the Petition Date.

(h)     **Schedule A/B, Question 71 – Notes Receivable.**  Certain defaulted and/or uncollectible amounts have been excluded from A/B 71 but that does not indicate that the Debtors are waiving these amounts. The Debtors intend to pursue the collection of these receivables using all means available, including filing causes of action and/or proofs of claim.

(i)     **Schedule A/B, Question 72 – Tax Refunds and Unused Net Operating Losses (NOLs).**  The Debtors file a consolidated tax return under Aquila Holdings, Inc.

(j)     **Schedule A/B, Question 74 –** Causes of Action against third parties. $67,570 was seized by the State of California out of the Silvergate Bank account. $448,840.92 was seized from the Prime Trust account by the United States government that is the subject of an interpleader action.

(k)     **Schedule A/B, Question 77 – Other property of any kind not already listed.**  Schedule A/B 77 lists intercompany receivables for equipment transferred and cash in transit on the filing date.  All other intercompany receivables have been listed as undetermined.

Schedule A/B, Question 77 lists assets defined as cryptocurrencies, or digital tokens based on a publicly accessible blockchain. The current value shown is the estimated market value in USD as of the Petition Date based on various data feeds utilized by the Company. All figures set forth in Schedule A/B, Question 77 are preliminary, unreviewed, and unaudited and are subject to final adjustments following, *inter alia*, completion of quarterly and year-end close procedures.

In calculating the estimated fair market value as to the cryptocurrency claims of Debtors' account holders, the following table sets forth the rate of conversion to U.S. Dollars based upon the type of cryptocurrency held as of the close of business on the Petition Date. The following table does not include "defunct crypto" that the Debtors' platforms no longer support.

