**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Desolation Holdings LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10597 (BLS)<br><br>(Jointly Administered)<br><br>Hrg. Date: July 12, 2023 at 1:30 p.m. (ET)<br>Obj. Deadline: July 5, 2023 at 4:00 p.m. (ET) |

**DEBTORS' MOTION TO ENFORCE AUTOMATIC STAY
AND NON-DISCRIMINATION PROVISIONS OF
THE BANKRUPTCY CODE, AND FOR CIVIL CONTEMPT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion ("Motion").

## I.  INTRODUCTION

1.  The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** ("Order"), enforcing the automatic stay and the non-discrimination provisions of the Bankruptcy Code, and finding the Florida Office of Financial Regulations ("Florida OFR") in civil contempt.

2.  After Bittrex, Inc. ("BUS") filed its chapter 11 petition on May 8, 2022, the Florida OFR knowingly and repeatedly violated the automatic stay and discriminated against BUS and individuals associated with BUS in violation of 11 U.S.C. § 525(a). BUS informed the Florida OFR of its violations, had several meet and confers, but the Florida OFR has refused to conform its conduct to the Bankruptcy Code. BUS now seeks this Court's assistance.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

1

3. In late March 2023, BUS notified the Florida OFR (and equivalent agencies in other states) that it intended to wind down its affairs, and in doing so, would surrender its money transmitter license ("License"). The Florida OFR did not respond to BUS's surrender. Instead, on April 24, 2023, BUS received an *Administrative Complaint* ("Complaint") from the Florida OFR, seeking the revoke the same License that BUS had already told the Florida OFR it surrendered. The Complaint alleges that the License must be revoked because BUS entered into consent orders with the federal Crimes Enforcement Network ("FinCEN") and the Connecticut Department of Banking ("Connecticut DOB"), and because the New York Department of Financial Services ("NYDFS") denied BUS' license applications, even though all of the consent orders concerned operational periods ending in December 2018 and July 2019, and the license denials occurred in April 2019. The Complaint does not allege any current public harms or ongoing violations of Florida law, and Florida OFR did not identify any. The Complaint also names several individuals associated with BUS, but cites no wrongdoing by those individuals.

4. BUS surrendered its License on April 30, 2023, and it is listed as "terminated" on the Florida OFR's website. BUS then filed bankruptcy on May 8, 2023. BUS's counsel notified the Florida OFR of the bankruptcy on May 9, 2023. The Florida OFR, however, continued to prosecute the Complaint and continues to insist that BUS expend significant time and resources to defend itself.

5. The Florida OFR's continued prosecution of the Complaint violates both section 362 and section 545 of the Bankruptcy Code. The Complaint seeks to continue an administrative proceeding within the meaning of section 362(a)(1). Section 362(b)(4) does not apply because the Florida OFR cannot be "enforc[ing]" any police or regulatory powers: the Florida OFR knew about the consent orders and license denials for many months, has not alleged any ongoing violations of

Florida law, and lists the License as "terminated" on its website.

6. Moreover, the Florida OFR's continued prosecution of the Complaint violates section 525. The Florida OFR admitted on a recent telephone call that its decision to file the Complaint was based on BUS's financial condition, and even referred to a multi-state report of examination issued contemporaneously with the Complaint, which contains ███████████ ███████████

7. The Court should not permit the Florida OFR's continued stay violations and economic discrimination. The Debtors have already diverted significant resources to defending an action that seeks the revocation of an already surrendered and terminated License, when those resources should be put towards concluding the Debtors' wind down and making the Debtors' customers whole. Therefore, BUS requests that the Court hold the Florida OFR in civil contempt for having violated and disregarded the automatic stay and anti-discrimination provisions of the Bankruptcy Code, and to set a further hearing to determine the reasonable attorneys' fees and costs incurred in seeking to enforce the automatic stay and section 525.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The bases for the relief requested herein are sections 105(a), 362, and 525 of title 11 of the United States Code ("Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014, and Local Rule 9013-1.

