## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 8** |

**SUPPLEMENT TO DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PRE-PETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having previously filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* (the "Cash Management Motion"),[2] respectfully state the following in support of this request for a further extension of their deadline to come into compliance with section 345(b) of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Cash Management Motion.

### BACKGROUND TO THE RELIEF REQUESTED[3]

I.    **The Debtors' Cash Management System and the Court's Orders**

1.    In the ordinary course of business, the Debtors maintained a cash and cryptocurrency management system (the "Cash Management System") comparable to the systems used by similarly situated companies to manage the cash and digital assets on their platform in a cost-effective and efficient manner.  As of the Petition Date, the Cash Management System was comprised of seven active bank accounts (collectively, the "Bank Accounts"), as set out in the chart below:

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|---|---|---|---|---|
| 1 | Bittrex, Inc. | Customers Bank | 3217 | Operating Account |
| 2 | Bittrex, Inc. | Customers Bank | 0675 | OTC Account |
| 3 | Bittrex, Inc. | Customers Bank | 2017 | FBO Account |
| 4 | Bittrex, Inc. | United Texas Bank | 2423 | Dormant Account |
| 5 | Bittrex, Inc. | Prime Trust Bank | 4450 | FBO Account |
| 6 | Bittrex, Inc. | Prime Trust Bank | 1241 | Reserve Account |
| 7 | Bittrex, Inc. | Goldman Sachs | 2601 | Dormant Account |

2.    A complete description of each of these accounts is set forth in paragraphs 13-17 of the Cash Management Motion.  In short: (i) BUS receives income into and funds its disbursements for operating expenses from the Operating Account; (ii) the OTC Account is used for settlements with third-party trading desks; (iii) the FBO Accounts are customer-facing accounts used to handle customer Cash Deposits and Withdrawals; (iv) the Reserve Account maintains an ACH reserve; and (v) the United Texas and Goldman Accounts are not currently in use and contain de minimis amounts.

---

[3]    A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions ("Hengel Declaration" or "First Day Declaration") [D.I. 11].

3.       As of the Petition Date, the Debtors had approximately $10,903,808.48 in the FBO Accounts, approximately $540,334.61 in the Bittrex Operating and OTC Accounts, and approximately $1,000,000 in the Reserve Account.

4.       On May 10, 2023, the Court entered the *Interim Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* (the "Interim DIP Order") [D.I. 41] authorizing the Debtors to borrow up to 250 BTC on an interim basis.  On June 7, 2023, the Court entered the *Final Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* (the "Interim DIP Order") [D.I. 101] authorizing the Debtors to borrow up to 700 BTC on a final basis.  On June 13, 2023, the Court entered the *Order Authorizing the Debtors to Honor Withdrawal of Cryptocurrency Assets by Customers* (the "Withdrawal Order") [D.I. 128], authorizing the Debtors to honor withdrawals of cryptocurrency assets and fiat currency by customers holding undisputed, noncontingent, and liquidated claims.

5.       Following entry of the Interim and Final DIP Orders and the Withdrawal Order, and the transactions contemplated thereunder, as of the date of the filing of this motion, the Debtors had approximately $9,629,426.88 in the FBO Accounts, approximately $15,281,051.74 in the Bittrex Operating and OTC Accounts, and approximately $1,000,000 in the Reserve Account.

## II.    The Cash Management Orders and the Debtors' Efforts to Collateralize Their Accounts

6.       As set forth in the Cash Management Motion, the Cash Management Banks are not designated as authorized depositories in the District of Delaware by the Office of the United States Trustee (the "U.S. Trustee"), pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

7.       Before filing their bankruptcy petitions, the Debtors attempted to enter into banking relationships with authorized depositories, however, many of them were unwilling to provide services to cryptocurrency companies.[4]   Accordingly, in the Cash Management Motion, the Debtors sought a waiver of the deposit and investment requirements set forth in section 345 of the Bankruptcy Code.  Cash Management Motion ¶ 51.  However, recognizing the concerns addressed by Section 345, the Debtors represented to the Court that they would continue to reach out to authorized depositories, and requested that the Court provide them with 30 days without prejudice to seeking an additional extension to either (a) bring the Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) to seek appropriate relief from the Court.

