**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hrg. Date: August 16, 2023 at 10:00 a.m. (ET) Pr** |
| | **Obj. Deadline: August 9, 2023 at 4:00 p.m. (ET)** |

**MOTION SEEKING INTERIM EXTENSION OF DEADLINE TO COME INTO
COMPLIANCE WITH BANKRUPTCY CODE SECTION 345(B)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion ("Motion").

## INTRODUCTION

1.      Since filing their bankruptcy petition, the Debtors have diligently worked to come into compliance with section 345(b).  Despite the reluctance of banks to work with cryptocurrency businesses, and despite the additional challenge of creating relationships with banks given BUS' ongoing issues with the SEC, the Debtors have successfully opened both an operating and a FBO account at Citizens Bank, which is an approved depository.  The Debtors anticipate they will be operationally ready to move most of their funds, which are currently held at Customers Bank and Prime Trust, to the Citizens Bank accounts by August 16, 2023.  However, the Debtors are requesting this further interim extension to deal with two issues.

2.      *First*, the Debtors are still in the process of setting up payments to vendors and for payroll out of the Citizens Bank operating account, and anticipate that that process will take an additional eight (8) weeks.  The Debtors' intent is to move most of their operating funds to the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

new account, leaving only enough to make payroll and pay vendors until payments out of Citizens Bank are up and running.  However, the Debtors are concerned that if they move a portion of the funds out of Customers Bank, Customers Bank will restrict the Debtors' ability to make payments. Out of an abundance of caution, the Debtors have requested a modification to the cash management order to require Customers Bank to honor the Debtors' payment requests until all of the funds can be moved to Citizens Bank.

3.      *Second*, the Debtors recently learned that the Eighth Judicial District Court of Nevada appointed a receiver over Prime Trust, and Prime Trust has refused to honor the Debtors' request to withdraw the funds from the Prime Trust accounts.  The receiver, John Guedry, retained counsel late last week.  The Debtors have been communicating with the receiver's counsel and are hopeful that they can resolve this issue without the need for Court intervention.

4.      For these reasons, the Debtors request an additional interim extension through September 13, 2023, without prejudice to seeking a further extension or permanent relief, to the extent necessary.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.    The bases for the relief requested herein are sections 105(a), and 345(b) of title 11 of the United States Code ("Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014, and Local Rule 9013-1.

## BACKGROUND

### I.    The Debtors' Cash Management System and the Court's Orders

8.    In the ordinary course of business, the Debtors maintained a cash and cryptocurrency management system (the "Cash Management System") comparable to the systems used by similarly situated companies to manage the cash and digital assets on their platform in a cost-effective and efficient manner.  As of the Petition Date, the Cash Management System was comprised of seven active bank accounts (collectively, the "Bank Accounts"),[2] as set out in the chart below:

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|-----|--------|-----------|----------------------------------|--------------|
| 1 | Bittrex, Inc. | Customers Bank | 3217 | Operating Account |
| 2 | Bittrex, Inc. | Customers Bank | 0675 | OTC Account |
| 3 | Bittrex, Inc. | Customers Bank | 2017 | FBO Account |
| 4 | Bittrex, Inc. | United Texas Bank | 2423 | Dormant Account |
| 5 | Bittrex, Inc. | Prime Trust Bank | 4450 | FBO Account |

---

[2]  A complete description of each of these accounts is set forth in paragraphs 13-17 of the *Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* [D.I. 8] (the "Cash Management Motion").  All terms not defined herein have the meaning given to them in the Cash Management Motion.

| 6 | Bittrex, Inc. | Prime Trust Bank | 1241 | Reserve Account |
| 7 | Bittrex, Inc. | Goldman Sachs | 2601 | Dormant Account |

9.  As of the Petition Date, the Debtors had approximately $10,903,808.48 in the FBO Accounts, approximately $540,334.61 in the Bittrex Operating and OTC Accounts, and approximately $1,000,000 in the Reserve Account.

10.  On May 10, 2023, the Court entered the *Interim Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* (the "Interim DIP Order") [D.I. 41] authorizing the Debtors to borrow up to 250 BTC on an interim basis.  On June 7, 2023, the Court entered the *Final Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* (the "Interim DIP Order") [D.I. 101] authorizing the Debtors to borrow up to 700 BTC on a final basis.  On June 13, 2023, the Court entered the *Order Authorizing the Debtors to Honor Withdrawal of Cryptocurrency Assets by Customers* (the "Withdrawal Order") [D.I. 128], authorizing the Debtors to honor withdrawals of cryptocurrency assets and fiat currency by customers holding undisputed, noncontingent, and liquidated claims.

