**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Proposed Hrg. Date:  August 16, 2023 at 10:00 a.m. (ET)** |
| | **Proposed Obj. Deadline:  August 9, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AMENDING CASH MANAGEMENT ORDER TO REQUIRE CUSTOMERS BANK TO HONOR DEBTORS' BANK ACCOUNT REQUESTS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion ("Motion").

## I.     INTRODUCTION

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** ("Revised Cash Management Order"), amending the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 205] ("Cash Management Order").

2.     The Debtors seek to revise the Cash Management Order, out of an abundance of caution, to ensure that Customers Bank will comply with the Debtors' requests to make payments to third parties (e.g., vendors and payroll).  As the Court is aware, as part of their efforts to comply with Section 345(b), the Debtors have successfully opened an operating account at Citizens Bank.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

The Debtors are ready to wire a substantial portion of their operating funds to that account. However, it will take an additional eight weeks to complete the process of setting up payments out of the Citizens Bank operating account for the purpose of making payroll and paying vendors. The Debtors' plan, therefore, is to move the majority of their funds to the Citizens Bank account, leaving enough in the Customers Bank operating account to fund expenses until the payments can be made through the Citizens Bank account. This approach will both ensure compliance with Bankruptcy Code section 345(b) and ensure that there will be no risk of harm to the Debtors, their estates, and the Debtors' employees.

3.    However, based on the Debtors' interactions with Customers Bank to date, the Debtors are concerned that if they transfer a portion of their funds to Citizens Bank, Customers Bank may insist that the Debtors withdraw funds from that account entirely, and prevent the Debtors from using that account in the interim while payments are set up out of Citizens Bank. As discussed above, the Debtors need to be able to use the Customers Bank account until they finish setting up payments out of the Citizens Bank. Therefore, the Debtors have proposed minor revisions to the Cash Management Order to ensure that Customers Bank will comply with the Debtors' banking requests.

## JURISDICTION AND VENUE

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are sections 105(a), 362(a), 363(c), and 542(b) of title 11 of the United States Code ("Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014, and Local Rule 9013-1.

## BACKGROUND

### I.    The Debtors' Bank Accounts

7.      In the ordinary course of business, the Debtors maintain a cash and cryptocurrency management system (the "Cash Management System") comparable to the systems used by similarly situated companies to manage the cash and digital assets on their platform in a cost-effective and efficient manner.   As of the Petition Date, the Cash Management System was comprised of seven active bank accounts (collectively, the "Bank Accounts"),[2] as set out in the chart below:

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|-----|--------|-----------|-------------------------------|--------------|
| 1 | Bittrex, Inc. | Customers Bank | 3217 | Operating Account |
| 2 | Bittrex, Inc. | Customers Bank | 0675 | OTC Account |
| 3 | Bittrex, Inc. | Customers Bank | 2017 | FBO Account |
| 4 | Bittrex, Inc. | United Texas Bank | 2423 | Dormant Account |
| 5 | Bittrex, Inc. | Prime Trust Bank | 4450 | FBO Account |

---

[2]   A complete description of each of these accounts is set forth in paragraphs 13-17 of the *Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* [D.I. 8] (the "Cash Management Motion").   All terms not defined herein have the meaning given to them in the Cash Management Motion.

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|-----|--------|-----------|--------------------------------|--------------|
| 6 | Bittrex, Inc. | Prime Trust Bank | 1241 | Reserve Account |
| 7 | Bittrex, Inc. | Goldman Sachs | 2601 | Dormant Account |

8.　　As of the Petition Date, the Debtors had approximately $10,903,808.48 in the FBO Accounts, approximately $540,334.61 in the Bittrex Operating and OTC Accounts, and approximately $1,000,000 in the Reserve Account.

9.　　Critically, the operating account at Customers Bank ("Customers Operating Account") funds BUS' disbursements and wires for BUS's operating, capital, and general administrative expenses.  The Customers Operating Account is vital to the Debtors' flow of funds. Among other critical functions, BUS uses the Customers Operating Account to pay vendors and fund payroll.

**II.    The Debtors' Intercompany Transactions**

10.　　As set forth in the Cash Management Motion, BUS is party to a Transitional Services Agreement ("TSA") dated as of May 5, 2023 with Trexie Management, LLC ("Trexie"). Pursuant to the TSA, BUS and Trexie make the following intercompany transactions ("Intercompany Transactions") with each other: (a) BUS provides legal and general administrative services to Trexie; and (b) Trexie provides services relating to information technology, customer support, data science, wallet support, accounting and finance, and compliance to BUS.

