<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                    .  Chapter 11
                               .
 4   DESOLATION HOLDINGS LLC,  .  Case No. 23-10597 (BLS)
     et al.,                   .
 5                             .  (Jointly Administered)
                               .
 6                             .  Courtroom No. 1
                               .  824 Market Street
 7            Debtors.         .  Wilmington, Delaware 19801
                               .
 8                             .  Friday, August 11, 2023
     . . . . . . . . . . . . . .  10:00 a.m.
 9
                   TRANSCRIPT OF STATUS CONFERENCE HEARING
10               BEFORE THE HONORABLE BRENDAN L. SHANNON
                    UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtors:          Kenneth Enos, Esquire
13                             YOUNG CONAWAY STARGATT & TAYLOR LLP
                               Rodney Square
14                             1000 North King Street
                               Wilmington, Delaware 19801
15
                               Razmig Izakelian, Esquire
16                             QUINN EMANUEL URQUHART
                                 & SULLIVAN LLP
17                             51 Madison Avenue
                               22nd Floor
18                             New York, New York 10010

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Dana L. Moore, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

1   <u>APPEARANCES (CONTINUED)</u>:

2   For the Florida Office
    Of Financial
3   Regulation:              Conor Bifferato, Esquire
                             THE BIFFERATO FIRM, P.A.
4                            800 North King Street
                             Wilmington, Delaware 19801
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings commence at 10:02 a.m.)

2           THE COURT:  Good morning, all.  This is Judge

3  Shannon.  I understand from the court reporter that necessary

4  parties have joined.

5           This is a hearing in the matter of Desolation

6  Holdings, also known as Bittrex, Case Number 23-10597.  And

7  this is a time that the Court has scheduled for a discovery

8  conference and a status conference in response to

9  correspondence from counsel.

10           Before we go much further, can I get a thumbs-up

11  that counsel are able to see and hear me?  Great.

12           UNIDENTIFIED:  Yes, Your Honor.

13           THE COURT:  Great.  Thank you.

14           So I have received correspondence from the debtor

15  and I have received responsive correspondence from Mr.

16  Bifferato.  I appreciate getting that.  And this is obviously

17  in connection with a motion that is currently pending and

18  scheduled for a hearing next week.  And I've had an

19  opportunity to review the correspondence.  I'd like to hear

20  from -- and I'll start with counsel for the debtor.

21           MR. ENOS:  Good morning, Your Honor.  Ken Enos,

22  Young, Conaway, Stargatt & Taylor on behalf of the debtors.

23           THE COURT:  Good morning, Mr. Enos.

24           MR. ENOS:  Initially, Your Honor --

25           THE COURT:  Good to see you.

1         MR. ENOS:  You, as well, Your Honor.

2         Initially, I certainly appreciate the Court making

3  the time available for us on short notice, which hopefully we

4  brought this issue to the Court the way the Court prefers.  I

5  know you're not crazy --

6         THE COURT:  Yeah.

7         MR. ENOS:  -- about getting a bunch of letters, but

8  --

9         THE COURT:  No, no, no.

10         MR. ENOS:  -- (indiscernible)

11         THE COURT:  I'm actually okay with it.  And again,

12  the letters are helpful to me to give me some context.  I

13  don't generally insist upon it.  And again, Mr. Bifferato's

14  letter jumped right on the issue, and hopefully we're at a

15  point where we can discuss this.

16         So, no, I -- and as you know, I think everybody

17  knows my preference on these sorts of disputes, on either

18  discovery or scheduling, I prefer to deal with as rapidly as

19  possible.  So, no, I very much appreciate both sides teeing

20  this up to have a discussion this morning.

21         MR. ENOS:  Again, thank you very much, Your Honor.

22         Your Honor, co-counsel from Quinn Emanuel is going

23  to handle addressing the issue with the Court today.  Mr.

24  Izakelian has his camera on, so I'm assuming he is taking the

25  lead from our team.  So I will cede the virtual podium to

1  him.

2          THE COURT:  Very good.

3          Good morning, Mr. Izakelian.  Good to see you

4  again.

5          MR. IZAKELIAN:  Good morning, Your Honor.  It's

6  good to see you, too.

