**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Desolation Holdings LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10597 (BLS)<br><br>(Jointly Administered)<br><br>Hrg. Date: September 13, 2023 at 10:00 a.m. (ET)<br>Obj. Deadline: September 5, 2023 at 4:00 p.m. (ET) |

**DEBTORS' MOTION PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 TO APPROVE SETTLEMENT
WITH THE SECURITIES AND EXCHANGE COMMISSION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion ("Motion").

## I.   INTRODUCTION

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), to approve the settlement in the form of a consent judgment ("Settlement or Consent Judgment") between Bittrex, Inc. ("BUS") and the Securities and Exchange Commission ("SEC").

2. After months of hard-fought negotiations, BUS and the SEC have reached a compromise of the SEC's claims. Under the parties' settlement, BUS is permanently enjoined from violating various provisions of the Exchange Act, and is jointly and severally liable with Bittrex Global GMBH ("BG") to pay $24 million to the SEC. The SEC has requested that the Western

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

1

District of Washington enter the Consent Judgment, and the Debtors now respectfully request that the Court approve the parties' compromise.

3.  The Debtors believe that the Settlement/Consent Judgment represents a fair, reasonable compromise, and is in the best interests of the Debtors, their creditors, and the estates. As set forth in the Estimation Motion (defined below), following years of investigation, in April 2023, the SEC filed a complaint against BUS, BG, and William Shihara ("Mr. Shihara") seeking monetary and injunctive relief for alleged violations of the Exchange Act.  Upon filing bankruptcy, the Debtors sought to set procedures to estimate the SEC's claims so that they could promptly confirm a plan of liquidation and make distributions to their stakeholders.  The Debtors' initial plan envisioned that certain claims, including those of the SEC, would be subordinated, because it was unclear, due to uncertainty about the size of the SEC's claim, whether there would be sufficient assets to pay the allowed claims of customers and general unsecured creditors before claims that could potentially be penalties.

4.  While the Debtors remain confident in their legal position, all litigation is uncertain, and it is the Debtors' view that the SEC Action (defined below) raises novel questions about the application of securities laws to cryptocurrencies.  Moreover, the Debtors believe that a full resolution of the SEC Action through litigation would expend years of time and costs, and threaten certainty of distribution to customers, general unsecured creditors, and interest holders.  The Settlement/Consent Judgment liquidates the SEC's claims, and based on that liquidation, the Debtors believe that there will be sufficient assets to pay all of the allowed claims and general unsecured creditors, without the need to subordinate any claims, thereby avoiding another potential dispute in these cases.

5. Accordingly, the Debtors submit that the Settlement/Consent Judgment is in the best interests of creditors and the estates and respectfully request that the Court approve it.

## II. JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested herein are sections 105(a) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014 and 9019, and Local Rule 9013-1.

## III. BACKGROUND

### A. The Debtors' Business

9. The Debtors are part of the Bittrex group of companies, which are located around the world and operate cryptocurrency exchanges for customers in different jurisdictions. Hengel Decl. ¶ 1.[2]  BUS, a Georgia corporation, operates Bittrex's cryptocurrency exchange for U.S.

---

[2] "Hengel Decl." refers to the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions*.  D.I. 11.

3

customers, whereas two foreign non-debtor affiliates operate Bittrex's cryptocurrency exchange for non-U.S. customers. *Id.*

**B. The SEC Begins to Take Interest in U.S.-based Cryptocurrency Exchanges**

10. The cryptocurrency industry grew quickly in the late-2010s and early-2020s. *Id.* ¶ 8. However, it is the Debtors' view that U.S. regulators never clarified which agency would act as the primary regulator for cryptocurrency businesses. *Id.* During this timeframe, the SEC began to investigate multiple U.S.-based cryptocurrency exchanges. *Id.* ¶ 9. The SEC took the position that certain cryptocurrency assets may be securities, which in turn, would require exchanges supporting such cryptocurrency assets for trading to register with the SEC or otherwise comply with the Securities Exchange Act of 1934. *See* SEC Complaint ¶ 2.[3] Failure to do so could result in operating as unregistered broker, clearing agency, and/or exchange. *Id.* ¶ 3.

