**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re:

Desolation Holdings LLC, *et al.*[1]                    Case No. 23-10597 (BLS)

      Debtors.                                      (Jointly Administered)

_____

**JOINT CHAPTER 11 PLAN OF LIQUIDATION**
**OF DESOLATION HOLDINGS LLC AND ITS AFFILIATED DEBTORS**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman (*admitted pro hac vice*)
Razmig Izakelian *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Joanna Caytas *(admitted pro hac vice)*
Valerie Ramos *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: valerieramos@quinnemanuel.com

*Counsel to the Debtors and Debtors in Possession*

Dated: August 25, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 5

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF
         TIME, AND GOVERNING LAW .......................................................................... 5

    A.      Defined Terms. ......................................................................................... 5

    B.      Rules of Interpretation. .......................................................................... 16

    C.      Computation of Time. ............................................................................ 17

    D.      Governing Law. ..................................................................................... 17

    E.      Reference to Monetary Figures. ............................................................ 17

    F.      Conflicts. ............................................................................................... 17

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP LOAN
         CLAIMS ............................................................................................... 18

    A.      Administrative Claims. .......................................................................... 18

    B.      Priority Tax Claims. ............................................................................... 20

    C.      DIP Loan Claims. .................................................................................. 20

    D.      Statutory Fees. ....................................................................................... 21

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................... 21

    A.      Classification in General. ...................................................................... 21

    B.      Grouping of Debtors for Convenience Only. ........................................ 21

    C.      Classification of Claims and Interests. ................................................. 21

    D.      Treatment of Claims and Interests. ....................................................... 22

    E.      Special Provision Governing Unimpaired Claims. ............................... 24

    F.      Elimination of Vacant Classes. ............................................................. 24

    G.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
         Code. ..................................................................................................... 24

    H.      Voting Classes; Presumed Acceptance by Non-Voting Classes. .......... 25

    I.      Presumed Acceptance and Rejection of the Plan. ................................ 25

    J.      Controversy Concerning Impairment. .................................................. 25

    K.      Subordinated Claims and Interests. ...................................................... 25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 25

    A.      No Substantive Consolidation. ............................................................. 25

    B.      Settlement and Compromise. ................................................................ 26

    C.      Liquidation of the Debtors. ................................................................... 26

    D.      Settlement of Claims After the Effective Date. .................................... 32

E.      Sources of Consideration for Plan Distributions..................................................... 32

F.      Cancellation of Certain Existing Securities and the DIP Loan Agreement. ..................... 33

G.      Release of Liens........................................................................................................ 33

H.      Corporate Action....................................................................................................... 33

I.      Effectuating Documents; Further Transactions. ........................................................ 34

J.      Section 1146 Exemption. .......................................................................................... 34

K.      Preservation of Causes of Action.............................................................................. 34

L.      Payment of Certain Fees. .......................................................................................... 35

M.      Document Retention. ................................................................................................. 35

N.      Closing of Chapter 11 Cases..................................................................................... 35

O.      Notice of Effective Date. .......................................................................................... 36

P.      Separability. .............................................................................................................. 36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............ 36

A.      Rejection of Executory Contracts and Unexpired Leases.......................................... 36

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...................... 36

C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .................. 37

D.      Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
        Leases. ....................................................................................................................... 38

E.      Indemnification Obligations. .................................................................................... 38

F.      Insurance Policies. .................................................................................................... 38

G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. .......... 39

H.      Reservation of Rights................................................................................................ 39

I.      Nonoccurrence of Effective Date.............................................................................. 39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................................. 40

A.      Timing and Calculation of Amounts to Be Distributed. ............................................ 40

B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..................... 40

C.      Special Rules for Distributions to Holders of Disputed Claims and Interests. ................. 41

D.      Manner of Payment. .................................................................................................. 42

E.      Compliance with Tax Requirements.......................................................................... 42

F.      Setoffs and Recoupment. .......................................................................................... 42

G.      No Double Payment of Claims. ................................................................................ 43

H.      Claims Paid or Payable by Third Parties. ................................................................. 43

I.      Allocation of Distributions Between Principal and Interest. ..................................... 44

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
        DISPUTED CLAIMS ................................................................................................. 44

A.      Allowance of Claims. ...................................................................................... 44

B.      Claims Administration Responsibilities. ......................................................... 44

C.      Adjustment to Claims Without Objection......................................................... 44

D.      Time to File Objections to Claims or Interests. ............................................... 44

E.      Estimation of Claims. ...................................................................................... 45

F.      Disputed and Contingent Claims Reserve. ...................................................... 45

G.      Disallowance of Claims. .................................................................................. 45

H.      Amendments to Proofs of Claim...................................................................... 46

I.      Reimbursement or Contribution. ..................................................................... 46

J.      No Distributions Pending Allowance. .............................................................. 46

K.      Distributions After Allowance......................................................................... 46

ARTICLE VIII. RELEASES, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS ........ 47

A.      Releases by the Debtors. ................................................................................. 47

B.      Releases by Holders of Claims and Interests. .................................................. 47

C.      Waiver of Statutory Limitations on Releases ................................................... 48

D.      Exculpation. .................................................................................................... 48

E.      Injunction. ....................................................................................................... 49

F.      Recoupment. .................................................................................................... 51

G.      Binding Effect. ................................................................................................ 51

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
           OF THE PLAN ................................................................................................. 51

A.      Conditions Precedent to Confirmation............................................................. 51

B.      Conditions Precedent to the Effective Date. .................................................... 52

C.      Waiver of Conditions....................................................................................... 52

D.      Substantial Consummation. ............................................................................. 53

E.      Effect of Failure of Conditions. ....................................................................... 53

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ................... 53

A.      Modification and Amendments......................................................................... 53

B.      Effect of Confirmation on Modifications. ........................................................ 53

C.      Revocation or Withdrawal of Plan................................................................... 53

ARTICLE XI. RETENTION OF JURISDICTION ................................................................... 54

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................. 56

A.      Immediate Binding Effect................................................................................ 56

B.      Additional Documents. .................................................................................... 56

C.      Payment of Statutory Fees. ............................................................................. 56

D.      Reservation of Rights..............................................................................................57

E.      Successors and Assigns. ........................................................................................57

F.      Notices. ..................................................................................................................57

G.      Term of Injunctions or Stays.................................................................................58

H.      Entire Agreement. ..................................................................................................58

I.      Exhibits. .................................................................................................................58

J.      Nonseverability of Plan Provisions........................................................................58

K.      Votes Solicited in Good Faith................................................................................58

L.      Waiver or Estoppel. ...............................................................................................59

M.      Closing of Chapter 11 Cases..................................................................................59

N.      Creditor Default. ....................................................................................................59

**INTRODUCTION**

Desolation Holdings LLC ("<u>Desolation</u>"), Bittrex, Inc. ("<u>BUS</u>"), Bittrex Malta Ltd. ("<u>Malta OpCo</u>"), and Bittrex Malta Holdings Ltd. ("<u>Malta Holdings</u>") as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), propose this joint chapter 11 plan of liquidation (the "<u>Plan</u>") for the resolution of the outstanding Claims against, and Interests in, the Debtors. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.     *Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth in the Introduction above or in the definitions below.

1.     "*341 Notice*" means the notice of chapter 11 bankruptcy case filed in the Chapter 11 Cases at D.I. 52.

2.     "*503(b)(9) Claim*" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3.     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates or the Chapter 11 Cases under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930.

