## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Requested Objection Deadline**: September 8, 2023 at 4:00 p.m. (ET) |
| | **Requested Hearing Date**: September 13, 2023 at 10:00 a.m. (ET) |

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND VOTING PROCEDURES, INCLUDING (A) FIXING THE RECORD DATE, (B) APPROVING THE SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION, (C) APPROVING THE FORM OF THE BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING, AND (D) APPROVING PROCEDURES FOR VOTE TABULATION; (III) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES; (IV) SHORTENING THE NOTICE PERIOD FOR THE HEARING TO CONSIDER CONFIRMATION OF THE PLAN; AND (V) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") hereby submit this motion (the "Motion"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Disclosure Statement Order"), pursuant to sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3003, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3017-1(a) and 3017-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

*Desolation Holdings LLC and Its Affiliated Debtors* [D.I. 294] (as amended, modified or supplemented from time to time, the "<u>Disclosure Statement</u>"),[2] (ii) approving solicitation and voting procedures with respect to the *Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and Its Affiliated Debtors* [D.I. 293] as amended, modified or supplemented from time to time, the "<u>Plan</u>"), including (a) fixing the Record Date, (b) approving the Solicitation Packages and procedures for distribution, (c) approving the form of the Ballots and establishing procedures for voting, and (d) approving procedures for vote tabulation, (iii) scheduling a confirmation hearing and establishing related notice and objection procedures, (iv) shortening the notice period for (a) parties to object to confirmation of the Plan, and (b) the Confirmation Hearing; and (v) granting related relief. In support of this Motion, the Debtors respectfully state as follows.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent, pursuant to Local Rule 9013-1(f), to the Court's entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of the Bankruptcy Code; Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020; and Local Rules 3017-1(a) and 3017-1(b).

---

[2]    Capitalized terms used, but not yet defined, shall have the meaning given to them below or as defined in the Plan or Disclosure Statement, as applicable.

## BACKGROUND

### I.    General Background

3.    On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

4.    Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration" or "Hengel Declaration").

### II.    Wind-Down Efforts Before and During the Chapter 11 Cases

5.    The Debtors, together with their non-debtor affiliates (collectively, "Bittrex"), operate cryptocurrency exchanges for both retail and institutional customers in several jurisdictions. BUS operates a cryptocurrency exchange for U.S. customers, whereas two foreign non-debtor affiliates operate Bittrex's cryptocurrency exchange for non-U.S. customers. Malta Holdings is a fully-owned subsidiary of RBR Holdings, Inc. and Malta OpCo is a fully-owned subsidiary of Malta Holdings. Bittrex created Malta OpCo to provide access to a Bittrex cryptocurrency exchange to non-U.S. customers.

6.    Malta Holdings and Malta Opco ceased operating in 2019, and despite several attempts to have customers transfer their accounts to non-Debtors Bittrex Global, Inc. ("Bittrex Global"), certain customers never completed the paperwork nor did they withdraw the

cryptocurrencies associated with their accounts.  Nevertheless, Bittrex Global has continued to provide support to such customers to transfer their accounts to Bittrex Global.

7.      As set forth in detail in the Hengel Declaration, in 2022, cryptocurrency prices began to decline.  The decrease in cryptocurrency prices, along with increased regulatory scrutiny, made it very difficult for cryptocurrency firms to operate in the United States.  As a result, Bittrex's team began to explore strategic solutions.

8.      Bittrex retained Lazard Ltd. and engaged in discussions with third parties to possibly sell Bittrex's assets or obtain sources of liquidity. The Debtors then retained Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") as its restructuring counsel (having previously retained Quinn Emanuel on other matters) for the Debtors, but not the non-Debtor Bittrex affiliates.  On March 1, 2023, the BUS retained Timothy Pohl of TRP Advisors, LLC to serve as the independent director to act for the sole benefit of BUS in any transactions involving the rest of the corporate group.  The Debtors subsequently retained Berkeley Research Group ("BRG") as their financial advisor on March 20, 2023 and appointed Evan Hengel and Robert Duffy to act as Co-Chief Restructuring Officers on April 17, 2023.

9.      However, there was little to no interest in BUS or its assets, likely due to market conditions and the inhospitable regulatory environment.  Thus, with the assistance of their advisors, the Debtors ultimately determined that an orderly wind-down and customer withdrawal process was the best path forward to protect the Debtors' creditors (including their customers) and other stakeholders.

10.     On March 31, 2023, BUS initiated a campaign urging customers to withdraw their cryptocurrency deposits from BUS by April 30, 2023.  Upon the announcement to wind down, BUS ceased accepting new customers and deposits.  BUS never loaned cryptocurrency to third

parties, and did not hypothecate or otherwise risk crypto deposited by its customers, and therefore, BUS easily met all pre-petition withdrawals and return of both crypto and fiat deposits.

11.     As the final phase of the wind-down effort, the Debtors filed the Chapter 11 Case to complete the orderly liquidation of their U.S. and Malta operations.  Upon filing the Chapter 11 Cases, the Debtors sought and obtained interim and final orders authorizing them to borrow up to 700 BTC in debtor-in-possession financing to be used for general wind down and liquidity purposes, including the payment of administrative expenses.

