**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hrg. Date:  September 13, 2023 at 10:00 a.m.  (ET)<br>Obj. Deadline:  September 6, 2023 at 4:00 p.m. (ET) |

**MOTION SEEKING INTERIM EXTENSION AND FINAL WAIVER OF DEADLINE TO COME INTO COMPLIANCE WITH BANKRUPTCY CODE SECTION 345(B)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion ("Motion").

## INTRODUCTION

1. Since the Court entered its previous order extending the deadline by which the Debtors were required to comply with section 345(b), they have continued to work aggressively with Citizens Bank.[2] to move all Debtor funds to Citizens Bank accounts. The Debtors are pleased to report that their efforts have brought them almost fully compliant. The Debtors anticipate that by September 13, 2023, which is their current deadline to come into compliance with section 345(b) (the "Current Deadline"), the only funds remaining in their Customers Bank accounts will be under the FDIC limit. Out of an abundance of caution, the Debtors file this Motion to address two concerns.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] All terms not otherwise defined herein shall be given the meanings ascribed to them in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 8].

2. *First*, the Debtors' journey to comply with section 345(b) has neither been smooth nor predictable. Accordingly, they seek a further interim extension with respect to their Customers Bank accounts to provide a bit of cushion to the extent that their current expectations of being 345(b) compliant by the Current Deadline are not met.

3. *Second*, on August 16, 2023, Prime Trust LLC and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. *See In re Prime Core Technologies Inc., et al.*, Case No. 23-11161 (JKS). As the Court may recall, Prime Trust was one of the Debtors' cash management banks, holding approximately $1.8 million in Debtor funds in two Prime Trust accounts as of the Petition Date (the "Prime Trust Accounts"). Before Prime Trust filed for chapter 11, the Debtors had been communicating with counsel to Prime Trust's receiver and were hopeful that their funds would be returned. However, now that Prime Trust has filed for chapter 11, the situation has become much more complicated, and the Debtors are evaluating their options regarding how to proceed in the Prime Trust bankruptcy cases. Accordingly, a prompt return of the Debtors' funds held in the Prime Trust Account seems unlikely. Thus, the Debtors seek a permanent waiver of the requirement that they come into 345 compliance with respect to the Prime Trust Accounts.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.  The bases for the relief requested herein are sections 105(a) and 345(b) of title 11 of the United States Code ("Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014, and Local Rule 9013-1.

## BACKGROUND

### I. The Debtors' Cash Management System and the Court's Orders

7.  In the ordinary course of business, the Debtors maintained a cash and cryptocurrency management system (the "Cash Management System") comparable to the systems used by similarly situated companies to manage the cash and digital assets on their platform in a cost-effective and efficient manner. As of the Petition Date, the Cash Management System was comprised of seven active bank accounts (collectively, the "Bank Accounts"),[3] as set out in the chart below:

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|---|---|---|---|---|
| 1 | Bittrex, Inc. | Customers Bank | 3217 | Operating Account |
| 2 | Bittrex, Inc. | Customers Bank | 0675 | OTC Account |
| 3 | Bittrex, Inc. | Customers Bank | 2017 | FBO Account |
| 4 | Bittrex, Inc. | United Texas Bank | 2423 | Dormant Account |
| 5 | Bittrex, Inc. | Prime Trust Bank | 4450 | FBO Account |

---

[3] A complete description of each of these accounts is set forth in paragraphs 13-17 of the *Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* [D.I. 8] (the "Cash Management Motion"). All terms not defined herein have the meaning given to them in the Cash Management Motion.

30705483.3

| 6 | Bittrex, Inc. | Prime Trust Bank | 1241 | Reserve Account |
|---|---|---|---|---|
| 7 | Bittrex, Inc. | Goldman Sachs | 2601 | Dormant Account |

8. As of the Petition Date, the Debtors had approximately $10,903,808.48 in the FBO Accounts, approximately $540,334.61 in the Bittrex Operating and OTC Accounts, and approximately $1,000,000 in the Prime Trust Account.

9. On May 10, 2023, the Court entered the *Interim Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* (the "Interim DIP Order") [D.I. 41] authorizing the Debtors to borrow up to 250 BTC on an interim basis. On June 7, 2023, the Court entered the *Final Order: (A) Authorizing the Debtors to Incur Post-Petition Debt, (B) Granting Super-Priority Administrative Expense Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* (the "Interim DIP Order") [D.I. 101] authorizing the Debtors to borrow up to 700 BTC on a final basis. On June 13, 2023, the Court entered the *Order Authorizing the Debtors to Honor Withdrawal of Cryptocurrency Assets by Customers* (the "Withdrawal Order") [D.I. 128], authorizing the Debtors to honor withdrawals of cryptocurrency assets and fiat currency by customers holding undisputed, noncontingent, and liquidated claims.

