**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO (I) DISCLOSURE STATEMENT, AND (II) DISCLOSURE STATEMENT MOTION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully submit this omnibus reply (the "Reply") to the (i) *Reservation of Rights of the U.S. Securities And Exchange Commission to the Debtors' Motion for Entry of an Order Approving the Disclosure Statement and Related Relief* filed by the United States Securities and Exchange Commission (the "SEC") [D.I. 364] (the "SEC Reservation of Rights"); and (ii) *Objection of the United States of America to the Debtors' Disclosure Statement* filed by the United States Department of Justice (the "DOJ") [D.I. 367] (the "DOJ Objection," and, together with the SEC Reservation of Rights, the "Objections"). A summary of the Objections and other informal comments along with the Debtors' responses thereto is attached hereto as **Exhibit A** (the "Objection Chart").

### I. PRELIMINARY STATEMENT

1. A disclosure statement provides holders of claims and interests entitled to vote on a chapter 11 plan sufficient information to make an informed decision regarding whether to vote to accept or to reject that plan. The relevant inquiry is whether the disclosure statement contains

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

"adequate information" within the meaning of section 1125(a) of the Bankruptcy Code. Although adequacy includes considerations of accuracy and fairness, adequacy does not include specialized, substantive issues that individual stakeholders may have with the plan. Here, the Disclosure Statement contains comprehensive information regarding the Debtors, their prepetition businesses, postpetition proceedings, the solicitation process, Plan treatment, risk factors related to the business, liquidation, and confirmation process, securities law matters, and tax implications, among other topics. More importantly, the Plan envisions a top-down distribution scheme with the residual stakeholders—subordinated claims and equity—taking the risk that assets are lower than projected and that claims are higher than projected. But, at the end of the day, the Debtors propose a plan of liquidation that follows well-trod distribution priorities except that Debtors propose to pay customers ahead of all other creditors. The Department of Justice and the Securities and Exchange Commission filed the only formal disclosure statement objections questioning the adequacy of the Disclosure Statement and the Plan.

2. The Disclosure Statement now also includes additional information requested by the United States Trustee, language requested by Endurance Assurance Corporation and Endurance American Insurance Company (collectively, "Endurance"), and changes requested by the SEC (which the Debtors believe should fully resolve the SEC Reservation of Rights), as well as changes requested by the DOJ (which the Debtors believe should fully resolve the DOJ Objection), as summarized in Exhibit A. The Debtors believe that the revised Disclosure Statement filed with *Notice of Filing Redlines of (I) Amended Chapter 11 Plan of Liquidation, (II) Disclosure Statement for the Amended Chapter 11 Plan of Liquidation, and (III) Disclosure Statement Order* [D.I. 374] (the "Revised Disclosure Statement") readily satisfies the applicable legal standard for approval and provides "adequate information."

3. The SEC did not object to the Disclosure Statement. It merely preserved its rights to supplement its Reservation of Rights, or to assert additional objections at the hearing on the Disclosure Statement Motion, if the modifications requested by the SEC were not made. The Debtors previously entered into a settlement with the SEC, which was approved by this Court. [D.I. 325] (the "SEC Settlement"). Many of the changes requested by the SEC related to the SEC Settlement. Because the Debtors implemented the changes requested by the SEC in the Revised Disclosure Statement, they believe that the SEC Reservation of Rights has been resolved.

4. Although framed as disclosure issues, some of the issues raised by the DOJ are confirmation issues and not ripe for the Court to consider at this stage. As discussed below, these DOJ concerns are inapposite and do not render the Amended Plan unconfirmable.

5. The Amended Plan—in addition to being textbook confirmable—provides for full payment of creditor claims and distribution in kind of assets related to customer accounts. The economic reality of these Chapter 11 Cases is very different from the typical crypto bankruptcy, where customers are left with minimal or no distributions. Additionally, the Debtors presented a Plan of Liquidation, not of reorganization. Confirmation objections based on speculative lack of feasibility fail in light of statutory language. *See* 11 U.S.C. 1129(a)(11).

6. Ultimately, the DOJ raises only a few discreet disclosure matters, and while the Debtors believe that much of this information is not relevant to unsecured creditors' voting decisions in this case, the Debtors have provided robust supplemental disclosure in the Revised Disclosure Statement.

II. **REPLY TO DISCLOSURE-RELATED OBJECTIONS OF DOJ**

7. Although the Debtors respectfully submit that the Disclosure Statement already contained more than adequate information, the Debtors have nonetheless revised both the Amended

Plan and the Disclosure Statement, both on their own initiative and in response to the Objections. The Debtors believe that, with the supplements and revisions they have made, the Revised Disclosure Statement readily satisfies the applicable legal standard for approval and provides "adequate information."

