IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Desolation Holdings LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10597 (BLS)<br><br>(Jointly Administered) |

### LIMITED OBJECTION OF AZIM GHADER TO THE DEBTORS' DISCLOSURE STATEMENT

Azim Ghader ("Mr. Ghader"), a foreign customer and creditor of the Debtors, objects to the Debtors' Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings, LLC and its Affiliated Debtors [D. I. 374] and in support thereof, states as follows:

### Failure to Give Adequate Notice

1. The deadline to object to the Disclosure Statement was September 21, 2023. However, the Debtors failed to provide notice of the deadline to object to the Disclosure Statement and the Disclosure Statement Hearing to Mr. Ghader.[2] It was not until Saturday, September 23, 2023, that Mr. Ghader learned of the objection deadline and that a hearing on the disclosure statement was set for Tuesday September 26, 2023.

2. Given the lack of adequate notice, Mr. Ghader files this Limited Objection to the Disclosure Statement.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

**Factual Background**

3. On May 8, 2023 (the "Petition Date"), Desolation Holdings, LLC, Bittrex, Inc., Bittrex Malta Holdings, Ltd., and Bittrex Malta Ltd. (collectively, the "Debtors" or "Bittrex") filed voluntary petitions for bankruptcy (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. On August 30, 2023, Mr. Azim Ghader filed seven Proofs of Claim in the Chapter 11 Cases, against the Debtors. (See, Proofs of Claim Numbers 35, 38, 87, 96, 296, 998, 1021). Three of the Proofs of Claim were filed as "**Customer Proofs of Claim**" (as defined in the Bar Date Order, D. I. 107) against Bittrex, Inc., Bittrex Malta Holdings, Ltd. and Bittrex Malta Ltd. Four of the Proofs of Claim were filed as "**General Proofs of Claim**" (as defined in the Bar Date Order, D. I. 107) against each individual Debtor.

5. Mr. Ghader's Customer Proofs of Claim assert claims against the Debtors for certain cryptocurrency currently held by the Debtors for which Mr. Ghader seeks the return of.

6. Mr. Ghader's General Proofs of Claim assert claims against each of the Debtors arising from, or relating to, fraud, breach of contract, breach of fiduciary duty, conversion, tort, civil conspiracy, emotional distress, personal injury, misrepresentation, breach of the implied duty of good faith and fair dealing, unjust enrichment, negligence and lost profits.

7. As detailed more fully in Mr. Ghader's General Proofs of Claim, on or about June 10, 2017, Mr. Ghader created a hosted wallet with Bittrex to invest in, trade and store cryptocurrency. On or about October 11, 2017, without notice, Bittrex froze Mr. Ghader's Bittrex accounts and barred him from withdrawing his cryptocurrency funds in his Wallet or from trading his investments for other crypto coins on the Bittrex hosted exchange. As a result, Mr. Ghader

was unable to sell his crypto coin at an advantageous time in the market, resulting in significant losses and damages to Mr. Ghader.

8. The Debtors have failed to explain, let alone justify, the actions taken against Mr. Ghader. For example, initially the Debtors advised Mr. Ghader that his account was frozen because of security issues. Later, the Debtors advised Mr. Ghader that his account was frozen owing to regulations promulgated by the United States' Office of Foreign Asset Control ("OFAC"). However, the OFAC regulations referenced by the Debtors were not applicable until November 5, 2018, far after Ghader looked to sell his crypto coin and after the Debtors' had already frozen Mr. Ghader's accounts.

9. Even later, on June 7, 2023, in a hearing before this Court, the Debtors Co-Chief Restructuring Officer ("CRO"), Evan Hengel, testified that Mr. Ghader has no relationship with any the Debtors, and was not a customer of Bittrex, Inc [D. I. 118]. *See* **Exhibit A** (p. 36 lines 2–15). Instead, the Debtors suggested that Mr. Ghader was a customer of Bittrex Global, which are Bittrex Global GmbH and Bittrex Global (Bermuda) Limited (collectively, the "Bittrex Global Entities").

10. However, following the June 7, 2023 hearing, the Bittrex Global Entities' advised Mr. Ghader, in various correspondence, that he was not a customer of Bittrex Global Entities. *See* **Exhibit B** (June 30, 2023 email, "According to our records, you are not a customer of Bittrex Global. You may be a customer of Bittrex, Inc."); *See* **Exhibit C** (August 10, 2023, counsel for Bittrex Global Entities, again stating "We have reviewed this case, and determined that Mr. Ghader has never been a client of, nor had an account with Bittrex Global . . . It appears that Mr. Ghader may be, or have been in the past, a client of an affiliated . . . entity, Bittrex Malta Ltd."); and *See* **Exhibit D** (in an August 25, 2023 letter, Counsel for Bittrex Global (Liechtenstein) stated

unequivocally: "you **are not and have never been a customer** of, nor held an account with, our client.").

11. On July 9, 2023, Mr. Ghader received most, but not all, of his diminished crypto currency from the Debtors. By his Proofs of Claims, Mr. Ghader seeks the return of his remaining crypto currency from the Debtors, as well as damages relating to the Debtors wrongful detention of his crypto currency.

## Legal Standard

12. A disclosure statement must contain "adequate information" about the debtor and must be provided to "each holder of a claim or interest of a particular class." 11 U.S.C. § 1125(c). Section 1125 broadly defines adequate information to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan . . .

