UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                      .  Chapter 11
                            .
DESOLATION HOLDINGS LLC,     .  Case No. 23-10597 (BLS)
et al.,                      .
                            .  (Jointly Administered)
                            .
                            .  Courtroom No. 1
                            .  824 Market Street
            Debtors.        .  Wilmington, Delaware 19801
                            .
                            .  Tuesday, September 26, 2023
. . . . . . . . . . . . . .  .  10:00 a.m.
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

```
For the Debtors:         Kenneth Enos, Esquire
                         YOUNG CONAWAY STARGATT & TAYLOR LLP
                         Rodney Square
                         1000 North King Street
                         Wilmington, Delaware 19801

                         Patricia Tomasco, Esquire
                         QUINN EMANUEL URQUHART
                           & SULLIVAN LLP
                         51 Madison Avenue
                         22nd Floor
                         New York, New York 10010

(APPEARANCES CONTINUED)

Audio Operator:          Dana L. Moore, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email:  gmatthews@reliable-co.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
 1  APPEARANCES (CONTINUED):

 2  For the U.S. Trustee:     Juliet Sarkessian, Esquire
                              OFFICE OF THE UNITED STATES TRUSTEE
 3                            U.S. DEPARTMENT OF JUSTICE
                              844 King Street, Suite 2207
 4                            Lockbox 35
                              Wilmington, Delaware 19801
 5
    For the United States
 6  Of America:              Leah Lerman, Esquire
                             UNITED STATES DEPARTMET OF JUSTICE
 7                             CIVIL DIVISION
                             6406 Ivy Lane
 8                           Suite 800
                             Greenbelt, Maryland 20770
 9
    For the SEC:             Therese Scheuer, Esquire
10                           UNITED STATES SECURITIES AND
                               EXCHANGE COMMISSION
11                           100 F. Street, NE
                             Washington, DC 20549
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                              INDEX

2   MOTIONS:                                                PAGE

3   Agenda
    Item 1: Debtors' Motion for an Order (I) Approving        4
4           the Disclosure Statement; (II) Approving
            Solicitation and Voting Procedures,
5           Including (A) Fixing the Record Date, (B)
            Approving the Solicitation Packages and
6           Procedures for Distribution, (C) Approving
            the Form of the Ballots and Establishing
7           Procedures for Voting, and (D) Approving
            Procedures for Vote Tabulation; (III)
8           Scheduling a Confirmation Hearing and
            Establishing Notice and Objection Procedures;
9           (IV) Shortening the Notice Period for the
            Hearing to Consider Confirmation of the Plan;
10          and (V) Granting Related Relief
            [D.I. 295, 8/25/23]

11
            Court's Ruling:                                  36
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 10:04 a.m.)

2          (Call to order of the Court)

3                THE COURT:  Please be seated.

4                Good morning.  Ms. Tomasco, good to see you.

5     Welcome back.

6                MS. TOMASCO:  Thank you, Your Honor.  Patty

7     Tomasco, Alain Jaquet of Quinn Emanuel on behalf of the

8     debtors.  I'm joined by my colleagues at Young Conaway, as

9     well.

10               Also in the courtroom is David Maria, which is the

11    General Counsel --

12               THE COURT:  Great.

13               MS. TOMASCO:  -- of Bittrex.

14               THE COURT:  Welcome, sir.  Good to see you.

15               MR. MARIA:  Good morning, Your Honor.

16               MS. TOMASCO:  He felt like he was missing out on

17    his opportunities to be here in person, so he decided to come

18    this time.

19               THE COURT:  It's a risky place to come as general

20    counsel, but ...

21         (Laughter)

22               MS. TOMASCO:  But he is the -- he is the true

23    wizard behind the curtain of this case, so I'm glad to have

24    him here.

25               Today, Your Honor, I'm happy to announce that the

1  objections, informal and formal, to the disclosure statement

2  have been resolved.  There's a couple of additional small

3  tweaks that I can go through.  Otherwise, we rely on our

4  omnibus reply that we filed at ECF -- I call it "ECF," you

5  guys call it "Docket Item" -- 376.

6           THE COURT:  I have it, and I appreciate getting the

7  chart, in particular.

8           MS. TOMASCO:  I'm a big fan of charts, Your Honor.

9  It helps me stay sane, so hopefully it will do the same for

10  the Court.

11           But if the Court wants to walk through those

12  resolutions --

13           THE COURT:  I don't --

14           MS. TOMASCO:  -- or --

15           THE COURT:  Again, I think the chart was helpful.

16  If you have additional resolutions that reflect changes

17  within the last couple of days resolving concerns, either by

18  the government entitles, the U.S. Trustee, or other

19  stakeholders, I'm happy to do that.  But I have had an

20  opportunity to review the redline which was filed, as well as

21  the -- as well as, again, the chart, which I found

22  particularly helpful.  I mean, that's sort of standard

23  practice, but it is very helpful for the Court to be able to

24  trace these issues.

25           MS. TOMASCO:  Thank you, Your Honor.

1    The additional changes, the Endurance was an

2 insurance provider that provided sureties to support the

3 debtors' money transfer licenses in the various states.

4 Endurance had policies that the debtors had fully paid for at

5 the beginning of the case.

6    They had asked me if they could cancel them, and I

7 said to them I would prefer that you not because we're going

8 to allow customers to continue to withdraw, not just crypto,

9 but also fiat currency, which technically could give rise to

10 a claim under those surety bonds.  Those surety bonds then,

11 therefore, existed through July or August, depending on which

12 bond you're talking about.

13    THE COURT:  Okay.

14    MS. TOMASCO:  Endurance also filed four claims for

15 $14 million.  We have a stipulation with Endurance that we've

16 negotiated.

