# EXHIBIT 1

**Blackline Revised Plan**

**(Changed Pages)**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

Desolation Holdings LLC, *et al.*[1]

Debtors.

_____

Case No. 23-10597 (BLS)

(Jointly Administered)

# AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
# OF DESOLATION HOLDINGS LLC AND ITS AFFILIATED DEBTORS

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani (*admitted pro hac vice*)
Patricia B. Tomasco (*admitted pro hac vice*)
Daniel Holzman (*admitted pro hac vice*)
Razmig Izakelian (*admitted pro hac vice*)
Alain Jaquet (*admitted pro hac vice*)
Joanna Caytas (*admitted pro hac vice*)
Valerie Ramos (*admitted pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: valerieramos@quinnemanuel.com

*Counsel to the Debtors and Debtors
in Possession*

Dated: September 2226, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

*Co-Counsel to the Debtors and Debtors
in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

11606-00001C/14381457.1

*Granting Related Relief* (D.I. 101), as may be amended, and all other Orders of the Bankruptcy Court authorizing the Debtors to obtain post-petition financing at any time prior to Confirmation.

47. "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, including a Final Order, (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or the Wind Down Entity, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

48. "*Disclosure Statement*" means the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Affiliated Debtors*, dated as of August 25, 2023 (D.I. 294), as may be amended, including all exhibits and schedules thereto, as approved pursuant to the Disclosure Statement Order.

49. "*Disclosure Statement Order*" means the *Order Approving Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Affiliated Debtors* (D.I. [●]389).

50. "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that is not yet Disallowed or Allowed.

51. "*Distribution*" means, with respect to Customer Distributions, that a Customer entitled to a Customer Distribution shall access the Bittrex platform and withdraw Cryptocurrencies consistent with this Plan and its Allowed Claim. With respect to distributions other than Customer Distributions, "*Distribution*" means payment in cash or check.

52. "*Distribution Date*" means, with respect to any Claim or Interest that is Allowed as of the Effective Date, the date on which Distributions are made pursuant to the Plan, which shall be on or as soon as reasonably practicable following the Effective Date, provided that to the extent Claims or Interests will be paid from the proceeds of Cryptocurrencies, rather than in or like kind Distributions, such Distributions will occur at such time as the Debtors or Plan Administrator, as applicable, determines in their sole discretion (as applicable), based on factors the Debtors or the Plan Administrator determine are appropriate, including the quantity in any transaction, *provided* that with respect to any GUC Claim that is Allowed as of the Effective Date, Distributions paid from the proceeds of Cryptocurrencies shall not be paid on a date that is later than six months after the Effective Date.

53. "*Distribution Record Date*" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims and Allowed Interests, which date

shall be the date that is three (3) Business Days after the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

54. "*Effective Date*" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which:  (a) all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (b) the Plan is declared effective with respect to such applicable Debtor(s).

55. "*Enjoined Party*" has the meaning set forth in Article IX.E.

56. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

57. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

58. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; and (b) with respect to each of the Debtors, its current and former officers and directors who served during any portion of these cases and the Debtors' retained financial advisors, attorneys, accountants, restructuring advisors, investment bankers, consultants, and other retained professionals, each in their capacity as such~~; provided, additionally, that Endurance shall be an Exculpated Party as set forth in Article IV.B.4 of the Plan~~.

59. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually, as set forth in 28 U.S.C. § 1961.

60. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

61. "*Final Order*" means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

J.	*Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

K.	*Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable or contractual subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, or as needed to satisfy the best interests of creditors, the Debtors, or the Wind Down Entity, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.  Such reservation of right does not apply to the payments to the SEC contemplated in the SEC 9019 Motion, which are Allowed GUC Claims that not subject to a reclassification as a Subordinated Claim by the Debtors, or the Wind Down Entity, as applicable.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.	*No Substantive Consolidation.*

This Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor.  This Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims of Interests set forth in the Plan.

B.	*Settlement and Compromise.*

1.	Customers and the Debtors.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement pursuant to section 1123(b)(3)(A) of the Bankruptcy Code of disputes between Customers and the Debtors with respect to ownership of Cryptocurrencies.  As set forth in the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Withdrawals of Cryptocurrency Assets by Customers* [D.I. 43], although the Debtors believe that Cryptocurrencies maintained in BUS omnibus wallets constitute property of the bankruptcy estate, Customers may assert that the Cryptocurrencies maintained in BUS omnibus wallets do not constitute property of the bankruptcy estate.  This proposed compromise renders the debate academic because Customers can withdraw 100% of the Cryptocurrencies deposited onto the platform, while avoiding the cost and delay of litigation. At the same time, this proposed compromise will eliminate potential risk to the estate if the Customers prevail in demonstrating that they own the Cryptocurrencies associated with their accounts.  In consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and

settlement.  The compromises and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise, and the releases and indemnities provided to effectuate such settlement, are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and is fair, equitable, and reasonable.

