**EXHIBIT 2**

**Blackline Revised Disclosure Statement**

**(Changed Pages)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

**DISCLOSURE STATEMENT FOR THE AMENDED JOINT CHAPTER 11 PLAN
OF LIQUIDATION OF DESOLATION HOLDINGS LLC
AND ITS AFFILIATED DEBTORS**

| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP** | **YOUNG CONAWAY STARGATT & TAYLOR, LLP** |
| Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Valerie Ramos *(admitted pro hac vice)*<br>Joanna Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: valerieramos@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com | Robert S. Brady (Delaware Bar No. 2847)<br>Kenneth Enos (Delaware Bar No. 4544)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: rbrady@ycst.com<br>Email: kenos@ycst.com<br><br>*Co-Counsel to the Debtors and Debtors in Possession* |
| *Counsel to the Debtors and Debtors in Possession* | |

Dated: September 2226, 2023

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Ltd. (1764); and Bittrex Malta Holdings Ltd. (2227). The Debtors' mailing and service address is 701 5th Ave, Suite 4200, Seattle, WA 98104.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I. INTRODUCTION** | | ~~9~~1 |
| A. | Overview of the Debtors and the Causes Leading to the Chapter 11 Cases | ~~9~~1 |
| B. | Voting Procedures | ~~12~~4 |
| C. | Brief Overview of the Plan | ~~13~~5 |
| D. | Summary of Distributions and Voting Eligibility | ~~14~~6 |
| E. | Confirmation | ~~18~~9 |
| **II. QUESTIONS AND ANSWERS ABOUT THIS DISCLOSURE STATEMENT AND THE PLAN** | | ~~18~~10 |
| A. | What Is Chapter 11? | ~~18~~10 |
| B. | Why Are The Debtors Sending Me This Disclosure Statement? | ~~18~~10 |
| C. | Am I Entitled To Vote On The Plan? | ~~19~~10 |
| D. | What Will I Receive From The Debtors If The Plan Is Consummated? | ~~19~~10 |
| E. | What Will I Receive From The Debtors If I Hold An Allowed Claim? | ~~19~~11 |
| F. | Why Do The Debtors Believe That The Plan Provides The Greatest Distribution Possible To Holders Of Claims? | ~~20~~11 |
| G. | Can I Vote If I Transferred My Claim To Someone Else? | ~~20~~11 |
| H. | Can I Vote If I Am The Holder Of A Transferred Claim And If So, How? | ~~20~~12 |
| I. | When Will I Receive My Distribution Under The Plan? What Is Meant By "Confirmation," "Effective Date," And "Consummation?" | ~~20~~12 |
| J. | What Happens To My Recovery If The Plan Is Not Confirmed Or Does Not Go Effective? | ~~21~~13 |
| K. | If The Plan Provides That I Get A Distribution, How Will I Receive My Distribution? | ~~22~~13 |
| L. | How Will Undeliverable Distributions And Unclaimed Property To Be Treated Under The Plan? | ~~22~~14 |
| M. | What Is The Wind Down Entity? | ~~22~~14 |

