**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Desolation Holdings LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10597 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: October 30, 2023 at 11:00 a.m. (ET)<br>Response Deadline: October 13, 2023 at 4:00 p.m. (ET) |

**DEBTORS' OBJECTION TO CLAIMS FILED BY Z M GOLAM DASTAGIR
PURSUANT TO SECTIONS 502, 503, AND 507 OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1**

Pursuant to sections 502, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to Claim Nos. 598-1698, 598-1730, 598-1735, 598-1791, 599-59, 599-70, 599-71, 599-72, 600-180, 600-202, 600-203 filed by Z M Golam Dastagir ("Dastagir" and the "Dastagir Claims").

Without providing any legal or factual basis, Mr. Dastagir has filed multiple, duplicate claims, alleging that they are secured and entitled to priority treatment. It appears that his claims are based on damages from an alleged account hack from November 2017 where 4.52315579 of BTC was withdrawn from his account. The claim, however, is time-barred under the applicable statute of limitations, barred by BUS' terms of service, not secured, and not entitled to priority

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC ("Desolation") (0439); Bittrex, Inc. ("BUS") (0908); Bittrex Malta Holdings Ltd. ("Malta Holdings") (2227); and Bittrex Malta Ltd. ("Malta OpCo") (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

1

treatment. Accordingly, the Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, disallowing the Dastagir Claims.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rules 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

**I.      The Bankruptcy Cases and Bar Date**

4. On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5. Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the Declaration of

Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions [D.I. 11] (the "First Day Declaration" or "Hengel Declaration").

6. Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. The Debtors promptly served notice of the bar date on all creditors. D.I. 201.

7. On September 27, 2023, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation hearing and Establishing Notice and Objection Procedures; (IV) Shortening The Notice Period for (A) Parties to Object to Confirmation of the Plan, and (B) The Confirmation Hearing; and (V) Granting Related Relief* (the "Disclosure Statement Order") [D.I. 387]. Pursuant to paragraph 20(f) of the Disclosure Statement Order, if the Debtors served an objection to a claim by September 29, 2023, that claim is "temporarily disallowed for voting purposes only and not for purposes of allowance of distribution, except to the extent and in the manner as may be set forth in such objection."

**II.     The Dastagir Claims**

    **A. Mr. Dastagir's History With BUS**

8. Mr. Dastagir opened an account with BUS on October 10, 2017. On November 10, 2017, 4.52315579 of BTC was withdrawn from Mr. Dastagir's account with BUS. The withdrawal

was originated from an IP address in Turkey. BUS received several messages from Mr. Dastagir alleging that his account had been hacked after these transactions were already completed. BUS explained to Mr. Dastagir that, if this withdrawal was not initiated by him, the fraudster had access to his valid account credentials and thus BUS would not reimburse him for the tokens transferred. Moreover, BUS explained to Mr. Dastagir that the actions performed on the account also required that the fraudster have access to his e-mail account. BUS' platform has never been hacked, and historically, any fraud committed against user accounts has been caused by the compromise of account credential outside of the BUS platform.

9. As of the Petition Date, there were no cryptocurrency assets associated with Mr. Dastagir's account.

### B. The Dastagir Claims

10. Mr. Dastagir filed eight proofs of claims against the Debtors in varying amounts. Four of the proofs of claim are against BUS (598-511, 598-513, 598-587, and 598-1782), two against Desolation (597-221 and 597-584), one against Malta Holdings (599-65), and one against Malta OpCo (600-196). Four of the proofs of claims assert damages of $316,400 (597-584, 598-1782, 599-65, and 600-196), three assert damages of $275,000 (597-221, 598-513, and 598-587), and one asserts damages of $118,222 (598-511). Each of the proofs of claims has the same basis: "FBI & Police Report Filed; Bitcoin stole or list in Bittrex." And Mr. Dastagir asserts that the claims are secured, entitled to priority under section 507, and entitled to administrative priority under section 503(b)(9).

11. Mr. Dastagir attaches a number of documents to his proofs of claim. *First*, he attached a "Complaint Referral Form Internet Crime Complaint Center," in which he claims that 4.52+ Bitcoin was "stolen/lost from my Bittrex Account." This document is dated May 11, 2021.

In this document, Mr. Dastagir refers to a police report that he filed with the City of Corinth Police Department on November 10, 2017.

