**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: October 30, 2023 at 11:00 a.m. (ET)<br>Response Deadline: October 13, 2023 at 4:00 p.m. (ET) |

**DEBTORS' OBJECTION TO CLAIM 598-1936 FILED BY JENNIFER LEE BURNS PURSUANT TO SECTIONS 502 AND 507 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1**

Pursuant to sections 502 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to the following claim: Claim 598-1936 filed by Jennifer Lee Burns ("Ms. Burns") (the "Burns Claim" or the "Claim"). The Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, allowing the Burns Claim against BUS in the amount of the assets associated with her account (0.62335988 Bitcoin (BTC), 500 XRP (XRP), 511 Cardano (ADA), 1,011 Stella Lumens (XLM), 3,000 Verge (XVG), and 75.5475 Flare (FLR)), allowing the Burns Claim in the amount of $17,817.30 for purposes of voting, and disallowing the remainder of the Burns Claim.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

1

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are sections 105, 502, and 507 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

**BACKGROUND**

**I.     The Bankruptcy Cases and Bar Date**

4. On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5. Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* (D.I. 11) (the "First Day Declaration" or "Hengel Declaration").

6.     Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. The Debtors promptly served notice of the bar date on all creditors. D.I. 201.

## II.    The Burns Claim

### A.    Ms. Burns' 2023 Contacts with BUS

7.     An individual with Ms. Burns' date of birth created an account with BUS by providing a certain email address. Ms. Burns submitted "Zendesk" tickets (i.e., requests of assistance) asking to reset the email address on file for her account on March 17, 2023, and then again on August 28 and 30, 2023, which was more than five years after she logged in her account for the last time. Bittrex Customer Support requested additional information from Ms. Burns to validate she was the actual account holder and begin the email address reset process, but Ms. Burns did not respond in time and the Zendesk tickets timed out. Customer Support last contacted Ms. Burns on September 8, 2023 to again request that she submit the necessary photographs to begin the reset process, but she has not responded.

### B.    Ms. Burns' Account Holdings at the Petition Date and the Burns Claim

8.     As of the Petition Date, Ms. Burns account held (i) 0.62335988 Bitcoin (BTC); (ii) 500 XRP (XRP); (iii) 511 Cardano (ADA); (iv) 1,011 Stella Lumens (XLM); (v) 3,000 Verge (XVG); and (vi) 75.5475 Flare (FLR)—for a total value of $17,817.30.

9.     On August 31, 2023, Ms. Burns filed the Claim selecting BUS as the debtor. Ms. Burns lists a claim of $5,000,000, purportedly (and nonsensically) consisting of: (i) 2,5000,000 0x

Protocol (ZRX); (ii) 2,500,000 Arianee (ARIA20); (iii) 2,500,000 Avalanche (AVAX); (iv) 2,500,000 Bitcoin (BTC); (v) 2,500,000 Bitcoin SV (BSV); (vi) 2,500,000 BitcoinVault (BTCV); (vii) 2,500,000 Chainlink (LINK); (viii) 2,500,000 Crowd Machine (CMCT); (ix) 2,500,000 Dash (DASH); (x) 2,500,000 EOS (EOS); (xi) 2,500,000 Ethereum (ETH); (xi) 2,500,000 Gala (GALA); (xii) 2,500,000 GeoCoin (GEO); (xiii) 2,500,000 ION (ION); (xiv) 2,500,000 Litecoin (LTC); (xv) 2,500,000 NEM (XEM); (xvi) 2,500,000 Neo (NEO); (xvii) 2,500,000 NeosCoin (NEOS); (xviii) 2,500,000 Polkadot (DOT); (xix) 500,000,000 Polygon (MATIC); (xx) 500,000,000 Stellar Lumens (XLM); (xxi) 500,000,000 Terra Luna Classic (LUNC); (xxii) 500,000,000 TRON (TRX); and (xxiii) 500,000,000 XRP (XRP).

10.    Ms. Burns stated that the basis for her $5,000,000 Claim is that "[f]iat in US dollars and crypto [were] stuck in Bittrex exchange." Ms. Burns also added that she "kept getting the runaround to get access to [her] account," noting: "I will sue if I can't get what's mine—I will ruffle feathers and make the public." Ms. Burns claimed the following priorities: (i) up to $5,000,000 pursuant to 11 U.S.C. §§ 507(a)(1)(A) or (a)(1)(B); (ii) $3,350 pursuant to 11 U.S.C. § 507(a)(7); and (iii) up to $5,000,000 pursuant to "11 U.S.C. § 507(a)(__)."

## OBJECTIONS

### I. The Burns Claim Should Be Allowed in Part and Otherwise Disallowed Pursuant to Section 502(b)(1)

11.    Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" 11 U.S.C. § 502(b)(1). Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the

4

bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

12. Here, Ms. Burns' assets in her Bittrex account are those described in paragraph 8 above, which had a market value of $17,817.30 as of the Petition Date. Ms. Burns has not, and never had, all the cryptocurrency that she listed in her Claim, let alone assets for a value of $5,000,000 in her Bittrex account.

13. Ms. Burns has not articulated any other claims against BUS or any of the other Debtors. To the extent any of Ms. Burns' claims consist of damages, they are expressly disallowed pursuant to BUS' terms of service.

14. Section 17 of BUS' terms of service disclaim liability for incidental, consequential, and punitive damages, as set forth below:

> **17. DISCLAIMER OF DAMAGES**
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT] ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

15. Additionally, BUS' terms of service also limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

**18. LIMITATION OF LIABILITY**
IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

16. Pursuant to section 20 of BUS' terms of service, Washington law applies. The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

17. Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous"). The clauses in BUS' terms of service are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Burns Claim is for damages beyond the maximum liability set forth in section 18 of BUS' terms of service, it must be disallowed.

**II.     The Burns Claim Is Not Entitled To Priority Under Section 507**

18. As set forth above, Ms. Burns asserts that the Burns Claim is entitled to priority under various of section 507 subsections. Specifically, Ms. Burns asserts differing amounts of priority under section 507(a)(1)(A), (a)(1)(B), (a)(7), "507(a)(__)."

19. Sections 507(a)(1)(A) and (a)(1)(B) address domestic support obligations. Section 507(a)(7) addresses deposits in connection with the purchase, lease, or rental of properties, or purchases of services for personal, family, or household use that were not delivered or provided.

20. Here, section 507(a)(1)(A), (a)(1)(B), and (a)(7) do not apply to the Burns Claim. There is no indication that the claims are: (i) for domestic support obligations; or (ii) in connection with the purchase, lease, or rental of properties, or purchases of services for personal, family, or household use that were not delivered or provided. The Burns Claim is not entitled to any priority under section 507.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) allow the Burns Claim in the amount of the assets associated with her account (0.62335988 Bitcoin (BTC), 500 XRP (XRP), 511 Cardano (ADA), 1,011 Stella Lumens (XLM), 3,000 Verge (XVG), and 75.5475 Flare (FLR)) for purposes of allowance and distribution; (iii) allow the Burns Claim in the amount of $17,817.30 for purposes of voting; and (iv) otherwise disallow the Burns Claim.

| | |
|---|---|
| Date: September 29, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Kenneth Enos*<br>Robert S. Brady (Delaware Bar No. 2847)<br>Kenneth Enos (Delaware Bar No. 4544)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: rbrady@ycst.com<br>Email: kenos@ycst.com<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**COUNSEL FOR THE DEBTORS** |