**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hrg. Date: October 30, 2023 at 11:00 a.m. (ET) |
| | Resp. Deadline: October 13, 2023 at 4:00 p m. (ET) |

**DEBTORS' OBJECTION TO CLAIMS FILED BY RISHI SACHDEV PURSUANT TO SECTIONS 502, 503, AND 507 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1**

Pursuant to sections 502, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to Claim Nos. 598-1502, 598-1512, 598-1513, 598-1846, 598-1877, 598-2076, and 598-2081 filed by Rishi Sachdev ("Sachdev" and the "Sachdev Claims").

Without providing any legal or factual basis, Mr. Sachdev has filed multiple, duplicate claims for over $1.5 million. However, the cryptocurrency assets in his account had a market value of $6,039.99 as of the petition date and current market value of $5,767.18. Accordingly, the Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, disallowing the duplicate Sachdev Claims, allowing a single Sachdev Claim against BUS in the amount of the assets associated with his account (.21728951 of BTC, 14.13008200951 of XVG, and 4.0 of OMG)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC ("Desolation") (0439); Bittrex, Inc. ("BUS") (0908); Bittrex Malta Holdings Ltd. ("Malta Holdings") (2227); and Bittrex Malta Ltd. ("Malta OpCo") (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

1

for purposes of allowance and distribution, allowing a single Sachdev Claim in the amount of $6,039.99 for purposes of voting, and disallowing the remainder of the Sachdev Claims.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rules 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

### I. The Bankruptcy Cases and Bar Date

4. On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5. Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the Declaration of

Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions [D.I. 11] (the "First Day Declaration" or "Hengel Declaration").

6. Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. The Debtors promptly served notice of the bar date on all creditors. D.I. 201.

7. On September 27, 2023, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation hearing and Establishing Notice and Objection Procedures; (IV) Shortening The Notice Period for (A) Parties to Object to Confirmation of the Plan, and (B) The Confirmation Hearing; and (V) Granting Related Relief* (the "Disclosure Statement Order") [D.I. 387]. Pursuant to paragraph 20(f) of the Disclosure Statement Order, if the Debtors served an objection to a claim by September 29, 2023, that claim is "temporarily disallowed for voting purposes only and not for purposes of allowance of distribution, except to the extent and in the manner as may be set forth in such objection."

## II. The Sachdev Claims

### A. Mr. Sachdev's History With BUS

8. Mr. Sachdev set up an account with BUS on September 23, 2017. As of the Petition Date, Mr. Sachdev held the following cryptocurrencies in his account: 0.2172 of BTC,

14.13008200951 of XVG, 4.00000000 of OMG, and 1,513,617.82 of RFR. RFR, which is known as Refereum, was delisted in June 2019. As of the Petition Date, excluding RFR, the cryptocurrencies associated with Mr. Sachdev's account had a market value of $6,039.99, and the current market value is $5,767.18.

### B. Sachdev Claims And Attempted Withdrawals

9. Mr. Sachdev filed seven identical Claims – Claim Nos. 598-1502, 598-1512, 598-1513, 598-1846, 598-1877, 598-2076, and 598-2081. In each of the Sachdev Claims, Mr. Sachdev asserts the claim amount is $1,513,636.16. For the cash value of each Claim, Mr. Sachdev appears to be referencing the number of RFR tokens held in his account rather than the actual dollar value of his balance. Mr. Sachdev did not specify any cryptocurrencies in the account, but stated that the basis of the claim is "DIGITAL ASSETS IN BITTREX." Mr. Sachdev asserts that the claim is secured (with a 5% annual interest rate), is subject to setoff, is an "Other" section 507 priority claim, and has administrative priority under section 503(b)(9).

10. After the Petition Date, two different e-mail addresses attempted to reset the current account credentials and withdraw cryptocurrencies associated with Mr. Sachdev's account.

11. On August 29, 2023, BUS personnel received a request from ▇▇▇▇▇▇▇▇ claiming to be Mr. Sachdev and stating they have 1513636.1643 in assets on the platform. The user requested access to the account as they were unable to recall the email used to open the account and asked to have stated funds wired to a Chase Bank account held in Mr. Sachdev's name. BUS personnel responded with instructions on how to change email on the account and requested photos with a valid government ID to verify the requestor's identity on August 31, 2023. No response was received.

