## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 30, 2023 at 11:00 a.m. (ET)**<br>**Response Deadline: October 13, 2023 at 4:00 p.m. (ET)** |

## DEBTORS' OBJECTION TO CLAIM 598-1760 FILED BY TINASHE SIMBA MUDZINGANYAMA PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, <u>BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1</u>

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to Claim No. 598-1760 filed by Tinashe Simba Mudzinganyama ("Mudzinganyama" and the "Mudzinganyama Claim").

Without providing any legal or factual basis, Mr. Mudzinganyama has filed a claim for $5,000,000. However, the cryptocurrency assets in his account had a market value of $51.33 as of the petition date. Accordingly, the Debtors request entry of the Proposed Order attached hereto as **<u>Exhibit A</u>**, allowing a Mudzinganyama Claim against BUS in the amount of the assets associated with his account (705.45547059 DOGE, 0.00000035 ETH, 0.00000035 ETHW, and 195,262.96707 BTT) for purposes of allowance and distribution, allowing a Mudzinganyama

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

Claim in the amount of $51.33 for purposes of voting, and disallowing the remainder of the Mudzinganyama Claim.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rules 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105, 502, 503, and 507 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

### I.      The Bankruptcy Cases and Bar Date

4.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5.      Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of*

*Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* (D.I. 11) (the "First Day Declaration" or "Hengel Declaration").

6.      Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim.  The Debtors promptly served notice of the bar date on all creditors.  (D.I. 201.)

7.      On September 27, 2023, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation hearing and Establishing Notice and Objection Procedures; (IV) Shortening The Notice Period for (A) Parties to Object to Confirmation of the Plan, and (B) The Confirmation Hearing; and (V) Granting Related Relief* (the "Disclosure Statement Order") (D.I. 387).  Pursuant to paragraph 20(f) of the Disclosure Statement Order, if the Debtors served an objection to a claim by September 29, 2023, that claim is "temporarily disallowed for voting purposes only and not for purposes of allowance of distribution, except to the extent and in the manner as may be set forth in such objection."

## II.    The Mudzinganyama Claim

### A. Mr. Mudzinganyama's History With the Debtors

8.      An individual with Mr. Mudzinganyama's name and address created four different accounts with the Debtors and Bittrex Global GmBH ("BG")  using different email addresses but

the same name and Australia address, all between July 27, 2018 and March 15, 2022. Three of these accounts have been disabled for violating the terms of service prohibiting opening of multiple accounts per user.

9.      Mr. Mudzinganyama  created an account with BG on February 19, 2021, and accepted the terms of service of BG the same day (the "BG Account"). This account shows no records of any transactions or deposits and has a balance of $0.00.

10.     Mr. Mudzinganyama  created an account on the Bittrex Malta Ltd. ("Malta OpCo") platform on July 27, 2018 and accepted the terms of service of Malta OpCo on November 6, 2018. He did not accept the terms of service of BG for that account, and did not complete migration of the Malta OpCo account to BG. That account has been disabled. The balance associated with the Malta OpCo account is 705.45547059 DOGE, 0.00000035 ETH, 0.00000035 ETHW, and 195,262.96707 BTT, with a market value of $51.33 as of the petition date.

### B. Claim 598-1760

11.     On August 31, 2023, Mr. Mudzinganyama filed Claim 598-1760 against Bittrex, Inc. ("BUS") for $5,000,000 using non-customer proof of claim form. The basis of the claim is stated as "Investment" and does not allege priority or secured status, although it alleges a fixed annual interest rate, where the interest rate is left blank. The proof of claim form is not signed, and instead Mr. Mudzinganyama  typed his full name: "Tinashe Simba Mudzinganyama."

### <u>OBJECTIONS</u>

### I.    The Mudzinganyama Claim Should Be Reassigned As Filed Against The Wrong Debtor

12.     As noted above, Mr. Mudzinganyama filed a claim against BUS. However, Mr. Mudzinganyama only has one account with non-debtor BG (with a balance of $0.00), one disabled account with balance with debtor Malta OpCo, and no accounts with BUS. Mr. Mudzinganyama

failed to establish a valid legal factual basis for asserting a claim against the BUS. The Debtors were able to determine that the Mudzinganyama Claim is appropriately asserted, in whole or in part, against Malta OpCo in these chapter 11 cases. As such, the Mudzinganyama Claim should be reassigned as a claim against Malta OpCo.

