**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: October 30, 2023 at 11:00 a.m. (ET) |
| | Response Deadline: October 13, 2023 at 4:00 p.m. (ET) |

**DEBTORS' OBJECTION TO CLAIM 598-151 FILED BY TIMOTHY MALLOY PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1**

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to the following claim: Claim No. 598-151 filed by Timothy Malloy ("Mr. Malloy") (the "Malloy Claim" or the "Claim"). The Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, allowing the Malloy Claim against BUS in the amount of the assets associated with his account ($0.76), allowing the Malloy Claim in the amount of $0.76 for purposes of voting, and disallowing the remainder of the Malloy Claim.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

### I. The Bankruptcy Cases and Bar Date

4. On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5. Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* (D.I. 11) (the "First Day Declaration" or "Hengel Declaration").

6. Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general

bar date for filing proofs of claim. The Debtors promptly served notice of the bar date on all creditors. D.I. 201.

## II.    Mr. Malloy's History with Bittrex

7.      An individual with Mr. Malloy's date of birth created an account with BUS on May 10, 2017.

8.      On November 26, 2018, Mr. Malloy accepted BUS's terms of service effective at that time.

9.      In early January 2021, Mr. Malloy submitted Zendesk ticket 2033476 (i.e., a request of assistance) claiming that he did not authorize multiple high value withdrawals in 2018 and 2019 on his account. At that time, Mr. Malloy claimed that: (i) he had deposited Bitcoins in 2018 and "forgot about it;" (ii) he remembered of his Bittrex account after hearing that the market value of one Bitcoin was $32,000; and (iii) once he logged in his account, he discovered that his assets were missing.

10.     BUS investigated Mr. Malloy's allegations of fraud. It discovered that, on Mr. Malloy's account, there had been at least three 2019 transactions that Mr. Malloy claimed he did not perform for which the same wallet address had been used in a 2017 transaction. Mr. Malloy had never challenged the validity of the 2017 transaction.

11.     Around mid-January 2021, BUS reported its findings to Mr. Malloy, who claimed, for the first time, not to recognize the wallet address of the 2017 transaction. BUS then explained that, if Mr. Malloy's allegations were true, his account credentials would have been compromised outside of the BUS platform. Further, BUS provided information on how (i) the credentials might have been accessed by a potential fraudster; and (ii) how to practice better online security. Also, BUS provided Mr. Malloy with the IP addresses for the transactions at issue. However, BUS made

clear to Mr. Malloy that it could not reimburse him for these transactions because, if his account had been compromised, it would have occurred outside of the BUS platform, and it was Mr. Malloy's sole responsibility to secure his Bittrex account credentials.

12.    In May 2021, Mr. Malloy submitted additional tickets regarding the (fictional) fraudulent activity on his account.  Specifically, he asked if BUS would refund the value of the transfers.  Then, he ceased to follow up with Bittrex on this matter.  Further, to Bittrex's knowledge, Mr. Malloy has never sued Bittrex in connection with this matter.

13.    In September 2021, Mr. Malloy requested that his account be re-enabled. Accordingly, BUS personnel asked him to provide photographs to verify his identity, and Mr. Malloy did not respond.

14.    To this day, Mr. Malloy's account is disabled.

15.    As of the Petition Date, Malloy had a balance of $0.76 (in USD) in his account.

16.    According to Bittrex's records, the asset withdrawals that Mr. Malloy claimed to be fraudulent were performed from the same state where Mr. Malloy resided.

**III.    Bittrex's Lending and Loaning Activity**

17.    Over the years, Bittrex only provided loans to certain institutions.  There is no recording showing that Mr. Malloy was the point of contact of any of those institutions for any institutional loan issued.

18.    Bittrex has only borrowed funds from the U.S. government under the Paycheck Protection Program.

**IV.    The Malloy Claim**

19. On July 25, 2023, Mr. Malloy filed the Claim selecting BUS as the debtor. Mr. Malloy lists a claim of $3,700,000, purportedly (and nonsensically) consisting of 224 Bitcoins (BTC). As a basis of his Claim, Mr. Malloy states "crypto/money loaned and services performed."

**OBJECTIONS**

**I.    The Malloy Claim Should Be Allowed In Part And Otherwise Disallowed Pursuant to Section 502(b)(1)**

20. Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" 11 U.S.C. § 502(b)(1). Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

21. Here, Mr. Malloy' Bittrex account holds $0.76. Mr. Malloy never performed any services in favor of BUS or any other Bittrex entity. Bittrex never lent or loaned cryptocurrency or fiat currency to Mr. Malloy.

22. Mr. Malloy has not articulated any other claims against BUS or any of the other Debtors. To the extent any of Mr. Malloy's claims consist of damages, they are expressly disallowed pursuant to BUS's terms of service and not supported by the facts.

23. Section 16 of BUS's terms of service disclaims liability for incidental, consequential, and punitive damages, as set forth below:

> **16. DISCLAIMER OF DAMAGES**
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT,

SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

24. Additionally, the BUS's terms of service limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

**17. LIMITATION OF LIABILITY**
IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX) EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

25. Pursuant to section 19 of BUS's terms of service, Washington law applies. The choice of law clause contained in BUS's terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

26. Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable

opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous"). The clauses in BUS's terms of service are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Malloy Claim is for damages beyond the maximum liability set forth in section 17 of BUS's terms of service, it must be disallowed.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) allow the Malloy Claim in the amount of the assets associated with his account ($0.76) for purposes of allowance and distribution; (iii) allow the Malloy Claim in the amount of $0.76 for purposes of voting; and (iv) otherwise disallow the Malloy Claim.

| | |
|---|---|
| Date: September 29. 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/  Kenneth Enos*<br>Robert S. Brady (Delaware Bar No. 2847)<br>Kenneth Enos (Delaware Bar No. 4544)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: rbrady@ycst.com<br>Email: kenos@ycst.com<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**COUNSEL FOR THE DEBTORS** |