## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 30, 2023 at 11:00 a.m. (ET)**<br>**Response Deadline: October 13, 2023 at 4:00 p.m. (ET)** |

### DEBTORS' OBJECTION TO CLAIMS 597-238, 597-296, 598-998, 598-1021, 598-10408, 599-35, 599-38, 599-10018, 600-87, 600-96, and 600-10052 FILED BY AZIM GHADER PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, <u>BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1</u>

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to the following claims filed by Azim Ghader ("Mr. Ghader"): (i) Claim No. 597-238; (ii) Claim 597-296; (iii) Claim 598-998; (iv) Claim 598-1021; (v) Claim 598-10408; (vi) Claim 599-35; (vii) Claim 599-38; (viii) Claim 599-10018; (ix) Claim 600-87; (x) Claim 600-96; and (xi) Claim 600-10052 (collectively, the "Ghader Claims"). The Ghader Claims against the various entities total over $80,000,000, however Mr. Ghader successfully withdrew assets in his account in July 2023 worth several hundred thousand dollars, and the assets remaining in his account are valued at only $3,206.71. His exorbitant claims flow from his assertion that he lost profits and suffered other consequential damages because he was unable to withdraw his assets

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

from Bittrex between 2017 and the present.  While true that he was unable to withdraw those assets, this prohibition was based on comprehensive sanctions of the U.S. Office of Foreign Assets Control ("OFAC") targeting Iran (the "Iranian Sanctions"), and had Bittrex permitted him to withdraw those assets, Bittrex would have been violating federal law.  Moreover, Mr. Ghader fails to mention that Bittrex obtained a license from OFAC in late 2019—of which Mr. Ghader was aware—that permitted withdrawals by Iranians for a period of approximately five months, yet he failed to take advantage of that license period.  Significantly, Mr. Ghader made a direct misrepresentation to the United States Bankruptcy Court for the District of Delaware Court (the "Court") in a letter dated May 16, 2023, regarding his awareness of that license process (D.I. 60).

Accordingly, the Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, (i) allowing Claim 600-96 against Bittrex Malta Ltd. ("Malta OpCo") in the amount of the following assets associated with Mr. Ghader's account as of the Petition Date (728,217.96089 HempCoin (THC), 13,782,397.10790 ReddCoin (RDD), 1,970.62728 Particl (PART), and 6,485.57100 TenX Pay Token (PAY)); (ii) allowing Claim 600-96 in the amount of $3,206.71  for voting purposes; and (iii) disallowing the remainder of the Ghader Claims.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is

later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

### I.      The Bankruptcy Cases and Bar Date

4.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5.      Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions (D.I. 11) (the "First Day Declaration" or "Hengel Declaration").

6.      Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") (D.I. 65), which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. The Debtors promptly served notice of the bar date on all creditors. D.I. 201.

II.     **The Ghader Claims**

A.     **Mr. Ghader's History With the Debtors**

i.     **Account Opening, Bittrex's Application of the Iranian Sanctions, and Mr. Ghader's Earlier Attempts to Unblock his Bittrex Account**

7.     Mr. Ghader opened an account with Bittrex, Inc. ("BUS") in or around June 2017. At the time of the account opening, Mr. Ghader provided Bittrex with a copy of his Iranian passport and an Iranian phone number.

8.     In October 2017, Bittrex blocked Mr. Ghader's account to comply with the Iranian Sanctions.

9.     On various dates in 2018, Mr. Ghader asked Bittrex to explain the reasons of the account blocking.  Bittrex responded to Mr. Ghader that his account had been blocked because of the Iranian Sanctions.

10.    In November 2018, Mr. Ghader agreed to the Terms of Service for "Bittrex International" (the "Terms of Service"), which relate to "any services made available by Bittrex, Inc. or Bittrex Malta Ltd. . . . under the name of "Bittrex International" and became a customer of Malta OpCo.

11.    In 2019, Mr. Ghader continued to ask to unblock his account, and Malta OpCo repeated to him that his account was blocked due to the Iranian Sanctions.

12.    During the same year, Mr. Ghader also contacted Malta OpCo through a different email address, asking if he could open a new account by providing (i) a passport issued by the Commonwealth of Dominica; and (ii) a bank statement—indicating an address in Luxembourg that is a coworking space—through which Mr. Ghader tried to persuade Bittrex that he was a Luxembourg resident.  Because these documents lacked sufficient credibility, Bittrex declined Mr. Ghader's request in order to comply with the Iranian Sanctions.

  ii.  **The OFAC License, Ghader's Failure to Take Advantage of the OFAC License, and Mr. Ghader's Continued Failure to Comply with Bittrex's Regulatory and Compliance Requirements**

  13.  In April 2018, at substantial expense, BUS filed multiple applications with OFAC, seeking licenses to allow Bittrex to distribute funds to customers in various sanctioned countries, including Iran.

