## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DESOLATION HOLDINGS LLC. *et al.*,[1] | ) Case No. 23-10597(BLS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) **Hearing Date: Oct. 30, 2023 at 11:00 a.m. (ET)** |
| | ) **Obj. Deadline: October 20, 2023 (by agreement)** |
| | ) |
| | ) **Re: Docket No. 411** |

## RESPONSE OF AZIM GHADER TO DEBTORS' OBJECTION TO CLAIMS 597-239, 597-296, 598-998, 598-1021, 598-10408, 599-35, 599-38, 599-10018, 600-87, 600-96, AND 600-0052 FILED BY AZIM GHADER PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1

Azim Ghader ("Ghader"), by and through his counsel, files this response (the "Response") to *Debtors' Objection to Proof of Claims 597-239, 597-296, 598-998, 598-998, 596-1021, 598-10408, 599-35, 599-38, 599-10018, 600-87, 600-96, and 600-0052 Filed by Azim Ghader Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1* [Docket No. 411] (the "Objection". In support of this Response, Mr. Ghader respectfully states as follows:

---

[1] The debtors (collectively the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104 .

### Preliminary Statement[2]

1.    By their Objection the Debtors seek to disallow various proofs of claims filed by Mr. Ghader, a former customer of the Debtors, on four (4) grounds: (i) the Claims were not properly executed and not *prima facie* valid (Objection p.14-15); (ii) certain of the Claims are duplicative (Objection p. 15-16); (iii) the Claims should be disallowed pursuant to section 502(b)(1), except for certain remaining crypto in his account (Objections pp. 16-23); and (iv) Mr. Ghader's claims are not secured (Objection pp. 23-24). Since filing the Objection, the Debtors and Mr. Ghader have, in good faith, agreed to *Stipulation Regarding Withdrawal of Claims* (the "Claims Stipulation;" Docket No. 468), which *Stipulation* has narrowed the Claims to four (4) remaining Claims before the Court – specifically Claim 599-998, Claim 598-1021, Claim 600-87, and Claim 600-96 (the "Surviving Claims" as defined in the Claims Stipulation).

2.    Mr. Ghader's Withdrawn Claims (as defined in the Claims Stipulation) have been withdrawn and are no longer at issue and only Surviving Claims 598-998 and 598-1021 (against Bittrex, Inc.) and Claims 600-87 and Claim 600-96 (against Bittrex Malta, Ltd. or "Malta OpCo") remain as the Surviving Claims.

3.    Paragraph 6 of the Claim Stipulation makes clear, for the avoidance of doubt, that: (i) to the extent one or more of the Surviving Claims shall be allowed against one or more of the Debtors' estates, Mr. Ghader shall be entitled to only a single recovery against such estate or estates; (ii) Mr. Ghader is not entitled to double or multiple recoveries on his Surviving Claims, if allowed, against any other estate or estates; and (iii) in all circumstances, Mr. Ghader's total recovery, if any, cannot exceed US $21,835,750 (which for the sake of further clarity, is an amount to which the Debtors have objected to in their Objection). (Stipulation para 6.)

---

[2]  Capitalized terms not defined in this Response have the meaning ascribed to them in the Objection.

4.     Paragraph 7 of the Claims Stipulation also makes clear that the Surviving Claims are unsecured and are not subject to any security interest or any priority rights under sections 506(a) and 507(a) of the Bankruptcy Code.  (Claims Stipulation para 7.)

5.     As a result of the Claims Stipulation, certain of the arguments set forth in the Debtors' Objection, have been resolved, leaving the Court to determine and allow the Surviving Claims.

6.     As discussed more fully below, the Surviving Claims are valid and enforceable against the Debtors and should be allowed in their entirety.

7.     Indeed, the dispute before the Court comes down to the six issues:

   i.  what Terms of Service, that form the basis of the parties' contractual rights and obligations, apply to Mr. Ghader's account with the Debtors;

   ii.  whether the Debtors were justified in blocking and restricting Mr. Ghader from withdrawing the crypto in his account pursuant to the then existing sanctions imposed by the United States Office of Foreign Assets Control (OFAC");

   iii.  if the OFAC sanctions did apply to Mr. Ghader's account, what obligations did the Debtors have to terminate and return the crypto held in Mr. Ghader's account to Mr. Ghader and did the Debtors comply with such obligations;

   iv.  whether Mr. Ghader sat on his rights to withdraw his crypto, as baldly asserted by the Debtors;

   v.  what damages did Mr. Ghader sustain as a result of the Debtors' wrongful actions; and

   vi.  are such damages limited or waived under the Terms of Service applicable to Mr. Ghader's account.

8.      Mr. Ghader respectfully submits the Debtors have it wrong, and each of these issues must and should be resolved in Mr. Ghader's favor, leading to the allowance and determination of his Surviving Claims.

### Facts Relevant to the Claims

**a) Mr. Ghader Opens and Enhanced Account and Wallet with Bittrex, Inc.**

9.      On or around June 10, 2017, Mr. Ghader created a hosted wallet (the "Wallet") with Bittrex, Inc. to invest in, trade and store cryptocurrency.  Objection Par. 7.

10.     At the time Mr. Ghader opened the Wallet, Bittrex offered two types of accounts: Basic Accounts and Enhanced Accounts. (**Exhibit A.**)  Mr. Ghader opened an Enhanced Account. As an Enhanced Account holder Mr. Ghader was required, pursuant to Bittrex, Inc.'s policies to submit scans of government identification, along with pictures of himself confirming his identity. *Id.*  Mr. Ghader provided the required information to Bittrex, Inc. and opened his Enhanced Account using his Iranian passport.

