**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | _____ |
| | (Jointly Administered) |

**DECLARATION OF DAVID MARIA IN SUPPORT OF PLAN CONFIRMATION**

David Maria, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

**Background and Qualifications**

1.     I am the General Counsel and Chief Legal Officer for Bittrex, Inc. ("BUS").  I joined BUS in May 2021 as Head of Litigation and Regulatory Affairs.  I was appointed as General Counsel and Chief Legal Officer in December 2022.  Before joining BUS, I was a principal at Squire Patton Boggs, where I focused my practice on government investigations and white collar crime.  Previously I served as an Assistant United States Attorney in the District of Minnesota, a partner at Shook Hardy & Bacon L.L.P., and as a trial attorney at the United States Department of Justice, Criminal Division.  I received a J.D. from Georgetown University Law Center, a Master of Science in Physiology from Georgetown University, and a Bachelor of Arts from the University of Virginia.

2.     In my capacity as the General Counsel and Chief Legal Officer, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and ongoing restructuring efforts, including, but not limited to, the *Joint Chapter 11 Plan of Liquidation of*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

*Desolation Holdings LLC and its Affiliated Debtors* [D.I. 293] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

3.    Except as otherwise indicated herein, all facts in this declaration (this "Declaration") are based upon (a) my personal knowledge of the Debtors' operations, (b) my discussions with other members of the Debtors' management team and advisors, and (c) my review of relevant documents and information concerning the Debtors' operations. If called upon to testify, I could and would testify competently to the facts set forth herein.

## The Debtors' Wind Down

4.    Based on my extensive and intimate involvement throughout the course of these Chapter 11 Cases, including in connection with the preparation of the Plan, I firmly believe that the transactions set forth in the Plan provide the Debtors and their creditors the best possible recovery.

5.    Specifically, the Plan is the culmination of months of planning, and contemplates a series of transactions pursuant to which BUS' and Malta OpCo's customers will receive distributions in the form of withdrawals equaling 100% of the cryptocurrencies associated with their accounts, and general unsecured creditors will receive distributions equal to 100% of their allowed claims.

## The Plan Satisfies the Requirements of Confirmation

6.    As discussed above, the Plan seeks to effectuate the wind down of the Debtors by providing for distributions in the form of withdrawals equaling 100% of the cryptocurrencies associated with customer accounts, and payment of general unsecured claims as well as other allowed claims in accordance with the priorities set forth in the Bankruptcy Code.  I believe that

---

[2]    All terms not defined herein have the meaning given to them in the Plan.

the Plan maximizes the value of the Debtors' estates and provides as meaningful a recovery to as many of the Debtors' stakeholders as is possible under the circumstances of these Chapter 11 Cases.

7.      As the Debtors' General Counsel and Chief Legal Officer, I was involved in the formulation of the Plan.  In my opinion, the Plan represents the best path available to expeditiously conclude these Chapter 11 Cases and maximize creditor recoveries.

**I.      The Plan Satisfies the Bankruptcy Code.**

8.      I have been advised of the applicable standards under which a chapter 11 plan may be confirmed pursuant to section 1129 of the Bankruptcy Code.  I understand that the Hengel Declaration addresses some of the requirements for a chapter 11 plan to be confirmed.  This Declaration does not address every confirmation requirement and instead only addresses the applicable confirmation requirements that relate to my personal involvement in the Plan drafting process.  For the reasons detailed below, and with the consultation and guidance of the Debtors' advisors, I believe, to the best of my knowledge, that the Plan satisfies the applicable Bankruptcy Code requirements for confirmation of a plan.  I have set forth the reasons for such belief below, except where such compliance is apparent on the face of the Plan and related documents.

**A.      The Plan Fully Complies With The Applicable Provisions of the Bankruptcy Code – § 1129(a)(1)**

9.      I understand that section 1129(a)(1) of the Bankruptcy Code requires a chapter 11 plan to comply with all applicable provisions of the Bankruptcy Code including those that follow:

**1.      Proper Classification of Claims and Interests – §§ 1122, 1123(a)(1)**

10.     I understand that sections 1122 and 1123(a)(1) of the Bankruptcy Code govern the manner in which a debtor classifies claims and interests.  I believe that the Plan's classification of Claims and Interests satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy

Code because the Plan places Claims and Interests into five separate Classes, with the Claims and Interests in each differing legally or factually from those in other Classes or being grouped separately based on other relevant criteria.

