IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Desolation Holdings LLC, *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10597 (BLS)<br><br>(Jointly Administered) |

### DECLARATION OF EVAN HENGEL IN SUPPORT OF PLAN CONFIRMATION

I, Evan Hengel, Co-Chief Restructuring Officer of Bittrex Inc. ("BUS"), Desolation Holdings LLC ("Desolation"), Bittrex Malta Holdings Ltd. ("Malta Holdings") and Bittrex Malta Ltd. ("Malta OpCo") (collectively, the "Debtors"), hereby declare under penalty of perjury:

1. I am a Managing Director at Berkeley Research Group, LLC ("BRG") with over 16 years of experience working in distressed situations and transactions, including several involving crypto firms such as Voyager Digital Holdings, Inc., BlockFi, Inc., and Genesis Global Holdco, LLC. I serve as the Co-CRO of the Debtors. Accordingly, I am in all respect competent to make this declaration (the "Declaration").

2. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the professionals in this case and/or employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations.

3. I submit this Declaration in support of the confirmation of the *Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and Its Affiliated Debtors* [D.I. 293] (as may be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

1

amended, supplemented, or otherwise modified from time to time, the "Plan"),[2] and the *Debtors' Memorandum of Law in support of Confirmation of the Amended Joint Chapter 11 Plan of Liquidation of Desolation Holdings LLC and Its Affiliated Debtors* (the "Memorandum"), which is filed contemporaneously herewith.

4. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## THE PLAN SATISFIES THE BEST INTERESTS TEST UNDER SECTION 1129(A)(7) OF THE BANKRUPTCY CODE

5. I understand that section 1129(a)(7) of the Bankruptcy Code requires that any chapter 11 plan must satisfy the "best interests of creditors" test, providing that holders of claims or interests in impaired, non-accepting classes must receive under a chapter 11 plan at least as much as they would in a liquidation. As discussed in detail below, it is my opinion that the Plan satisfies the "best interests of creditors" test based on the Liquidation Analysis prepared by the Debtors with the assistance of their advisors that is attached to the Disclosure Statement as Exhibit C. The Liquidation Analysis provides that, under the Plan, all Impaired Classes of Claims and Interests will receive a recovery that is greater than or equal to the recovery contemplated in a hypothetical chapter 7 liquidation. Accordingly, I believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

---

[2] Capitalized Terms used but not defined herein shall have the meanings given to such terms in the Plan, the Disclosure Statement, the Liquidation Analysis, or the Memorandum, respectively.

## **LIQUIDATION ANALYSIS**

6. As mentioned above, the Liquidation Analysis was prepared to address the Plan's ability to satisfy the "best interests of creditors" test as defined in section 1129(a)(7) of the Bankruptcy Code.

7. In preparing the Liquidation Analysis, the Debtors and their advisors utilized a variety of sources, including (i) the Debtors books and records, including most recent unaudited financial statements; (ii) input from the finance team and advisors, and (iii) projected cash balance through the Conversion Date.

8. To prepare the Liquidation Analysis, the Debtors, with the assistance of their advisors, estimated proceeds, costs, and resulting recoveries in either the event that the Plan is confirmed and the related wind down consummated (the "Plan Wind Down"), or the event the Plan is converted to a chapter 7 liquidation.

9. The Debtors, supported by their advisors, estimated creditor recoveries based on the total estimated proceeds under both the Plan Wind Down scenario and the chapter 7 liquidation scenario. Under both scenarios, these proceeds have been netted of the estimated wind down costs. Then, the distribution that Holders would receive under the Plan Wind Down was compared with the chapter 7 liquidation distribution to creditors under the related priority scheme. The Liquidation Analysis was based on a variety of assumptions that I believe are reasonable on an overall basis.

