UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                          .  Chapter 11
                                .
DESOLATION HOLDINGS LLC,        .  Case No. 23-10597 (BLS)
et al.,                         .
                                .  (Jointly Administered)
                                .
                                .  Courtroom No. 1
                                .  824 Market Street
           Debtors.            .  Wilmington, Delaware 19801
                                .
                                .  Monday, October 30, 2023
. . . . . . . . . . . . . . .   .  10:00 a.m.
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

```
For the Debtors:          Kenneth Enos, Esquire
                          YOUNG CONAWAY STARGATT & TAYLOR LLP
                          Rodney Square
                          1000 North King Street
                          Wilmington, Delaware 19801

                          Patricia Tomasco, Esquire
                          QUINN EMANUEL URQUHART
                             & SULLIVAN LLP
                          51 Madison Avenue
                          22nd Floor
                          New York, New York 10010
```

(APPEARANCES CONTINUED)

```
Audio Operator:           Dana L. Moore, ECRO

Transcription Company:    Reliable
                          The Nemours Building
                          1007 N. Orange Street, Suite 110
                          Wilmington, Delaware 19801
                          Telephone: (302)654-8080
                          Email:  gmatthews@reliable-co.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1  <u>APPEARANCES (CONTINUED)</u>:

2  For the U.S. Trustee:      Richard Schepacarter, Esquire
                              OFFICE OF THE UNITED STATES TRUSTEE
3                             U.S. DEPARTMENT OF JUSTICE
                              844 King Street, Suite 2207
4                             Lockbox 35
                              Wilmington, Delaware 19801
5
   For the United States
6  Of America:               Leah Lerman, Esquire
                              UNITED STATES DEPARTMET OF JUSTICE
7                               CIVIL DIVISION
                              6406 Ivy Lane
8                             Suite 800
                              Greenbelt, Maryland 20770
9
   For the SEC:              Patricia Schrage, Esquire
10                            U.S. Securities and Exchange
                                Commission
11                            200 Vesey Street
                              Suite 400
12                            New York, New York 10281

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2   MOTIONS:                                              PAGE

3   Agenda
    Item 12: Confirmation of Joint Chapter 11 Plan        5
4            of Liquidation of Desolation Holdings
             LLC and its Affiliated Debtors
5            [D.I. 293, 8/25/23]

6            Court's Ruling:                              23

7   Agenda
    Item 13: Notice of Debtors' Objection to Claims       26
8            Filed by Z M Golam Dastagir Pursuant to
             Sections 502, 503 and 507 of the
9            Bankruptcy Code, Bankruptcy Rule 3007,
             and Local Rule 3007-1
10           [D.I. 399, 9/29/23]

11           Court's Ruling:                              50

12
    WITNESS TESTIMONY:                                    PAGE
13
        ZM GOLAM DASTAGIR
14      Cross-examination by Ms. Tomasco                  39

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 10:06 a.m.)

2                 THE COURT:  Mr. Enos, good morning.  Good to see

3  you.

4                 MR. ENOS:  Good morning, Your Honor.  Very good to

5  see you as well.  Ken Enos, Young, Conaway, Stargatt &

6  Taylor, on behalf of the debtors, Desolation Holdings.  I

7  wanted to say that because now we call it Bittrex, but

8  Desolation is just so much more fun.

9                 Today we have two matters going forward,

10  obviously, confirmation, which is the main event, and then

11  there is one claim objection in which we received a reply.

12  Thanks very much for entering the orders on all the other

13  claim objections.

14                 THE COURT:  Sure.

15                 MR. ENOS:  Very much appreciated.  With me today

16  is Patty Tomasco and Alain Jacquet from Quinn Emmanuel.  I

17  think you've met pretty much everyone before.

18                 THE COURT:  I think so.

19                 MR. ENOS:  We have our co-CRO.  Evan Hengel.

20                 THE COURT:  Welcome.  Good to see you.

21                 MR. ENOS:  And Sedona Claypoole from BRG.  And

22  then our client is here, David Maria and Caleb Barker, as

23  well as my colleagues from Young Conway, Rebecca Lamb and

24  that guy, who I think you've met before.

25                 Your Honor, if it's acceptable to the Court, I

1  will turn the podium over to Ms. Tomasco at this time, and we

2  can start with confirmation, if that's acceptable.

3          THE COURT:  Sounds good.  Ms. Tomasco.  Good

4  morning.  Welcome back.  Good to see you.

5          MS. TOMASCO:  Thank you, Your Honor.  And very,

6  very good to be here today, less than six months after we

7  filed.  So a pretty good rate of progress for this.

8          THE COURT:  I've made a point with many of my

9  colleagues to observe that my crypto case has gone very

10  smoothly.

11          MS. TOMASCO:  Yes, Your Honor, and you deserve a

12  lot of credit.

13          THE COURT:  Oh, I'm taking it.

14          MS. TOMASCO:  Right.  So just in terms of the

15  order of business today, just going to go through an opening

16  statement that's going to go in the order very much that

17  looks like the PowerPoint presentation that we've provided to

18  the Court.  And if you need another copy --

19          THE COURT:  No, I have it.  I appreciate getting

20  it.

21          MS. TOMASCO:  All right, so as our opening

22  statement, just running through the PowerPoint presentation,

23  nothing in the first few slides is something that you don't

24  know.  We have four debtors.  We have some important

25  affiliated non-debtors at Bittrex Global, GMBH and Bittrex

1    Global Bermuda, which currently operate in the international

2    cryptocurrency exchange.

3            In Q1, 2023, the debtors decided to orderly wind

4    down their businesses.  The first thing that they did on

5    March 31 was to announce that they were going to shut down

6    the platform, gave customers a chance to withdraw their

7    cryptocurrency and other fiat assets from the platform.

8            The plan that you see before you is substantially

9    similar to the one that was filed on day one of this case,

10   and that is that it is a pure waterfall plan.  It doesn't

11   really have any class skipping or impairment of any classes,

12   albeit they are impaired for very interesting reasons.

13           So we have four impaired classes, and we have a

14   plan that strictly follows the bankruptcy code.  Just for

15   purposes of the record, the plan is on file is at Docket Item

16   293.  The disclosure statement is Docket Item 294.  The

17   solicitation version of the plan is at Docket 391-1.  We

18   filed a plan supplement on October 17th, which is found at

19   Docket Item 449.  The proposed confirmation order is at

20   Docket 494.

21           THE COURT:  I appreciate getting that, in

22   particular, in advance of today's hearing.

23           MS. TOMASCO:  And we have a revised proposed

24   confirmation order at Docket Item 504.  And you will hear

25   when I start going through the changes to the confirmation

1  order after the evidentiary presentation, we have one

2  additional change that the SEC has requested.

3          THE COURT:  Okay.

4          MS. TOMASCO:  So we'll read that into the record.

5  So you'll have yet another revised proposed confirmation

6  order to enter.

7          Turning to slide seven, you'll see that the

8  timeline is, essentially, that we filed these cases on May

9  8th.  If the Court will recall, the Court entered a customer

10  withdrawal order on June 13th, which was a cornerstone of the

11  plan to allow customers time to get their cryptocurrency off

12  the platform.  The platform was indeed reopened on June 15th.

13          The platform remained open officially until August

14  31st, but it actually remained open a little bit longer than

15  that to allow additional stragglers to get their

16  cryptocurrency off the platform.

17          The Court approved the disclosure statement on

18  September 28th, and the solicitation process happened in the

19  days after that.  I will say, Your Honor, the solicitation

20  process involved sending the solicitation package to in

21  excess of 140,000 customers.

22          THE COURT:  I recall.

23          MS. TOMASCO:  Okay.  We also know that the

24  hallmark of this case was the customer withdrawals.  And if

25  you look on slide eight, you will see the progress that was

1  made after the filing of the case.  This does not include the

2  progress that was made in the months before the case was

3  filed, precisely the month of April of 2023, where customers

4  were advised to get their cryptocurrency off the platform.

5          That leads us to a couple of key settlements.

6  When the case was filed, you'll recall, we were facing a

7  large claim by the Securities and Exchange Commission.  We

8  filed a motion to estimate that claim.  Litigation was

9  pending in the Western District of Washington by the SEC

10  against Bittrex and some of its affiliates.

