## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

**DEBTORS' OBJECTION TO CLAIMS C598-1002, C598-1004, C598-1107, C598-10646, C599-45, C599-46, C599-10027, C600-105, C600-106, AND C600-10085 FILED BY SHAHRIAR ARABPOUR PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007**

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to the following claims filed by Shahriar Arabpour ("Mr. Arabpour"): Claim Nos. C598-1002, C598-1004, C598-1107, C598-10646, C599-45, C599-46, C599-10027, C600-105, C600-106, and C600-10085 (collectively, the "Arabpour Claims"). The Arabpour Claims against the various entities total $3,000,000. However, Mr. Arabpour's assets in his account were valued at only $8,473.09 as of the petition date. His exorbitant claims flow from his assertion that his cryptocurrency lost value and that he suffered other consequential damages because he was unable to withdraw his assets from Bittrex between 2017 and the present. While it is correct that he was unable to withdraw those assets, this prohibition was based on comprehensive sanctions of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

U.S. Office of Foreign Assets Control ("OFAC") targeting Iran (the "Iranian Sanctions"), and had Bittrex permitted him to withdraw those assets, Bittrex would have been violating federal law. Moreover, Mr. Arabpour fails to mention that when Bittrex obtained a license from OFAC in late 2019—of which Mr. Arabpour was aware—which permitted withdrawals by Iranians for a period of approximately five months, he failed to take advantage of that license period, only reaching out to Bittrex customer support after the license had expired.  Instead, he now claims that "this did not help the claimant as they were still unable to access their information and assets despite the permission issued by OFAC."   Mr. Arabpour never successfully established that he was subsequently a resident of Turkey.

Accordingly, the Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, (i) allowing Claim C598-1107 against Bittrex, Inc. ("BUS") in the amount of the following assets associated with Mr. Arabpour's account as of the Petition Date (0.00011914 BCH, 0.00011914 BTC, 109,389.6738 DOGE, 4,609.286 SC, 400 XRP,  42.71774955 ZEN) as an unsecured claim; and (ii) disallowing the remainder of the Arabpour Claims.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

30971812.1

3.      The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

### I.      The Bankruptcy Cases and Bar Date

4.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5.      Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration" or "Hengel Declaration").

6.      Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. [D.I. 107.]

7.      On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

8.      On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS;

30971812.1

D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

9.      In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers.  Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served notice of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form.  [D.I. 201.]  The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023.  [D.I. 187.]

10.     On September 28, 2023, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; (IV) Shortening the Notice Period for the Hearing to Consider Confirmation of the Plan; and (V) Granting Related Relief* [D.I. 389].

11.     On October 31, 2023, the Court entered the *Order Confirming the Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* [D.I. 517].

## II.     The Arabpour Claims

### A.     Mr. Arabpour's History With the Debtors

#### i.      Account Opening, Bittrex's Application of the Iranian Sanctions, and Mr. Arabpour's Earlier Attempts to Unblock his Bittrex Account

4

12.     Mr. Arabpour opened an account with Bittrex, Inc. ("BUS") in or around June 2017. At the time of the account opening, Mr. Arabpour provided Bittrex with an Iranian address.

13.     In late July 2017, Mr. Arabour completed three withdrawals from his account.

14.     In October 2017, Mr. Arabpour provided Bittrex with a copy of his Iranian passport.

15.     Also in October 2017, Bittrex blocked Mr. Arabpour's account to comply with the Iranian Sanctions.

16.     As an international customer, Mr. Arabpour never accepted the terms of service of Bittrex International Inc., which relate to "any services made available by Bittrex, Inc. or Bittrex Malta Ltd. . . . under the name of 'Bittrex International'"  (the "BI Terms of Service").  Thus, Mr. Arabpour was not transitioned to Malta OpCo and remained classified as a BUS customer in spite of being a non-U.S. resident subject to OFAC sanctions.  However, Mr. Arabpour  did not accept the terms of service of BUS either (the "BUS Terms of Service"), adding to the irregularities of his blocked account.

17.     In June 2023, Mr. Arabpour attempted to comply with KYC requirements by providing documentation purporting that he became a resident of Turkey and should not be subject to OFAC Sanctions. However, his account remained disabled due to incomplete documentation and inconsistencies in the provided documentation.

18.     To reactivate his account, Mr. Arabpour submitted multiple support requests to BUS as well as to Bittrex Global GmbH ("BG"), where he was never a customer.

30971812.1

ii.    **The OFAC License, Mr. Arabpour's Failure to Take Advantage of the OFAC License, and Mr. Arabpour's Continued Failure to Comply with Bittrex's Regulatory and Compliance Requirements**

19.    In April 2018, at substantial expense, BUS filed multiple applications with OFAC, seeking licenses to allow Bittrex to distribute funds to customers in various sanctioned countries, including Iran.

