## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF EVAN HENGEL IN SUPPORT OF DEBTORS' OBJECTION TO CLAIMS C598-1002, C598-1004, C598-1107, C598-10646, C599-45, C599-46, C599-10027, C600-105, C600-106, AND C600-10085 FILED BY SHAHRIAR ARABPOUR PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007

I, Evan Hengel, Co-Chief Restructuring Officer of the Debtors, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Managing Director at Berkeley Research Group, LLC ("BRG") with over 16 years of experience working in distressed situations and transactions, including several involving crypto firms such as Voyager Digital Holdings, Inc., BlockFi, Inc., SALT Lending, and Genesis Global Holdco, LLC.   I serve as the Co-Chief Restructuring Officer of the Debtors. Accordingly, I am in all respect competent to make this declaration (the "Declaration").

2.      I submit this Declaration in support of the *Debtors' Objection to Claims C598-1002, C598-1004, C598-1107, C598-10646, C599-45, C599-46, C599-10027, C600-105, C600-106, AND C600-10085 Filed by Shahriar Arabpour Pursuant to Section 502 of the Bankruptcy*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. ("BUS") (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

*Code and Bankruptcy Rule 3007* (the "Objection"),[2] dated as of the date hereof and filed contemporaneously herewith.

3.      I am over the age of eighteen and am authorized by the Debtors to submit this Declaration.  All statements in this Declaration are based upon my personal knowledge, my review (or the review of others under my supervision) of (i) business books and records kept by the Debtors in the ordinary course of business; (ii) the relevant proofs of claim; (iii) the Schedules, and/or (iv) the official register of claims filed in these chapter 11 cases.  If called as a witness, I could and would competently testify to the facts set forth in this Declaration.

4.      The Claims were carefully reviewed and analyzed in good faith using due diligence by myself, appropriate personnel of the Debtors, BRG, Omni, Quinn Emanuel Urquhart & Sullivan LLP, and Young Conaway Stargatt & Taylor, LLP.

## MR. ARABPOUR'S HISTORY WITH BITTREX

**I.      Account Opening, Bittrex's Application of the Iranian Sanctions, and Mr. Abbasi's Earlier Attempts to Unblock his Bittrex Account**

1.      Mr. Shahriar Arabpour ("Mr. Arabpour") opened an account with Bittrex, Inc. ("BUS") in or around June 2017.  At the time of the account opening, Mr. Arabpour provided Bittrex with an Iranian address.

2.      In late July 2017, Mr. Arabour completed three withdrawals from his account.

3.      In October 2017, Mr. Arabpour provided Bittrex with a copy of his Iranian passport.

4.      Also in October 2017, Bittrex blocked Mr. Arabpour's account to comply with the Iranian Sanctions.

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

5.      As an international customer, Mr. Arabpour never accepted the terms of service of Bittrex International Inc., which relate to "any services made available by Bittrex, Inc. or Bittrex Malta Ltd. . . . under the name of 'Bittrex International'"  (the "BI Terms of Service").  Thus, Mr. Arabpour was not transitioned to Malta OpCo and remained classified as a BUS customer in spite of being a non-U.S. resident subject to OFAC sanctions.  However, Mr. Arabpour  did not accept the terms of service of BUS either (the "BUS Terms of Service"), adding to the irregularities of his blocked account.  To the best of my knowledge and based on my review of Malta OpCo's books and records, a true and correct copy of the BI Terms of Service is attached hereto as **Exhibit 1**.  To the best of my knowledge and based on my review of BUS's books and records, a true and correct copy of the BUS Terms of Service is attached hereto as **Exhibit 2**.

6.      In June 2023, Mr. Arabpour attempted to comply with KYC requirements by providing documentation purporting that he became a resident of Turkey and should not be subject to OFAC Sanctions. However, his account remained disabled due to incomplete documentation and inconsistencies in the provided documentation.

7.      To reactivate his account, Mr. Arabpour submitted multiple support requests to BUS as well as to Bittrex Global GmbH ("BG"), where he was never a customer.

