### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

**DEBTORS' OBJECTION TO CLAIMS C598-1001, C598-1006, C598-1110, C598-10651, C599-47, C599-48, C599-49, C599-56, C600-107, C600-109, AND C600-120 FILED BY AMIRALI MOMENZADEH PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007**

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to the following claims filed by AmirAli Momenzadeh ("Mr. Momenzadeh"): Claim No. C598-1001, Claim No. C598-1006, Claim No. C598-1110, Claim No. C598-10651, Claim No. C599-47, Claim No. C599-48, Claim No. C599-49, Claim No. C599-56, Claim No. C600-107, Claim No. C600-109, and Claim No. C600-120 (collectively, the "Momenzadeh Claims"). The Momenzadeh Claims against the various entities total $2,200,000. However, Mr. Momenzadeh successfully withdrew assets associated with his account in twenty-eight withdrawals between April 25, 2017 and September 14, 2017, and the assets remaining in his account total only $3,067.17 as of the petition date. His exorbitant claims flow from his assertion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

that his cryptocurrency lost value and that he suffered other consequential damages because he was unable to withdraw his assets from Bittrex between 2017 and the present.  While it is correct that he was unable to withdraw those assets, this prohibition was based on comprehensive sanctions of the U.S. Office of Foreign Assets Control ("OFAC") targeting Iran (the "Iranian Sanctions"), and had Bittrex permitted him to withdraw those assets, Bittrex would have been violating federal law.  Moreover, Mr. Momenzadeh fails to mention that when Bittrex obtained a license from OFAC in late 2019—of which Mr. Momenzadeh was aware—which permitted withdrawals by Iranians for a period of approximately five months, he failed to take advantage of that license period.  Instead, he now claims that "this did not help the claimant as they were still unable to access their information and assets despite the permission issued by OFAC."  Mr. Momenzadeh was also unable to successfully establish that he was subsequently a resident of Turkey.

Accordingly, the Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, (i) allowing Claim C600-107 against Bittrex Malta Ltd. ("Malta OpCo") in the amount of the following assets associated with Mr. Momenzadeh's account as of the Petition Date (0.1104 Bitcoin (BTC)) as an unsecured claim; and (ii) disallowing the remainder of the Momenzadeh Claims.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is

later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

**BACKGROUND**

I.      **The Bankruptcy Cases and Bar Date**

4.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5.      Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration" or "Hengel Declaration").

6.      Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. [D.I. 107.]

7.      On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

3

8.      On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS; D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

9.      In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers.  Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served notice of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form.  [D.I. 201.]  The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023.  [D.I. 187.]

10.     On September 28, 2023, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; (IV) Shortening the Notice Period for the Hearing to Consider Confirmation of the Plan; and (V) Granting Related Relief* [D.I. 389].

11.     On October 31, 2023, the Court entered the *Order Confirming the Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* [D.I. 517].

II.     **The Momenzadeh Claims**

    A.     **Mr. Momenzadeh's History With the Debtors**

        i.     **Account Opening, Bittrex's Application of the Iranian Sanctions, and Mr. Momenzadeh's Earlier Attempts to Unblock his Bittrex Account**

12.     Mr. Momenzadeh opened an account with Bittrex, Inc. ("BUS") in or around January 2017.  At the time of the account opening, Mr. Momenzadeh provided Bittrex with an Iranian address.  In April 2017, BUS informed Mr. Momenzadeh that as an Iranian citizen, he needed to complete enhanced verification to be able to trade on the BUS platform. In June 2017, Mr. Momenzadeh provided Bittrex with a copy of his Iranian passport, but did not complete enhanced verification.

13.     Between April 25, 2017 and September 14, 2017, Mr. Momenzadeh successfully completed twenty-eight withdrawals of assets associated with his account.

14.     In October 2017, Bittrex blocked Mr. Momenzadeh's account to comply with the Iranian Sanctions.

15.     On November 12, 2018, Mr. Momenzadeh accepted the terms of service of Bittrex International Inc. (the "Terms of Service"), which relate to "any services made available by Bittrex, Inc. or Bittrex Malta Ltd. . . . under the name of 'Bittrex International.'"  Being a non-U.S. resident, Mr. Momenzadeh was transitioned to Bittrex Malta Ltd. ("Malta Opco"), and became a Malta OpCo customer.