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
| --- | --- |
| 0x Protocol (ZRX) | $0.2154 |
| 1inch (1INCH) | $0.4083 |
| 8X8 Protocol (EXE) | $0.09 |
| Aave Token (AAVE) | $64.61 |
| ABBC (ABBC) | $0.10 |
| Abyss (ABYSS) | $0.0136 |
| AdEx (ADX) | $0.1587 |
| Akash (AKT) | $0.2391 |
| Akoin (AKN) | $0.00752752 |
| Akropolis (AKRO) | $0.0035 |
| Aktio Coin (AKTIO) | $0.3063 |
| Alchemy Pay (ACH) | $0.0239 |
| Algorand (ALGO) | $0.1645 |
| Alien Worlds (TLM) | $0.0156 |
| ALL.ME (ME) | $0.0003 |
| Amp (AMP) | $0.0031 |
| Ankr (ANKR) | $0.0262 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| ApeCoin (APE) | $3.374 |
| Aragon (ANT) | $2.785 |
| ArdCoin (ARDX) | $0.00 |
| Ardor (ARDR) | $0.0786 |
| Arianee (ARIA20) | $0.268919 |
| Ariva (ARV) | $0.0001 |
| Ark (ARK) | $0.28 |
| Arowana Token (ARW) | $0.1231 |
| Arweave (AR) | $6.62 |
| Auditchain (AUDT) | $0.0201 |
| Augur v2 (REPV2) | $6.3089838086 |
| Avalanche (AVAX) | $15.44 |
| Aventus Utility Token (AVT) | $1.068 |
| Axie Infinity Shards (AXS) | $6.826 |
| BABB (BAX) | $0.0003 |
| Badger DAO (BADGER) | $2.74 |
| Balancer (BAL) | $5.74 |
| Bancor (BNT) | $0.4332 |
| Band Protocol (BAND) | $1.448 |
| Bantu (XBN) | $0.00 |
| BarnBridge (BOND) | $3.91 |
| Basic Attention Token (BAT) | $0.2139 |
| Bitcoin (BTC) | $27,781.00 |
| Bitcoin Cash (BCHN) (BCH) | $111.38 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| BitcoinVault (BTCV) | $3.053 |
| BitShares (BTS) | $0.0086 |
| BitTorrent (BTT) | N/A |
| BlackCoin (BLK) | $0.0111 |
| Blockcloud (BLOC) | $0.0003 |
| Blocknet (BLOCK) | $0.0753278432 |
| BLOCKv (VEE) | $0.0025 |
| Boson Protocol (BOSON) | $0.1811 |
| Braintrust (BTRST) | $0.7940 |
| BTU Protocol (BTU) | $0.1283 |
| Cardano (ADA) | $0.3662 |
| CasinoCoin (CSC) | $0.0003 |
| CBC.Network (CBC) | $0.0014 |
| Celo Dollar (CUSD) | $0.00 |
| Celo Native Asset (CELO) | $0.509 |
| Celsius Network (CEL) | $0.2623 |
| Chainlink (LINK) | $6.596 |
| Charterstate (ALTA) | $0.00 |
| Cindicator (CND) | $0.0011 |
| Cindrum (CIND) | $0.0014 |
| Civilization (CIV) | $0.01504503 |
| CoinLoan (CLT) | $4.58 |
| Coinweb (CWEB) | $0.02636634 |
| Compound (COMP) | $36.54 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---:|
| Contents Protocol (CPT) | $0.0001 |
| Cosmos (ATOM) | $10.61 |
| Cratos (CRTS) | $0.0002002 |
| Cronos (CRO) | $0.0663 |
| CROWD (CWD) | $0.00013013 |
| Crown (CRW) | $0.0086 |
| Cudos (CUDOS) | $0.0019 |
| Curve DAO Token (CRV) | $0.8333 |
| CyClub Token (CYCLUB) | $0.00 |
| DAI (DAI) | $1.002 |
| Dash (DASH) | $41.78 |
| Data (DTA) | $0.00 |
| Dawn (DAWN) | $0.5962 |
| DEAPCOIN (DEP) | $0.0011 |
| Decentraland (MANA) | $0.4734 |
| Decred (DCR) | $16.39 |
| DeFiChain (DFI) | $0.4073 |
| DEXA COIN (DEXA) | $0.00001516515 |
| DigiByte (DGB) | $0.008 |
| DigitalNote (XDN) | $0.000044044 |
| district0x (DNT) | $0.0282 |
| DMarket (DMT) | $0.0047 |
| Dogecoin (DOGE) | $0.0726 |
| Dreamr (DMR) | $0.00 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| Dusk Network (DUSK) | $0.1406 |
| Einsteinium (EMC2) | $0.0092 |
| Elastos (ELA) | $1.189 |
| Electra Protocol (XEP) | $0.000306306 |
| Endor (EDR) | $0.000030030 |
| Energy Web Token (EWT) | $2.394 |
| Enigma (ENG) | $0.0031 |
| Enjin (ENJ) | $0.3448 |
| EOS (EOS) | $0.9066 |
| Ethereum (ETH) | $1,853.92 |
| Ethereum Classic (ETC) | $18.33 |
| Ethereum Name Service (ENS) | $10.40 |
| EthereumPoW (ETHW) | $2.049 |
| Euro (EUR) | $1.1002 |
| Everipedia (IQ) | $0.0053 |
| Expanse (EXP) | $0.0025 |
| Fantom (FTM) | $0.3669 |
| Fautor (FDM) | $0.00342342 |
| Feathercoin (FTC) | $0.0022 |
| Filecoin (FIL) | $4.546 |
| Firo (FIRO) | $1.759 |
| Flare (FLR) | $0.0281 |
| FLO (FLO) | $0.0008308218 |
| Flux Network (FLUX) | $0.5215 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| Folder Protocol (FOL) | $0.00 |
| Function X (FX) | $0.1587 |
| Gala (GALA) | $0.0284 |
| GameCredits (GAME) | $0.0130162082 |
| GeoCoin (GEO) | $0.0161 |
| GET Protocol (GET) | $0.8909 |
| Gitcoin (GTC) | $1.44 |
| Gnosis (GNO) | $113.06 |
| GoChain (GO) | $0.0068 |
| Golden Goose (GOLD) | $0.0003003 |
| Golem Network Token (GLM) | $0.2171 |
| Groestlcoin (GRS) | $0.3528 |
| Handshake (HNS) | $0.0189 |
| Hedera (HBAR) | $0.0548 |
| HedgeTrade (HEDG) | $0.0431 |
| HempCoin (THC) | $0.0022 |
| Hive (HIVE) | $0.3725 |
| Hive Dollar (HBD) | $0.9876 |
| Horizen (ZEN) | $7.971 |
| Hxro (HXRO) | $0.0589 |
| HyperDAO (HDAO) | $0.00032032 |
| I/OCoin (IOC) | $0.0056 |
| ICON (ICX) | $0.2461 |
| iEx.ec (RLC) | $1.677 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| Ignis (IGNIS) | $0.005 |
| Internxt (INXT) | $0.4108 |
| IOST (IOST) | $0.0093 |
| IOTA (IOTA) | $0.1804 |
| IoTeX (IOTX) | $0.0269 |
| IRISnet (IRIS) | $0.0214 |
| Jasmy (JASMY) | $0.0068 |
| Kadena (KDA) | $0.834 |
| KardiaChain Token (KAI) | $0.0051 |
| KeeperDAO (ROOK) | $53.15 |
| Klaytn (KLAY) | $0.2096 |
| Klever (KLV) | $0.0046 |
| KOK (KOK) | $0.0488 |
| Komodo (KMD) | $0.2934 |