## BACKGROUND

### I. BUS's Business And The Florida Money Transmitter License

11. The Debtors, together with their non-debtor affiliates (collectively, "Bittrex") operate cryptocurrency exchanges for both retail and institutional customers in several jurisdictions. BUS a Georgia corporation, operates Bittrex's cryptocurrency exchange for U.S. customers. Hengel Decl. ¶ 1.[2]

12. As of April 2023, BUS maintained money transmitter licenses in 36 jurisdictions in the United States, consisting of 34 states, the District of Columbia and Puerto Rico. *See id.* ¶ 14. A money transmitter license authorizes its holder to transmit "currency, monetary value, or payment instruments, either by wire, facsimile, electronic transfer, courier, the Internet or through bill payment services or other businesses that facilitate such transfer."[3] The State of Florida conditions such licenses on solvency—money transmitter licensees are "subjected to Minimum Net Worth, Annual Audited Financial Statements & Surety Bond requirements."[4] Specifically, "[a] licensee must have a net worth of at least $100,000," and "[t]he required net worth must be maintained at all times." Florida Stat. § 560.209(1). "Net worth" means "assets minus liabilities,

---

[2] "Hengel Decl." refers to the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [D.I. 11].

[3] https://flofr.gov/sitePages/MoneyTransmitters.htm

[4] *Id.*

determined in accordance with United States generally accepted accounting principles." Florida Stat. § 560.103(25).

13. Florida law gives a money transmitter licensee the authority "voluntarily surrender its license at any time by giving written notice to the office." Florida Stat. § 560.115. That statute allows the provider to voluntarily surrender its license and contains no exceptions or preconditions.

## II. BUS Tells States, Including Florida, That It Intends To Wind Down And Surrender Its Licenses

14. Following the collapse of FTX in late 2022, BUS received significantly increased audit requests from state regulators, requiring the expenditure of substantial resources to perform and pay for the audits. Hengel Decl. ¶ 14. Several states, including Florida, alleged that BUS was undercapitalized and demanded that BUS surrender its money transmitter licenses. *Id.* In light of state regulator demands, along with a downturn in cryptocurrency markets and increasing investigations from federal agencies, BUS determined to enter into a wind down to protect its customers from the excessive costs of regulatory compliance and investigations. *Id.* Correspondingly, BUS surrendered all of its money transmitter licenses. *Id.* BUS's wind down plan provides customers a commercially reasonable period of time to withdraw cryptocurrency assets and fiat currencies associated with their accounts before unprecedented regulatory costs threaten BUS's ability to do so.

15. Accordingly, on March 31, 2023, BUS mailed and e-mailed the Florida OFR a notice stating that it intended to surrender its License by April 30, 2023 ("Surrender Letter"). Merriman Decl. ¶ 2 & Ex. A.[5] The Surrender Letter set out a timeline during which BUS would

---

[5] "Ex." refers to the exhibits to the *Declaration of Steven D. Merriman in Support of Motion to Enforce the Automatic Stay and Non-Discrimination Provisions of the Bankruptcy Code, and for Civil Contempt* ("Merriman Decl."), the *Declaration of David Maria in Support of Motion to Enforce the Automatic Stay and Non-Discrimination Provisions of the Bankruptcy Code, and for Civil Contempt* ("Maria Decl."), and the *Declaration of Patricia B. Tomasco in*

notify its customers of its intent to wind down and permit customers to withdraw cryptocurrency assets and fiat currency. *Id.*

16. BUS continued to work amicably with all other state regulators to surrender its money transmitter licenses. For example, on April 5, 2023, it entered into a *Consent Order* with the Texas Department of Banking ("Texas Consent Order"). Ex. B. As set forth in the Texas Consent Order, BUS voluntarily surrendered its Texas money transmitter license by April 7, 2023, and the Banking Commissioner of Texas accepted the surrender. Texas Consent Order ¶ 15. BUS, in turn, would process withdrawals by Texas customers until April 30, 2023. *Id.* ¶ 2.