8.       On May 10, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expenses Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* (the "First Interim Order") [D.I. 39], which, in relevant part, provided the Debtors "thirty (30) days, without prejudice to seeking an additional extension, from the entry of this Interim Order to either come into compliance with section 345(b) of the Bankruptcy Code or to seek appropriate relief from the Court" (the "First 345(b) Compliance Deadline").  The U.S. Trustee did not object to entry of the First Interim Order.

9.       From May 10, 2023 to June 9, 2023 (i.e., the period between entry of the First Interim Order and the First 345(b) Compliance Deadline), the Debtors worked diligently to come into compliance with Section 345(b).  The Debtors presented both Customers Bank and Prime

---

[4]   *See See* Rachel Louise Ensign, *Banks Are Breaking Up With Crypto During Regulatory Crackdown*, Wall St. J. (Feb. 16, 2023), https://on.wsj.com/3G8hCEG; Katie Haun, *How U.S. Regulators Are Choking Crypto*, Wall St. J. (Mar. 27, 2023), https://on.wsj.com/40KMTp8.

Trust with a Uniform Depository Agreement ("UDA"), but as of the First 345(b) Compliance Deadline, neither had signed the UDA, although discussions were ongoing.  In parallel, the Debtors searched to find new banking partners that were authorized depositories.  This search was made difficult by reluctance from many institutions to associate with the cryptocurrency industry or specifically with Bittrex due to their ongoing issues with the SEC.  Nevertheless, the Debtors entered into active discussions for new account openings with two authorized depositories – Citizens Bank and Webster Bank.  The Debtors also approached Mercury and Maplemark Bank, who are not authorized depositories but who the Debtors were hopeful would work with cryptocurrency companies, requesting they achieve 345(b) compliance as part of their onboarding process.

10.     The Debtors conveyed these efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the First 345(b) Compliance Deadline.  The U.S. Trustee agreed not to oppose a further extension of the Debtors' deadline to come into compliance with section 345(b) of the Bankruptcy Code to June 30, 2023 (the "Second 345(b) Compliance Deadline").  On June 7, 2023, the Court entered its *Second Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 108] (the "Second Interim Order") which, among other things, reflected the Second 345(b) Compliance Deadline.

11.     The Debtors continued their efforts to become Section 345(b) compliant.  They worked with and were able to open an operating account at Citizens Bank (the "Citizens Bank Operating Account").  All funds in the Debtors' Operating and OTC Accounts are being moved to

the Citizens Bank Operating Account.  Regarding the funds held in the Debtors' FBO and Reserve Accounts with Customers and Prime Trust, the Debtors have requested that Citizens Bank open a FBO account, and were awaiting a response by Citizens Bank's compliance department.  The Debtors were simultaneously working to move the funds in the Reserve Account.  As of the filing of this supplement, the Debtors' discussions with Citizens Bank remain ongoing,

12.     The Debtors conveyed these efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the Second 345(b) Compliance Deadline.  The U.S. Trustee agreed not to oppose  a further extension the Debtors deadline to either come into compliance with section 345(b) of the Bankruptcy Code to July 12, 2023 to coincide with an omnibus hearing date in the above-captioned cases (the "Third 345(b) Compliance Deadline").  On June 30, 2023, the Court entered its *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 160] (the "Third Interim Order") which, among other things, reflected the Third 345(b) Compliance Deadline.

### BASIS FOR RELIEF

**I.     The Court Has Authority To Extend Its Deadline To Comply With Or Seek Relief From Section 345(b)**

13.     Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and

credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise." Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close pre-petition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more approved depositories.