11.  Following entry of the Interim and Final DIP Orders and the Withdrawal Order, and the transactions contemplated thereunder, as of the date of the filing of this motion, the Debtors have approximately $11,396,329.53 in the Customers Operating Account, $2,217.70 in the Customers OTC Account, $7,943,351.74 in the Customers FBO Account, $833,550.66 in the Prime Trust FBO Account, $1,000,000 in the Prime Trust ACH Reserve Account, and $0.12 in the

Goldman Sachs Dormant Account.[3]

## II. The Cash Management Orders and the Debtors' Efforts to Collateralize Their Accounts

12.    As set forth in the Cash Management Motion, the Cash Management Banks are not designated as authorized depositories in the District of Delaware by the Office of the United States Trustee (the "U.S. Trustee"), pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

13.    Before filing their bankruptcy petitions, the Debtors attempted to enter into banking relationships with authorized depositories, however, many of them were unwilling to provide services to cryptocurrency companies.[4]   Accordingly, in the Cash Management Motion, the Debtors sought a waiver of the deposit and investment requirements set forth in section 345 of the Bankruptcy Code.  Cash Management Motion ¶ 51.  However, recognizing the concerns addressed by Section 345, the Debtors represented to the Court that they would continue to reach out to authorized depositories, and requested that the Court provide them with 30 days without prejudice to seeking an additional extension to either (a) bring the Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) to seek appropriate relief from the Court.

14.    On May 10, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expenses Status to Post-Petition Intercompany Balances,*

---

[3]   BUS deposited the funds that were in the United Texas Bank Dormant Account into the Customers Operating Account.

[4]   *See See* Rachel Louise Ensign, *Banks Are Breaking Up With Crypto During Regulatory Crackdown*, Wall St. J. (Feb. 16, 2023), https://on.wsj.com/3G8hCEG; Katie Haun, *How U.S. Regulators Are Choking Crypto*, Wall St. J. (Mar. 27, 2023), https://on.wsj.com/40KMTp8.

*and (III) Granting Related Relief* (the "First Interim Order") [D.I. 39], which, in relevant part,

provided the Debtors "thirty (30) days, without prejudice to seeking an additional extension, from

the entry of this Interim Order to either come into compliance with section 345(b) of the

Bankruptcy Code or to seek appropriate relief from the Court" (the "First 345(b) Compliance

Deadline").  The U.S. Trustee did not object to entry of the First Interim Order.

15.     From May 10, 2023 to June 9, 2023 (i.e., the period between entry of the First

Interim Order and the First 345(b) Compliance Deadline), the Debtors worked diligently to come

into compliance with Section 345(b).  The Debtors presented both Customers Bank and Prime

Trust with a Uniform Depository Agreement ("UDA"), but as of the First 345(b) Compliance

Deadline, neither had signed the UDA, although discussions were ongoing.  In parallel, the Debtors

searched to find new banking partners that were authorized depositories.  This search was made

difficult by reluctance from many institutions to associate with the cryptocurrency industry or

specifically with Bittrex due to their ongoing issues with the SEC.  Nevertheless, the Debtors

entered into active discussions for new account openings with two authorized depositories –

Citizens Bank and Webster Bank.  The Debtors also approached Mercury and Maplemark Bank,

who are not authorized depositories but who the Debtors were hopeful would work with

cryptocurrency companies, requesting they achieve 345(b) compliance as part of their onboarding

process.

16.     The Debtors conveyed these efforts to the U.S. Trustee and explained that despite

their best efforts, they would not be Section 345(b)-complaint by the First 345(b) Compliance

Deadline.  The U.S. Trustee agreed not to oppose a further extension the Debtors' deadline to come

into compliance with section 345(b) of the Bankruptcy Code to June 30, 2023 (the "Second 345(b)

Compliance Deadline").   On June 7, 2023, the Court entered its *Second Interim Order (I)*

*Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 108] (the "Second Interim Order") which, among other things, reflected the Second 345(b) Compliance Deadline.

17.    The Debtors continued their efforts to become Section 345(b) compliant.  They worked with and were able to open an operating account at Citizens Bank (the "Citizens Bank Operating Account").  They were also working towards opening a FBO account at Citizens Bank.

18.    The Debtors conveyed these efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the Second 345(b) Compliance Deadline.  The U.S. Trustee agreed not to oppose  a further extension the Debtors deadline to either come into compliance with section 345(b) of the Bankruptcy Code or to seek a further extension or waiver to July 12, 2023 to coincide with an omnibus hearing date in the above-captioned cases (the "Third 345(b) Compliance Deadline").  On June 30, 2023, the Court entered its *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 160] (the "Third Interim Order") which, among other things, reflected the Third 345(b) Compliance Deadline.

19.    On July 6, 2023, the Debtors filed the *Supplement to Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative*

*Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* [D.I. 181] (the "Supplement to Cash Management Motion"), requesting that the Court extend the Third 345(b) Compliance Deadline to August 16, 2023 (the "Fourth 345(b) Compliance Deadline"). The U.S. Trustee did not oppose the Debtors' request.

20.     On July 12, 2023, the Court entered the *Further Interim Order Extending the Debtors' Deadline to Comply with Section 345(b) of the Bankruptcy Code* [D.I. 206] (the "Fourth Interim Order"), extending the deadline to either come into compliance with section 345(b) of the Bankruptcy Code or to seek a further extension or waiver to August 16, 2023.