11.　　In the ordinary course of business, BUS pays expenses related to both its and Trexie's employees, accounts for payments attributable to Trexie's employees, and submits such payments to Trexie for reimbursement.  If the Intercompany Transactions were to be discontinued, the Debtors' operations would be disrupted to the detriment of the Debtors, their creditors, and

other stakeholders.

### III.    The Court's Cash Management Orders And The Debtors' Efforts To Come Into Compliance With Bankruptcy Code Section 345(b)

12.    As set forth in the Cash Management Motion, the Cash Management Banks are not designated as authorized depositories in the District of Delaware by the Office of the United States Trustee (the "U.S. Trustee"), pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

13.    Before filing their bankruptcy petitions, the Debtors attempted to enter into banking relationships with authorized depositories, however, many of them were unwilling to provide services to cryptocurrency companies.  Accordingly, in the Cash Management Motion, the Debtors sought a waiver of the requirements set forth in section 345 of the Bankruptcy Code.  Cash Management Motion ¶ 51.  But, recognizing the concerns addressed by Section 345, the Debtors represented to the Court that they would continue to reach out to authorized depositories, and requested that the Court provide them with 30 days without prejudice to seeking an additional extension to either (a) bring the Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) to seek appropriate relief from the Court.

14.    On May 10, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expenses Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* (the "First Interim Order") [D.I. 39], which, in relevant part, provided the Debtors "thirty (30) days, without prejudice to seeking an additional extension, from the entry of this Interim Order to either come into compliance with section 345(b) of the Bankruptcy Code or to seek appropriate relief from the Court" (the "First 345(b) Compliance

Deadline").

15.     From May 10, 2023 to June 9, 2023 (i.e., the period between entry of the First Interim Order and the First 345(b) Compliance Deadline), the Debtors worked diligently to come into compliance with Section 345(b).  The Debtors presented both Customers Bank and Prime Trust with a Uniform Depository Agreement ("UDA"), but as of the First 345(b) Compliance Deadline, neither had signed the UDA, although discussions were ongoing.  In parallel, the Debtors searched to find new banking partners that were authorized depositories.  This search was made difficult by reluctance from many institutions to associate with the cryptocurrency industry or specifically with Bittrex due to their ongoing issues with the SEC.  Nevertheless, the Debtors entered into active discussions for new account openings with two authorized depositories – Citizens Bank and Webster Bank.  The Debtors also approached Mercury and Maplemark Bank, who are not authorized depositories but who the Debtors were hopeful would work with cryptocurrency companies, requesting they achieve 345(b) compliance as part of their onboarding process.

16.     The Debtors conveyed these efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the First 345(b) Compliance Deadline.  The U.S. Trustee agreed not to oppose a further extension the Debtors' deadline to come into compliance with section 345(b) of the Bankruptcy Code to June 30, 2023 (the "Second 345(b) Compliance Deadline").  On June 7, 2023, the Court entered its *Second Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 108] (the "Second Interim Order")

which, among other things, reflected the Second 345(b) Compliance Deadline.

17.     The Debtors continued their efforts to become Section 345(b) compliant.  They worked with and were able to open an operating account at Citizens Bank (the "Citizens Operating Account").

18.     The Debtors conveyed their efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the Second 345(b) Compliance Deadline.  The U.S. Trustee agreed not to oppose  a further extension the Debtors deadline to either come into compliance with section 345(b) of the Bankruptcy Code to July 12, 2023 to coincide with an omnibus hearing date in the above-captioned cases (the "Third 345(b) Compliance Deadline").  On June 30, 2023, the Court entered its *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 160] (the "Third Interim Order") which, among other things, reflected the Third 345(b) Compliance Deadline.

19.     On July 6, 2023, the Debtors filed the *Supplement to Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* [D.I. 181] (the "Supplement to Cash Management Motion"), requesting that the Court extend the Third 345(b) Compliance Deadline to August 16, 2023 (the "Fourth 345(b) Compliance Deadline").  The U.S. Trustee did not oppose the Debtors' request.

20.    On July 12, 2023, the Court entered two orders.  The first was the Cash Management Order.  The second was the *Further Interim Order Extending the Debtors' Deadline to Comply with Section 345(b) of the Bankruptcy Code* [D.I. 206] (the "Fourth Interim Order").