7          So it's Razmig Izakelian from Quinn Emanuel for the

8  debtors and debtors-in-possession.

9          Your Honor, just to start, we just feel this is

10  related to the debtors' motion to enforce the automatic stay

11  and Section 525.

12          To -- just to provide a bit of background, before

13  filing bankruptcy, BUS had told a number of states it was

14  going to surrender its money transmitter licenses and wind

15  down its operations.  It worked cooperatively with nearly all

16  the states, so that it could give back its money transmitter

17  licenses, but permitting customers to withdraw assets from

18  the platform.

19          Florida went the other way.  It issued a complaint

20  to revoke the license and it named a number of BUS's current

21  and former officers and directors and (indiscernible) so that

22  BUS surrendered its license, it filed for bankruptcy, it told

23  Florida about the bankruptcy.  But Florida insisted that the

24  complaint wasn't stayed and it said that BUS had to file some

25  papers or it faced a default.  So BUS did so to preserve its

1  rights, and then it filed (indiscernible)

2          So the underlying complaint that was issued by

3  Florida has three counts:

4          First, it's based on a denial of a license from the

5  New York Department of Financial Services;

6          Two, a consent order with the State of Connecticut;

7          And three, a consent order with FinCEN.

8          But BUS believes that these counts are just

9  pretext.  And the reason for that is that Florida has known

10 about the license denial from the New York Department of

11 Financial Services, as well as the Connecticut consent order

12 for years, and they knew about the FinCEN consent order for

13 over six months without doing anything.  And these orders are

14 about conduct that occurred four years ago.  So none of the

15 behavior alleged in the complaint is alleged to be ongoing.

16          So, as set out in the motion, what BUS believes is

17 that Florida is not actually enforcing any power at this

18 time.  What it's really doing is issuing the complaint

19 because it believes that BUS was insolvent.

20          THE COURT:  Right.  Well, obviously, Mr. Izakelian

21 -- and this is -- and I get that and I did have an

22 opportunity before this morning's hearing to look at the

23 motion, as well as the objection filed by the State of

24 Florida on the merits of the motion today, and that's

25 presently scheduled for next week, and we'll talk about

1  scheduling if we have to, but -- so this is not a hearing on

2  the merits of that motion.

3         I think I generally understand the bid and the ask

4  and I'd certainly hear from Mr. Bifferato if you wanted to

5  provide any additional context.

6         But as I look at it, this is a discovery dispute in

7  the context of a contested matted.  And specifically,

8  Florida's response has been that, if they're not prosecuting

9  the matter, then why are we having this motion practice and

10 discovery practice.  And I think the second part is that it

11 may not be a factual dispute; and, therefore, discovery is

12 not warranted.  I think that's the focus of our discussion

13 today.  If I've missed additional points, I'll be guided by

14 the parties.

15        But I think I -- to the extent that you have

16 concerns about whether I understand the underlying motion, I

17 think I have a handle on that.

18        MR. IZAKELIAN:  Okay.  I appreciate that --

19        THE COURT:  Sure.

20        MR. IZAKELIAN:  -- Your Honor.  I was only

21 providing a bit of background --

22        THE COURT:  Yeah.

23        MR. IZAKELIAN:  -- to go into that --

24        THE COURT:  Oh, yeah.  No, look, I'm not faulting

25 anybody.  One of the biggest questions where you sit as

1  counsel is wondering whether this guy has actually read the

2  motion we're arguing about, and the answer is I have.  So,

3  with that --

4          MR. IZAKELIAN:  Thank you.

5          THE COURT:  -- we can move forward.

6          MR. IZAKELIAN:  I appreciate that.

7      (Laughter)

8          MR. IZAKELIAN:  Your Honor, thank you.

9          So, in the opposition, Florida came back with two

10  new arguments, and that's what the issue (indiscernible) so

11  Florida says in the opposition that it's become aware of

12  illegitimate commingling in the form of placing customer

13  funds in an operating account and that Bittrex -- and that

14  BUS's surety bond in 2022 was inadequate.  But there wasn't

15  any evidence provided for these allegations.

16          And there are references throughout the opposition

17  that these alleged violations are ongoing.  But again, there

18  was any evidence to support these allegations.  We don't know

19  when this alleged commingling happened, we don't know the

20  amount at issue, we're not sure of the accounts.  We don't

21  know why Florida thinks the surety bond was inadequate.