11. The SEC Complaint presents the threshold issue of whether U.S. securities laws apply to any of the cryptocurrency assets offered by a U.S.-based exchange—whether cryptocurrencies fit the definition of "securities." Courts generally use the "investment contract" analysis set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), to determine whether unique or novel arrangements meet the criteria to be securities subject to federal securities laws. *See, e.g.*, *U.S. Securities and Exchange Comm'n v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y. 2020) (applying *Howey* "investment contract" analysis to a token issued by Kik Interactive Inc.). Pursuant to *Howey*, an "investment contract" exists when there is an investment of money in a common enterprise with a reasonable expectation of profits derived solely from the efforts of others.

---

[3] "SEC Complaint" means the complaint filed by the SEC on April 17, 2023 in the Western District of Washington ("W.D. Wash. Court"), initiating the case captioned *SEC v. Bittrex, Inc., Bittrex Global GmbH, and William Hiroaki Shihara*, No. 2:23-cv-00580 (W.D. Wash.) (the "SEC Action").

### C. The SEC's Investigation of BUS

12. As noted above, the SEC started investigating numerous U.S.-based cryptocurrency exchanges, including BUS. Hengel Decl. ¶ 9. Beginning in 2017, the SEC began to serve, and BUS and its affiliated entities responded to, numerous subpoenas. *Id.*

13. From 2017 to date, BUS has provided over 24,000 documents to the SEC, including e-mail communications, Slack chats, and centrally-stored documents. Those documents included internal and external communications concerning the listing and delisting of tokens, financial statements, and commissions earned by BUS. In addition, the SEC took the testimony of multiple individuals.

### D. The Wells Notice, the SEC Complaint, and the SEC Action

14. On March 9, 2023, the SEC staff served BUS a "Wells Notice" indicating that the SEC staff intended to recommend the SEC charge BUS with operating an unregistered securities exchange, an unregistered broker dealer, and an unregistered clearing agency. *Id.* As discussions with the SEC progressed, Bittrex informed the SEC that it would cease its U.S. operations and wind down the U.S. business. The parties were unable to reach agreement on the entitlement to and amount of any disgorgement.

15. Following failed efforts to resolve these allegations consensually, on April 17, 2023, the SEC filed the SEC Complaint in the Western District of Washington against BUS, its former CEO, and Bittrex Global GmbH ("BG"), seeking injunctive relief and disgorgement. The SEC alleges that BUS did not register as a national securities, broker-dealer and clearing agency. SEC Complaint ¶¶ 234-242. Moreover, the SEC specified six tokens that it considered securities: OMG, DASH, ALGO, TKN, NGC, and IHT. On June 30, 2023, BG filed a motion to dismiss the SEC Complaint, arguing, among other things, that the SEC did not adequately allege that BG

transacted in any securities, that the SEC Complaint was barred by the major questions doctrine and violated due process and fair notice, and that the SEC failed to allege that BG acted as an exchange for domestic transactions ("BG Motion to Dismiss"). SEC Action, D.I. 37. The same day, BUS and Mr. Shihara filed a motion to dismiss the SEC Complaint, arguing that the SEC Complaint was barred by the major questions doctrine, the SEC had not pled sufficient facts to demonstrate that any securities transactions were executed on the Bittrex platform, and the SEC failed to provide adequate notice of its claims ("BUS Motion to Dismiss"). SEC Action, D.I. 40. These filings are deemed withdrawn by virtue of the Consent and Judgment filed in the Western District of Washington, which the court approved on August 15, 2023.

**E. The Wind Down, the Bankruptcy, the Plan, and the Estimation Motion**

16. As set forth in more detail in the Hengel Decl., increased regulatory scrutiny, coupled with a decline in revenues, made it very difficult for crypto firms to operate in the United States. Hengel Decl. ¶ 16. As a result, Bittrex's team began to explore strategic solutions. *Id.* The Debtors ultimately determined that an orderly wind-down and customer withdrawal process was the best path forward to protect the Debtors' creditors (including their customers) and other stakeholders. *Id.* ¶ 17.

17. On March 31, 2023, BUS initiated a campaign urging customers to withdraw their cryptocurrency deposits from BUS by April 30, 2023. *Id.* ¶ 68. BUS never loaned cryptocurrency to third parties, and therefore easily met all pre-petition withdrawals and return of both crypto and fiat deposits. *Id.* Upon the announcement to wind down, BUS ceased accepting new customers. *Id.* ¶ 2. The Debtors then filed bankruptcy to complete the orderly liquidation of their U.S. and Malta operations.