4.     "*Administrative Claims Bar Date*" means the final deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to General Administrative Claims other than those that were accrued in the ordinary course of business, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

5.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.      "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither Disputed, contingent, nor unliquidated, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan; (ii) in any stipulation that is approved by the Bankruptcy Court; (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had Disallowed prior to such Final Order); provided that with respect to a Claim or Interest described in clauses (a) through (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been or, in the Debtors' or Plan Administrator's reasonable good faith judgment, may be interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order; provided, further, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or the Wind Down Entity, as applicable. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt a Proof of Claim or Interest Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "*Allow*," "*Allowing*," and "*Allowance*" shall have correlative meanings.

7.      "*Asset*" means all of the rights, title, and interests of a Debtor in, and to property, whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property.

8.      "*Assumption Schedule*" means the list, compiled by the Debtors, as applicable, of executory contracts and unexpired leases (with proposed cure amounts) that will be assumed by the Debtors, which list shall be included in the Plan Supplement.

9.      "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

10.     "*Ballot*" means the ballot applicable to the relevant Holder of a Claim, substantially in the form attached to the Disclosure Statement Order.

11.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

12.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

13.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

14.    "*Bar Date*" means the applicable date established by which Proofs of Claims and Interests must be Filed in these Chapter 11 Cases pursuant to Local Bankruptcy Rule 3003-1 and the 341 Notice, which date is August 31, 2023, except with respect to Proofs of Claims filed by governmental units and certain other exceptions set forth in the Bar Date Order.

15.    "*Bar Date Order*" means the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bank. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date* (D.I. 107).

16.    "*BUS*" has the meaning set forth in the Introduction.

17.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.    "*Cash*" means the legal tender of the U.S. and equivalents thereof, including bank deposits, checks, and other similar items.

19.    "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20.    "*Chapter 11 Cases*" means, collectively: (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

21.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

22.     "*Claims Objection Deadline*" means the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of such deadline.

23.     "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

24.     "*Class*" means a category of Claims or Interests as set forth in Article III of the Plan.

25.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

26.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

28.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

29.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.     "*Consent Judgment*" means the *Consent of Defendants* filed in the SEC Action (D.I. 53-1 in the SEC Action).

31.     "*Consummation*" means the occurrence of the Effective Date.

32.     "*Cryptocurrency*" means any digital asset that is not backed by a government.  The term "cryptocurrency" is to be interpreted broadly to include all forms of digital assets, virtual currency, cryptocurrency, tokens, security tokens, utility tokens and stablecoins.  This includes bitcoin, ether, Peercoin, Vertcoin, any ERC-20 compliant token, any altcoin, and any other cryptocurrency.

33.     "*Cryptocurrency Transaction*" means a pre-petition transaction involving any transfer by any Entity of Cryptocurrency to the Debtors, whether directly or indirectly.

34.     "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

35.     "*Customer*" means an Entity that engaged in a Cryptocurrency Transaction with one or more of the Debtors.

36. "*Customer Claim*" means a Claim of a Customer arising from a Cryptocurrency Transaction.

37. "*Customer Distribution*" means the Distribution of like kind Cryptocurrencies to Holders of Customer Claims by providing access to the Debtors' platform for withdrawal of 100% of the amount of Cryptocurrencies associated with such Customer's account as of the Petition Date, provided that Customers will be required to pay any fees charged by third parties in connection with the withdrawal of Cryptocurrencies, provided further that Customer Distribution are subject to Non-Economic Crypto Distributions, provided further that it may not be possible for Customers to successfully withdraw Defunct Crypto. For the avoidance of doubt, Customers who have already withdrawn the full amount of Cryptocurrencies associated with their accounts pursuant to the Customer Withdrawal Order shall not receive an additional Customer Distribution.

38. "*Customer Withdrawal Order*" means the *Order Authorizing the Debtors to Honor Withdrawal of Cryptocurrency Assets by Customers* (D.I. 128).

39. "*D&O Policy*" means any insurance policy that covers, among others, current or former directors, members, trustees, managers, and officers liability issued at any time to or providing coverage to the Debtors and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

40. "*Debtors*" has the meaning set forth in the Introduction.

41. "*Defunct Crypto*" means Cryptocurrencies that no longer exist or have been delisted.

42. "*DIP Lender*" means Aquila Holdings, Inc. (or its designee), in its capacity as lender under the DIP Loan Agreement.

43. "*DIP Loan Agreement*" means the DIP Loan Agreement as defined in the DIP Order.

44. "*DIP Loans*" means the post-petition financing provided by the DIP Lender on the terms and conditions set forth in the DIP Order.

45. "*DIP Loan Claims*" means any Administrative Claims arising in connection with the DIP Loan.

46. "*DIP Order*" means the *Final Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, and (C) Granting Related Relief* (D.I. 101), as may be amended, and all other Orders of the Bankruptcy Court authorizing the Debtors to obtain post-petition financing at any time prior to Confirmation.

47. "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, including a Final Order, (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise

deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or the Wind Down Entity, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

48.    "*Disclosure Statement*" means the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Affiliated Debtors*, dated as of [●] (D.I. [●]), as may be amended, including all exhibits and schedules thereto, as approved pursuant to the Disclosure Statement Order.

49.    "*Disclosure Statement Order*" means the *Order Approving Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Affiliated Debtors* (D.I. [●]).

50.    "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that is not yet Disallowed or Allowed.

51.    "*Distribution*" means, with respect to Customer Distributions, that a Customer entitled to a Customer Distribution shall access the Bittrex platform and withdraw Cryptocurrencies consistent with this Plan and its Allowed Claim.  With respect to distributions other than Customer Distributions, "*Distribution*" means payment in cash or check.

52.    "*Distribution Date*" means, with respect to any Claim or Interest that is Allowed as of the Effective Date, the date on which Distributions are made pursuant to the Plan, which shall be on or as soon as reasonably practicable following the Effective Date, provided that to the extent Claims or Interests will be paid from the proceeds of Cryptocurrencies, rather than in kind Distributions, such Distributions will occur at such time as the Debtors or Plan Administrator, as applicable, determines in their sole discretion (as applicable), based on factors the Debtors or the Plan Administrator determine are appropriate, including the quantity in any transaction, *provided* that with respect to any GUC Claim that is Allowed as of the Effective Date, Distributions paid from the proceeds of Cryptocurrencies shall not be paid on a date that is later than six months after the Effective Date.

53.    "*Distribution Record Date*" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the date that is three (3) Business Days after the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

54.    "*Effective Date*" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which:  (a) all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (b) the Plan is declared effective with respect to such applicable Debtor(s).

55.    "*Enjoined Party*" has the meaning set forth in Article IX.E.

56.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

57.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

58.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Wind Down Entity; (c) the DIP Lender; the Plan Administrator; and (d) with respect to each of the foregoing (a) through (c), such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former members, equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, predecessors, successors, assigns, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, restructuring advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

59.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually, as set forth in 28 U.S.C. § 1961.

60.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

61.    "*Final Order*" means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

62.    "*General Administrative Claim*" means any Administrative Claim, other than a Professional Fee Claim.

63.    "*Government Regulation*" shall mean all regulations applicable to a Cryptocurrency Transaction consisting of the withdrawal or liquidation of any Cryptocurrency by a Customer.

64.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

65.    "*GUC Claim*" means any unsecured Claim against any Debtor.

11

66.    "*Holder*" means an Entity holding a Claim or an Interest, as applicable.  "*Hold*" and "*Held*" shall have the correlative meanings.

67.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

68.    "*Indemnification Obligations*" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for their current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals, advisors, and agents of the Debtors, as applicable.

69.    "*Insurance Policies*" means the policies of insurance listed in the Plan Supplement.

70.    "*Insurers*" means the insurance companies providing insurance coverage under the Insurance Policies.