12.     The Debtors also filed *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim.  The Debtors promptly served notice of the bar date on all creditors.  D.I. 201.

13.     Shortly after filing the Chapter 11 Cases, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Withdrawals of Cryptocurrency Assets by Customers* (the "Customer Withdrawals Motion") (D.I. 43), requesting the entry of an order authorizing customers to withdraw their deposits of cryptocurrencies and fiat currencies as a continuation of the Debtors' orderly wind down process.  The SEC and the United States filed objections to the Customer Withdrawals Motion, which were ultimately resolved by the parties. On June 13, 2023, the Court entered an order granting the Customers Withdrawals Motion.  D.I. 128.   The Debtors took massive efforts to notify customers that they could withdraw cryptocurrencies and fiat currencies.    Thus, customers have been able to withdraw cryptocurrencies and fiat currencies since June 15, 2023.

14.     But the Debtors had one more issue that they needed resolved before moving forward with a plan.  Pre-petition, the SEC had filed a complaint against BUS, alleging that BUS had operated in violation of the Exchange Act, and sought disgorgement and penalties.  To be able to move forward with a plan, on June 16, 2023, the Debtors filed the *Motion Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code to Estimate Contingent and Unliquidated Claims of the Securities and Exchange Commission and Grant Related Relief* (the "Estimation Motion") (D.I. 134), seeking the entry of an order establishing procedures for estimating any and all contingent or unliquidated claims asserted by the SEC ("SEC Claims") (D.I. 134).  The SEC opposed the Estimation Motion.  Following extensive negotiations, BUS and the SEC were able to negotiate a global resolution of both the underlying company as well as the Estimation Motion, culminating in a negotiated consent judgment.  On August 15, 2023, the Western District of Washington entered the consent judgment, and the Debtors have sought approval of the Consent Judgment by this Court, which is set to be heard at the same date and time as this Motion.  The Disclosure Statement contains a fulsome discussion of the consent judgment.

## III.     Plan and Disclosure Statement

15.     Contemporaneously herewith, the Debtors filed the Plan and the Disclosure Statement.  The Plan provides for, among other things: (i) the continuation of one of the Debtors solely to administer the Plan; (ii) the cancellation of all of the other Interests in the Debtors; (iii) the Debtors' release of claims and causes of action against certain specified parties; (iv) the release of claims and causes of action against certain specified third parties by Holders of Claims, among others; and (v) the dissolution and wind-up of the Debtors' affairs.  The Plan reflects and incorporates settlements among the Debtors and the SEC, and includes a plan settlement that treats the claims of the Debtors' customers.

16.     The Plan also provides for Distributions to Holders of Allowed Claims, including Administrative Claims, Priority Tax Claims, DIP Loan Claims, Other Priority Claims, BUS Customer Claims, Malta OpCo Customers Claims, GUC Claims, Subordinated Claims (to the extent that there are any).  Any remaining assets after satisfaction of all Allowed Claims will be distributed to Interest holders, in strict compliance with the absolute priority rule.

17.     The Plan provides for the following treatment of Allowed Claims:

a.      All Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims will be paid or otherwise satisfied in full as required by the Bankruptcy Code and provided for in the Plan, unless otherwise agreed to by the Holders of such Claims and the Plan Administrator.

b.      Allowed DIP Claims shall be paid in full on the Effective Date pursuant to the terms of the applicable agreements, as provided in the Plan.

c.      Allowed BUS Customer Claims and Allowed Malta OpCo Customer Claims shall be paid in full in the form of Customer Distributions.

d.      Allowed GUC Claims will be paid in full in cash on the Effective Date.

e.      Any remaining assets will be distributed to Interest holders.

18.     Voting rights with respect to the Plan will flow from the classification of Claims and Interests and the Impaired or Unimpaired treatment of Claims and Interests within each Class as proposed in the Plan.  The Plan provides for five (5) Voting Classes (as defined below) out of a total of six (6) different Classes of Claims and Interests:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Other Priority Claims | Unimpaired | No |
| 2A | BUS Customer Claims | Impaired | Yes |
| 2B | Malta OpCo Customer Claims | Impaired | Yes |
| 3 | GUC Claims | Impaired | Yes |

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 4 | Subordinated Claims | Impaired | Yes |
| 5 | Interests | Impaired | Yes |

19.     Under the Plan, Claims in Classes 2A, 2B, 3, 4, and 5 (the "Voting Classes") are Impaired by, and entitled to receive a Distribution under, the Plan as and to the extent provided for in the Plan, and only the Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan.

20.     Claims in Class 1 (the "Unimpaired Classes" or the "Non-Voting Classes") are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote on the Plan.

21.     In addition, pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates three (3) categories of Claims that are entitled to receive Distributions under the Plan, but are not classified for purposes of voting to accept or reject the Plan.  These unclassified categories Claims are (i) Administrative Claims (which include Professional Fee Claims), (ii) Priority Tax Claims, and (iii) DIP Loan Claims.