10. Following entry of the Interim and Final DIP Orders and the Withdrawal Order, and the transactions contemplated thereunder, as of the date of the filing of this motion, the Debtors have approximately $11,396,329.53 in the Customers Operating Account, $2,217.70 in the Customers OTC Account, $7,943,351.74 in the Customers FBO Account, $833,550.66 in the

Prime Trust FBO Account, $1,000,000 in the Prime Trust ACH Reserve Account, and $0.12 in the Goldman Sachs Dormant Account.[4]

## II. The Cash Management Orders and the Debtors' Efforts to Collateralize Their Accounts

11. As outlined in the Cash Management Motion, the Cash Management Banks are not designated as authorized depositories in the District of Delaware by the Office of the United States Trustee (the "U.S. Trustee"), pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

12. Before filing their bankruptcy petitions, the Debtors attempted to enter into banking relationships with authorized depositories. However, many of them were unwilling to provide services to cryptocurrency companies.[5]  Accordingly, in the Cash Management Motion, the Debtors sought a waiver of the deposit and investment requirements set forth in section 345 of the Bankruptcy Code.  Cash Management Motion ¶ 51.  However, recognizing the concerns addressed by Section 345, the Debtors represented to the Court that they would continue to reach out to authorized depositories, and requested that the Court provide them with 30 days without prejudice to seeking an additional extension to either (a) bring the Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) to seek appropriate relief from the Court.

13. On May 10, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II)*

---

[4] BUS deposited the funds that were in the United Texas Bank Dormant Account into the Customers Operating Account.

[5] *See See* Rachel Louise Ensign, *Banks Are Breaking Up With Crypto During Regulatory Crackdown*, Wall St. J. (Feb. 16, 2023), https://on.wsj.com/3G8hCEG; Katie Haun, *How U.S. Regulators Are Choking Crypto*, Wall St. J. (Mar. 27, 2023), https://on.wsj.com/40KMTp8.

*Granting Superpriority Administrative Expenses Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* (the "First Interim Order") [D.I. 39], which, in relevant part, provided the Debtors "thirty (30) days, without prejudice to seeking an additional extension, from the entry of this Interim Order to either come into compliance with section 345(b) of the Bankruptcy Code or to seek appropriate relief from the Court" (the "First 345(b) Compliance Deadline").

14. From May 10, 2023 to June 9, 2023 (i.e., the period between entry of the First Interim Order and the First 345(b) Compliance Deadline), the Debtors worked diligently to come into compliance with Section 345(b). The Debtors presented both Customers Bank and Prime Trust with a Uniform Depository Agreement ("UDA"), but as of the First 345(b) Compliance Deadline, neither had signed the UDA, although discussions were ongoing. In parallel, the Debtors searched to find new banking partners that were authorized depositories. This search was made difficult by reluctance from many institutions to associate with the cryptocurrency industry or specifically with Bittrex due to their ongoing issues with the SEC. Nevertheless, the Debtors entered into active discussions for new account openings with two authorized depositories – Citizens Bank and Webster Bank. The Debtors also approached Mercury and Maplemark Bank, who are not authorized depositories but who the Debtors were hopeful would work with cryptocurrency companies, requesting they achieve 345(b) compliance as part of their onboarding process.

15. The Debtors conveyed these efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the First 345(b) Compliance Deadline. The U.S. Trustee agreed not to oppose a further extension of the Debtors' deadline to come into compliance with section 345(b) of the Bankruptcy Code to June 30, 2023 (the "Second

345(b) Compliance Deadline"). On June 7, 2023, the Court entered its *Second Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 108].

16. The Debtors continued their efforts to become Section 345(b) compliant. They worked with and were able to open an operating account at Citizens Bank (the "Citizens Bank Operating Account"). They were also working towards opening an FBO account at Citizens Bank.

17. The Debtors conveyed these efforts to the U.S. Trustee and explained that despite their best efforts, they would not be Section 345(b)-complaint by the Second 345(b) Compliance Deadline. The U.S. Trustee agreed not to oppose a further extension of the Debtors deadline to either come into compliance with section 345(b) of the Bankruptcy Code or to seek a further extension or waiver to July 12, 2023 to coincide with an omnibus hearing date in the above-captioned cases. On June 30, 2023, the Court entered its *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Post-Petition Intercompany Balances, and (III) Granting Related Relief* [D.I. 160].

18. On July 6, 2023, the Debtors filed the *Supplement to Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Continue to Operate their Cash Management System, (b) Honor Certain Pre-Petition Obligations Related Thereto, and (c) Continue to Perform Intercompany Transactions, (ii) Granting Superpriority Administrative*

*Expense Status to Post-Petition Intercompany Balances, and (iii) Granting Related Relief* [D.I. 181], requesting that the Court extend the Third 345(b) Compliance Deadline to August 16, 2023. On July 12, 2023, the Court entered the *Further Interim Order Extending the Debtors' Deadline to Comply with Section 345(b) of the Bankruptcy Code* [D.I. 206], extending the deadline to either come into compliance with section 345(b) of the Bankruptcy Code or to seek a further extension or waiver to August 16, 2023.