8. Section 1125 of the Bankruptcy Code requires that the Revised Disclosure Statement enable a "hypothetical investor typical of the holders of claims or interest in the case" to cast an informed vote on the Amended Plan. 11 U.S.C. § 1125(a)(1). The Court need not consider specialized issues that a particular creditor may wish to raise with respect to a plan of reorganization, nor does this determination require a debtor to explain why its plan of reorganization is superior to other, hypothetical plans. *See* 11 U.S.C. § 1125(a)(1) ("[A]dequate information need not include such information about any other possible or proposed plan . . . ."). The Revised Disclosure Statement readily meets this standard.

9. As noted herein, the DOJ's disclosure-related objections fall into three general categories. First, the DOJ requests inclusion of information regarding the Debtors' obligations under OFAC regulations. DOJ Objection ¶¶ 17-20. Second, the DOJ requests inclusion of information regarding states' unclaimed property claims. DOJ Objection ¶¶ 21-25. And third, the DOJ requests inclusion of information regarding subordination of GUC claims. DOJ Objection ¶¶ 26-29.

*1. Debtors' Obligations Under Federal Law*

10. In its Objection, the DOJ complains that the "Disclosure Statement fails to describe the Debtors' obligations to submit a license application with OFAC." DOJ Objection at 7. But the DOJ was well aware at the time of submitting its Objection that the Debtors sought guidance both from OFAC and the DOJ regarding the resolution of claims of customers residing in OFAC-

sanctioned countries. Nevertheless, the Debtors agreed to provide disclosures about these unsettled issues. But the DOJ decided to still file its surprise Objection without reaching out to the Debtors about any additional concerns it may have had. The Debtors have included the requested disclosures in the Revised Disclosure Statement to the extent of the information available to the Debtors.

### 2. Unclaimed Property Risks

11. The DOJ posits that the unclaimed property claims may pose risk to distributions under the Plan to General Unsecured Creditors. But the DOJ received unredacted copies of the proofs of claims filed by ten states in advance of the Governmental Bar Date of November 4, 2023, as it admits in footnote 4 of its Objection (DOJ Objection at 9), and is thus aware of the insignificant scale of these claims compared to other creditor claims. The DOJ further appears to complain about the way the states filled out their proofs of claims, but that is not something the Debtors can remedy. Nevertheless, the Debtors agreed to further elaborate on the issue of unclaimed property in its Disclosure Statement, and indeed did so in Revised Disclosure Statement. No other creditor raised these concerns.

### 3. Claim Subordination

12. The DOJ requested that the Debtors clarify the issue of claim subordination, which the Debtors agreed to do and indeed did in the Revised Disclosure Statement. *See* Exhibit A. This objection, in particular, emanates from the DOJ's grousing about paying individual customers ahead of government penalties. On this hill, the Debtors stand firm. The Debtors will pay customers ahead of government penalties.

### Conclusions

13. The DOJ filed its Objection following extensive exchanges with the Debtors,

pursuant to which the Debtors already disclosed and agreed to include in the Disclosure Statement additional information requested by the DOJ. Nevertheless, the DOJ decided to file a surprise objection, demanding that the Debtors include in the Disclosure Statement information that the Debtors already agreed to include and indeed included in next-day filing that contained the Revised Disclosure Statement. *See* Exhibit A.

14. As illustrated in the Revised Disclosure Statement, the Debtors have already provided supplemental disclosure to address issues raised by the DOJ. The balance of the DOJ Objection (including one relating to Plan feasibility) is either moot or is a Plan objection that should be addressed in connection with confirmation. The Debtors therefore believe that the DOJ Objection has been resolved.

15. For these reasons, the Debtors believe that the Revised Disclosure Statement contains adequate information for purposes of section 1125 of the Bankruptcy Code and should therefore be approved. To the extent any aspect of the Objections remain unresolved as to adequacy of disclosure, the Debtors respectfully submit that they should be overruled. Accordingly, the Debtors request that the Court approve the Disclosure Statement Motion.

### III.   REPLY TO OBJECTIONS TO CONFIRMATION

16. One other issue raised by the DOJ Objection relates to confirmability of the Amended Plan and need not be decided by the Court at this time. It is well established that, unless a disclosure statement "describes a plan of reorganization which is so fatally flawed that confirmation is ***impossible***," the court should approve a disclosure statement that otherwise adequately describes the chapter 11 plan at issue. *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (emphasis added); *see also In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987), *aff'd*, 80 B.R. 448 (N.D. Ill. 1987) (courts should disapprove the adequacy of a

disclosure statement on confirmability grounds "where it is *readily apparent* that the plan accompanying the disclosure statement could *never* legally be confirmed") (emphasis added). "A plan is patently unconfirmable where (1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012) (internal quotations and citation omitted) (alteration in the original). That is not the case here.