11 U.S.C. § 1125(a)(1); *see In re Zenith Elecs. Corp.*, 241 B.R. 92, 99 (Bankr. D. Del. 1999). "Adequate information" is "information sufficient" for creditors to make an educated voting decision. 11 U.S.C. § 1125(a); *Zenith*, 241 B.R. at 99; *see, e.g., In re Monroe Well Serv., Inc.*, 80 B.R. 324, 332 (Bankr. E.D. Pa. 1987); *In re Nw. Recreational Activities, Inc.*, 8 B.R. 10, 11 (Bankr. N.D. Ga. 1980) (disclosure statement must "furnish . . . sufficient financial and operating information to enable each [party] to make an informed judgment whether to approve or reject the proposed plan."). Among other things, debtors must disclose information relevant to contingencies impacting a debtor's capacity to pay its claims. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc.*

*v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003). Failing to identify disputes against debtors and their assets is grounds for denying disclosure statement approval. *See Hall v. Vance*, 887 F.2d 1041, 1043 (10th Cir 1989) (affirming denial of approval of disclosure statement which failed to discuss litigation claims against the debtors and their assets).

13. Mr. Ghader respectfully submits the Debtors' Disclosure Statement does not offer creditors sufficient information to make an informed voting decision on the proposed Amended Plan. Mr. Ghader respectfully submits that the Disclosure Statement should provide adequate information relating to the following matters:

   a. The number and aggregate amount of the Customer Proofs of Claim filed in each of the cases;

   b. The number and aggregate amount of the General Proofs of Claim filed in each of the cases;

   c. What intercompany claims exist (Debtor and non-debtor), if any, and how are they being treated under the Plan?

   d. How litigation claims (*i.e.* tort, contract, fraud, gross negligence, bad faith) asserted by customers and creditors as part of any General Proof of Claim are to be treated for voting and distribution purposes under the proposed Amended Plan;

   e. What impact, if any, will such unliquidated litigation claims have on distributions under the proposed Amended Plan?

   f. What is the range of value of the Litigation Claims identified in Article IV (C)(iv) of the proposed Amended Plan and what impact, if any, will such Litigation Claims have on the proposed distributions under the Plan?

   g. What value, if any, have the Released Parties provided for the proposed Third-Party Release under Article VII (B) the Plan?

   h. Who specifically is a "Protected Party" or a "Released Party(ies)" under the proposed Amended Plan? Mr. Ghader respectfully submits the Disclosure Statement and Amended Plan should provide a definitive list of all entities and persons who will be deemed "Released Parties" or a "Protected Party" under the proposed Amended Plan;

i. An explanation as to what happens if the Bankruptcy Court does not have sole and exclusive jurisdiction, as mandated in Article VII (E), over a claim or cause of action that may be asserted by Enjoined Party. To the extent the Bankruptcy Court does not have such jurisdiction, what happens to the creditors' claims or causes of action?;

j. What is the value of the Avoidance Action to be released under the proposed Amended Plan, and do any such claims involve Released Parties, Protected Parties or Insiders (as defined in section 101(31) of the Bankruptcy Code)?

k. What insurance policies do the Debtors currently hold?

l. What insurance policies, if any, cover damages asserted by customers or creditors arising from, or relating to, the Debtors' fraud, breach of contract, breach of fiduciary duty, conversion, tort, civil conspiracy, emotional distress, personal injury, misrepresentation, breach of the implied duty of good faith and fair dealing, unjust enrichment, negligence and lost profits?

m. What are the nature and range of values of the Causes of Action to be transferred to the Wind Down Entity under the Plan?

n. What independent investigation or independent analysis, if any, was done, in connection with any potential claims or Causes of Action a Debtor may hold against a director, officer, fiduciary, insider or affiliate of such Debtor?

o. What independent investigation or independent analysis, if any, was done, in connection with any potential claims or Causes of Action a Debtor may hold against another Debtor, director, officer, fiduciary, insider or affiliate of such other Debtor?

### **Reservation of Rights**

14. Mr. Ghader reserves the right to object to the Debtors' proposed Amended Plan of Liquidation [D. I. 293, 374) for among other reasons, the Amended Plan contains:

a. broad and impermissible Debtor and non-debtor third-party releases in Article VII of the Amended Plan (Amended Plan Art. VII (A) and (B));

b. impermissible injunctive relief, including but not limited to vesting "sole and exclusive jurisdiction" in the Bankruptcy Court "to determine whether a claim or cause of action [asserted by an Enjoined Party] is colorable and, only to the extent legally permissible and as provided in Article XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action." (Amended Plan, Article VIII (E); Article XI (11)); and

    c. impermissible limitations on rights or recoupment and setoff (Amended plan Article VI (F), VIII (F).

15. Mr. Ghader also reserves the right to objection to the Amended Plan to the extent the Amended Plan, or the evidence at the proposed Confirmation Hearing, does not satisfy the applicable standards under the Bankruptcy code – *i.e.* Sections 1122 (Classification of claims or interests), 1123 (Contents of plan), 1124, (Impairment of claims or interests), 1125 (Postpetition disclosure and solicitation), 1126 (Acceptance of plan), 1127 (Modification of plan), and 1129 (Confirmation of plan).

## Conclusion

For the foregoing reasons, Mr. Ghader respectfully requests the Court not approve the Disclosure Statement unless and until the additional information noted above is included in the Disclosure Statement so that adequate information will be provided to all of the Debtors' customers and creditors, foreign and domestic, to make an informed voting decision with respect to the proposed Amended Plan.

Dated: September 26, 2023
       Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Elazar Kosman*
Donald J. Detweiler (DE Bar No. 3087)
Elazar A. Kosman (DE Bar No. 7077)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com
       elazar.kosman@wbd-us.com

*Counsel to Azim Ghader*