17    Endurance wanted to also -- wanted to get released,

18 which I think is fair because what that does is it gets us

19 out of the trap of 502(e)(1)(B), where we're perpetually

20 wondering if Endurance is going to have an Coway (phonetic)

21 indemnification claim.

22    THE COURT:  Uh-huh.

23    MS. TOMASCO:  No claims have been made against the

24 bonds so far.  I don't anticipate any claims being made

25 against the bonds.  I said I don't think these claims are

1  valid because, you know, you have a 502(e)(1)(B) problem.

2         And so the resolution is that they get a release

3  under the plan and they withdraw those claims, those four

4  fourteen-million-dollar claims.  So good for the estate, good

5  for everybody, it seemed fair.

6         THE COURT:  It's an elegant --

7         MS. TOMASCO:  They --

8         THE COURT:  It's an elegant resolution.

9         MS. TOMASCO:  Thank you, Your Honor.

10        And so what ended up happening is they also wanted

11 to be exculpated.  The U.S. Trustee said only fiduciaries can

12 be exculpated.  I put Mr. Schepacarter and Endurance's

13 counsel together and they worked it out, and Endurance will

14 not be an --

15        THE COURT:  Okay.

16        MS. TOMASCO:  -- exculpated party.  They'll still

17 be a released party.

18        The other objection came in from the DOJ.  It was

19 clear to me that they're very concerned about being

20 subordinated.  We have the traditional language in there that

21 says, you know, you're in this class, but if we object to

22 your claim and say you should be subordinated, we're

23 reserving that right as debtors.  I -- sitting here today, I

24 don't know if that might happen, but I'm not going to

25 foreclose the debtors from having that reservation of rights

1  to subordinate a claim, if the need arises.

2        DOJ, I think, on behalf of FinCEN and OFAC, as you

3  know, we have a consent decree with them.  They are going to

4  be categorized as a general unsecured creditors in Class 3,

5  along with the SEC.  They -- we anticipate both of those

6  claims being treated the same.

7        SEC bargained for language that said that the SEC's

8  claim was not subject to that subordination right.  We're

9  going to agree with the DOJ that they are also not subject to

10 that --

11       THE COURT:  Okay.

12       MS. TOMASCO:  -- subordination right.  It is our

13 intention to treat both of those creditors, those consent

14 decrees and consent order, as Class 3 general unsecured

15 claims and not a subordinated class.

16       THE COURT:  Okay.

17       MS. TOMASCO:  So, I believe that that resolves the

18 objections.

19       Now I understand -- as I walked in here today, I

20 became aware of an objection that was filed while I was

21 walking over here by Mr. Azim Ghader.

22       My understanding is that the gist of that objection

23 -- I haven't read it -- is that --

24       THE COURT:  I do not have it.  Does somebody have a

25 copy of it?

1          UNIDENTIFIED:  May I approach, Your Honor?

2          THE COURT:  Of course.

3          UNIDENTIFIED:  I'm handing you the objection.

4          THE COURT:  Very good.

5          UNIDENTIFIED:  There's also a motion.

6          THE COURT:  Thank you.  Okay.

7          MS. TOMASCO:  The gist of that objection, Your

8   Honor, is that Mr. Ghader was not served with notice of this

9   hearing.  However, if the Court will --  and I don't have

10  this to hand up ...

11      (Participants confer)

12          MS. TOMASCO:  I don't have this to hand up.  But if

13  the Court will look at ECF or Docket Item 316-3, which is the

14  proof of service --

15          THE COURT:  Uh-huh.

16          MS. TOMASCO:  -- for this hearing, you will see Mr.

17  Ghader's name is listed.

18          THE COURT:  I believe Mr. Ghader had correspondence

19  to the Court previously, if I recognize the name.  Am I

20  correct?

21          MS. TOMASCO:  Correct.

22          THE COURT:  Okay.

23          MS. TOMASCO:  Mr. Ghader has corresponded with the

24  Court and the debtors have replied.  The latest of those

25  letters was on August 14th of 2023.  We set out the basis on

1  which Mr. Ghader had, during the customer withdrawal period,

2  withdrawn substantially all of the crypto that he had on the

3  Bittrex exchange.

4          THE COURT:  Okay.

5          MS. TOMASCO:  Mr. Ghader has approximately $2,000

6  left of crypto on the Bittrex exchange and the vast majority

7  of it he had already withdrawn.

8          The same is true of another customer that wrote to

9  the Court, Mr. Adel Abassi.  He has zero cryptocurrency left

10  on the Bittrex exchange, having withdrawn all of it.

11          So --  but the important thing, Your Honor, is

12  that, if the gist of the objection is that Mr. Ghader did not

13  receive notice of this hearing, there is a certificate of

14  service --

15          THE COURT:  There is.

16          Can I --  I'm looking now at the objection.  Can I

17  make a suggestion?  Before I make a ruling with respect to

18  the permission to file the late objection, obviously, I hear

19  you loud and clear and I'm sure that I will hear from the

20  other side about whatever circumstances are affecting Mr.

21  Ghader --  who I do not believe is in the United States.  Is

22  that correct?

23          MS. TOMASCO:  That's correct.

24          THE COURT:  Okay.

25          MS. TOMASCO:  He is a resident of Turkey, based on

1    --

2           THE COURT:  Based on the correspondence.  I think I

3    saw some more correspondence.

4           MS. TOMASCO:  Right.

5           THE COURT:  Obviously, I'm just seeing this.

6    Obviously, you just got it.  And I'm now taking just a quick

7    look at the disclosure objection.  And while I'm not making

8    any particular comment or ruling on it, as I look at the

9    requests for information in Paragraph 13(a) through (o), my

10   instinct would be, having reviewed the disclosure statement

11   and the amended disclosure statement, that actually there's a

12   lot of information that is responsive to each of these.