2. The SEC Action.

The Court has entered an order approving the SEC 9019 Motion.  Payments to the SEC contemplated in the SEC 9019 Motion shall be treated as a $24 million Allowed GUC ~~Claims~~Claim.  Notwithstanding any other provision of the Disclosure Statement, Plan or Confirmation Order, such ~~SEC's~~SEC Allowed GUC ~~Claims~~Claim will not be subject to reclassification as a Subordinated Claim by the Debtors, or the Wind Down Entity, as applicable.  Payments to the SEC contemplated in the SEC 9019 Motion will not be made from insurance proceeds.  Nothing herein shall modify the terms of the settlement in the SEC 9019 Motion that was approved by order of the Bankruptcy Court on September 7, 2023.

3. The Florida Office of Financial Regulation.

In April 2023, the Florida Office of Financial Regulation ("Florida OFR") issued an *Administrative Complaint* ("Administrative Complaint") against BUS and certain individuals associated with BUS, seeking to revoke BUS' Florida money transmitter license.  On June 28, 2023, the Debtors filed the *Debtors' Motion to Enforce Automatic Stay and Non-Discrimination Provisions of the Bankruptcy Code, and for Civil Contempt* ("Enforcement Motion"), arguing that the prosecution of the Administrative Complaint violates sections 362(a)(1) and 525(a) of the Bankruptcy Code.

At a hearing on September 20, 2023 before the Bankruptcy Court, the Debtors and the Florida OFR announced a resolution of the Administrative Complaint and Enforcement Motion, pursuant to which the Florida OFR would accept the surrender of BUS' money transmitter license and dismiss all non-BUS defendants from the Administrative Complaint with additional conditions, and in exchange, the Debtors and the Florida OFR would dismiss the Enforcement Motion.  The terms of the resolution are set forth in the record of the September 20, 2023 hearing.

4. The Sureties.

Before the Petition Date, BUS maintained surety bond(s), including with Endurance Assurance Corporation ("Endurance").  On August 25, 2023, Endurance filed proofs of claims against each of the Debtors in the amount of $13,536,122 – Claim No. 43 against Malta OpCo, Claim No. 228 against Desolation, Claim no. 639 against BUS and Claim No. 14 against Malta Holdings (collectively, the "Endurance Claims").  To resolve the Endurance Claims, the Debtors agreed to release the surety bonds through the Plan, and in exchange, Endurance agreed to withdraw the Endurance Claims.  The terms of the release of the surety bonds are as follows:

*Surety Bond Obligations:*

As discussed in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and First Day Motions* (the "First Day Affidavit"), BUS was required to obtain and held money transmitter licenses in the majority of U.S. states where it operated (the "Licenses"). In order to obtain the Licenses, BUS obtained thirty-nine (39) surety bonds (the "Bonds") from Endurance Assurance Corporation and Endurance American Insurance Company (collectively, "Endurance") listing certain governmental and/or regulatory entities and agencies as the obligees (the "Obligees") under the Bonds. Many of the Bonds have cancellation provisions that permit Endurance to cancel the Bonds once certain conditions are met (the "Bond Cancellation Provisions").

The Debtors acknowledge that to effectuate the goal of the Plan, which is to pay the Customer Claims, it is essential the Bonds stay in place in order to provide, among other things, the Customer Distribution to their Customers.

In light of the foregoing, Endurance permitted the Bonds to stay in place, and did not utilize the Bond Cancellation Provisions.

Upon the Effective Date, all of the Bonds shall be released (the "Bond Releases"). The Bond Releases shall be binding and effective on all of the Obligees under the Bonds, and the Bonds shall then be terminated by Endurance. Furthermore, Endurance shall be included as part of the~~: (a) Exculpated Parties as defined in Article 1(A)(58) of the Plan; and (b)~~ Released Parties as defined in Article 1(A)(101) under the Plan, such that upon the Effective Date of the Plan, the Bonds may be unliterally terminated by Endurance.

C.   *Liquidation of the Debtors.*

In accordance with section 1141 of the Bankruptcy Code, the Wind Down Assets shall automatically be assigned, transferred, and vest in the Wind Down Entity upon the occurrence of the Effective Date, free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Class 5 Interests, as set forth herein, and the expenses of the Plan Administrator, for Distribution in accordance herewith. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, assigned or sold pursuant to a prior Order or the Plan, the Wind Down Entity specifically retains and reserves the right to assert, after the Effective Date, any and all of the claims, Causes of Action (including but not limited to those Causes of Action listed on the Causes of Action List, but excluding the Avoidance Actions released pursuant to Article VIII herein) and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing. The Confirmation Order shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan. The Debtors' attorney-client privilege shall be transferred to the Wind Down Entity.

1.   Wind Down Entity.

546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until the Chapter 11 Case of BUS has been closed.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of BUS in accordance with the Bankruptcy Code and the Bankruptcy Rules.

N.   *Creditor Default.*

On and after the Effective Date, any act or omission by a Holder of a Claim or an Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the Plan Administrator may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs in remedying such default. Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Plan Administrator in an amount, including interest, to compensate the Wind Down Entity for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

Respectfully submitted as of the date first set forth above,

**Bittrex, Inc. (on behalf of itself and all other Debtors)**

*/s/ Evan Hengel*
Evan Hengel
Co-Chief Restructuring Officer