| | N. | Who Is The Plan Administrator And What Are Its Responsibilities? | ~~23~~14 |
|---|---|---|---|
| | O. | Is There Potential Litigation Relating To The Plan? | ~~23~~15 |
| | P. | Will There Be Releases And Exculpations Granted To The Parties In Interest As Part Of The Plan? | ~~24~~15 |
| | | i. Releases By The Debtors | ~~24~~16 |
| | | ii. Releases By Holders Of Claims And Interests | ~~25~~16 |
| | | iii. Exculpation | ~~25~~17 |
| | Q. | Do I Have To Grant The Release Under The Plan? Can I Opt Out? | ~~26~~18 |
| | R. | What Is An Injunction, And Does The Plan Contain Any Injunction? | ~~26~~18 |
| | S. | What Is An Executory Contract Or Unexpired Lease, And What Does It Mean For The Debtors To "Assume," "Reject," Or "Assume And Assign" Such Contracts, And Why Is This Important? | ~~28~~20 |
| | T. | Can And Will The Debtors Assume Or Reject Any Executory Contracts? | ~~29~~20 |
| | U. | What Is The Deadline To Vote On The Plan? | ~~29~~21 |
| | V. | What Is The Deadline To Object To The Confirmation Of The Plan? | ~~29~~21 |
| | W. | How Do I Vote For Or Against The Plan? | ~~29~~21 |
| | X. | When Is The Confirmation Hearing Set To Occur? | ~~30~~21 |
| | Y. | What Is The Purpose Of The Confirmation Hearing? | ~~30~~21 |
| | Z. | Who Do I Contact If I Have Additional Questions Regarding This Disclosure Statement Or The Plan? | ~~30~~22 |
| **III. DEBTORS' BUSINESS** | | | **~~30~~22** |
| **IV. CORPORATE AND CAPITAL STRUCTURE** | | | **~~32~~23** |
| | A. | Corporate Structure | ~~32~~23 |
| | B. | Directors and Officers | ~~32~~24 |
| | C. | Debtors' Capital Structure | ~~33~~25 |
| | | i. Equity Ownership | ~~34~~25 |

|     |     | ii.  | Loan Facilities | 34 25 |
|     |     | iii. | Trade Payables and Ordinary Course Obligations | 34 26 |
|     |     | iv.  | Legal Proceedings | 34 26 |

**V. KEY EVENTS LEADING TO COMMENCEMENT OF THE CHAPTER 11 CASES** ........ 36 27

|     | A. | Causes Leading to These Chapter 11 Cases | 36 27 |
|     |    | i.   | Volatile Markets | 36 27 |
|     |    | ii.  | Increased Competition | 37 28 |
|     |    | iii. | Crypto Winter and Regulatory Tightening | 37 29 |
|     | B. | Pre-Petition Restructuring & Marketing Efforts | 38 30 |

**VI. KEY EVENTS DURING CHAPTER 11 CASES** ........ 40 31

|     | A. | First And Second Day Relief And Other Case Matters | 40 31 |
|     |    | i.  | First Day Motions | 40 31 |
|     |    | ii. | Further Motions | 44 36 |
|     | B. | Bar Date Motion | 46 38 |
|     | C. | Schedules and Statements | 47 38 |
|     | D. | Estimation Motion | 47 39 |
|     | E. | The SEC Consent Judgment | 48 39 |
|     | F. | 341 Creditors' Meetings | 49 41 |
|     | G. | Stay Enforcement Motion against the State of Florida, Office of Financial Regulation | 49 41 |
|     | H. | OFAC Restrictions on Distributions | 50 41 |
|     | I. | Unclaimed Property Claims | 51 42 |
|     | J. | The Sureties | 51 42 |
|     | K. | Proofs of Claim | 43 |
|     | L. | Litigation Matters | 43 |

| | | | |
|---|---|---|---|
| **VII.** | **SUMMARY OF PLAN** | | ~~52~~44 |
| A. | General | | ~~52~~44 |
| B. | Classification of Claims and Interests | | ~~52~~44 |
| | i. | Classification in General | ~~52~~44 |
| | ii. | Grouping of Debtors for Convenience Only | ~~52~~45 |
| | iii. | Classification of Claims and Interests | ~~53~~45 |
| C. | Treatment of Claims and Interests | | ~~53~~45 |
| | i. | Classes' Classification, Treatment, and Voting | ~~53~~46 |
| | ii. | Special Provision Governing Unimpaired Claims | ~~55~~48 |
| | iii. | Elimination of Vacant Classes | ~~56~~48 |
| | iv. | Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code | ~~56~~48 |
| | v. | Voting Classes; Presumed Acceptance by Non-Voting Classes | ~~56~~48 |
| | vi. | Presumed Acceptance and Rejection of the Plan | ~~56~~49 |
| | vii. | Controversy Concerning Impairment | ~~56~~49 |
| | viii. | Subordinated Claims and Interests | ~~56~~49 |
| D. | Means for Implementation of the Plan | | ~~57~~49 |
| | i. | No Substantive Consolidation | ~~57~~49 |
| | ii. | Settlement and Compromise | ~~57~~49 |
| | iii. | Liquidation of the Debtors | ~~57~~50 |
| | iv. | Settlement of Claims After The Effective Date | ~~62~~55 |
| | v. | Sources Of Consideration For Plan Distributions | ~~63~~55 |
| | vi. | Cancellation Of Certain Existing Securities And The DIP Loan Agreement | ~~63~~55 |
| | vii. | Release of Liens | ~~63~~56 |
| | viii. | Corporate Action | ~~63~~56 |