12. *Second*, Mr. Dastagir attaches a letter dated May 11, 2021 sent to the Internal Revenue Service, in which he claims that 4.52+ Bitcoin was "stolen/lost from my Bittrex account," and that he "immediately informed Bittrex and Local Police Department."

13. *Third*, Mr. Dastagir attaches screenshots from the Bittrex platform.

14. *Fourth*, Mr. Dastagir attaches a January 9, 2021 letter to the Department of Treasury attaching invoices for an audit of a 2017 tax return.

15. *Fifth*, Mr. Dastagir attaches a February 7, 2018 email from an investigator at the City of Corinth Police Department, in which the investigator states that "I understand you request that Corinth Police Department investigates this company in hopes of uncovering the company itself or someone in the company is stealing Bitcoin from customers who sign up for their service."

16. *Sixth*, Mr. Dastagir attaches a February 6, 2018 email to an investigator at the City of Corinth Police Department, stating that "they allowed some one to take my money from my Bittrex account."

17. *Seventh*, Mr. Dastagir attaches a February 5, 2018 email from an investigator at the City of Corinth Police Department, in which the investigator states that the Corinth Police Department "does not have [the] type of technology" to "track and or back track the IP address located in Turkey used to remove your Bitcoin from your account."

## **OBJECTIONS**

**I.  The Claims Against Desolation, Malta Holdings, And Malta OpCo Should Be Disallowed Pursuant to Section 502(b)(1)**

18. Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or

5

applicable law[.]" 11 U.S.C. § 502(b)(1). Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

19. Here, as discussed above, Mr. Dastagir had an account with BUS and did not have an account with any of the other Debtors. Therefore, the Dastagir Claims asserted against Desolation (597-221 and 597-284), Malta Holdings (599-65), and Malta OpCo (600-196) must be disallowed.

## II. The Remaining Dastagir Claims Should Be Disallowed Pursuant To Section 502(b)(1) Because They Are Time-Barred

20. Bankruptcy court routinely disallow claims under section 502(b)(1) when such claims were barred by the statute of limitations as of the petition date. *See, e.g.*, *In re W.R. Grace & Co.*, 626 B.R. 217, 235 (Bankr. D. Del. 2021) ("The expiration of the statute of limitations on a claim is a common rationale for disallowing a claim under 11 U.S.C. § 502(b)(1)."); *see also* 11 U.S.C. § 558 ("[T]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses.").

21. To sign up for an account, each customer is required to agree to BUS' terms of service, and when a new version of the terms of service is released, each customer is required to agree to that version in order to maintain an active account. Pursuant to section 20 of BUS' terms of service, "any dispute related to" BUS' terms of service "will be governed by and construed and

enforced in accordance with the laws of the State of Washington."[2] The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

22. In Washington, actions for injuries to personal property have a three-year statute of limitations, R.C.W. § 4.16.080(2), as do actions for relief upon the ground of fraud, R.C.W. § 4.16.080(4), negligence, *Woodward v. Taylor*, 184 Wash. 2d 911, 924 (2016), and any other injury to a person's rights where a specific statute of limitations does not control, R.C.W. § 4.16.080(2).

23. Here, Mr. Dastagir claims that his account was hacked on November 10, 2017, and based on the document attached to his proofs of claim, he was aware of the account hack on February 5, 2018, at the latest, having advised an investigator at the City of Corinth Police Department of the hack by that date. Mr. Dastagir, however, did not initiate any action against BUS (or any of the other Debtors). The Debtors filed bankruptcy over five years later, on May 8, 2023. Because Mr. Dastagir knew of an account hack for over five years before the bankruptcy, and took no action, his claims against BUS (or any of the other Debtors) are barred by the statute of limitations.[3]

---

[2] Section 19 of the December 23, 2017 terms of service likewise provides for application of Washington law, as did previous versions.

[3] *See, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 874 (N.D. Cal. 2022) (holding that statute of limitations began to run when customer learned that his Twitter account had been hacked, because at that time, the customer had notice that Twitter might be responsible in some way, such as by negligently failing the safeguard the security of the account).

enforced in accordance with the laws of the State of Washington."[2] The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

22. In Washington, actions for injuries to personal property have a three-year statute of limitations, R.C.W. § 4.16.080(2), as do actions for relief upon the ground of fraud, R.C.W. § 4.16.080(4), negligence, *Woodward v. Taylor*, 184 Wash. 2d 911, 924 (2016), and any other injury to a person's rights where a specific statute of limitations does not control, R.C.W. § 4.16.080(2).