12. On August 31, 2023, BUS personnel received a request from ▇▇▇▇▇▇▇▇

4

claiming to be Mr. Sachdev and requesting the account number, login information, and a password reset. On September 5, 2023, BUS personnel requested various information from this individual to begin the process to reset the email address on file, including a photo to verify identity. No response was received.

13. BUS cannot permit withdrawals from this account until it can verify that the individual(s) attempting to reset the account login credentials and withdraw cryptocurrencies is actually Mr. Sachdev.

## OBJECTIONS

### I. Claim Nos. 597-19, 598-1513, 598-1846, 598-1877, 598-2076, And 598-2081 Should Be Disallowed As Either Filed Against The Wrong Debtor Or Duplicates

14. As noted above, Sachdev filed seven identical Claims. One of those claims (597-19) was filed against Desolation, with the remaining six claims filed against BUS. However, Mr. Sachdev only has one account with BUS. Therefore, the claim against Desolation was filed as to the wrong Debtors, and five of the six claims against BUS are duplicate. Therefore, Claim Nos. 597-19, 598-13, 598-1846, 598-1877, 598-2076, and 598-2081 should be disallowed.

### II. The Remaining Sachdev Claim Should Be Allowed In Part And Otherwise Disallowed Pursuant To Section 502(b)(1)

15. Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" 11 U.S.C. § 502(b)(1). Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

16.     Here, Mr. Sachdev opened his account with BUS on September 23, 2017. His account held at the Petition Date and currently holds .21728 of BTC, 14.13008200951 of XVG, 4.0 of OMG, and 1,513,617.82 of RFR. RFR was delisted nearly four years prior to the Petition Date, and therefore has no market value. The market value of 0.21728 of BTC, 14.13008200951 of XVG, and 4.0 of OMG as of the Petition Date was $6,039.99 and the current market value is $5,767.18.

17.     With respect to RFR, BUS' terms of service disclose that token may be cancelled, lose their value, or cease to operate. Specifically, in section 4, BUS' terms of service state:

> Any Token, Token Properties or Underlying Technology may change or otherwise cease to operate as expected due to a change made to the Underlying Technology, a change made using features or functions built into the Underlying Technology or a change resulting from an Attack. These changes may include, without limitation, a "fork" or "rollback" of a Token or blockchain.
>
> …
>
> Any Token may be cancelled, lost or double spent, or otherwise lose all or most of their value, due to forks, rollbacks, Attacks, changes to Token Properties or failure of the Token to operate as intended.
>
> Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same.

18.     Moreover, BUS' terms of service provide that BUS has no liability for the cancellation or cease in operations of any Token. Section 4 states that:

> "The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you. You hereby assume and agree that Bittrex will have no responsibility or liability for, such risks."

19. Moreover, Mr. Sachdev has not articulated any other claims against Desolation, BUS, or any of the other Debtors. But to the extent any of Mr. Sachdev's claims consist of damages, they are expressly disallowed pursuant to BUS' terms of service.

20. To sign up for an account, each customer is required to agree to BUS' terms of service, and when a new version of the terms of service is released, each customer is required to agree to that version in order to maintain an active account. Section 17 of BUS' terms of service disclaim liability for incidental, consequential, and punitive damages, as set forth below:

> **17. DISCLAIMER OF DAMAGES[2]**
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

21. Additionally, BUS' terms of service also limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

---

[2] Section 17 of the current terms of service is identical to section 16 of the terms of service in effect as of December 23, 2017. In turn, section 16 of the December 23, 2017 terms of service is substantially similar to terms of service that were in place before December 23, 2017.

**18. LIMITATION OF LIABILITY[3]**
IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

22. Pursuant to section 20 of BUS' terms of service, Washington law applies.[4] The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

23. Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous"). The clauses in BUS' terms of services are set out in all caps with bolded headings,

---

[3] Section 18 of the current terms of service is identical to section 17 of the terms of service in effect as of December 23, 2017. In turn, section 17 of the December 23, 2017 terms of service is substantially similar to terms of service that were in place before December 23, 2017.

[4] Section 19 of the December 23, 2017 terms of service likewise provides for application of Washington law.

and are easily understood. Therefore, to the extent that Mr. Sachdev's claim is for damages beyond the maximum liability set forth in section 18 of BUS' terms of service, it must be disallowed.