13.     Reassigning the Mudzinganyama Claim does not affect Mr. Mudzinganyama's substantive rights, as Mr. Mudzinganyama will retain his claim, albeit against a different Debtor. Reassigning the Mudzinganyama Claim will benefit the Debtors, as it will allow scheduled claim amounts to be correctly matched to filed claims.

14.     Therefore, the Debtors object to the Mudzinganyama Claim and seek entry of the Proposed Order reassigning the Mudzinganyama Claim to Malta OpCo.

**II.     The Mudzinganyama Claim Should Be Allowed In Part And Otherwise Disallowed Pursuant to Section 502(b)(1)**

15.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

16.     Here, Mr. Mudzinganyama created four different accounts with the Debtors and BG using different email addresses but the same name and Australia address, all between July 27, 2018 and March 15, 2022, of which three accounts have been disabled for violating the terms of service prohibiting opening of multiple accounts per user.  Mr. Mudzinganyama created an account with BG on February 19, 2021 and accepted the terms of service of BG, but the account shows no records of any transactions or deposits and has a balance of $0.00.  Mr. Mudzinganyama further

created an account with Malta OpCo on July 27, 2018 and accepted the terms of service of Malta

OpCo on November 6, 2018, but he did not complete migration of the Malta OpCo account to BG

and the account has been disabled with a balance of 705.45547059 DOGE, 0.00000035 ETH,

0.00000035 ETHW, and 195,262.96707 BTT, with a market value of $51.33 as of the petition date.

17.    To the extent any portion of Mr. Mudzinganyama's claim consist of damages, they

are expressly disallowed pursuant to Malta OpCo's terms of service.[2]

18.    Section 16 of Malta OpCo's terms of service disclaim liability of Malta OpCo and

BUS for incidental, indirect, special, punitive, and consequential damages, as set forth below:

### 16. DISCLAIMER OF DAMAGES

IN NO EVENT WILL BITTREX, INC., BITTREX MALTA, EACH OF
THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE
SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS,
EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES,
SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY
INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL
OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER
(INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF
DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS
OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION
WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY
PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR
ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY
OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT,
STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING,
FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX),
EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF
ANY SUCH DAMAGES.

---

[2]    To sign up for a Malta OpCo account, each customer is required to agree to Malta OpCo terms of service, and
when a new version of the terms of service is released, each customer is required to agree to that version in order
to maintain an active account.

19.     Additionally, Malta OpCo's terms of service also limit Malta OpCo's and BUS's liability to the amount of fees paid by a customer to Malta OpCo or BUS in the 12 months preceding the event giving rise to the claim:

**17. LIMITATION OF LIABILITY**

IN NO EVENT WILL THE LIABILITY OF BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX) EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

20.     Furthermore, to the extent any portion of Mr. Mudzinganyama's claim consist of damages against BG, they are also expressly disallowed pursuant to BG's terms of service.[3]

21.     Section 19 of BG's terms of service disclaim liability of BG for incidental, indirect, special, punitive, and consequential damages, as set forth below:

19. DISCLAIMER OF DAMAGES (B2B)

In no event will Bittrex Global, each of its respective affiliates and its respective shareholders, members, directors, officers, employees, attorneys, agents, representatives, suppliers or contractors be liable to you as a business (B2B) for any incidental, indirect, special, punitive, consequential or similar damages or liabilities whatsoever (including, without limitation, damages for loss of data, information, revenue, profits or other business or

---

[3]     To sign up for a BG account, each customer is required to agree to BG terms of service, and when a new version of the terms of service is released, each customer is required to agree to that version in order to maintain an active account. Current version of the BG terms of service is available at https://bittrexglobal.com/wp-content/uploads/2023/07/Terms-of-Service-Bittrex-Global-GmbH.pdf.

financial benefit) arising out of or in connection with the site, the services, the Bittrex Materials, any performance or non-performance of the services, or any other product, service or other item provided by or on behalf of Bittrex Global, whether under contract, statute, strict liability or other theory (including, for avoidance of doubt, any negligence of Bittrex Global), even if Bittrex Global has been advised of the possibility of any such damages.