  14.  In October 2019, eighteen months after filing the applications, Malta OpCo and BUS obtained a license from OFAC permitting a release of assets to customers in Iran (the "OFAC License"). The OFAC License would expire on March 31, 2020 (the "OFAC Deadline"). Starting from November 2019, Malta OpCo informed all relevant Iran customers—including Mr. Ghader—that they could withdraw cryptocurrency in their blocked accounts. The license process, and Bittrex's plan to permit customers in Iran to withdraw assets was publicly reported by several major crypto-related websites, including CoinDesk and Cointelegraph.[2] At that time, the Debtors' records show that Mr. Ghader did not attempt any activity in his account.

  15.  Because of Mr. Ghader's inactivity, the Debtors contacted Mr. Ghader again in early February 2020 regarding the OFAC License and the need to withdraw the assets associated with it. In March 2020, Mr. Ghader finally responded to Malta OpCo with a bare-bones form for withdrawal of his assets. However, as required by Malta OpCo's regulatory compliance policies, Malta OpCo asked Mr. Ghader to provide three (differently angled) pictures (the "Compliance Pictures") in which Ghader should (i) hold a government-issued ID; and (ii) a piece of paper including the term "Bittrex" and the date when the pictures were taken. Mr. Ghader replied to Malta OpCo that he would send Malta OpCo the Compliance Pictures in a matter of hours.

---

[2] *See*  https://www.coindesk.com/markets/2019/11/11/bittrex-will-release-frozen-crypto-to-former-users-in-sanctioned-regimes/; https://cointelegraph.com/public/index.php/news/bittrex-returning-crypto-funds-to-iranian-users-after-2-year-freeze/amp.

However, Mr. Ghader did not send them, even after an additional follow email from Malta OpCo. The OFAC License expired, and Mr. Ghader's account remained blocked by the Iranian Sanctions.

16.    In January 2021, while attempting to resolve his Iranian Sanctions/KYC issues, Ghader provided Malta OpCo with a Dominica passport, and what he alleged to be a personal tax return from Turkey.   Malta OpCo followed up on Mr. Ghader's request, and, pursuant to Malta OpCo's regulatory compliance policies, it asked Mr. Ghader to provide a document showing his personal address (a residential lease contract, a utility bill, etc.).   However, Mr. Ghader never provided the requested documents.

  **iii.**  **Mr. Ghader Provides the Required KYC Information and Withdraw over 99% of the assets in his Malta OpCo Account pursuant to the Customer Withdrawal Order**

17.    In March 2023 and early April 2023, Mr. Ghader asked Malta OpCo to return to him the assets associated with his account.  This time, Mr. Ghader provided Malta OpCo with copies of (i) his Dominica passport; (ii) a proof of residence issued by the Turkish government; (iii) a rental agreement related to property in Turkey; (iv) a utility bill; and (v) bank statements showing the residential address (collectively, the "KYC Information").

18.    Following Mr. Ghader's transmission of the KYC Information, Malta OpCo determined that Mr. Ghader's account was in good standing to process withdrawal requests, as he had met the company's KYC requirements and had established that he was a resident of Turkey and, accordingly, no longer barred as a customer by OFAC's sanctions on Iran.  Consequently, Bittrex's IT system automatically associated Mr. Ghader's account—which was under Malta OpCo—to non-debtor Bittrex (Global) Bermuda Ltd. ("BGB") (the "IT Association").  Despite

the IT Association, which showed that Mr. Ghader was a BGB customer, Mr. Ghader's assets remained with Malta OpCo because Ghader refused to sign BGB's terms of service.[3]

19.    On June 13, 2023, the Court entered an order authorizing customers to withdraw their deposits of cryptocurrencies and fiat currencies as a continuation of the Debtors' orderly wind down process (the "Customer Withdrawal Order")  (D.I. 128).

20.    Following the Court's entry of the Customer Withdrawal Order, Mr. Ghader successfully withdrew over 99% of the assets in his account.  Specifically, between July 5 and 6, 2023, Mr. Ghader withdrew the following cryptocurrencies that were worth roughly $273,319.80 (the "Withdrawn Crypto"):

| Withdrawn Crypto | |
| --- | --- |
| No. | Type |
| 1 | Neo (NEO) |
| 2 | Stratis (STRAX) |
| 3 | Komodo (KMD) |
| 4 | Ontology (ONT) |
| 5 | OntologyGas (ONG) |
| 6 | Ardor (ARDR) |
| 7 | BitShares (BTS) |
| 8 | Cardano (ADA) |
| 9 | Bitcoin (BTC) |
| 10 | Status Network Token (SNT) |
| 11 | Verge (XVG) |
| 12 | Ark (ARK) |
| 13 | SysCoin (SYS) |

21.    On July 5 and 6, 2023, Mr. Ghader did not withdraw (despite being able) the following types of cryptocurrencies that were in his account as of the Petition Date (the "Remaining Crypto"):

---

[3]    For the avoidance of doubt, this IT Association did not have any effect on the type or the value of the cryptocurrency in Mr. Ghader's account with Malta Opco.

| Remaining Crypto | |
|---|---|
| No. | Type |
| 1 | 728,217.96089 HempCoin (THC) |
| 2 | 13,782,397.10790 ReddCoin (RDD) |
| 3 | 1,970.62728 Particl (PART) |
| 4 | 6,485.57100 TenX Pay Token (PAY) |
| 5 | 0.00724300 Tether (USDT) |

22.     On May 16, 2023, Mr. Ghader wrote a letter to the Court, asserting that, "[i]n 2020, Bittrex US claimed to have obtained an OFAC permit to release frozen assets" but that "this permit was never made public, nor was the OFAC order to disable the accounts."[4]  This statement to the Court, as demonstrated above, was false.  In fact, Malta OpCo sent Mr. Ghader several emails regarding the OFAC License, the OFAC License was publicized in various online news sources, and Mr. Ghader actually started the process to withdraw his cryptocurrency before the OFAC License Deadline, but failed to complete the process despite reminders from Malta OpCo.