11.     At the time that he opened the Enhanced Account, Mr. Ghader agreed to Bittrex Inc.'s 2015 version of its Terms and Services attached hereto as **Exhibit B**.[3]

12.     Between the dates of June 10, 2017 and October 11, 2017, Mr. Ghader completed twenty-seven deposit transactions, investing well over one million dollars ($1,000,000) in Bitcoin ("BTC") and Ark token ("ARK") through Bittrex Inc.'s exchange. Mr. Ghader then used Bitcoins and Ark tokens to invest in other profitable crypto coins available for purchase on Bittrex Inc.'s exchange.

---

[3]  The Debtors erroneously suggest in the Objection that Mr. Ghader's Enhanced Account and Wallet are governed by the Debtors  2018 Terms of Service (**Exhibit C.**).  However, as discussed more fully below, the Terms of Service could not, and did not, apply to Mr. Ghader's Enhanced Account.

13.     By October 11, 2017, the day before Mr. Ghader's Enhanced Account was locked and frozen by Bittex, Inc., Mr. Ghader had taken strategic positions in various crypto coins, using his Enhanced Account and Bittrex Inc.'s exchange, including but not limited to, NEO, ADA, BTC, XVG, KMD, ARK, SYS, ARDR, STRAX, BTS, SNT, THC, RDD, PART, PAY, USDT, LMC, BAY, DOPE, CVC, LUN, BITS, INFX, and SAFEX.  **(Exhibit D.)**

14.     As of October 11, 2017, Mr. Ghader's Enhanced Account held crypto valued in excess of $1,000,000.  *Id.*

15.     During this time period, Mr. Ghader began to establish his own cryptocurrency exchange to offer digital asset services to individuals seeking to enter the cryptocurrency market.

**b)  Bittrex Inc. Locks, Blocks and Disables Mr. Ghader's Enhanced Account and Wallet.**

16.     On October 12, 2017, Bittrex, Inc. locked, blocked and suspended Mr. Ghader's Enhanced Account and Wallet.  (Objection, para 8.)

**c)  Mr. Ghader's 2017 Communications Regarding His Enhancd Account and Wallet.**

17.     Upon discovering his Enhanced Account and Wallet were locked, blocked and suspended, Mr. Ghader sent an email to Bittrex, Inc. requesting them to please activate his account.  **(Exhibit E.)**

18.     Bittrex responded by creating a customer ticket stating: "For security purposes, once your account is locked there will be a minimum 24 hour wait period before it will be unlocked . . . After a minimum of 24 hours has passed, we will check your ticket and enable your account. In some circumstances, we may require additional information."  **(Exhibit F.**)

19.     For reasons unknown to Mr. Ghader, Bittrex, Inc. unceremoniously closed the ticket without providing further explanation.

20.     Nonetheless, Mr. Ghader continued to inquire of Bittrex, Inc. as to why his Enhanced Account and Wallet were locked, disabled and frozen.  (*See* messages to and from Bittrex, Inc. Zen Desk Support System (the "Zen Desk") attached hereto as **Exhibit G**.)  (These twelve messages run from October 12, 2017 through January 7, 2018).

**d)  Mr. Ghader's 2018 Communications Regarding his Enhanced Account and Wallet.**

21.     Eight months later, on June 27, 2018, Bittrex, Inc.'s, through its ZEN Desk, advised Mr. Ghader:

> "We have concluded a compliance review of your account, and regret to inform you that your account must remain suspended. Federal Economic sanctions law prohibits U.S. companies from engaging in economic transactions with residents of certain countries, including Iran, Syria, Cuba, and the Crimean Region.  We have concluded you are a resident of the one of the four above-listed countries.  Under federal law, this account must remain suspended, pending direction from the U.S. Office of Foreign Assets Control as to the appropriate action to be taken.  If you believe that we have erroneously concluded that you are a resident of one of these countries please reply to this ticket and let us know.  Otherwise, we will keep you apprised of developments as we receive instruction from the U.S. government."

**(Exhibit H.)**

22.     On December 11, 2018, Mr. Ghader sent a message through Bittrex support as follows:

> Hello, According to this email"7 Days Remaining – Wallet Removal" and To keep your tokens, you must withdraw your balance before Thursday, December 20, 2018. Tokens not withdrawn before this date will be unrecoverable I CAN NOT WITHDRAW ETH BALANCE! PLease active account to withdrawal thank you

**(Exhibit I.)**

23.     Bittrex replied purporting security reasons for his account closure:

Hi azimghader@gmail.com, For security purposes, once your account is locked there will be a minimum 24 hour wait period before it will be unlocked. The 24 hour wait period can be waived by performing a live video chat with one of our agents. Please click the "Live Chat" button in the lower right corner of the Bittrex Support site if you would like to video chat with an agent now.

If you have not verified your account, please login and do so now as this is a requirement to have your account re-enabled. Please click here to begin, https://www.bittrex.com/Manage?view=verification

For Accounts valued at over $1000 USD we require additional information for proof of identity.

A government identification and a selfie of you holding that identification where we can match your face and information. Please also write "Bittrex" and today's date on a piece of paper and hold it in the picture. Please make sure the text on your ID is readable in all photos. Note: This means we need all 3 things in 1 photo. You, your ID, and the paper with "Bittrex" and the date on it. Also we do not accept .pdf, .doc or zip files, or links to files.

After a minimum of 24 hours has passed we will check your ticket and enable your account. In some circumstances we may require additional information.

(*Id.*)

24.    The next day Bittrex changed its excuse:

We have concluded a compliance review of your account and regret to tell you that your account must remain suspended. Federal economic sanctions law prohibits U.S. companies from engaging in economic transactions with the residents of certain countries, including Iran, Syria, Cuba, and the Crimean Region. Our Terms of Service, which users agree to when they sign up, prohibits such individuals from signing up for our service.

We have concluded that you are a resident of one of the four above-listed countries. Under federal law, this account must remain suspended, pending direction from the U.S. Office of Foreign Assets Control as to the appropriate action to be taken.