11.     I believe that valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.  Generally, Claims (rights to payment) are classified separately from Interests (representing ownership in the businesses).  In particular, the Plan breaks out customer Claims from General Unsecured Claims because they have differing potential legal rights.  Customer Claims are separated into separate Classes because customers transacted with different Debtors, and therefore, have claims against BUS but not Malta Opco, or vice-versa.  Moreover, General Unsecured Claims are classified differently from other unsecured Claims because they are structurally different than Administrative Claims, Priority Tax Claims, Other Priority Claims, and Intercompany Claims.

12.     Based on my understanding of the breakdown of Classes, I believe that there are valid business, legal, and/or factual reasons to justify the separate classification of the particular Claims or Interests into the Classes created under the Plan. I also believe that Article III of the Plan properly designates Classes of Claims and Interests. As such, I believe the Plan satisfies section 1122(a) and 1123(a)(1) of the Bankruptcy Code.

### 2.  Specification of Unimpaired Classes – § 1123(a)(2)

13.     I understand that Article III of the Plan identifies Class 1 as Unimpaired.

### 3.  Treatment of Impaired Classes – § 1123(a)(3)

14.     I understand that Article III of the Plan identifies Classes 2A, 2B, 3, 4, and 5 as Impaired and specifies their treatment.

### 4.  Equal Treatment of Similarly Situated Claims and Interests – § 1123(a)(4)

15.    I understand that section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same rights and treatment to each Holder of Claims or Interests as other Holders of allowed Claims or Interests within such Holders' respective Class, except where the Holder of such Claim or Interest has agreed to a less favorable treatment.  I believe that the Plan satisfies this requirement, as Article III of the Plan provides that Holders of Allowed Claims or Interests in a particular Class will receive the same treatment as other Holders in such Class, except to the extent that any such Holder agrees to less favorable treatment.

### 5.  Adequate Means for Implementation – § 1123(a)(5)

16.    I understand that section 1123(a)(5) of the Bankruptcy Code requires that a chapter 11 plan provide adequate means for a plan's implementation.  The Plan provides adequate means for implementation as required under section 1123(a)(5) of the Bankruptcy Code.

17.    Among other things, Article IV of the Plan sets forth means of implementation such as (a) the settlement and compromise of disputes between the Customers and the Debtors with respect to the ownership of the Cryptocurrencies; (b) the approval of the SEC 9019 Motion and related Consent Judgment filed in the SEC Action; and (c) the Liquidation of the Debtors, which includes (but is not limited to) the appointment of a Plan Administrator in charge of making the Distributions under the Plan (among other things), the dissolution of the Debtors except for BUS as the Wind Down Entity, and the transfer of Debtors' Wind-Down Assets to the Wind Down Entity, (d) the settlement of Claims after the Effective Date; (e) the cancellation of certain existing securities and the DIP Loan Agreement; (f) the release of Liens; (g) the undertaking of certain corporate actions; (h) the application of section 1146(a) of the Bankruptcy Code in connection with any transfers of property pursuant to, in contemplation of, or in connection with, the Plan;

and (i) the preservation of Debtors' Causes of Action as set forth in the Plan, which are assigned to the Wind Down Entity.

### 6.    Prohibition of Issuance of Non-Voting Stock – § 1123(a)(6)

18.    I understand that section 1123(a)(6) of the Bankruptcy Code requires that a debtor's organizational documents prohibit the issuance of nonvoting equity securities.  I understand that three of the Debtors will be dissolved as of the Effective Date, and that with respect to the Wind Down Entity, no non-voting stock will be issued.  Accordingly, I believe section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

### 7.    Selection of Officers and Directors – § 1123(a)(7)

19.    I understand that section 1123(a)(7) of the Bankruptcy Code requires that any provisions in the Plan with respect to the manner of selection of any director, officer, or trustee be consistent with the interests of creditors, equity holders, and public policy.  The manner for selection of the Plan Administrator and any successor to the Plan Administrator is outlined in Article IV.3 of the Plan.  I believe that the selection process is consistent with the interests of Holders of Claims and Interests and public policy.  Accordingly, I believe that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### 8.    Discretionary Contents of the Plan – § 1123(b)

20.    I understand that section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  I understand that pursuant to section 1123(b) of the Bankruptcy Code, among other things, a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate, or the retention and enforcement by the debtor, by the trustee,

or by a representative of the estate appointed for such purpose, of any such claim or interest; or (d) "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."