10. With respect to the chapter 7 liquidation scenario, the Debtors' current chapter 11 cases are assumed to be converted to cases under chapter 7 of the Bankruptcy Code on or about October 29, 2023 (the "Liquidation Date"), absent confirmation of the Plan. Furthermore, on the Liquidation Date, the Bankruptcy Court would appoint a chapter 7 trustee ("Trustee"), and such

Trustee would immediately sell or surrender all of the Debtors' assets, and the cash proceeds of those sales—net of the liquidation-related costs—would then be distributed to creditors in accordance with applicable law.

11. To estimate the creditor recoveries in both the Plan Wind Down and chapter 7 liquidation, the following steps were performed:

**I.      Estimation of Gross Total Proceeds**

12. For the purpose of both the Wind Down and chapter 7 liquidation scenarios, the Debtors and their advisors estimated the total proceeds, which include (i) cash and cash equivalents; (ii) restricted cash; (iii) the estimated value of the held Cryptocurrency, and (iv) intercompany receivables. The estimated total value of the held Cryptocurrency is based on the Cryptocurrency balances and spot prices as of August 15, 2023.

13. Under the Plan Wind Down scenario, the Debtors and their advisors estimated the proceeds that would be generated if the Plan was consummated.

14. In the event of chapter 7 liquidation, the Debtors and their advisors have assumed that the accelerated timeframe in which the assets are marketed and sold, the negative vendor, customer and general market reaction, and the generally forced nature of the sale would likely materially reduce recovery values for the Debtors' assets. The estimated gross total proceeds in a chapter 7 liquidation are therefore lower than those that have been estimated in the Plan Wind Down scenario to reflect market depth constraints for less liquid cryptocurrencies which may cause significant value leakage in a bulk liquidation. Further, under the chapter 7 liquidation scenario, the Liquidation Analysis distinguishes between two sub-scenarios: (i) the Low Chapter 7 Recovery, in which the estimated timeframe for the liquidation of the Debtors' Cryptocurrency is approximately one-two days; and (ii) the High Chapter 7 Recovery, in which the estimated

timeframe for the liquidation of such Cryptocurrency is more than one week. In view of the shorter asset liquidation's timeframe, the estimated total proceeds in the Low Chapter 7 Recover are lower than in the High Chapter 7 Recovery.

## II. Calculation of Wind Down Costs

15. In preparing the Liquidation Analysis, the Debtors and their advisors made certain assumptions and estimations regarding the costs of the Plan Wind Down and a chapter 7 liquidation. As part of this process, it was estimated that, under both scenarios, the Debtors' liquidation process would last approximately 12 months (including approximately six months for distributions to the Holders, and another approximately six months to fully shut down the Debtors). In an actual chapter 7 liquidation, the length of the wind down could vary significantly, which would impact recoveries.

16. The estimated costs under the Plan Wind Down scenario includes: (i) wind down costs; and (ii) chapter 11 professional fees, totaling $11.4 million.

17. The estimated costs of the hypothetical chapter 7 liquidation contemplated under the Liquidation Analysis include: (i) wind down costs; (ii) chapter 7 professional fees; and (iii) chapter 7 trustee fees. Compared to a Plan Wind Down, the Debtors and their advisors estimated incremental wind down costs of approximately $9.0 million in the event of a chapter 7 liquation. Incremental costs would be mainly attributable to chapter 7 trustee fees, and chapter 7 professional fees.

## III. Analysis of Intercompany Receivables

18. In preparing the Liquidation Analysis, the Debtors and their advisors calculated the potential recoverability of (i) intercompany receivables owed to the Debtors from non-Debtor affiliates. The recoverability of the Debtors' intercompany receivables was calculated based on

review of the Debtors intercompany policies and loan agreements. The Liquidation Analysis assumes 60% of net intercompany payables are deemed valid Subordinated Claims in a chapter 7 liquidation.

## IV. Distribution of Net Total Proceeds

19. As shown in the below Liquidation Analysis' chart (the "Chart"),[3] the net estimated total proceeds available for distribution for the Debtors' Holders of Claims and Interests are: (i) approximately $379.9 million in in the Plan Wind Down scenario; (ii) approximately $287.9 million in a Low Chapter 7 Recovery; and (iii) approximately $310.2 million in a High Chapter 7 Recovery. In light of the foregoing, and as illustrated in the Chart below, I believe that a chapter 7 liquidation results in lower distributable value than under the Plan Wind Down.