11          Thankfully, the parties engaged in negotiations.

12  We reached a settlement, and that settlement is embodied in

13  the plan, as well as the 9019 motion that the Court approved

14  at Docket Item 325.

15          Based on that settlement, we can confidently say

16  that our estimates are that customers, the SEC, FINCEN, and

17  OFAC, as well as other general unsecured creditors, will be

18  paid in full from the assets of the estate.

19          We also had a settlement with Endurance.

20  Endurance provided surety bonds to support the money transfer

21  licenses in various states.  We asked Endurance to keep those

22  money transfer licenses open to the extent that customers

23  were continuing to withdraw fiat from the platform.  While we

24  felt like we could operate without complying with state law,

25  having that belt and suspenders of the surety bond gave us an

1  additional source if money went missing in the process of

2  customer withdrawals.

3          THE COURT:  Right.

4          MS. TOMASCO:  As a result, Endurance is a released

5  party under the plan.

6          The plan contemplates payment in full of all

7  administrative claims, secured tax claims, priority tax

8  claims, provides for the distribution of cryptocurrency cash

9  and any remaining assets to the holders of claims in classes

10  2A and 2B.  Residual value after that process goes to the

11  general unsecured claims.  Again, the claims bar date process

12  and going through the claims, the claims objections indicates

13  that there will be sufficient funds on hand to pay all

14  general unsecured claims in full.

15          THE COURT:  Okay.

16          MS. TOMASCO:  The plan administrator has been

17  designated via the plan supplement.  That's Mr. Maria, who

18  you see sitting right here.

19          THE COURT:  Very good.

20          MS. TOMASCO:  So we'll be coming back to deal with

21  claim objections in due course.

22          Generally, the classes are Class 1, Priority

23  claims; 2A and 2B, which are the customers; Class 3 is

24  general unsecured creditors; Class 4 is unfunded intercompany

25  debt, primarily, in the subordinated debt class.  We put

1   those below the company -- intercompany claims below

2   everybody else, since that made sense in this case.   And

3   Class 5 is interest.

4           I won't go through the distribution type under the

5   plan.  But if you look at the liquidation analysis, which is

6   attached to the declaration of Evan Hengel, who's the chief

7   restructuring officer, you'll see that the best interests of

8   creditors test is met via the plan in that creditors will

9   receive more in a Chapter 11 than they will in a Chapter 7 as

10  a result of a variety of factors that would occur if a

11  Chapter 7 trustee were appointed.

12          THE COURT:  I reviewed it.

13          MS. TOMASCO:  The assumptions for the liquidation

14  analysis are contained on slide 16.  They're also in the Evan

15  Hengel declaration.  I don't feel like I need to repeat them,

16  but in essence, if we were to liquidate under a chapter

17  seven, Class 3 would not receive any recovery.

18          Now, the voting results, some surprises in there,

19  so we'll go through those.

20          THE COURT:  Okay.

21          MS. TOMASCO:  Class 2A, this is in the Steverson

22  declaration, which has been on file.

23          THE COURT:  I have her declaration.

24          MS. TOMASCO:  Class 2A accepted by a margin,

25  significant margin.  Rejecting amount was 1.47 percent,

1  rejecting number was 7.38 percent, well above all the margins

2  required in the Bankruptcy Code.  Class 2B rejected.

3          Although we have 75 percent accepting in number,

4  we don't have that number in the amount.  That is because

5  there are four Iranian citizens that filed multiple high

6  dollar claims.  Of course, the disclosure statement order

7  dictates that only one vote per claimant.  But still, even as

8  a result of that, because they filed these large dollar

9  amounts claims, and we have not objected to those claims

10  yet --

11          THE COURT:  They get to vote them.

12          MS. TOMASCO:  They get to vote.

13          THE COURT:  I understand.

14          MS. TOMASCO:  Our analysis is that the four

15  Iranian citizens voting against the plan, in fact, hold

16  cryptocurrency assets of about $15,000 in total.  So if you

17  took their actual account balances as opposed to what they've

18  claimed are their damages, we would still have an accepting

19  class in 2B.

20          So the claims, we'll get to them, we're going to

21  object to them.  You'll hear about them on December 13th,

22  which is our next omnibus hearing.  But the claims primarily

23  deal with the fact that Iranian citizens had assets on the

24  platform.  The Office of Foreign Asset Control issued a

25  citation to Bittrex and said, you're doing it wrong.  You

1  should not be allowing Iranian citizens to put their assets

2  on this platform.  As a result, their accounts were frozen.

3  Bittrex then sought a license to allow Iranian customers to

4  get their assets off.  You're going to hear all about this.

5  Some of them got their assets off during that time period in

6  2019, and some of them did not.

7          THE COURT:  Okay.

8          MS. TOMASCO:  Some of them were able to get their

9  citizenship papers in shape to show that they were now a

10  citizen of a different country.  They then got their assets

11  off, but they are now claiming consequential damages as a

12  result of having their assets frozen for a period of time.

13          THE COURT:  Which were frozen as a function of

14  engagement with OFAC.

15          MS. TOMASCO:  Correct.

16          THE COURT:  I understand.

17          MS. TOMASCO:  Right, so that is the source of the

18  no votes in Class 2B.

19          THE COURT:  Okay.

20          MS. TOMASCO:  But of no moment, Class 3 accepts in

21  full.  So we have two impaired accepting classes.  So we

22  still have to go to cramdown.

23          THE COURT:  Okay.

24          MS. TOMASCO:  As I mentioned, the four Iranians

25  Adela Abbasi (phonetic), Shariar Abapor (phonetic), Ambarali

 1   Muminzda (phonetic), and Azim Godder (phonetic), we've gone

 2   through in the slides each of their situations.  As I said,

 3   Abbasi's claim account balance is zero, Abapor's account

 4   balance is 7198.  Muminzda's account balance is 2869, and

 5   Azim Godder, whom you've heard of several times, which we

 6   will deal with at a claim objection hearing set for December

 7   13th.

 8            The voting language of the disclosure statement

 9   order is on slide 22.  As I've explained, we count one

10   claimant, one vote, and obviously we don't account the votes

11   of objected-to claims.  Mr. Godder falls into that category.

12   And tellingly, there are no formal objections filed to the

13   plan or the confirmation order.

14            We've resolved several comments to the

15   confirmation order, which I will go through in a minute.

16   We've received informal comments from the US Trustee, the

17   Department of Justice, SEC, and the Office of the Texas

18   Attorney General.  We had reservations of rights by Endurance

19   and United States of America.  Essentially, those

20   reservations of rights are, to the extent anybody objects to

21   our language, we reserve the right to come back and say

22   things, which is all fine.  So we've resolved all of those

23   informal comments to the plan and the proposed confirmation

24   order.

25            THE COURT:  Okay.

1       MS. TOMASCO:  On slide 25, you'll see a chart of

2  exactly where the language appears in the confirmation order

3  from each of these informal objections.

4       THE COURT:  And I've had an opportunity to track

5  that by getting the order in advance.  And again, thank you

6  for that.

7       MS. TOMASCO:  So we also filed a confirmation

8  brief.

9       THE COURT:  I have it.  The Docket 503.

10       MS. TOMASCO:  Yeah, I was going to go back and

11  look at my docket chart.  We address all of the elements of

12  1129 and 1129(b) in the brief.  I don't feel like the Court

13  needs to be --

14       THE COURT:  No, I don't think so.  Again, unless

15  the hearing or issues develop or arise, as is my practice,

16  I'll certainly take the memorandum as well as the

17  declarations, which are pretty comprehensive, as well, as

18  part of the debtor's record, and I don't think it's

19  productive to walk through each of those elements.

20       MS. TOMASCO:  Thank you, Your Honor.  And the last

21  slide, we would like to, just so -- we gave you a pictograph

22  so that you can match the declaration to the person in the

23  courtroom on slide 32, Mr. Evan Hengel.