20.    In October 2019, eighteen months after filing the applications, Malta OpCo and BUS obtained a license from OFAC permitting a release of assets to customers in Iran (the "OFAC License"). The OFAC License would expire on March 31, 2020 (the "OFAC Deadline"). Starting in November 2019, Malta OpCo and BUS informed all relevant Iran customers—including Mr. Arabpour—that they could withdraw cryptocurrency in their blocked accounts. The license process and Bittrex's plan to permit customers in Iran to withdraw assets was publicly reported by several major crypto-related websites, including CoinDesk and Cointelegraph.[2] The Debtors' records show that Mr. Arabpour did not attempt any activity in his account during the withdrawal period authorized by the license. It was not until June 2020, that he inquired about the then-expired opportunity to withdraw assets pursuant to the March 3, 2020, email from Bittrex advising of the OFAC Deadline and urging him to withdraw assets from the Bittrex platform. Bittrex customer support informed Mr. Arabpour that the deadline for withdrawals had passed and the account must remain suspended pending OFAC Sanctions.

21.    The OFAC License expired, and Mr. Arabpour's account remained blocked by the Iranian Sanctions.

---

[2]    *See*        https://www.coindesk.com/markets/2019/11/11/bittrex-will-release-frozen-crypto-to-former-users-in-sanctioned-regimes/; https://cointelegraph.com/public/index.php/news/bittrex-returning-crypto-funds-to-iranian-users-after-2-year-freeze/amp.

30971812.1

22.     In November 2022, Mr. Arabpour represented to the customer support that he was a resident of Turkey and the OFAC Sanctions should not apply to him, but he did not complete the verification process establishing that he no longer resided in Iran.

### iii.    Mr. Arabpour Does Not Withdraw The Assets In His BUS Account Pursuant To The Customer Withdrawal Order

23.     On June 13, 2023, the Court entered an order authorizing customers to withdraw their deposits of cryptocurrencies and fiat currencies as a continuation of the Debtors' orderly wind down process (the "Customer Withdrawal Order")  [D.I. 128.].

24.     On June 16, 2023, Mr. Arabpour submitted a picture of a Turkish driver's license and maintained that he should not be subject to OFAC sanctions due to his residence in Turkey. Mr. Arabpour's BUS account remains disabled due to OFAC sanctions as well as irregularities with his account, such as lack of acceptance of terms of service.

25.     As of the Petition Date, the following cryptocurrencies remained in Mr. Arabpour's account (the "Remaining Crypto"):  0.00011914 BCH, 0.00011914 BTC, 109,389.6738 DOGE, 4,609.286 SC, 400 XRP,  42.71774955 ZEN.  Debtors show no fiat balance associated with his account. The balances associated with Mr. Arabpour's account total approximately $8,473.09 worth of active cryptocurrency tokens as of the petition date.

26.     The address provided by Mr. Arabpour on his proofs of claims suggests that he is currently a resident of Turkey, but Mr. Arabpour did not complete verification to prove that he should not be treated as an Iranian citizen ordinarily resident in Iran or otherwise be exempt from the Iranian Sanctions.

27.     Iranian citizens ordinarily resident in Iran are still covered by OFAC Sanctions. Accordingly, the account of Mr. Arabpour  remains disabled on the basis of Iranian Sanctions.

30971812.1

28.    The Debtors cannot lawfully permit withdrawals from accounts subject to Iranian Sanctions.

**B.    Arabpour Claims**

> **i.    Claim C598-1002 (the General Proof of Claim)**

29.    Mr. Arabpour filed Claim C598-1002 on August 30, 2023.  Mr. Arabpour selected Bittrex, Inc. (BUS) as the debtor.  Mr. Arabpour lists a claim of $300,000.00, specifying that the basis of his claim is described in an attachment.  There is no attachment included with that claim.

30.    Mr. Arabpour lists on Claim C598-1002 a Turkish address.

31.    Mr. Arabpour did not assert secured claim status, but he checked the box for fixed interest rate; however, he did not include the actual interest rate.

32.    Claim C598-1002 is not signed—it only includes typed name "Shahriar Arabpour."

> **ii.    Claim C598-1004 (the General Proof of Claim)**

33.    Claim C598-1004 is substantially identical to Claim C598-1002 described above, except now Mr. Arabpour included the attachment titled "Addendum to Proof of Claim of Mr. Shahriar Arabpour Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C598-1002" or "Addendum 1").

34.    Claim C598-1004 is not signed—it only includes typed name "Shahriar Arabpour."

> **1.    Claim C598-1006: Addendum  1**

> a.    In the Addendum 1, Mr. Arabpour claims that "Claimant resides in Istanbul, Turkey, and is a citizen of Iran." However, his proof of claim lists an address in Turkey, but does not specify Istanbul as the city.