**II.     The OFAC License, Mr. Arabpour's Failure to Take Advantage of the OFAC License, and Mr. Arabpour's Continued Failure to Comply with Bittrex's Regulatory and Compliance Requirements**

8.      In April 2018, at substantial expense, BUS filed multiple applications with OFAC, seeking licenses to allow Bittrex to distribute funds to customers in various sanctioned countries, including Iran.

9.      In October 2019, eighteen months after filing the applications, Malta OpCo and BUS obtained a license from OFAC permitting a release of assets to customers in Iran (the "OFAC

License"). The OFAC License would expire on March 31, 2020 (the "OFAC Deadline"). Starting

in November 2019, Malta OpCo and BUS informed all relevant Iran customers—including Mr.

Arabpour—that they could withdraw cryptocurrency in their blocked accounts.

10.      The license process and Bittrex's plan to permit customers in Iran to withdraw

assets was publicly reported by several major crypto-related websites, including CoinDesk and

Cointelegraph.[3]

11.      The Debtors' records show that Mr. Arabpour did not attempt any activity in his

account during the withdrawal period authorized by the license. It was not until June 2020, that he

inquired about the then-expired opportunity to withdraw assets pursuant to the March 3, 2020,

email from Bittrex advising of the OFAC Deadline and urging him to withdraw assets from the

Bittrex platform.   Bittrex customer support informed Mr. Arabpour that the deadline for

withdrawals had passed and the account must remain suspended pending OFAC Sanctions.

12.      The OFAC License expired, and Mr. Arabpour's account remained blocked by the

Iranian Sanctions.

5.      In November 2022, Mr. Arabpour represented to the customer support that he was

a resident of Turkey and the OFAC Sanctions should not apply to him, but he did not complete the

verification process establishing that he no longer resided in Iran.

## III.    Mr. Arabpour Does Not Withdraw The Assets In His BUS Account Pursuant To The Customer Withdrawal Order

13.      On June 13, 2023, the Court entered an order authorizing customers to withdraw

their deposits of cryptocurrencies and fiat currencies as a continuation of the Debtors' orderly wind

down process (the "Customer Withdrawal Order")  [D.I. 128.].

---

[3]     *See* https://www.coindesk.com/markets/2019/11/11/bittrex-will-release-frozen-crypto-to-former-users-in-sanctioned-regimes/; https://cointelegraph.com/public/index.php/news/bittrex-returning-crypto-funds-to-iranian-users-after-2-year-freeze/amp.

14.     On June 16, 2023, Mr. Arabpour submitted a picture of a Turkish driver's license and maintained that he should not be subject to OFAC sanctions due to his residence in Turkey. Mr. Arabpour's BUS account remains disabled due to OFAC sanctions as well as irregularities with his account, such as lack of acceptance of terms of service.

15.     As of the Petition Date, the following types of cryptocurrencies remained in Mr. Arabpour's account:  0.00011914 BCH, 0.00011914 BTC, 109,389.6738 DOGE, 4,609.286 SC, 400 XRP,  42.71774955 ZEN.

16.     There is no fiat balance associated with Mr. Arabpour's account.

17.     The balances associated with Mr. Arabpour's account total approximately $8,473.09 worth of active cryptocurrency tokens as of the petition date.

18.     The address provided by Mr. Arabpour on his proofs of claims suggests that he is currently a resident of Turkey, but Mr. Arabpour did not complete verification to prove that he should not be treated as an Iranian citizen ordinarily resident in Iran or otherwise be exempt from the Iranian Sanctions.

19.     Iranian citizens ordinarily resident in Iran are still covered by OFAC Sanctions. Accordingly, the account of Mr. Arabpour  remains disabled on the basis of Iranian Sanctions.

6.     The Debtors cannot lawfully permit withdrawals from accounts subject to Iranian Sanctions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 13th day of November, 2023.

*/s/ Evan Hengel*
Evan Hengel
Co-Chief Restructuring Officer