16.     Five years after his account was blocked to comply with the Iranian Sanctions, in September 2022, Mr. Momenzadeh attempted to comply with KYC requirements by providing documentation purporting that he became a resident of Turkey. However, his account remained disabled due to incomplete documentation and inconsistencies in the provided documentation such

30971862.1

that it was not possible for Bittrex to determine that Mr. Momenzadeh was no longer ordinarily resident in Iran.

17.    To reactivate his account, Mr. Momenzadeh submitted multiple support requests to BUS, where he was no longer a customer, and to Bittrex Global GmbH ("BG"), where he was never a customer.

### ii.    The OFAC License, Mr. Momenzadeh's Failure to Take Advantage of the OFAC License, and Mr. Momenzadeh's Continued Failure to Comply with Bittrex's Regulatory and Compliance Requirements

18.    In April 2018, at substantial expense, BUS filed multiple applications with OFAC, seeking licenses to allow Bittrex to distribute funds to customers in various sanctioned countries, including Iran.

19.    In October 2019, eighteen months after filing the applications, Malta OpCo and BUS obtained a license from OFAC permitting a release of assets to customers in Iran (the "OFAC License").  The OFAC License would expire on March 31, 2020 (the "OFAC Deadline").  Starting in November 2019, Malta OpCo informed all relevant Iran customers—including Mr. Momenzadeh—that they could withdraw cryptocurrency in their blocked accounts.  The license process, and Bittrex's plan to permit customers in Iran to withdraw assets was publicly reported by several major crypto-related websites, including CoinDesk and Cointelegraph.[2]  At that time, the Debtors' records show that Mr. Momenzadeh did not attempt to submit the customer withdrawal application distributed by Bittrex customer support.

20.    The OFAC License expired, and Mr. Momenzadeh's account remained blocked by the Iranian Sanctions.

---

[2]    *See*        https://www.coindesk.com/markets/2019/11/11/bittrex-will-release-frozen-crypto-to-former-users-in-sanctioned-regimes/; https://cointelegraph.com/public/index.php/news/bittrex-returning-crypto-funds-to-iranian-users-after-2-year-freeze/amp.

30971862.1

### iii.    Mr. Momenzadeh Does Not Withdraw The Assets In His Malta Opco Account Pursuant To The Customer Withdrawal Order

21.    On June 13, 2023, the Court entered an order authorizing customers to withdraw their deposits of cryptocurrencies and fiat currencies as a continuation of the Debtors' orderly wind down process (the "Customer Withdrawal Order")  [D.I. 128.].

22.    Both before and following the Court's entry of the Customer Withdrawal Order, Mr. Momenzadeh submitted multiple support tickets inquiring about withdrawals from Malta OpCo.  But he failed to comply with identity verification requirements and his account remains disabled.

23.    As of the Petition Date, the following types of cryptocurrencies remained in Mr. Momenzadeh's account (the "Remaining Crypto"):  0.1104 Bitcoin (BTC).  There is no fiat balance associated with his account.  The other cryptocurrencies listed on Mr. Momenzadeh's proofs of claims—143.479 Nubits (NBT) and 32.845 Swarm City (SWT)—have been delisted, removed from the Bittrex platform, are valued at 0.00, and are not recoverable (the "Delisted Crypto").  The balances associated with Mr. Momenzadeh's account total approximately $3,067.17 worth of the Remaining Crypto as of the petition date.

24.    The address provided by Mr. Momenzadeh on his proofs of claims suggests that he is currently a resident of Turkey either in Bursa or in Istanbul, but Mr. Momenzadeh did not complete verification to prove that he should not be treated as an Iranian citizen or otherwise be exempt from the Iranian Sanctions.

25.    Iranian citizens are still covered by OFAC orders.  Accordingly, the account of Mr. Momenzadeh  remains disabled on the basis of Iranian Sanctions.

26.    The Debtors cannot lawfully permit withdrawals from accounts subject to Iranian Sanctions.

30971862.1

B.      **The Momenzadeh Claims**

i.      **Claim C598-1001 (the General Proof of Claim)**

27.      Mr. Momenzadeh filed Claim C598-1001 on August 30, 2023.  Mr. Momenzadeh selected Bittrex, Inc. (BUS) as the debtor.  Mr. Momenzadeh lists a claim of $200,000.00, specifying that the basis of his claim is described in an attachment.  There is no attachment included with that claim.

28.      Mr. Momenzadeh lists on Claim C598-1001 a Turkish address in the city of Bursa.

29.      Mr. Momenzadeh did not assert secured claim status, but he checked the box for fixed interest rate; however, he did not include the actual interest rate.