| Kusama (KSM) | $25.69 |
| Kyber Network Crystal (KNC) | $0.5948 |
| Latam Cash (LMCH) | N/A |
| LBRY Credits (LBC) | $0.0092 |
| Lisk (LSK) | $0.8664 |
| Litecoin (LTC) | $77.84 |
| Livepeer (LPT) | $4.662 |
| Loom Network (LOOM) | $0.0525 |
| Loopring (LRC) | $0.2938 |
| MaidSafeCoin (MAID) | $0.1692 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| Maker (MKR) | $669.49 |
| MARS4 (MARS4) | $0.00069069 |
| Measurable Data Token (MDT) | $0.036 |
| MediBloc (MED) | $0.0145 |
| Memetic (MEME) | $0.0576036448 |
| Mercury (MER) | $0.00 |
| MetaFinance (MF1) | $0.035035 |
| Metal (MTL) | $1.045 |
| Metronome (MET) | $1.522 |
| MOGU Token (MOGX) | $0.00 |
| MonaCoin (MONA) | $0.4131 |
| More (MORE) | $0.0011 |
| Morpheus.Network (MNW) | $1.4281826742 |
| Munt (MUNT) | $0.0005538812 |
| MY IDENTITY Coin (MYID) | $0.00 |
| Myriad (XMY) | $0.000041041 |
| Mysterium (MYST) | $0.24 |
| Naga (NGC) | $0.08 |
| Navcoin (NAV) | $0.0394 |
| NEM (XEM) | $0.0315 |
| Neo (NEO) | $9.165 |
| Nervos (CKB) | $0.0031 |
| Neutrino USD (USDN) | $0.0528 |
| Nexus (NXS) | $0.0708 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| NFTX (NFTX) | $15.10 |
| NKN (NKN) | $0.0922 |
| Numeraire (NMR) | $13.64 |
| NXT (NXT) | $0.0028 |
| Obyte (GBYTE) | $10.64 |
| Ocean Protocol (OCEAN) | $0.321 |
| Okcash (OK) | $0.0058 |
| OMG Network (OMG) | $0.8614 |
| OmniCoin (OMNI) | $1.088 |
| Ontology (ONT) | $0.2078 |
| OntologyGas (ONG) | $0.0017 |
| Orbs (ORBS) | $0.027 |
| Orchid (OXT) | $0.0716 |
| Origin Protocol (OGN) | $0.0937 |
| OriginTrail (TRAC) | $0.2872 |
| Oxen (OXEN) | $0.1148 |
| Particl (PART) | $0.6137 |
| Patientory (PTOY) | $0.0139 |
| Pax Dollar (USDP) | $0.9972 |
| PAX Gold (PAXG) | $2,034.40 |
| Peercoin (PPC) | $0.4073 |
| Pinkcoin (PINK) | $0.0001 |
| Pist Trust (PIST) | $0.00 |
| Pivx (PIVX) | $0.22 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---:|
| PKT Cash (PKT) | $0.00109109 |
| Plasma Finance (PPAY) | $0.00 |
| PlayChip (PLAY) | $0.0025 |
| PlayDapp (PLA) | $0.1863 |
| PolkaCity (POLC) | $0.0146 |
| Polkadot (DOT) | $5.377 |
| Polygon (MATIC) | $0.9023 |
| Polymath (POLY) | $0.1780 |
| PotCoin (POT) | $0.0017 |
| PowerLedger (POWR) | $0.1611 |
| Prom (PROM) | $4.426 |
| Propy (PRO) | $0.3743 |
| PumaPay (PMA) | $0.00001210209 |
| Pundi X Token (PUNDIX) | $0.409 |
| Qtum (QTUM) | $2.577 |
| Quant (QNT) | $106.78 |
| Quantum Resistant Ledger (QRL) | $0.0958 |
| Radicle (RAD) | $2.697 |
| Rally (RLY) | $0.0086 |
| RavenCoin (RVN) | $0.0210 |
| Ravencoin Classic (RVC) | $0.00002003001 |
| Recast1 (R1) | $0.0000008008 |
| ReddCoin (RDD) | $0.0004 |
| RedFOX Labs (RFOX) | $0.0101 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| Ren V1 (REN) | $0.0753 |
| Render Token (RNDR) | $1.865 |
| Reserve Rights (RSR) | $0.003 |
| Revain (REV) | $0.0003 |
| SaluS (SLS) | $4.00 |
| ShareToken (SHR) | $0.0022 |
| Shiba Inu (SHIB) | $0.00000893 |
| Siacoin (SC) | $0.0035 |
| Signum (SIGNA) | $0.0011 |
| SimbCoin Swap (SMBSWAP) | $0.00 |
| Sirin Token (SRN) | $0.0017 |
| SKALE (SKL) | $0.0319 |
| SMARTCREDIT Token (SMARTCREDIT) | $0.69 |
| SocialGood (SG) | $0.01001 |
| Solana (SOL) | $20.69 |
| SolbitCoin (SBT) | $0.00 |
| Solve.Care (SOLVE) | $0.0229 |
| SpaceChain (SPC) | $0.0168933766 |
| SpaceMine (MINE) | $0.00016016 |
| Sphere (SPHR) | $0.0094 |
| Stably USD (USDS) | $1.00 |
| Status Network Token (SNT) | $0.0242 |
| STEEM (STEEM) | $0.1986 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| Steem Dollars (SBD) | $3.148 |
| Stellar Lumens (XLM) | $0.0895 |
| STORJ (STORJ) | $0.3079 |
| StormX (STMX) | $0.0041 |
| Stratis (STRAX) | $0.4778 |
| Strike Finance (STRK) | $11.2656666674 |
| Student Coin (STCCOIN) | $0.002002 |
| SUKU (SUKU) | $0.0581 |
| Sushi (SUSHI) | $0.9053 |
| Swipe (SXP) | $0.4507 |
| Symbol (XYM) | $0.0295 |
| Synthetix Network Token (SNX) | $2.169 |
| SysCoin (SYS) | $0.1211 |
| Tap (XTP) | $0.0042 |
| TenX Pay Token (PAY) | $0.0107 |
| Tether (USDT) | $1.004 |
| Tezos (XTZ) | $0.9133 |
| The Graph (GRT) | $0.1173 |
| The Sandbox (SAND) | $0.5085 |
| TheFutbolCoin (TFC) | $0.00 |
| Tranche Finance (SLICE) | $0.0539 |
| TRON (TRX) | $0.0685 |
| TrueUSD (TUSD) | $1.022 |
| Ubiq (UBQ) | $0.0244 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---|
| UMA (UMA) | $2.699 |
| Unibright (UBT) | $0.1091 |
| Uniswap (UNI) | $4.977 |
| UREEQA Token (URQA) | $0.0108006834 |
| US Dollar (USD) | $1.00 |
| USD Coin (USDC) | $1.003 |
| UTRUST (UTK) | $0.0919 |
| Validity (VAL) | $2.031 |
| VeChain (VET) | $0.0196 |
| vEmpire Gamer Token (VEMP) | $0.01077076 |
| VERA (VRA) | $0.0047 |
| Verge (XVG) | $0.0019 |
| VeriBlock (VBK) | $0.0006 |
| VeriCoin (VRC) | $0.0014 |
| VersoView (VVT) | $0.00 |
| Vertcoin (VTC) | $0.1153 |
| Vesper Finance (VSP) | $0.4042 |
| Viacoin (VIA) | $0.0320 |
| Vite (VITE) | $0.0177 |
| Waves (WAVES) | $1.655 |
| WAX (WAXP) | $0.0582 |
| WAXE (WAXE) | $60.146086 |
| WaykiChain (WICC) | $0.0378 |
| Whitecoin (XWC) | $0.0546 |