### III. The Florida OFR Initiates the Florida Action

17. Unlike Texas and other states that worked with BUS to permit customers to withdraw cryptocurrency assets and fiat currencies, Florida decided to put itself before BUS's customers. Florida ignored the Surrender Letter for weeks, and six days before the planned surrender date, the Florida OFR served BUS with the Complaint seeking the revoke the same License that BUS had already told the Florida OFR it would surrender. Ex. C.[6]

18. The Complaint refers to an: (1) October 2022 Consent Order with FinCEN ("FINCEN Consent Order"), Complaint ¶¶ 19-34 (Count I); (2) October 2020 Consent Order with the Connecticut DOB ("Connecticut Consent Order"), Complaint ¶¶ 35-40 (Count II) ; and (3) April 2019 denial of license applications by the NYDFS ("NYDFS License Denial"), Complaint ¶¶ 41-45 (Count III). The Florida OFR alleges that the mere fact that these events occurred (i.e.,

---

*Support of Motion to Enforce the Automatic Stay and Non-Discrimination Provisions of the Bankruptcy Code, and for Civil Contempt* ("Tomasco Decl.").

[6] The Florida OFR certified that it served the Complaint on April 14, 2023. Ex. C at 10. This was false, because the tracking numbers included with the Certificate of Service were not generated until April 17, 2023, and the actual mailings were not delivered until April 24, 2023. Ex. D.

6

entry of the consent orders and denial of the licenses) is sufficient to revoke the License under Florida law. Complaint ¶¶ 33, 39, 44. Indeed, the Complaint makes no allegations independent of the federal consent orders and state denial of the licenses.

19. The only remedy the Florida OFR seeks is to revoke the License. *Id.* ¶¶ 34, 40, 45. It does not allege any public harms or ongoing violations of Florida law. Nor could it, because each of the consent orders and license denial referenced in the Complaint concern BUS' operations from *nearly four years ago*.

| Event | Event Occurrence | End of Relevant Operational Period | Exhibit |
| --- | --- | --- | --- |
| FinCEN Consent Order | October 2022 | December 2018 | E |
| Connecticut Consent Order | October 2020 | July 2019 | F |
| NYDFS License Denial | April 2019 | April 2019 | G |

20. The Florida OFR took no action at the time of these events. Moreover, despite having had the Surrender Letter for *weeks*, the Florida OFR did not mention in the Complaint that BUS had already stated it would surrender its License by April 30, 2023. *See* Complaint.

21. As further evidence of its punitive motive, the Florida OFR named several individuals associated with BUS, even though the Complaint contains *no* allegations of wrongdoing by those individuals. Those individuals are three shareholders of BUS' indirect parent, *id.* ¶¶ 13-16, BUS' chief operating officer, *id.* ¶ 17, and BUS' *former* chief compliance officer, *id.* ¶ 18.[7] The Complaint does not seek to take any disciplinary action or any relief at all against these individuals, but revocation of BUS's license would in and of itself taint these innocent individuals with a scarlet letter precluding future licensure, much like the conduct lambasted by

---

[7] BUS' former chief compliance officer was not employed by the BUS during the time periods covered by the consent orders and license denial alleged in the Complaint (he joined BUS in May 2020 and left BUS before BUS received the Complaint). *See* Ex. I.

the U.S. Supreme Court in *Perez v. Campbell*, 402 U.S. 637 (1971), and now codified in section 525 of the Bankruptcy Code.

    **IV.    The Florida OFR Continues To Prosecute The Florida Action Notwithstanding BUS' Bankruptcy And Repeated Warnings That Its Actions Violate The Bankruptcy Code**

    22.    Shortly after receiving the Complaint, BUS, through counsel, contacted the Florida OFR to discuss its existing plan to surrender its License and to explore whether an amicable, cost-effective resolution to the Complaint was possible. BUS' counsel and the Florida OFR conferred on April 28, 2023. Merriman Decl. ¶ 9. During this call, the Florida OFR told BUS' counsel that it knew about BUS' plan to wind down and to surrender its License before it served the Complaint, but that it issued the Complaint to prevent BUS from voluntarily surrendering its License. *Id.*

    23.    BUS surrendered its license on April 30, 2023. *Id.* ¶ 10. The Florida OFR's website lists BUS' License as "terminated." *Id.* & Ex. H.