14.     Section 345(b), however, allows courts to order otherwise "for cause." In evaluating whether "cause" exists, courts have considered a number of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business operations; (iii) the amount of the investments involved; (iv) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the debtor; (x) the harm, if any, to the estate; and (xi) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

15.     Section 345(b)'s plain language that the court may order "otherwise" for "cause," section 105(a)'s permission for the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and Bankruptcy Rule 9006(b)'s mandate that the Court may in its discretion enlarge the time for performing acts provide the Court ample authority to extend the deadline to comply with section 345(b) or to seek relief from section 345(b). It would make little sense for the Court to have authority to excuse compliance with section 345(b),

but then to not have authority to extend its own deadline to come into compliance with section 345(b) or to seek relief.

## II.     Cause Exists To Extend The Deadline To Comply With Or Seek Relief From Section 345(b)

16.     Since filing their bankruptcy petition, the Debtors have diligently worked to come into compliance with section 345(b).  As set forth in detail in paragraphs 6 through 9, *supra*, the Debtors: (i) asked Customers Bank and Prime Trust to sign UDAs, but those attempts were unsuccessful; (ii) reached out to Citizens Bank to open accounts; (iii) reached out to Webster Bank to open accounts; (iv) reached out to Mercury Bank to open accounts with an UDA; and (v) reached out to Maplemark Bank to open accounts with a UDA.  Despite the general reluctance of banks to work with cryptocurrency businesses, and specifically with Bittrex due to ongoing issues with the SEC, the Debtors were able to successfully open an operating account with an authorized depository (Citizens Bank) and are in the process of transferring the funds in their Operating and OTC Accounts to that operating account.  The Debtors have requested that Citizens Bank open a FBO account so that the can transfer funds in their FBO Accounts, but because FBO accounts are customer facing, understand that the compliance process on the bank's end takes additional time. The Debtors are hopeful that Citizens Bank will approve the Debtors' opening of a FBO account.

17.     In short, the Debtors do not want to litigate whether it is appropriate to excuse compliance with section 345(b) in these cases.[5]  The resources required to litigate that issue would

---

[5]  Section 345(b) has become a frequent issue in cryptocurrency cases.  For example, in *In re FTX Trading Ltd*, the court granted a partial waiver of section 345(b) to allow the Debtors to keep open specified categories of accounts, such as US bank accounts held by foreign Debtors in FDIC-insured institutions (with specified caps) and certain de minimis cash accounts.  *In re FTX Trading, Ltd.*, Case No. 22-11068 (JTD) D.I. 488 ¶ 15 (Bankr. D. Del. Jan. 12, 2023).  In *In re BlockFi Inc.*, the court granted a waiver of section 345(b) based on whether the Debtors' bank decided to collateralize certain funds.  *In re BlockFi Inc.*, Case No. 22-19361-MBK D.I. 810 ¶¶ 3-5 (Bankr. D. N.J. May 1, 2023).  In *In re Celsius Network LLC*, the court fully waived section 345(b).  *In re Celsius Network LLC*, Case No. 22-10964-MG D.I. 1152 ¶ 29 (Bankr. S.D.N.Y. Oct. 21, 2022).  And in *In re Voyager Digital Holdings, Inc.*, the court partially waiver section 345(b) compliance for specified bank accounts.  *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943-MEW D.I. 983 ¶ 26 (Bankr. S.D.N.Y. Feb. 8, 2023).

be put to better use addressing customers' claims and completing the Debtors' wind-down.  The

Debtors are hopeful that they will be able to achieve section 345(b) compliance in the near-term,

but in the event that they cannot, reserve the right to seek a further extension or permanent relief.

WHEREFORE, the Debtors respectfully request that the Court authorize a further extension of their deadline to come into compliance with section 345(b) of the Bankruptcy Code, and grant such other and further relief as is just and proper.

Date: July 6, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/  Kenneth J. Enos*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth J. Enos (Delaware Bar No. 4544)
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani (admitted pro hac vice)
Patricia B. Tomasco (admitted pro hac vice)
Daniel Holzman (admitted pro hac vice)
Alain Jaquet (admitted pro hac vice)
Razmig Izakelian (admitted pro hac vice)
Valerie Ramos (admitted pro hac vice)
Joanna D. Caytas (admitted pro hac vice)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**