**III.    The Debtors' Further Efforts to Collateralize Their Accounts and Remaining Steps Needed to Become Fully Compliant with Section 345(b)**

21.     Since entry of the Fourth Interim Order, the Debtors have successfully opened a FBO Account at Citizens Bank ("Citizens FBO Account"), and anticipate that the Citizens FBO Account will be "linked" to the Debtors' platform by August 16, 2023. However, there remain two issues before the Debtors can move all of their funds to the Citizens Operating and FBO Accounts.

22.     *First*, with respect to Customers Bank, the Debtors are ready to move a substantial portion of the funds in the Customers Operating and OTC Accounts to the Citizens Operating Account. However, it will take eight more weeks to complete the process of setting up payments out of the Citizens Operating Account for the purpose of making payroll and vendors. The Debtors therefore intend to move nearly all of the operating funds to the Citizens Operating Account, leaving only $500,000 in the Customers Operating Account to fund payroll and vendor expenses (subject to replenishment as necessary) until those payments are set up through the Citizens Operating Account. Once the Citizens Operating Account is able to process payments, all funds will be moved to that account.

23.     As for the Customers FBO Account, the Debtors anticipate that they will need an additional two weeks, through the end of August 2023, to ensure that there are appropriate safeguards in place for the Citizens FBO Account.  The Debtors intend to move all but $100,000 of the funds in the Customers FBO Account to Citizens Bank, subject to replenishment as necessary to meet customer withdrawals.  Once the safeguards are in place, all funds in the Customers FBO Account will be moved to the Citizens FBO Account.

24.     However, as set forth in the concurrently filed *Debtors Motion for Entry of an Order Amending Cash Management Order to Require Customers Bank to Honor Debtors' Bank Account Requests*, the Debtors are concerned that Customers Bank may shut down the Debtors' ability to wire money for vendors and payroll if they move most of the funds to Citizens Bank.  Out of an abundance of caution, the Debtors have requested a modification to the cash management order to ensure that Customers Bank will honor the Debtors' requests until such time that payments for vendors and payroll are set up out of the Citizens Operating Account.  The Debtors are ready to wire a substantial portion of the funds to Citizens Bank as soon as such order is entered.

25.     *Second*, with respect to Prime Trust, the Nevada Financial Institutions Division petitioned for the appointment of a receiver, and on July 14, 2023, the Eighth Judicial District Court of Nevada appointed John Guedry as the temporary receiver of Prime Trust.  In light of the receivership, Prime Trust has refused to permit the Debtors to withdraw their funds at this time. However, Mr. Guedry recently retained counsel, and the Debtors have been in communication with Mr. Guedry's counsel regarding the funds in the Prime Trust FBO Account and Prime Trust ACH Reserve Account.  Mr. Guedry's counsel has requested two-to-three weeks to get up to speed. The Debtors are hopeful that they will resolve this issue without the need for Court intervention.

**BASIS FOR RELIEF**

I.    **The Court Has Authority To Extend Its Deadline To Comply With Or Seek Relief From Section 345(b)**

26.    Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise."  Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close pre-petition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more approved depositories.

27.    Section 345(b), however, allows courts to order otherwise "for cause."   In evaluating whether "cause" exists, courts have considered a number of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business operations; (iii) the amount of the investments involved; (iv) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the debtor; (x) the harm, if any, to the estate; and (xi) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.  *See In re Serv. Merch. Co., Inc.*,

240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

28.     Section 345(b)'s plain language that the court may order "otherwise" for "cause," section 105(a)'s permission for the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and Bankruptcy Rule 9006(b)'s mandate that the Court may in its discretion enlarge the time for performing acts provide the Court ample authority to extend the deadline to comply with section 345(b) or to seek relief from section 345(b). It would make little sense for the Court to have authority to excuse compliance with section 345(b), but then to not have authority to extend its own deadline to come into compliance with section 345(b) or to seek relief.

## II.    Cause Exists To Extend The Deadline To Comply With Or Seek Relief From Section 345(b)

29.     Since filing their bankruptcy petitions, the Debtors have diligently worked to come into compliance with section 345(b).  As set forth in detail above, and despite the general reluctance of banks to work with cryptocurrency businesses, and specifically with Bittrex due to ongoing issues with the SEC, the Debtors were able to successfully open operating and FBO accounts with an authorized depository (Citizens Bank), and are ready to transfer their funds to those accounts, subject to the two issues outlined above.

30.     Specifically, the Debtors believe that they need eight more weeks to set up payments for vendors and payroll out of the Citizens Operating Account.  The Debtors also believe that they will need at additional time to resolve issues with Prime Trust.

31.     In short, the Debtors now have accounts opened at an authorized depository and are ready to move over a substantial portion of their funds, upon entry of a comfort order.  The Debtors are hopeful they will resolve issues with Prime Trust without the need for Court intervention.  Therefore, the Debtors request that the Court extend the deadline to achieve section 345(b)

compliance to September 13, 2023, without prejudice to seeking a further extension or permanent relief to the extent necessary.

### NOTICE

32.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the Securities and Exchange Commission, FinCEN, and the Office of Foreign Assets Control; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as is just and proper.

Date: August 2, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Joshua Brooks (Delaware Bar No. 6765)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: jbrooks@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Valerie Ramos *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**