### IV.    The Debtors Require Full Access To The Customers Operating Account Until Wires for Vendors And Payroll Are Set Up At Citizens Bank

21.    As noted above, BUS has opened the Citizens Operating Account and is ready to move a substantial portion of its funds to that account.  However, it will take additional time to complete the process of setting up payments out of the Citizens Operating Account for the purpose of making payroll and vendors.  Therefore, BUS intends to move the majority of its operating funds to the Citizens Operating Account, leaving only enough in the Customers Operating Account to fund payroll and vendor expenses until those payments are set up through the Citizens Operating Account, subject to replenishment as necessary.  The Debtors believe that this approach will both ensure compliance with Bankruptcy Code section 345(b) and avoid any risk of irreparable harm to the Debtors, their estates, and the Debtors' employees.

22.    From their discussions with Customers Bank, the Debtors are concerned that if BUS moves a portion of the funds to Citizens Bank, Customers Bank may stop banking with BUS. Customers Bank has suggested to BUS that it would only provide banking services until June 30, 2023, stating that it was still waiting for the "the indications on the actions we [i.e., Customers Bank] need to take (if any) post June 30th."  Although Customers Bank has not yet taken any such action, the Debtors are concerned that if BUS transfers a substantial portion of its funds to Citizens Bank, Customers Bank will prohibit BUS from using the Customers Operating Account other than to transfer all of the funds to the Citizens Operating Account because it will signal that BUS has another account and is no longer totally reliant on Customers Bank.  As discussed above, if payments to vendors and employees are blocked, the estate will suffer irreparable harm.

**BASIS FOR RELIEF**

I.  **The Court Should Enter the Revised Cash Management Order To Require Customers Bank To Honor The Debtors' Requested Payments**

23.     Pursuant to sections 363(c)(1) and 1107 of the Bankruptcy Code, a debtor-in-possession may enter into transactions in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice and a hearing. Section 542(b) of the Bankruptcy Code requires entities that owe debts that are property of the estate and that are matured, payable on demand, or payable on order to pay such debts on the order of the debtor-in-possession, except to the extent the debt may be offset against a claim against the debtor.  And section 362(a)(3) of the Bankruptcy Code prohibits entities from taking any acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

24.     As discussed above, the Debtors are concerned that Customers Bank will not honor payments to vendors and payroll if they move a significant portion of their operating funds to the Citizens Operating Account.  However, Customers Bank is required to pay debts upon the order of a debtor-in-possession, 11 U.S.C. § 542(b), and its failure to do so would be a violation of the automatic stay of 11 U.S.C. § 362(a).  *See, e.g.*, *In re Quality Interiors, Inc.*, 127 B.R. 391, 393-94 (Bankr. N.D. Ohio 1991) (holding that a freeze on a debtor's bank account violates the automatic stay).  Although the Supreme Court in *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995) held that an administrative freeze on a bank account does not violate the automatic stay, courts applying *Strumpf* have since addressed the interaction of section 362(a)(3) and 542(b).  Those courts have held that there is no violation of the automatic stay so long as the administrative freeze is temporary such that the bank is waiting to comply with the trustee's directions pursuant to 11 U.S.C. § 542(b). *In re Phillips*, 443 B.R. 63, 66 (Bankr. M.D.N.C. 2010) (compiling cases and holding that a bank

did not violate the automatic stay when it placed an administrative freeze on a bank account because it was only awaiting directions from the trustee to comply with section 542). However, in this case, the Debtors seek the following modification to paragraph 5 of the Cash Management Order to ensure that Customers Bank will comply with section 542(b), and to avoid any risk of harm to the Debtors, the estates, and the Debtors' employees:

> The Banks at which the Bank Accounts are maintained **shall** ~~are authorized to~~ continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, **including any Intercompany Transactions described in the Motion,** as the case may be.

25.     The Debtors submit that this limited revision to the Cash Management Order is necessary to ensure that the Debtors are able to transition their Bank Accounts to be Section 345(b)-compliant, while ensuring that the estates suffer no irreparable harm during the transition process.

## NOTICE

26.     The Debtors will provide notice of this Motion to Customers Bank and the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the Securities and Exchange Commission, FinCEN, and the Office of Foreign Assets Control; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the

nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as is just and proper.

Date: August 2, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/  Kenneth J. Enos*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Valerie Ramos *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**