22          So we went through the opposition and worked with

23  the company.  We tried to figure out what these arguments

24  were, what these allegations are, and we weren't able to

25  figure them out.

1        So we issued the RFPs and we tried to get

2 information on this.  We understand that these response time

3 frames for RFPs is 30 days, but all of us are bankruptcy

4 attorneys here, we worked together all the time --

5        THE COURT:  Sure.

6        MR. IZAKELIAN:  -- to try to resolve.  So we asked

7 for a response in 14 days.  Florida came back and said that

8 it doesn't think there's a factual dispute here, so and we

9 don't want to have any discovery.

10       Now our fundamental issue is that we don't think

11 Florida should be permitted to assert these new facts without

12 evidence and then not provide us the underlying documents for

13 these allegations, so we can understand what's actually going

14 on here.

15       Now, if Florida is correct that the issue is not

16 factual; i.e., we have the complaint, is the -- and is the

17 question -- if the question is does the automatic stay apply

18 to the complaint, then it should not be permitted to allege

19 these new ongoing alleged violations of commingling or an

20 inadequate surety bond.  But if Florida wants these

21 allegations to be considered, we think it's only fair that we

22 have some documents, so we can actually understand what's

23 going on and provide a meaningful response to them.

24       So our --

25       THE COURT:  Let me ask you a question.

1    MR. IZAKELIAN:  Yes.

2    THE COURT:  And this goes, I think, directly to

3 Florida's and Mr. Bifferato's point about whether or not

4 discovery is necessary.  I think one of the things I'm going

5 to hear from him would be, even with additional factual

6 allegations, those might be issues that are relevant to the

7 proceeding in Florida, to the extent it's permitted to

8 proceed, but it's not relevant to the inquiry about whether

9 or not the proceeding in Florida does or doesn't violate

10 Section 362 and Section 525.  How do I deal with that

11 response?  And I'm putting some words in Mr. Bifferato's

12 mouth and I'm sure he'll be more articulate.  But I want to

13 noodle through it.

14    MR. IZAKELIAN:  Well, I thin the opposition itself

15 actually addresses that because -- so, for example, on the

16 surety bond issue, it seems to us that that's really an

17 insolvency allegation.

18    If you look at Footnote 9 on Page 4 of the

19 opposition, it says that the purpose of the surety bond is to

20 provide Florida claimants a chance to be made whole if a

21 licensee defaults on its monetary allegations.  That strikes

22 us as an insolvency within the scope of Section 525.

23    And then, as it -- as far as the commingling

24 allegation, it appears similar to us, as well.  If you look

25 at Paragraphs 15 and 51 of the opposition, Florida says that

1   its concern is with respect to the financial interests of its

2   consumers.  So it seems like what it's really trying to

3   protect against here with these allegations is insolvency, so

4   it falls under the Scope of Section 525, which is a

5   bankruptcy issue for this Court.

6            THE COURT:  Okay.  I understand.

7            MR. IZAKELIAN:  So, Your Honor, we think that

8   there's two avenues here:

9            The first is we can go forward with the hearing on

10  the 16th.  But if we go forward at that point and the

11  discovery is not provided, we think that the new allegations

12  about this commingling and the surety bond issue should be

13  struck.

14           Alternatively, we can continue the hearing

15  (indiscernible) a week and work with Mr. Bifferato to try and

16  resolve the RFPs and get some documents in.

17           We have a slight preference for the second option.

18  And I will say Mr. Bifferato, since he's come on the case,

19  has been cooperative and professional with us.  So we hope

20  that, in the event of a continuance, we can get these issues

21  resolved without assistance from the Court.  But if Florida

22  thinks that that is not an option, obviously, we are prepared

23  to go forward on Wednesday.  But we think, in all fairness,

24  these allegations should be struck, unless the documents are

25  provided.

1           THE COURT:  Okay.  I understand.  Mr. Bifferato,

2   good morning.  It's good to see you.  It's been a little

3   while.

4           MR. BIFFERATO:  Good morning, Your Honor.  It has.

5   It's good to see you, as well.  Thank you for your time this

6   morning.