18. The same day that they filed their petitions, the Debtors filed the *Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Affiliated Debtors* [D.I. 10] (as may be amended from time to time, the "Plan") concurrently with their bankruptcy petitions. The Plan provides for a wind down of the Debtors and payment in full of all (a) administrative, (b) priority tax, (c) super-priority post-petition financing, and (d) non-tax priority claims. Pursuant to the Plan, BUS customers who have provided information required by governmental regulations will receive under the Plan a 100 percent like-kind cryptocurrency distribution from BUS, and Malta OpCo customers who had provided the required information will receive a 100 percent like-kind cryptocurrency distribution from Malta OpCo. Plan Art. III.D. The distribution will take the form of permitting customers to withdraw cryptocurrencies from the exchange platform, consistent with the ordinary practice of withdrawing cryptocurrencies. Plan ¶ 51.

19. On June 16, 2023, the Debtors filed a *Motion Pursuant to Sections 105(A) and 502(C) of the Bankruptcy Code to Estimate Contingent and Unliquidated Claims of the Securities and Exchange Commission and Grant Related Relief* [D.I. 134] (the "Estimation Motion"). The SEC opposed, and the Debtors filed a reply [D.I. 176, 189]. The Court held an initial hearing on July 16, 2023, but adjourned it so that the parties could continue settlement discussions.

F. The Settlement/Consent Judgment

20. After months of hard-fought negotiations, all of the parties to the SEC Action reached a global resolution of the SEC Action, as reflected in the Settlement/Consent Judgment. The Consent Judgment: (i) permanently enjoins BUS and Mr. Shihara from directly or indirectly making use of mails or any means or instrumentality of interstate commerce for the purpose of using any facility to exchange, within or subject to the jurisdiction of the United States, to effect any transaction in a security, unless registered as an exchange in accordance with Section 5 of the

Exchange Act or exempt from such registration; (ii) permanently enjoins BUS and Mr. Shihara from directly or indirectly operating as a broker or dealer in violation of Section 15(a) of the Exchange Act; (iii) permanently enjoins BUS and Mr. Shihara from directly or indirectly operating as a clearing agency in violation of Section 17A of the Exchange Act; and (iv) permanently enjoins BG from directly or indirectly making use of mails or any means or instrumentality of interstate commerce for the purpose of using any facility to exchange, within or subject to the jurisdiction of the United States, to effect any transaction in a security, unless registered as an exchange in accordance with Section 5 of the Exchange Act or exempt from such registration.

21.     The Consent Judgment also holds BUS and BG jointly and severally liable for disgorgement in the amount of $14.4 million, with $4 million in prejudgment interest, and a civil penalty of $5.6 million, for a total of $24 million, due to the SEC within 60 days after the effective date of the Plan.  The SEC will have an allowed general unsecured claim for $24 million in the BUS bankruptcy case, which will be treated as an allowed unsecured claim under the terms of any plan filed by BUS in these bankruptcy cases.  The SEC will not enforce the Consent Judgment until 90 days after the effective date of the Plan (and only if the Judgment is not paid under the Plan), but if the Plan has not gone effective by March 1, 2024, the SEC may enforce the Consent Judgment against BG anytime thereafter.

22.     On August 10, 2023, the SEC filed a motion before the Western District of Washington to enter the Consent Judgment.  On August 15, 2023, that court granted the motion and entered the Consent Judgment, which is attached hereto as Exhibit B.  The Debtors, with the consent of the SEC, have now filed this Motion, seeking this Court's approval of the Settlement/Consent Judgment.

30676048.1

23. Following approval of the Settlement/Consent Judgment, the Debtors intend to file an amended Plan and disclosure statement and seek a prompt confirmation. Based on the liquidation of the SEC's claims as reflected in the Settlement/Consent Judgment, the Debtors believe that there are sufficient assets to pay customers and general unsecured creditors in full, without the subordination of any claims.

### IV.   BASIS FOR RELIEF

**A. The Court Has The Authority To Approve The Settlement**

24. Section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

25. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979).

26. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts do not substitute their judgment for that of the debtor, but instead canvas the issues to

9

determine whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R.. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" (internal citations omitted)). Together, section 105(a) and Bankruptcy Rule 9019(a) grant the bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *Louise's*, 211 B.R. at 801.