71.    "*Intercompany Claim*" means any Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor.

72.    "*Intercompany Interest*" means any Interest in one Debtor held by another Debtor.

73.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity.

74.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated June 7, 2023 (D.I. 102).

75.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

76.    "*IRS*" means the Internal Revenue Service.

77.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

78.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

79.    "*Local Bankruptcy Rules*" means the local rules of bankruptcy procedure promulgated in this district in accordance with Bankruptcy Rule 9029 that are applicable to all cases and proceedings arising in, under, or related to cases pending under the Bankruptcy Code in the Bankruptcy Court.

80.    "*Malta OpCo*" has the meaning set forth in the Introduction.

81.    "*Non-Economic Crypto*" refers to Cryptocurrencies which, on a Customer-by-Customer basis, have a value less than the third-party fees associated with a Customer Withdrawal.

82.    "*Non-Economic Crypto Distributions*" means the Distribution of Non-Economic Crypto to Customers by aggregating the Non-Economic Crypto in amounts so that their value exceeds third-party costs associated with their withdrawal and distributing such remaining value *pro rata* to Customers in amounts associated with their accounts.

83.    "*Opt Out Form*" means a form, substantially in the form contained in the Plan Supplement, by which a creditor or other party in interest may indicate its intent to opt out of the releases contained in Article VIII of the Plan by submitting such form in advance of the deadline for voting on the Plan.

84.    "*Other Priority Claim*" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

85.    "*Person*" means a "Person" as defined in section 101(41) of the Bankruptcy Code.

86.    "*Petition Date*" means May 8, 2023, which is the date on which the Debtors commenced the Chapter 11 Cases.

87.    "*Plan*" has the meaning set forth in the Introduction.

88.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors, whose identity shall be disclosed in the Plan Supplement, and who shall have all powers and authorities set forth in Article IV.C. herein.

"*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with its terms, the Bankruptcy Code, and the Bankruptcy Rules, to be Filed by the Debtors.  The Plan Supplement shall be comprised of, among other documents, the following: (a) the Assumption Schedule; (b) the Schedule of Retained Causes of Action; and (c) the identity of the Plan Administrator.  Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (d).  Notwithstanding the foregoing, the Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date or as otherwise provided herein.

89.    "*Priority Claims*" means, collectively, the (a) Administrative Claims, (b) Priority Tax Claims, and (c) Other Priority Claims.

90.    "*Priority Tax Claim*" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

91.    "*Pro Rata*" means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Claims or Allowed Interests, in that Class, or the proportion of the Allowed Claims or Allowed Interests in a particular

Class and other Classes, respectively, entitled to share in the same recovery as such Claim or Interest under the Plan.

92.    "*Professional*" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

93.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

94.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.A.2(b) of the Plan.

95.    "*Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated in accordance with Article II.A.2(c) of the Plan.

96.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

97.    "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

98.    "*Protected Party*" has the meaning set forth in Article IX.E.

99.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired for purposes of section 1124 of the Bankruptcy Code.

100.    "*Released Parties*" means, collectively, and in each case only in its capacity as such: (a) the Debtors; (b) the DIP Lender; and (c) with respect to each of the foregoing (a) through (b), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

101.    "*Releasing Parties*" means, collectively, and in each case only in its capacity as such: (a) each of the Debtors; (b) the DIP Lender; (c) each of the Debtors' current and former

directors or officers; (d) all Holders of Claims or Interests who (1) vote in favor of the Plan or (2) abstain from voting, are not entitled to vote, or vote to reject the Plan and do not opt out of the Third Party Release on a timely submitted Ballot or Opt Out Form; and (e) with respect to each of the foregoing (a) through (e)*,* such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

102.    "*Retained Causes of Action*" means any Causes of Action that are set forth on the Schedule of Retained Causes of Action to be retained by the Wind Down Entity and prosecuted on behalf of the Wind Down Entity.

103.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released or waived pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement, provided that such schedule shall not include any Causes of Action against any Released Party, and any such inclusion will be deemed void ab initio.

104.    "*Schedules*" means the schedules of assets and liabilities, schedules of executory contracts or unexpired leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

105.    "*SEC*" means the Securities and Exchange Commission.

106.    "*SEC 9019 Motion*" means the *Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Settlement with the Securities Exchange Commission*, dated as of August 21, 2023 (D.I. 273).

107.    "*SEC Action*" means the action commenced by the SEC on April 17, 2023 in the Western District of Washington that initiated the action captioned *Securities and Exchange Commission v. Bittrex, Inc., et al.*, Case No. 2:23-cv-00580-RSM.

108.    "*Secured Claim*" means a Claim that is: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or separate order of the Bankruptcy Court as a secured claim.

109.    "*Subordinated Claim*" means any claim that is subordinated pursuant to section 510 of the Bankruptcy Code, or as needed to satisfy the best interests of creditors test of 1129(a)(7). The Debtors or the Wind Down Entity, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

110. "*Third Party Release*" means the release provided by the Releasing Parties in favor of the Released Parties as set forth in Article VIII.B of the Plan.

111. "*U.S.*" or "*United States*" means the United States of America.

112. "*U.S. Trustee*" means the Office of the U.S. Trustee Region 3 for the District of Delaware.

113. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

114. "*Unsecured*" means, when referring to a Claim, any Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

115. "*Voting Deadline*" has the meaning given to that term in the Disclosure Statement Order.

116. "*Wind Down Assets*" means all of the Debtors' assets, all of which shall vest in the Wind Down Entity pursuant to this Plan, including the Retained Causes of Action.

117. "*Wind Down Budget*" means that certain budget governing the fees, expenses, and disbursements required for an orderly wind down of the Debtors.

118. "*Wind Down Entity*" BUS and any successor thereto on and after the Effective Date, which shall be responsible for winding down the Debtors' Estates pursuant to the terms of this Plan.

119. "*Wind Down Expenses*" means all actual and necessary costs and expenses incurred by the Plan Administrator in connection with carrying out an orderly wind down of the Debtors pursuant to the terms of the Plan.

B.    *Rules of Interpretation*.

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, or similar

formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted by the Debtors or the Wind Down Entity, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

E.    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided.

F.    *Conflicts.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP LOAN CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Loan Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

A.    *Administrative Claims.*

1.    General Administrative Claims.

Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the Debtors, or the Wind Down Entity, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either: (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except for Claims of Professionals, requests for payment of General Administrative Claims that were not accrued in the ordinary course of business must be Filed and served on the Debtors or the Wind Down Entity, as applicable, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date and do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors or Wind Down Entity as applicable, or their respective property, and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtors or the Wind Down Entity, as applicable, or further order of the Bankruptcy Court. To the extent this Article II.A.1 conflicts with Article XII.C of the Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C of the Plan shall govern. Notwithstanding the foregoing, no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order.

The Debtors or the Wind Down Entity, as applicable, in their sole and absolute discretion, may settle General Administrative Claims without further Bankruptcy Court approval. They may also choose to object to any Administrative Claim no later than sixty (60) days from the

Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or Plan Administrator (or other party with standing), as applicable, object to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors or the Wind Down Entity, as applicable, object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

> 2.    Professional Compensation.

> > (a)    <u>Final Fee Applications</u>.

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date, must be Filed and served on the Wind Down Entity no later than sixty (60) days after the Effective Date or such other time as may be directed by the Bankruptcy Court. All such final requests will be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.

> > (b)    <u>Professional Fee Escrow Account</u>.

On the Effective Date, the Debtors or the Wind Down Entity, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Wind Down Entity, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind Down Entity from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Wind Down Entity without any further action or order of the Bankruptcy Court. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, all remaining unpaid Allowed Professional Fee Claims will be paid by the Debtors or the Wind Down Entity, as applicable.