22.     Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including releases by the Debtors and their Estates of various parties.

**RELIEF REQUESTED**

23.     By this Motion, the Debtors request entry of the Disclosure Statement Order, (i) approving the Disclosure Statement as containing adequate information; (ii) approving procedures for solicitation and tabulation of votes to accept or reject the Plan, including (a) fixing the Record Date, (b) approving the Solicitation Packages and procedures for distribution, (c) approving the form of the Ballots and establishing procedures for voting, and (d) approving

procedures for vote tabulation; (iii) scheduling a confirmation hearing and establishing notice and objection procedures; (iv) shortening the notice period for (a) parties to object to confirmation of the Plan, and (b) the Confirmation Hearing; and (v) granting related relief.

24.    The following table sets forth the proposed dates and deadlines in connection with confirmation of the Plan and the relief requested in the Motion:

| Proposed Dates and Deadlines in Connection with Confirmation | |
|---|---|
| Disclosure Statement Hearing | September 13, 2023 at 10:00 a.m. (ET) |
| Record Date | September 1, 2023 (except as to governmental claims) |
| Solicitation Date | Four (4) business days after entry of the Disclosure Statement Order, expected to be September 18, 2023 |
| Deadline to File Claims Objections for Plan Voting Purposes | September 22, 2023 at 4:00 pm. (ET) |
| Deadline to File Bankruptcy Rule 3018 Motions for Plan Voting Purposes | September 29, 2023 at 4:00 pm. (ET) |
| Voting Deadline | October 16, 2023 at 4:00 pm. (ET) |
| Confirmation Objection Deadline | October 16, 2023 at 4:00 pm. (ET) |
| Deadline for Voting Agent to File Plan Voting Report | October 21, 2023 at 4:00 pm. (ET) |
| Deadline for Confirmation Memorandum/ Reply to Plan Objections | October 21, 2023 at 4:00 pm. (ET) |
| Confirmation Hearing | October 23, 2023 at 10:00 a.m. (ET) |

25.    The Debtors believe the Plan is in the best interests of their estates and stakeholders. Accordingly, the Debtors submit that the solicitation and confirmation schedule proposed in the Motion should be approved.

## THE DISCLOSURE STATEMENT

I. **Approval of the Disclosure Statement Is Warranted, As It Contains Adequate Information.**

26. Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan. In that regard, section 1125(a)(1) of the Bankruptcy Code provides:

> [A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). A disclosure statement should provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision on whether to vote to accept or reject a plan. *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."). Congress intended that such informed judgments would be needed both to negotiate the terms of and to vote on a plan of reorganization. *Id*. Thus, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

27. Courts will consider the particular facts and circumstances of each case in evaluating whether a disclosure statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code. *See, e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of [section] 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am.*

*Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95- 989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

28.     Courts have broad discretion in determining the adequacy of the information contained in a disclosure statement. *See*, *e.g.*, *In re Lower Bucks Hosp.*, 571 Fed. Appx. 139, 142 (3d Cir. 2014) (quoting *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988), for the proposition that "the determination under 11 U.S.C. § 1125(a) 'is subjective and made on a case by case basis [and] … is largely within the discretion of the bankruptcy court.'"); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same).  Because the information required to be disclosed in a disclosure statement varies according to the facts of each case, there is no mandatory list of requirements for adequacy.  *See In re Phoenix Petroleum*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

29.     Nonetheless, factors considered by a court evaluating the adequacy of a disclosure statement may include:  (a) the events leading to the filing of a bankruptcy petition; (b) a description of the available assets and their value; (c) the anticipated future of the company; (d) the source of information stated in the disclosure statement; (e) a disclaimer that typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (f) the present condition of the debtor while

11

in chapter 11; (g) claims asserted against the debtor; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (j) the future management of the debtor; (k) the chapter 11 plan or a summary thereof; (l) the estimated administrative expenses; (m) the collectability of any accounts receivable; (n) financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (o) information relevant to the risks posed to creditors under the plan; (p) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (q) litigation likely to arise in a non-bankruptcy context; (r) tax attributes of the debtor; and (s) the relationship of the debtor with its affiliates.  *See*, *e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988); *In re Oxford Homes*, 204 B.R. 264 (Bankr. D. Me. 1997) (using similar list).  A plan proponent need not include disclosure with respect to each of the above topics in every case.  *Phoenix Petroleum*, 278 B.R. at 393 (making use of similar list but cautioning that "no one list of categories will apply in every case").

30.     The Disclosure Statement contains adequate information to allow Holders of Claims and Interests in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories courts consider "adequate information", including, but not limited to, descriptions and summaries of, among other things:

     a.     the terms of the Plan;

     b.     events preceding the Chapter 11 Cases;

     c.     the Debtors' prepetition indebtedness;

     d.     significant events during the Chapter 11 Cases;

e.      estimates of the Claims asserted, or to be asserted, against the Debtors' Estates and the estimated value of the Distributions to be received by Holders of Allowed Claims;

f.      risk factors affecting the Plan;

g.      the feasibility of the Plan;

h.      tax consequences of the Plan;

i.      the provisions providing for the release of claims and causes of action by the Debtors and Holders of Claims; and

j.      the estimated recovery that Holders of Claims would receive if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code.