19. On August 2, 2023, the Debtors filed the *Motion Seeking Interim Extension of Deadline to Come Into Compliance with Bankruptcy Code Section 345(b)* [D.I. 240] (the "345 Extension Motion"). As noted above, the Debtors filed the 345 Extension Motion with the expectation that they would be in compliance regarding all accounts, other than the Prime Trust Account, by the Current Deadline. On August 14, 2023, the Court entered the *Order Granting Motion Seeking Interim Extension of Deadline to Come Into Compliance With Bankruptcy Code Section 345(b)* [D.I. 268] (the "Fifth Interim Order").

### III. The Debtors' Further Efforts to Collateralize Their Accounts and Remaining Steps Needed to Become Fully Compliant with Section 345(b)

20. Since entry of the Fifth Interim Order, the Debtors have successfully "linked" the FBO Account at Citizens Bank ("Citizens FBO Account") to their platform, and they are in the process of moving substantially all of the funds in the Customers Operating and OTC Accounts to their Citizens' accounts. However, as noted in the 345 Extension Motion, that process requires several weeks to complete. Regarding the Citizens Operating Account, the Debtors are still in the process of setting up payments out of the Citizens Operating Account. The Debtors expect that all necessary arrangements will have been made to process these payments as of the Current Deadline. However, the Debtors request a further interim extension for this account out of an abundance of caution. With respect to the Customers FBO Account, the Debtors are continuing to take the

necessary actions to ensure that all appropriate safeguards are in place before transferring funds into the Citizens FBO Account. At which point, they intend to move all but $100,000 of the funds in the Customers FBO Account to Citizens Bank. The Debtors expect all necessary safeguards to be in place, and all but $100,000 in funds moved as of the Current Deadline. However, the Debtors likewise request a further interim extension for this account out of an abundance of caution.

21. With respect to the Prime Trust Accounts, the funds therein are now subject to the Prime Trust chapter 11 proceedings. Accordingly, the Debtors need time to evaluate their options in light of the automatic stay. In any event, it will likely take some time before the Debtors are able to retake possession of these funds. Accordingly, the Debtors submit that a final extension of their deadline to comply with section 345 as to the Prime Trust Accounts is warranted.

## BASIS FOR RELIEF

### I. The Court Has Authority To Extend Its Deadline To Comply With Or Seek Relief From Section 345(b)

22. Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise." Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close pre-petition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more approved depositories.

9

23.     Section 345(b), however, allows courts to order otherwise "for cause." In evaluating whether "cause" exists, courts have considered a number of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business operations; (iii) the amount of the investments involved; (iv) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the debtor; (x) the harm, if any, to the estate; and (xi) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

24.     Section 345(b)'s plain language that the court may order "otherwise" for "cause," section 105(a)'s permission for the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and Bankruptcy Rule 9006(b)'s mandate that the Court may in its discretion enlarge the time for performing acts provide the Court ample authority to extend the deadline to comply with section 345(b) or to seek relief from section 345(b). It would make little sense for the Court to have authority to excuse compliance with section 345(b), but then to not have authority to extend its own deadline to come into compliance with section 345(b) or to seek relief.

**II.    Cause Exists To Extend The Deadline To Comply With Or Seek Relief From Section 345(b)**

25.     Since filing their bankruptcy petitions, the Debtors have diligently worked to come into compliance with section 345(b). As outlined in detail above, and despite the general reluctance of banks to work with cryptocurrency businesses, and specifically with Bittrex due to

ongoing issues with the SEC, the Debtors were able to successfully open operating and FBO accounts with Citizens Bank, and are in the process of transferring substantially all of their funds to those accounts, subject to the issues outlined above. Specifically, the Debtors believe that all remaining obstacles will be overcome, and substantially all funds moved, as of the Current Deadline. The Debtors seek an extension with respect to the Customers Bank accounts only out of an abundance of caution.

26. With respect to the Prime Trust Accounts, as highlighted in the Debtors' previous pleadings related to the 345 compliance, the Debtors had been engaged in negotiations regarding the funds in the Prime Trust Accounts since the Petition Date - first with Prime Trust and then the receiver appointed over Prime Trust. *See*, e.g., D.I. 240. Based upon those negotiations, the Debtors were hopeful that the funds in the Prime Trust Accounts would be able to be withdrawn and transferred to another Debtor bank account without court intervention. Unfortunately, now that Prime Trust has filed for bankruptcy, the Debtors must proceed in the Prime Trust chapter 11 cases to regain access to their funds – a process that will likely take several months.

27. Accordingly, the Debtors request that the Court: (i) extend the deadline to achieve section 345(b) compliance to October 15, 2023, without prejudice to seeking a further extension or permanent relief to the extent necessary with respect to their accounts at Customers Bank, and (ii) grant a final waiver of the Debtors deadline to achieve section 345(b) compliance with respect to the Prime Trust Accounts.

## NOTICE

28. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c)

counsel to the lender under the Debtors' post-petition financing facility; (d) counsel to Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to Debtors' non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the Securities and Exchange Commission, FinCEN, and the Office of Foreign Assets Control; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as is just and proper.

Date: August 30, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Kenneth J. Enos
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Valerie Ramos *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**