17.     The Debtors agree that the Amended Plan must comply with the confirmation requirements set forth in section 1129 of the Bankruptcy Code, and are prepared to demonstrate as much at the appropriate time—the confirmation hearing. Indeed, courts emphasize that objections related to compliance with section 1129 of the Bankruptcy Code do not rise to the level of making a plan "patently unconfirmable." *See, e.g., Cardinal Congregate I*, 121 B.R. at 763-64 (overruling objections to classification and treatment of claims, protection of security interests, and feasibility); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (holding that objections bearing on confirmability must be limited to defects that could not be overcome by creditor voting results and must also concern matters upon which all material facts are not in dispute or have been fully developed). Thus, issues bearing on feasibility and the requirements of section 1129 noted by the DOJ are not properly raised at this stage.

18.     Indeed, courts routinely approve disclosure statements despite the existence of disputed issues related to confirmation, which may require an eventual evidentiary hearing. *See, e.g., In Quigley Co., Inc.*, 377 B.R. 110, 112 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that settlements with the debtors' non-debtor former parent "implicate several confirmation issues" regarding the rights and incentives of certain claimants

under the proposed plan); *In re Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (approving the disclosure statement and finding that the "proposed classification scheme does not render the Plan patently unconfirmable as a matter of law"). Indeed, courts caution that "care must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing[.]" *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); *see also In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 n.10 (Bankr. E.D. Pa. 1987) (stating that deciding confirmation issues before solicitation may have a disenfranchising effect because the disclosure statement itself is not mailed to all creditors until after court approval is obtained).

19. All parties in interest will have the opportunity to prosecute any confirmation objections at the appropriate time, if they so choose, and the Debtors are in no way looking to limit their ability to do so. Although the Debtors submit that the following confirmation objection is premature, the Debtors briefly address it below.[2]

### *Feasibility under Section 1129(a)(11)*

20. In the background section of its Objection the DOJ raises the specter of plan feasibility. DOJ Objection ¶ 10. Feasibility is highly fact-driven, and the Debtors will be prepared to demonstrate that the Amended Plan is feasible at confirmation.

21. For a plan to satisfy the feasibility standard under section 1129(a)(11), the evidence presented must show that the proposed plan offers a "reasonable assurance of success." *See In re Indianapolis Downs*, 486 B.R. 286, 298 (Bankr. D. Del. 2013). "This is a low threshold." *In re Emerge Energy Servs.*, Case No. 19-11563 (KBO), 2019 WL 7634308 at *15 (Bankr. D. Del. Dec. 5, 2019). A court may find that a plan is feasible if "the information in the [d]isclosure [s]tatement,

---

[2] The Debtors reserve the right to respond to any and all objections asserted in the Disclosure Statement Objections in connection with confirmation of the Plan and otherwise.

the [s]upporting [d]eclaration, and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not be controverted by other evidence, and (iii) establishes that the…[p]lan is feasible and that there is a reasonable prospect of the [r]eorganized [d]ebtors" being able to meet their financial obligations. *In re Elec. Components Int'l*, Case No. 10-11054, 2010 WL 3350305, at *9 (Bankr. D. Del. May 11, 2010) (emphasis added). Given the fact-intensive nature of the inquiry, concerns regarding feasibility are no basis to deny approval of a disclosure statement.

22. Even if the Debtors' disclosures—or their lack—called into question feasibility of the Amended Plan (they do not), the DOJ ignores the facts and circumstances here. In brief, the DOJ fails to explain how a Plan of Liquidation—that also entertains payment in full of all creditors and even payment in-kind to the largest group of creditors, the customers—would fail to be feasible. Section 1129(a)(11) states:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> ….
> (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11. U.S.C. 1129(a)(11). The Debtors proposed a Plan of Liquidation under chapter 11 of the Bankruptcy Code. The DOJ's feasibility objection is therefore inapposite.

23. Even if viewed as an objection to disclosure, the DOJ's feasibility-based objection is unnecessary to inform the decision of a relevant "hypothetical investor" here. *See Emerge Energy Servs.*, Case No. 19-11563 (KBO) (Bankr. D. Del. Sep. 9, 2019), Hr. Tr. at 89:3-5 (advising the parties "to be careful to not bog down the disclosure statement in highly technical points that are really confirmation issues").

## IV. CONCLUSION

24. For the foregoing reasons, the Debtors respectfully submit that the Revised Disclosure Statement should be approved because it clearly satisfies the requirements of section 1125 of the Bankruptcy Code and because the relief provided in the Disclosure Statement Order is fair, appropriate, and in the best interests of their chapter 11 estates. The Debtors respectfully request that the Court overrule the Objections to the extent not already resolved and enter the Disclosure Statement Order.

Date: September 25, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**