13          If there's something that still has meat on the

14   bone, I would at least like to know that before I'm making a

15   determination about whether to consider the objection.  Would

16   you mind if we took maybe five or ten minutes, give you an

17   opportunity to review it, and also confer?

18          I am acutely aware that this is a disclosure

19   hearing.  There's a lot of disclosure that's already

20   contained in there.  I do recall correspondence with Mr.

21   Ghader.  And the process will move forward.  But you know, if

22   there is something in particular out of this list that has

23   resonance or traction, I'd be interested to know because that

24   informs, again, the significance of the Court's decision to

25   permit or deny the late-filed objection.

1          I think it would make sense, again, just receiving

2    this now, without ruling on the merits of the objection or

3    the request to --  effectively, to strike the objection at

4    this point, I think it would make sense to have a five- or a

5    ten-minute discussion, figure out what the field of play is,

6    and then we'll return.  Does that make sense?

7          MS. TOMASCO:  Yes, Your Honor.

8          THE COURT:  All right.

9          MS. TOMASCO:  Thank you --

10          THE COURT:  Ten minutes.

11          MS. TOMASCO:  -- very much.

12          THE COURT:  Stand in recess.

13       (Recess taken at 10:14 a.m.)

14       (Proceedings resume at 10:35 a.m.)

15       (Call to order of the Court)

16          THE COURT:  Please be seated.

17          Ms. Tomasco, where do we stand?

18          MS. TOMASCO:  Your Honor, the --

19          THE COURT:  I want to be clear because I just -- I

20    don't want any confusion.  You hadn't had an opportunity to

21    review, either the objection, or the motion to allow; I

22    hadn't either, so I wanted to have that opportunity.  But

23    again, I think I shared my observation that at least some of

24    this stuff seems to be, you know, already in there, based

25    upon my review.

1          MS. TOMASCO:  That's my conclusion, as well, Your

2    Honor.  And it's hard to sort of cross-reference where --

3          THE COURT:  Yeah.

4          MS. TOMASCO:  -- it actually is.

5          But you know, we --  I will say the number and

6    aggregate amount of customer proofs of claim, that was not in

7    there because that is an August 31, we're still analyzing --

8          THE COURT:  Right.

9          MS. TOMASCO:  -- the claims.  There's about 3,500

10   claims that were filed, and we went through that in the

11   presentation we made to the Court a couple of weeks ago.  So

12   that number is in that presentation.

13         However, if I told you the amount right now, there

14   is a --  there is a young gentleman in Canada who is about 22

15   years old, who filed a claim for $9.9 billion, right?  So, if

16   I told you what the total of the claims was ...

17         THE COURT:  Yeah, I --  yeah.  I understand claims

18   pools.

19         MS. TOMASCO:  Right.  So I think that number would

20   --  right now, would be, frankly, more deceptive than it is

21   helpful, until we go through the claim objection process.

22         We stand by the amount of the claims that we expect

23   to be legitimate because the debtor, as I have said from the

24   beginning of this case, has kept extremely meticulous records

25   with respect to its customer claims.  The customer claims

1  that are reflected in the liquidation analysis, we expect to

2  hold with a significant margin of overestimation.

3          So the number of claims is about 3,500.  We're

4  going to go through those and de-dupe and object to the ones

5  that are clearly outside the bounds of what the actual

6  holdings are on the platform.  The question is:  Do we want

7  to include those numbers in the disclosure statement?  We're

8  happy to add that the claims filed have been totaled about

9  3,500 claims, of which about 50 are non-customer claims.

10          THE COURT:  Okay.

11          MS. TOMASCO:  Intercompany claims, how are they

12  being treated under the plan?  Intercompany claims have been

13  disclosed in the statements and schedules.  As far as the

14  plan is concerned, intercompany claims, other than the DIP

15  loan from the parent, are going to be treated --

16          THE COURT:  Which as in bitcoin.

17          MS. TOMASCO:  Which was in bitcoin and will be

18  repaid in bitcoin, which is, you know, a unique feature of

19  this case, never been --

20          THE COURT:  It's on my resume.

21          MS. TOMASCO:  Yes, mine, as well.

22      (Laughter)

23          MS. TOMASCO:  Intercompany claims are relatively

24  insignificant, but they will be treated in the subordinated

25  class, as most plans do.

1          THE COURT:  Sure.

2          MS. TOMASCO:  There's no reason for us to disclose

3   to customers such as Mr. Ghader what those are, if they're

4   subordinated.

5          Litigation claims asserted by customers and

6   creditors as part of any general proof of claim.  Well, I

7   think it stands to reason that, if you assert something in

8   addition to your customer claim as part of your claim, it's

9   going to be treated in Class 3, along with the rest of your

10  claim.

11         So I --  to me, if you have a claim in addition,

12  we've made it very clear on the claim form that, if your

13  claim is not for the return of cryptocurrency or fiat

14  currency in your account, you should file a general 410 proof

15  of claim, "410" being the form.

16         THE COURT:  Right.

17         MS. TOMASCO:  And --

18         THE COURT:  Yeah, I know.

19         MS. TOMASCO:  And that will be a Class 3 claims.

20  That's been made very clear throughout the disclosure

21  statement and elsewhere.

22         Unliquidated litigation claims have on

23  distributions under the proposed plan.  The answer is none.

24  The proceeds are more than sufficient to pay customer claims

25  and, in addition, other claims.  There will be sufficient

1   claims to pay Class 3, Class 2A, Class 2B claims.