|   |   | ix. | Effectuating Documents; Further Transactions | ~~64~~56 |
|---|---|---|---|---|
|   |   | x. | Section 1146 Exemption | ~~64~~56 |
|   |   | xi. | Preservation of Causes of Action | ~~65~~57 |
|   |   | xii. | Payment of Certain Fees | ~~65~~58 |
|   |   | xiii. | Document Retention | ~~66~~58 |
|   |   | xiv. | Closing of Chapter 11 Cases | ~~66~~58 |
|   |   | xv. | Notice of Effective Date | ~~66~~58 |
|   |   | xvi. | Separability | ~~66~~58 |
|   | E. | Distributions | | ~~66~~58 |
|   |   | i. | Timing and Calculation of Amounts to Be Distributed | ~~66~~58 |
|   |   | ii. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | ~~67~~59 |
|   |   | iii. | Special Rules For Distributions To Holders Of Disputed Claims And Interests | ~~68~~60 |
|   |   | iv. | Manner Of Payment | ~~68~~61 |
|   |   | v. | Compliance With Tax Requirements | ~~68~~61 |
|   |   | vi. | Setoffs and Recoupment | ~~69~~61 |
|   |   | vii. | No Double Payment of Claims | ~~69~~61 |
|   |   | viii. | Claims Paid or Payable by Third Parties | ~~69~~61 |
|   | F. | Procedures for Resolving Claims | | ~~70~~62 |
|   |   | i. | Allowance of Claims | ~~70~~62 |
|   |   | ii. | Claims Administration Responsibilities | ~~70~~63 |
|   |   | iii. | Adjustment to Claims Without Objection | ~~71~~63 |
|   |   | iv. | Time to File Objections to Claims or Interests | ~~71~~63 |
|   |   | v. | Estimation of Claims | ~~71~~63 |
|   |   | vi. | Disputed and Contingent Claims Reserve | ~~71~~64 |

| | | vii. | Disallowance of Claims | ~~72~~64 |
| | | viii. | Amendments to Proofs of Claim | ~~72~~64 |
| | | ix. | Reimbursement or Contribution | ~~72~~65 |
| | | x. | No Distributions Pending Allowance | ~~73~~65 |
| | | xi. | Distributions After Allowance | ~~73~~65 |
| | G. | | Executory Contracts and Unexpired Leases | ~~73~~65 |
| | | i. | Rejection of Executory Contracts and Unexpired Leases | ~~73~~65 |
| | | ii. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | ~~73~~66 |
| | | iii. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | ~~74~~66 |
| | | iv. | Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases | ~~75~~67 |
| | | v. | Indemnification Obligations | ~~75~~67 |
| | | vi. | Insurance Policies | ~~75~~67 |
| | | vii. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | ~~76~~68 |
| | | viii. | Reservation of Rights | ~~76~~68 |
| | | ix. | Nonoccurrence of Effective Date | ~~76~~69 |
| | H. | | Conditions Precedent to the Occurrence of the Effective Date | ~~77~~69 |
| | | i. | Conditions Precedent to Confirmation | ~~77~~69 |
| | | ii. | Conditions Precedent to the Effective Date | ~~78~~70 |
| | | iii. | Waiver of Conditions | ~~78~~70 |
| | | iv. | Substantial Consummation | ~~78~~70 |
| | | v. | Effect of Failure of Conditions | ~~78~~70 |