23. Here, Mr. Dastagir claims that his account was hacked on November 10, 2017, and based on the document attached to his proofs of claim, he was aware of the account hack on February 5, 2018, at the latest, having advised an investigator at the City of Corinth Police Department of the hack by that date. Mr. Dastagir, however, did not initiate any action against BUS (or any of the other Debtors). The Debtors filed bankruptcy over five years later, on May 8, 2023. Because Mr. Dastagir knew of an account hack for over five years before the bankruptcy, and took no action, his claims against BUS (or any of the other Debtors) are barred by the statute of limitations.[3]

---

[2] Section 19 of the December 23, 2017 terms of service likewise provides for application of Washington law, as did previous versions.

[3] *See, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 874 (N.D. Cal. 2022) (holding that statute of limitations began to run when customer learned that his Twitter account had been hacked, because at that time, the customer had notice that Twitter might be responsible in some way, such as by negligently failing the safeguard the security of the account).

### III. The Remaining Dastagir Claims Should Be Disallowed Pursuant To Section 502(b)(1) Because The Terms Of Service Disclaim Liability

24. BUS' current terms of service repeatedly warn its customers of the risks of engaging in cryptocurrency transactions, which include individuals being targeted and having their account information stolen. For example, the preamble to the terms of service states that the customer is aware of the risks of hacking. In section 4, the terms of the service further state that "Any Token and its Underlying Technology may be vulnerable to hacking," and that "[d]ue to the nature of virtual currency, there is an increased risk of fraud." Indeed, section 4 specifically states that there is a risk that "[u]nauthorized third parties may access or use your Bittrex Account and effect transactions without your knowledge or authorization, whether by obtaining the password to your Bittrex Account, obtaining control over another device or account used by you in connection with any enhanced security measures enabled for your account, obtaining control over your API keys, or by other methods."

25. Moreover, BUS' terms of service emphasize the importance of securing personal information to their customers. In section 3.1(d), the terms of service state that the customer will "maintain the security of your Bittrex Account by not sharing your password with others, safeguarding your personal identifying information, and protecting your password, API keys, and any other information used to access the Services from unauthorized access or use."[4]

26. The terms of service then clearly state in Section 3.1(g) that customers "are responsible for all activities that occur under your Bittrex Account, and accept all risks of any authorized or unauthorized access to your Bittrex Account," and state that BUS "will not be

---

[4] Similarly, section 3.1(d) of the December 31, 2017 terms of service require the customer to "maintain the security of your Bittrex Account by protecting your password from unauthorized use or access." In turn, section 3.1(d) of the December 31, 2017 terms of service is similar to terms of service that were in place before December 23, 2017.

responsible for any loss due to the compromise of your login credentials."[5]  The terms of service also state in section 3.4 that the customer "will be bound by" any orders or actions "taken by anyone who has accessed or used your Bittrex Account regardless of whether the access is authorized or unauthorized."[6]  And in section 4, the terms of service explicitly state that the customer agrees that BUS "will have no responsibility or liability" based on the risks described in section 4, and that the customer waives, releases, and discharges any such claims against BUS.[7]

27.	Section 17 of BUS' current terms of service disclaim liability for incidental, consequential, and punitive damages, as set forth below:

> **17. DISCLAIMER OF DAMAGES**[8]
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

---

[5]  Section 3.1(g) of the December 31, 2017 terms of service likewise state the customer "will be responsible for all activities that occur under your Bittrex Account, and accept all risks of any authorized or unauthorized access to your Bittrex Account."  In turn, section 3.1(g) of the December 31, 2017 terms of service is similar to terms of service that were in place before December 23, 2017.

[6]  *See* December 31, 2017 terms of service § 3.4.

[7]  *See* December 31, 2017 terms of service § 4.

[8]  Section 17 of the current terms of service is identical to section 16 of the terms of service in effect as of December 23, 2017.  In turn, section 16 of the December 23, 2017 terms of service is substantially similar to terms of service that were in place before December 23, 2017.

28. Additionally, BUS' terms of service also limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

> **18. LIMITATION OF LIABILITY[9]**
> IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

29. Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous"). Therefore, to the extent that Mr. Dastagir's claims are for damages beyond the maximum liability set forth in section 18 of BUS' terms of service (of which there are none), they must be disallowed.