### III. The Sachdev Claims Are Not Secured

24. Mr. Sachdev asserts that the Sachdev Claims are secured. However, BUS' terms of service do not provide for any security interest, *see, e.g.*, *Kreiger v. Hartig*, 11 Wash. App. 898, 902 (1974) (stating that there must be evidence of an agreement to grant a security interest), and Mr. Sachdev has not provided any other basis for a security interest. Moreover, Mr. Sachdev has not attached evidence of the perfection of any security interest as required by Rule 3001(d). Therefore, the Sachdev Claims are not secured.

### IV. The Sachdev Claims Are Not Entitled To Priority Under Section 507

25. As set forth above, Mr. Sachdev asserts that the Sachdev claims are entitled to priority, but does not state which subsection of section 507 controls. Here, there is no basis for Mr. Sachdev to claim priority under section 507. Section 507(a)(1)(domestic support obligations), (a)(2) (administrative expenses of a trustee), (a)(3) (ordinary course claims before entry of an order for relief in an involuntary bankruptcy), (a)(4) (employee wages), (a)(5) (contributions to employee benefit plan), (a)(6) (certain claims related to producing grain or for fishermen), (a)(7) (deposit of money in connection with purchase of personal services), (a)(8) (certain tax claims), (a)(9) (commitments to Federal depository institutions), and (a)(10) (specified personal injury claims), do not apply to Mr. Sachdev's claims. Therefore, the Sachdev Claims are not entitled to priority.

### V. The Sachdev Claims Are Not Entitled To Priority Under Section 503(b)(9)

26. Mr. Sachdev asserts that the Sachdev Claims have administrative priority pursuant to section 503(b)(9). This assertion fails.

9

27. Section 503(b)(9) only provides administrative priority for claims for the value of any goods received by the debtor within 20 days before the Petition Date if the goods were sold to the debtor in the ordinary course of business. The "administrative expense claimant bears the burden of establishing that the claim qualifies for priority status." *See, e.g.*, *In re Goody's Family Clothing Inc.*, 401 B.R. 131, 136 n.24 (Bankr. D. Del. 2009).

28. Here, Mr. Sachdev provides no explanation as to why or how section 503(b)(9) could apply. Moreover, section 503(b)(9) cannot apply because a cryptocurrency is not a "good" within the meaning of section 503(b)(9). Although "good" is not defined in the Bankruptcy Code, bankruptcy courts around the country have referred to the Uniform Commercial Code ("UCC") for guidance on a definition. *Goody's*, 401 B.R. at 134 n.13 (compiling cases). The UCC defines a "good" as "all things … which are movable at the time of identification to the contract for sale." *Id.* However, the UCC separately defines "general intangibles" as "personal property, including things in action." *In re BlockFi, Inc.*, 2023 WL 5597165, at *3 (Bankr. D. N.J. Aug. 29, 2023) (citing California UCC at Cal. Com. Code § 9102(a)(42) and (44)).[5] Cryptocurrencies fit more nearly into the "general intangible" definition rather than the definition of a "good" because they are not something "that can be held or moved," but instead, are a "form of digital currency based on mathematical algorithms that is not controlled by any country, bank, or individual." *BlockFi*, 2023 WL 5597165, at *3.

---

[5] The relevant definitions under the California UCC and Washington UCC are identical, down to the number of the subsections. *Compare* Wash. St. 62A.9A-102 (42) (general intangible) and (44) (good) *with* Cal. Com. Code § 9102(a)(42) (general intangible) and (44) (good).

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) allow Sachdev Claim 598-1502 in the amount of the assets associated with his account (0.21728 of BTC, 14.13008200951 of XVG, and 4.0 of OMG) for purposes of allowance and distribution; (iii) allow Sachdev Claim 198-1502 in the amount of $6,039.99 for purposes of voting; and (iv) otherwise disallow the Sachdev Claims.

| | |
|---|---|
| Date: September 29, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP**<br><br>*/s/ Kenneth Enos*<br>Robert S. Brady (Delaware Bar No. 2847)<br>Kenneth Enos (Delaware Bar No. 4544)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: rbrady@ycst.com<br>Email: kenos@ycst.com<br><br>**QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**COUNSEL FOR THE DEBTORS** |