22.      Additionally, BG's terms of service also limit BG's liability to the amount of fees

paid by a customer to BG in the 12 months preceding the event giving rise to the claim:

### 20. LIMITATION OF LIABILITY (B2B)

The liability of Bittrex Global, each of its respective affiliates and its respective shareholders, members, directors, officers, employees, attorneys, agents, representatives, suppliers or contractors arising out of or in connection with Site, the Services, the Bittrex Materials, any performance or non-performance of the services, or any other product, service or other item provided by or on behalf of Bittrex Global, whether under contract, statute, strict liability or other theory (including, for avoidance of doubt, any negligence of Bittrex Global) will not exceed the amount of the fees paid by you as a business (B2B) to Bittrex Global under this agreement in the twelve-month period immediately preceding the event giving rise to the claim for liability.

### 21. LIMITATION OF WARRANTIES AND LIABILITY (B2C)

You as a consumer (B2C, unless otherwise mentioned) unerstand that there is no warranty, o,[lied or statutry, for the Bittrex Materials, TYoken Properties, and Underlyng Technology and any other Services provided by Bittrex Global. Except as otherwise stated in writing, the Bittrex Materials, Token Properties and the Underlying Technology are provided "as is" and "as available" without warranty of any kind, either expressed or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose.
….
By using the Services of Bittrex Global you acknowledge that the entire risk as to the quality and performance of all Services is with you.

Owing to a lack of influence, Bittrex Global will in no event be liable to you for any damages, including any general, special, incidental or consequential damages arising out of the use or inability to use the Services, including but not limited to:

1. Losses of profits, expected revenue or gains, or business opportunities, even if we were advised of or knew or should have known of the possibility of the same.

2. Security problems experienced by the User of the Bittrex Services, the Underlying Technology or any other Services, e.g., unauthorized access to a User's Bittrex Global Account.

3. Mistakes made by a user, e.g., forgotten passwords, transactions sent to in-correct addresses.

4. Technical failures in the hardware of a user, e.g., data loss owing to a faulty or damaged storage device.

5. Software, e.g., corrupted files, incorrectly constructed transactions, unsafe cryptographic libraries and/or malware affecting the Services.

6. Actions or inactions of third parties and/or events experienced by third parties, e.g., bankruptcy of service providers, information security attacks on service providers, and fraud conducted by third parties.

7. Delays, failure in performance, or interruption of the Services that arise from unforeseeable circumstances beyond our control, including compliance with any relevant law or regulation.

Bittrex Global shall be liable only in cases of malicious intent (B2B) and towards consumers (B2C) only in cases of gross negligence or malicious intent for any type of damages.

23.  Mr. Mudzinganyama has not articulated any other claims against Malta OpCo, BG, or BUS.

24.  Pursuant to section 22 of BG's terms of service, the laws of the Principality of Liechtenstein apply.  The choice of law clause contained in BG's terms of service is valid and enforceable.  *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).  Therefore, to the extent that the Mudzinganyama Claim is for damages beyond the maximum liability set forth in section 20-21 of BG's terms of service, it must be disallowed under section 502(b)(1).

25.     Pursuant to section 19 of Malta OpCo's terms of service, Washington law applies. The choice of law clause contained in Malta OpCo's terms of service is valid and enforceable. *Id.*

26.     Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449–50 (2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous"). The clauses in Malta OpCo's terms of services are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Mudzinganyama Claim is for damages beyond the maximum liability set forth in section 17 of Malta OpCo's terms of service, it must be disallowed under section 502(b)(1).

**<u>CONCLUSION</u>**

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) reassign the Mudzinganyama Claim to Malta OpCo; (iii) allow a Mudzinganyama Claim in the amount of the assets associated with Mr. Mudzinganyama's Malta OpCo Account (705.45547059 DOGE, 0.00000035 ETH, 0.00000035 ETHW, and 195,262.96707 BTT) for purposes of allowance and distribution; (iv) allow a Mudzinganyama Claim in the amount of $51.33 for purposes of voting; and (v) otherwise disallow the Mudzinganyama Claim.

Date: September 29, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

/s/  Kenneth Enos
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**