23.     On June 30 and July 14, 2023, Mr. Ghader wrote letters to the Court, asserting, among other things, that he incurred damages and lost assets "due to the actions of Bittrex, and its operators."[5]  Mr. Ghader, however, failed to mention that, in early July, he had withdrawn over 99% of the assets in his Bittrex account *before* he wrote his letter to the Court.

24.     On July 18, 2023, the Debtors, through their counsel, responded to Mr. Ghader's June and July 2023 letters, rejecting any alleged liability and explaining how Mr. Ghader's inability to withdraw the assets in the account from October 2017 to July 2023 was due to (i) Debtors' obligations in complying with the Iranian Sanctions; (ii) Debtors' legitimate interests in avoiding reliance on suspicious documentation such as the Luxembourg "proof of residency;" and

---

[4]     As mentioned above, Mr. Ghader's May letter was filed on the docket on May 19, 2023 (D.I. 60).

[5]     Mr. Ghader's June and July 2023 letters were filed on the docket on July 12, 2023 (D.I. 198), and July 17, 2023 (D.I. 215), respectively.

(iii) Mr. Ghader's inaction and failure to comply with Malta OpCo's regulatory and compliance requirements even during the time that the OFAC License was pending.

25.     On July 20, 2023, Mr. Ghader sent a letter to Debtors' counsel containing several questions and information.  In its July 20, 2023 letter, Mr. Ghader never provided any factual evidence that countermanded the Debtors' explanation of his actions during the pendency of the OFAC License.  The Debtors, through their counsel, responded to Mr. Ghader's letter on August 16, 2023.  The Debtors refuted any liability related to certain cryptocurrency coins or tokens associated to Mr. Ghader's account that are no longer supported because the blockchain or wallet associated with that type of cryptocurrency (i) no longer exists; or (ii) has been removed from the exchange (the "Defunct/Delisted Crypto").  Between 2017 and April 2023, Bittrex had, in fact, delisted the following Defunct/Delisted Crypto that was in Mr. Ghader's account:[6]

| Defunct/Delisted Crypto | |
| --- | --- |
| No. | Type |
| 1 | INFX (delisted in December 2018) |
| 2 | SAFEX (Delisted in January 2019) |
| 3 | LoMoCoin (LMC) (Delisted in April 2019) |
| 4 | BitBay (BAY) (Delisted in September 2019) |
| 5 | DopeCoin (DOPE) (Delisted in September 2019) |
| 6 | Lunyr (LUN) (Delisted in October 2019) |
| 7 | Civic (CVC) (Delisted in April 2023) |

26.     On August 30, 2023, Mr. Ghader engaged in certain transactions on his account increasing the Tether (USDT) in his account from 0.00724300 to 24.00724300.  On September 8, 2023, Ghader withdrew all of the Tether (USDT).  This brought his current balance to a total of approximately $3,206.71 worth of 4 active cryptocurrency tokens.

---

[6]     In June 2017, Mr. Ghader sold all his "BITS," a type of cryptocurrency that Bittrex subsequently delisted.

### B.    Ghader Claims

#### i.    Claim 597-296 (the General Proof of Claim)

27.    Mr. Ghader filed Claim 597-296 on August 30, 2023.   Mr. Ghader selected Desolation Holdings LLC ("Desolation") as the debtor.[7]  Mr. Ghader lists a claim of $20,835,750, specifying that the basis of his claim is described in an attachment.   The attachment is an "Addendum to Proof of Claim of Mr. Azim Ghader Against Bittrex, Inc., Bittrex Malta Holdings Ltd., and Bittrex Malta Ltd." (the "Addendum 1").

28.    In the Addendum 1, Mr. Ghader alleges that:

a.   Between June 2017 and October 2017, Mr. Ghader "invest[ed]" over $1,000,000 in BTCs and Ark token (ARK) through "Bittrex;"

b.   Mr. Ghader then used Bitcoins and Ark tokens to "invest" in other cryptocurrency, including "NEO, ADA, BTC, XVG, KMD, ARK, SYS, ARDR, STRAX, BTS, SNT, THC, RDD, PART, PAY, USDT, LMC, BAY, DOPE, CVC, LUN, BITS, INFX, and SAFEX";

c.   Also in 2017, Mr. Ghader began to establish his own cryptocurrency exchange that "would have offered a competitive alternative option to Bittrex exchange," and for which, in April 2019, he obtained two financial services licenses from Estonian regulators;"

d.   In October 2017, "Bittrex" blocked Mr. Ghader's account, which made him "unable to provide adequate capital to fund his cryptocurrency exchange and wallet services business" and "his [Estonian] licenses . . . expired about one year thereafter," with