If you believe that we erroneously concluded that you are a resident of one of these countries, please reply to this ticket and let us know.

Otherwise, we will keep you apprised of developments as we receive instructions from the U.S. Government.

(*Id.*)

### e)   Mr. Ghader's 2019 Communications Regarding his Enhanced Account and Wallet.

25.      On April 3, 2019, Mr. Ghader reached out to the Debtors as follows:

Dear, My account is disabled without any reason. And I sent 2-3 tickets to active it again, but every time I got only the ready-email from robots. Please check my account and activate it again. I send the all needed documents again for you. Please check attachments.

(**Exhibit J**.)

26.      The Debtors replied:

Hi azimghader@gmail.com, For security purposes, once your account is locked there will be a minimum 24 hour wait period before it will be unlocked. If you have not verified your account, please login and do so now as this is a requirement to have your account re-enabled. Please click here to begin, https://www.bittrex.com/Manage?view=verification

We require a proof of identity for ALL requests.
1) Provide a proof of identity. Please attach 3 images of you holding your government-issued ID so we can match your face against the picture displayed on the ID. Also, write "Bittrex" and today's date on a piece of paper and hold it in the picture. The text on your ID must be legible in at least one of the photos.

Here are some guidelines to help you take a perfect valid image:
•The paper must have "Bittrex" and today's date (both handwritten)
• All text on both the ID and the paper must be legible and free of blur, glare, or obstruction
• Your face, shoulders, and arms must be visible
• The paper and the ID must both be visibly held in your hands, they can not be attached to each other or any other surface.
• All text must be read from left to right, the image cannot be mirrored or flipped in any way.
Disclaimer: Any images that do not satisfy these requirements will not be accepted under any circumstance.

> Required: Please submit the following 3 images: An image of you looking directly at the camera, another image of you looking off to the right, and a final image of you looking off to the left. All 3 photos are required for all requests. https://tinyurl.com/btxselfie

(*Id.*)

27.    Mr. Ghader replied:

> Dear, My account is disabled without any reason. And I sent 2-3 tickets to active it again, but every time I got only the ready-email from robots. Please check my account and activate it again. I send the all needed documents again for you. Please check attachments.

(*Id.*)

28.    On April 4, 2019, Bittrex responded:

> Hello. Thank you for writing in, my name is John. I am with the Bittrex Customer Service Experience Team.
>
> We have concluded a compliance review of your account and regret to tell you that your account must remain suspended. Federal economic sanctions law prohibits U.S. companies from engaging in economic transactions with the residents of certain countries, including Iran, Syria, Cuba, and the Crimean Region. Our Terms of Service, which users agree to when they sign up, prohibits such individuals from signing up for our service.
>
> We have concluded that you are a resident of one of the four above-listed countries. Under federal law, this account must remain suspended, pending direction from the U.S. Office of Foreign Assets Control as to the appropriate action to be taken.
>
> If you believe that we erroneously concluded that you are a resident of one of these countries, please reply to this ticket and let us know. Otherwise, we will keep you apprised of developments as we receive instructions from the U.S. Government.

(*Id.*)

29.    Mr. Ghader responded:

> Dear, Please check the document that I sent for you and now I send them again, please check! My passport: Dominica Self-photo Bank

statement: Luxembourg " 29, BLD G.D. CHARLOTTE L1331
LUXEMBOURG"

(*Id.*)

30.     When Bittrex did not reply, Mr. Ghader followed on April 10, 2019:

Dear, I am Waiting for your response. Do you check the documents
which I sent for you? Many Thanks,

(*Id.*)

31.     Unable to obtain access to his Enhanced Account and Wallet, on May 8, 2019, Mr.

Ghader created a new account on Bittrex.com with a different email address.  (**Exhibit K.**

(showing different account to have been made four years ago)  As part of this process, Mr.

Ghader submitted to and complied with Bittrex Inc.'s requisite verification process and his

new account was then verified.

32.     With his new account opened, and hoping to retrieve his existing cryptocurrency

held in his Enhanced Account and Wallet, Mr. Ghader asked that his new account be

consolidated with his still frozen Enhanced Account and Wallet.  (**Exhibit L.**)  Rather than

consolidating the two accounts, Bittrex, Inc. immediately suspended the new account, citing a

violation of their terms of service owing to multiple accounts.  (*Id.*)

33.     The information Mr. Ghader presented was sufficient enough to open a second

account in May of 2019. The Debtors closed his second account when he asked to combine the

two accounts.

**f)  Mr. Ghader's 2020 Communications Regarding his Enhanced Account and Wallet.**

34.     On February 3, 2020, Bittrex contacted Mr. Ghader through the Debtors' support

system and notified him of the OFAC license. Over the course of the next several weeks prior

to the license deadline, Mr. Ghader supplied the information that Bittrex requested, including

multiple proofs of address showing that he was not a resident of Iran, and his Dominica passport, and photos of himself next to his passport.

35.     On February 3, 2020, a Bittrex representative reached out to Mr. Ghader through the Debtors' support system:

> Hi azimghader@gmail.com,
>
> In about October 2017, your account was suspended after a compliance review determined that you may have been residing in a country or region for which Bittrex was not permitted to operate by the U.S. Treasury's Office of Foreign Assets Control (OFAC), and in violation of our terms of service. In May of 2018, Bittrex filed an application to permit it to release the funds currently frozen back to the owners. This application was recently granted and we are writing to let you know that you may withdraw your funds to another exchange.
>
> However, in accordance with US law and the license granted to us by OFAC, you may only withdraw your funds to an exchange or hosted wallet that 1) is not located in Iran, Syria, Cuba, or the Crimea Region of Ukraine; 2) is not subject to the jurisdiction of the US Department of the Treasury's Office of Foreign Asset Control; and 3) is not currently subject to any US-based sanctions.  In order to receive your funds, you must do the following: Create an account at a cryptocurrency exchange or hosted wallet that 1) is not located in Iran, Syria, Cuba, or the Crimea Region of Ukraine; 2) is not subject to the jurisdiction of the US Department of the Treasury's Office of Foreign Asset Control; and 3) is not currently subject to any US-based sanctions.
>
> If you have not already done so, create an account at support.bittrex.com, using the email address you used to register your Bittrex account.
>
> Fill out the required PDF which you will find here: https://bittrex.zendesk.com/hc/enus/article_attachments/360042465 732/License_Transfer_Form.pdf designating the name of the exchange or hosted wallet you intend to send your funds, and the address for each of the cryptocurrencies involved. Attach the pdf to the support ticket.
>
> Please note that if your balance is below the minimum withdrawal amount for the wallet, you will not be able to withdraw it.