### a.   Impaired or Unimpaired Classes – § 1123(b)(1)

21.    The Plan is consistent with section 1123(b) of the Bankruptcy Code.  Pursuant to Article III of the Plan, Class 1 is Unimpaired because I understand the Plan leaves unaltered the legal, equitable, and contractual rights of the Holders of Claims within such Classes.  On the other hand, Classes 2A, 2B, 3, 4, and 5 are Impaired because the Plan modifies the rights of the Holders of Claims or Interests, as applicable, within such Classes as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### b.   Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases – § 1123(b)(2)

22.    Article V of the Plan  provides that, on the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such contract or lease: (a) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (c) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; or (d) is identified for assumption on the Assumption Schedule included in the Plan Supplement. Accordingly, I believe that the Plan complies with section 1123(b)(2) of the Bankruptcy Code.

### c.   Settlement of Claims or Interests – § 1123(b)(3)(A)

23.    Article IV.B.1 of the Plan provides for a compromise between the Debtors and their customers concerning the ownership of the cryptocurrencies.  Although the Debtors believe that cryptocurrency assets maintained in BUS omnibus wallets constitute property of the bankruptcy

estate, the proposed compromise renders the debate academic because customers can withdraw 100% of the cryptocurrencies deposited onto the platform, while avoiding the cost and delay of litigation, including potential dilution from regulatory or other unknown disputed, contingent, and unliquidated creditors. At the same time, the withdrawal of cryptocurrency assets by customers will eliminate potential risk to the estate if the customers prevail in demonstrating that they own the cryptocurrency assets associated with their accounts.  Article IV.B.2 of the Plan also discusses a settlement of the SEC Action, which has been approved by the Court.  Therefore, I believe that the Plan complies with section 1123(b)(3)(A) of the Bankruptcy Code.

### d.   Retention of Claims or Interests – § 1123(b)(3)(B)

24.     Article IV of the Plan provides for the retention of various Causes of Action as permitted by section 1123(b)(3)(B) of the Bankruptcy Code.  Accordingly, I believe that the Plan complies with section 1123(b)(3)(B) of the Bankruptcy Code.

### e.   Provisions not Inconsistent with the Code – § 1123(b)(6)

25.     **Debtor Releases**.  Article VIII.A of the Plan provides for consensual releases of the Debtors' claims and causes of action against the Released Parties (the "Debtor Release").  The Debtor Release is intended to release the Released Parties from any and all claims and Causes of Action arising before the Effective Date of the Plan related to (a) the events giving rise to the Chapter 11 Cases or (b) the events of these Chapter 11 Cases and related implementation of the Plan and related documents.  However, there are several important exceptions, including that the Debtors are not proposing to release any Cause of Action included in the Schedule of Retained Causes of Action, and that the Debtor Release does not impair any Causes of Action against a non-Released Party.  I believe that the Debtor Release is a vital component of the Plan and is a sound exercise of the Debtors' business judgment and should be approved, for several reasons.

26.    *First*, each Released Party, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed.

27.    *Second*, the Released Parties played an integral role in the development of the Plan and have expended significant time and resources resolving the complex issues in these Chapter 11 Cases to enable the Debtors to emerge swiftly from chapter 11 and to maximize recoveries to creditors as quickly as possible.  Without the Debtor Release, I believe that the Debtors and their stakeholders would not have been able to secure the substantial benefits provided by the Plan in the timeframe in which the Debtors propose to exit bankruptcy.

28.    For these reasons, I believe that the Debtor Release is justified, is a sound exercise of the Debtors' business judgment, is in the best interests of creditors and all stakeholders, is an integral part of the Plan, and satisfies key factors that I understand are considered by courts in determining whether a debtor release is proper.