Plan vs Liquidation Recoveries - **8/15 Crypto Balances & 8/15 Spot Prices**
$ in mm

| | | Desolation Holdings, Inc. & Related Debtors (Consolidated) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Midpoint Chapter 11 Recovery | | | Low Chapter 7 Recovery | | | High Chapter 7 Recovery | | |
| | | Emergence on 10/29/23 | | | Conversion on 10/29/23 | | | Conversion on 10/29/23 | | |
| Class | Claim or Interest | Claims | Plan | Recovery | Claims | Liquidation | Recovery | Claims | Liquidation | Recovery |
| | Total Estimated Proceeds, Net | | $ 379.9 | | | $ 287.9 | | | $ 310.2 | |
| Unclassified | Administrative & Priority Claims | 27.1 | 27.1 | 100% | 27.1 | 27.1 | 100% | 27.1 | 27.1 | 100% |
| 1 | Other Priority Claims | 0.2 | 0.2 | 100% | 0.2 | 0.2 | 100% | 0.2 | 0.2 | 100% |
| 2A | Allowed Class 2A (BUS Customers) | 188.2 | 188.2 | 100% | 213.4 | 206.8 | 97% | 163.1 | 163.1 | 100% |
| 2B | Allowed Class 2B (Malta OpCo Customers) | 41.6 | 41.6 | 100% | 55.4 | 53.7 | 97% | 37.0 | 37.0 | 100% |
| 3 | GUC Claims | 75.8 | 75.8 | 100% | 75.8 | - | 0% | 75.8 | 75.8 | 100% |
| 4 | Subordinated Claims | - | - | n.a. | 37.9 | - | 0% | 37.9 | 7.1 | 19% |
| | Total Recoveries | $ 332.9 | $ 332.9 | 100% | $ 409.8 | $ 287.9 | 70% | $ 341.0 | $ 310.2 | 91% |
| | Surplus / (Shortfall) to Liquidating Trust | | 47.1 | n.a. | | (121.9) | n.a. | | (30.8) | n.a. |

20. The Liquidation Analysis estimates the Wind Down recoveries to creditors by running the net total estimated proceeds through a waterfall recovery model, which pays claims based on priority until fulfilled, and then "waterfalls" to the next lower priority claim, until all proceeds are depleted. I believe that the distributions to creditors in the Liquidation Analysis

---

[3] The Chart is included in Exhibit C to the Disclosure Statement.

reflect section 1129 of the Bankruptcy Code's "absolute priority rule" that no junior creditor at a given entity would receive any distribution until all senior creditors are paid in full at that entity, and no equity holder would receive any distribution until all creditors at such entity are paid in full.

21. The Chart compares the estimated creditor recoveries in the Plan Wind Down to the estimated recoveries to creditors in a chapter 7 liquidation (in both the Low and High Chapter 7 Recoveries scenarios). As illustrated in the Chart, in every Class, creditors are estimated to receive an equal or greater recovery under the Plan Wind Down than they would be entitled to receive under a chapter 7 liquidation.[4] Accordingly, it is my opinion that confirmation of the Plan will provide creditors with a recovery that is greater than or equal to what they would otherwise receive in connection with a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

## CONCLUSION

22. In summary, it is my opinion that the Plan satisfies the standards discussed above for confirmation applicable under the Bankruptcy Code. Among other things, the Plan Wind Down will provide all Holders of Claims and Interests with a recovery that is not less than what such Holders would receive pursuant to a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

---

[4] Under the Plan, Class 4 ("Subordinated Claims") does not include any creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 27th day of October, 2023.

_/s/ Evan Hengel_
Evan Hengel
Co-Chief Restructuring Officer