24       THE COURT:  They even sat right to left.

25       MS. TOMASCO:  We haven't brought in imposters to

1  support the declarations.  Mr. Evan Hengel, his declaration

2  is Docket Item 502, and he's in the courtroom.  If anybody

3  wants to cross-examine him.

4       THE COURT:  We should probably go ahead and move

5  to admit them.

6       MS. TOMASCO:  Correct.  Your Honor, I'm moving to

7  admit the declaration of Mr. Evan Hengel at Docket Item 502.

8       THE COURT:  Any objection to the admission of Mr.

9  Hengel's declaration as part of the debtor's case in chief

10  for purposes of plan confirmation? Very well.  The

11  declaration is admitted.  Is there any party that intends or

12  expects to cross examine Mr. Hengel regarding the contents of

13  his declaration?  Very well.  That declaration is admitted

14  without contradiction.

15       MS. TOMASCO:  Thank you, Your Honor.  The second

16  declaration is the declaration of David Maria, who's the

17  general counsel and chief legal officer of the debtors.  His

18  declaration is at Docket Item 501, and we move for the

19  admission of his declaration.

20       THE COURT:  Very good.  Is there any objection to

21  the admission of Mr. Maria's declaration, again, as part of

22  the debtor's case in chief, for purposes of plan

23  confirmation?  Very well.  That declaration is admitted.  Is

24  there any party that intends or expects to cross examine Mr.

25  Maria regarding the contents of his declaration?  Very well.

1  Mr. Maria's declaration is likewise admitted without

2  contradiction.  We should also do the Steverson declaration.

3           MS. TOMASCO:  You're right, Your Honor.  Ms.

4  Steverson --

5           THE COURT:  I don't want to get ahead of your

6  outline.

7           MS. TOMASCO:  No, Your Honor.  Ms. Steverson is

8  available on Zoom.  And we move for the admission of the

9  Steverson Declaration, which is at --

10           THE COURT:  500.

11           MS. TOMASCO:  Docket Item --

12           THE COURT:  500?

13           MS. TOMASCO:  Hmm?

14           THE COURT:  I think it's 500.

15           MS. TOMASCO:  500.  Correct.

16           THE COURT:  Okay.  Any objection to Ms.

17  Steverson's declaration being admitted, again, as part of the

18  debtor's case in chief, in particular, to attest to the

19  results of the balloting on the debtor's plan?  Very well.

20  Ms. Steverson's declaration is admitted.  Is there any party

21  that intends or expected to cross examine Ms. Steverson

22  regarding the contents of her declaration?  Very well.

23  Again, Ms. Steverson's declaration is admitted without

24  contradiction.

25           MS. TOMASCO:  Thank you, Your Honor.  With that,

1  we have met the evidentiary burdens of confirming the plan.

2  I would like to read into the record one additional change to

3  the confirmation order.

4           THE COURT:  Okay.

5           MS. TOMASCO:  It is on page 28, paragraph -- new

6  paragraph 61 was old paragraph 63, should be in the red line

7  that you have.

8           THE COURT:  Okay.

9           MS. TOMASCO:  The SEC requests the language as a

10 preamble to that subordination, except as otherwise provided

11 in the plan and this confirmation order.

12          THE COURT:  Okay.  That's fine.  And that'll be

13 baked in?

14          MS. TOMASCO:  Correct?

15          THE COURT:  Okay.

16          MS. TOMASCO:  With that, Your Honor, we ask that

17 the Court enter the confirmation order as amended on the

18 record.

19          THE COURT:  Very good.  Thank you, Ms. Tomasco.

20          Can I hear from the office of the United States

21 Trustee?  And then I'll hear from the SEC.  Mr. Schepacarter,

22 good morning.  Looking sharp.

23          MR. SCHEPACARTER:  Good morning, Your Honor.

24 Thank you.  Always happy the next day after the Eagles

25 actually win a game.

1      THE COURT:  Mr. Schepacarter, you are pandering,

2  but it's working.

3      MR. SCHEPACARTER:  I know my audience.  For the

4  record, Richard Schepacarter for the United States Trustee.

5  Just want to bring a couple of things to Your Honor's

6  attention.  As Counsel indicated, we had discussions

7  previously, made a lot of arrangements, a lot of revisions to

8  the orders, to the different documents.  We did that with

9  respect to the disclosure statement and then finished that

10 process out through confirmation.

11     Just want to highlight a couple of things.  If

12 Your Honor might turn to what I have is document number 504-

13 1, and I just want to highlight a couple of things that

14 weren't picked up in the red line, but were changes.

15     THE COURT:  Okay.

16     MR. SCHEPACARTER:  Substantial changes.  If you

17 turn to page 5 and 6 of that document and you'll see that

18 there's type there that's in bold print.  Just wanted to

19 bring a couple of things to Your Honor's attention.  One is

20 to article -- it's paragraph B on page 5, and that deals with

21 the US Trustee fees that would otherwise have been baked into

22 the plan, but it's going to be in the order, and it'll affect

23 the plan.

24     Likewise with respect to the next page, which is

25 paragraph C, that deals with closing of the cases at the

1   point when the cases need to be closed, and that also would

2   have been baked into the plan, but is put into the order and

3   would become part of the plan.

4           THE COURT:  Okay.

5           MR. SCHEPACARTER:  And the last thing I want to

6   turn Your Honor's attention to is page 30 of that document.

7   And it's actually pages 30 and 31, and it deals with the

8   release exculpation injunction provisions.  And the reason I

9   highlight them here is a lot of times we see in these

10  confirmation orders what they want to do is they want to

11  recite the entirety of the provisions of the plan in the

12  order.

13          Not only does it make the order longer, but

14  sometimes those provisions are inconsistent with the plan,

15  and it creates a problem, especially if there's an

16  interpretation issue later on down the road.  This order, the

17  preferred order, if everybody's listening, the preferred

18  order is to just say, releases, exculpations, injunctions are

19  approved, as set forth in the plan are hereby approved.  And

20  that's kind of what we did here.  Other than that --

21          THE COURT:  I will tell you, I actually think that

22  that's an elegant way to approach it.  I have had at least

23  three different situations where there were word differences

24  between the two.  And in construing them later, whether I'm

25  doing it or another court, canons of construction require

1 | that the Court give effect to each of the words and ascribe

2 | significance to what is likely just a scrivener's issue.

3 |     MR. SCHEPACARTER:  Right.

4 |     THE COURT:  So I appreciate that approach.

5 |     MR. SCHEPACARTER:  Other than that, Your Honor, I

6 | have nothing else.

7 |     THE COURT:  Well, as always, Mr. Schepacarter, I

8 | would express my appreciation to you and your colleagues,

9 | both engaging with the debtor in advance of the filing to

10 | have a relatively smooth first day and then engaging and

11 | resolving any open issues that you had, many of which were

12 | issues that I certainly would have had with the plan.  So I

13 | appreciate that.

14 |     MR. SCHEPACARTER:  Thank you.

15 |     THE COURT:  Ms. Schrage, welcome back.  Good to

16 | see you.

17 |     MS. SCHRAGE:  Good to see you.  Thank you, Your

18 | Honor.  Your Honor, sir, I just wanted to stand up and tell

19 | the Court that the debtors have made the requested changes,

20 | even the last requested clarification.  So we appreciate

21 | that.  And also, I just wanted to note, Your Honor, that

22 | we're not objecting to the plan and that the SEC did file a

23 | reservation of rights to the disclosure statement and plan.

24 | And that was Docket Number 364.  And I want to just clarify

25 | on the record that the SEC is not opining as to legality

1  under the federal securities laws of the transactions in the

2  plan.

3          THE COURT:  Okay.

4          MS. SCHRAGE:  Thank you.

5          THE COURT:  Thank you.  I would ask if anyone else

6  wishes to be heard with respect to the debtor's request for

7  an order approving and authorizing plan confirmation.  Ms.