> b.    As the basis of the claim, Mr. Arabpour states that  his "fortune in crypto coins has significantly depreciated, now worth only a fraction of its previous value," where

"[his] investments have fallen by a factor of 10."

c.  Mr. Arabpour asserts that as a result, he "is pursuing a claim against Bittrex for the lost coins and damages caused by their misconduct." The theories of damages are a kitchen sink of "various legal grounds, including fraud, breach of contract, breach of fiduciary duty, conversion, tort, civil conspiracy, emotional distress, personal injury, misrepresentation, breach of the implied duty of good faith and fair dealing, unjust enrichment, negligence, and lost profits."  No factual substantiation other than decrease in value of cryptocurrencies is provided to support these legal theories.

d.  Mr. Arabpour further asserts that "[c]onsequently, all debtors share joint and several liability for the full amount of the claimant's claims." Again, no substantiation is provided for joint and several liability among the four Debtors.

e.  Mr. Arabpour also asserts that "[a]s of the date of this Chapter 11 petition and continuing until now, the Debtors have ben and still are liable to the Claimant for damages exceeding 10 Bitcoins" and that he "is currently assessing the extent and nature of damages caused by Bittrex's actions, including but not limited to compensatory damages, general damages, punitive damages, and any other damages, as well as interest, costs, and attorneys' fees as permitted by law."

f.  Mr. Arabpour further states that he reserves rights to amend the proof of claim, including "amending the identity of the Claimant," and reserves various rights to assert "claims under common law against the Debtors and their affiliates, associates, or parent companies, as well as their directors, officers, and employees."

g.  Additionally, Mr. Arabpour asserts that "[r]elief may also be sought under relevant

sections of the Bankruptcy Code (362, 502, and/or 507)."

h.  Mr. Arabpour states in the Addendum C598-1004 that he attached "the documents summarizing this claim," but no documents are included with Claim C598-1004 other than (i) Form 410 General Proof of Claim, and (ii) Addendum 1.

### iii.   Claim C598-1107 (General Proof of Claim and Customer Proof of Claim)

35.     Mr. Arabpour filed Claim C598-1107 on August 31, 2023 against BUS.  Claim C598-1107 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) "Addendum to Proof of Claim of Mr. Shahriar Arabpour Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C598-1110" or "Addendum 2"[3]), and (iv) supplemental documentation attached to the Addendum (the "Supplemental Documentation 1").

### 1.   Claim C598-1107: General Proof of Claim

36.     Mr. Arabpour asserts $300,000.00 with the basis stated as "see attachment."

37.     Mr. Arabpour asserts that Claim C598-1107 is secured by other property, specified as "see attachment."  The basis of perfection of security is also stated as "see attachment."

38.     Mr. Arabpour asserts fixed rate of interest, but the actual rate of interest is not specified.

39.     Claim C598-1107 is not signed—it only includes typed name "Shahriar Arabpour."

---

[3]   The Addendum C598-1107 is an almost verbatim copy of the addenda attached to the proofs of claims of at least two other Iranian claimants subject to Iranian Sanctions, with only the name of the claimant changing.

30971812.1

## 2.  Claim C598-1107: Customer Proof of Claim

40.     The Customer Proof of Claim form within Claim C598-1107 does not specify against which Debtor it is asserted.

41.     Mr. Arabpour asserts claim for: (i) $300,000.00 in fiat currency, and the following cryptocurrencies: (ii) 01 Bitcoin (BTC), (iii) 1 Bitcoin Cash (BCH), (iv) 109,389.67 Dogecoin (DOGE); (v) 42.7 Horizen (ZEN), (vi) 4,609 Siacoin (SC), (vii) 180 Waves (WAVES), and (viii) 400  XRP (XRP).  Mr. Arabpour asserts the claim with the basis stated as "see attachment."

42.     Mr. Arabpour does not assert on this proof of claim that Claim C598-1107 is secured, but checks the box that it is secured by other property, specified as "see attachment". The basis of perfection of security is also stated as "see attachment."

43.     M. Arabpour asserts fixed rate of interest, but the actual rate of interest is not specified.

44.     The Customer Proof of Claim within Claim C598-1107 is not signed or dated.

## 3.  Claim C598-1107: Addendum 2

45.     The Addendum C598-1107 is substantially similar to Addendum C598-1004, except that (a) the background section adds paragraphs to specifically address the Iranian Sanctions,[4] and (b) Mr. Arabpour included supporting documentation.

### a.  The Addendum  2

a.    In his Addendum C598-1107, Mr. Arabpour now asserts that "[p]rior to October 2017, Bittrex LLC, later [BUS] knowingly accepted customers from countries and jurisdictions that were under OFAC sanctions."

---

[4]   The Addendum C598-1107 is a verbatim copy of the addenda attached to the proofs of claims of at least two other Iranian claimants subject to Iranian Sanctions, with only the name of the claimant changing.