30.      Claim C598-1001 is not signed—it only includes typed name "AmirAli Momenzadeh."

ii.      **Claim C598-1006 (the General Proof of Claim)**

31.      Claim C598-1006 is substantially identical to Claim C598-1001 described above, except now Mr. Momenzadeh included the attachment titled "Addendum to Proof of Claim of Mr. AmirAli Momenzadeh Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C598-1006" or "Addendum 1").

32.      Claim C598-1006 lacks a signature—it only includes typed name "AmirAli Momenzadeh."

**1.  Claim C598-1006: Addendum  1**

a.  In the Addendum C598-1006, Mr. Momenzadeh claims that "Claimant resides in Istanbul, Turkey, and is a citizen of Iran." However, his proof of claim lists an address in Bursa, which is a city in the Asian part of Turkey about 96 miles south from Istanbul.

30971862.1

b.  As the basis of the claim, Mr. Momenzadeh states that  he "has experienced a substantial loss in their crypto coin fortune, now only a fraction of its previous value," where "[his] investments have dropped by a factor of 10."

c.  Mr. Momenzadeh asserts that as a result, he "is taking legal action against Bittrex for the lost coins and resulting damages." The theories of damages are a kitchen sink of "various legal grounds, including fraud, breach of contract, breach of fiduciary duty, conversion, tort, civil conspiracy, emotional distress, personal injury, misrepresentation, breach of the implied duty of good faith and fair dealing, unjust enrichment, negligence, and lost profits."  No factual substantiation other than decrease in value of cryptocurrencies is provided to support these legal theories.

d.  Mr. Momenzadeh further asserts that "[a]s a result, all debtors will be held jointly and severally liable for the full amount of the claimant's claims." Again, no substantiation is provided for joint and several liability among the four Debtors.

e.  Mr. Momenzadeh also asserts that "[s]ince Chapter 11 petition, the Debtors are legally liable to the Claimant for damages surpassing 10 Bitcoins" and that he "is currently assessing the extent and nature of damages caused by Bittrex's actions, including compensatory, general, punitive, and other damages, along with interest, costs, and attorneys' fees as permitted by law."

f.  Mr. Momenzadeh further states that he reserves rights to modify the proof of claim, including "modifying the Claimant's identity," and reserves various rights to assert "claims under common law against the Debtors and their affiliates, associates, or parent companies, as well as their directors, officers, and employees."

30971862.1

g. Additionally, Mr. Momenzadeh asserts that "[r]elief may also be sought under relevant sections of the Bankruptcy Code (362, 502, and/or 507)."

h. Mr. Momenzadeh states in the Addendum C598-1006 that he attached "the documents summarizing this claim," but no documents are included with Claim C598-1006 other than (i) Form 410 General Proof of Claim, and (ii) Addendum 1.

### iii.   Claim C598-1110 (General Proof of Claim and Customer Proof of Claim)

33.    Mr. Momenzadeh filed Claim C598-1110 on August 31, 2023 against BUS.  Claim C598-1110 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, and (iii) "Addendum to Proof of Claim of Mr. AmirAli Momenzadeh Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C598-1110" or "Addendum 2").

### 1.   Claim C598-1110: General Proof of Claim

34.    Mr. Momenzadeh asserts $100,000.00 with the basis stated as "see attached."

35.    Mr. Momenzadeh asserts that Claim C598-1110 is secured by other property, specified as "see attached". The basis of perfection of security is also stated as "see attached."

36.    M. Momenzadeh asserts fixed rate of interest, but the actual rate of interest is not specified.

37.    Claim C598-1110 is not signed—it only includes typed name "AmirAli Momenzadeh."

### 2.   Claim C598-1110: Customer Proof of Claim

38.    The Customer Proof of Claim form within Claim C598-1110 does not specify against which Debtor it is asserted.

39.    Mr. Momenzadeh asserts claim for: (i) $100,000.00 in fiat currency, and the following cryptocurrencies: (ii) 0.1104 Bitcoin (BTC), (iii) 143.479 Nubits (NBT), and (iv) 32.845 Swarm City (SWT).

40.    Mr. Momenzadeh asserts $100,000.00 with the basis stated as "see attached."

41.    Mr. Momenzadeh does not assert on this proof of claim that Claim C598-1110 is secured, but checks the box that it is secured by other property, specified as "see attached". The basis of perfection of security is also stated as "see attached."