| Cryptocurrency | Conversion Rate to USD as of 11:59 p.m. UTC on May 8, 2023 |
|---|---:|
| Wings DAO (WINGS) | $0.0019 |
| Wrapped ACME (WACME) | $0.03318315 |
| Wrapped Bitcoin (WBTC) | $27,781.00 |
| XCF Token (XCF) | $0.00068068 |
| XinFin Network (XDC) | $0.0354 |
| XRP (XRP) | $0.4286 |
| xSigma (SIG) | $0.003003 |
| yearn.finance (YFI) | $7,247.00 |
| YellowHeart (HRTS) | $0.00378378 |
| YFLink (YFL) | $8.161153 |
| YIELD App (YLD) | $0.105 |
| ZCash (ZEC) | $33.15 |
| Zilliqa (ZIL) | $0.0243 |

**(l)** **Schedule D – Creditors Who Have Claims Secured by Property.** As of the date hereof, the Debtors are unaware of any secured claims asserted against the Debtors. Nonetheless, except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to any creditor of any Debtor. The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.

The Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

**(m)** **Schedule E/F – Creditors Who Have Unsecured Claims.** The listing of any Claim on Schedule E/F does not constitute an admission by the Debtors that such Claim or any portion thereof is entitled to priority treatment under section 507 of

the Bankruptcy Code.  The Debtors reserve all of their rights to dispute the amount and/or the priority status of any Claim on any basis at any time.

***Part 1 - Creditors with Priority Unsecured Claims.***  Pursuant to the *Interim Order Authorizing the Debtors to (I) Continue Employee Benefits Programs and (II) Granting Related Relief* (D.I. 40) (the "Wages Order"), the Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, and other compensation, reimbursable employee expenses, and employee medical and similar benefits, in the ordinary course of business.  The Debtors believe that all such Claims have been, or will be, satisfied in the ordinary course during their Chapter 11 Cases pursuant to the authority granted in the Wages Order, and such satisfied amounts are set forth on Schedule E.

The listing of a claim on Schedule E/F, Part 1 does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims.***  The liabilities identified in Schedule E/F, Part 2 are derived from the Debtors' books and records.  The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of Claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claims or the correct amount of all unsecured Claims.  Certain creditors listed on Schedule E/F may owe amounts to the Debtors and, as such, the Debtors may have valid setoff or recoupment rights with respect to such amounts.  The amounts listed on Schedule E/F do not reflect any such right of setoff or recoupment and the Debtors reserve all rights to assert any such setoff or recoupment rights.