    24.    On May 8, 2023, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Chapter 11 Cases").

    25.    On May 9, 2023, BUS' counsel e-mailed the Florida OFR, notifying the Florida OFR among other things that: (i) on April 30, 2023, BUS closed Florida customer accounts and surrendered its License; (ii) BUS filed bankruptcy on May 8, 2023; and (iii) BUS was considering whether the Florida OFR violated the Bankruptcy Code by continuing to prosecute the Complaint. Ex. I. The next day, the Florida OFR responded that it was "exempt" from the automatic stay based on section 362(b)(4) because the Florida OFR is "a state regulator pursuing an administrative action that does not involve any monetary penalties." Ex. J. The Florida OFR demanded that BUS serve a request for a hearing in order to discuss the potential resolution of the Complaint, otherwise, it would seek a default. *Id.* To preserve a path to amicable resolution and to protect against the

threatened default, BUS prepared and submitted an Election of Proceeding on May 22, 2023. Merriman Decl. ¶ 12.

26. BUS' counsel and the Florida OFR conferred again on June 1, 2023. Maria Decl. ¶ 2. During this conference, the Florida OFR claimed that its primary motive to file the Complaint was BUS' financial condition, and that it had been participating in a multi-state examination of BUS' ███████████ *Id.*[8] The Report of Examination, which is attached to Exhibit K, was issued on ██████████ ("Report of Examination"), ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████

27. On June 13, 2023, BUS sent a letter to the Florida OFR detailing that its continued prosecution of the Complaint violated sections 362 and 525 of the Bankruptcy Code, and demanded that it dismiss the Complaint with prejudice immediately. Ex. L. Despite several follow up emails, as of the date of this Motion, BUS has not received a substantive response.

---

[8] BUS acknowledges that the June 1, 2023 conference involved settlement discussions, but the Florida OFR's reference to its motive for filing the Complaint against BUS due to its financial condition is not protected by Federal Rule of Evidence 408. That rule provides that statements made during settlement discussions are not excludable when offered to prove the intent or motive of the party making the statement, particularly when it relates to facts that pre-existed before the settlement discussions. Fed. R. Evid. 408(b); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 598 F. Supp. 3d 639, 646–47 (E.D. Mich. 2022); *Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136, 139-40 (W.D.N.Y. 2012).

**BASIS FOR RELIEF**

I.   **The Florida OFR Violates The Automatic Stay By Prosecuting the Florida Action**

28.   Section 362 of the Bankruptcy Code operates to immediately stay various acts that could interfere with the orderly distribution of the bankruptcy estate. *In re Linear Elec. Co.*, 852 F.3d 313, 317 (3d Cir. 2017). "The automatic stay serves several purposes, including providing 'a debtor a breathing spell from creditors by stopping all collection efforts and all foreclosure actions,' as well as protecting 'creditors by preventing particular creditors from acting unilaterally to obtain payment from a debtor to the detriment of other creditors.'" *In re Zinchiak*, 406 F.3d 214, 219 n.2 (3d Cir. 2005); *see Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1033 (3d Cir. 1991).

29.   Section 362(a)(1) prohibits: "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title …." 11 U.S.C. § 362(a)(1). The scope of section 362(a)(1) is "exceedingly broad" and "encompasses all judicial proceedings." *In re Northwood Flavors, Inc.*, 202 B.R. 63, 66 (Bankr. W.D. Pa. 1996). It stays all actions brought against the debtor, and the stay does "not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982).