7           THE COURT:  Sure.

8           MR. BIFFERATO:  I just need to clarify one thing

9   for the record.  I think there was a statement early on that

10  the State of Florida insisted that the debtors address the

11  pending administrative complaint in Florida post-petition or

12  they would be in default, and that's not the case.

13          Since the complaint in Florida was filed, there

14  have only been discussions initiated by the debtors with

15  regard to settlement, but there's never been any assertion

16  that Florida would be in default post-petition if it didn't

17  answer.  So I wanted to make that clear.  There's been

18  nothing post-petition with respect to the prosecution or

19  advancement of the petition.

20          With regard to the more important issue before Your

21  Honor this morning, discovery, the allegations that Mr.

22  Izakelian is -- and I apologize if I'm mispronouncing your

23  name, Mr. Izakelian.  I -- first of all, commingling and the

24  issue of the surety bond were just issues that were raised,

25  first of all, in response to the enormous number of factual

1  allegations included in the debtors' motion.

2        If the debtors had not made a number of factual

3  allegations the State of Florida wouldn't have responded to

4  them.  And comingling and surety were attempts to indicate,

5  as the Third Circuit has found, that any reason for an action

6  being brought by an administrative agency, such as this, to

7  enforce the laws of the state that are not based on the

8  debtor's insolvency or the debtor's bankruptcy are valid

9  reasons for proceeding.  They focus on the word "solely" when

10  they refer to the bankruptcy, even with respect to any

11  potential insolvency issues prepetition.

12        So, even more importantly, Your Honor, to the

13  extent that the debtors would -- I would be happy to stick

14  with the factual allegations that the debtors had made and

15  make the argument before the Court. I don't think we need any

16  factual allegations to address the issues before the Court.

17  I believe that, quite frankly, and respectfully the 525 issue

18  is an attempt to keep this matter before the Court where it

19  would, otherwise, not belong.

20        This is an action where Your Honor anticipated my

21  argument.  These issues should be brought in the appropriate

22  Florida jurisdiction if there's a concern.  There are

23  remedies down there as well.  There certainly is no issue

24  with respect to violation of the automatic stay.  So, the

25  only potential matters before Your Honor are whether

1  continuation of the action would be a violation of the

2  automatic stay given the administrative exception contained

3  in Section (b)(4).

4          To that extent, Your Honor, I can say that the

5  State of Florida would be willing to agree to continue to

6  stay its action to a date certain to avoid that issue coming

7  up.  We are just not willing to agree to tie it to the end of

8  the case or confirmation of a plan.  Dates that we don't --

9  that are completely outside of our control or ability to

10 determine.

11         Aside from that, Your Honor, again, I don't

12 believe that there are any discovery issues before there's

13 really no issues related to 525.  To the extent that the

14 debtors want to press the 525 issues, if they want to give up

15 their factual allegations in their complaint, to which we

16 responded, we will give up our factual allegations. We can

17 talk about the case on the merits, we can look at the

18 petition.  As Mr. Izakelian said, there is nothing in the

19 administrative complaint that in any way suggests that there

20 is a focus on financial insolvency.

21         This has been, quite frankly, a use of 525 and the

22 allegations of somehow discriminating against the debtor

23 based on the debtor's financial condition when, in fact, the

24 State of Florida has an obligation to the citizens of the

25 state.  If a money transmitter comes to the State of Florida

1  Office of Financial Regulation and says we're going to turn

2  in our license and we're going to go away, the concern

3  immediately is are they attempting to avoid any type of

4  regulatory oversight with respect to the licenser issues

5  because if there are issues, and the State of Florida

6  believes that there are issues with respect to the way that

7  Bittrex has conducted business including the -- and even

8  limited to the allegations that are in the complaint.

9          Again, the State of Florida would limit itself to

10 those allegations in proceeding with the administrative

11 complaint. The point is to seek a revocation for the purpose

12 of at any point in the future should Bittrex or anyone in

13 control of Bittrex come back to Florida to seek a similar

14 licensure they would have to report there had been a

15 regulation and that there had been a finding in front of the

16 Court to that effect, the Florida Administrative Court.  It

17 has nothing to do with an effort to in any way harm any

18 individual or single out any party.