27. The Third Circuit Court of Appeals has set out four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry, Inc.*, 390 U.S. at 424; *Marvel Entm't*, 222 B.R. at 249 (holding that proposed settlement was in best interest of the estate). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

30676048.1

B. **The Settlement/Consent Judgment Is Fair, Reasonable, And In The Best Interests Of The Debtors, Creditors, And The Estates**

28. The Debtors have determined that the Settlement/Consent Judgment is fair, reasonable, and in the best of the interests of the Debtors, their creditors, and the estates. The Settlement/Consent Judgment liquidates the SEC's claims, avoids the need for lengthy, uncertain, and expensive litigation on multiple fronts, and clears the pathway for the Debtors to promptly propose and seek confirmation of the Plan, which the Debtors anticipate will provide 100% recovery to all customers and general unsecured creditors (including regulatory authorities) holding allowed claims.

29. The Debtors believe that the Settlement/Consent Judgment falls well within the range of reasonableness and satisfies each of the applicable *Martin* factors:[4]

30. **Probability of Success in Litigation**: The Debtors certainly admit that litigation is risky, and the outcomes here are uncertain. The uncertainty is heightened in this context, because although the Estimation Motion only seeks to estimate the SEC's ultimate disgorgement remedy, the SEC Action requests that the court make findings that certain cryptocurrencies are securities within the meaning of federal law, a relatively novel question that has been addressed by few courts with divergent outcomes. Absent the Settlement/Consent Judgment, there is a chance that BUS would ultimately be liable for substantially more than the agreed-upon disgorgement, prejudgment interest, and penalty. The Settlement/Consent Judgment eliminates this risk, and accordingly, satisfies this factor.

---

[4] The second *Martin* factor, likely difficulties in collection, does not apply here, because the Debtors are not seeking to collect any damages from the SEC.

30676048.1

31. **Complexity of Litigation and the Attendant Expense, Inconvenience, and Delay**: Both the Estimation Motion and the SEC Action will require substantial expense to litigate, and could cause substantial delays. While the Debtors believe that the Estimation Motion can be heard expeditiously, there is an open dispute as to whether the Bankruptcy Court has the authority shorten the governmental bar date, which is currently in early-November 2023. If that bar date is not shortened, estimation proceedings will likely not begin until late-2023 or early-2024. The SEC Action will take even longer to litigate. As set forth in detail in the Estimation Motion, the Debtors believe that the SEC Action will take several years and millions of dollars in attorneys' fees to resolve if fully litigated. Estimation Motion ¶¶ 30-32. And undoubtedly, both the Estimation Motion and the SEC Action will require substantial resources to litigate, reducing the assets that would otherwise be available to pay the allowed claims of customers and general unsecured creditors. The Settlement/Consent Judgment solves for the both the expense and delay of litigation, and accordingly, satisfies this factor.

32. **Paramount Interests of Creditors**: The Settlement/Consent Judgment is in the paramount interests of creditors, because, as discussed above, liquidation of the SEC's claims provides a clear pathway to seek confirmation of the Plan. Based on the amounts set forth in the Settlement/Consent Judgment, the Debtors believe that there will be sufficient assets to satisfy all allowed customer and general unsecured claims. Given the reservation of rights negotiated by both the SEC and the United States to claw back interim customer withdrawals, confirmation of the Plan following the Settlement/Consent Judgment will provide finality to customers who have withdrawn assets associated with their accounts.

33. Based on the foregoing, the Debtors contend that the Settlement/Consent Judgment satisfies Bankruptcy Rule 9019 and is fair, reasonable, and in the best interests of the Debtors, their

30676048.1

estates, and their stakeholders. The Settlement/Consent Judgment satisfies the *Martin* factors, allows the Debtors to avoid litigation in two forums with the SEC, and provides a clear pathway for the Debtors to pay 100% of all allowed customer and general unsecured claims. As such, the Debtors respectfully request that the Court approve the Settlement/Consent Judgment.

## NOTICE

34. The Debtors will provide notice of this Motion to the SEC and the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) FinCEN and OFAC; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

30676048.1

WHEREFORE, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as is just and proper.

| | |
|---|---|
| Date: August 21, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/  Kenneth Enos*<br>Robert S. Brady (Delaware Bar No. 2847)<br>Kenneth Enos (Delaware Bar No. 4544)<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: rbrady@ycst.com<br>Email: kenos@ycst.com<br><br>-and-<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Valerie Ramos *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: valerieramos@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**CO-COUNSEL FOR THE DEBTORS** |

30676048.1