> > (c)    <u>Professional Fee Reserve Amount</u>.

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than five business days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled

fees and expenses of such Professional.  The aggregate amount for all Professionals estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

(d)    <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Wind Down Entity shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Wind Down Entity. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind Down Entity may employ and pay any Professional, as the Plan Administrator determines in the Plan Administrator's reasonable business judgment.

B.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

C.    *DIP Loan Claims.*

Except to the extent that a Holder of an Allowed DIP Loan Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Loan Claim, each Holder of such Allowed DIP Loan Claim shall be paid in full in accordance with the terms of the DIP Loans.  Upon the payment or satisfaction of the Allowed DIP Loan Claims in accordance with this Article II.C, all superpriority claims granted in connection with the Allowed DIP Loan Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

D.      *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Wind Down Entity shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Wind Down Entity shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case of that particular Debtor being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## <u>ARTICLE III.</u>
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

B.      *Grouping of Debtors for Convenience Only.*

This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Plan Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan.  Each Class of Claims will be deemed to contain sub-classes for each of the Debtors, to the extent applicable for voting and Distribution purposes.  To the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor.  Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim.  Such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets.

C.      *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, Priority Tax Claims, Professional Fee Claims, and DIP Loan Claims, are classified as required by the Bankruptcy Code in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of

such other Classes.  Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.F.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2A | BUS Customer Claims | Impaired | Entitled to Vote |
| Class 2B | Malta OpCo Customer Claims | Impaired | Entitled to Vote |
| Class 3 | GUC Claims | Impaired | Entitled to Vote |
| Class 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | Interests | Impaired | Entitled to Vote |

D.    *Treatment of Claims and Interests.*

To the extent that a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the treatment of Allowed Claims and Allowed Interests in such Class is specified below.

1.    Class 1 – Other Priority Claims.

(a)    *Classification*:  Class 1 consists of Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    Class 2A – BUS Customer Claims.

(a)    *Classification*:  Class 2A consists of BUS Customer Claims.

(b)    *Treatment*:  The BUS Customer Claims are Allowed in the full amount due and owing to each Customer of BUS.  Except to the extent that a Holder of an Allowed BUS Customer Claim agrees to less favorable treatment of its

Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed BUS Customer Claim, each such Holder, who provides all information that the Debtors believe, in consultation with regulatory counsel, is required by the Debtors, shall receive its Customer Distribution, provided that all Government Regulations applicable to such Customer are satisfied prior to making such Customer Distribution.

(c)     *Voting:*  Class 2A is Impaired under the Plan.  Holders of Claims in Class 2A are entitled to vote to accept or reject the Plan.

3.     Class 2B – Malta OpCo Customer Claims.

(a)     *Classification*:  Class 2B consists of Malta OpCo Customers Claims.

(b)     *Treatment*:  The Malta OpCo Customer Claims are Allowed in the full amount due and owing to each Customer of Malta OpCo.  Except to the extent that a Holder of an Allowed Malta OpCo Customer Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Malta OpCo Customer Claim, each such Holder, who provides all information that the Debtors believe, in consultation with regulatory counsel, is required by the Debtors, shall receive its Customer Distribution, provided that all Government Regulations applicable to such Customer are satisfied prior to making such Customer Distribution.

(c)     *Voting:*  Class 2B is Impaired under the Plan.  Holders of Claims in Class 2B are entitled to vote to accept or reject the Plan.

4.     Class 3 – GUC Claims.

(a)     *Classification*:  Class 3 consists of GUC Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed GUC Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed GUC Claim, each such Holder of an Allowed Claim in Class 3 shall receive payment in Cash in an amount equal to such Allowed GUC Claim no later than six months after the Effective Date.

(c)     *Voting:*  Class 3 is Impaired under the Plan.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

5.     Class 4 – Subordinated Claims.

(a)     *Classification*:  Class 4 consists of Subordinated Claims.

23

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Subordinated Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Subordinated Claim, each such Holder of an Allowed Claim in Class 4 shall receive payment in Cash, after all Allowed GUC Claims have been paid in Cash in full, in an amount equal to such Allowed Subordinated Claim no later than six months after the Effective Date.

(c)    *Voting:*  Class 4 is Impaired under the Plan.  Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

6.    Class 5 – Interests.

(a)    *Classification*:  Class 5 consists of Interests.

(b)    *Treatment*:  On the Effective Date, existing Interests in BUS shall survive and continue to exist as Interests in the Wind Down Entity, which entitles each Holder of an Allowed Class 5 Interest in BUS to a Pro Rata payment of any remaining Wind Down Assets (if any) or the proceeds thereof after all Allowed Claims have been paid in full.  On the Effective Date, existing Interests in all Debtors, other than BUS, shall be deemed canceled, discharged, released, and extinguished, and there shall be no distribution to Holders of Interests in the Debtors, other than BUS, on account of such Interests.

(c)    *Voting:*  Class 5 is Impaired under the Plan.  Holders of Interests in Class 5 are entitled to vote to accept or reject the Plan.

E.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the right of the Debtors, or the Wind Down Entity, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

F.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to 0 of the Plan.

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

H.    *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

I.    *Presumed Acceptance and Rejection of the Plan.*

To the extent that Claims or Interests of any Class receive no Distribution under the Plan, each Holder of a Claim or Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

J.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

K.    *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable or contractual subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, or as needed to satisfy the best interests of creditors, the Debtors, or the Wind Down Entity, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *No Substantive Consolidation.*

This Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor. This Plan is not premised

upon the substantive consolidation of the Debtors with respect to the Classes of Claims of Interests set forth in the Plan.

B.    *Settlement and Compromise.*

1.    Customers and the Debtors.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of disputes between Customers and the Debtors with respect to ownership of Cryptocurrencies. In consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement. The compromises and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise, and the releases and indemnities provided to effectuate such settlement, are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and is fair, equitable, and reasonable.

2.    The SEC Action.

The Plan shall be deemed approval of the SEC 9019 Motion and related Consent Judgment filed in the SEC Action. In consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement. The compromises and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise, and the releases and indemnities provided to effectuate such settlement, are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and is fair, equitable, and reasonable.

C.    *Liquidation of the Debtors.*

In accordance with section 1141 of the Bankruptcy Code, the Wind Down Assets shall automatically be assigned, transferred, and vest in the Wind Down Entity upon the occurrence of the Effective Date, free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Class 5 Interests, as set forth herein, and the expenses of the Plan Administrator, for Distribution in accordance herewith. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, assigned or sold pursuant to a prior Order or the Plan, the Wind Down Entity specifically retains and reserves the right to assert, after the Effective Date, any and all of the claims, Causes of Action (including but not limited to those Causes of Action listed on the Causes of Action List, but excluding the Avoidance Actions released pursuant to Article VIII herein) and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing. The Confirmation Order shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary

to effectuate the Plan. The Debtors' attorney-client privilege shall be transferred to the Wind Down Entity.

1.    Wind Down Entity.

Pursuant to the Confirmation Order, the Debtors, other than BUS, will be dissolved. The Wind Down Entity shall continue in existence after the Effective Date for purposes of (1) preserving the Causes of Action for the benefit of Holders of Claims entitled to Distributions hereunder, (2) winding down the Debtors' remaining businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind Down Entity after the Effective Date, (3) resolving any Disputed Claims, (4) paying Allowed Claims, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner. The Wind Down Entity shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order. Except as otherwise provided in the Plan, the Wind Down Entity shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Wind Down Entity to file motions or substitutions of parties or counsel in each such matter.