31.     Accordingly, the Debtors submit that the Disclosure Statement contains all or substantially all of the information typically considered by courts and respectfully request that the Court approve the Disclosure Statement as it meets the requirements of section 1125 of the Bankruptcy Code.

32.     The Disclosure Statement additionally provides sufficient notice of the injunction, exculpation and release provisions in the Plan.  Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

33.     Article VIII of the Plan describes the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  The injunction, exculpation, and release provisions of the Plan are in bold font making it conspicuous to anyone who reads the Plan, the Disclosure Statement, and the related documents.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined by the Plan.

II.     **Approval of the Disclosure Statement Hearing Notice Complies with the Requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.**

34.     Bankruptcy Rule 3017(a) requires that creditors and other parties in interest receive twenty-eight (28) days' notice of the hearing to consider a proposed disclosure statement, and additionally, Bankruptcy Rule 2002(b) requires that creditors and other parties in interest have twenty-eight (28) days' notice of the deadline to object to a proposed disclosure statement.  Fed. R. Bankr. P. 3017(a) and 2002(b).  However, Local Rule 3017-1(a) expands upon the notice period provided by the Bankruptcy Rules, and requires 35 days' notice of the hearing to consider a proposed disclosure statement.  Del. Bankr. L.R. 3017-1(a).

35.     Pursuant to Bankruptcy Rule 9006(c) and Local Rule 9006-1(e), the Court may enter an order shortening the notice period for parties in interest to object to the adequacy of the Disclosure Statement.  *See* Fed. R. Bankr. P. 9006(c)(1) (permitting a court to order the notice period reduced for cause); Del. Bankr. L.R. 9006-1(e) (permitting a court to issue an order shortening the notice period upon written motion).  Under the circumstances of the Chapter 11 Cases, it is appropriate to reduce the notice period for consideration of the Disclosure Statement in order to maximize and expedite creditor recoveries under the Plan through a timely and efficient confirmation process.  As reflected in the *Debtors' Motion for Entry of an Order, Pursuant to Bankruptcy Rule 9006(c) and Local Rule 9006-1(e), (I) Shortening the Notice Period for Hearing to Approve the Disclosure Statement; With Respect to Debtors' Motion for an Order (A) Approving the Disclosure Statement; (B) Approving Solicitation and Voting Procedures, Including (1) Fixing the Record Date, (2) Approving the Solicitation Packages and Procedures for Distribution, (3) Approving the Form of the Ballots and Establishing Procedures for Voting, and (4) Approving Procedures for Vote Tabulation; (C) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; (D) Shortening the Notice Period for the Hearing to Consider*

*Confirmation of the Plan; and (E) Granting Related Relief; and (II) Granting Related Relief* (the "Motion to Shorten"), filed contemporaneously herewith, the Debtors, after reaching a settlement with the SEC, are ready to confirm a straightforward Plan that would ensure a prompt 100% distribution to all allowed claims.  Through the Motion to Shorten, the Debtors have requested that the Court shorten notice of the hearing to approve the Disclosure Statement and the Solicitation Procedures such that they may be considered at a hearing on September 13, 2023 at 10:00 a.m. (ET).

36.    The Debtors have served, or caused to be served, (i) all known creditors, (ii) known Interest Holders, and (iii) parties requesting notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002, with the notice annexed as Exhibit B hereto (the "Disclosure Statement Hearing Notice").  Additionally, in accordance with Bankruptcy Rule 3017(a), the Debtors also served, or caused to be served, (i) the U.S. Trustee, (ii) counsel for the SEC, FinCEN, and OFAC, and (iii) any party who requested, in writing, a copy of the Plan and Disclosure Statement, with the Disclosure Statement Hearing Notice.  The Disclosure Statement Hearing Notice identifies: (i) the date, time, and place of the Disclosure Statement Hearing; (ii) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained; and (iii) the deadline and procedures for filing objections to the approval of the Disclosure Statement.

37.    The Debtors respectfully request that the Court approve the Disclosure Statement Hearing Notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as modified by any order of the Court granting the Motion to Shorten.

## SOLICITATION AND VOTING PROCEDURES

I.   **Approval of Solicitation and Voting Procedures**

    A.   **Fixing the Record Date**

38.     Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

39.     In accordance with these Bankruptcy Rules, the Debtors request that the Court set **September 1, 2023** as the record date (the "Record Date") for purposes of determining:

        a.     the Holders of Claims in the Voting Classes, who will receive Solicitation Packages and are entitled to vote to accept or reject the Plan;

        b.     the Holders of Claims and Interests in the Non-Voting Classes, who will receive a Notice of Non-Voting Status (defined herein), and are not entitled to vote to accept or reject the Plan;

        c.     the amount of each Holder's Claim for solicitation and voting purposes (except as otherwise provided in this Motion); and

        d.     whether Claims have been properly and timely assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e), such that the assignee (and not the original Claim Holder) can vote to accept or reject the Plan as the Holder of a Claim.