2          Mr. Ghader asserts a claim as a customer, 2,000 ish

3   dollars.  That will be paid as a Class 2A claim or 2B claim.

4   If he asserts an additional claim, that will be treated as a

5   Class 3 claim.  But that's no different than any other

6   customer that may have an additional claim, it goes under

7   Class 3.  My argument here is that this is, to me, obviously

8   under the plan and the instructions that were given in

9   connection with the proof of claim form.

10          Litigation claims identified in Article 4(c), what

11   impact will litigation claims have on the proposed

12   distributions under the plan.  That is standard plan language

13   that litigation claims are preserved.  I am not personally

14   aware of litigation claims that are going to adverse --  you

15   know, be accretive to the estate, that's just --  it's not

16   there, but we --  it's preserved.

17          THE COURT:  Nothing is --

18          MS. TOMASCO:  The fact --

19          THE COURT:  Nothing is waived by virtue of the plan

20   unless specifically waived.

21          MS. TOMASCO:  Right, correct.

22          THE COURT:  I get it.

23          MS. TOMASCO:  That's all that means.  I think that

24   that's sort of like a navel-gazing kind of objection that I

25   don't think has any actual impact on what people will get

1  under the plan.

2       Obviously, if somebody asserts a claim and the

3  debtor has a counterclaim that's going to be asserted, it may

4  affect that general unsecured creditor's claim.

5       THE COURT:  You know, as we roll through this, I

6  think I'd like to --  can I hear from counsel for Mr. Ghader?

7       Mr. Detweiler, good morning.  It's good to see you.

8  Welcome.

9       MR. DETWEILER:  Good morning, Your Honor.  And may

10  it please the Court, Donald Detweiler of Womble Bond

11  Dickinson on behalf of Azim Ghader.  Mr. Ghader is a customer

12  and creditor of the debtors' estates.

13       With apologies to Your Honor, to Ms. Tomasco, Mr.

14  Enos, and Mr. Maria and counsel that are here, as well as to

15  the debtor and the debtors' estates, we apologize for the

16  late filing of this limited objection to the proof of claim.

17       THE COURT:  I have not ruled on the timing --

18       MR. DETWEILER:  Right.

19       THE COURT:  -- or the permissibility of the filing.

20  I'm trying to work through the --

21       MR. DETWEILER:  Yeah.

22       THE COURT:  -- the concepts at least.  And it

23  seemed to me --  and I understand where Ms. Tomasco is kind

24  of going on the fly on the categories.

25       But can I ask a question?  The debtor has

1 | represented several times, and I think in correspondence
2 | previously, that your client has a claim of about $2,000.  Is
3 | that something that your client agrees with or is that in the
4 | range of what your client expects his claim is?
5 |         MR. DETWEILER:  So, Your Honor, may it please the
6 | Court.
7 |         THE COURT:  Sure.
8 |         MR. DETWEILER:  Mr. Ghader has two claims.  He
9 | filed, not only a customer claim, but he also filed a general
10 | proof of claim relating to alleged damages arising from the
11 | actions of the debtors, and that claim is an unliquidated
12 | claim before the Court.
13 |         THE COURT:  Okay.
14 |         MR. DETWEILER:  So with regard to --  there is
15 | cryptocurrency, crypto coin that the debtors still hold of
16 | Mr. Ghader, and he does seek the return of that.  So that
17 | answers Your Honor's question there.
18 |         THE COURT:  I think it does.
19 |         MR. DETWEILER:  And then he did file a general
20 | proof of claim, and that's for damages relating to the
21 | actions.  So those are the two claims that are --
22 |         THE COURT:  Okay.
23 |         MR. DETWEILER:  -- that are before you.
24 |         What we --  and we do appreciate Ms. Tomasco's time
25 | and the debtors' time in trying to address some of these

1   issues, and I know it's on the fly.  And perhaps some of

2   these things would be better reserved for objection to the

3   plan itself, and we're happy to do so.

4        She's made some statements here today that --  I

5   think that are helpful and that could simply be added into

6   the disclosures, so that creditors are fully informed for

7   voting purposes as to how to vote on the plan.

8        And although she didn't go through the entire list,

9   I'll just quickly highlight a couple, I think, that are

10  important and the west --  and the rest we would respectfully

11  reserve as objections to confirmation --

12       THE COURT:  Sure.

13       MR. DETWEILER:  -- of the plan.

14       Ms. Tomasco indicated, with regard to (a) and (b) -

15  -

16       THE COURT:  Yeah.

17       MR. DETWEILER:  She indicated with respect to (a)

18  and (b) that the number of claims was about 3,500.  I believe

19  those are customer claims.  And then she said there were

20  about 50 or so non-customer claims.  So that would be helpful

21  for purposes of the disclosure statement to let people know

22  because there are people who are not only customers, but they

23  also are creditors, and they filed both proofs of claims.

24       It may very well be --  we haven't looked at the

25  claims.  But it may very well be that some of the customer

1  claims are customer claims, but they assert litigation claims

2  within them, and I'm sure the debtor will have to deal with

3  that, but there could be.  And Mr. Ghader filed in both

4  categories, to make sure that he was protected.  So that

5  would be helpful to at least have that for purposes of the

6  disclosure statement.

7          We understand, with regard to the intercompany

8  claims and being subordinated, that, I think it's a simple

9  sentence to the disclosure statement saying that the

10  intercompany claims are --  will be subordinated or the

11  debtor --

12          THE COURT:  Doesn't --

13          MR. DETWEILER:  -- intends to --

14          THE COURT:  -- the plan provide that?  I thought

15  the plan does actually --

16          MR. DETWEILER:  Okay.

17          THE COURT:  -- specifically provide that.

18          MS. TOMASCO:  That's correct, Your Honor.

19          MR. DETWEILER:  Okay.

20          MS. TOMASCO:  That's always been our intention.

21          MR. DETWEILER:  Okay.

22          THE COURT:  Okay.

23          MS. TOMASCO:  If that's covered, then I apologize

24  for that, Your Honor, for missing that in the plan.