**VIII. TAX CONSEQUENCES** ........................................................................... ~~78~~71

| | A. | | Introduction | ~~78~~71 |
| | B. | | Certain U.S. Federal Income Tax Consequences of the Plan to the Debtors | ~~80~~73 |

| | | | |
|---|---|---|---|
| C. | | Certain U.S. Federal Income Tax Consequences of the Plan to U.S. Holders of Allowed Claims Entitled to Vote | ~~81~~73 |
| | i. | The Liquidation | ~~81~~73 |
| | ii. | Certain U.S. Federal Income Tax Consequences to U.S. Holders of Owning and Disposing of Cryptocurrency Received Under the Plan | ~~85~~77 |
| D. | | Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Allowed Claims | ~~85~~77 |
| | i. | Gain Recognition | ~~85~~77 |
| | ii. | U.S. Federal Income Tax Consequences to Non-U.S. Holders of Owning and Disposing of Cryptocurrency Received Under the Plan | ~~86~~78 |
| E. | | FATCA | ~~86~~78 |
| F. | | U.S. Information Reporting and Withholding | ~~87~~79 |

**IX. CERTAIN RISK FACTORS TO BE CONSIDERED** ............................................. ~~87~~79

| | | | |
|---|---|---|---|
| A. | | Certain Bankruptcy Law Considerations | ~~88~~80 |
| | i. | Risk of Non-Confirmation of the Plan | ~~88~~80 |
| B. | | Additional Risk Factors to be Considered | ~~88~~80 |
| | i. | Nonconsensual Confirmation | ~~88~~80 |
| | ii. | Claim Objections | ~~88~~80 |
| | iii. | Distributions | ~~88~~80 |
| | iv. | Administrative Insolvency | ~~89~~81 |
| | v. | The Debtors Have No Duty to Update | ~~89~~81 |
| | vi. | No Representations Outside This Disclosure Statement Are Authorized | ~~89~~81 |
| | vii. | No Legal or Tax Advice Is Provided to You by This Disclosure Statement | ~~90~~82 |
| | viii. | No Admission Made | ~~90~~82 |
| | ix. | Failure to Identify Litigation Claims or Projected Objections | ~~90~~82 |
| | x. | No Waiver of Right to Object or Right to Recover Transfers and Assets | ~~90~~82 |
| | xi. | Information Was Provided by Debtors and Was Relied Upon by Debtors' | |

|  |  | Advisors | ~~90~~82 |
|---|---|---|---|
|  | xii. | Amendment, Waiver, Modification, or Withdrawal of Plan | ~~90~~82 |
|  | xiii. | Non-Occurrence or Delayed Occurrence of the Effective Date | ~~91~~83 |
|  | xiv. | Conversion to Chapter 7 | ~~91~~83 |
|  | xv. | Dismissal of the Chapter 11 Cases | ~~91~~83 |
|  | xvi. | Cost of Administering the Debtors' Estates | ~~91~~83 |

**X. CONFIRMATION OF PLAN** ............................................................................ ~~91~~83

| A. | Confirmation Hearing | ~~91~~83 |
|---|---|---|
| B. | Objections to Confirmation | ~~92~~84 |
| C. | Requirements for Confirmation of Plan | ~~93~~85 |
|  | i. Requirements of Section 1129(a) of the Bankruptcy Code | ~~93~~85 |
|  | ii. Alternative to Confirmation and Consummation of the Plan | ~~96~~88 |

**XI. CONCLUSION AND RECOMMENDATION** ............................................. ~~96~~88

## EXHIBITS

**EXHIBIT A**  Plan

**EXHIBIT B**  Organizational Chart

**EXHIBIT C**  Liquidation Analysis

instrumentality of interstate commerce for the purpose of using any facility to exchange, within or subject to the jurisdiction of the United States, to effect any transaction in a security, unless registered as an exchange in accordance with Section 5 of the Exchange Act or exempt from such registration.