---

[9] Section 18 of the current terms of service is identical to section 17 of the terms of service in effect as of December 23, 2017. In turn, section 17 of the December 23, 2017 terms of service is substantially similar to terms of service that were in place before December 23, 2017.

**IV.     The Dastagir Claims Are Not Secured**

30.     Mr. Dastagir asserts that the Dastagir Claims are secured.  However, BUS' terms of service do not provide for any security interest, *see, e.g.*, *Kreiger v. Hartig*, 11 Wash. App. 898, 902 (1974) (stating that there must be evidence of an agreement to grant a security interest), and Mr. Dastagir has not provided any other legal basis for a security interest.  Moreover, Mr. Dastagir has not attached evidence of the perfection of any security interest as required by Rule 3001(d).  Therefore, the Dastagir Claims are not secured.

**V.     The Dastagir Claims Are Not Entitled To Priority Under Section 507**

31.     Mr. Dastagir asserts that the Dastagir Claims are entitled to priority under section 507(a)(5) or "Other."  But there is no basis for Mr. Dastagir to claim priority under section 507.

32.     Section 507(a)(5) does not apply because Mr. Dastagir is not an employee of BUS (or any of the Debtors) has therefore has made no contributions to an employee benefit plan.  Section 507(a)(1)(domestic support obligations), (a)(2) (administrative expenses of a trustee), (a)(3) (ordinary course claims before entry of an order for relief in an involuntary bankruptcy), (a)(4) (employee wages), (a)(6) (certain claims related to producing grain or for fishermen), (a)(7) (deposit of money in connection with purchase of personal services), (a)(8) (certain tax claims), (a)(9) (commitments to Federal depository institutions), and (a)(10) (specified personal injury claims), also do not apply to Mr. Dastagir's claims.  Therefore, the Dastagir Claims are not entitled to priority.

**VI.     The Dastagir Claims Are Not Entitled To Priority Under Section 503(b)(9)**

33.     Mr. Dastagir asserts that some, but not all, of the Dastagir Claims have administrative priority pursuant to section 503(b)(9).  This assertion fails.

11

34. Section 503(b)(9) only provides administrative priority for claims for the value of any goods received by the debtor within 20 days before the Petition Date if the goods were sold to the debtor in the ordinary course of business. The "administrative expense claimant bears the burden of establishing that the claim qualifies for priority status." *See, e.g.*, *In re Goody's Family Clothing Inc.*, 401 B.R. 131, 136 n.24 (Bankr. D. Del. 2009).

35. Here, Mr. Dastagir provides no explanation as to why or how section 503(b)(9) could apply. Moreover, section 503(b)(9) cannot apply because a cryptocurrency is not a "good" within the meaning of section 503(b)(9). Although "good" is not defined in the Bankruptcy Code, bankruptcy courts around the country have referred to the Uniform Commercial Code ("UCC") for guidance on a definition. *Goody's*, 401 B.R. at 134 n.13 (compiling cases). The UCC defines a "good" as "all things … which are movable at the time of identification to the contract for sale." *Id.* However, the UCC separately defines "general intangibles" as "personal property, including things in action." *In re BlockFi, Inc.*, 2023 WL 5597165, at *3 (Bankr. D. N.J. Aug. 29, 2023) (citing California UCC at Cal. Com. Code § 9102(a)(42) and (44)).[10] Cryptocurrencies fit more nearly into the "general intangible" definition rather than the definition of a "good" because they are not something "that can be held or moved," but instead, are a "form of digital currency based on mathematical algorithms that is not controlled by any country, bank, or individual." *BlockFi*, 2023 WL 5597165, at *3.

---

[10] The relevant definitions under the California UCC and Washington UCC are identical, down to the number of the subsections. *Compare* Wash. St. 62A.9A-102 (42) (general intangible) and (44) (good) *with* Cal. Com. Code § 9102(a)(42) (general intangible) and (44) (good).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; and (ii) disallow the Dastagir Claims.

| | |
|---|---|
| Date: September 29, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Kenneth Enos*<br>Robert S. Brady (Delaware Bar No. 2847)<br>Kenneth Enos (Delaware Bar No. 4544)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: rbrady@ycst.com<br>Email: kenos@ycst.com<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**COUNSEL FOR THE DEBTORS** |