---

[7]   Desolation only serves as the real property interests holder for the Debtors.   Desolation does not operate a cryptocurrency exchange or otherwise interact with any customers.

the consequence that "Bittrex effectively boxed out a potential competitor;"

    e. Because of the block of his account, Mr. Ghader could not sell "his crypto coin at an advantageous time in the market" and he was unable to "payoff loans taken out to support his business;"

    f. Mr. Ghader's "fortune in crypto coins is now worth only a fraction of its prior value" (i.e., "his investments fell from approximately seven hundred and fifty Bitcoins to the value of approximately ten Bitcoins"); and, accordingly,

    g. "All Debtors are jointly and severally liable for the full amount of Mr. Ghader's Claims — Exceed 750 Bitcoins."

29.     Claim 597-296, filed on August 30, 2023, reports "8/31/2023" as the execution date.  Claim 597-296 is not signed—it only includes "Azim Ghader" typed name.

### ii.    Claims 598-998, 599-35, and 600-87

30.     Mr. Ghader filed Claims, 598-998, 599-35, and 600-87 on August 30, 2023.

31.     Claims 598-998, 599-35, and 600-87 are substantially identical to Claim 597-296 described above, except for the selected debtors that are (i) BUS for Claim 598-998; (ii) Bittrex Malta Holdings Ltd. ("Malta Holdings") for Claim 599-35; and (iii) Malta OpCo for Claim 600-87.

32.     Claims 598-998, 599-35, and 600-87 are not signed like Claim 597-296.

### iii.    Claim 600-96 (the Customer Proof of Claim)

33.     Mr. Ghader filed Claim 600-96 on August 31, 2023, which contains two Official Forms 401.

34.     In the first Official Form 401 (the "First Form 401"), Mr. Ghader selected Malta OpCo as the relevant debtor.  Mr. Ghader lists a claim of $1,000,000, the basis of which is "[f]ailure

to return crypto & rewards,... see addendum."

35.    The related "Addendum to Customer Proof of Claim of Mr. Azim Ghader Against Bittrex, Inc., Bittrex Malta Holdings Ltd., and Bittrex Malta Ltd." (the "Addendum 2") states that:

a.    Between June 2017 and October 2017, Mr. Ghader "invest[ed]" over $1,000,000 in Bitcoins and Ark tokens through Bittrex;

b.    Mr. Ghader then used Bitcoins and Ark tokens to "invest" in other cryptocurrency, and, "[i]mmediately prior to the petition date, Mr. Ghader owned stakes in various crypto coins, including, but not limited to, THC, RDD, PART, PAY, LMC, BAY, DOPE, CVC, LUN, BITS, INFX, USDT, NEO, STRAX, KMD, ONT, ONG, ARDR, BTS, ADA, BTC, SNT, XVG, ARK, SYS and SAFEX;"

c.    As of August 31, 2023, Mr. Ghader's efforts to retrieve his coins from his account were "partially successful," but "Bittrex" still has custody of certain of his coins, and "strangely, several of Mr. Ghader's coins do not even appear in his Wallet balance (including but not limited to INFX, SAFEX, BITS); and

d.    "Mr. Ghader owned coins for which he was entitled to receive periodic rewards (including but not limited to ONG, ONT)." but "Mr. Ghader ceased to receive such rewards."

36.    In the First Form 401, Mr. Ghader alleges that his claim is "secured by a lien on … see addendum."  The Addendum 2, however, does not contain any explanation on the asserted lien, and omits any evidence of perfection.

37.    The First Form 401 is not signed—it only includes "Azim Ghader" typed name.

38.    In the second Official Form 401 (the "Second Form 401"), Mr. Ghader does not select the debtor. Ghader does not specify any claim amount but lists the following cryptocurrency's

holdings: (i) 0.000000001 Ardor (ARDR); (ii) 0.00000001 Ark (ARK); (iii) 227223.30779 BitBay (BAY); (iv) 0.000000001 Bitcoin (BTC); (v) 0.000000009 BitShares (BTS); (vi) 0.000000005 Cardano (ADA); (vii) 126303.04604 Civic (CVC); (viii) 137738.85544 DopeCoin (DOPE); (ix) 728217.96089 HempCoin (THC); (x) 0.000000009 Komodo (KMD); (xi) 2438254.84364 LoMoCoin (LMC); (xii) 2060.95041 Lunyr (LUN);  (xiii) 0.000000005 Neo (NEO); (xiv) 0.000000007 Ontology (ONT); (xv) 0.000000009 OntologyGas (ONG); (xvi) 1970.62728 Particl (PART); (xvii) 13782397.10790 ReddCoin (RDD); (xviii) 0.000000004 Status Network Token (SNT); (xix) 0.000000007 Stratis (STRAX); (xx) 0.000000007 SysCoin (SYS); (xxi) 6485.57100 TenX Pay Token (PAY); (xxii) 24.00724300 Tether (USDT); and (xiii) 0.000000003 Verge (XVG) (collectively, the "Proof of Claim Crypto").  The basis of Mr. Ghader's claim is a "[f]ailure to return cryptocurrency in customer hosted wallet and reward. see addendum."  The "addendum" is the deficient Addendum 2 mentioned above.  According to Mr. Ghader, his "claim is secured by a lien on the coins owned by Mr. Ghader which are held by Bittrex."  He fails, however, to check the No/Yes box regarding the question "Is all part of the claim secured?"