Additionally, we may require additional identification procedures in order to release your funds.

Remember, cryptocurrency transactions are irreversible, and Bittrex will not be held responsible for errors in designating the proper address. *This procedure must be completed by March 15, 2020, for you to receive your funds.* Best Regards, (emphasis added)

(**Exhibit M**.)

36.    On March 11, 2020, at 11:12, Mr. Ghader created a follow-up:

Dear Support Team, I hope you are doing well.  As may you know, my account was disabled without any reason. I send many tickets to activate it, but until now, I could not trade or withdraw our funds.

(**Exhibit N**.)

37.    Bittrex replied at 11:15 the same day:

Hi there,  We have concluded a compliance review of your account and regret to tell you that your account must remain suspended. Federal economic sanctions law prohibits U.S. companies from engaging in economic transactions with the residents of certain countries, including Iran, Syria, Cuba, and the Crimean Region. Our Terms of Service, which users agree to when they sign up, prohibits such individuals from signing up for our service.  We have concluded that you are a resident of one of the four above-listed countries. Under federal law, this account must remain suspended, pending direction from the U.S. Office of Foreign Assets Control as to the appropriate action to be taken.  If you believe that we erroneously concluded that you are a resident of one of these countries, please reply to this ticket and let us know. Otherwise, we will keep you apprised of developments as we receive instructions from the U.S. Government.

(*Id.*)

38.    Mr. Ghader replied:

I am not a resident of the abovementioned countries.

(*Id.*)

39.     Noteworthy, at the time Bittrex had a license to return cryptocurrency to Iranian residents, so arguing that Mr. Ghader could not receive his funds because he was an Iranian resident is misguided.

40.     With no reply, Mr. Ghader messaged support again at 11:33:

> I  got an email "Important Notice Regarding Digital Currency Balance on Bittrex" on Mar 9, but please any action before that check my Request #1623289. ("Request #1623289" references, again, proof he did not reside in Iran).   If it's not possible to activate my account, let me know to withdraw funds.

(*Id.*)

41.     Importantly, attached to the message was a hyper link to a message with pictures of Mr. Ghader with his passport from prior correspondence. (*Id.*)

42.     Bittrex responded at 14:18, substantially the same as the message sent on the prior February 3. (*Id.*)

43.     In an effort to comply with the contents of the February 3, 2023, message, Mr. Ghader replied as follows at 19:03:

> Dear Support,
>
> Please send funds to the following address on the Binance exchange. I will send another form for rest assets on Bittrex . . . [detailing assets to be sent to respective wallets] . . . Regards,

(*Id.*)

44.     As Bittrex requested, Mr. Ghader attached records of, his current account with Bittrex and the exchange, Binance, for Bittrex to send his assets to, all appended to his 19:03 message. (Id.)

45.     At 20:16, Bittrex responded:

> Thank you for your inquiry. Please provide a copy of your ID and Proof of location showing a physical address and your full name that is dated in the last 90 days.

> Utility bill Property lease Title, rental agreement, Property Tax
> filing Best Regards,

(*Id.*)

46.     The next day, the 12th of March at 3:38, Mr. Ghader replied with two proofs of his

residence in Istanbul, Turkey along with his full name.  (*Id.*)

47.     It is absurd for Mr. Ghader to have been required to supply proof of location since

under the OFAC license he needed only to supply an exchange or account located outside of

Iran. Although he supplied far more information than necessary under the OFAC regulations,

the Debtors nevertheless failed to return to Mr. Ghader his cryptocurrency.

48.     On March 17, 2020, when the Debtors failed to return his cryptocurrency Mr.

Ghader messaged again:

> Dear Support Team, Any update on this. (*Id.*)

49.     On March 19, 2020, again: "Any update on this." (*Id.*)

50.     On March 19, 2020, Mr. Ghader opened up a separate ticket to advocate for himself.

**(Exhibit O.)**

51.     On March 21, 2020, The Debtors responded:

> We do ask that you please do not open additional requests about this
> issue and wait patiently for a specialist to review your account and
> reach out to you.

(*Id.*)

52.     On March 21, 2020, Bittrex replied:

> Hi azimghader@gmail.com,
>
> Thank you for your submissions. Please list the ARDR on the form. In addition,
> please provide 3-1 photos as shown below.
>
> For security and anti-fraud purposes this request requires proof of account
> ownership by supplying additional identification documents

Please reply to this email with the required documents or attach them directly to your support ticket by visiting https://bittrex.zendesk.com/agent/tickets/1895699. Required Proof of Identity

Please provide a government identification and a photo of you holding the identifications where we can match your face and information. Please also write Bittrex and today's date on a piece of paper and hold it in the picture. Please make sure the text on your ID is readable in all photos.

Required: Please submit the following 3 images: An image of you looking directly at the camera, another image of you looking off to the right, and a final image of you looking off to the left. All 3 photos are required for all requests.

Please see the attached photo for an example:

(**Exhibit N**.)