29.    **Third-Party Releases.**  I understand that Article VIII.B of the Plan contains a consensual third-party release among the Released Parties and the Releasing Parties (the "Third-Party Release") in which Releasing Parties, including Holders of Claims and Interests who vote to accept the Plan or who do not affirmatively opt out of the Plan's release provisions, will release the Released Parties from any and all Claims and Causes of Action arising before the Effective Date of the Plan related to (a) the events giving rise to the Chapter 11 Cases or (b) the events of these Chapter 11 Cases and related implementation of the Plan and related documents, with several important exceptions. For example, like the Debtor Release, the Releasing Parties will not release the Released Parties from any Causes of Action included in the Schedule of Retained Causes of Action.  I believe that the Third-Party Release is a vital component of the Plan, is the product of

good faith and is a sound exercise of the Debtors' business judgment, and should be approved, for the following reasons.

30.     *First*, based on my discussion with the Debtors' advisors, I understand that the Third-Party Release is a wholly consensual release and that all Holders of Claims entitled to vote had the opportunity to opt out of the Third-Party Release and that the Third-Party Release contains a carve-out for actual fraud, willful misconduct, and gross negligence. The Confirmation Hearing Notice, Ballots, and other Solicitation Package materials distributed to Holders of Claims and Interests entitled to vote on the Plan included an exact duplication of the release, and the Ballots clearly informed Holders of Claims and Interests entitled to vote on the Plan of the steps they should take if they decided to opt out of the Third-Party Release. I further understand that Holders who abstained from voting or voted to reject the Plan therefore had the opportunity to opt out of the Third-Party Release. In addition, Holders of Claims presumed to accept the Plan received a Non-Voting Status Notice for Holders Deemed to Accept in lieu of a Ballot, which also reproduced the release in full and provided instructions for opting out of the Third-Party Release.

31.     *Second*, I believe that each Released Party has made a substantial contribution justifying their release. The Released Parties have provided substantial and necessary contributions in exchange for their respective releases under the Third-Party Release.

32.     *Third*, the Third-Party Release was given for consideration as most Holders of Claims are receiving a material recovery under the Plan.

33.     Accordingly, I believe that the Third-Party Release is an integral part of the Plan and should be approved.

34.     **Exculpation**.  Based on my experience and discussions with the Debtors' advisors, it is my belief that the exculpation provision described in Article VIII.D of the Plan is appropriate

under applicable law because it was proposed in good faith.  The highly uncertain regulatory and political landscape that the Exculpated Parties have navigated throughout these Chapter 11 Cases demonstrates the need for the exculpation provision. The exculpation provision is critical to ensuring that funds can be returned to creditors as promptly as possible through the transactions that are approved by the Bankruptcy Court and that parties are not subsequently held liable for taking actions that the Bankruptcy Court authorized them to take.  Moreover, in addition to the Debtors, the Exculpated Parties are fiduciaries of the Debtors' estates.  The directors, managers, officers, and advisors (a) have made substantial and valuable contributions to the Debtors' bankruptcy and the estates, and (b) have invested significant time and effort to make the bankruptcy a success and preserve the value of the Debtors' estates in a challenging and precarious regulatory and market environment.

35.    **Injunction**.  The injunction provision set forth in Article VIII.E of the Plan (the "Injunction Provision") implements the Plan's release and exculpation provisions by permanently enjoining all Entities from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim that is extinguished or released pursuant to the Plan.  Further, I understand that the Injunction provision contains language that was requested by the United States of America.  I believe that the Injunction Provision is a necessary part of the Plan because it enforces the ability to consummate the Plan.  Furthermore, the injunction provided for in the Plan is consensual as to any party that did not specifically object thereto.  Accordingly, I believe the Injunction Provision should be approved.

### B. The Debtors Complied with Solicitation Requirements of the Bankruptcy Code – § 1129(a)(2)

36.    I understand that section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code and that this provision

is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.

37.     I understand that the Debtors solicited acceptances or rejections of the Plan from the Holders of Claims in Voting Classes 2A, 2B, 3, 4, and 5.  I also understand that the Debtors did not solicit votes from Holders of Claims in Class 1 because Holders of such Claims are Unimpaired and deemed to accept the Plan under section 1126(f) of the Bankruptcy Code.  Thus, I believe that only Holders of Claims in Classes 2A, 2B, 3, 4, and 5 were entitled to vote to accept or reject the Plan.

38.     Based on my review of the Voting Report,[3] which summarizes the voting process that concluded on October 24, 2023, I understand that the Debtors solicited and tabulated votes to accept or reject the Plan in accordance with the customary solicitation procedures for chapter 11 plans of reorganization established in this district.