8  Lerman, did you wish to be heard?

9          MS. LERMAN:  Briefly, Your Honor, if that's okay.

10          THE COURT:  Good morning.  Welcome.

11          MS. LERMAN:  Good morning, Your Honor.  Leah

12  Lerman on behalf of the United States of America.  Your

13  Honor, as the debtors have told you, we've resolved all of

14  our issues.  The last proposed order I saw, Docket 504, had

15  all our correct language.  But it seems like there might be

16  one more revision going up.  So I just appreciate seeing

17  final order before it reaches Your Honor.

18          THE COURT:  I'm confident the debtor will

19  circulate the final version.  It also sounded like the last

20  comments would have actually been probably right up your

21  alley in terms of preservation and reservation.  Thank you,

22  Ms. Lerman.

23          MS. LERMAN:  Thank Your Honor.

24          THE COURT:  All right, does anyone else wish to be

25  heard with respect to the debtor's request for confirmation

1 of the plan?  All right.  Hearing no response.  Mr. Dastagir,

2 did you wish to be heard with respect to the debtor's request

3 for an order approving and authorizing the plan?

4          MR. DASTAGIR:  Yes, sir.  Actually, I'm an

5 independent guy.  I don't have a lawyer right now.  So

6 basically I had some Bitcoin in that Bittrex account and from

7 that platform they themselves somehow it's moved somewhere

8 else.  And I actually informed to the police and FBI and IRS

9 at the same time SEC.

10          Now, when I see they file the bankruptcy, then I

11 actually also file proof of claim with all the report that I

12 filed earlier.  And I had a chance to talk with FBI several

13 times to follow up.  I don't have any update from them.  And

14 they said that they are actually -- they are investigating

15 that, so anything happens, so they will go from there.

16          So now as it's in the bankruptcy code and like me

17 and my family, we are very small family, we have one kids,

18 nine years old, and we actually put our deposit money there.

19 And suddenly from Bittrex platform, this money is actually

20 not in my account.  I mean, Bitcoin is not my account.  So

21 how I'm going to -- how Bittrex or restructuring officer is

22 going to give back my Bitcoin?

23          THE COURT:  Mr. Dastagir, I believe the next item

24 that's on for the Court this morning is the debtor's

25 objection to your claim.  And I have your response as well,

1 | which has been received.  But in terms of the treatment of
2 | your claim, that is an issue that we're going to address in
3 | just a few minutes.  Right now, the specific question is the
4 | debtor's request for confirmation of the plan.
5 | I note that you have not filed any formal
6 | objection or response to plan confirmation.  And again, we'll
7 | get to your claim issues in just a moment.  But I wanted to
8 | ask specifically if there are any issues with respect to plan
9 | confirmation that you would raise to the extent you would be
10 | permitted to do so.
11 | MR. DASTAGIR:  In plan confirmation.  I don't know
12 | much about it, like if it is effect or not, because related
13 | to the amount of Bitcoin and its price, if they include in
14 | the plan confirmation, I think I will be okay.  The amount of
15 | money I have, are they going to include in the plan?  So in
16 | later time, if there is any decision, so I will get also my
17 | money or Bitcoin back.
18 | THE COURT:  Okay, I understand the question.  I
19 | would ask if anyone else wishes to be heard with respect to
20 | plan confirmation.  Very well.  I'm going to confirm the
21 | debtor's plan, and I don't believe that there are any formal
22 | objections.  If there are informal objections that have been
23 | posited, they are overruled.
24 | I will give you my reasons for confirming the
25 | plan.  I would note that I will address it in relatively

1  summary fashion, given, as Ms. Tomasco noted, that there are

2  no formal or informal objections currently pending.

3        The Court notes that at Docket Number 389, the

4  Court entered an order approving the disclosure statement,

5  finding that it had information sufficient to allow a

6  hypothetical stakeholder to make an informed decision to vote

7  for or against the plan.

8        Likewise, in the context of the same order, the

9  Court approved and authorized both a schedule for

10  solicitation as well as the form and manner of notice of

11  solicitation.  The record reflects, and in particular, Ms.

12  Steverson's admitted declaration reflects, that the debtors

13  have scrupulously complied with the requirements and the

14  mechanics of the Court's disclosure and solicitation

15  procedures order.

16        Ms. Steverson's declaration reflects certainly

17  adequate balloting support from stakeholders entitled to vote

18  on the plan to approve and carry confirmation on a cramdown

19  basis.  The Court notes that Classes 2A and 3 have both

20  accepted overwhelmingly.  Class 2B has rejected the plan.

21  Counsel has noted that there may be issues with respect to

22  the claims in Class 2B.  Those issues are not before me

23  today, and the Court is considering those ballots on the

24  merits and without contradiction.

25        Nevertheless, the Court has had an opportunity to

1  review the two declarations that have been submitted in

2  connection with the debtor's request for plan confirmation.

3  First is Mr. Hengel's declaration serving as the CRO, and

4  second is Mr. Maria's declaration serving as essentially the

5  client and general counsel.  The Court notes that both of

6  those declarations are thorough and comprehensive, and I will

7  deal with them together.

8         Together, they lay out the circumstances under

9  which the bankruptcy proceedings were commenced, the way in

10 which they have been prosecuted since the beginning of these

11 cases, the structure of the plan, the treatment of various

12 claims and creditors, and also the debtor's compliance with

13 the various provisions of Bankruptcy Code Section 1129(a),

14 1129(b), and 1123 for purposes of obtaining plan

15 confirmation.

16        Finally, the Court notes that the debtor has filed

17 a comprehensive memorandum at Docket Number 503.  That

18 memorandum is obviously not evidence, but is certainly part

19 of the record before me, and describes in exhaustive detail

20 the debtor's argument and factual record for purposes of

21 demonstrating compliance with applicable provisions of the

22 Bankruptcy Code and the Bankruptcy Rules in order to approve

23 and authorize plan confirmation.

24        So, based upon the record before me, I am

25 satisfied that the debtors have carried their burden, and I

1  would enter an order approving and authorizing plan

2  confirmation.

3        Counsel has advised that there are small final

4  changes being made.  I would expect to see that order

5  uploaded shortly after the United States and any other party

6  has had an opportunity to review, but I would expect to enter

7  that order timely.  In addition, I believe I have in my

8  notes -- Ms. Tomasco, are you looking for a waiver of the

9  Rule 6004 stay?  When are you expecting to go effective?

10       MS. TOMASCO:  Your Honor, I believe that's built

11 into the confirmation order.

12       THE COURT:  I believe that it is.  I think I'm

13 obliged to make a particular reference to it, and I am

14 satisfied that the debtors have carried their burden,

15 particularly given the absence of any formal objection.  And

16 it is manifestly this Court's policy that with a sale or with

17 a plan confirmation, if you can go effective, go effective.

18 So, the debtor's request for a waiver of the two-week Rule

19 6004 stay is hereby granted.  And again, I would look for

20 that order submitted under certification promptly.  Are there

21 any questions?  Very well.  Ms. Tomasco, where does that

22 leave us?

23       MS. TOMASCO:  Your Honor, the last item on the

24 agenda is the debtor's objection to the claims filed by Mr.

25 Dastagir.

1    THE COURT:  Why don't we do this before we turn to

2 that issue?  Why don't we just take a five-minute break and

3 then we'll reconvene for the last item on the agenda?

4 Standard recess, five minutes.  Thank you.

5    (Off the record at 10:37 a.m.)

6    (On the record at 10:45 a.m.)

7    THE BAILIFF:  All rise.

8    THE COURT:  Ms. Tomasco.  Just a heads up.  I

9 don't know how long this will go, but I have a conference at

10 noon.  I'm on a panel with Rochelle via Zoom for the consumer

11 extravaganza.  So if we are still going, I will have to break

12 it probably ten of.  Okay.

13    MS. TOMASCO:  I hope this doesn't last that long.

14 Your Honor, this is a claim objection.  Mr. Dastagir filed

15 numerous claims against these debtors related to events that

16 happened well before the statute of limitations ran before

17 the bankruptcy case.  Specifically, those claims --

18    THE COURT:  Hang on.  Before we go much further

19 Mr. Dastagir, good morning again, sir.  I just want to

20 confirm that you're able to hear Ms. Tomasco at the podium.