30971812.1

b.  He further states that "in October 2017, Bittrex US disabled these accounts and prevented investors from accessing their digital assets, citing an OFAC order as the reason."

c.  Mr. Arabpour admits that he "is one of the affected individuals who lost access to their account information and assets due to Bittrex's actions."

d.  He adds that, "[a]s a result, [he is] unable to determine which coins are in the possession of Bittrex or which entity holds them."

e.  Mr. Arabpour further asserts that "[i]n 2020, Bittrex US claimed to have obtained an OFAC permit to release the frozen assets," but "this did not help the claimant as they were still unable to access their information and assets despite the permission issued by OFAC."

f.  Mr. Arabpour further claims that "Bittrex support was uncooperative during this time, and the claimant's support tickets consistently went unresolved."

46.     Furthermore, in contrast to Addendum C598-1004,  Mr. Arabpour asserts here damages of eleven (11) bitcoins (BTC).

47.     He further states that "[i]t is unclear which debtors possess the assets; therefore, all debtors are jointly and severally liable for the claimant's full claims."

### b.  The Supporting Documentation 1

48.      Attached to Addendum 2 is what appears to be a printout of an email from Bittrex's support to "Shahriar" dated August 4, 2023 and referring to an email sent on August 3, 2023. The email corrects previously stated information about the account balance with value of $8,825.27 and directs the customer to withdraw the assets before August 31, 2023 or to file a proof of claim before that date.

49.     Also attached to Addendum 2 is what appears to be a printout of trade history in an unnamed Bittrex Global account with a value of fiat and crypto holdings equal zero and no open orders.

### iv.     Claim C598-11646 (General Proof of Claim and Customer Proof of Claim)

50.     Claim C598-11646 appears to be an exact duplicate of Claim C598-1107.

### v.     Claim C599-45 (General Proof of Claim and Customer Proof of Claim)

51.     On August 31, 2023, Mr. Arabpour filed Claim C599-45 against Bittrex Malta Holdings Ltd. ("Malta Holdings") as the debtor.[5]  Claim C599-45 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) Addendum 2, and (iv) Supporting Documentation 1.

52.     The content of Claim C599-45 is the same as of Claim C598-11646, except for listing a different Debtor.

### vi.     Claim C599-46 (General Proof of Claim)

53.     On August 31, 2023, Mr. Arabpour filed Claim C599-46 against Malta Holdings as the debtor.[6]  Claim C599-46 consists of: (1) the General Proof of Claim; (ii) Addendum 2; and (iii) Supporting Documentation 1.

54.     The General Proof of Claim asserts an unsecured claim of $300,000 with the basis stated as "see attachment." The name "Shahriar Arabpour" is typed on the form instead of a signature.

---

[5]     Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

[6]     Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

30971812.1

### vii. Claim C599-10027 (General Proof of Claim and Customer Proof of Claim)

55. On August 31, 2023, Mr. Arabpour filed Claim C599-10027 against Malta Holdings as the debtor.[7] Claim C599-10027 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) Addendum 2, and (iv) Supporting Documentation 1.

56. Claim C599-10027 appears to be an exact duplicate of Claim C599-45.

### viii. Claim C600-105 (General Proof of Claim and Customer Proof of Claim)

57. On August 31, 2023, Mr. Arabpour filed Claim C600-105 against Bittrex Malta Ltd. ("Malta OpCo") as the debtor. Claim C600-105 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) Addendum 2; and (iv) Supporting Documentation 1.

58. Except for the different debtor, Claim C600-105 appears to be a cross-debtor duplicate of Claims C599-10027 and C599-45.

### ix. Claim C600-106 (General Proof of Claim)

59. On August 31, 2023, Mr. Arabpour filed Claim C600-106 against Malta OpCo as the debtor. Claim C600-106 consists of: (1) the General Proof of Claim; (ii) Addendum 2; and (iii) Supporting Documentation 1.

60. Except for the different debtor, Claim C600-106 appears to be a cross-debtor duplicate of Claim C599-46.

### x. Claim C600-10085 (General Proof of Claim and Customer Proof of Claim)

61. On August 31, 2023, Mr. Arabpour filed Claim C600-10085 against Malta OpCo as the debtor. Claim C600-10085 consists of: (1) the General Proof of Claim; (ii) the Customer

---

[7] Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

30971812.1

Proof of Claim, (iii) Addendum 2; and (iv) Supporting Documentation 1.