42.    Mr. Momenzadeh asserts fixed rate of interest, but the actual rate of interest is not specified.

43.    The Customer Proof of Claim within Claim C598-1110 is not signed or dated.

### 3.  Claim C598-1110: Addendum 2

44.    Addendum 2 is substantially similar to Addendum 1, except that (a) the background section adds paragraphs to specifically address the Iranian Sanctions,[3] and (b) Mr. Momenzadeh included supporting documentation.

### a.  The Addendum  C598-1110

a.  In his Addendum C598-1110, Mr. Momenzadeh now asserts that "[p]rior to October 2017, Bittrex LLC, later [BUS] knowingly accepted customers from countries and jurisdictions that were under OFAC sanctions."

b.  He further states that "in October 2017, Bittrex US disabled these accounts and prevented investors from accessing their digital assets, citing an OFAC order as the reason."

---

[3]   The Addendum C598-1110 is a verbatim copy of the addenda attached to the proofs of claims of at least two other Iranian claimants subject to Iranian Sanctions, with only the name of the claimant changing.

30971862.1

c.  Mr. Momenzadeh admits that he "is one of the affected individuals who lost access to their account information and assets due to Bittrex's actions."

d.  He adds that, "[a]s a result, [he is] unable to determine which coins are in the possession of Bittrex or which entity holds them."

e.  Mr. Momenzadeh further asserts that "[i]n 2020, Bittrex US claimed to have obtained an OFAC permit to release the frozen assets," but "this did not help the claimant as they were still unable to access their information and assets despite the permission issued by OFAC."

f.  Mr. Momenzadeh further claims that "Bittrex support was uncooperative during this time, and the claimant's support tickets consistently went unresolved."

45.    Furthermore, in contrast to Addendum C598-1110,  Mr. Momenzadeh asserts here damages of five (5) Bitcoins (BTC).

46.    He further states that "[i]t is unclear which debtors possess the assets; therefore, all debtors are jointly and severally liable for the claimant's full claims."

## b.  The Supporting Documentation

47.     Attached to Addendum  C598-1110 is what appears to be a printout of transaction records for various customers with differing UUIDs and for different cryptocurrencies. The printout is not titled or contextualized in any way.

48.    Further attached to Addendum  C598-1110 is what appears to be a screenshot of an unnamed Bittrex Global account with no balance.

49.    Further attached to Addendum  C598-1110 is what appears to be a support ticket ("ZenDesk Ticket") No. 47995 dated "6 years ago" with the topic "Iranian users," where "Amir Ali Momenzadeh" inquires whether trading from Iran would be a problem. The purported ZenDesk

response states: "You can trade but please make sure to perform an enhanced verification." The Bittrex records show that Mr. Momenzadeh did not complete the requested enhanced verification.

### iv. Claim C598-11651 (General Proof of Claim and Customer Proof of Claim)

50.     Claim C598-11651 appears to be an exact duplicate of Claim C598-1110.

### v. Claim C599-47 (General Proof of Claim and Customer Proof of Claim)

51.     On August 31, 2023, Mr. Momenzadeh filed Claim C599-47 against Bittrex Malta Holdings Ltd. ("Malta Holdings") as the debtor.[4]  Claim C599-47 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, and (iii) "Addendum to Proof of Claim of Mr. AmirAli Momenzadeh Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C599-47").

52.     The contents of Claim C599-47 are nearly the same as of Claim C598-1110, except for the Debtor and that on the General Proof of Claim Mr. Momenzadeh lists here a claim of $1,000,000 rather than $100,000, also specifying that the basis of his claim is described in an attachment. The attachment is Addendum C599-47, which appears to be an exact copy of Addendum C598-1110, i.e., Addendum 2, including the supporting documentation.  Again, Addendum C599-47 lists damages "exceeding 5 Bitcoins." The Customer Proof of Claim remains unchanged from Claim C598-1110, still listing $100,000 in fiat and the same amounts of the same cryptocurrencies, and still remining unsigned and undated.

### vi. Claim C599-48 (General Proof of Claim and Customer Proof of Claim)

53.     On August 31, 2023, Mr. Momenzadeh filed Claim C599-48 against Malta

---

[4]   Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

30971862.1

Holdings as the debtor.  Claim C599-48 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, and (iii) Addendum 2.

54.     The only difference between Claim C599-48 and Claim C599-47 is the amount of claim on the General Proof of Claim: it is listed again at $100,000 rather than $1,000,000, also specifying that the basis of his claim is described in an attachment (which remains unchanged). Consequently, Claim C599-48 is a cross-debtor duplicate of Claim C598-1110.