Trade payables listed on Schedule E/F, Part 2 contain the prepetition liability information available to the Debtors as of the Petition Date and include, among other vendor claims and trade payables, invoices that were paid subsequent to the Petition Date related to prepetition obligations.

Intercompany long term debt listed in Schedule F, Part 2 contain the cash funding from Bittrex Global GMBH and RBR to support operations and pre-petition restructuring costs.

Schedule E/F, Part 2 contains information regarding threatened or pending litigation involving the Debtors.  The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  In certain instances, the date on which a litigation claim arose is an open issue of fact.  Determining the date upon which each claim in Schedule E/F, Part 2 was incurred or arose would be unduly burdensome and prohibitively costly and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F, Part 2.

Schedule E/F, Part 2 reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2 does not include rejection damage claims, to the extent such damage claims exist, of the counterparties to the executory contracts and unexpired leases that have been or may be rejected.

Schedule E/F, Part 2 does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP or IFRS.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

(n)  **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. Additionally, in certain instances, executory contracts and unexpired leases may be omitted due to their confidential nature but can be made available to the U.S. Trustee on a confidential basis. Additionally, relationships between the Debtors and their vendors are often governed by a master services agreement, under which vendors also place work and purchase orders, which may be considered executory contracts. Disclosure of these purchase and work orders, however, is impracticable and unduly burdensome. Accordingly, to the extent the Debtors have determined to disclose non-confidential master services agreements in Schedule G, purchase and work orders placed thereunder have been omitted.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreement, which documents may not be set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

(o)     **Schedule H – Co-Debtors**. In the ordinary course of their business, the Debtors pay certain expenses on behalf of their subsidiaries. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H. However, some such claims may be listed elsewhere in the Schedules and Statements.

Due to their voluminous nature, and to avoid unnecessary duplication, the Debtors have excluded debts that more than one Debtor may be liable for on Schedule H because such debts are otherwise reflected on Schedules D, E/F, or G for each Debtor.

5.     **Specific Statements Disclosures.**

(a)     **Statement Question 1 – Gross Revenue.** The Debtors have provided gross revenue figures for 2021, through the Petition Date.

(b)     **Statement Questions 3 and 4 – Payments to Certain Creditors.** Prior to the Petition Date, the Debtors maintained a centralized cash management system through which Debtors' affiliates made certain payments on behalf of other entities, as described in the Cash Management Motion. Consequently, all payments to creditors and insiders listed in response to Statement Questions 3 and 4 on each of the Debtors' Statements reflect payments made by the Debtors from operating bank accounts, on behalf of the corresponding Debtor, pursuant to the Debtors' cash management system described in the Cash Management Motion. Payments listed

on Statement Question 4 were made by Bittrex, Inc. and are, therefore, listed on Debtor Bittrex, Inc.'s Statements.  For the avoidance of doubt, any payments made in connection with the Debtors' bankruptcy within the one-year period prior to the Petition Date are disclosed in response to Statement Question 11 and therefore are not listed in response to Statement Question 3.  Further, any payments made to an "insider" within the one-year period prior to the Petition Date are disclosed in response to Statement Question 4 and therefore are not listed in response to Statement Question 3.

The Debtors have responded to Statement Questions 4 and 30 in detailed format by the insider in the attachment for Statement Question 4.  To the extent: (i) a person qualified as an "insider" in the year prior to the Petition Date but later resigned their insider status or (ii) did not begin the year as an "insider" but later became an "insider," the Debtors have listed in response to Statement Question 4 all payments made during the applicable 12-month period, irrespective of when such person was defined as an "insider."

As discussed above, the inclusion of a party as an "insider" is not intended to be, nor should be, construed as a legal characterization of such party as an "insider" and does not act as an admission of any fact, Claim, right, or defense, and any such rights, Claims, and defenses are hereby expressly reserved.

In response to Statement Question 4, the Debtors have included a list of all former customers of Bittrex Malta Ltd. that signed updated Terms of Services agreements and were migrated to the Bittrex Global, Inc. platform in the year prior to filing.

(c)    **Statement Question 6 – Setoffs.** The Debtors had $67,570.00 of funds previously held in the Silvergate Bank account ending in x7029 frozen by the State of California.

(d)    **Statement Question 7 – Legal Actions.**  The Debtors have included certain known state regulatory and civil actions against the Debtors.  The Debtors are not aware of any pending workers' compensation claims.

(e)    **Statement Question 11 – Payments Made Related to Bankruptcy.** All payments for services of any entities that provided consultation concerning restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date were made by Debtor Bittrex, Inc. (for the benefit of all Debtors) and are, therefore, listed on Debtor Bittrex, Inc.'s Statements.  Additional information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications for those professionals and related orders.  Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Statement Question 11 include payments for professional services unrelated to bankruptcy.