30.   License revocation proceedings fall within the plain language of section 362(a)(1). *See, e.g.*, *In re Westlake Prop. Holdings, LLC*, 606 B.R. 772, 780 (Bankr. N.D. Ill. 2019) (finding that continuation of administrative proceeding violated section 362(a)(1)); *In re Burgess*, 234 B.R. 793, 796 (D. Nev. 1999) (holding that revocation of brothel license violated the automatic stay); In *re North*, 128 B.R. 592, 599 (Bankr. D. Vt. 1991) ("It is black letter law that administrative

licensing revocation proceedings are subject to the automatic stay."); *In re Massenzio*, 121 B.R. 688, 692-93 (Bankr. N.D.N.Y. 1990) (holding that revocation of insurance agent license violated the automatic stay).

31.  Here, BUS gave the Florida OFR notice that it had filed a chapter 11 petition on May 9, 2023. Ex. I. Undeterred, the Florida OFR continued to prosecute the Complaint against BUS, even insisting that BUS file an election of proceeding or face a default. Ex. J. It follows that the Florida OFR engaged in repeated violations of section 362(a)(1).

## II.  Section 362(b)(4) Does Not Apply Because BUS Has Surrendered The License And Therefore The Florida OFR Is Not Enforcing Any Police Or Regulatory Powers

32.  The Florida OFR tacitly recognizes that its continued prosecution of the Complaint violates section 362(a)(1) by wrongly asserting that its actions fall within the section 362(b)(4) exception to the automatic stay. Ex. J.

33.  Section 362(b)(4) states that "the commencement or continuation of an action or proceeding by a governmental unit … to *enforce* such governmental unit's or organization's police and regulatory power" is not stayed under section 362(a)(1), (2), (3), or (6). 11 U.S.C. § 362(b)(4) (emphasis added).

34.  Section 362(b)(4) "is intended to be given a *narrow* construction in order to permit governmental units to pursue actions to protect the public health and safety." *In re The Fairchild Corp.*, 2009 WL 4546581, at *4 (Bankr. D. Del. Dec. 1, 2009) (citing 124 Cong. Rec. H 11089, reprinted in 1978 U.S. Code Cong. & Admin. News 6436, 6444-445) (emphasis in original). The reason that courts give section 362(b)(4) (and all of the other exceptions to the automatic stay) a narrow construction is that section 362 has a "safety valve" where a governmental unit can request relief from the automatic stay if it believes the automatic stay is unfair or inequitable. *Fairchild*, 2009 WL 4546581, at *4. That "safety valve" would not exist if exceptions to the automatic stay

are construed broadly. *Id.*. Instead, debtors would be required to devote significant time and resources to correct stay violations, and "[t]he shifting of this burden is contrary to the entire purpose of the automatic stay." *Id.*

35.  Section 362(b)(4) only applies where a governmental unit is "enforc[ing]" a police or regulatory power, i.e., "suing a debtor to **prevent or stop** violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." *Fairchild*, 2009 WL 4546581, at *4 (citing *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988)) (emphasis added). It follows that a governmental unit can only "enforce" its police or regulatory powers if it is "compel[ling] compliance" with a law or regulation that is being violated. *In re Royal*, 137 F. App'x 537, 540 (4th Cir. 2005).

36.  The question here is whether the Florida OFR is "enforc[ing]" a "police and regulatory power" by prosecuting the Complaint. It is not. The Complaint relies exclusively on years-old consent orders and license denials that cover operational periods that ended over four years ago (December 2018-July 2019). The Florida OFR sat on its hands for an extended time and did nothing until after BUS told the Florida OFR it was going to surrender its License. Moreover, the Florida OFR makes no independent allegations of public harm or ongoing violations of Florida law. Indeed, the Complaint seeks only the revocation of the already surrendered and terminated License.

37.  No plausible reading of the Complaint brings it within the police or regulatory exception to the automatic stay. BUS should not be forced to expend time and resources at this juncture of the cases, when such time and resources should be put to use winding down BUS' operations and allowing for continued customer withdrawals.