19         So, respectfully, Your Honor, there are no factual

20 issues with respect to the allegations in the complaint, the

21 administrative complaint.  The State of Florida is happy to

22 stick with them to prosecute the complaint when the time is

23 appropriate.  I respectfully submit there are no factual

24 issues because of that that are appropriately before the

25 Court.

1          THE COURT:  I think I've heard enough.  Here is

2    what I would like to do:

3          We have the hearing scheduled for Wednesday.  I am

4    going to adjourn that. It doesn't seem that there is

5    meaningful opposition on either side to the adjournment, but

6    I will give you a couple observations.  And if it's

7    convenient for the parties -- Mr. Izakelian, I don't know if

8    you have other matters on for Wednesday or is this the only

9    item on?

10         MR. IZAKELIAN:  We have others on, but oppositions

11   have not been filed.  So, I'm not sure if they're going to go

12   forward live in front of you, Your Honor.

13         THE COURT:  Let me make you an offer, and this

14   goes, obviously, to both sides.  I would like the parties to

15   confer because it seems to me that there is a bit of a

16   disconnect at several levels, but most importantly and most

17   immediately for me there seems to be differing visions of

18   what the scope of a hearing on the debtor's motion before me

19   would be and what would be relevant to that discussion.

20   There seems to be, honestly, in the context of the dialog

21   with both counsel, almost a bid and ask about the framework

22   for the hearing.

23         I think I heard Mr. Izakelian say we would be

24   prepared to go forward as long as it's limited to the issues

25   that were raised prior to the filing of the objection by

1  Florida.  I think Mr. Bifferato advised that he would be

2  prepared to go forward on that because the Court's inquiry is

3  narrow and whether or not the Florida proceeding itself,

4  irrespective of whatever facts are alleged, does or doesn't

5  implicate Bankruptcy Code Section 362(b)(4) and Bankruptcy

6  Code Section 525.

7          I start with the proposition that I have a

8  contested matter in front of me. The debtor filed a motion,

9  the State of Florida has timely interposed an objection. I

10  have a hearing coming up.  As a general proposition 9014 does

11  provide that discovery is available.  If, indeed, there are

12  meaningful factual disputes I promise you that I would order

13  appropriate discovery. I think that the discovery here I

14  would be reluctant to simply preclude it based upon the

15  discussion that we have had today because I am not certain

16  about exactly what would be presented at the hearing.  And I

17  think the parties would benefit from having a discussion

18  about that.

19          Again, if there is consensus on precisely the

20  boundaries of what is going to be argued before me then we

21  have, I think, an admitted or an agreed set of facts and we

22  will go from there.  If part of the argument is how Bittrex

23  ran its business or didn't run its business, or whether or

24  not it was appropriate and in compliance with Florida

25  regulations and implicating, we'll call them, new

1  allegations, I know that there is some dispute about whether

2  or not the comments raised in the objection are new, that we

3  would perhaps then have a different hearing and we would need

4  an opportunity for the movant to obtain discovery.

5        One of the tricky things here, and this occurs

6  with motions for relief from stay often is that there's this

7  risk of an overlap or bleeding over between a motion to

8  enforce the stay which is, effectively, what we have here, or

9  a motion for relief from stay.  What I try to be careful

10  about, and I know counsel will as well, is not bleeding over

11  and conducting a hearing on whether, in fact, the debtor was

12  violating Florida law or not.  That is a question, at least,

13  initially to Florida.

14        The narrower question of whether or not a

15  proceeding falls under the exception doesn't require a trial

16  on the merits of the issues that are in dispute, but it does

17  require some consideration of exactly what relief is being

18  sought and what role the regulatory body is playing. I have

19  dealt with that and I know you folks have as well on many

20  occasions.

21        I think I would like to take the opportunity to

22  get you back, maybe, in just a few days. It's not my

23  intention to permit this matter to linger, but I will be in

24  your hands on the scheduling issues.  But since we have the

25  benefit of already being on the calendar for Wednesday, I

1  would suggest that we try to get back together on Wednesday.

2  I think Mr. Enos could give us a little bit more clarity on

3  what might be on the schedule, but I think the offer that I

4  would provide to you is this would be a status conference by

5  my lights.