Except as otherwise provided in the Plan or the Plan Supplement, or any agreement, instrument, or other document incorporated therein, the Wind Down Entity shall continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation, pursuant to the applicable law in the jurisdiction in which it is incorporated pursuant to its certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind Down Entity and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof, compromise or settle any Wind Down Assets. From and after the Effective Date, the Wind Down Entity and the Plan Administrator may commence, litigate, and settle any Causes of Action (other than the Avoidance Actions released pursuant to Article VIII herein) or Claims relating to the Wind Down Assets or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind Down Entity and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided herein. Notwithstanding the release of Avoidance Actions, the Wind Down Entity shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

Other than as set forth herein, no other Entity may pursue such Wind Down Assets on or after the Effective Date. The Wind Down Entity shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtors in any Causes of Action pending before the Bankruptcy Court or any other court that relates to any Wind Down Asset without the need for filing any motion for such relief.

After the Effective Date, the Wind Down Entity and any Debtor may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

2.    Wind Down Assets.

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Wind Down Assets become available, the Debtors shall be deemed to have automatically transferred to the Wind Down Entity all of their right, title, and interest in and to all of the Wind Down Assets, in accordance with section 1141 of the Bankruptcy Code.  All such Wind Down Assets shall automatically vest in the Wind Down Entity free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and the Class 5 Interests, as set forth herein, and the expenses of the Wind Down Entity, as set forth herein.  Thereupon, the Debtors shall have no interest in or with respect to the Wind Down Assets.

3.    Appointment of the Plan Administrator.

The Wind Down Entity shall be governed by the Plan Administrator in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Wind Down Entity shall be deemed to be terminated and such individuals shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole director and sole officer of the Wind Down Entity and shall succeed to the powers of the Wind Down Entity's managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind Down Entity.  The Plan Administrator shall use commercially reasonable efforts to operate in a manner consistent with the Wind Down Budget.

The Plan Administrator shall be selected by the Debtors and shall be identified in the Plan Supplement.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.  The Plan Administrator shall administer the Plan and shall serve as a representative of the Wind Down Entity.

The Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind Down Entity is dissolved in accordance with Article IV.C.9 hereof and (ii) the date on which such Plan Administrator resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that the Plan Administrator resigns, is terminated, or is otherwise unable to serve, the holders of the majority of Interests in the Wind Down Entity shall appoint a successor to serve as the Plan Administrator.  If a successor Plan Administrator is not appointed within 60 days after such occurrence, then the Bankruptcy Court, upon the motion of any party-in-interest, shall approve a successor to serve as the Plan Administrator.  Any such successor Plan Administrator shall serve in such capacity until the Wind Down Entity is dissolved or the successor Plan Administrator resigns, is terminated, or is otherwise unable to serve, in accordance with the above provisions.

4.      Responsibilities of the Plan Administrator.

Responsibilities of the Plan Administrator shall include, but are not limited to:

(i)      Administering the implementation of the Plan, including the making of the Distributions contemplated herein;

(ii)     Marshalling, marketing for sale, and liquidating the Wind Down Assets;

(iii)    Conducting an analysis of any and all Claims and Interests and prosecuting objections thereto or settling or otherwise compromising such Claims and Interests, if necessary and appropriate;

(iv)     Maintaining and administering the reserves in accordance with the terms hereof;

(v)      Commencing, prosecuting, or settling claims and Causes of Action (other than the Avoidance Actions released pursuant to Article IV.K. herein), enforcing contracts, and asserting claims, defenses, offsets and privileges in accordance herewith and paying all associated costs;

(vi)     Recovering and compelling turnover of the Debtors' property;

(vii)    Paying Wind Down Expenses;

(viii)   Abandoning any property constituting the Wind Down Assets that cannot be sold or otherwise disposed of for value and whose Distribution to Holders of Allowed Claims would not be feasible or cost-effective in the Plan Administrator's reasonable judgment;

(ix)     Preparing and filing post-Effective Date operating reports;

(x)      Filing appropriate tax returns in the exercise of the Plan Administrator's fiduciary obligations;

(xi)     Retaining such Professionals as are necessary and appropriate in furtherance of the Plan Administrator's fiduciary obligations; and

(xii)    Taking such actions as are necessary and reasonable to carry out the provisions of the Plan, including winding down the Wind Down Entity's business affairs.

5.      Expenses of the Plan Administrator.

All costs, expenses, and obligations incurred by the Plan Administrator in administering the Plan, on or after the Effective Date, or in any manner connected, incidental, or related thereto, shall be paid from the Wind Down Assets.

6.      Fiduciary Duties of the Plan Administrator.

Pursuant to the Plan, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive Distributions pursuant to Plan. The Plan Administrator shall be appointed and act for the Wind Down Entity in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, or officers of the Debtors shall be terminated and such individuals shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind Down Entity, and shall succeed to the powers of the Wind Down Entity's managers, directors, and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind Down Entity.

7.      Tax Treatment.

Nothing contained in this Plan or the Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors or the Wind Down Entity, nor shall this Plan or the Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

8.      Insurance; Bond.

The Plan Administrator, in his or her sole discretion, may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Plan Administrator under the Plan.  The Plan Administrator shall serve with a bond, the cost and expense of which shall be paid by the Wind Down Assets.

9.      Dissolution of the Wind Down Entity.

Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of the occurrence of the Effective Date, all distributions having been made, completion of all its duties under the Plan, and entry of a final decree closing the Wind Down Entity's Chapter 11 Case, and the conclusion of all litigation being pursued by the Plan Administrator, the Wind Down Entity shall be deemed to be dissolved without any further action by the Wind Down Entity, the Plan Administrator, or the Bankruptcy Court, including the filing of any documents with the secretary of state for the state in which the Wind Down Entity is formed or any other jurisdiction.  The Plan shall constitute a plan of distribution as contemplated in the Georgia Business Corporation Code. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind Down Entity in and withdraw the Wind Down Entity from applicable state(s).

For the avoidance of doubt, notwithstanding the Wind Down Entity's dissolution on or after the Effective Date, the Wind Down Entity shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims. To the extent the Wind Down Entity has any Cash or other property remaining after the Chapter 11 Cases have been closed and all payments have been made under the Plan (including all payments on account of Allowed Claims and the Plan Administrator's compensation and reimbursement) and the conclusion of all litigation being pursued by the Litigation Administrator(s), such Cash or other property shall be distributed Pro Rata to the Holders of Claims or Interests entitled to receive such proceeds, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided* that if such distributions are, in the Plan Administrator's reasonable judgment, infeasible to distribute Pro Rata or for any other reason such distributions cannot be effectuated, the Plan Administrator may contribute such amounts to the Bankruptcy Court pursuant to chapter 129 of the Judicial Code.