40.     The Record Date shall not apply to claims by governmental units.

41.     The Debtors request that with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and (if applicable) cast a Ballot on account of such Claim only if all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Record Date.  In the event a Claim is

transferred after the Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Record Date.

      **B.**      **Approving Solicitation Packages and Procedures for Distribution Thereof**

42.      Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

> (1)      the plan or a court-approved summary of the plan;

> (2)      the disclosure statement approved by the court;

> (3)      notice of the time within which acceptances and rejections of such plan may be filed; and

> (4)      any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with [Bankruptcy] Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan . . . .

Fed. R. Bankr. P. 3017(d).

43.      On or before four (4) business days after entry of the Disclosure Statement Order, (the "Solicitation Date"), the Debtors will mail, or cause to be mailed, the following materials (the "Solicitation Package") to those record Holders of Claims in the Voting Classes: (i) the Disclosure Statement, including the Plan and all other exhibits annexed to the Disclosure Statement; (ii  the Disclosure Statement Order (excluding exhibits); (iii) the Customer Ballot and/or GUC Ballots (as

applicable) and voting instructions (the "Voting Instructions"); (iv) a pre-addressed, postage pre-paid return envelope; and (v) the Confirmation Hearing Notice (as defined herein).

44.    Furthermore, consistent with sections 1126(f) and (g) of the Bankruptcy Code, the Debtors propose to distribute, or cause to be distributed, by first-class mail, to all Holders of Claims in the Non-Voting Classes a Non-Voting Package (defined herein).

45.    The Solicitation Package, excluding a Ballot, will also be mailed to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) various state taxing authorities; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002.

46.    The Debtors anticipate that some of the notices served in the Chapter 11 Cases, including, but not limited to, the Disclosure Statement Hearing Notice may be returned by the United States Postal Service as undeliverable without a forwarding address.  The Debtors believe that it would be costly and wasteful to distribute Solicitation Packages to the same addresses to which undeliverable Disclosure Statement Hearing Notices were distributed.  Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from distributing Solicitation Packages to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities prior to the Solicitation Date, and to provide the Solicitation Package to such entities by email.  The Debtors further propose that the Debtors be excused from attempting to find better addresses for entities as to whom a Solicitation Package was returned by the United States Postal Service as undeliverable without a forwarding address.

47.    Moreover, the Debtors request that the Court authorize (but not require) the Debtors to distribute, or cause to be distributed, the Disclosure Statement (together with all exhibits thereto, including the Plan), and the Disclosure Statement Order to the Voting Classes in flash drive format

and by email in lieu of paper format.  The Confirmation Hearing Notice, Ballots and return envelopes contained in the Solicitation Packages shall be provided in paper format.

48.     The Debtors submit that the Debtors have shown good cause for implementing the proposed notice and service procedures.

### C. Approving Form of Ballots and Establishing Procedures for Voting on the Plan

#### 1. Approving Form of Ballots and Notice of Non-Voting Status, and Distribution Thereof

*The Voting Classes*

49.     Pursuant to Bankruptcy Rule 3017(d), the Debtors propose to distribute to Holders of Claims and/or Interests in the Voting Classes ballots substantially in the form attached to the Disclosure Statement Order as Exhibit 3-A, Exhibit 3-B, Exhibit 3-C, Exhibit 3-D, and Exhibit 3-E (the "Ballots"), as applicable.  The form of the Ballots is based upon Official Form No. 14, but has been modified to address the particular aspects of the Chapter 11 Cases and to include certain additional information that the Debtors believe is relevant and appropriate.

*The Non-Voting Classes*

50.     Pursuant to section 1126(f) of the Bankruptcy Code, unimpaired creditors are conclusively presumed to have accepted the Plan and solicitation of acceptance with respect to such Classes is not required.  11 U.S.C. § 1126(f).  Furthermore, pursuant to section 1126(g) of the Bankruptcy Code, impaired creditors that will not receive or retain any property under the Plan are deemed to have rejected the Plan, are not entitled to vote on the Plan and, therefore, solicitation of acceptance with respect to such classes is not required.  11 U.S.C. § 1126(g).  Accordingly, the Debtors propose that they not be required to transmit a Solicitation Package to the Non-Voting Classes.

51.     Rather, the Debtors propose to distribute to the Non-Voting Classes, a package (the "Non-Voting Package"), which shall consist of (a) the Confirmation Hearing Notice and (b) a notice of non-voting status, substantially in the form annexed to the Disclosure Statement Order as Exhibit 4 (the "Notice of Non-Voting Status"), that will set forth, among other things:  (i) the Non-Voting Classes under the Plan; (ii) a summary of the proposed treatment for Non-Voting Classes under the Plan; (iii) the date and time of the Confirmation Hearing (as defined herein); and (iv) the deadline and procedures for filing objections to the Plan, and for parties in Non-Voting Classes to challenge the status of their Claims or Interests for voting purposes.  The Notice of Non-Voting Status will indicate that those in Non-Voting Classes may obtain a copy of the Plan and Disclosure Statement on the dedicated webpage maintained by Omni Agent Solutions (the "Voting Agent").