25          With regard to the litigation claims, Ms. Tomasco

1  has said that the debtors anticipate there will be sufficient

2  funds in the estates to cover litigation claims.  And perhaps

3  a simple statement along those lines in the disclosure

4  statement saying that whatever non-customer --  what I'll

5  call the "general proofs of claims," that the debtors

6  estimate there will be sufficient funds in the estate to

7  cover those claims.  That may be helpful for creditors to

8  understand when they decide to vote for or against the plan.

9  And that kind of flows through from (d) through (f).

10          On (g), that's a confirmation issue.

11          THE COURT:  It is.

12          MR. DETWEILER:  Okay.  And we'll just skip that.

13          (h) we think is important, Your Honor because, at

14  least from Mr. Ghader's standpoint --

15          THE COURT:  I would treat --  I would treat (h) as

16  both a definitional issue and a confirmation issue.

17          MR. DETWEILER:  Okay.  Fine.  We'll move --

18          THE COURT:  I mean, I have had this question

19  before. I have opined in a different case under very, very

20  different circumstances that sometimes plans and disclosure

21  statements have these sprawling definitions and the

22  consequences of that are what they are, but generally in a

23  disclosure statement the debtor doesn't attach a schedule

24  that says these are all of the directors and these are the

25  directors' affiliates, these are the shareholders, these are

1  the shareholder affiliates, and their counsel, and everything

2  else.  We operate by those.  So, I think I would skip that. I

3  understand the question, but issues related to that, I think,

4  are typically preserved for confirmation.

5  MR. DETWEILER:  Okay.  That is fine.  I, I call

6  the Texas gatekeeping issue.  You find this where the debtors

7  seek to instill sole and exclusive jurisdiction of the

8  Bankruptcy Court to determine whether a claim is colorable

9  and then whether or not it may proceed forward. I am not

10  familiar with that provision in a Delaware plan, but all we

11  are asking is to the extent that the plan provides for this

12  gatekeeping provision for the Bankruptcy Court that the

13  debtors explained to creditors that if the Court does not

14  hold jurisdiction what does that mean.  That is the concern.

15  If somehow the plan is confirmed, Your Honor has

16  jurisdiction and they cede it to you, but if you find

17  yourself that you don't have that jurisdiction does that mean

18  the claims die?  What does it mean?  So, I think there needs

19  to be some explanation for, at least, creditors to say that

20  to the extent the Court does not have sole exclusive

21  jurisdiction of the Court -- that another Court may retain

22  that jurisdiction.

23  THE COURT:  I understand.

24  MR. DETWEILER:  Avoidance actions we can skip

25  that.  With regard to K and L with insurance policies, we

1  haven't seen -- and I apologize given the late retention on

2  this issue, but we haven't seen insurance policies.  It may

3  be helpful, at least at some point as we head toward the

4  plan, that there is some form of disclosure as to what the

5  insurance policies are and potential coverage for those.

6           THE COURT:  I understand.

7           MR. DETWEILER:  The causes of actions that can be

8  a confirmation issue as well.  Then we think it is important

9  that since Mr. Pole was retained as the independent director

10 what analysis or investigation the debtors did with respect

11 to any prepetition conduct of the debtor's directors,

12 officers, or others.  That will come up in the context of

13 potential claims or causes of actions that are certainly

14 asserted by Mr. Ghadar and could be asserted by other

15 customers or creditors of the debtor's estate.  So, we just

16 ask for some brief statement with respect to that.

17          THE COURT:  I understand.

18          MR. DETWEILER:  So, Your Honor, I know this is

19 difficult and I appreciate the concessions that have been

20 made by debtor's counsel so far.  Hopefully we can get a

21 response on these additional items. To the extent that those

22 additional concessions can be incorporated into the

23 disclosure statement that would be acceptable to Mr. Ghadar.

24 He could withdraw his limited objection and then save

25 everything for plan confirmation.

1          THE COURT:  All right.

2          MR. DETWEILER:  Again, I do want to thank you and

3 Ms. Tomasco for your courtesy in allowing us to present this

4 issue.

5          THE COURT:  Well, nobody actually allowed you yet.

6          MR. DETWEILER:  Well, at least have a discussion

7 with Your Honor regarding these issues.

8          THE COURT:  I think I would like to narrow the

9 range of the discussion right now.  Again, the easiest path

10 that the Court could certainly adopt would be to say that the

11 objection is untimely and any issues are fully reserved for

12 plan confirmation.  I do note that Mr. Ghadar has

13 communicated with the Court, is not located in the United

14 States. I make no comment.  I certainly don't have any basis

15 to question the debtor's filed demonstration of adequate and

16 appropriate service.  I think we can deal with this rather

17 painlessly.

18          I think, Ms. Tomasco, you had acknowledged that

19 you would be prepared to identify the number of customers and

20 general proofs of claim. I agree with your observation that

21 the amounts of those claims would not be helpful.  And

22 they're almost never helpful in any case.  Even before we

23 start talking about notional issues of litigation claims, the

24 number of duplicate claims that will show up in any typical

25 case grossly inflate those numbers. I don't think it's

1  helpful.