The Consent Judgment also holds BUS and BG jointly and severally liable for disgorgement in the amount of $14.4 million, with $4 million in prejudgment interest, and a civil penalty of $5.6 million, for a total of $24 million, due to the SEC within 60 days after the Effective Date. The SEC will have a $24 million general unsecured claim against BUS. The SEC will not enforce the Consent Judgment until 90 days after the effective date of the Plan (and only if the Consent Judgment is not paid under the Plan), but if the Plan has not gone effective by March 1, 2024, the SEC may enforce the Consent Judgment against BG anytime thereafter. Notwithstanding any other provision of the Disclosure Statement, Plan or Bankruptcy Court's order confirming the Plan, The SEC's general unsecured claim against BUS will not be subject to reclassification as a Subordinated Claim by the Debtors, or the Wind Down Entity, as applicable.

The Washington District Court entered an order approving the Consent Judgment on August 15, 2023 (D.I. 54 in the SEC Action).

On August 21, 2023, the Debtors, with the consent of the SEC, filed the *Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Settlement with the Securities Exchange Commission* (the "SEC 9019 Motion") (D.I. 273), seeking an order from the Bankruptcy Court approving the Consent Judgment. The Debtors initially envisioned certain claims, including those of the SEC, would be subordinated, because it was unclear, due to uncertainty about the size of the SEC Claims, whether there would be sufficient assets to pay the allowed claims of customers and general unsecured creditors before claims that could potentially be penalties. However, based on the liquidation of the SEC Claims as reflected in the Consent Judgment, the Debtors believe that there are sufficient assets to pay customers and general unsecured creditors in full without the subordination of any claims. Accordingly, the Debtors believe that the Consent Judgment represents a fair, reasonable compromise of the SEC Claims, and is in the best interests of the Debtors, their creditors, and the estates.

The Court has entered an order approving the SEC 9019 Motion (D.I. 325). Payments to the SEC contemplated in the SEC 9019 Motion shall be treated as Allowed GUC Claims. Notwithstanding any other provision of the Disclosure Statement, Plan or Confirmation Order, such SEC's Allowed GUC Claims will not be subject to reclassification as a Subordinated Claim by the Debtors, or the Wind Down Entity, as applicable. Payments to the SEC contemplated in the SEC 9019 Motion will not be made from insurance proceeds. Nothing in the Plan shall modify the terms of the settlement in the SEC 9019 Motion that was approved by order of the Bankruptcy Court on September 7, 2023. The SEC Rule 9019 Motion and related order can be viewed free of charge at https://omniagentsolutions.com/Bittrex.

**F.    341 Creditors' Meetings**

On May 16, 2023, the U.S. Trustee Filed a notice setting the first meeting of creditors to be held pursuant to section 341 of the Bankruptcy Code for June 15, 2023, at 10:30 a.m.,

prevailing Eastern Time (D.I. 48). The first 341 Meeting was held on June 15, 2023 at the scheduled time, and continued on June 23, 2023, at 3:15 p.m., prevailing Eastern Time.

G. **Stay Enforcement Motion against the State of Florida, Office of Financial Regulation**

In April 2023, the Florida Office of Financial Regulation ("Florida OFR") issued an *Administrative Complaint* ("Administrative Complaint") against BUS and certain individuals associated with BUS, seeking to revoke BUS' Florida money transmitter license. On June 28, 2023, the Debtors filed under seal a motion to enforce the automatic stay and non-discrimination provisions of the Bankruptcy Code against the State of Florida, Office of Financial Regulation ("Florida OFR") (D.I. 149). According to the Debtors, after the filing of these Chapter 11 Cases, the Florida OFR violated the automatic stay and discriminated against BUS and individuals associated with BUS in violation of section 525(a) of the Bankruptcy Code, by continuing to prosecute a pre-Petition Date administrative complaint that seeks the revocation of a money transmitter license despite BUS having already told the Florida OFR it had surrendered it.