39.    This Second Form 401 is not signed.

**C.    Claim 600-10052**

40.    Claim 600-10052 is duplicate of Claim 600-96.

**D.    Claims 598-1021, 598-10408, 599-38, 599-10018**

41.    Mr. Ghader filed Claim 598-1021 and 599-38 on August 31, 2023, which, again, each of them contains two forms 401.  The Claims 598-1021 and 599-38 and are substantially identical to Claim 600-96, except for the selected debtor in respective first form 401 that is (i) BUS for Claim 598-1021; and Malta Holdings for 599-38.  The Claims 598-1021 and 599-38 are not signed like Claim 600-96.

42.    On August 31, 2023, Mr. Ghader also filed Claims 598-10408 and 599-10018. Claim 598-10408 is a duplicate of Claim 598-1021.  Claim 599-10018 is a duplicate of Claim 599-38.

      **E.**     **Claim 597-238 (the Informal Proof of Claim)**

43.    Claim 597-238 includes (i) Debtors' July 18 letter to Mr. Ghader; (ii) Mr. Ghader's July 20, 2023 letter to Debtors' counsel; (iii) related email correspondence between Mr. Ghader and Debtors' counsel; (vi) an August 10, 2023 letter from a BGB attorney in Liechtenstein stating Mr. Ghader was client of Malta OpCo;[8] and (v) an August 11, 2023 letter from Mr. Ghader to the Court in which the former complained that Debtors had not yet responded to his July 20, 2023 letter.  As mentioned above, the Debtors, through their counsel, responded to Mr. Ghader's July 20, 2023 letter on August 16, 2023.

## OBJECTIONS

**I.**   **Ten of the Ghader Claims (597-296, 598-998, 598-1021, 598-10408, 599-35, 599-38, 599-10018, 600-87, 600-96, and 600-10052) Are Not Properly Executed And Therefore Not Prima Facie Valid**

44.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim under Section 502(a) of the Bankruptcy Code.  However, a claimant's proof of claim is entitled to the presumption of *prima facie* validity only until the debtor effectively rebuts the presumption of

---

[8]    In the August 11, 2023 letter, Mr. Ghader makes a reference to the issue of the IT Association, as well he referred to it in his June 30, 2023 and July 20, 2023 letters, and in the Addendum 1.  The IT Association's issue is irrelevant for the purposes of Ghader Claims (notably, he filed claims against his debtor Malta OpCo).  Nevertheless, the Debtors point out that they explained the IT Association and related consequences to Mr. Ghader in their letters of the July 18 and August 16, 2023, as well in this Objection.

validity.  *In re TK Holdings, Inc.*, 2021 WL 2949344, at *4 (D. Del. July 14, 2021).  The burden

of proof then shifts to the creditor.  *Id.*

45.     To be properly executed, a proof of claim must be in writing, substantially conform

to the Official Form, be executed by the creditor or the creditors' authorized agent, and if the claim

is based on a writing, it must attach the writing.  Rule 3001; *In re Cluff*, 313 B.R. 323, 332 (Bankr.

D. Utah 2004).  One of "the most serious omission of compliance is the lack of any signature

certifying the claim as true, accurate and correct as required by Official Form 10."  *In re Avery*,

No. 15-30074, 2015 WL 4498181, at *2 (Bankr. N.D. Ohio July 22, 2015).[9]

46.     Here, Mr. Ghader did not sign ten of his Claims: 597-296, 598-998, 598-1021, 598-

10408, 599-35, 599-38, 599-10018, 600-87, 600-96, and 600-10052.  Therefore, Mr. Ghader failed

to properly execute them.  Accordingly, the Claims 597-296, 598-998, 598-1021, 598-10408, 599-

35, 599-38, 599-10018, 600-87, 600-96, and 600-10052 are not prima facie valid.

## II.     Claims 598-10408, 599-10018, and 600-10052 Are Duplicative

47.     Claims 598-10408, 599-10018, and 600-10052 (the "Duplicate Claims") are

duplicate of Claims 598-1021, 599-38, and 600-96, respectively.

48.     Regardless of Mr. Ghader's reasons for filing the Duplicate Claims, any failure to

disallow them will result in Mr. Ghader potentially receiving an unwarranted double recovery

against the Debtors' estate, to the detriment of other creditors in the Chapter 11 Case.

Accordingly, the Debtor objects to the Duplicate Claims and requests entry of the Order

---

[9]     Footnote 1 in *In re Aveni* states: "The court in *In re Nittany Enterprises*, 502 B.R. 447, 454 (Bankr.W.D.Va.2012), states that "[a] signature on a proof of claim is not required by either the Bankruptcy Code or the Bankruptcy Rules." This court disagrees with this statement, as it is hard to interpret Rule 3001(b)(through use of the words "shall be executed by the creditor") and Rule 9011(a)(through use of the words "shall be signed") as not requiring a signature by somebody." 2015 WL 4498181, at *2 n.1.

disallowing and expunging the Duplicate Claims.