53.    On March 27, 2020, Mr. Ghader replied:

Dear Support team. First and foremost, our hope and prayers go to you and your family - be healthy and safe!
I will send the requested documents next hours. Do you need any other documents? Regards,

(*Id.*)

54.    Bittrex responded:

Hi azimghader@gmail.com,
Once the form and the photos are received, we can continue processing your request. Best Regards,

(*Id.*)

55.    Bittrex then unceremoniously closed the ticket window. (*Id.*)

56.    Mr. Ghader followed up on January 29, 2021 at 18:07, to no response. (**Exhibit P**.)

57.    The same day at 18:12 Mr. Ghader messaged as follows:

My account disabled and I sent all required documents to your department via email. but till now my it is not working. please check this ticket 1895699'

1 - As mentioned before I am not a resident of restricted counties, I provided all documents, please open my account.

2 - if you cannot open my account, based on this ticket 1895699, transfer my funds to Binance. Regards

(**Exhibit Q**.)

58.    On January 30, 2021, Bittrex responded:

Hi azimghader@gmail.com, We wanted to reach out and let you know that your request is in queue, and an agent will be contacting you once they have reviewed your submission. We ask that you please do not open additional requests about this issue and wait patiently as creating additional tickets will only cause further delays.

Thank you for your patience, and we apologize for the delay.
Best Regards,

(*Id.*)

59.    On February 4, 2021, Bittrex responded to the same discussion:

Thank you for contacting us! At this time we kindly ask for a proof of location. Acceptable proof of location must show your physical address and full name and include:
Utility bill (water, electricity, gas, sewer, trash, etc.)
Property lease or rental agreement
Mortgage bill
Residential Property Tax filing

Reply to this ticket and attach documentation showing proof of location and the ID that will be used to verify your account to continue through the verification process.
Best Regards,

(*Id.*)

60.    Mr. Ghader replied with the following:

Please find the attached documents
1.  Passport
2.  Passport with my selfies
3.  Tax Certificate number and approval letter
4.  Certificate for Address

(*Id.*)

61.    Consistent with the Debtors strategy of offering Mr. Ghader a never-ending maze

of red tape, Debtors responded as follows:

> Hi azimghader@gmail.com, Thank you for your submissions. Can you please confirm that this is your residential tax document or if this is a personal income tax statement? Best Regards,

(*Id.*)

62.    Mr. Ghader responded:

> Thanks for your reply. This is my Personal Tax Identification Letter that provided by the Turkish Tax Authorities based on my residential address. My address mentioned in this letter.
> Also please check the attached document that mentioned my residential address.

(*Id.*)

63.    Bittrex responded:

> Hi azimghader@gmail.com, We wanted to reach out and let you know that your request is in queue, and an agent will be contacting you once they have reviewed your submission. Thank you for your patience, and we apologize for the delay. Best Regards,

(*Id.*)

64.    Bittrex then responded:

> Hi azimghader@gmail.com, For this process, we are only able to accept tax documents related to your residence and not your personal tax documents. Do you have one of the other four accepted document types?
> Utility bill (water, electricity, gas, sewer, trash, etc.)
> Property lease or rental agreement
> Mortgage bill
> Residential Property Tax filing Best Regards,

(*Id.*)

**g)  The 2023 Communications Regarding Mr. Ghader's Enhanced Account and Wallet.**

65.    In a lengthy correspondence beginning from April 3, 2023, until June 30, 2023, Mr. Ghader again attempted to retrieve his cryptocurrency to no avail. *See* **Exhibit R.** At that time, he also inquired as to why his balance disappeared, when over the prior five years that his account was frozen, he could still see his balance.  *Id.*

**h)  The Surviving Claims.**

66.     Mr. Ghader wrote in his addendum to his proofs of claims that Debtors owe him *in excess* of 750 bitcoin because he understood that the damages owed to him are far more than just evaluation for conversion. It is also for: (a) Reasonable interest accrued on his frozen accounts, as Debtors were obligated to place OFAC blocked accounts in interest bearing wallets; (b) Crypto rewards from those coins that offer investment awards such as ONT, ONG and Bitgold; (c) Harm perpetrated onto his various businesses as a result of inadequate capitalization owing to the Debtors' refusing him access to his funds Other claims and causes of action including but not limited to fraud, breach of fiduciary duty, conversion, emotional distress, misrepresentation and unjust enrichment, as well as other theories for damages.

67.     During the time period that his Enhanced Account was locked and frozen, Mr. Ghader's Enhanced Account increased in an amount equivalent to 750 BTC.  As of the Petition Date, May 8, 2023, 750 BTC was worth US $20,771,250.

68.     On July 9, 2023, the Debtors unlocked Mr. Ghader's Enhanced Account and Wallet.  At its height Mr. Ghader's Enhanced Account and Wallet were worth more than 750 BTC.  On July 9, 2023, the Enhanced Account and Wallet plummeted in value to the equivalent of approximately 10 Bitcoins, or approximately US $300,000.

**i)      Mr. Azim Ghader**

69.     Mr. Ghader spent most of his youth living in Gilan Province located in Northern Iran. In addition to being an Iranian citizen, Mr. Ghader is a citizen of the Commonwealth of Dominica, and he has a Dominica passport. In 2017, when his businesses began prospering, Mr. Ghader left Gilan Province and Iran. Since leaving, he has not been subject to Iranian taxes. Mr. Ghader uses a number of residences for personal convenience in different countries, including Istanbul where he spends the bulk of his time, and the United Arab Emirates. Since

2017, Mr. Ghader utilized many locations in different countries for personal and business convenience, including Estonia, Luxembourg, Turkey, United Arab Emirates, and India. Since 2019, Mr. Ghader resided mostly in Istanbul, Turkey.