39.     Accordingly, I believe that the Plan complies with Sections 1125 and 1126 of the Bankruptcy Code.

### C. The Debtors Proposed the Plan in Good Faith – § 1129(a)(3).

40.     I understand that section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be proposed in good faith and not by any means forbidden by law.  The Plan was proposed in good faith, with the legitimate and honest purpose of maximizing value for the Debtors and their estates.  As noted throughout the course of these Chapter 11 Cases, the Debtors filed for chapter 11 for the primary purpose of winding down their affairs.  I believe that the transactions contemplated under the Plan achieve that goal.

---

[3]     *See Declaration of Kim D. Steverson of Omni Agent Solutions, Inc. Regarding Solicitation of Votes and Tabulation of Ballots on the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Affiliated Debtors.*

41.     The Plan also reflects or implements the terms of several consensual settlements, including with customers, the SEC, and the Florida OFR.  These settlements were the product of extensive good faith, arm's-length negotiations.  Accordingly, I believe that the Plan was proposed in good faith and not by any means forbidden by law, and thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

### D.  Payment of Professional Fees and Expenses Are Subject to Court Approval - § 1129(a)(4).

42.     I understand that section 1129(a)(4) of the Bankruptcy Code requires a court to approve certain fees and expenses that either a plan proponent, debtor, or person receiving property distributions under the plan has paid as reasonable.  The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Bankruptcy Court approval and the reasonableness requirements under sections 328 or 330 of the Bankruptcy Code.  Accordingly, I believe that the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

### E.  The Governance Disclosure Requirements Are Satisfied – § 1129(a)(5).

43.     I understand that section 1129(a)(5) of the Bankruptcy Code requires (a) that a plan proponent disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor, or a successor thereto, under a chapter 11 plan, (b) that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and (c) that a plan proponent disclose the identities or affiliations of insiders to be employed or retained by the reorganized debtors as directors and officers and the nature of any compensation for such insider.  I believe that the Plan Supplement identifies the Plan Administrator and that my continuance as the Plan Administrator is consistent with the interests of creditors, equity security holders, and public policy.  As such, I believe that the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**F. The Plan Does Not Require the Government to Approve Rate Changes – § 1129(a)(6).**

44.    I understand that confirmation is permitted only if a regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the Plan.  I have been informed that no such regulatory commission exists here. As such, I do not believe that section 1129(a)(6) is applicable to the Plan.

**G. Acceptance by Impaired Classes – § 1129(a)(8).**

45.    I understand that the Bankruptcy Code generally requires that each class of claims or interests must either accept the plan or be unimpaired under the plan. I further understand that if any class of claims or interests rejects the plan, the plan must satisfy the "cramdown" requirements with respect to the claims or interests in that class.

46.    I understand that Holders of Claims in Classes 2A and 3 voted to accept the Plan. I understand that because certain Classes voted to reject the Plan the Debtors do not satisfy section 1129(a)(8) of the Bankruptcy Code.  Nevertheless, I believe that the Debtors still satisfy section 1129(b) of the Bankruptcy Code as at least one Impaired Class voted to accept the Plan, and because the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Classes (as described in greater detail below).

**H. Priority Cash Payments – § 1129(a)(9).**

47.    I understand that the Bankruptcy Code generally requires that claims entitled to administrative priority must be paid in full in cash on the effective date or receive certain other specified treatment to which the Holder of such claim has agreed.  I understand that Article II.A of the Plan provides that each Holder of an Allowed Administrative Claim will receive an amount of Cash equal to the amount of such Allowed Administrative Claims on the Effective Date, as soon as reasonably practicable thereafter, or at such other time set forth in Article II.A of the Plan. In

addition, Articles II.C and III.B of the Plan specifically provides that Allowed Priority Tax Claims and DIP Loan Claims will be treated in accordance with the requirements of the Bankruptcy Code. Accordingly, I believe that the Plan fully complies with and satisfies all of the requirements of section 1129(a)(9) of the Bankruptcy Code.