21 Are you able to hear her?  Sir, we've had issues with the

22 microphones.  I can hear her just fine.  But I want to make

23 sure that you're able to on Zoom.

24    MR. DASTAGIR:  Yes, I hear her.

25    THE COURT:  Okay, Ms. Tomasco.  Sorry for the

1   interruption.  You may proceed.

2          MS. TOMASCO:  Okay, thank you.  Specifically, Mr.

3   Dastagir filed claims at 598-1698, 598-1735, 598-1735, 598-

4   1791, 599-59, 599-70, 599-71, 599-72, 600-180, 600-202, 600-

5   203.  Each of these claims requested damages resulting from

6   an account hacking that happened years ago.

7          Mr. Dastagir opened an account with BUS on October

8   10, 2017.  On November 10 of 2017, approximately 4.5 Bitcoin

9   was withdrawn from Mr. Dastagir's accounts with BUS.  The

10  withdrawal originated from an IP address in Turkey.  BUS

11  received several messages from Mr. Dastagir alleging that his

12  account had been hacked after these transactions.  BUS

13  explained to Mr. Dastagir that if this withdrawal was not

14  initiated by him, the fraudster had access to his valid

15  account credentials, and thus BUS would not reimburse him for

16  the tokens transferred.

17         BUS explained to Mr. Dastagir that the actions

18  performed on the account also required that the fraudster

19  have access to his email account.  BUS's platform has never

20  been hacked.  And historically, any fraud committed against

21  user accounts has been caused by the compromise of account

22  credentials outside of BUS's platform.

23         In support of the objection, the debtors attach

24  the declaration of Evan Hengel at Docket Number 400, which

25  goes through the books and records confirming this line of

1   events.  Because this happened in 2017, Your Honor, it's well

2   outside the statute of limitations for a breach of contract

3   claim under Texas, where Mr. Dastagir lives, under

4   Washington, or anywhere else.

5           And so, number one, it's outside the statute

6   limitations.  As of the petition date, any contract claim

7   would have been waived by expiration of the statute

8   limitations.  Mr. Dastagir did not pursue the civil action

9   against BUS in state courts prior to the petition date.

10          And second, the terms of service of BUS that Mr.

11  Hengel recites, they disclaim any responsibility if a

12  customer's credentials are hacked.  So it's no different than

13  if somebody takes your ATM card, goes to the ATM machine, for

14  some reason, they have your PIN, and they withdraw money from

15  your account.  And if you were responsible for allowing those

16  items of identity to be taken from you, while your bank may

17  have a different term of service, under BUS's term of

18  service, you are responsible for protecting your account

19  credentials.

20          So for that reason, we've objected to Mr.

21  Dastagir's claim.  His response did not come back with any

22  contrary evidence, and he has the ultimate burden of proof.

23  But in support of our claim objection, we move to admit the

24  declaration of Evan Hengel found at Docket Item 400.

25          THE COURT:  Any objection to the admission of Mr.

1  Hengel's declaration as part of the case, debtor's case in

2  chief?

3          MR. DASTAGIR:  Yes.  Objection.  Basically, what

4  ma'am is basically saying, it's not true.  My account is

5  never, let's say, my username password.  It's not given to

6  someone else or anything else.

7          THE COURT:  Hang on, Mr. Dastagir, here the

8  question -- I understand, and I want to be clear that if you

9  would like to ask Mr. Hengel some questions about his

10 declaration, or if you would like to explain to me exactly

11 what happened and expand on the letter that you have provided

12 to the Court, you'll have an opportunity to do that.

13         But Ms. Tomasco's question is whether or not the

14 testimony of her client, which you may disagree with, all

15 right, and I sit as the trier of fact, so I will make a

16 determination of what the facts are.  But is there any

17 objection to the admission of that declaration, again, that

18 you don't agree with it, or you allege that it's not true?

19 You'll have an opportunity to challenge what he said, but I'm

20 asking specifically if there's an objection to the admission

21 of the declaration.

22         MR. DASTAGIR:  Sir, basically, honorable judge, I

23 am not a lawyer.

24         THE COURT:  I understand.  And again, I have no

25 problem and very much appreciate, frankly, you coming and

1  again participating in today's hearing.  And I'm glad that we

2  were able to do it by Zoom to save everybody some time and

3  some money, but yeah.  So it's a pretty specific question.

4  Again, not necessarily that I'm finding or agreeing with Mr.

5  Hengel on his declaration.  Ms. Tomasco simply wants or needs

6  that declaration as part of the debtor's argument that

7  they're having with you.

8          MR. DASTAGIR:  Debtor's argument?  Basically, the

9  last letter they sent, October 25th.  I don't have it.  I

10 didn't receive it yet.

11         THE COURT:  Okay.  I'm going to admit Mr. Hengel's

12 declaration subject to the opportunity to cross examine at

13 the appropriate time.  Ms. Tomasco, you may proceed.

14         MS. TOMASCO:  Your Honor, we did receive the reply

15 of Mr. Dastagir.  It appears that he continues to believe

16 that the fact that he reported this to the FBI and the police

17 was all he needed to do to establish a claim against Bittrex.

18 However, those actions did not constitute a claim against

19 Bittrex, nor are they proof of his claim against Bittrex

20 here.  In fact, they don't disprove what Bittrex has put

21 forward in its claim objection.

22         With that, Your Honor, it is the claimant's burden

23 of proof, ultimate burden of proof with respect to his claim.

24 The debtors have come forward with their evidence and the

25 declaration of Evan Hengel.  I don't know if Mr. Dastagir

1   said -- sorry.  (Phone ringing)

2            THE COURT:  It's a good thing I didn't hear that.

3            MS. TOMASCO:  I apologize.  I actually have it on

4   mute.  So how would the Court like to proceed?  Does Mr.

5   Dastagir wish to cross examine Mr. Hengel?  Is Mr. Dastagir

6   going to testify on his own behalf?  Or how is the evidence

7   going to go from here?

8            THE COURT:  So, Mr. Dastagir, the debtor is

9   objecting to your claim.  And I think you've heard from both

10  their papers as well as from Ms. Tomasco today, that their

11  position is that to the extent that the account may have been

12  hacked, that's not something that would give rise to

13  liability.  And that, again, to the extent that the account

14  was hacked or that you had a claim under applicable law, you

15  were obliged to act no later than several years ago.

16           Mr. Hengel's declaration has been admitted.  If

17  you wish, I would give you the opportunity to cross examine,

18  to ask him some questions about it.  If you wish, I would

19  give you the opportunity to make your argument and case to

20  me, if you wish, and explain exactly what it is that

21  happened, so that I can understand each side and make my

22  ruling.  I'm at your pleasure, sir.

23           MR. DASTAGIR:  Yeah, sure, no problem.  So,

24  Honorable Judge, basically I talked with a couple of lawyers

25  and one lawyer.  I am not able to hire them because they ask

1  several thousand dollars.  But what he said, me three

2  basically lawyer, that it's.  Inside the statute of

3  limitations in the Texas, there is ten years statute of

4  limitations for debt or any fraud or any kind of things.

5  That's one thing.  I mean, it's under the statutory of

6  limitations.

7           And I also when that happened on 2017 and 2018

8  contacted with one of the lawyer, and he suggested me also to

9  contact with FBI.  And FBI has the full authority, whatever

10  the conclusion they will give you, I can proceed.  So I

11  didn't hear from FBI.  So that's why that lawyer cannot -- he

12  was actually waiting for the FBI reply.

13           Now let me tell you what happened exactly.

14           THE COURT:  Please.

15           MR. DASTAGIR:  In 2017, the time I had the

16  Bitcoin, there are multiple accounts also their Bitcoin also

17  stolen from their account, same like me.  Now, what is my

18  situation?  I have money in stocks in my corporate company

19  stocks, my 401(k) fund, and other stocks for my company.  So

20  that time I was seeing that Bitcoin is very good, it's a

21  crazy.