62.     Claim C600-10085 appears to be an exact duplicate of Claim C600-105.

63.     Mr. Arabpour's claims are summarized in the table below:

| Claim No. | Debtor | General Proof of Claim? | Amount of Fiat | Secured? | Basis of Secured Status | Customer Proof of Claim? | Amount of Fiat 2 | Amount of Crypto | Addendum? | Addendum Damages | Supporting Documentation? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C598-1002 | Bittrex, Inc. | Yes | $300,000 | No | N/A | No | N/A | N/A | No | N/A | No |
| C598-1004 | Bittrex, Inc. | Yes | $300,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | No |
| C598-1107 | Bittrex, Inc. | Yes | $300,000 | Yes | See attachment | Yes | $300,000 | 1 Bitcoin (BTC), 1 Bitcoin Cash (BCH), 109,389.67 Dogecoin (DOGE); 42.7 Horizen (ZEN), 4,609 Siacoin (SC), 180 Waves (WAVES), 400 XRP (XRP). | Yes | 11 Bitcoins | Yes |
| C598-10646 | Bittrex, Inc. | Yes | $300,000 | Yes | See attachment | Yes | $300,000 | 1 Bitcoin (BTC), 1 Bitcoin Cash (BCH), 109,389.67 Dogecoin (DOGE); 42.7 Horizen (ZEN), 4,609 Siacoin (SC), 180 Waves (WAVES), 400 XRP (XRP). | Yes | 11 Bitcoins | Yes |
| C599-45 | Bittrex Malta Holdings Ltd. | Yes | $300,000 | Yes | See attachment | Yes | $300,000 | 1 Bitcoin (BTC), 1 Bitcoin Cash (BCH), 109,389.67 Dogecoin (DOGE); 42.7 Horizen (ZEN), 4,609 Siacoin (SC), 180 Waves (WAVES), 400 XRP (XRP). | Yes | 11 Bitcoins | Yes |
| C599-46 | Bittrex Malta Holdings Ltd. | Yes | $300,000 | No | N/A | No | N/A | N/A | Yes | 11 Bitcoins | Yes |
| C599-10027 | Bittrex Malta Holdings Ltd. | Yes | $300,000 | Yes | See attachment | Yes | $300,000 | 1 Bitcoin (BTC), 1 Bitcoin Cash (BCH), 109,389.67 Dogecoin (DOGE); 42.7 Horizen (ZEN), 4,609 Siacoin (SC), 180 Waves (WAVES), 400 XRP (XRP). | Yes | 11 Bitcoins | Yes |
| C600-105 | Bittrex Malta Ltd. | Yes | $300,000 | Yes | See attachment | Yes | $300,000 | 1 Bitcoin (BTC), 1 Bitcoin Cash (BCH), 109,389.67 Dogecoin (DOGE); 42.7 Horizen (ZEN), 4,609 Siacoin (SC), 180 Waves (WAVES), 400 XRP (XRP). | Yes | 11 Bitcoins | Yes |

| Claim No. | Debtor | General Proof of Claim? | Amount of Fiat | Secured? | Basis of Secured Status | Customer Proof of Claim? | Amount of Fiat 2 | Amount of Crypto | Addendum? | Addendum Damages | Supporting Documentation? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C600-106 | Bittrex Malta Ltd. | Yes | $300,000 | No | N/A | No | N/A | N/A | Yes | 11 Bitcoins | Yes |
| C600-10085 | Bittrex Malta Ltd. | Yes | $300,000 | Yes | See attachment | Yes | $300,000 | 1 Bitcoin (BTC), 1 Bitcoin Cash (BCH), 109,389.67 Dogecoin (DOGE); 42.7 Horizen (ZEN), 4,609 Siacoin (SC), 180 Waves (WAVES), 400 XRP (XRP). | Yes | 11 Bitcoins | Yes |

# OBJECTIONS

## I. The Arabpour Claims Are Not Properly Executed And Therefore Not Prima Facie Valid

64.  Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim under Section 502(a) of the Bankruptcy Code. However, a claimant's proof of claim is entitled to the presumption of *prima facie* validity only until the debtor effectively rebuts the presumption of validity. *In re TK Holdings, Inc.*, 2021 WL 2949344, at *4 (D. Del. July 14, 2021). The burden of proof then shifts to the creditor. *Id.*

65.  To be properly executed, a proof of claim must be in writing, substantially conform to the Official Form, be executed by the creditor or the creditors' authorized agent, and if the claim is based on a writing, it must attach the writing. Rule 3001; *In re Cluff*, 313 B.R. 323, 332 (Bankr. D. Utah 2004). One of "the most serious omission of compliance is the lack of any signature certifying the claim as true, accurate and correct as required by Official Form 10." *In re Avery*,

No. 15-30074, 2015 WL 4498181, at *2 (Bankr. N.D. Ohio July 22, 2015).[8]

66.     Here, Mr. Arabpour did not sign his Claims.  He merely typed his name on the General Proofs of Claims and did not provide any form of signature or dated attestation on the Customer Proofs of Claims. Therefore, Mr. Arabpour failed to properly execute his claims. Accordingly, the Arabpour Claims are not prima facie valid.

## II.    Claims C598-1001 , C598-10651, C599-56, C600-120, C598-1110, C599-48, and C599-49 Are Duplicative

67.     Mr. Arabpour filed several duplicate claims:

a.   Claim C598-10646 is a duplicate of Claim C598-1107;

b.   Claim C599-10027 is a duplicate of Claim C599-45;

c.   Claim C600-10085 is a duplicate of Claim C600-105; (together, "Duplicate Claims").

68.     Mr. Arabpour also filed several cross-debtor duplicate claims asserting the same amount, type, and basis of claim against different debtors:

a.   Claims C599-45, C599-10027, C600-105, and C600-10085 are cross-debtor duplicates of Claim C598-1107;

b.   Claims C598-1002, C598-1004, C599-46 are cross-debtor duplicates of C600-106 (together, "Cross-Debtor Duplicate Claims").