### vii.     Claim C599-49 (General Proof of Claim)

55.     On August 31, 2023, Mr. Momenzadeh filed Claim C599-49 against Malta Holdings as the debtor.  Claim C599-49 consists of: (1) the General Proof of Claim; and (ii) "Addendum to Proof of Claim of Mr. AmirAli Momenzadeh Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C599-49").

56.     The General Proof of Claim asserts an unsecured claim of $100,000.

57.     The Addendum C599-49 is identical to Addendum C599-48 and is Addendum 2.

### viii.     Claim C599-56 (General Proof of Claim and Customer Proof of Claim)

58.     On August 31, 2023, Mr. Momenzadeh filed Claim C599-56 against Bittrex Malta Malta Holdings as the debtor.  Claim C599-56 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, and (iii) Addendum 2.

59.     Claim C599-56 appears to be an exact duplicate of Claim C599-48.

### ix.     Claim C600-107 (General Proof of Claim and Customer Proof of Claim)

60.     On August 31, 2023, Mr. Momenzadeh filed Claim C600-107 against Bittrex Malta Ltd. ("Malta OpCo") as the debtor.  Claim C600-107 consists of: (1) the General Proof of Claim;

(ii) the Customer Proof of Claim, and (iii) Addendum 2.

61.     Except for the different debtor, Claim C600-107 appears to be a cross-debtor duplicate of Claim C599-48.

### x.     Claim C600-109 (General Proof of Claim)

62.     On August 31, 2023, Mr. Momenzadeh filed Claim C600-107 against Malta OpCo as the debtor.  Claim C600-107 consists of: (1) the General Proof of Claim; and (ii) Addendum 2.

63.     Except for the different debtor, Claim C600-107 appears to be a cross-debtor duplicate of Claim C599-49.

### xi.     Claim C600-120 (General Proof of Claim and Customer Proof of Claim)

64.     On August 31, 2023, Mr. Momenzadeh filed Claim C600-120 against Malta OpCo as the debtor.  Claim C600-120 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, and (iii) Addendum 2.

65.     Claim C600-120 appears to be a cross-debtor duplicate of Claim C599-48.

66.     Mr. Momenzadeh's claims are summarized in the table below:

| Claim No. | Debtor | General Proof of Claim? | Amount of Fiat | Secured? | Basis of Secured Status | Customer Proof of Claim? | Amount of Fiat 2 | Amount of Crypto | Addendum? | Addendum damages | Supporting Documentation? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C598-1001 | Bittrex, Inc. | Yes | $200,000 | No | N/A | No | N/A | N/A | No | N/A | No |
| C598-1006 | Bittrex, Inc. | Yes | $200,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | No |
| C598-1110 | Bittrex, Inc. | Yes | $100,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 143.479, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |
| C598-10651 | Bittrex, Inc. | Yes | $100,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 143.479, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |
| C599-47 | Bittrex Malta Holdings Ltd. | Yes | $1,000,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 143.479, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |

15

| Claim No. | Debtor | General Proof of Claim? | Amount of Fiat | Secured? | Basis of Secured Status | Customer Proof of Claim? | Amount of Fiat 2 | Amount of Crypto | Addendum? | Addendum damages | Supporting Documentation? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C599-48 | Bittrex Malta Holdings Ltd. | Yes | $100,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 143.479, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |
| C599-49 | Bittrex Malta Holdings Ltd. | Yes | $100,000 | No | N/A | No | N/A | N/A | Yes | 5 Bitcoins | Yes |
| C599-56 | Bittrex Malta Holdings Ltd. | Yes | $100,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 143.479, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |
| C600-107 | Bittrex Malta Ltd. | Yes | $100,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 1434.79, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |
| C600-109 | Bittrex Malta Ltd. | Yes | $100,000 | No | N/A | No | N/A | N/A | Yes | 5 Bitcoins | Yes |
| C600-120 | Bittrex Malta Ltd. | Yes | $100,000 | Yes | See attached | Yes | $100,000 | Bitcoin (BTC) - 0.1104, Nubits (NBT) - 143.479, Swarm City (SWT) - 32.845 | Yes | 5 Bitcoins | Yes |

## **OBJECTIONS**

## I.    **The Momenzadeh Claims Are Not Properly Executed And Therefore Not Prima Facie Valid**

67.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim under Section 502(a) of the Bankruptcy Code. However, a claimant's proof of claim is entitled to the presumption of *prima facie* validity only until the debtor effectively rebuts the presumption of validity. *In re TK Holdings, Inc.*, 2021 WL 2949344, at *4 (D. Del. July 14, 2021). The burden of proof then shifts to the creditor. *Id.*