(f)     **Statement Question 13 – Other Transfers.** The Debtors have included transfers of certain digital assets to non-debtor parent Aquila Holdings, Inc., and the transfer of liquidated digital assets to certain stockholders. These source of these transfers generally consist of commissions that had been earned by the Debtors in the form of cryptocurrency over the span of several years but which was not converted to cash, and then subsequently significantly increased in value.

(g)     **Statement Question 18 – Closed Financial Accounts.** Within the year before the Petition Date, the Debtors closed their financial accounts associated with Silvergate Bank. Funds previously held in the Debtors' Silvergate accounts were transferred to the Customers Bank operating account. As described in the Cash Management Motion, as of the Petition Date, Debtor Bittrex, Inc. maintained a master operating account at Customers Bank.

(h)     **Statement Question 20 – Off-Premises Storage.** The Debtors do not have any physical off-premise storage. However, the Debtors utilize several cloud storage service providers to house the Debtors' information. These vendor contracts are included in Schedule G. The Debtors reserve all rights to amend and/or supplement Schedule G as may be necessary or appropriate.

(i)     **Statement Question 26 – Books, Records, and Financial Statements.** These filings contain consolidated financial information relating to the Debtors and non-Debtors. The Debtors have not filed any financial information specifically related to the Debtors either individually or on a combined or consolidated basis. In addition, the Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors, with financial statements that may not be part of a public filing. The Debtors do not maintain complete lists or other records tracking such disclosures. As such, the Debtors have not provided lists of these parties in their response to this Statement.

(j)     **Statement Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.** Distributions by the Debtors to their directors and officers are listed on the attachment to Statement Question 4. Certain directors and executive officers of the Debtors are also directors and executive officers of certain of the other Debtors and non-Debtor affiliates. Such individuals are only compensated for services rendered to the Debtors on a consolidated basis, so to the extent payments to such individuals are not listed in the response to Statement Question 4 on the Statements for such Debtor affiliates, they did not receive payment from the Debtors for their services as directors or executive officers of these entities.

\*       \*       \*       \*       \*

| Debtor Name | **Bittrex, Inc.** |
|---|---|
| **United States Bankruptcy Court for the  District of Delaware** | |
| Case number (if known): | **23-10598** |

☐ Check if this is an
amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

---

### Part 1:    Summary of Assets

*1. Schedule A/B: Assets - Real and Personal Property*    (Official Form 206A/B)

1a. **Real property:**
Copy line 88 from *Schedule A/B*.................................................................................

$0.00

1b. **Total personal property:**
Copy line 91A from *Schedule A/B*............................................................................

$240,659,287.36

1c. **Total of all property:**
Copyline 92 from *Schedule A/B*...............................................................................

$240,659,287.36

---

### Part 2:    Summary of Liabilities

2.    *Schedule D: Creditors Who Have Claims Secured by Property*    (Official Form 206D)
Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of Schedule D...........................

$0.00

3.    *Schedule E/F: Creditors Who Have Unsecured Claims*    (Official Form 206E/F)

3a. **Total claim amounts of priority unsecured claims:**
Copy the total claims from Part 1 from the line 5a of *Schedule E/F*...............................................

$0.00

3b. **Total amount of claims of nonpriority amount of unsecured claims:**
Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*........................................

**+**    $284,781,281.16

4.    **Total liabilities** ...........................................................................................................
Lines 2 + 3a + 3b

$284,781,281.16

| Debtor Name | **Bittrex, Inc.** |
| --- | --- |
| **United States Bankruptcy Court for the  District of Delaware** | |
| Case number (if known): | **23-10598** |

☐ Check if this is an
amended filing

Official Form 206A/B

# Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit.  Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized.  In Schedule A/B, list any executory contracts or unexpired leases.  Also list them on  *Schedule G: Executory Contracts and Unexpired Leases*     (Official Form 206G).

Be complete and accurate as possible.  If more space is needed, attach a separate spreadsheet to this form.  At the top of any pages added, write the debtor's name and case number (if known).  Also identify the form and line number to which the additional information applies.  If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the approriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category.  List each asset only once.  In valuing the debtor's interest, do not deduct the value of secured claims.  See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1.    **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

|   **All cash or cash equivalents owned or controlled by the debtor** | | | **Current value of debtor's interest** |
| --- | --- | --- | --- |

2.    **Cash on hand**

3.    **Checking, savings, money market, or financial brokerage accounts**

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- | --- |
| 3.1 | Customers Bank | Operating | *3217 | $538,201.01 |
| 3.2 | Customers Bank | OTC | *0675 | $35.00 |
| 3.3 | United Texas Bank | | *2423 | $25.03 |
| 3.4 | Prime Trust Bank | Restricted: Custodial | *4450 | $833,550.66 |
| 3.5 | Prime Trust Bank | Restricted: ACH Reserve | *1241 | $1,000,000.00 |
| 3.6 | Customers Bank | Restricted: FBO | *2017 | $10,070,257.82 |
| 3.7 | Goldman Sachs Asset Management | | *2601 | $0.12 |

4.    **Other cash equivalents**

Debtor  Bittrex, Inc.                                           Case Number (if known) 23-10598

5.   **Total of Part 1**                                                                    **$12,442,069.64**
     Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**Part 2:**     **Deposits and prepayments**

6.   **Does the debtor have any deposits or prepayments?**

     ☑ No. Go to Part 3.
     ☐ Yes. Fill in the information below.