### III. The Florida OFR Violates Section 525 Of The Bankruptcy Code Because It Is Attempting To Punish BUS For Insolvency

38. The Florida OFR's actions also violate section 525(a) of the Bankruptcy Code. Section 525(a) states that "a governmental unit may not deny revoke, suspend, or refuse to renew a license … against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act [or] has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge …."

39. The purpose of section 525(a) is to "prevent governmental units from frustrating the policies of the Bankruptcy Code by discrimination against persons seeking relief under that Code." *In re Exquisito Servs., Inc.*, 823 F.3d 151, 155 (5th Cir. 1987) (citing *Duffey v. Dollison*, 734 F.3d 265, 271 (6th Cir. 1984)). Whether there is a "valid regulatory motive" for the Complaint is irrelevant. *F.C.C. v. NextWave Personal Comm's Inc.*, 537 U.S. 293, 301-02 (2003). "Section 525 means nothing more or less than that" the "proximate cause of the cancellation" is that the debtors is a debtor or was insolvent, "whatever the agency's ultimate motive in pulling the trigger may be." *Id.* Once a debtor has shown an adverse governmental action, courts require that "the governmental unit taking the adverse action to articulate a legitimate, nondiscriminating reason for its adverse actions in order to prevail." *In re Metro Trans. Co.*, 64 B.R. 968, 975-76 (Bankr. E.D. Pa. 1986).

40. Here, the Florida OFR violates section 525 by continuing to prosecute the Complaint. The Complaint does not allege any public harm or recent conduct that violates Florida law. Instead, it refers the FinCEN Consent Order, the Connecticut Consent Order, and the NYDFS

License Denial that concern operational periods ending, at their latest, in late 2018 and mid-2019. These time periods far predate the filing the Complaint, and the Florida OFR did nothing for years. It follows that the these consent orders are not the real reason that the Florida OFR wants to revoke the License. They are pretext. *Metro Transp.*, 64 B.R. at 975 ("It is also unlikely that a governmental body cognizant of § 525(a) will concede that it acted exclusively on the basis of a bankruptcy filing.").

41.     The Florida OFR's motivation for revoking the License is BUS's purported insolvency. The Florida OFR made its financial insufficiency rationale for revoking the License even more clear on a recent telephone call. During a June 1, 2023, conference with BUS's counsel, the Florida OFR stated that its primary motive to file the Complaint was BUS' financial condition. Maria Decl. ¶ 2. It stated that it had been participating in a multi-state examination of BUS. *Id.* The Report of Examination, which w█████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████ 7.[9] In sum, the Florida OFR's non-discriminatory justifications for continuing prosecution of the Complaint lack credibility and form but "a pretext for prohibited discrimination." 4 Collier on Bankruptcy ¶ 525.06 (2023); *In re Rath Packing Co.*, 35 B.R. 615, 620 (Bankr. N.D. Iowa 1983) ("Within the context of the reasons given by the Commissioner in revoking the Debtor's exemption, a Rose by another name does not smell as sweet.").

---

[9] Moreover, the Complaint alleges that BUS had failed to "demonstrate adequate capital." Complaint ¶ 42.

42. The Florida OFR also violates section 525 by continuing to prosecute the Complaint against the non-BUS defendants. The Florida OFR named several individuals based purely on their association with BUS, but the Complaint contains *no* allegations concerning those individuals' conduct, and seeks no remedy against these individuals. This means that the Complaint names them solely on a derivative basis, based solely on their association with BUS, in further violation of section 525.