6           So, I am fine with Zoom and I certainly wouldn't

7  want people shlepping all the way up to Delaware, you know,

8  if we don't have other matters that are before the Court.

9  So, I would be happy to accommodate a further hearing.  And

10 my decision to adjourn it is consistent or informed by both

11 the comments from counsel saying that, essentially, they're

12 okay with an adjournment until we get clarity on what the

13 hearing will be about.

14          Frankly, both of the submissions, both of the

15 letters from the parties reflected that there were ongoing

16 and perhaps even advanced settlement discussions between and

17 among the parties.  I make no comment on those and I'm

18 certainly not ruling based upon references. I appreciate

19 counsel's candor in telling the Court that there has been a

20 dialogue.  That is the sort of thing I would expect from

21 capable counsel in a dispute like this.  But, again, there

22 are a number of moving parts. I don't know whether this is an

23 issue that is solvable and if it's not I'm here and we will

24 try the matter and deal with the motion.

25

1        If there's a framework for either a resolution or

2    a narrowing of the issues that provide for, perhaps, a

3    simpler hearing and a measure of confidence about what we

4    need to do to get ready that is a discussion that I would

5    like the parties to have initially and then to have with me.

6    Again, I don't need a further argument on the motion. I think

7    I would like the benefit of the discussion.

8        If there's still a dispute about discovery I think

9    I'd need to know the bid and the ask about what that hearing

10   would look like because Mr. Izakelian's point is I don't want

11   to get blindsided by being at a hearing and, you know, His

12   Honor starts getting focused on, you know, a surety bond that

13   was or wasn't in place four years ago and we don't know

14   anything about that.  That is a fair question.

15       I think the parties need to have a handle on that.

16   Again, one of the features, Mr. Enos touched on this, of how

17   I deal with discovery is sometimes I get on the phone with

18   the parties quickly enough that the matter is not necessarily

19   fully baked.  I think I want to give you that opportunity to

20   have that discussion, but, again, I don't want to leave it

21   lingering out there. I would like guidance from the parties

22   on Wednesday.  I don't need any further submissions.  If

23   there is no need for a Wednesday status conference or if --

24   I, at least, want it to stay on the radar and I'm confident

25   bot sides will do that somehow.  But if you don't have

1  anything to report other than that the parties are still

2  noodling through it, we don't need to have a status

3  conference.

4        I find that having a status conference scheduled

5  tends to focus the mind and gets people to have a discussion

6  that might provide a little bit of clarity, whether is a

7  pathway to resolution here or a pathway to an agreed

8  structure and format for the hearing that won't have people

9  complaining that they were surprised or taken advantage of.

10        Mr. Izakelian, does that make sense to you.

11        MR. IZAKELIAN:  Makes sense, Your Honor.

12        THE COURT:  Mr. Bifferato, how does that sound to

13  you?

14        MR. BIFFERATO:  Sounds appropriate, Your Honor.

15  Thank you.

16        THE COURT:  Okay.  All right, so, Mr. Enos, if you

17  would be kind enough just to add this to the agenda for next

18  week's hearing and, again, the offer remains if the other

19  stuff comes off and it's not productive to have a status

20  conference I'm not going to stand on ceremony, but,

21  otherwise, I will expect to have the chance to visit with you

22  guys in a few days and hopefully we can have a little more

23  clarity on what path we will take.

24        MR. ENOS:  Thank you, Your Honor.  We will keep

25  Chambers informed.

1        THE COURT:  Sure.  Anything else this morning?

2        (No verbal response)

3        THE COURT:  Very good.  I appreciate everyone's

4   time. I hope you all have a great weekend.

5        Thanks, counsel.  We're adjourned.

6        (Proceedings concluded at 10:27 a.m.)

7

8

9

10

11                      CERTIFICATION

12        We certify that the foregoing is a correct

13   transcript from the electronic sound recording of the

14   proceedings in the above-entitled matter to the best of our

15   knowledge and ability.

16

17   /s/ Mary Zajaczkowski                August 11, 2023

18   Mary Zajaczkowski, CET-531

19   Certified Court Transcriptionist

20   For Reliable

21

22   /s/ Coleen Rand                      August 11, 2023

23   Coleen Rand, CET-341

24   Certified Court Transcriptionist

25   For Reliable