10.    Liability of the Plan Administrator; Indemnification.

Neither the Plan Administrator, his or her respective members, employees, employers, designees or professionals, or any of his or her duly designated agents or representatives (each, an "Plan Administrator Exculpation Party" and collectively, the "Plan Administrator Exculpation Parties") shall be liable for losses, claims, damages, liabilities or expenses in connection with administering the Wind Down Assets or for the act or omission of any other Plan Administrator Exculpation Party, nor shall the Plan Administrator Exculpation Parties be liable for any act or omission taken or omitted to be taken pursuant to the discretion, powers and authority conferred, or in good faith believed to be conferred by the Plan other than for specific acts or omissions resulting from such Plan Administrator Exculpation Party's willful misconduct or actual fraud. The Plan Administrator shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Plan Administrator may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability on the Plan Administrator or its respective designees, unless such determination is based on willful misconduct or actual fraud. The Plan Administrator shall indemnify and hold harmless the Plan Administrator Exculpation Parties (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) that such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such Persons for actions or omissions as a result of willful misconduct or actual fraud. Persons dealing or having any relationship with the Plan Administrator shall have recourse only to the Wind Down Assets and shall look only to the Wind Down Assets to satisfy any liability or other obligations incurred by the Plan Administrator to such Person in carrying out the terms of the Plan, and the Plan Administrator shall not have any

personal obligation to satisfy any such liability.  The Plan Administrator shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into the Plan against the Plan Administrator.  The Plan Administrator shall promptly pay expenses reasonably incurred by any Plan Administrator Exculpation Party in defending, participating in, or settling any action, proceeding or investigation in which such Plan Administrator Exculpation Party is a party or is threatened to be made a party or otherwise is participating in connection with administering the Wind Down Assets or the duties, acts or omissions of the Plan Administrator or otherwise in connection with the affairs of the Plan Administrator, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Plan Administrator Exculpation Party hereby undertakes, and the Plan Administrator hereby accepts his or her undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Exculpated Party is not entitled to be indemnified therefor under the Plan.  The foregoing indemnity in respect of any Plan Administrator Exculpation Party shall survive the termination of such Plan Administrator Exculpation Party from the capacity for which they are indemnified.

11.   *Full and Final Satisfaction Against Liquidation Trust.*

On and after the Effective Date, the Wind Down Entity shall have no liability on account of any Claims or Equity Interests except as set forth herein.  All payments and all Distributions made by the Plan Administrator hereunder shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims against, or Interests in, the Debtors or the Wind Down Entity.

D.   *Settlement of Claims After the Effective Date.*

In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against, and Interests in, the Debtors and their Estates, and Causes of Action against other Entities.

E.   *Sources of Consideration for Plan Distributions.*

The Debtors and the Wind Down Entity, as applicable, shall fund Distributions under this Plan with the Assets of the Debtors or the Wind Down Entity that may become Cash or Cryptocurrencies, including proceeds from the Estate Causes of Action other than the Avoidance Actions released pursuant to Article IV.K. herein.  Each Distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such Distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such Distribution or issuance, which terms and conditions shall bind each Entity receiving such Distribution or issuance.  The issuance, Distribution, or authorization, of any securities in connection with the Plan will be exempt from SEC registration to the fullest extent permitted by law, as described more fully in Article VI.E below.

F.      *Cancellation of Certain Existing Securities and the DIP Loan Agreement.*

Except as otherwise provided in the Plan and except for Interests in BUS, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing any Claims against any of the Debtors, and any Interests in the Debtors other than BUS, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors or the Wind Down Entity, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the counterparties to any such documents or agreements shall be released from all duties thereunder, *provided* that notwithstanding Confirmation or Consummation, any such document or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of:  (1) allowing Holders to receive Distributions under the Plan; (2) allowing creditors to enforce their rights, claims, and interests vis-à-vis any parties other than the Debtors; and (3) preserving any rights of any creditors to enforce any obligations owed to each of them under the Plan, and to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan.  Any Interests in BUS shall survive and continue to exist following the Effective Date as Interests in the Wind Down Entity.

G.      *Release of Liens.*

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of any Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors shall be automatically discharged and released.

H.      *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan with respect to the Debtors and the Wind Down Entity, as applicable, shall be deemed authorized and approved in all respects, including, as applicable:  (1) selection of, and the election or appointment (as applicable) of, the Plan Administrator; (2) adoption of and entry into any employment agreements; (3) all transfers of Assets that are to occur pursuant to the Plan; (4) the dissolution and wind down of the Debtors and the Wind Down Entity; and (5) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for herein involving the corporate structure of the Debtors or the Wind Down Entity, as applicable, and any corporate action, authorization, or approval that would otherwise be required by the Debtors or the Wind Down Entity, as applicable, in connection with the Plan shall be deemed to have occurred or to have been obtained and shall be in effect as of the Effective Date, without any requirement of further action, authorization, or approval by the Bankruptcy Court, security holders, directors, managers, or officers of the Debtors, the Wind Down Entity, or any other person.

On or before the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments,

and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors, and all such documents shall be deemed ratified.  The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under non-bankruptcy law.

I.      *Effectuating Documents; Further Transactions.*

On or after the Effective Date, the Debtors or the Wind Down Entity, as applicable, and the Plan Administrator, officers, directors, agents and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

J.      *Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including: (1) the transfer, if any, of the Wind Down Assets to the Wind Down Entity; (2) the issuance of any beneficial interests in the Wind Down Entity; and (3) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets in connection with, arising out of, contemplated by, or in any way related to the Plan, shall, in each case, not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment.

K.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall assign to the Wind Down Entity and the Wind Down Entity shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations set forth in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Wind Down Entity as of the Effective Date.

The Plan Administrator may pursue such Causes of Action, as appropriate, in accordance with the Plan.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause

of Action against it as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action of the Debtors against it. The Debtors, the Wind Down Entity, and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan. Unless any Cause of Action of the Debtors against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Debtors and the Plan Administrator expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Plan Administrator shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall be transferred to and vest in the Wind Down Entity, except as otherwise provided in the Plan, including Article VIII of the Plan. The Wind Down Entity shall retain, and through its authorized agents or representatives, including the Plan Administrator, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment, any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release and waive any and all Avoidance Actions.

L.      *Payment of Certain Fees.*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Debtors, or the Wind Down Entity, as applicable, shall pay on the Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by all of the attorneys, accountants, and other professionals, advisors, and consultants payable under the DIP Order (which fees and expenses shall be paid pursuant to the terms of the DIP Order).

M.      *Document Retention*.

On and after the Effective Date, the Plan Administrator may maintain or dispose of documents, as the Plan Administrator deems appropriate in the Plan Administrator's reasonable business judgment.

N.      *Closing of Chapter 11 Cases*.

After an Estate has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

O.    *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

P.    *Separability.*

Notwithstanding the combination of the separate plans of liquidation for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## <u>ARTICLE V.</u>
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Rejection of Executory Contracts and Unexpired Leases.*

As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease: (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Wind Down Entity has provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Plan Administrator, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed within thirty (30) days after the later of:  (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (2) the effective date of such rejection.  Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the

Debtors, the Wind Down Entity, the Estates, or their property without the need for any objection by the Debtors or the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts or unexpired leases shall be classified as GUC Claims and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each assumed executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

Any objection by a contract or lease counterparty to a proposed assumption (including, for purposes of the Plan, assumption and assignment) of an executory contract or unexpired lease or the related cure cost (including as set forth on the Assumption Schedule) must be Filed, served, and actually received by the Debtors in accordance with the Disclosure Statement Order or other applicable Final Order of the Bankruptcy Court. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption and the proposed cure amount. For the avoidance of doubt, to the extent an executory contract or unexpired lease proposed to be assumed is not listed as having a related cure cost, any counterparty to such executory contract or unexpired lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults, including any cure payment, under such executory contract or unexpired lease.

Assumption of any executory contract or unexpired lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an assumed executory contract or unexpired lease shall be deemed Disallowed, without further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the executory contract or unexpired lease counterparty or counterparties to the Debtors or the Wind Down Entity, as applicable, under such executory contracts or unexpired leases.