52.     Further, the Debtors propose to distribute a notice to Interest Holders, substantially in the form annexed to the Disclosure Statement Order as Exhibit 5 (the "Notice to Interest Holders of Confirmation Hearing"), that will set forth (a) the date that the Disclosure Statement was approved, (b) the date and time of the Confirmation Hearing (as defined herein), and (c) that under the Plan, Interest holders will only receive distributions in strict compliance with the absolute priority rule.  The Notice to Interest Holders of Confirmation Hearing will indicate that the Interest Holders may obtain a copy of the Plan and Disclosure Statement on the dedicated webpage maintained by the Voting Agent.

### 2.     Establishing Voting Deadline for Receipt of Ballots

53.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or equity interests may accept or reject a plan.  The Debtors propose that, in order to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting

Agent at the following address **or** submitted electronically, via the E-Ballot Portal (as defined below), so as to be received by the Voting Agent no later than **October 16, 2023 at 4:00 p.m. (ET)** (the "Voting Deadline"), unless extended by the Debtors:

**If by First-Class Mail:**
Bittrex, Inc.
Ballot Processing Center
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

**If by Hand Delivery or Overnight Mail:**
Bittrex, Inc.
Ballot Processing Center
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

54.     Ballots may be submitted via an electronic Ballot through the Voting Agent's on-line electronic Ballot submission portal at https://cases.omniagentsolutions.com/?clientId=3662 (the "E-Ballot Portal") by no later than the Voting Deadline.  Any failure to follow the voting instructions included with the Ballot may disqualify a Ballot and vote.  Ballots cast by facsimile, email or other electronic transmission, except through the E-Ballot Portal, will not be counted. Electronic voting through the E-Ballot Portal requires a unique E-Ballot ID# in order to retrieve and submit a customized electronic Ballot.  The Voting Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  An electronic Ballot must be completed and submitted for each E-Ballot ID# received, as applicable.

55.     Creditors who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

56.     The Debtors submit that such solicitation period is a sufficient period within which Holders of Claims in the Voting Class can make an informed decision to accept or reject the Plan.

D.    <u>**Approving Procedures for Vote Tabulation**</u>

57.    The Debtors propose that each Holder of a Claim in the Voting Classes shall be entitled to vote the amount of its Claim as of the Record Date.  Accordingly, solely for purposes of voting on the Plan, and not for the purpose of making Distributions on account of a Claim, and without prejudice to the rights of the Debtors or any other proper party in interest in any other context, including claims objections and adversary proceedings, with respect to all Holders of Claims in the Voting Classes against the Debtor, the Debtors propose that the temporarily allowed amount of a Claim used to tabulate acceptance or rejection of the Plan should be as follows:

    a.    If a Claim is deemed allowed under the Plan, an order of the Court or a stipulated agreement between the parties, such claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth therein.

    b.    The amount of the Claim listed in the Debtors' Schedules; provided that (i) such Claim is not scheduled as contingent, unliquidated, undetermined, disputed, or in the amount of $0.00, (ii) no Proof of Claim has been timely filed by the applicable Bar Date (or otherwise deemed timely filed under applicable law), (iii) such Claim has not been satisfied by the Debtors, or (iv) such Claim has not been resolved pursuant to a stipulation or order entered by the Court.

    c.    The undisputed, non-contingent, unpaid and liquidated amount specified in a Proof of Claim against the Debtors, timely filed with the Court or the Voting Agent by the applicable Bar Date (or otherwise deemed timely filed by the Court under applicable law) to the extent such Proof of Claim has not been amended or superseded by another Proof of Claim and is not the subject of an objection filed by September 22, 2023 (or, if such Claim has been resolved pursuant to a stipulation or order entered by the Court, the amount set forth in such stipulation or order).

    d.    Claims for which a Proof of Claim has been timely filed for unknown or undetermined amounts, or which is wholly unliquidated or contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Voting Agent), and to the extent such Claim has not been allowed, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00.

e.      If applicable, the amount temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018.  Any motion pursuant to Bankruptcy Rule 3018 seeking to temporarily allow a Claim for voting purposes must be filed and served in accordance with the Disclosure Statement Order.

f.      If the Debtors have served an objection or request for estimation as to a Claim by September 22, 2023, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;

g.      Proofs of Claim filed for $0.00 are not entitled to vote;

h.      Notwithstanding anything to the contrary contained herein, to the extent that a Holder holds duplicate Claims in the Voting Classes against the Debtors (by virtue of one or more timely filed proofs of claim, the Schedules, or a combination of both), such Holder shall be deemed to hold a single Claim in the Voting Classes against the Debtors.

i.      If a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim. Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules.