2           With respect to intercompany claims, I think the

3  plan adequately does disclose this. I think I would like your

4  response on the litigation claims question of whether there

5  are sufficient funds.  I am just not sure that I understand

6  the dispute and whether or not there is additional disclosure

7  that the debtor believes might be helpful and relatively

8  painless to keep the debtor on the timeline that it intends

9  to move forward on.

10          MS. TOMASCO:  So, the litigation claims asserted

11  by customers?

12          THE COURT:  Yeah.

13          MS. TOMASCO:  There is only a few.  We can

14  certainly go through those.  For example, Mr. Ghadar's

15  unsecured claim that he asserts is $20 million. There have

16  been, of course, some others that are facially incorrect.  We

17  filed one objection that the Court may have seen.

18          THE COURT:  I have seen it.

19          MS. TOMASCO:  You know, completely out of left

20  field.  Have no -- untethered to reality, untethered to legal

21  concepts. With respect to Mr. Ghadar's claim, he claims $20

22  million.  Factually we disagree, legally we disagree.  The

23  terms of service preclude consequential damages as would any

24  other terms of service.  Those are the kinds of things that

25  we're seeing, but they are all emanating from the group of

1   Iranian citizens; there's about four of them.  Those are the

2   ones that have filed these claims that are in the nature of

3   consequential damages emanating from the Iranian sanctions

4   that arose out of OFAC.

5        THE COURT:  Here is what I think would make sense:

6   litigation claims are customarily included in general terms

7   in a disclosure statement. If you look at the case law it

8   does talk about those.  Those are inherently unknowable and

9   unquantifiable figures, but Courts have, I think, generally

10  observed that its helpful to creditors making their decision

11  to know whether or not there is litigation pending and a lot

12  of this is, as you know, functionally a trigger to say to a

13  creditor you want to know more about this you should either

14  take discovery, or make a phone call, but you know that this

15  is out there.

16       I think it would be appropriate, to the extent

17  that it doesn't have it, and I know there is a section that

18  describes pending litigation, I think it would be appropriate

19  to add a short section, no more then three or four sentences,

20  essentially along the lines of what you have described that

21  basically there are claims that are out there by parties that

22  may be or, at least, the debtor or the Government entities

23  may suggest are subject to sanction.  Those claims are

24  disputed and have at it.

25       As to the other categories I am not going to

1   direct any additional disclosure.  I will make the following

2   observation: first, with respect to category (i) I am not

3   certain that this does trigger the Fifth Circuit gatekeeping

4   function.  I looked at the language during the break and I

5   think that the language that is in Article VII(e) is pretty

6   standard.  It does come up at times.  I have had many, many

7   post-confirmation litigations and were advised by Resorts or

8   Pacor, and the Third Circuit's guidance in that about whether

9   I have jurisdiction and what my -- and there are consequences

10  to the Court having or not having jurisdiction.

11          The fact of, you know, a provision such as this

12  Courts have generally said a reservation of jurisdiction,

13  even exclusive jurisdiction, doesn't confer jurisdiction.

14  But I don't think that that is a necessary or an appropriate

15  area of additional disclosure. If there is a challenge to

16  that raised either by Mr. Ghadar or anybody else we will deal

17  with that in the context of confirmation, but the Court's

18  post-confirmation jurisdiction seems to me to be explained

19  from the debtor's point of view.

20          I make a further observation.  Again, I appreciate

21  that Mr. Detweiler has, I think, apologized and acknowledged

22  perhaps that the late filed objection is burdensome, we are

23  where we are.

24          I have identified, from the discussion, a couple

25  of categories that I think would be helpful generally, but a

1  disclosure statement is not a discovery tool.  If there are

2  disputes that are going to be held in the context of

3  confirmation they will be framed by objections to

4  confirmation.  If necessary and appropriate, discovery can be

5  had on those issues.  An objection to disclosure statement is

6  not a substitute for discovery and we generally don't permit

7  or require a debtor to do the whole document production or

8  admissions, effectively, in the context of a disclosure

9  statement. I don't think that that would be productive.

10         We have identified a couple categories and I think

11  particularly the customer proofs of claim and the general

12  proofs of claim just in terms of numbers are of value because

13  we have had a lot of colloquy from the very beginning of this

14  case about how to manage whether these are claims, how the

15  customer interest and accounts are to be dealt with and,

16  again, the debtors have navigated that exercise through today

17  and then into the plan.  Again, there have been real

18  consequences to that process by the return of, you know,

19  significant funds under Court authority well before plan

20  confirmation or approval of the disclosure statement.

21         So, you know, I think it is helpful to the parties

22  to see those issues and those numbers.  An additional

23  disclosure, as we have discussed, about the litigation claims

24  that we just talked about I think would be appropriate.  The

25  other areas are all, to the extent, relevant.  They are fully

1   reserved for purposes of plan confirmation whether the Court

2   rules or not.  You know, we will deal with them in the

3   context of confirmation.

4         I make no comment on the merits of those issues. I

5   am being asked a question about what to disclose and what the

6   debtor is obliged to disclose.  Hopefully, I have answered

7   that question clearly enough for you, Ms. Tomasco.  I will

8   ask Mr. Detweiler in a moment, but clearly enough for you

9   hopefully in a relatively painless exercise a disclosure

10  statement, again, to get it loaded so it can start moving

11  within the next few days as your plan is.

12        MS. TOMASCO:  I understand, Your Honor.  So, just

13  to reiterate we are going to deal with category (a) and (d)?

14        THE COURT:  Yeah.  In terms of numbers the

15  aggregate amounts.  Like I said, I agree with you that it's

16  not helpful.

17        MS. TOMASCO:  All other objections -- I mean, all

18  other deficiencies identified by Mr. Ghadar have been

19  overruled.