On July 5, 2023, the Florida OFR filed a sealed objection against this motion arguing, among other things, that its enforcement action only seek to impose a license revocation for valid public safety and policy concerns, and it is a valid and nondiscriminatory use of police or regulation powers that is exempt from the automatic stay (D.I. 168).

On August 9, 2023, the Debtors submitted a letter to the Bankruptcy Court *Regarding Debtors' Requests for Production in Connection with Debtors' Motion to Enforce Automatic Stay and Non-Discrimination Provisions of the Bankruptcy Code, and for Civil Contempt* (the "Debtors' Letter") (D.I. 256), seeking a status conference with respect to certain discovery issued by the Debtors to the Florida OFR. The Florida OFR filed a response to the Debtors' Letter on August 10, 2023 (D.I. 258). The Bankruptcy Court held a status conference with respect to the Debtors' Letter on August 16, 2023 at 10:00 a.m.

At a hearing on September 20, 2023 before the Bankruptcy Court, the Debtors and the Florida OFR announced a resolution of the Administrative Complaint and Enforcement Motion, pursuant to which the Florida OFR would accept the surrender of BUS' money transmitter license and dismiss all non-BUS defendants from the Administrative Complaint with additional conditions, and in exchange, the Debtors and the Florida OFR would dismiss the Enforcement Motion. The terms of the resolution are set forth in the record of the September 20, 2023 hearing.

The stay enforcement motion against the Florida OFR, and related pleadings can be viewed free of charge at https://omniagentsolutions.com/Bittrex.

H. **OFAC Restrictions on Distributions**

Certain Holders of Claims are customers who are residents or nationals of countries subject to OFAC sanctions. BUS previously entered with OFAC into Settlement in relation to such customers who established their accounts with the Debtors in or prior to 2017, see Section I.A above. Furthermore, consistently with OFAC regulations, the Debtors have issued "blocked

property reports" to OFAC and have frozen the accounts of multiple customers who have become subject to various sanctions after becoming BUS's customers. These funds remain on the Bittrex platform.

Permitting withdrawals or distribution of assets to customers who reside, or cannot conclusively establish that they no longer reside, in OFAC-sanctioned jurisdictions without the authorization of OFAC would constitute a violation of federal laws. OFAC may authorize otherwise prohibited transactions or activities through general or specific licenses. However, that process is lengthy—often well over a year—which would not permit such licenses to be issued during the time period set forth to resolve the Chapter 11 Cases.

Bittrex previously applied to OFAC for licenses to release funds to customers in multiple sanctioned jurisdictions in April 2018. Eighteen months later, in October 2019, OFAC issued licenses to release funds to customers in Iran, Cuba, and Crimea, which was announced to those customers in November 2019. Those licenses expired on March 31, 2020, and many affected customers took advantage of the licenses and withdrew funds during that period. However, despite receiving public notice and direct communications, many did not, including any impacted customers now filing claims in the Chapter 11 Cases.

Aware that funds related to customers in sanctioned jurisdictions and blocked property could not be distributed to such customers without violating federal law absent OFAC authorization, but also aware that a typical license process would take too long in the Chapter 11 Cases, the Debtors sought guidance from OFAC and the Department of Justice. The parties have agreed that, once the full universe of relevant claims has been determined through the claims review process, the Debtors would provide that list (including all available information pertaining to such affected customers) to OFAC, so that OFAC can advise whether licenses can be granted for some or all of those individuals, allowing Debtors to distribute such funds lawfully. Similarly, the Debtors are in the process of providing to OFAC the details of customers subject to blocked property reports, so that OFAC can advise the Debtors as to where those funds should be directed.

### I.    Unclaimed Property Claims

The Debtors received from state governmental entities ten proofs of claims for customer unclaimed property amounting to approximately $1.3 million. The governmental bar date is November 4, 2023. The Debtors have performed analysis of these and other potential unclaimed property claims and, with respect to BUS' customers, they estimated such U.S. law claims at less than $25 million. This approximation of up to $25 million in potential state unclaimed property claims has already been accounted for in the Liquidation Analysis and estimated in the Plan as reserves built in Classes 2A and 2B.