49.     The Debtors' Plan provides for a single recovery to each customer and provides for payment in full of customer claims before any other pre-petition creditors are paid.  Even if Mr. Ghader could prove claims against multiple Debtors, Mr. Ghader cannot receive more than one recovery of his claim, if any survive this Objection.

### III.   Ghader Claims Should Be Disallowed Pursuant to Section 502(b)(1), Except for Claim 600-96 limited to the Remaining Crypto that Is in the Account

50.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

51.     Here—except for the Claim 600-96 against Malta OpCo and limited to the Remaining Crypto that is still in his account—Ghader Claims should be disallowed under section 502(b)(1) for the following reasons.

52.     <u>First</u>, Mr. Ghader's Proof of Claim Crypto does not match the cryptocurrencies in Mr. Ghader's account, because Mr. Ghader knowingly and fraudulently included all the Withdrawn Crypto and Defunct/Delisted Crypto that (1) he has already withdrawn and (2) which became worthless or untransferable due to the nature of the cryptocurrency at issue, as shown in the chart below:

| Proof of Claim Crypto | | | |
|------|------|------|------|
| No. | Crypto Type | Incl. in Account as Petition Date | Incl. in Account as of 9/29/23 | Status of the Crypto |
| 1 | 0.000000001 Ardor (ARDR) | Yes | No | Withdrawn Crypto |

| No. | Crypto Type | Incl. in Account as Petition Date | Incl. in Account as of 9/29/23 | Status of the Crypto |
|---|---|---|---|---|
| | | Proof of Claim Crypto | | |
| 2 | 0.00000001 Ark (ARK) | Yes | No | Withdrawn Crypto |
| 3 | 227223.30779 BitBay | No | No | Defunct/Delisted Crypto |
| 4 | 0.000000001 Bitcoin (BTC) | Yes | No | Withdrawn Crypto |
| 5 | 0.000000009 BitShares (BTS) | Yes | No | Withdrawn Crypto |
| 6 | 0.000000005 Cardano (ADA) | Yes | No | Withdrawn Crypto |
| 7 | 126303.04604 Civic (CVC) | No | No | Defunct/Delisted Crypto |
| 8 | 137738.85544 DopeCoin (DOPE) | No | No | Defunct/Delisted Crypto |
| 9 | 728217.96089 HempCoin (THC) | Yes | Yes | Remaining Crypto that Mr. Ghader has not yet withdrawn |
| 10 | 0.000000009 Komodo (KMD) | Yes | No | Withdrawn Crypto |
| 11 | 2438254.84364 LoMoCoin (LMC) | No | No | Defunct/Delisted Crypto |
| 12 | 2060.95041 Lunyr (LUN) | No | No | Defunct/Delisted Crypto |
| 13 | 0.000000005 Neo (NEO) | Yes | No | Withdrawn Crypto |
| 14 | 0.000000007 Ontology (ONT) | Yes | No | Withdrawn Crypto |
| 15 | 0.000000009 OntologyGas (ONG) | Yes | No | Withdrawn Crypto |
| 16 | 1970.62728 Particl (PART) | Yes | Yes | Remaining Crypto that Mr. Ghader has not yet withdrawn |
| 17 | 13782397.10790 ReddCoin (RDD) | Yes | Yes | Remaining Crypto that Mr. Ghader has not yet withdrawn |
| 18 | 0.000000004 Status Network Token (SNT) | Yes | No | Withdrawn Crypto |
| 19 | 0.000000007 Stratis (STRAX) | Yes | No | Withdrawn Crypto |
| 20 | 0.000000007 SysCoin (SYS) | Yes | No | Withdrawn Crypto |
| 21 | 6485.57100 TenX Pay Token (PAY) | Yes | Yes | Remaining Crypto that Mr. Ghader has not yet withdrawn |
| 22 | 24.00724300 Tether (USDT) | Not all this crypto (as of 8/5/23, Mr. Ghader only | No | Remaining Crypto for which Mr. Ghader engaged in August/September 2023 transactions, including a full withdrawal in September 2023 |

| No. | Crypto Type | Incl. in Account as Petition Date | Incl. in Account as of 9/29/23 | Status of the Crypto |
|-----|-------------|-----------------------------------|--------------------------------|----------------------|
| | Proof of Claim Crypto | | | |
| | | had 0.00724300 | | |
| 23 | 0.000000003 Verge (XVG) | Yes | No | Withdrawn Crypto |

53.     <u>Second</u>, for the Remaining Crypto that Mr. Ghader has not yet withdrawn, the only

debtor is Malta OpCo—not BUS, Malta Holdings, or Desolation.