70.    From 2016 to the present, Mr. Ghader was not a resident of Iran as contemplated under 31 C.F.R. § 560.204, although he returned to Iran occasionally to visit family. Mr. Ghader has never been a "Specifically Designated National (SDN)." (OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. Persons on this OFAC list are referred to as SDNs.) Therefore, American companies, including the Debtors, were not prohibited from offering him goods and services.[4]

### RESPONSE TO THE DEBTORS' OBJECTION

71.    The Objection seeks to disallow Mr. Ghader's Surviving Claims on four (4) grounds: (i) the Claims were not properly executed and not *prima facie* valid (Objection pp.14-15); (ii) certain of the Claims are duplicative (Objection p. 15-16); (iii) the Claims should be disallowed pursuant to section 502(b)(1), except for certain remaining crypto in his account (Objections pp. 16-23); and (iv) Mr. Ghader's claims are not secured (Objection pp. 23-24).

72.    Mr. Ghader addresses the objections *seriatim*.

### a. Mr. Ghader Properly Executed His Surviving Claims And The Claims Are Prima Facie Valid.

73.    Local Rule 9011-4 for the Bankruptcy Court for the District of Delaware provides:

> **The filing of a proof of claim electronically with the Clerk or duly appointed claims agent shall constitute the filing claimant's approved signature by law**. Electronic claimants are not required to be registered CM/ECF users. Electronically filed proofs of claim are deemed signed upon electronic submission with the Clerk or duly appointed

---

[4] OFAC FAQ 118 ("I have a client that is in Iran to visit a relative. Do I need to restrict the account? No. As long as you are satisfied that the client is not ordinarily resident in Iran, then the account does not need to be restricted.").

claims agent.9011-4 of Mr. Ghader filed the Surviving
Claims electronically by and through on August 31, 2023.
(Emphasis added.)

74.     Mr. Ghader personally, and timely, filed the Surviving Claims on August 31, 2023

by and through the duly appointed claims agent (the "Claims Agent") in these cases, Omni

Agent Solutions.  His electronic filing of the Surviving Claims constitutes his approved

signature by law.  Indeed, his Surviving Claims were docketed and assigned claim numbers by

the Claims Agent.

75.     Local Rule 3001-1(a)(ii) further provides:

> *Electronic Claims*. Claims submitted through a court-
> approved electronic claims filing system are considered the
> original proof of claim. Additional copies for the Clerk and
> trustee are not required.

76.     Mr. Ghader's electronic filing of the Surviving Claims are considered, by Local

Rule 3001-1(a)(ii), to be his original proof of claim.  Accordingly, the Debtors' first Objection

– the Surviving Claims are not proper and are not *prima facie* valid -  should be overruled.

### b.  *Mr. Ghader's Claims are not duplicative.*

77.     Claims 10408, 10018 and 10052 have been withdrawn pursuant to the parties'

Claims Stipulation.  (Docket No. 468.)

78.     More importantly, paragraph 6 of the Claims Stipulation makes clear Mr. Ghader's

Surviving Claims shall be entitled to only a single recovery, and Mr. Ghader is not entitled to

any double or multiple recoveries on his allowed Surviving Claims.  *Id*.  Moreover, for the

avoidance of doubt, the Surviving Claims cannot exceed US $21,835,750.  *Id.*

79.     Accordingly, the Debtors' second objection - Mr. Ghader's Surviving Claims are

duplicative – should be overruled.

### c. *Mr. Ghader's Claims are not secured.*

80.     Paragraph 7 of the Stipulation acknowledges Mr. Ghader's Surviving Claims are

unsecured and not secured or entitled to priority treatment:

> The Parties further stipulate and agree the Surviving Claims
> are unsecured claims and not subject to any security interest
> or priority rights under sections 506(a) and 507(a) of the
> Bankruptcy Code, respectively.

81.     The Debtors' fourth objection – Ghader's Claims are not secured – is similarly

without merit and the Objection should be overruled.

### d. *Mr. Ghader's Claims should be allowed under Section 502(b)(1).*

82.     The Debtors seek to disallow Mr. Ghader's Surviving Claims pursuant to section

502(b)(1) on seven (7) different grounds: (i) Mr. Ghader's Surviving Claims do not match the

cryptocurrencies in Mr. Ghader's Enhanced Account and Wallet (Objection para 52); (ii)  Mr.

Ghader's Surviving Claims are against Malta OpCo, not Bittrex, Inc, Malta Holdings or

Desolation (Objection para 53); (iii) Mr. Ghader's inability to withdraw the assets in his

account from October 2017 to early July 2023 is not imputable to the Debtors (Objection para

54); (iv) Bittrex, Inc. was justified in blocking Mr. Ghader's account in light of the OFAC

Sanctions (Objection para 57); (v) Section 4 of the 2018 TOS applies to Mr. Ghader and he

accepted the risks – including potential devaluation of account assets, any kind of losses,

inability to receive financial benefits available to other customers and restrictions to the

account – that may materialize because cryptocurrencies become defunct/delisted or

governmental actions (such as the Iranian Sanctions) (Objections 58); (vi) Section 16 of the

2018 TOS applies to Mr. Ghader and Mr. Ghader disclaimed liability for incidental,

consequential, and punitive damages; and (vii) Mr. Ghader's allegations that Malta OpCo

blocked his account because Mr. Ghader was a potential competitor must be rejected (Objection 63).

83.    Each of the Debtors' section 502(b)(1) arguments are without merit, and the Objection should be overruled.

84.    *First*, **Mr. Ghader's Surviving Claims do match the cryptocurrencies in Mr. Ghader's Enhanced Account and Wallet.**   Indeed, the chart (the "Chart") included in the Objection (Objection para 52) reflects, contrary to Debtors' disingenuous assertions, the crypto still in Mr. Ghader's Enhanced Account and Wallet.   Indeed, the Chart specifically reflects fractional amounts of crypto in Mr. Ghader's Account and Wallet that has not been withdrawn. The Debtors improperly suggest these fractional amounts were withdrawn, when they were not.   Only one of the "Crypto Types" identified in the Chart – No. 22 Tether (USDT) – has been fully withdrawn from Mr. Ghader's Enhanced Account and Wallet.  This withdrawal, however, occurred in September, 2023, after Mr. Ghader had filed his Surviving Claims.  In no way, shape, or form is Mr. Ghader trying to pull a fast one on the Court, or the Debtors.