**I.   At Least One Impaired Class Voted to Accept the Plan – § 1129(a)(10).**

48.     I understand that the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan "without including any acceptance of the plan by any insider."   I understand that Holders of Claims in Classes 2A and 3—which are Impaired Classes under the Plan— voted to accept the Plan independent of any insiders' votes.  In accordance with the results contained in the Voting Report, I believe that the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**J.   The Plan Is Feasible – § 1129(a)(11).**

49.     I understand that section 1129(a)(11) of the Bankruptcy Code requires a court to determine that a chapter 11 plan is feasible, and that confirmation of such plan is not likely to be followed by the liquidation or further financial reorganization of the Debtors (or any successors thereto) unless such liquidation or reorganization is proposed in the Plan. The Plan provides for a wind down of the Debtors and distributions in accordance with the priorities set forth in the Bankruptcy Code, and there will be no need for a further liquidation.

**K.   The Plan Provides for Payment of All Fees – § 1129(a)(12).**

50.     I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  I believe that Article II.D of the Plan provides that the Debtors and the Wind Down Entity, as applicable, shall pay all fees and charges due and payable pursuant to 28 U.S.C. § 1930.

**L.  Retiree Benefits Are Not Implicated – § 1129(a)(13).**

51.     It is my understanding that section 1129(a)(13) of the Bankruptcy Code requires that any applicable retiree benefits will continue to be paid post effective date at the level established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the Plan, for the duration of the period which the debtor has obligated itself. I do not believe retiree benefits as defined by section 1129(a)(13) are implicated by the Plan.

**M. Sections 1129(a)(14)-(16) of the Bankruptcy Code Do Not Apply to the Plan.**

52.     I understand that section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations. The Debtors are not subject to any domestic support obligations. Likewise, I understand that section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code. None of the Debtors is an "individual." Finally, I understand that section 1129(a)(16) of the Bankruptcy Code relates only to nonprofit corporations or trusts. None of the Debtors is a nonprofit corporation or trust.

**N.  The Plan Complies with Section 1129(b) of the Bankruptcy Code.**

53.     I understand that if all applicable requirements of section 1129(a) of the Bankruptcy Code are satisfied, other than section 1129(a)(8), a plan may still be confirmed so long as the requirements set forth in section 1129(b) are satisfied. To the best of my knowledge, the Plan distributes value to Holders of Claims and Interests in the priorities set forth in the Bankruptcy Code, there is no Class receiving more than a 100 percent recovery, and no junior Class is receiving a distribution under the Plan until all senior Classes have received a 100 percent recovery or have agreed to receive a different treatment under the Plan.  As such, I believe that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

54.    *First*, I understand that the Plan's treatment of the impaired Class that has rejected the Plan is proper because the Plan's overall classification scheme rests on a legally acceptable rationale and all similarly situated Claims and Interests will receive substantially similar treatment. I have been informed that Claims in Class 2B are not similarly situated to any other Classes, given their distinctly different legal character from all other Claims and Interests. As such, I believe that the Plan does not discriminate unfairly with respect to Class 2B satisfies the requirement of section 1129(b) of the Bankruptcy Code.

55.    As a result, I believe the Plan satisfies 1129(b) of the Bankruptcy Code.

**O. Only One Plan Is Eligible to Be Confirmed – § 1129(c).**

56.    I understand that section 1129(c) of the Bankruptcy Code prohibits the confirmation of multiple plans. Section 1129(c) of the Bankruptcy Code is not implicated here because there is only one proposed plan.

**P. The Principal Purpose of the Plan Is Not the Avoidance of Taxes – § 1129(d).**

57.    The Plan was not filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933. I also believe that no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds. Accordingly, I believe that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**Q. Section 1129(e) of the Bankruptcy Code Is Inapplicable.**

58.    I understand that section 1129(e) of the Bankruptcy Code does not apply to the Plan because none of the Debtors' chapter 11 cases is a "small business case" within the meaning of the Bankruptcy Code.

**R. Good Cause Exists to Waive the Stay of the Confirmation Order.**

59.    I understand that certain Bankruptcy Rules provide for the stay of an order confirming a chapter 11 plan, but that such a stay may be waived upon court order after a showing of good cause.

60.    Given that each day the Debtors remain in chapter 11 they incur significant administrative and professional costs, the Debtors may take certain steps to effectuate the Plan in anticipation of and to facilitate the occurrence of the Effective Date so that the Effective Date can occur as soon as needed.  Additionally, given the nature of these Chapter 11 Cases, the volatility of the cryptocurrency market, and the fact that no parties have objected to confirmation of the Plan, I believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: October 27, 2023

By:     /s/ David Maria
        David Maria