22           Then I sold my portfolio and I bring that money

23  from my bank account to the Bittrex.  I open an account in

24  Bittrex, and I put that money to the Bittrex, and I bought

25  the Bitcoin that day.  And I was actually doing back and

1  forth, I bought some Bitcoin converted to other coin that I

2  did, I think a couple of times maybe.

3          And then on November 10th it is very unfortunate

4  situation.  I was in a system, I mean my laptop and my entire

5  system is antivirus and VPN and all this because it's my

6  corporate system.  Even my phone, I use the iPhone -- iPhone,

7  and my phone has no access to anyone else than me.

8          So actual incident when happened, I was on the

9  system and I see that suddenly something is like a fishy,

10 like something blinking or something, and I have no control

11 on it.  And when I saw that things that from my account,

12 Bitcoin, and when I see something is blinking like that, I

13 immediately informed to the Bittrex help team that there are

14 something is going on.  I don't understand that.  Can you

15 stop my account or something?

16         And then I think multiple times I contacted with

17 them.  Then in the meantime actually I think they froze the

18 account, but there is no Bitcoin in my account.

19         Then later on same day I went to our city police

20 department, Detective Branch (phonetic), they take all the

21 documents, my bank account, my Bittrex account, and all the

22 information.  And from Detective Branch, detective officer,

23 he actually gathered all the information, investigated that.

24 Then he reached out to FBI.  He reached out to FBI, and he

25 reached out to IRS agent also.

1            And you know, my situation, the time that

2    happened, me and my wife, me and my wife both went to the

3    police station, and I have a son, as I said, it's like --

4    he's now nine years.  That time he was I think three years.

5            THE COURT:  Okay.

6            MR. DASTAGIR:  So we are very emotional at that

7    point.  You can imagine that we are very good citizen here,

8    U.S. Citizen, and we oblige everything.  I mean, we respect

9    everything.  Whatever we can do good, we do all the time.

10           Now, that comes very emotional.  And then I wrote

11   after that detective officer he told us that IRS and FBI has

12   the tool, and FBI has the jurisdiction to go over anywhere.

13   And he also said that I think the IP address shows the Turkey

14   but someone can use the VPN and using the VPN they can use

15   anywhere in the world IP address, and I am working in an IT

16   area.

17           THE COURT:  Can I ask a question though?  I do

18   understand the issue or the mechanics of using alternative

19   VPNs and concealing a location or coming up with a different

20   location.  One of the points that the company is making is

21   that the proper credentials for withdrawal of the Bitcoin

22   were presented to Bittrex.  Which means that from the

23   company's point of view, I think their argument is that your

24   information must have been compromised or hacked.  Because I

25   think their argument is that the platform was not hacked.

1  Someone showed up with your account information.  I'd like to
2  make sure I understand that point.

3        MR. DASTAGIR:  Yes, Honorable Judge, it's never
4  happened.  Like my ID or credentials is compromised.  Only
5  Bittrex has the sole authority, and I am an IT expert, I'm a
6  software engineer, associate manager, and I work 20 years in
7  IT.  It's not possible at any point that someone can install
8  my credentials except platform itself.

9        Let's say Bittrex has the platform.  Bittrex has
10 the security system, Bittrex has the security expert without
11 their -- behind the door or they have two, three systems.
12 Without their acknowledgment, without something, someone from
13 there, it's impossible to take client account money to
14 somewhere else.

15       THE COURT:

16       MR. DASTAGIR:  And Honorable Judge, I am expert in
17 fraud area.  I was working in the IT.  If any client has an
18 issue, then we know before anything happens.  So from that
19 standpoint, my expertise and all this, if I tell you it's
20 impossible without Bittrex and Bittrex security team or
21 Bittrex, and if you look at it, they have four different
22 companies set up, two or three set up outside of the United
23 States.  And I have no knowledge on it.

24       So that's even the time it's happened, there are
25 multiple YouTube video.  Many people claim that they have

1  seven Bitcoins lost from Bittrex.  They have five Bitcoin

2  lost the Bittrex.  I share this information with the

3  Detective Branch here, also in the FBI.

4         So whatever the chief restructuring officer is

5  talking, it's completely baseless.  From IT standpoint, from

6  the risk point of things, from cybersecurity, it's completely

7  baseless.  Bittrex itself has the sole authority from their

8  platform.  They can make one, two, three system, they can

9  make prototype, they can make some gateway, and that can be

10  the access, or there can be some users behind the back, there

11  can be some fake account created there from their own people

12  behind, and they have the access all the clients'

13  information.  Without them, it's impossible to anyone to go

14  there.  And as I said, I can present my credential.  I work

15  for a company and 20 years, Honorable Judge, I have expertise

16  in this area.

17         THE COURT:  All right, I understand.  Ms. Tomasco?

18  Here's what we're going to do.  I very much appreciate

19  hearing from Mr. Dastagir.  Our rules actually specifically

20  provide that a claimant is entitled to represent him or

21  herself in connection with a claim objection.  So we are

22  proceeding on the merits.  I've admitted Mr. Hengel's

23  declaration again as part of the debtor's case in its

24  objection.

25         I realize it's a little odd or a little informal,

1 │ but if you wish, I would be willing to give you the

2 │ opportunity to examine Mr. Dastagir.  I recognize that he is

3 │ not here, but again, under our rules, I would not have

4 │ directed that he travel up here regardless.  If you wish to

5 │ make argument, you're welcome to do so.  If you have

6 │ questions for him that based upon his comments and what I'm

7 │ accepting essentially as his testimony today, then I would

8 │ certainly be prepared to give you leave to do that.

9 │         MS. TOMASCO:  Okay, I'll give it a whirl.  Mr.

10 │ Dastagir --

11 │         THE COURT:  Hang on just a second.  I'm going to

12 │ ask that we swear the witness.  Mr. Dastagir, you have

13 │ provided an explanation and response to the Court, which, as

14 │ I mentioned a moment ago, I'm taking essentially as your

15 │ sworn testimony.  Ms. Tomasco is counsel for the company.

16 │ She's going to ask you some questions.  But before we do

17 │ that, we're going to swear you in as a witness, and I

18 │ appreciate you raising your right hand.  I'll ask the court

19 │ reporter to proceed.

20 │         MR. DASTAGIR:  Thank you.

21 │         THE COURT REPORTER:  Do you solemnly swear to tell

22 │ the truth, the whole truth, and nothing but the truth, so

23 │ help you God?

24 │         MR. DASTAGIR:  Yes.

25 │         THE COURT REPORTER:  Please state your name for

1  the record and spell it.

2          MR. DASTAGIR:  ZM Golam Dastagir.  Spelling is Z M

3  G-O-L-A-M, and last name is Dastagir, D-A-S-T-A-G-I-R.

4          THE COURT:  Very good.  Before Ms. Tomasco

5  proceeds, as I mentioned a moment ago, Mr. Dastagir, I'm

6  accepting your comments as essentially being sworn testimony.

7  But I would ask you to confirm for me now that the statements

8  that you made to me and the explanation that you provided a

9  moment ago would be your sworn testimony if we went through

10 it again.

11         MR. DASTAGIR:  Sure.

12         THE COURT:  Very good.  Thank you, sir.

13         Ms. Tomasco, you may proceed.

14 CROSS-EXAMINATION

15 BY MS. TOMASCO:

16     Q.   Okay.  Mr. Dastagir, are you aware of how many

17 claims you filed against these debtors?

18     A.   Yes, I filed multiple because I did not know that

19 I think I made mistake, and then when I check it up, and then

20 I think I made mistake.  So that's why actually, multiple --

21 multiple claim, but it's basically only it will be the amount

22 is 4.52 Bitcoin.  The number is there.  So that's only the

23 number.  It will be one claim.

24     Q.   It's correct that you filed one, two, three, four,

25 five, six, seven, eight, nine, ten, eleven claims against

1   these debtors?

2        A.   I think the documents you have, that should be

3   correct, I think.

4        Q.   And how many accounts did you have with Bittrex

5   US?

6        A.   Only one account for myself.  Only one account,

7   okay.

8        Q.   And how much Bitcoin did you have in that one

9   account?