69.     Regardless of Mr. Arabpour's reasons for filing the Duplicate Claims and Cross-Debtor Duplicate Claims, any failure to disallow them will result in Mr. Arabpour potentially

---

[8]    Footnote 1 in *In re Aveni* states: "The court in *In re Nittany Enterprises*, 502 B.R. 447, 454 (Bankr.W.D.Va.2012), states that "[a] signature on a proof of claim is not required by either the Bankruptcy Code or the Bankruptcy Rules." This court disagrees with this statement, as it is hard to interpret Rule 3001(b)(through use of the words "shall be executed by the creditor") and Rule 9011(a)(through use of the words "shall be signed") as not requiring a signature by somebody." 2015 WL 4498181, at *2 n.1.

17

receiving an unwarranted double and multiple recovery against the Debtors' estate, to the detriment of other creditors in the Chapter 11 Cases.  Accordingly, the Debtor objects to the Duplicate Claims and Cross-Debtor Duplicate Claims and requests entry of the Order disallowing and expunging the Duplicate Claims and Cross-Debtor Duplicate Claims.

70.     The Debtors' Plan provides for a single recovery to each customer and provides for payment in full of customer claims before any other pre-petition creditors are paid.  Even if Mr. Arabpour could prove claims against multiple Debtors, Mr. Arabpour cannot receive more than one recovery of his claim, if any survive this Objection.

## III.     Arabpour Claims Should Be Disallowed Pursuant to Section 502(b)(1), Except for Claim C600-105 limited to the Remaining Crypto that Is in the Account

71.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

72.     Here—except for Claim C598-1107 against BUS and limited to the Remaining Crypto that is still in his account—the Arabpour Claims should be disallowed under section 502(b)(1) for the following reasons.

73.     <u>First</u>, the amount of fiat currency submitted on Mr. Arabpour's Customer Proof of Claim does not match the balance associated with Mr. Arabpour's account, because his fiat balance is zero.  Mr. Arabpour knowingly included fiat currency in the customer proofs of claims even though he did not hold $300,000 in fiat currency in his account on the Bittrex platform.

18

74.     <u>Second</u>, for the Remaining Crypto that Mr. Arabpour has not yet withdrawn, the only debtor is BUS—not Malta OpCo or Malta Holdings. Mr. Arabpour did not properly accept the BI Terms of Service to be transitioned to Malta OpCo. But he also eschewed accepting the BUS Terms of Service, where, as a non-U.S.-resident, he is ineligible to be a customer, especially in light of Iranian Sanctions.

75.     <u>Third</u>, Mr. Arabpour's Proof of Claim crypto does not match the cryptocurrencies in Mr. Arabpour's account because Mr. Arabpour knowingly and fraudulently included some cryptocurrencies that he has already withdrawn:

| Crypto | Proof of Claim Amount | Scheduled Amount |
| --- | --- | --- |
| Bitcoin (BTC) | 1 | 0.00011914 |
| Bitcoin Cash (BCH) | 1 | 0.00011914 |
| Dogecoin (DOGE) | 109,389.67 | 109,389.6738 |
| Horizen (ZEN) | 42.7 | 42.71774955 |
| Siacoin (SC) | 4,609 | 4,609.286 |
| Waves (WAVES) | 180 | 0 |
| XRP (XRP) | 400 | 400 |

76.     <u>Fourth</u>, Mr. Arabpour's inability to withdraw the assets in the account from October 2017 until now is not imputable to the Debtors, including because (i) Debtors were required to comply with the Iranian Sanctions; (b) under both KYC and Iranian Sanctions' perspective, Debtors justifiably refused to permit withdrawal based on incomplete documentation he provided, including inconsistent addresses on the proofs of claims and on the Addenda; and (iii) Mr. Arabpour repeatedly failed to take appropriate actions to comply with Debtors' regulatory and compliance requirements.

77.     In particular, Mr. Arabpour failed to take advantage of the OFAC License, despite Bittrex's efforts to facilitate the withdrawal of his assets from the account. Beginning in November 2019, Bittrex informed Mr. Arabpour that he could withdraw the assets from his blocked account,

but Mr. Arabpour remained inactive until June 2020, by which point the OFAC License had expired.

78.    <u>Fifth</u>, under either version of the terms of service to which Mr. Arabpour was obligated to agree to continue using his account, Bittrex was contractually entitled to block Mr. Arabpour's account in light of the OFAC Sanctions.[9] Also, Section 10.3 of the BI Terms of Service excludes any liability or damages resulting from any blockage of Mr. Arabpour's account pursuant to the Iranian Sanctions (or any other reasons):

> **"Bittrex will not be liable for any losses suffered by you resulting from any modification of any Services or from any suspension or termination of your access to all or a portion of any Services** (whether pursuant to this Section 10 or for any other reason). If and when Services resume, you acknowledge that **Token valuations and exchange rates may differ significantly from the valuations and rates prior to such event**. (Emphasis added.)