68.    To be properly executed, a proof of claim must be in writing, substantially conform

16

to the Official Form, be executed by the creditor or the creditors' authorized agent, and if the claim is based on a writing, it must attach the writing.  Rule 3001; *In re Cluff*, 313 B.R. 323, 332 (Bankr. D. Utah 2004).  One of "the most serious omission of compliance is the lack of any signature certifying the claim as true, accurate and correct as required by Official Form 10."  *In re Avery*, No. 15-30074, 2015 WL 4498181, at *2 (Bankr. N.D. Ohio July 22, 2015).[5]

69.     Here, Mr. Momenzadeh did not sign his Claims.  He merely typed his name on the General Proofs of Claims and did not provide any form of signature or dated attestation on the Customer Proofs of Claims. Therefore, Mr. Momenzadeh failed to properly execute his claims. Accordingly, the Momenzadeh Claims are not prima facie valid.

## II. Claims C598-1001 , C598-10651, C599-56, C600-120,  C598-1110, C599-48, and C599-49 Are Duplicative

70.     Mr. Momenzadeh filed several duplicate claims:

a.  Claim C598-1001 duplicates Claim C598-1006;

b.  Claim C598-10651 duplicates Claim C598-1110;

c.  Claim C599-56 duplicates Claim C599-48;

d.  Claim C600-120 duplicates Claim C600-107 (together, "Duplicate Claims").

71.     Mr. Momenzadeh also filed several cross-debtor duplicate claims asserting the same amount, type, and basis of claim against different debtors:

a.  Claims C598-1110 and C599-48 are cross-debtor duplicates of Claim C600-107.

---

[5]     Footnote 1 in *In re Aveni* states: "The court in *In re Nittany Enterprises*, 502 B.R. 447, 454 (Bankr.W.D.Va.2012), states that "[a] signature on a proof of claim is not required by either the Bankruptcy Code or the Bankruptcy Rules." This court disagrees with this statement, as it is hard to interpret Rule 3001(b)(through use of the words "shall be executed by the creditor") and Rule 9011(a)(through use of the words "shall be signed") as not requiring a signature by somebody." 2015 WL 4498181, at *2 n.1.

      b.   Claims C599-49 is a cross-debtor duplicate of C600-109 (together, "Cross-Debtor Duplicate Claims").

72.     Regardless of Mr. Momenzadeh's reasons for filing the Duplicate Claims and Cross-Debtor Duplicate Claims, any failure to disallow them will result in Mr. Momenzadeh potentially receiving an unwarranted double and multiple recovery against the Debtors' estate, to the detriment of other creditors in the Chapter 11 Case.  Accordingly, the Debtor objects to the Duplicate Claims and Cross-Debtor Duplicate Claims and requests entry of the Order disallowing and expunging the Duplicate Claims and Cross-Debtor Duplicate Claims.

73.     The Debtors' Plan provides for a single recovery to each customer and provides for payment in full of customer claims before any other pre-petition creditors are paid.  Even if Mr. Momenzadeh could prove claims against multiple Debtors, Mr. Momenzadeh cannot receive more than one recovery of his claim, if any survive this Objection.

### III.    Momenzadeh Claims Should Be Disallowed Pursuant to Section 502(b)(1), Except for Claim C600-107 limited to the Remaining Crypto that Is in the Account

74.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

75.     Here—except for Claim C600-107 against Malta OpCo and limited to the Remaining Crypto that is still in his account—Momenzadeh Claims should be disallowed under section 502(b)(1) for the following reasons.

18

76.    <u>First,</u>  the amount of fiat currency submitted on Mr. Momenzadeh's Customer Proof of Claim does not match the balance associated with Mr. Momenzadeh's account because his fiat balance is zero.  Mr. Momenzadeh knowingly and falsely included fiat currency in the customer proofs of claims even though he did not hold $100,000 in fiat currency in his account on the Bittrex platform.

77.    <u>Second,</u> as of the Petition Date, only the following Remaining Crypto remained in Mr. Momenzadeh's account:  0.1104 Bitcoin (BTC).  The Debtors records show no fiat balance associated with his account.  The other cryptocurrencies listed on Mr. Momenzadeh's proofs of claims—143.479 Nubits (NBT) and 32.845 Swarm City (SWT)—have been delisted, removed from the Bittrex platform, are valued at 0.00, and therefore are not recoverable (the "Delisted Crypto") .  The balances associated with Mr. Momenzadeh's account total approximately $3,067.17 worth of the Remaining Crypto as of the petition date.