                                                                                  **Current value of**
                                                                                  **debtor's interest**

7.   **Deposits, including security deposits and utility deposits**
     Description, including name of holder of deposit

8.   **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
     Description, including name of holder of prepayment

9.   **Total of Part 2**
     Add lines 7 through 8.  Copy the total to line 81.

**Part 3:**     **Accounts Receivable**

10.  **Does the debtor have any accounts receivable?**

     ☑ No. Go to Part 4.
     ☐ Yes. Fill in the information below.

                                                                                  **Current value of**
                                                                                  **debtor's interest**

11.  **Accounts receivable**

     11b. Over 90 days old:        _____  -  _____  =
                                   face amount            doubtful or uncollectible accounts
     11a. 90 days old or less:     _____  -  _____  =
                                   face amount            doubtful or uncollectible accounts
     11b. Over 90 days old:        _____  -  _____  =
                                   face amount            doubtful or uncollectible accounts

Debtor  Bittrex, Inc.                                    Case Number (if known) 23-10598

12. **Total of Part 3**
Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

**Part 4:**      **Investments**

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|
| 14. **Mutual funds of publicly traded stocks not included in Part 1** <br> Name of fund or stock: |  |  |
| 15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** <br> Name of entity:          % of ownership: |  |  |
| 16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1** <br> Describe: |  |  |

17. **Total of Part 4**
Add lines 14 through 16. Copy the total to line 83.

**Part 5:**      **Inventory, excluding agricultural assets**

18. **Does the debtor own any inventory (excluding agricultual assets)?**

☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

Debtor  Bittrex, Inc.                                                    Case Number (if known) 23-10598

19. **Raw Materials**

20. **Work in progress**

21. **Finished goods, including goods held for resale**

22. **Other inventory or supplies**

23. **Total of Part 5**
    Add lines 19 through 22. Copy the total to line 84.

24. **Is any of the property listed in Part 5 perishable?**

    ☐ No.
    ☐ Yes.

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

    ☐ No.
    ☐ Yes.     Book Value $_____     Valuation Method _____     Current Value $_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

    ☐ No.
    ☐ Yes.

**Part 6:**        **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

Debtor  Bittrex, Inc.                                                      Case Number (if known) 23-10598

☑ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest | Valution method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops - either planted of harvested** | | | |
| 29. **Farm animals**<br>Examples: Livestock, poultry, farm-raised fish | | | |
| 30. **Farm machinery and equipment**<br>(Other than titled motor vehicles) | | | |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| 33. **Total of Part 6**<br>Add lines 28 through 32. Copy the total to line 85. | | | |

34. **Is the debtor a member of an agricultural cooperative?**

☐ No.
☐ Yes.

**Is any of the debtor's property stored at the cooperative?**

☐ No.
☐ Yes.

Debtor  Bittrex, Inc.                                                    Case Number (if known) 23-10598

35.  **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No.
☐ Yes.      Book Value $ _____    Valuation Method _____    Current Value $ _____

36.  **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No.
☐ Yes.

37.  **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

**Part 7:**     **Office furniture, fixtures, and equipment; and collectibles**

38.  **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39.  **Office furniture** | | | |
| 40.  **Office fixtures** | | | |
| 41.  **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| 42.  **Collectibles** | | | |

42.  **Collectibles**
Examples: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

Debtor  Bittrex, Inc.                                      Case Number (if known) 23-10598

43. **Total of Part 7.**
    Add lines 39 through 42.  Copy the total to line 86.

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

    ☐ No.
    ☐ Yes.

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

    ☐ No.
    ☐ Yes.

| Part 8: | Machinery, equipment, and vehicles |
| --- | --- |

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

    ☑ No. Go to Part 9.
    ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |

47. **Automobiles, vans, trucks, motorcycles, trailers, or titled farm vehicles**

48. **Watercraft, trailers, motors, and related accessories**
    Examples: Boats, trailers, motors, floating homes, personal watercraft, fishing vessels

49. **Aircraft and accessories**

Debtor  Bittrex, Inc.                                                    Case Number (if known) 23-10598

50.  **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

51.  **Total of Part 8.**
     Add lines 47 through 50. Copy the total to line 87.

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**

     ☐ No.
     ☐ Yes.

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

     ☐ No.
     ☐ Yes.

**Part 9:**        **Real property**

54.  **Does the debtor own or lease any real property?**

     ☑ No. Go to Part 10.
     ☐ Yes. Fill in the information below.

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property | Nature and extent of debtor's interest in property | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

56.  **Total of Part 9.**
     Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.  Copy the total to line 88.