IV. **The Bankruptcy Court Can Enforce The Automatic Stay And Section 525 Through Section 105(a) And Its Civil Contempt Power, And The Court Should Both Declare That Continued Prosecution Of The Complaint Is Prohibited And Issue Sanctions**

43. Bankruptcy courts may enforce the automatic stay pursuant to their powers under 105(a) of the Bankruptcy Code. *In re Congregation Birchos Yosef*, 535 B.R. 629, 632 & n.2 (Bankr. S.D.N.Y. 2015); *In re Sayeh*, 445 B.R. 19, 27-28 (Bankr. D. Mass. 2011). Further, through their inherent contempt powers and section 105, bankruptcy courts can award sanctions for violations of the automatic stay. *In re Chateaugay Corp.*, 920 F.2d 183, 186-87 (2d Cir. 1990); *In re Windstream Holdings, Inc.*, 627 B.R. 32, 38 (Bankr. S.D.N.Y. 2021); *Sayeh*, 445 B.R. at 27-28; *In re Howard*, 428 B.R. 335, 339-40 (Bankr. W.D. Pa. 2010). To impose civil contempt sanctions, the Court need not make a finding of willfulness; rather, it need only find that there was no objectively "fair ground of doubt" that the party's conduct was prohibited by the automatic stay. *Windstream Holdings*, 627 B.R. at 40–41; *In re Patti*, 2001 WL 1188218, at *8 (Bankr. E.D. Pa. Sept. 14, 2001) ("Willfulness is not a necessary element of civil contempt."). The Florida OFR is in contempt so long as it had knowledge of the bankruptcy filing when it took actions violating the automatic stay. *Patti*, 2001 WL 1188218, at *8.

44. Similarly, bankruptcy courts can enforce section 525 through section 105(a). *Exquisito*, 823 F.2d at 155 ("We hold that the bankruptcy court was within its section 105(a)

authority when it ordered the Air Force to exercise the option, which it had refused to do only because Exquisito had filed under Chapter 11 in violation of § 525."); *Matter of McNeely*, 82 B.R. 628, 633-34 (Bankr. S.D. Ga. 1987) ("Evidently, a court's power to fashion remedies is derived from Section 105(a) which grants the bankruptcy court power to enforce provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Courts have given debtors making a case under Section 525(b) a variety of types of relief, including injunctive relief and compensatory damages."); *In re Metro Transp. Co.*, 64 B.R. 968, 975 (Bankr. E.D. Pa. 1986) ("We do note that, if discrimination as proscribed by 11 U.S.C. § 525(a) were found, that, in itself, would justify invocation of 11 U.S.C. § 105(a), without even a showing that the Debtor's assets were threatened, as such discrimination cannot be countenanced in any circumstances.").

45. This Court has the authority under section 105(a) to compel compliance with the automatic stay and section 525. *Windstream Holdings*, 627 B.R. at 41. Although a finding of willfulness is not required to hold a party in contempt, *id.* at 39, the Florida OFR had actual notice of its violations, making its conduct even more egregious. BUS notified the Florida OFR of the bankruptcy on May 9, 2023. Ex. I. BUS advised the Florida OFR that its refusal to dismiss the Complaint violated both section 362 and section 525 of the Bankruptcy Code on June 13, 2023. Ex. L. Yet, the Florida OFR continues violating the automatic stay and section 525.

46. The Court's civil contempt power includes "coercive sanctions to encourage compliance" and "damages for monetary harm," including but not limited to, the "fees and expenses incurred in trying to enforce the stay." *Windstream Holdings*, 627 B.R. at 47, 49. Consistent with this authority, the Debtors respectfully request that the Court enter an order:

    a. Holding the Florida OFR in civil contempt for having violated and disregarded the automatic stay;

b.  Holding the Florida OFR in civil contempt for having violated and disregarded section 525;

c.  Ordering the Florida OFR to dismiss the Florida Action;

d.  Assessing appropriate compensatory payments in the amount of reasonable attorneys' fees and costs incurred in defending against the Complaint after the petition date, and for seeking to enforce the stay and section 525.

## **NOTICE**

47. The Debtors will provide notice of this Motion to the Florida OFR and the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the Securities and Exchange Commission, FinCEN, and the Office of Foreign Assets Control; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as is just and proper.

Date: June 28, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Kenneth J. Enos
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Joshua Brooks (Delaware Bar No. 6765)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: jbrooks@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Valerie Ramos *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**