E.    *Indemnification Obligations.*

Any obligations of the Debtors pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document or applicable law, to indemnify, reimburse, or limit the liability of any director, officer, or employee of the Debtors, pursuant to the foregoing in respect of any claims, demands, suits, causes of action, or proceedings against such director, officer, or employee based upon any act or omission related to such director or officer's service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, however, that all monetary obligations under this provision shall be (a) limited solely to available insurance coverage, and (b) to the extent such Claims are not covered by any applicable insurance, including deductibles, shall be treated as Allowed GUC Claims. Any Claim based on the Debtors' indemnification obligations shall not be a Disputed Claim or subject to any objection under Bankruptcy Code section 502(e)(1)(B). For the avoidance of doubt, the scope of the Debtors' indemnification obligations in this Section shall be conterminous with applicable non-bankruptcy law and to the extent provided by such law.

F.    *Insurance Policies.*

Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court, on the Effective Date: (a) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and coverage for defense costs and indemnification under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies, and the Wind Down Entity shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such insurance policies, without the need or requirement for an insurer to file a Proof of Claim, Administrative Expense Claim or objection to any cure amount; (b) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and

without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; (iii) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies; and (iv) holders of Allowed Claims to pursue insurance recovery to the extent allowed or required by this Plan.

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Unless otherwise provided herein or in the applicable executory contract or unexpired lease (as may have been amended, modified, supplemented, or restated), modifications, amendments, supplements, and restatements to pre-petition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.    *Reservation of Rights.*

Neither the exclusion nor inclusion of any executory contract or unexpired lease on the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any of the Debtors or the Plan Administrator has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

I.    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Distribution Date (or if a Claim is not an Allowed Claim on the Distribution Date, on the date that such Claim or Interest becomes an Allowed Claim), each Holder of an Allowed Claim shall receive the full amount of the Distributions that the Plan provides for such Allowed Claim in accordance with its priority and Allowed amount.

If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.

To the extent any Distributions made in accordance with the Plan are subject to disgorgement to the Plan Administrator, the Plan Administrator shall effectuate the Distribution of such disgorged Distribution to the Holders of Allowed Claims entitled to such Distributions in accordance with the Plan as soon as reasonably practicable.  For the avoidance of doubt, to the extent disgorgement of a Distribution made to a Holder of a Claim pursuant to the Plan is required, such Holder shall be required to disgorge any Distribution but shall not be required to remit interest on such Distribution.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

B.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.     Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on such Distribution Record Date.

2.     Delivery of Distributions.

Except as otherwise provided herein, the Plan Administrator shall be authorized to make Distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the Address for each such Holder as indicated on the Debtors' records as of the date of any such Distribution.  Customer Distributions shall be initiated by the Customer using the Bittrex platform.  The manner of such Distributions shall be determined at the discretion of the Plan Administrator, and the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Interest Filed by that Holder.

3.      Delivery of Distributions to Holders of GUC Claims.

The Debtors and the Plan Administrator, will, in their reasonable discretion, determine the method for a timely Distribution of all Distributions to Holders of Allowed GUC Claims pursuant to the Plan, provided that with respect to any GUC Claim that is Allowed as of the Effective Date, Distributions paid in Cash from the proceeds of Cryptocurrencies shall occur no later than six months after the Effective Date.

4.      Minimum Distribution.

No Cash payment of less than $100 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim; *provided*, *however*, that there will be no minimum amount with respect to Customer Distributions, *provided, further, however*, that Customers will be required to pay any fees charged by third parties in connection with the withdrawal of Cryptocurrencies, *provided, further*, that with respect to the Defunct Crypto, there will be no Customer Distributions, and, *provided, further*, the Debtors or the Plan Administrator will determine whether there is sufficient Non-Economic Crypto to warrant distribution

5.      Undeliverable Distributions and Unclaimed Property.

In the event that any Distribution to any Holder is returned as undeliverable or in the event that a Customer fails to initiate a Customer Distribution or comply with any Government Regulation or provide any information that the Debtors believe, in consultation with regulatory counsel, is required by the Debtors, no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder and has received all other required information, at which time such Distribution shall be made to such Holder without interest; *provided* that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date such Distribution is returned as undeliverable or such Customer fails to complete a Customer Distribution or comply with any Government Regulation or other information required by the Debtors. After such date, all unclaimed property or interests in property shall revert to the Wind Down Entity automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) for Distribution consistent with the Plan, and any claim of any Holder to such property shall be fully discharged, released, and forever barred.

For the avoidance of doubt, the Plan Administrator and its respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

C.      *Special Rules for Distributions to Holders of Disputed Claims and Interests.*

Except as otherwise provided in the Plan, agreed to by the Debtors or the Wind Down Entity, or set forth in an order of the Bankruptcy Court:  (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; *provided* that if a portion of a Claim is not Disputed, the Debtors or the Plan Administrator may make a partial Distribution based on such portion of such Claim that is not Disputed; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not

receive any Distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or Disallowed.  Any dividends or other Distributions arising from property distributed to Holders of Allowed Claims or Interests, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other Distributions were earlier paid to Holders of Allowed Claims or Interests in such Class.

D.      *Manner of Payment.*

Unless otherwise set forth herein, all Distributions under the Plan to the Holders of Allowed Claims shall be made by the Debtors, the Wind Down Entity, or the Plan Administrator.  At the option of the Debtors, the Wind Down Entity, or the Plan Administrator, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

E.      *Compliance with Tax Requirements.*

In connection with the Plan, as applicable, the Debtors and the Plan Administrator, as applicable, shall comply with all tax withholding and tax reporting requirements imposed on them by any Governmental Unit with respect to Distributions pursuant to the Plan.  Notwithstanding any provision herein to the contrary, the Debtors and the Plan Administrator, as applicable, shall be authorized to take all actions necessary to comply with such tax withholding and tax reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements.  The Debtors and the Plan Administrator, as applicable, reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F.      *Setoffs and Recoupment.*

The Debtors or the Plan Administrator, as applicable, may, but shall not be required to, setoff against or recoup any payments or Distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Plan Administrator, as applicable may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administrator, as applicable, of any such right it may have against the Holder of such Claim.

G.    *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover Distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

H.    *Claims Paid or Payable by Third Parties*.

1.    Claims Paid by Third Parties.

The Debtors and the Plan Administrator shall reduce a Claim, and such Claim shall be deemed Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator.  Subject to the penultimate sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Wind Down Entity, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.  The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Wind Down Entity annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

2.    Claims Payable by Third Parties.

Except as otherwise provided for in the Plan, no Distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such a Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies.

Except as otherwise provided in the Plan, any Distributions of insurance proceeds to Holders of Allowed Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy.  Except as otherwise provided in the Plan, the Plan shall not otherwise constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Policies, nor shall anything contained herein (a) constitute or be deemed a waiver by such Insurers of any rights

or defenses, including coverage defenses, held by such Insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

I.      *Allocation of Distributions Between Principal and Interest.*

For Distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

Except as otherwise set forth in the Plan, after the Effective Date, the Wind Down Entity shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.  Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, and subject to the rights and duties of the Plan Administrator as set forth herein, after the Effective Date, (a) the Plan Administrator shall have the sole authority to File, withdraw, or litigate to judgment, objections to all Claims; and (b) the Plan Administrator shall have the authority to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) the Plan Administrator shall have the authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Adjustment to Claims Without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Time to File Objections to Claims or Interests.*

Any objections or challenges to Claims or Interests shall be Filed on or before the applicable Claims Objection Deadline.

E.    *Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Plan Administrator may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent, unliquidated, or arises from a right to an equitable remedy for breach of performance pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. § 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been Disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated and the Bankruptcy Court grants such reconsideration.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

F.    *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Wind Down Entity and the Plan Administrator shall establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the Wind Down Entity and Plan Administrator, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.

Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  As such, such assets will be subject to entity-level taxation, and the Debtors and Plan Administrator shall be required to comply with the relevant rules.

G.    *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action

against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and Disallowed as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.  All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and Disallowed as of the Effective Date to the extent the Plan Administrator elects to honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed to by the Plan Administrator in its sole discretion, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

H.      *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such new or amended Proof of Claim or Interest Filed that is not so authorized before it is Filed shall be deemed Disallowed in full without any further action.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

J.      *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.C of the Plan, no payment or Distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

K.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Plan Administrator shall provide to the Holder of such Claim the Distribution (if any) to which

such Holder is entitled under the Plan, as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

## ARTICLE VIII.
## RELEASES, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS

A.      ***Releases by the Debtors.***

As of the Effective Date, the Debtors, and each of their respective Affiliates, on behalf of themselves and their respective Estates, including any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, including the Plan Administrator, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived each Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of any of the Debtors or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or Distribution of securities pursuant to the Plan, the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, or the Distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Causes of Action arising from an act or omission of a Released Party that is judicially determined in a Final Order to have constituted actual fraud, gross negligence, criminal misconduct or willful misconduct. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (ii) the releases by the Debtors set forth above shall not impair any Estate Causes of Action against a non-Released Party.

B.      ***Releases by Holders of Claims and Interests.***

As of the Effective Date, except (a) for the right to enforce the Plan or (b) as otherwise expressly provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party shall be deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released, and waived by each of the Releasing Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and

**liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of any of the Debtors or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or Distribution of securities pursuant to the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the Distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Causes of Action arising from an act or omission of a Released Party that is judicially determined in a Final Order to have constituted actual fraud, gross negligence, criminal misconduct or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

C.    *Waiver of Statutory Limitations on Releases*

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN SECTION 10 OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

D.    ***Exculpation.***

**To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from any liability in**

respect of any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, arising between the Petition Date and the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or Distribution of securities (if any) pursuant to the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the Distribution of property under the Plan or any other related agreement including the Distribution of Cryptocurrencies to Customers, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, gross negligence, criminal misconduct or willful misconduct , but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon any Order of the Bankruptcy Court or the advice of counsel with respect to their duties and responsibilities.

To the extent section 1125(e) of the Bankruptcy Code applies, the Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and Distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not be construed as exculpating any party or entity from its post-Effective Date obligations under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Injunction.*

Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates ("<u>Enjoined Parties</u>"), shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or

are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Plan Administrator ("Protected Parties"), as applicable, or the property of the Protected Parties, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Protected Parties; or the property of the Protected Parties, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Protected Parties, or the property of the Protected Parties, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Protected Parties, as applicable, or against property or interests in property of the Protected Parties, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section.

The injunctions in this Section shall extend to any successors of the Protected Parties, as applicable, and their respective property and interests in property.

Notwithstanding the foregoing, nothing in this Section shall enjoin the assertion of a defensive right of recoupment.

Nothing in the Plan or Confirmation Order shall (1) enjoin, release, impair or otherwise preclude the United States (i) from pursuing any criminal action or any police or regulatory action, (ii) from pursuing any liability to the United States that is not a Claim, (iii) from exercising any rights of setoff or recoupment subsequent to confirmation of the Plan or any order granting substantive consolidation, and such rights are preserved, and (iv) from pursuing any claim of the United States arising on or after the Confirmation Date; and (2) grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

No Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Cases, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor, the administration of the Wind Down Assets, or the transactions in furtherance of the foregoing without the Bankruptcy Court: (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party; and

**(ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.**

F.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Plan Administrator, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

G.      *Binding Effect.*

On the Effective Date, except as otherwise provided herein to the contrary, and effective as of the Effective Date, the Plan will bind, and will be deemed binding upon, all Holders of Claims against and Interests in the Debtors, and such Holder's respective successors and assigns, to the maximum extent permissible by law, notwithstanding whether or not such Holder (1) will receive any property or interest in property under the Plan, or (2) has filed a Proof of Claim or Interest in the Chapter 11 Cases, or (3) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

## <u>ARTICLE IX.</u><br>CONDITIONS PRECEDENT TO CONFIRMATION<br>AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.      the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order in a manner consistent in all material respects with the Plan; and

2.      the Confirmation Order shall, among other things:

(a)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(b)      authorize the Debtors and the Plan Administrator, as applicable, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(c)     authorize the Debtors and the Plan Administrator, as applicable/necessary, to enter into any agreements, transactions, and sales of property, as set forth in the Plan Supplement with respect to the Debtors or the Plan Administrator, as applicable;

(d)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan shall not be subject to transfer or recording taxes or fees to the extent permissible under section 1146 of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment;

(e)     authorize and approve the compromise and settlement set forth in the Plan; and

(f)     contain the release, injunction, and exculpation provisions contained in Article VIII herein.

B.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.     the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred, and no stay of the Confirmation Order shall be in effect;

2.     all agreements necessary to implement the Plan, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

3.     the documents contained in the Plan Supplement will contain terms and conditions consistent in all material respects with this Plan;

C.     *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtors and/or the Plan Administrator without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.     *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

E.     *Effect of Failure of Conditions.*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     *Modification and Amendments.*

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.     *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or Allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      adjudicate, decide, or resolve any and all matters related to the Causes of Action enumerated in the Schedule of Retained Causes of Action;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the Plan;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Plan;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the

Plan, the Disclosure Statement, the Confirmation Order, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

11.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.    resolve any cases, controversies, suits, disputes, or Causes of Action relating to the Distribution or the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.H.1 of the Plan;

13.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by or assess damages against any Entity with regard to Consummation or enforcement of the Plan;

14.    enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    enter an order or decree concluding or closing the Chapter 11 Cases;

16.    adjudicate any and all disputes arising from or relating to Distributions under the Plan or any of the transactions contemplated therein;

17.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

20.    hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred before or after the Effective Date;

21.    except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

22.     enforce all orders previously entered by the Bankruptcy Court and resolve any issues not enumerated above related to any matters adjudicated in the Chapter 11 Cases; and

23.     hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, the Bankruptcy Court shall retain non-exclusive jurisdiction to adjudicate, decide, or resolve any and all matters related to objections to Claims.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to Article I.B of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon, as applicable, the Debtors, the Wind Down Entity, the Plan Administrator, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Plan Administrator, and all Holders of Claims and Interests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by the Plan Administrator for each quarter (including any fraction thereof) until the applicable Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  All such fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Plan Administrator shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly

reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case is converted, dismissed, or closed.

D.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

E.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.    If to the Debtors, to:

        Bittrex, Inc.
        701 5th Avenue, Suite 4200
        Seattle, WA 98104

    2.    If to the Wind Down Entity:

        Bittrex, Inc.
        701 5th Avenue, Suite 4200
        Seattle, WA 98104

After the Effective Date, the Plan Administrator shall have the authority to send a notice to Entities that request to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website or the Bankruptcy Court's website.

J.    *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as applicable, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and/or the Plan Administrator; and (3) nonseverable and mutually dependent.

K.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the

Plan Administrator shall have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

L.    *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

M.    *Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Plan Administrator shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of BUS, and all contested matters and adversary proceedings relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of BUS; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until the Chapter 11 Case of BUS has been closed.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of BUS in accordance with the Bankruptcy Code and the Bankruptcy Rules.

N.    *Creditor Default.*

On and after the Effective Date, any act or omission by a Holder of a Claim or an Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the Plan Administrator may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Plan Administrator in an amount, including interest, to compensate the Wind Down Entity for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.