58.     The Debtors further request that the following voting procedures and standard assumptions be used in tabulating the Ballots:

a.      For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor against the Debtors in a particular Class will be aggregated as if such Creditor held a single Claim against the Debtors in the Voting Class, and the votes related to those Claims shall be treated as a single vote on the Plan; provided, however, that separate Claims held as of the Petition Date by different entities (even if related, affiliated or properly and timely assigned or transferred prior to the Record Date) shall not be deemed to be held by a single Creditor pursuant to this provision, and the votes with respect to any such Claims shall be treated as separate votes on the Plan.

b.      Creditors with multiple Claims within a Voting Class must vote all such Claims to either accept or reject the Plan, and may not split their vote(s) within the Voting Class.  Accordingly, an individual Ballot that partially

rejects and partially accepts the Plan on account of multiple Claims within the Voting Classes will not be counted.

c.  Each Creditor will be provided a single individual Ballot for all Claims held by such Creditor in the Voting Classes against the Debtors.

d.  If a Claim is transferred after the Record Date, only the Holder of such Claim as of the Record Date may execute and submit a Ballot to the Voting Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Record Date, and no "cause" will exist to permit any vote change under Bankruptcy Rule 3018(a).

e.  The delivery of a Ballot will be deemed made only when the Voting Agent actually receives the original, executed Ballot or a Ballot is electronically received via the E-Ballot Portal.

f.  Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot.  If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that Holder's intent and will supersede and revoke any Ballot previously received.

g.  If a Holder of a Claim casts multiple Ballots on account of the same Claim, which are received by the Voting Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

h.  Except as otherwise provided in subsection (f) hereof, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claims to which it relates and the aggregate principal amount represented by such Claims, (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claims and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Voting Agent prior to the Voting Deadline.  The Debtors expressly reserve the right to contest the validity of any such withdrawals of Ballots.

59.  The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

     a.      Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection, of the Plan;

     b.      Any Ballot received after the Voting Deadline, except by order of the Bankruptcy Court or if the Debtors have granted an extension of the Voting Deadline with respect to such Ballot;

     c.      Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

     d.      Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim Holder;

     e.      Any Ballot cast by an Entity that does not hold a Claim in the Voting Classes;

     f.      Any unsigned Ballot or Ballot without an original signature, *provided, however*, for the avoidance of doubt, a Ballot submitted via Epiq's E-Ballot Portal will be deemed to contain an original signature; and

     g.      Any Ballot submitted by fax, email or electronic transmission, other than via the E-Ballot Portal or via email with respect to a Master Ballot, unless approved by the Debtors in writing or otherwise ordered by the Court.

60.    The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, in consultation with the U.S. Trustee, be unlawful.  The Debtors further reserve the right, in consultation with the U.S. Trustee, to allow for the cure of any defects or irregularities or conditions of delivery as to any particular Ballot.  The interpretation of all balloting rules and procedures (including the Ballot and the respective instructions thereto) by the Voting Agent and the Debtors, unless otherwise directed by the Court, will be final and binding on all parties.  Any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such

Ballots will not be deemed to have been made until such irregularities have been cured. Ballots previously furnished (and as to which any irregularities have not theretofore been cured) will be invalidated.

61.    **Releases**. Under the Plan, each Holder of Claims in Classes 2A, 2B, 3, and 4 may opt out of the releases set forth in Article VIII.B of the Plan by checking the appropriate box on its Ballot and submitting its Ballot to the Voting Agent on or before the Voting Deadline or filing an objection to the releases prior to the Confirmation Objection Deadline. Under the Plan, the following parties will be deemed to have irrevocably and unequivocally consented to the releases set forth in Article VIII.B of the Plan and to be a Releasing Party under the Plan: (a) all Holders of Claims in Unimpaired Classes of Claims that have not Filed an objection to the release in Article VIII.B of the Plan prior to the deadline to object to Confirmation of the Plan; and (b) all Holders of Claims in Impaired Classes of Claims that (i) vote to accept or reject the Plan and do not timely submit a Release Opt-Out indicating such Holder's decision to not participate in the releases set forth in Article VIII.B of the Plan, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a Release Opt-Out indicating such Holder's decision to not participate in the releases set forth in Article VIII.B of the Plan, or do not File an objection to the releases in Article VIII.B of the Plan prior to the Confirmation Objection Deadline.

62.    Each Holder of an Unimpaired Claim that does not object to confirmation of the Plan and the releases set forth in Article VIII.B of the Plan will be deemed to have consented to and granted such releases.

63.    The Debtors request that the Court establish **October 20, 2023 at 4:00 p.m. (ET)** as the deadline for the Voting Agent to file a voting report (the "Voting Report"), verifying the results of its voting tabulations reflecting the votes cast to accept or reject the Plan. The Voting

Report will, among other things, describe every Ballot received by the Voting Agent that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

64.     If any party seeks to challenge the allowance of its Claim for voting purposes in accordance with the above procedures, the Debtors request that the Court direct such party to serve on the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan on or before **4:00 p.m. (ET) on September 29, 2023.**

65.     The Debtors submit that the proposed tabulation rules and other related vote tabulation procedures set forth above will establish a fair and equitable voting process and, therefore, should be approved.