20        THE COURT:  Those are either overruled or reserved

21  except for the discussion about litigation claims appearing

22  at Tab D which, again, I think goes directly to issues that

23  Mr. Ghadar maybe himself pursuing.  He is entitled to say

24  that the disclosure statement should say I'm out here and I

25  got serious things to say.

1          MS. TOMASCO:  Okay.  Thank you.

2          THE COURT:  Mr. Detweiler.

3          MR. DETWEILER:  May I please the Court.  Thank

4  you, Your Honor. I think with Your Honor's statements from

5  the bench, counsel's statements, it sufficiently addresses

6  the concerns.  Mr. Ghadraw should -- will withdraw the

7  objection, the limited objection and the motion for leave so

8  that the Court does not need to rule upon that.  All the

9  issues are reserved.

10          We do appreciate, again, Ms. Tomasco and the

11 debtors taking the time on the fly to hear that and we do

12 apologize, again, for the late filed.  We will enter our

13 appearance in the case.  So, we will get notice and the last

14 piece was with regard to the ECF.  There is no dispute he is

15 on the ECF.  He is not receiving the emails for some reason.

16 He has raised that, but we will deal with counsel on that.

17          THE COURT:  Okay.

18          MR. DETWEILER:  Then we will have our appearance

19 entered so we can avoid problems like this going in the

20 future.

21          THE COURT:  Very good.

22          MR. DETWEILER:  Again, we thank Your Honor for

23 your time.

24          THE COURT:  Sure.  So, I think that brings us, Ms.

25 Tomasco, back to where you were. I think you were walking

1  through issues of resolution on the formal and informal

2  objections. I want to make sure that we close the loop on any

3  of that or if there is any additional reports.  As I said, I

4  appreciated getting the redline which I had a chance, again,

5  to spin through during the short break that we had as well as

6  the objection that was just filed.  Again, I thought the

7  chart was particularly helpful to lay out the landscape. So,

8  I don't think that I have any specific questions for the

9  parties.

10        MS. TOMASCO:  I believe Ms. Lerman was going to

11  speak, Your Honor.

12        THE COURT:  Yup. I will hear from everybody that

13  wishes to be heard.  Ms. Lerman, good morning. It's good to

14  see you.

15        MS. LERMAN:  Good morning, Your Honor.  Leah

16  Lerman on behalf of the United States of America.

17        Your Honor, I just want to take a very quick

18  opportunity to thank the debtors for working with us.  Just

19  to reiterate a request that I made last night which perhaps

20  got lost in all the shuffle, just to be able to see a final

21  copy of the disclosure statement with the new additions since

22  last night which we haven't seen yet before the order goes up

23  for Your Honor to sign.

24        THE COURT:  That sounds fine.  I assume everybody

25  can get to closure.  If there is an issue if something goes

 1   sideways, I don't want letters or anything else.  Get me on

 2   the phone.  The parties have, you know, obviously, closed

 3   gaps for purposes of a disclosure statement.  Rights are

 4   reserved to the extent appropriate for further proceedings.

 5   So, I think everybody should land on the same page.  But if

 6   there is an issue then just grab me, I will be around.

 7             MS. TOMASCO:  Thank you, Your Honor.

 8             MS. LERMAN:  Thanks so much, Your Honor.

 9             THE COURT:  Ms. Scheuer, I just wanted to make

10   sure that we are all squared away. It is good to see you

11   again.  Welcome.  How are the United States today?

12             MS. SCHEUER:  Well, thank you.  Good morning.  For

13   the record Therese Scheuer for the U.S. Securities & Exchange

14   Commission.  With me on the line is Patricia Schrage, also

15   from the U.S. Securities & Exchange Commission.

16             Your Honor, thank you for the time. The SEC filed

17   a reservation of rights at Docket 364.

18             THE COURT:  I have it.

19             MS. SCHEUER:  Thank you.  It was with respect to

20   certain requested modifications that have been made, Your

21   Honor.  And because the plan also provides for certain

22   transactions including crypto assets, including potential

23   liquidation of crypto assets, the SEC wanted it clarified in

24   the reservation of rights and for the record today I will do

25   so again, but the SEC is not opining as to the legality under

1  the Federal Securities Laws of the transactions in the plan

2  and reserves its right to challenge transactions including

3  crypto assets.

4          THE COURT:  Will you do so at confirmation.

5  Inquiring minds want to know.

6      (No verbal response)

7          THE COURT:  I'm just busting your chops.

8          MS. SCHEUER:  Thank you, Your Honor.

9          THE COURT:  Sure.  Thank you, Ms. Scheuer.

10         Ms. Sarkessian, good morning. It's good to see

11 you.  It's been a little while.

12         MS. SARKESSIAN:  Yes, Your Honor.  For the record

13 Juliet Sarkessian on behalf of the U.S. Trustee.

14         Your Honor, I am actually retiring in the near

15 future, so --

16         THE COURT:  Say it isn't so.

17         MS. SARKESSIAN:  -- it is possible that --

18         THE COURT:  That office is going to fall apart.

19         MS. SARKESSIAN:  So, this may be the last time I

20 appear before you because I don't have any other cases before

21 Your Honor. I am just covering in for Richard Schepacarter.

22         It is my understanding that all of our disclosure

23 issues have been resolved.  We ask for some changes to the

24 proposed order, and the ballots and the notices it is my

25 understanding that those have already been incorporated in

1 │ the redline that was previously filed.  We do reserve our

2 │ confirmation objections and just to preview one in particular

3 │ relating to third party releases, of course, you know, we are

4 │ very aware of Your Honor's acceptance of the opt-out

5 │ procedure, which is what they are using here, and what we had

6 │ requested was that there be an exception to the definition of

7 │ releasing parties.