The Debtors do not anticipate unclaimed property claim amounts to materially affect distributions under the Plan.

### J.    The Sureties

Before the Petition Date, BUS maintained surety bond(s), including with Endurance

Assurance Corporation ("Endurance"). On August 25, 2023, Endurance filed proofs of claims against each of the Debtors in the amount of $13,536,122: Claim No. 43 against Malta OpCo, Claim No. 228 against Desolation, Claim No. 639 against BUS and Claim No. 14 against Malta Holdings (collectively, the "Endurance Claims"). To resolve the Endurance Claims, the Debtors agreed to release the surety bonds through the Plan, and in exchange, Endurance agreed to withdraw the Endurance Claims. The terms of the release of the surety bonds are as follows:

*Surety Bond Obligations*

As discussed in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and First Day Motions* (the "First Day Affidavit"), BUS was required to obtain and held money transmitter licenses in the majority of U.S. states where it operated (the "Licenses"). In order to obtain the Licenses, BUS obtained thirty-nine (39) surety bonds (the "Bonds") from Endurance Assurance Corporation and Endurance American Insurance Company (collectively, "Endurance") listing certain governmental and/or regulatory entities and agencies as the obligees (the "Obligees") under the Bonds. Many of the Bonds have cancellation provisions that permit Endurance to cancel the Bonds once certain conditions are met (the "Bond Cancellation Provisions").

The Debtors acknowledge that to effectuate the goal of the Plan, which is to pay the Customer Claims, it is essential the Bonds stay in place in order to provide, among other things, the Customer Distribution to their Customers.

In light of the foregoing, Endurance permitted the Bonds to stay in place, and did not utilize the Bond Cancellation Provisions.

Upon the Effective Date, all of the Bonds shall be released (the "Bond Releases"). The Bond Releases shall be binding and effective on all of the Obligees under the Bonds, and the Bonds shall then be terminated by Endurance. Furthermore, Endurance shall be included as part of the: (a) Exculpated Parties as defined in Article I(A)(58) of the Plan; and (b) Released Parties as defined in Article I(A)(101) under the Plan, such that upon the Effective Date of the Plan, the Bonds may be unliterally terminated by Endurance.

### K. Proofs of Claim

As of September 26, 2023, the Debtors have received a total of 3,726 proofs of claim, including (i) 3,673 that have been filed by customers; and (ii) 53 that have been filed by non-customers.

### L. Litigation Matters

Although the review of claims in ongoing, the Debtors are aware of several litigation claims that have been filed against one or more of the Debtors. Several of these claims have been made by customers who have asserted litigation claims in addition to claims for assets that

were associated with their Bittrex accounts. Four of these claims relate to individuals who are or were Iranian citizens and whose accounts, therefore, were frozen in or around 2017 as required by federal law, specifically OFAC sanctions. As discussed in Section VI.H, in order to allow these and similarly situated customers to withdraw funds from the platform, Bittrex sought and received various licenses from OFAC, including one for residents of Iran, which includes these four claimants. Despite indicating otherwise in his proof of claim, one of these individuals took advantage of this process and withdrew all funds from his account during the license period. Another of these individuals (Azim Ghader) submitted to Bittrex the actual form necessary to utilize the license process during the license period. However, when prompted to submit additionally necessary documentation and identification materials during that process, he failed to respond and never completed the process. Each of these individuals asserts claims for damages substantially beyond the assets (if any) that remain in their accounts, under the theory that they lost potential profits by being deprived access to those assets. Debtors believe that these claims are without merit, because (i) each of these claimants had the opportunity to withdraw those funds during the OFAC license period, (ii) allowing the claimants to access the funds without a license (circumstance that includes any claimants' access to funds outside of the license period) would have resulted in Bittrex violating federal law, and (iii) Bittrex's terms of service, to which each of these individuals (and any similarly situated claimants) agreed in order to use the Bittrex platform, expressly disclaim any consequential, punitive, or special damages along the lines of what these claimants now seek.