54.     <u>Third</u>, Mr. Ghader's inability to withdraw the assets in the account from October

2017 to early July 2023 is not imputable to the Debtors, including because (i) Debtors were

required to comply with the Iranian Sanctions; (b) under both KYC and Iranian Sanctions'

perspective, Debtors justifiably refused to permit withdrawal based on suspicious documentation

he provided, such as the 2019 Luxembourg "proof of residency" at a nonresidential, co-working

address; and (iii) Mr. Ghader repeatedly failed to take appropriate actions to comply with Debtors'

regulatory and compliance requirements.

55.     In particular, Mr. Ghader failed to take advantage of the OFAC License, despite

Bittrex's efforts to facilitate the withdrawal of his assets from the account.  In November 2019,

Bittrex informed Mr. Ghader that he could withdraw the assets from his blocked account, but Mr.

Ghader remained inactive.  Given his inactivity,  in early February 2020, Bittrex contacted Mr.

Ghader to solicit the withdrawal of his assets.  Mr. Ghader only responded in March 2020 by

providing Bittrex with a form required for the withdrawals.  Pursuant to its regulatory and

compliance policies, Bittrex asked Mr. Ghader to provide the Compliance Pictures, but Mr. Ghader

failed to do despite (i) indicating that he would send the pictures in a matter of hours; and (ii)

Bittrex following up on this indication.   In January 2021, Mr. Ghader tried to remedy his

KYC/Iranian Sanctions' issues by sharing with Bittrex a copy of his Dominica passport, and what

he alleged to be a personal tax return from Turkey.  However, when Bittrex asked him to provide a document showing his personal address (a lease contract, a utility bill, etc.), Mr. Ghader failed to do so.

56.    Regarding this license process, Mr. Ghader also attempted to mislead the Court as to his knowledge of the OFAC License.  In his May 16, 2023 letter, he asserted that the "permit was never made public."  However, as noted previously, several prominent cryptocurrency news websites reported on this license process in November 2019.  More importantly, though, Mr. Ghader, himself, was aware of this process, and he even submitted a form sent to him by the Debtors to withdraw his funds as part of the license process.  Mr. Ghader was aware of the process but was unable to withdraw because, for reasons known only to him, he would not submit the appropriate identifying information.

57.    <u>Fourth</u>, under the Terms of Service to which Mr. Ghader agreed, Bittrex was contractually entitled to block Mr. Ghader's account in light of the OFAC Sanctions.[10]    Also,

---

[10]    Specifically, section 2.2  "Restricted Locations" of the Terms of Service provides: "You may not use the Services if you are located in, or a citizen or resident of the United States. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction that is embargoed by the United States, or if you are on any trade or economic sanctions lists, such as the United Nations Security Council Sanctions List, or if you are restricted or prohibited from engaging in any type of trading by the European Union, Hong Kong Monetary Authority, Hong Kong Customs and Excise Department, Office of Foreign Asset Control or any other administrative law enforcement agencies. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction where your use of the Services would be illegal or otherwise violate any applicable law. You represent and warrant that you are not a citizen or resident of any such jurisdiction and that you will not use any Services while located in any such jurisdiction, and that you are not on any trade or economic sanctions list. You also may not use the Services if you are located in, or a citizen or resident of, any other jurisdiction where Bittrex has determined, at its discretion, to prohibit use of the Services. **Bittrex may implement controls to restrict access to the Services from any jurisdiction prohibited pursuant to this Section 2.2.** You will comply with this Section 2.2, even if Bittrex's methods to prevent use of the Services are not effective or can be bypassed." (Emphasis added.)

Moreover, section 10.2 of the Terms of Service states: "Bittrex may, at its discretion and without liability to you, with or without prior notice and at any time, temporarily suspend or permanently terminate your access to all or a portion of any Services."

Section 10.3 of the Terms of Service excludes any liability or damages resulting from any blockage of Mr. Ghader's account pursuant to the Iranian Sanctions (or any other reasons):

> "**Bittrex will not be liable for any losses suffered by you resulting from any modification of any Services or from any suspension or termination of your access to all or a portion of any Services** (whether pursuant to this Section 10 or for any other reason).  If and **when Services resume, you acknowledge that Token valuations and exchange rates may differ significantly from the valuations and rates prior to such event.**  (Emphasis added.)

58.    <u>Fifth</u>, section 4 of the Terms of Service lists several risks—including potential devaluation of account assets, any kind of losses, inability to receive financial benefits available to other customers, and restrictions to the account—that may materialize because of cryptocurrencies becomes defunct/delisted or governmental actions (such the Iranian Sanctions).[11] Mr. Ghader's Defunct/Delisted Crypto falls in the risk categories listed in section 4, as well the (i) the "rewards" that Mr. Ghader asserts (but does not prove) that he "was entitled to receive;" (ii) any (unproven) loss Mr. Ghader allegedly suffered because his account was frozen; and (iii) any (unproven) financial benefits Mr. Ghader allegedly did not enjoy because of the blockage.  Section 4 then disclaims any liability and damages related to such risks:

> You hereby irrevocably waive, release and discharge any and all claims, whether known or unknown to you, against Bittrex, Inc., Bittrex Malta, each of their respective Affiliates and their respective shareholders, members, directors, officers, employees, agents and representatives related to any of the risks set forth herein."