85.    Indeed, Mr. Ghader was able to withdraw some of his crypto on July 9, 2023. However, the fractional amounts (identified in the Chart) remain in place.  Mr. Ghader is entitled to the return of these fractional amounts.

86.    The Debtors further suggestion that Mr. Ghader "knowingly and fraudulent included all "Defunct/Delisted Crypto" in his Surviving Claims, is equally misleading, if not contemptuous.  The Defunct/Delisted Crypto remains in Mr. Ghader's Enhanced Account and Wallet.  It is transferable.  Indeed, within one year of the Petition Date, Bittrex Global transferred *hundreds, if not thousands,* of the "Defunct/Delisted Crypto, to non-debtor affiliates. (*See Debtors' Statements of Financial Affairs, Schedule 4, Transfers within one year*

*of the Bankruptcy,* Docket No. 92.)    Mr. Ghader is entitled to withdraw any and all Defunct/Delisted Crypto associated with his Enhanced Account and Wallet and the Objection should be overruled.

87.    Second, ***Mr. Ghader was a customer of Bittrex, Inc, not Malta OpCo.***  The Debtors next argue that Mr. Ghader has yet to withdraw the "Remaining Crypto" in his account at Malta OpCo.  (Objection para 53.)

88.    Mr. Ghader opened his Enhanced Account and Wallet with Bittrex, Inc. on June 10, 2017.  He never consented to, nor agreed, that his Enhanced Account and Wallet could, or should, be transferred to Malta Opco.  Nor did he ever agree to the 2018 Terms of Service (the "2018 TOS") that the Debtors repeatedly rely upon in their Objection.[5]  Rather, the only Terms of Service that apply to Mr. Ghader's Enhanced Account and Wallet are the 2015 TOS. (**Exhibit B**.)

89.    As the Court will recall at the June7, 2023 hearing before the Court, the Debtors' CRO, testified that Mr. Ghader had no relationship with any of the Debtors, was not a customer of Bittrex, Inc.  but was a customer of Bittrex Global a non-debtor affiliate.  (*See Transcript of June 8, 2023 hearing,* **Exhibit S**.)  The testimony was not correct.   Bittrex Global, however, subsequently advised Mr. Ghader that he was not a customer of Bittrex Global.  (**Exhibit T**; *see also* Objection par. 7.)

90.    Third, ***Mr. Ghader's inability to withdraw the assets in his account from October 2017 to early July 2023 can, and must, imputed to the Debtors.***  The Debtors assert that Mr.

---

[5]    The Debtors seek to impose the 2018 TOS on Mr. Ghader in an attempt to impute the various limitations and restrictions noted in the 2018 TOS onto Mr. Ghader.  The limitations and restrictions noted in the 2018 TOS do not exist in the 2015 Terms of Service (the "2015 TOS") applicable to Mr. Ghader's Enhanced Account and Wallet. Evidence at trial on the Objection will prove, beyond a reasonable doubt, that the 2018 TOS do not apply to Mr. Ghader.

Ghader's ability to withdraw the assets in his Enhanced Account and Wallet cannot be imputed to them because (i) Debtors were required to comply with the Iranian Sanctions; (ii) under both KYC and Iranian Sanctions' perspective, Debtors justifiably refused to permit withdrawal based on suspicious documentation Mr. Ghader provided, such as the 2019 Luxembourg proof of residency at a nonresidential, co-working, address; and (iii) Mr. Ghader repeatedly failed to take appropriate actions to comply with the Debtors' regulatory and compliance requirements.

91.     The Debtors' assertions that they were required to comply with the Iranian Sanctions are without merit.  (Significantly, the debtors do not cite in the Objection to the specific Iranian Sanctions they relied upon to suspend Mr. Ghader's account.)  It appears, based on an April 27, 2018 letter from Perkins Coie, the Debtors' former counsel, to Mr. Ghader, that the Debtors were relying upon the Iranian Transactions and Sanctions regulations, 31 CFR Part 560, and 31 CFR Part 501, subpart E, and in particular 31 CFR 560.516.  (**Exhibit U**.) These sanctions do not apply when the institution is merely returning funds already owned by the individual.  According to FAQ 37 issued by OFAC, the accounts in such circumstances are not blocked.  The account holder can close the account and have the funds transferred to his or her account outside the United States.  (See OFAC FAQ 37, FAQ 646 **Exhibit V.**; (implying cryptocurrency should not be blocked unless the holder is on the SDN List))

92.     To the extent the Debtors were relying upon apply other OFAC issued regulations, Mr. Ghader was not on the Specially Designated Nationals and Blocked Persons List (the "SDN List").  His extensive correspondence and communications to the Debtors (noted above), including documents and verification information he provided the Debtors, undercut the Debtors' arguments.  Mr. Ghader was never a blocked person, he wasn't even an Iranian resident from October 12, 2017 forward, and he had no ties to the Iranian government.

93.     The Debtors' argue that Mr. Ghader repeatedly failed to take appropriate actions to comply with the debtors' regulatory and compliance requirements. Nothing could be further from the truth. Mr. Ghader tried time and time again through lengthy correspondence to indicate that he was not an Iranian resident. He also tried continuously to utilize the OFAC license period, when OFAC regulations didn't even apply to his circumstance. The Debtors thwarted his efforts at every turn.