10       A.   It was 4.52 some -- .52-plus Bitcoin.

11       Q.   Okay.  And so 4.5 Bitcoin?

12       A.   Yeah, 4.5.

13       Q.   Okay.  So when you filed claim number 597221

14  against Desolation Holdings, do you recall filing that claim?

15       A.   Yes.

16       Q.   Now, when you filed that claim, you said that the

17  amount of your claim was $275,000.

18       A.   Yes.

19       Q.   You also said that it was for contributions to an

20  employee benefit plan.

21       A.   That part, yeah, I understand.  So I actually --

22       Q.   Did you say -- Mr. Dastagir, did you say that and

23  did you file that claim under penalty of perjury?

24       A.   Yes.  But there is a way to correct it, right?  So

25  if you look at it, each of the claim --

1      Q.   Mr. Dastagir, you can answer my question, and then
2  you need to stop.  Okay.  Is that all right?
3           THE COURT:  Mr. Dastagir, you'll have an
4  opportunity to essentially report to the Court, but right
5  now, all you need to do is answer the questions that are
6  provided.  If there's a further explanation, I commit to you,
7  sir.  You will have an opportunity to make that explanation
8  to me.  Okay?
9           MR. DASTAGIR:  Yes.
10          THE COURT:  All right, Ms. Tomasco, you may
11  proceed.  Sorry for the interruption.
12  BY MS. TOMASCO:
13     Q.   Mr. Dastagir, you also claimed that you were
14  claiming additional types of priority with respect to your
15  claim against Desolation Holdings.  Do you recall that?
16     A.   Yes.
17     Q.   And you said that the amount of your other
18  priority claims was $200,000.
19     A.   I think so.  (Inaudible).
20     Q.   Have you ever had a contract with Desolation
21  Holdings?
22     A.   I don't know that because it's very hard because
23  from Bittrex to Desolation, so I don't know that.
24     Q.   Okay, but you filed the claim against Desolation
25  Holdings under oath, did you not?

1      A.    Because if you look at the Desolation and all

2 other three of your company, it's basically all together,

3 right?   It's combining the claim.   And I talked with the Omni

4 and they said that file the claim.

5      Q.    Okay, but you realized that you had to file a

6 claim against the debtor with whom you had a contractual

7 relationship, did you not?

8      A.    But all four company mashed together, and it's a

9 continuous claim.   One of the lawyer also wrote me that I

10 have to file the claim under the, I think, Desolation.   And

11 these all claims that I filed, I even sent the multiple

12 lawyers that I contacted, I send them as well.

13      As you know, ma'am, I am not a lawyer.   So based on my

14 knowledge so I put it that and the amount that you see, that

15 differences, because it is based on the Bitcoin price that

16 time, the 275,000, I think I wrote the letter to IRS 275,000.

17 Based on the calculation that Bitcoin was 69,000, about

18 $70,000.   That was the calculation that I put in the Bitcoin

19 price, and that's how I calculated it.   And even I sent that

20 letter to IRS.

21      Same thing.   I also explained when I filed a claim, as

22 well as in my explanation, I wrote it down that it's

23 basically Bitcoin prices fluctuation.   So correct number will

24 be 4.52 Bitcoin, and in your form, there is no option that I

25 can write 4.52 Bitcoin, I think so.   That's why I put the

1 number, approximate number there, ma'am.

2       Q.   Mr. Dastagir, in claim number 599-65, you've also

3 filed a claim against Bittrex Malta Opco.  Have you ever had

4 a contract with Bittrex Malta Opco?  Yes or no?

5       A.   I don't know that.  If there is any contract with

6 Bittrex Malta or no, but I came to know from your --

7            THE COURT:  Okay.  Hang on, Mr. Dastagir, you have

8 answered her question.  Again, I'll give you an opportunity

9 to explain, but right now, her questions will often simply

10 require a yes or a no answer.  Okay?

11           MR. DASTAGIR:  Okay, sure, sure.  Understood.

12 BY MS. TOMASCO:

13       Q.   Mr. Dastagir, you also filed a claim against

14 Bittrex Malta Holdings in claim number 600-196.

15       A.   Yes, I did.

16       Q.   Have you ever had a contractual relationship with

17 Bittrex Malta Holdings?

18       A.   I don't know that, ma'am, because I have not --

19       Q.   For each of the claims -- for each of the claims,

20 you understand that you filed them under penalty of perjury,

21 correct?

22       A.   Yes.  Because all four company are claiming is

23 together.  So that's why.

24       Q.   Mr. Dastagir, Mr. Dastagir, in each of the claims,

25 you claimed that you were claiming priority as a result of a

1  contribution to an employee benefit plan.  Is that correct?

2        A.   I filled it up, but I haven't --

3        Q.   Mr. Dastagir?

4        A.   Yes.

5        Q.   All right.  Have you ever been a participant in an

6  employee benefit plan of the debtors?

7        A.   No.  I --

8             THE COURT:  Okay.  You've answered the question.

9  BY MS. TOMASCO:

10       Q.   Do you have any other legal basis to claim that

11  you have a priority claim against the debtors?

12       A.   Yes.  I don't know, ma'am.  Because this is a

13  legal thing.  I have no idea on that.

14            THE COURT:  Okay.

15  BY MS. TOMASCO:

16       Q.   All right.  Mr. Dastagir, you also claim that you

17  have a security interest in property of the debtors?

18       A.   Yes, ma'am.

19       Q.   And do you have any legal basis for asserting a

20  security interest in property of the debtors?

21       A.   Sometimes, like Bitcoin, it's many experts, they

22  said it's a security.  So based on that understanding, I put

23  security.

24       Q.   All right, Mr. Dastagir, you claim that this event

25  where your account credentials were compromised or your

1  Bittrex was taken from your account happened in what year?

2      A.    November 10th, 2017.

3      Q.    All right.  Now, you reported that at the time to

4  the FBI, correct?

5      A.    I reported the same day to Detective Branch, our

6  city police department, and they contacted with FBI and IRS.

7  Later on, I also contacted with FBI.

8      Q.    And you also reported this to the Corinth Police

9  Department?

10      A.    Yes.  Same day I reported to Corinth Police

11  Department.

12      Q.    Okay.  And how many years has it been since you

13  reported this identity theft to the FBI and the Corinth

14  Police Department?

15      A.    Corinth Police Department, November 2017.  So it's

16  like three years, I think.  Six years plus.

17      Q.    Okay.  Is it fair to say that you understood all

18  of the things that had happened to you that might give rise

19  to a claim in 2017?

20      A.    Sorry, ma'am?

21      Q.    Did you understand that all of the facts that

22  might give rise to a claim in 2017?

23      A.    The event happened, the accident or incident

24  happened on November.  That's true.  November 2017, but I

25  don't know how lawyer basically, they calculate the time and

1  all this.

2      Q.   All right.  Do you agree that when you signed up

3  for your account with Bittrex US that you agreed to a Terms

4  of Service?

5      A.   I asked terms of service.  I think there are Terms

6  of Service there, but, you know, that thousands of pages.  I

7  think it's almost impossible to anyone to go on the terms and

8  service these thousands pages.  We are lemon user.  Right,

9  lemon user on the platform.

10     Q.   Did you agree to the Terms of Service when you

11 opened your Bittrex US account?

12     A.   Yes, of course, I agree on the terms of service.

13 That's why they allow me to open the account, right?

14     Q.   Okay.  Do you have any basis to disagree that you

15 signed up to the Bittrex Terms of Service that says that

16 Bittrex US will have no responsibility or liability with

17 respect to unauthorized access to your account?

18     A.   I didn't read that.  And as I said, that let's say

19 when, you know, it also like when terms and conditions come

20 thousands of pages.  We go down the pages and we --

21     Q.   The question is -- the question is a yes or no.

22 Do you have any reason to dispute that you agreed to the

23 Bittrex Terms of Service that state that you are responsible

24 for any unauthorized access to your account?

25     A.   I think that's a lawyer can tell that.  I don't

1  know how to answer that.