79.    <u>Sixth</u>, section 4 of the BI Terms of Service lists several risks—including potential devaluation of account assets, any kind of losses, inability to receive financial benefits available to other customers, and restrictions to the account—that may materialize because of

---

[9]    Specifically, BI Terms of Service, section 2.2 "Restricted Locations" of the Terms of Service provides: "You may not use the Services if you are located in, or a citizen or resident of the United States. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction that is embargoed by the United States, or if you are on any trade or economic sanctions lists, such as the United Nations Security Council Sanctions List, or if you are restricted or prohibited from engaging in any type of trading by the European Union, Hong Kong Monetary Authority, Hong Kong Customs and Excise Department, Office of Foreign Asset Control or any other administrative law enforcement agencies. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction where your use of the Services would be illegal or otherwise violate any applicable law. You represent and warrant that you are not a citizen or resident of any such jurisdiction and that you will not use any Services while located in any such jurisdiction, and that you are not on any trade or economic sanctions list. You also may not use the Services if you are located in, or a citizen or resident of, any other jurisdiction where Bittrex has determined, at its discretion, to prohibit use of the Services. **Bittrex may implement controls to restrict access to the Services from any jurisdiction prohibited pursuant to this Section 2.2.** You will comply with this Section 2.2, even if Bittrex's methods to prevent use of the Services are not effective or can be bypassed." (Emphasis added.)

Moreover, section 10.2 of the BI Terms of Service states: "Bittrex may, at its discretion and without liability to you, with or without prior notice and at any time, temporarily suspend or permanently terminate your access to all or a portion of any Services."

30971812.1

cryptocurrencies becomes defunct/delisted or governmental actions (such the Iranian Sanctions).[10]

Mr. Arabpour's unproven allegations that his "cryptocurrency fortune has significantly

depreciated in value" because his account was frozen falls in the risk categories listed in section 4.

Section 4 then disclaims any liability and damages related to such risks:

> You hereby irrevocably waive, release and discharge any and all claims, whether known or unknown to you, against Bittrex, Inc., Bittrex Malta, each of their respective Affiliates and their respective shareholders, members, directors, officers, employees, agents and representatives related to any of the risks set forth herein."

80.    <u>Seventh</u>, section 16 of the BI Terms of Service generally disclaims liability for

incidental, consequential, and punitive damages, as set forth below:

> IN NO EVENT WILL BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY

---

[10]    Specifically, section 4 of the BI Terms of Service state: "Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same. . . . You may be unable to withdraw Tokens prior to Bittrex ceasing to support transfer of any such Tokens, resulting in the loss of any such Tokens remaining in your Bittrex Account. Any Token may decrease in value or lose all of its value due to various factors including discovery of wrongful conduct, market manipulation, changes to Token Properties or perceived value of Token Properties, Attacks, suspension or cessation of support for a Token by Bittrex or other exchanges or service providers, and other factors outside the control of Bittrex. Any Token may decrease in value or lose all of its value due to legislative or regulatory activity, or other government action. . . . The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you."

(INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH DAMAGES.

81.     Additionally, the BI Terms of Service limit the Debtors' liability to the amount of fees paid by a customer to Malta OpCo or BUS in the 12 months preceding the event giving rise to the claim:

> IN NO EVENT WILL THE LIABILITY OF BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX) EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

82.     Pursuant to section 19 of the BI Terms of Service:

> With respect to any Tokens that are made available for trading by Bittrex Inc., the interpretation and enforcement of these Terms, and any dispute related to these Terms or the Services, will be governed by and construed and enforced in accordance with the laws of the State of Washington, without regard to conflict of law rules or principles (whether of Washington or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. With respect to any Tokens that are VFAs and that are made available for trading by Bittrex Malta, the interpretation and enforcement of these Terms with respect thereto, and any dispute related to these Terms or the Services with respect thereto, will be governed by and construed and enforced in accordance with the laws of the Republic of Malta, without regard to conflict of law rules or principles (whether of Malta or any other jurisdiction) that would cause the application of the laws of any other jurisdiction.

30971812.1

83.     The BI Terms of Service contain a valid and enforceable choice of law clause. *See*, *e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).   Under Washington law, disclaimers of damages and limitations on liabilities bind the parties if they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See*, *e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous").   For example, in *Debono Edward Av Dr Noe vs. No Stop Technology Limited* (C49765) – 1049/2010 – First Hall Civil Court, Malta (Apr. 3, 2012), the court confirmed that Regulation (EC) No 593/2008 on the law applicable to contractual obligations applied as the "supreme law." And Article 3(1) of the said regulation states that "a contract shall be governed by the law chosen by the parties."   The clauses in the BI Terms of Service are set out in all caps with bolded headings, and are easily understood.   Therefore, to the extent that the Arabpour Claims are for damages beyond the maximum liability set forth in BI Terms of Service, it must be disallowed.