78.    Mr. Momenzadeh assumed the risk of delisting the Delisted Crypto by accepting the Terms of Service of Bittrex International that disclosed the risk that Bittrex may stop supporting certain services or tokens.[6]

---

[6]    Section 4 of the Terms of Service of Bittrex International states: "Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same. … **You may be unable to withdraw Tokens prior to Bittrex ceasing to support transfer of any such Tokens, resulting in the loss of any such Tokens remaining in your Bittrex Account**.  (Emphasis added.)  Any Token may decrease in value or lose all of its value due to various factors including discovery of wrongful conduct, market manipulation, changes to Token Properties or perceived value of Token Properties, Attacks, suspension or cessation of support for a Token by Bittrex or other exchanges or service providers, and other factors outside the control of Bittrex.  Any Token may decrease in value or lose all of its value due to legislative or regulatory activity, or other government action. … The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you. You hereby assume, and agree that Bittrex will have no responsibility or liability for, any such risks. **You hereby irrevocably waive, release and discharge any and all claims, whether known or unknown to you, against Bittrex, Inc., Bittrex Malta, each of their respective Affiliates and their respective shareholders, members, directors, officers, employees, agents and representatives related to any of the risks set forth herein**." (Emphasis as in the original text.)

79.    <u>Third</u>, for the Remaining Crypto that Mr. Momenzadeh has not yet withdrawn, the only relevant debtor is Malta OpCo—not BUS or Malta Holdings.

80.    <u>Fourth</u>, Mr. Momenzadeh's inability to withdraw the assets in the account from October 2017 until now is not imputable to the Debtors, including because (i) Debtors were required to comply with the Iranian Sanctions; (ii) under both KYC and Iranian Sanctions' perspective, Debtors justifiably refused to permit withdrawal based on incomplete and suspicious documentation he provided, including inconsistent addresses on the proofs of claims; and (iii) Mr. Momenzadeh repeatedly failed to take appropriate actions to comply with Debtors' regulatory and compliance requirements.

81.    In particular, Mr. Momenzadeh failed to take advantage of the OFAC License, despite Bittrex's efforts to facilitate the withdrawal of his assets from the account.  Beginning in November 2019, Bittrex informed Mr. Momenzadeh that he could withdraw the assets from his blocked account, but Mr. Momenzadeh did not submit the customer withdrawal application and remained inactive until September 2022, when the OFAC License long expired.

82.    <u>Fifth</u>, under the Terms of Service to which Mr. Momenzadeh agreed, Bittrex was contractually entitled to block Mr. Momenzadeh's account in light of the OFAC Sanctions.[7]  Also,

---

[7]    Specifically, section 2.2 "Restricted Locations" of the Terms of Service provides: "You may not use the Services if you are located in, or a citizen or resident of the United States. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction that is embargoed by the United States, or if you are on any trade or economic sanctions lists, such as the United Nations Security Council Sanctions List, or if you are restricted or prohibited from engaging in any type of trading by the European Union, Hong Kong Monetary Authority, Hong Kong Customs and Excise Department, Office of Foreign Asset Control or any other administrative law enforcement agencies. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction where your use of the Services would be illegal or otherwise violate any applicable law. You represent and warrant that you are not a citizen or resident of any such jurisdiction and that you will not use any Services while located in any such jurisdiction, and that you are not on any trade or economic sanctions list. You also may not use the Services if you are located in, or a citizen or resident of, any other jurisdiction where Bittrex has determined, at its discretion, to prohibit use of the Services. **Bittrex may implement controls to restrict access to the Services from any jurisdiction prohibited pursuant to this Section 2.2.** You will comply with this Section 2.2, even if Bittrex's methods to prevent use of the Services are not effective or can be bypassed." (Emphasis added.)

Section 10.3 of the Terms of Service excludes any liability or damages resulting from any blockage of Mr. Momenzadeh's account pursuant to the Iranian Sanctions (or any other reasons):

> "**Bittrex will not be liable for any losses suffered by you resulting from any modification of any Services or from any suspension or termination of your access to all or a portion of any Services** (whether pursuant to this Section 10 or for any other reason).  If and when **Services resume, you acknowledge that Token valuations and exchange rates may differ significantly from the valuations and rates prior to such event**.  (Emphasis added.)