Debtor  Bittrex, Inc.                                          Case Number (if known) 23-10598

57.  **Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No.

☐ Yes.

58.  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No.

☐ Yes.

**Part 10:**    Intangibles and intellectual property

59.  **Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.  **Patents, copyrights, trademarks, or trade secrets** | | | |
| 60.1    Trademarks<br>See attached Exhibit AB60 | | | |
| 61.  **Internet domain names and websites** | | | |
| 62.  **Licenses, franchises, and royalties** | | | |
| 63.  **Customer lists, mailing lists, or other compilations** | | | |
| 63.1    Customer Lists | Undetermined | N/A | Undetermined |
| 64.  **Other intangibles, or intellectual property** | | | |

Debtor  Bittrex, Inc.                                        Case Number (if known) 23-10598

65. **Goodwill**

66. **Total of Part 10.**
    Add lines 60 through 65.  Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers?**

    ☐ No.
    ☑ Yes.

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

    ☑ No.
    ☐ Yes.

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

    ☑ No.
    ☐ Yes.

**Part 11:**     **All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**

    ☐ No. Go to Part 12.
    ☑ Yes. Fill in the information below.

                                                                    **Current value of
                                                                    debtor's interest**

71. **Notes receivable**
    Description (include name of obligor)

Debtor  Bittrex, Inc.                                                    Case Number (if known) 23-10598

|  | - | = |
|---|---|---|
| Total face amount | | Doubtful or uncollectible amount |

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

| | | | $67,570.00 |
|---|---|---|---|
| **Nature of claim** | Property seized by the State of California | | |
| **Amount Requested** | $67,570.00 | | |
| | | | $448,840.92 |
| **Nature of claim** | Property seized from Prime Trust account | | |
| **Amount Requested** | $448,840.92 | | |

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

**Nature of claim**

**Amount Requested**

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed**
Examples: Season tickets, country club membership

| | | |
|---|---|---|
| 77.1 | Intercompany Accounts Receivable - Aquila Holdings | Undetermined |
| 77.2 | Intercompany Receivable - E-Payments GmbH | $451,266.47 |
| 77.3 | Intercompany Receivable - Trexie Management, LLC | $125,000.00 |
| 77.4 | Intercompany Receivable - Digital Providings LLC | Undetermined |
| 77.5 | Intercompany Receivable - Desolation Holdings LLC | Undetermined |
| 77.6 | Intercompany Receivable - Andromeda Technologies LLC | Undetermined |
| 77.7 | Intercompany Receivable - Bittrex Global, Inc. | Undetermined |
| 77.8 | Intercompany Receivable - Bittrex Malta Holdings Ltd | Undetermined |

Debtor  Bittrex, Inc.                                                    Case Number (if known) 23-10598

| | | |
|---|---|---|
| 77.9 | Intercompany Receivable - Bittrex Global (Bermuda) Ltd | Undetermined |
| 77.10 | Intercompany Receivable - RBR Holdings, Inc. | Undetermined |
| 77.11 | Intercompany Receivable - Dolostone Management, LLC | Undetermined |
| 77.12 | Intercompany Receivable - Trexie Management, LLC | Undetermined |
| 77.13 | Crypto Assets Held: BTC | $97,845,013.62 |
| 77.14 | Crypto Assets Held: ETH | $43,624,517.95 |
| 77.15 | Crypto Assets Held: ADA | $13,778,655.38 |
| 77.16 | Crypto Assets Held: XRP | $13,331,308.88 |
| 77.17 | Crypto Assets Held: DOGE | $12,027,181.53 |
| 77.18 | Crypto Assets Held: All Other Coins | $46,517,862.97 |

78. **Total of Part 11.**
Add lines 71 through 77.  Copy the total to line 90.                                    **$228,217,217.72**

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No.
☐ Yes.

Debtor  Bittrex, Inc.                                                     Case Number (if known) 23-10598

| Part 12: | Summary |

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.**   *Copy line 5, Part 1.* | $12,442,069.64 | |
| 81. **Deposits and prepayments.**   *Copy line 9, Part 2.* | | |
| 82. **Accounts receivable.**   *Copy line 12, Part 3.* | | |
| 83. **Investments.**   *Copy line 17, Part 4.* | | |
| 84. **Inventory.**   *Copy line 23, Part 5.* | | |
| 85. **Farming and fishing-related assets.**   *Copy line 33, Part 6.* | | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | | |
| 87. **Machinery, equipment, and vehicles.**   *Copy line 51, Part 8.* | | |
| 88. **Real Property.**   *Copy line 56, Part 9.* | | |
| 89. **Intangibles and intellectual property.**   *Copy line 66, Part 10.* | | |
| 90. **All other assets.**   *Copy line 78, Part 11.* | $228,217,217.72 | |
| 91. **Total.**  Add lines 80 through 90 for each column.   91a. | $240,659,287.36 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.**   Lines 91a + 91b = 92......................................................................... | | $240,659,287.36 |