## II.     Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof

### A.     Setting the Confirmation Hearing

66.     Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

67.     In accordance with Bankruptcy Rule 3017(c) and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that the hearing on confirmation of the Plan be scheduled for **October     , 2023 at 10:00 a.m. (ET)** (the "Confirmation Hearing").  The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than an announcement in open court of any adjournments or through the filing of hearing agendas.  The proposed timing for the Confirmation Hearing is in compliance with the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

        **B.**      **<u>Establishing Procedures for Notice of the Confirmation Hearing</u>**

68.      Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan.  The proposed deadlines set forth herein comply with Bankruptcy Rules 2002(b) and (d).

69.      In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to the members of the Voting and Non-Voting Classes a copy of a notice with the hearing with respect to confirmation of the Plan (the "<u>Confirmation Hearing Notice</u>"), substantially in the form annexed to the Disclosure Statement Order as <u>Exhibit 2</u>, setting forth, among other things, (i) the date of approval of the Disclosure Statement; (ii) the Record Date; (iii) the Voting Deadline; (iv) the time fixed for filing objections to confirmation of the Plan (collectively, the "<u>Plan Objections</u>"); and (v) the time, date, and place for the Confirmation Hearing.  The Debtors will serve or cause to be served the Confirmation Hearing Notice on, (i) all known creditors, (ii) known Interest Holders, (iii) the U.S. Trustee, and (iv) parties requesting notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

70.      Additionally, the Debtors will serve or cause to be served a Notice to Interest Holders of Confirmation Hearing on all Interest Holders, substantially in the form annexed to the Disclosure Statement Order as <u>Exhibit 5</u>, setting forth, (i) the date of the approval of the Disclosure Statement; (ii) that the Equity Holders will be deemed to have released the Released Parties as provided for in Article VIII.B of the Plan, (iii) the time fixed for filing Plan Objections; and (iv) the time, date, and place for the Confirmation Hearing.

71.     The Debtors believe that service of the Confirmation Hearing Notice and the Notice

to Interest Holders of Confirmation Hearing as described above will provide sufficient notice of

the Confirmation Hearing, and of the form and manner of, and deadline for, objections to

confirmation of the Plan.  Parties in interest, Creditors, and Interest holders will receive adequate

notice of the Confirmation Objection Deadline (as defined below) and adequate notice of the

Confirmation Hearing as the Court determines is sufficient pursuant to Bankruptcy Rule 9006(c)

and Local Rule 9006-1(e).

72.     The Debtors submit that the foregoing procedures will provide adequate notice of

the Confirmation Hearing and the Confirmation Objection Deadline (as defined below), and,

accordingly, requests that the Court approve such notice as adequate.

**C.     Establishing Procedures for the Filing of Objections to Confirmation of the Plan**

73.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must

be filed and served "within a time fixed by the court."  To permit the Debtors adequate time to

respond to objections prior to the Confirmation Hearing, the Debtors request that **October 16,**

**2023 at 4:00 p.m. (ET)** be fixed by the Court as the last date for filing and serving written

objections to confirmation of the Plan (including any supporting memoranda) (the "Confirmation

Objection Deadline").  The Debtors request that the Court direct that objections to confirmation of

the Plan, if any, (i) be made in writing; (ii) state the name and address of the objecting party and

the nature of the Claim or Interest of such party; (iii) state with particularity the legal and factual

basis and nature of any objection to the Plan; and (iv) be filed with the Court, together with proof

of service, and served so that they are received on or before the Confirmation Objection Deadline

by the following parties (the "Notice Parties"):

a.     Counsel for the Debtors: Quinn Emanuel Urquhart & Sullivan LLP, 51
        Madison Avenue, 22nd Floor, New York, New York 10010 (Attn: Patricia

B. Tomasco (pattytomasco@quinnemanuel.com) and Razmig Izakelian (razmigizakelian@quinnemanuel.com) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Kenneth Enos (kenos@ycst.com)); and

b.      The U.S. Trustee: The Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Richard L. Schepacarter, Esq. (richard.schepacarter@usdoj.gov)).

74.      If Plan Objections are filed, providing sufficient time for the Debtors and other parties in interest in the Chapter 11 Cases to respond in support of the Plan (or, if possible, resolve the Plan Objections) will assist the Court and may expedite the Confirmation Hearing. Accordingly, the Debtors propose that the Debtors, or any other party supporting confirmation of the Plan, be afforded an opportunity to file responses to any Plan Objection (or any other pleading in support of confirmation of the Plan) on or before **October 20, 2023 at 4:00 p.m. (ET)**.

## NOTICE

75.      The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the Securities and Exchange Commission, FinCEN, and the Office of Foreign Assets Control; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE the Debtors respectfully requests entry of the Disclosure Statement Order granting the relief requested herein and such other and further relief as is just.

Date: August 25, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Kenneth J. Enos
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Valerie Ramos *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**