8 │ Those were giving third party releases for anybody

9 │ that is in a voting class, but their solicitation package

10 │ comes back to the debtors as undeliverable or the debtors

11 │ never served them in the first place because prior mail has

12 │ come back as undeliverable that those folks be accepted out

13 │ because you can't give consent if you are not aware that

14 │ they're being deemed to give releases.  What the debtors did

15 │ is, I think, they added some language saying that a releasing

16 │ party would not include any entity that did not have actual

17 │ or constructive knowledge of the bankruptcy cases, which is

18 │ different then what we are asking; however, the debtors did

19 │ agree to have the voting ballot will indicate which

20 │ solicitation packages came back as undeliverable and who was

21 │ in a voting class, but was not served with a solicitation

22 │ package.

23 │ So, we will have the information available and I

24 │ think that will help to inform what we determine to do as

25 │ well as, potentially, Your Honor's decision on that issue.

1          THE COURT:  Okay.  Those issues are reserved.

2          MS. SARKESSIAN:  Thank you.

3          THE COURT:  Congratulations.  Thank you very much

4  for your service.

5          MS. SARKESSIAN:  Thank you.

6          THE COURT:  Ms. Tomasco –– I would ask, actually,

7  are there any other parties who wish to be heard that are

8  appearing virtually today?

9      (No verbal response)

10         THE COURT:  Ms. Tomasco, anything else?

11         MS. TOMASCO:  No, Your Honor. It has been my view

12  that with respect to the third-party releases we do have

13  authority from the Court to serve via email.  We have been

14  serving, as you know, millions of parties with notice in

15  addition to publication notice.  So, we have exhausted our

16  obligation to notify parties of this case.  It came at some

17  expense.

18         THE COURT:  I am aware.

19         MS. TOMASCO:  So, to say that if somebody is aware

20  of the bankruptcy, but they don't bother to go to the website

21  and pull off this plan and disclosure statement and claim

22  that they didn't get it, I believe the case law is consistent

23  that knowledge of the bankruptcy is sufficient to bind you to

24  the plan and its terms by res judicata.  We will stick to

25  that.

1          With respect to any other of the objections we

2     recognize that they are going to be preserved for

3     confirmation.  We have set up the solicitation procedure.

4     Everybody gets solicited.  If we are going to include on the

5     ballot summary who didn't -- whether there was a bounce back

6     on the email, all of those things are being done so that we

7     have a full and complete record with respect to solicitation.

8     We are not trying to hide the ball.  All of those

9     confirmation objections will be preserved.

10          THE COURT:  I understand.  Does anyone else wish

11    to be heard?

12          (No verbal response)

13          THE COURT:  All right.  The issue before the Court

14    is the request of the debtor for approval of the disclosure

15    statement filed in support of their plan. I am going to

16    approve the disclosure statement in the absence of pending

17    objections because I believe that based on the record

18    developed today all objections have either been ruled upon or

19    resolved satisfactorily, again, for purposes of the

20    disclosure statement with rights reserved for a confirmation

21    hearing to the extent appropriate.

22          Given the resolution of those various issues I am

23    not going to burden the record with extensive findings.  I

24    will simply find and conclude that the debtors have carried

25    their burden under Bankruptcy Code Section 1125 in that the

1  disclosure statement contains information adequate to permit

2  a hypothetical stakeholder to make an informed decision to

3  vote for or against the plan.

4       In connection therewith, also the debtors have

5  requested approval of appropriate notices, and forms and

6  ballots.  And all of those have been submitted and provided

7  to the Court also in redline form which, again, I very much

8  appreciate in advance of today's hearing. I am prepared to

9  approve and authorize the debtor to move forward with its

10  solicitation process utilizing the forms that have been

11  provided to the Court.

12       The debtor's application is granted and the order

13  will issue. My understanding is that some parties have asked

14  to get one final look at the disclosure statement, which I

15  think is typical. I will look for the disclosure statement

16  order submitted under -- or to be uploaded at the appropriate

17  time. I would enter that promptly, but the debtor is on a

18  timeline right now that they have requested.

19       What is our confirmation date?

20       MS. TOMASCO:  Its October 30th, Your Honor.

21       THE COURT:  Okay.  Just in time for Halloween.

22  So, I do expect then to see that proposed form of order

23  promptly.  We will go from there.

24       Ms. Tomasco, anything I missed?

25       MS. TOMASCO:  One housekeeping matter, Your Honor.

1  I believe we set it for October 30th, but we don't yet a

2  time.

3          THE COURT:  On this I would trust Mr. Enos over

4  you or me.

5          MS. TOMASCO:  I would too, Your Honor.

6          MR. ENOS:  Your Honor, I will follow-up with

7  Chambers.

8          THE COURT:  I have you on for 11.

9          MS. TOMASCO:  Even better. I get to sleep an extra

10 hour.

11         THE COURT:  There you go.  So, we will look for

12 the order. I don't think there will be any issues, but if

13 there are any issues, I will be available this afternoon if

14 we need to talk through anything, but I think the parties

15 have closed the loop.  The submissions by Mr. Ghadar have

16 been either ruled upon or withdrawn.  So, I think those

17 issues are disposed of.

18         With that we are adjourned.  Thank you, counsel.

19 Be well.

20      (Proceedings concluded at 11:09 a.m.)

21

22

23

24

25

1                         CERTIFICATION

2          I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7   /s/ Coleen Rand                         September 26, 2023

8   Coleen Rand, CET-341

9   Certified Court Transcriptionist

10  For Reliable