The Debtors are unaware of any other potential litigation claims that could materially impact their ability to pay the creditors.

## VII.
## SUMMARY OF PLAN

A.     **General**

This section of this Disclosure Statement summarizes the Plan, a copy of which is attached hereto as **Exhibit A**. This summary is qualified in its entirety by reference to the Plan. **YOU SHOULD READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

In general, a chapter 11 plan (i) divides claims and equity interests into separate classes, (ii) specifies the consideration that each class is to receive under the plan, and (iii) contains other provisions necessary to implement the plan. Under the Bankruptcy Code, "claims" and "equity interests," rather than "creditors" and "shareholders," are classified because creditors and shareholders may hold claims and equity interests in more than one class. Under section 1124 of the Bankruptcy Code, a class of claims is "impaired" under a plan unless the plan (i) leaves unaltered the legal, equitable, and contractual rights of each holder of a claim in such class or (ii) provides, among other things, for the cure of certain existing defaults and reinstatement of the maturity of claims in such class.

render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

### v. *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

### vi. *Presumed Acceptance and Rejection of the Plan*

To the extent that Claims or Interests of any Class receive no Distribution under the Plan, each Holder of a Claim or Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

### vii. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### viii. *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable or contractual subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, or as needed to satisfy the best interests of creditors, the Debtors or the Plan Administrator, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto via claim objection or motion. Such reservation of right does not apply to the payments to the SEC contemplated in the SEC 9019 Motion, which are Allowed GUC Claims that not subject to a reclassification as a Subordinated Claim by the Debtors, or the Wind Down Entity, as applicable. Further, such reservation of right does not apply to the payments pursuant to the Settlement/Consent Order with OFAC and FinCEN, which are Allowed GUC Claims that are not subject to a reclassification as a Subordinated Claim by the Debtors, or the Wind Down Entity, as applicable.

### D. Means for Implementation of the Plan

### i. *No Substantive Consolidation*

This Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor. This Plan is not

As to any Class that may reject the Plan, the Plan satisfies the "fair and equitable" requirement because, as to any such dissenting Class, no Class that is junior to such a dissenting Class will receive or retain any property on account of the Claims or Interests in such Class.

### ii. Alternative to Confirmation and Consummation of the Plan

The Debtors have evaluated several alternatives to the Plan. After studying these alternatives, the Debtors have concluded that the Plan is the best option for the Debtors and their Estates and will maximize recoveries to parties-in-interest—assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan include a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

#### 1. Liquidation Under Chapter 7

In a chapter 7 case, a trustee is appointed to liquidate a debtor's assets and make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of their collateral. If any assets remain in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to be paid. Unsecured creditors are paid from any remaining Sale Proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

The liquidation analysis further describing the financial recovery in a liquidation is annexed hereto as **Exhibit C**.

#### 2. Alternative Plans

The Debtors do not believe that there are any alternative plans for the reorganization or liquidation of the Debtors' Estates. The Plan, as described herein, enables holders of Claims and Interests to realize the greatest possible value under the circumstances and, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

## XI.
## CONCLUSION AND RECOMMENDATION

~~Confirmation and implementation of~~ The Debtors believe the Plan is in the best interests of all ~~creditors. The Debtors~~stakeholders and urge the holders of ~~Impaired Claims to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than the Voting Deadline, October 24, 2023 at 4:00 p.m. (ET).~~ Claims in the voting classes to vote in favor thereof.

~~Dated:      September 22, 2023~~
Respectfully submitted as of the date first set forth above,

~~Desolation Holdings LLC and its affiliated Debtors~~

            **Bittrex, Inc. (on behalf of itself and all other Debtors)**

              */s/ Evan Hengel*
            Evan Hengel
            Co-Chief Restructuring Officer