---

[11]    Specifically, section 4 of the Terms of Service state: "Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same. . . . You may be unable to withdraw Tokens prior to Bittrex ceasing to support transfer of any such Tokens, resulting in the loss of any such Tokens remaining in your Bittrex Account. Any Token may decrease in value or lose all of its value due to various factors including discovery of wrongful conduct, market manipulation, changes to Token Properties or perceived value of Token Properties, Attacks, suspension or cessation of support for a Token by Bittrex or other exchanges or service providers, and other factors outside the control of Bittrex. Any Token may decrease in value or lose all of its value due to legislative or regulatory activity, or other government action. . . . The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you."

59.    <u>Sixth</u>, section 16 of the Terms of Service generally disclaims liability for incidental,

consequential, and punitive damages, as set forth below:

> IN NO EVENT WILL BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH DAMAGES.

60.    Additionally, the Terms of Service limit the Debtors' liability to the amount of fees

paid by a customer to  Malta OpCo or BUS in the 12 months preceding the event giving rise to the

claim:

> IN NO EVENT WILL THE LIABILITY OF BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX) EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO

BITTREX UNDER THIS AGREEMENT IN THE TWELVE-
MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT
GIVING RISE TO THE CLAIM FOR LIABILITY.

61.     Pursuant to section 19 of the Terms of Service:

> With respect to any Tokens that are made available for trading by
> Bittrex Inc., the interpretation and enforcement of these Terms, and
> any dispute related to these Terms or the Services, will be governed
> by and construed and enforced in accordance with the laws of the
> State of Washington, without regard to conflict of law rules or
> principles (whether of Washington or any other jurisdiction) that
> would cause the application of the laws of any other jurisdiction.
> With respect to any Tokens that are VFAs and that are made
> available for trading by Bittrex Malta, the interpretation and
> enforcement of these Terms with respect thereto, and any dispute
> related to these Terms or the Services with respect thereto, will be
> governed by and construed and enforced in accordance with the laws
> of the Republic of Malta, without regard to conflict of law rules or
> principles (whether of Malta or any other jurisdiction) that would
> cause the application of the laws of any other jurisdiction.

62.     The choice of law clause contained in the Terms of Service is valid and enforceable.

*See*, *e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that

a choice of law clause in a purchase order was enforceable under both federal common law and

Delaware state law, and applying the law of the state set forth in the choice of law clause).   Under

Washington law, disclaimers of damages and limitations on liabilities are generally enforceable,

so long as they are conspicuous and where the counterparty has a reasonable opportunity to

understand their terms.  *See*, *e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428,

441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law"

because the clause was conspicuous and the counterparty has "a reasonable opportunity to

understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50

(Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was

"conspicuous").  For example, in *Debono Edward Av Dr Noe vs. No Stop Technology Limited*

(C49765) – 1049/2010 – First Hall Civil Court, Malta (Apr. 3, 2012), the court confirmed that Regulation (EC) No 593/2008 on the law applicable to contractual obligations applied as the "supreme law." And Article 3(1) of the said regulation states that "a contract shall be governed by the law chosen by the parties." The clauses in the Terms of Service are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Ghader Claims are for damages beyond the maximum liability set forth in Terms of Service, it must be disallowed.

63.   <u>Seventh</u>, Mr. Ghader's allegations that Malta OpCo blocked his account because Mr. Ghader was a "*potential* competitor" must be rejected. As stated several times, Malta OpCo suspended its services for this customer because of the Iranian Sanctions. Moreover, Mr. Ghader's allegations are not proven. But even if we assume that Mr. Ghader had the plan to offer a "competitive alternative option to Bittrex exchange," the failure of such a plan falls on Mr. Ghader and represents paradigmatic consequential damages. If Mr. Ghader obtained two financial services licenses from Estonian regulators in April 2019, those "licenses . . . expired about one year thereafter" because Mr. Ghader failed to take advantage of the OFAC License that would allow him to withdraw his assets from late 2019 to the end of March 2020. Moreover, Debtors cannot be liable for such far-flung speculative and consequential damages under any recognized theory even notwithstanding the prohibition of consequential damages in the applicable Terms of Service.

## IV.   **Ghader Claims Are Not Secured**

64.   Mr. Ghader further asserts that Claims 600-96, 600-10052, 599-38, 598-1021, 599-10018, and 598-10408 are secured. However, Mr. Ghader does not have lien, and he failed to attach evidence of the perfection of any security interests as required by Bankruptcy Rule 3001(d). Therefore, Claims 600-96, 600-10052, 599-38, 598-1021, 599-10018, and 598-10408 are not secured, nor are any of the other Ghader Claims.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) allow Claim 600-96 in the amount of the assets associated with Mr. Ghader's account (728,217.96089 HempCoin (THC), 13,782,397.10790 ReddCoin (RDD), 1,970.62728 Particl (PART), and 6,485.57100 TenX Pay Token (PAY)) for purposes of allowance and distribution; (iii) allow the Claim 600-96 in the amount of $3,206.71 for purposes of voting; and (iv) otherwise disallow the other Ghader Claims.

Date: September 29, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/  Kenneth Enos*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**