94.     The first eight months for which Mr. Ghader's account was frozen, the Debtors lied as to the reason for why it was frozen, representing it being for security purposes, where in reality, it was for purported violations of OFAC regulations. Supra 220-23. Thus, Mr. Ghader did not know the grounds for which he could advocate for the release of his assets.

95.     In 2019, Mr. Ghader relayed sufficient information to determine that he no longer lived in Iran. Supra Par. 24-33.  Indeed, such documents were sufficient enough to open a new account with Bittrex. Still, the Debtors continued to block Mr. Ghader from accessing his funds without any basis.

96.     In 2020, when the Debtors finally notified Mr. Ghader about the OFAC license, the Debtors included prerequisites to Mr. Ghader receiving his assets pursuant to the license which had nothing to do with purported OFAC regulations. Literally, the entire purpose of the license was for folks who reside in Iran to receive the return of their cryptocurrency. Supra 34-64. Forcing Mr. Ghader to offer up proof of location defeated the whole purpose of the license. In any event, Mr. Ghader offered sufficient proof of his address in Istanbul Turkey, where he currently resides. Still, that wasn't good enough for the Debtors because the Debtors never had any intention of returning Mr. Ghaders' funds

97.    <u>Fourth</u>, Bittrex, Inc. was not entitled to block Mr. Ghader's account in light of the OFAC Sanctions.  The 2018 TOS did not apply to Mr. Ghader.  Rather, the 2015 TOS applied.

98.    <u>Fifth</u>, ***the 2018 TOS did not apply to Mr. Ghader***.  The Debtors again seek to impose the 2018 TOS on Mr. Ghader to argue he accepted and agreed to the risks – including potential devaluation of account assets, any kind of losses, inability to receive financial benefits available to other customers and restrictions to the account – that may materialize because cryptocurrencies become defunct/delisted or governmental actions (such as the Iranian Sanctions).

99.    The 2015 TOS applied to Mr. Ghader, not the 2018 TOS.  Mr. Ghader did not irrevocably waive, release and discharge any and all claims, whether known or unknown, against the Debtors.  (Objection at para 58.)

100.    <u>Sixth</u>, the 2018 TOS do not apply to Mr. Ghader, and Mr. Ghader did not disclaim liability for incidental, consequential, and punitive damages.  Indeed, these disclaimers and limitations are not included in the 2015 TOS.  Moreover, it was impossible for Mr. Ghader to agree to the 2018 TOS, given his account was locked, blocked and suspended at the time, and the Debtors would not offer Mr. Ghader access to their exchange.

101.    <u>Seventh</u>, *Mr. Ghader's allegations that Malta OpCo blocked his account because Mr. Ghader was a potential competitor should not be rejected* (Objection 63).  The Debtors argue that "even if we assume that Mr. Ghader had the plan to offer a 'competitive alternative option to Bittrex exchange,' the failure of such a plan falls on Mr. Ghader and represents paradigmatic consequential damages." (Objection 63.)  The Debtors urge: the "Debtors cannot be liable for such far-flung speculative and consequential damages under any recognized theory.

102.    However, in his Addendum to his Surviving Claims, Mr. Ghader clearly asserts damages arising from Debtors' misconduct, including damages as a result of fraud, breach of contract, breach of fiduciary duty, conversion, tort, civil conspiracy, emotional distress, personal injury, misrepresentation, breach of the implied duty of good faith and fair dealing, unjust enrichment, negligence and lost profits.

103.    By way of example, assuming the Debtors committed the tort of conversion, damages for converted securities is the highest valuation of the converted account. *Schultz v. Commodity Futures Trading Comm'n*, 716 F.2d 136, 139–40 (2d Cir. 1983) (citing *Gallagher v. Jones*, 129 U.S. 193, 199-202 (1889) for the proposition that "the measure of damages in stock transactions of this kind is the highest intermediate value reached by the stock between the time of the wrongful act complained of and a reasonable time thereafter, to be allowed to the party injured to place himself in the position he would have been in had not his rights been violated.").

104.    Converted cryptocurrency is evaluated for the purposes of damages like securities, as contemplated in *Schultz*. *See Diamond Fortress Techs., Inc. v. EverID, Inc.*, 274 A.3d 287, 308 (Del. Super. Ct. 2022) (discussing cryptocurrency); *BDI Cap., LLC v. Bulbul Invs. LLC*, 446 F. Supp. 3d 1127, 1137 (N.D. Ga. 2020) ("'If a broker refuses to make delivery upon demand ... he is liable for conversion.' The Georgia appellate courts would likely extend the logic . . . to Bitcoin"). "[T]he measure of damages for wrongful conversion of stock or properties of like character is the higher value of either: '(1) its value at the time of conversion or (2) its highest intermediate value between notice of the conversion and a reasonable time thereafter during which the stock could have been replaced ....'" *Diamond Fortress Techs., Inc. v. EverID, Inc.*, 274 A.3d 287, 308 (Del. Super. Ct. 2022) (discussing cryptocurrency).

105.    Mr. Ghader intends to prove the various damages he suffered at the hearing on the Objection, and if necessary will file an adversary action if needed.  The Debtors' Objection should be overruled and the Court should, consistent with section 502(b)(1) determine and allow the amount of Mr. Ghader's Surviving Claims in lawful currency of the United States as of the Petition Date.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Azim Ghader respectfully requests that the Court enter an order: (i) determining and allowing the Surviving Claims; (ii) denying the Objection; and (iii) granting any and all further relief the Court deems just and appropriate.

Dated: October 22, 2023
Wilmington, Delaware

*/s/ Donald J. Detweiler*
**WOMBLE BOND DICKINSON**
Donald J. Detweiler (DE Bar No. 3087)
Elazar Kosman (DE Bar No. 7077)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com
           elazar.kosman@wbd-us.com

*Counsel for Azim Ghader*