2       Q.   I will take --

3       A.   Because we are in a scenario that's basically for

4  me --

5            THE COURT:  Hang on, you've answered the question.

6  You may proceed.

7  BY MS. TOMASCO:

8       Q.   Mr. Dastagir, do you have any reason to dispute

9  that you also agreed to Section 17 of Bittrex US's current

10 terms of service that disclaim liability for consequential or

11 punitive damages?

12      A.   Consequential and punitive damages for the form

13 that I filled up.

14      Q.   Do you dispute that Bittrex Terms of Service that

15 you agreed to when you opened your account disclaim

16 consequential or punitive damages against Bittrex?

17      A.   That's a disclaimer.  But ma'am, it's very hard to

18 tell anybody like this.

19      Q.   Do you have any basis to dispute it?  Yes or no?

20      A.   I think only lawyer can tell about that.  Because

21 I am lemon person, I cannot comment on it.

22      Q.   Do you have any basis to dispute that when you

23 signed up to the Bittrex US Terms of Service that you agreed

24 that the limitation of liability would be limited to the

25 amount of commissions earned by Bittrex with respect to your

1  account?

2      A.   Again, especially in this part, at the only

3  lawyer, I think I have --

4      Q.   That's a yes or no.  Do you have any basis to

5  dispute that you agreed to the Terms of Service that have a

6  limitation of liability in paragraph 18?

7      A.   It's only lawyer can answer that, ma'am.

8          MS. TOMASCO:  I'll pass the witness, Your Honor.

9          THE COURT:  All right, that concludes the

10  examination.  Mr. Dastagir, I believe that there were a

11  number of questions that Ms. Tomasco asked that you were

12  going to -- that you wished to sort of expand on your answer.

13  And I would give you that opportunity right now, essentially

14  as argument, if you wish.

15          MR. DASTAGIR:  Argument, Honorable Judge.

16  Basically I have the money, right?  And they write this

17  contract and all these agreements.  Definitely what the

18  scenario happened.  Like, Bittrex itself has the authority on

19  the platform, no one else.  So if there is any third party

20  involved on that, they are the solely responsible on it.  The

21  terms and conditions they have written or shown it's conflict

22  of interest with the clients' interest.  So I think that's

23  one of the things that I can thought of.

24          THE COURT:  Okay.  Anything further, sir?

25          MR. DASTAGIR:  Yes, now the scenario is like if

1  you kindly give me an opportunity and I can find a lawyer who
2  can actually represent that all in a good way and legal way,
3  you know?

4          THE COURT:  Okay.

5          MR. DASTAGIR:  And also, Honorable Judge, there is
6  multiple claims that I filed and also it's like one link to
7  other.  So please give me the opportunity if there is
8  anything that I need to correct it.  So I need to correct the
9  claim.  My only claim is that 4.52 Bitcoin and the company is
10 Bittrex.

11         Now, if Bittrex with all four companies together,
12 I think that you can consider it as opposition, raise a lot
13 of questions.  I have no idea all of this.  Only lawyer can
14 answer that question.  And my claim is very simple, that I
15 had an account with Bittrex, and I have only 4.5 Bitcoin.  So
16 it's all up to you, Honorable Judge and also the opposition
17 as they are dealing with a lot of clients.  And I have a
18 small family.  I don't want to make a lot of things and hours
19 and all this just it's, Honorable Judge, and Bittrex or the
20 Counsel up to them if they decide that it's a small amount
21 for them, but it's a huge amount for me and my small family.

22         So that's all I can say.  I can request that if
23 they can take that and if they allow us and if they can give
24 this thing.  So I think that will be, you know, like, if I go
25 Attorney General, FBI, and IRS.  So it's a lot of hectic

1  things for me, Honorable Judge.

2          THE COURT:  Okay.  All right, here's what we're

3  going to do.  I will give you my reasons, but I'm going to

4  sustain the objection to Mr. Dastagir's claims, and I will

5  expunge and disallow those claims.  But I will give you my

6  reasons, sir.

7          First, as I mentioned at the outset, our rules

8  specifically provide and contemplate that individual

9  claimants will have an opportunity to participate and are not

10 required to have an attorney and can appear remotely.  And I

11 want to be clear how much I appreciate you taking the time

12 today.  I realize that this is not a familiar process to you

13 and that you're not a lawyer.  And I also realize that it is

14 a stressful and challenging experience.  But I am going to

15 sustain the debtor's objection to your claims, and I will

16 disallow your claims.

17         In so ruling, I would make an observation

18 consistent with what you said a minute ago, which is that

19 your claim is really very simple.  You had purchased Bitcoin,

20 4.52 in 2017, placed it on the platform, and that at some

21 point within six months or so from that, that Bitcoin was

22 removed.  Whether it was hacked or stolen or taken, with or

23 without the credentials that are provided, there is a dispute

24 about the mechanics of that.

25         I will tell you that at least based upon the

1  record that's before me today, the record demonstrates that

2  the debtor's platform has actually never been hacked.  And so

3  the debtor's presumptive argument is that if access is

4  afforded to the platform, that is a function of obtaining of

5  the credential outside of the Bittrex structure.

6          But that is a factual dispute between the parties.

7  And I'm not going to rule upon that because, again, going

8  back to your comment that this is a relatively simple

9  structure, to the extent that there was harm or loss

10  suffered, it occurred in 2017.  Under the law, there is a

11  limited period of time to seek redress on account of a loss.

12  That period is either three years or four years.  In any

13  event, it is beyond dispute in this case before me that this

14  claim is barred by the applicable statute of limitation, and

15  therefore the claim itself must be disallowed.

16          In addition, I would note that as Ms. Tomasco

17  reflected in her examination of with you and in the argument,

18  you have filed a number of claims.  I certainly don't fault

19  you for doing so.  It's a confusing process, and I assume

20  that you wanted to ensure that you had covered every base.

21          But it does seem to me that there is no basis for

22  an employee stock option or an employee benefit program

23  claim.  And likewise, there is nothing in the record before

24  me today, even without considering the statute of limitation,

25  that would give rise to either a secured claim or a priority

1  claim.  So at most, we would be dealing with a general,

2  unsecured claim.

3          And again, there is a factual dispute about the

4  mechanics by which the hack or the loss occurred.  But from

5  my point of view, again, I think the law is clear and

6  requires the Court to expunge and disallow the claim on the

7  grounds that it is not timely.  Do you have any questions,

8  sir?

9          MR. DASTAGIR:  Yeah, thank you.  I understand the

10  timing, but I personally don't know.  And you understand that

11  I have no idea.  But when I contacted with multiple lawyer,

12  and one lawyer says that it's under the statute of, he

13  actually checked the Texas law.  And Texas law, I think he

14  told, like, ten years limitations, because, as it said,

15  theft.  If it's a theft, then it's ten years and fraud or

16  something.  So it's also under Texas law, it's ten years.

17          THE COURT:  Okay.  Mr. Dastagir.  No, I

18  understand.  I cannot give you legal advice.  I have made a

19  ruling with respect to your claim.  An order will be entered

20  that provides for that.  The debtor will email you that order

21  as soon as it is signed by the Court.  If you wish to seek

22  reconsideration or appeal, that you have whatever rights you

23  have.  And I appreciate the question.  I'm not trying to duck

24  it.

25          But again, it's not my position to give you legal

1  advice, nor do I have the power, because this is a civil

2  proceeding, to direct the appointment of counsel.  With that,

3  I would turn to Ms. Tomasco.  I would ask that the debtor

4  file a proposed form of order under certification.  The Court

5  will deal with that promptly, and I trust that you will

6  ensure that Mr. Dastagir gets that via email immediately upon

7  entry.  Okay.

8           MS. TOMASCO:  Thank you, Your Honor.

9           THE COURT:  All right.  Are there any other

10 matters that we have?  All right.  I appreciate everyone's

11 time.  Mr. Dastagir, again, I realize that this is not the

12 result that you had hoped for, but I appreciate your

13 engagement with the hearing, and I wish you all the best.

14 With that, we stand in recess.  Thank you.

15           (End of Proceedings.)

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2           I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ Coleen Rand                        November 3, 2023

8    Coleen Rand, CET-341

9    Certified Court Transcriptionist

10   For Reliable