84.     Similarly, section 17 of BUS Terms of Service disclaims liability for incidental, consequential, and punitive damages, as set forth below:

### 17. DISCLAIMER OF DAMAGES[11]

---

[11]   Section 17 of the current terms of service is identical to section 16 of the terms of service in effect as of December 23, 2017.   In turn, section 16 of the December 23, 2017 terms of service is substantially similar to terms of service that were in place before December 23, 2017.

30971812.1

IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT] ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX], EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

85.    Additionally, BUS Terms of Service also limit BUS's liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

**18. LIMITATION OF LIABILITY[12]**
IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

86.    Pursuant to section 20 of BUS Terms of Service, Washington law applies.[13]    The choice of law clause contained in BUS's terms of service is valid and enforceable.    *See, e.g.*, *In re*

---

[12]    Section 18 of the current terms of service is identical to section 17 of the terms of service in effect as of December 23, 2017.  In turn, section 17 of the December 23, 2017 terms of service is substantially similar to terms of service that were in place before December 23, 2017.

[13]    Section 19 of the December 23, 2017 terms of service likewise provides for application of Washington law, which was also the case with terms of service before December 23, 2017.

*Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003).  Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (2002); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (2002).  The clauses in BUS Terms of Service are set out in all caps with bolded headings, and are easily understood.  Therefore, to the extent that the Arabpour Claims are for damages beyond the maximum liability set forth in section 18 of BUS Terms of Service, they must be disallowed.

87.     Nevertheless, the BUS Terms of Service section 2.1 specifically exclude from eligibility for a BUS account individuals subject to sanctions:

### 2.1. General Requirements
The Services are intended solely for users who are 18 or older and who satisfy the criteria described in these Terms. You represent and warrant that you: (a) are of legal age to form a binding contract (at least 18 years old in the U.S.): (b) have not previously been suspended or removed from using our Services: (c) are not identified as a "Specially Designated National" by the Office of Foreign Assets Control or otherwise subject to U.S. blocking sanctions: (d) are not owned or controlled by a person or entity subject to U.S. blocking sanctions: (e) are not placed on the U.S. Department of Commerce's Denied Persons List: and (f) have full power and authority to agree to these Terms.

88.     As an Iranian citizen subject to the Iranian Sanctions, Mr. Arabpour was not eligible to be a BUS customer since the introduction of such sanctions.

89.     Section 6.4 of the BUS Terms of Service further clarifies ineligibility of Iranian citizens for transactions on the BUS platform:

### 6.4. Prohibited Transfers
You will not attempt or cause an inbound or outbound transfer of Tokens or fiat currency to or from Bittrex where you have reason to know that any person or entity involved in the transfer-whether directly or indirectly-is subject to U.S. economic sanctions restrictions, including but not limited to the following persons or entities: (1) the originator of the transfer, (2) the recipient of the transfer, and/or (3) the Token exchange, hosted wallet service provider, bank, or other financial institution involved in the transfer.

Person or entities may be subject to U.S. economic sanctions restrictions if, for example, they are (1) a resident. citizen, or otherwise located in a jurisdiction that is embargoed by the United States (e.g., Iran, Cuba, North Korea, Syria, and the Crimea region of Ukraine), (2) subject to United States blocking sanctions regardless of whether they are listed on an Office of Foreign Assets Control sanctioned parties list. (3) owned or controlled by a person or entity subject to U.S. blocking sanctions, or (4) placed on the U.S. Department of Commerce's Denied Persons List or Entity List.

90.     As an Iranian citizen who failed to establish his exemption from the Iranian Sanctions, Mr. Arabpour was ineligible for a BUS account or for transfers to or from such accounts, including withdrawals. But he also refused to sign BI Terms of Service to be transitioned to Malta OpCo. Mr. Arabpour cannot now claim damages based on a contract he did not accept and, in any case, he breached by maintaining an account with BUS.

## IV.     The Arabpour Claims Are Not Secured

91.     Mr. Arabpour further asserts that Claims C598-1107, C598-10646, C599-45, C599-10027, C600-105, and C600-10085 are secured. However, Mr. Arabpour does not have lien, and he failed to attach evidence of the perfection of any security interests as required by Bankruptcy Rule 3001(d). Therefore, Claims C598-1107, C598-10646, C599-45, C599-10027, C600-105, and C600-10085 are not secured, nor are any of the other Arabpour Claims.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) allow unsecured Claim C598-1107 in the amount of assets associated with Mr. Arabpour's account (0.00011914 BCH, 0.00011914 BTC, 109,389.6738 DOGE, 4,609.286 SC, 400 XRP, 42.71774955 ZEN) for purposes of allowance and distribution; and (ii) disallow the remainder of the Arabpour Claims.

30971812.1

Date: November 13, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/  Kenneth J. Enos

Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**

30971812.1