83.    <u>Sixth</u>, section 4 of the Terms of Service lists several risks—including potential devaluation of account assets, any kind of losses, inability to receive financial benefits available to other customers, and restrictions to the account—that may materialize because of cryptocurrencies becomes defunct/delisted or governmental actions (such the Iranian Sanctions).[8] Mr. Momenzadeh's unproven allegations that his "cryptocurrency fortune has significantly depreciated in value" because his account was frozen falls in the risk categories listed in section 4. Section 4 then disclaims any liability and damages related to such risks:

> You hereby irrevocably waive, release and discharge any and all claims, whether known or unknown to you, against Bittrex, Inc., Bittrex Malta, each of their respective Affiliates and their respective shareholders, members, directors, officers, employees, agents and representatives related to any of the risks set forth herein."

---

Moreover, section 10.2 of the Terms of Service states: "Bittrex may, at its discretion and without liability to you, with or without prior notice and at any time, temporarily suspend or permanently terminate your access to all or a portion of any Services."

[8]    Section 4 of the Terms of Service state: "Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same. . . . You may be unable to withdraw Tokens prior to Bittrex ceasing to support transfer of any such Tokens, resulting in the loss of any such Tokens remaining in your Bittrex Account. Any Token may decrease in value or lose all of its value due to various factors including discovery of wrongful conduct, market manipulation, changes to Token Properties or perceived value of Token Properties, Attacks, suspension or cessation of support for a Token by Bittrex or other exchanges or service providers, and other factors outside the control of Bittrex. Any Token may decrease in value or lose all of its value due to legislative or regulatory activity, or other government action. . . . The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you."

84.    <u>Seventh</u>, section 16 of the Terms of Service generally disclaims liability for incidental, consequential, and punitive damages, as set forth below:

> IN NO EVENT WILL BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH DAMAGES.

85.    Additionally, the Terms of Service limit the Debtors' liability to the amount of fees paid by a customer to  Malta OpCo or BUS in the 12 months preceding the event giving rise to the claim:

> IN NO EVENT WILL THE LIABILITY OF BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX) EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-

MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

86.     Pursuant to section 19 of the Terms of Service:

> With respect to any Tokens that are made available for trading by Bittrex Inc., the interpretation and enforcement of these Terms, and any dispute related to these Terms or the Services, will be governed by and construed and enforced in accordance with the laws of the State of Washington, without regard to conflict of law rules or principles (whether of Washington or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. With respect to any Tokens that are VFAs and that are made available for trading by Bittrex Malta, the interpretation and enforcement of these Terms with respect thereto, and any dispute related to these Terms or the Services with respect thereto, will be governed by and construed and enforced in accordance with the laws of the Republic of Malta, without regard to conflict of law rules or principles (whether of Malta or any other jurisdiction) that would cause the application of the laws of any other jurisdiction.

87.     The choice of law clause contained in the Terms of Service is valid and enforceable. *See*, *e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).   Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms.  *See*, *e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous").  For example, in *Debono Edward Av Dr Noe vs. No Stop Technology Limited* (C49765) – 1049/2010 – First Hall Civil Court, Malta (Apr. 3, 2012), the court confirmed that

Regulation (EC) No 593/2008 on the law applicable to contractual obligations applied as the "supreme law." And Article 3(1) of the said regulation states that "a contract shall be governed by the law chosen by the parties." The clauses in the Terms of Service are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Momenzadeh Claims are for damages beyond the maximum liability set forth in Terms of Service, it must be disallowed..

## IV.  Momenzadeh Claims Are Not Secured

88.     Mr. Momenzadeh further asserts that Claims C598-1110, C598-10651, C599-47, C599-48, C599-49, C599-56, C600-107, C600-109, and C600-120 are secured. However, Mr. Momenzadeh does not have lien, and he failed to attach evidence of the perfection of any security interests as required by Bankruptcy Rule 3001(d). Therefore, Claims C598-1110, C598-10651, C599-47, C599-48, C599-49, C599-56, C600-107, C600-109, and C600-120 are not secured, nor are any of the other Momenzadeh Claims.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court: (i) sustain this Objection; (ii) allow unsecured Claim C600-107 in the amount of assets associated with Mr. Momenzadeh's account (0.1104 Bitcoin (BTC)) for purposes of allowance and distribution; and (iii) disallow the remainder of the Momenzadeh Claims.

30971862.1

Date: November 13, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**

*/s/ Kenneth Enos*

Kenneth Enos (Delaware Bar No. 4544)
Robert S. Brady (Delaware Bar No. 2847)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: kenos@ycst.com
Email: rbrady@ycst.com

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**

Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**

30971862.1