**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |

**DEBTORS' OBJECTION TO CLAIMS C598-981, C598-982, C598-1005, C598-1102, C598-1104, C598-1200, C599-43, C599-44, C599-55, C599-10030, C600-102, C600-104, AND C600-119 FILED BY ADEL ABBASI PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007**

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors in possession (the "Debtors"), through undersigned counsel, hereby file this objection (the "Objection") to the following claims filed by Adel Abbasi ("Mr. Abbasi"): Claim Nos. C598-981, C598-982, C598-1005, C598-1102, C598-1104, C598-1200, C599-43, C599-44, C599-55, C599-10030, C600-102, C600-104, and C600-119 (collectively, the "Abbasi Claims"). The Abbasi Claims against the various entities total $2,600,000.00. However, Mr. Abbasi successfully withdrew assets associated with his account by February 25, 2020, the remaining cryptocurrencies remaining in his account had been delisted and were valued at $0.00, and his account was closed. His exorbitant claims flow from his assertion that his cryptocurrency lost value and that he suffered other consequential damages because he was unable to withdraw his assets from Bittrex between

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

2017 and February 2020.  However, Mr. Abbasi was able to withdraw his assets, and the delay in withdrawal was based on comprehensive sanctions of the U.S. Office of Foreign Assets Control ("OFAC") targeting Iran (the "Iranian Sanctions").  Had Bittrex permitted Mr. Abbasi to withdraw those assets absent compliance with licensing requirements, Bittrex would have been violating federal law.

Moreover, Mr. Abbasi fails to mention that when Bittrex obtained a license from OFAC in late 2019—of which Mr. Abbasi was aware—which permitted withdrawals by Iranians for a period of approximately five months, he took advantage of that license period to withdraw the funds remaining in his account.  Instead, he now claims that the OFAC license "did not help the claimant as they were still unable to access their information and assets despite the permission issued by OFAC."  Significantly, Mr. Abbasi made a direct misrepresentation to the United States Bankruptcy Court for the District of Delaware Court (the "Court") in a letter dated August 22, 2023, regarding his awareness of that license process [D.I. 276].

Accordingly, the Debtors request entry of the Proposed Order attached hereto as **Exhibit A** disallowing the Abbasi Claims.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

### I.     The Bankruptcy Cases and Bar Date

4.     On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to continue to operate their businesses and manage their property as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5.     Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration" or "Hengel Declaration").

6.     Shortly thereafter, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim.  [D.I. 107.]

7.     On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

8.     On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS;

30971852.1

D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

9.      In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers.  Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served notice of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form.  [D.I. 201.]  The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, and June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023.  [D.I. 187.]

10.     On September 28, 2023, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; (IV) Shortening the Notice Period for the Hearing to Consider Confirmation of the Plan; and (V) Granting Related Relief* [D.I. 389].

11.     On October 31, 2023, the Court entered the *Order Confirming the Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* [D.I. 517].

## II.    The Abbasi Claims

### A.    Mr. Abbasi's History With the Debtors

#### i.    Account Opening, Bittrex's Application of the Iranian Sanctions, and Mr. Abbasi's Earlier Attempts to Unblock his Bittrex Account

12.    Mr. Abbasi opened an account with Bittrex, Inc. ("BUS") in or around October 2017.  Around the time of the account opening, Mr. Abbasi provided Bittrex with an Iranian address and a copy of an Iranian passport.

13.    In October 2017, Bittrex blocked Mr. Abbasi's account to comply with the Iranian Sanctions.

14.    In or around April 2019—when Mr. Abbasi's account held 24,937.50 LoMo Coins ("LMC")—Bittrex (a) announced to customers holding LMC that it decided to remove from its exchanges this type of cryptocurrency because it did not have any market; and (b) urged the affected customers to withdraw the LMC by June 21, 2019 to prevent the LMC becoming unrecoverable.  Mr. Abbasi did not withdraw the LMC before the deadline.  Mr. Abbasi also assumed the risk of delisting of the LMC by accepting the Terms of Service of Bittrex International that disclosed the risk that Bittrex may stop supporting certain services or tokens.[2]  In any case, at the time Bittrex could not have met a withdrawal request from Mr. Abbasi because of the Iranian Sanctions.[3]

---

[2]    Section 4 of the Terms of Service of Bittrex International states: "Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same. … **You may be unable to withdraw Tokens prior to Bittrex ceasing to support transfer of any such Tokens, resulting in the loss of any such Tokens remaining in your Bittrex Account**. (Emphasis added.) Any Token may decrease in value or lose all of its value due to various factors including discovery of wrongful conduct, market manipulation, changes to Token Properties or perceived value of Token Properties, Attacks, suspension or cessation of support for a Token by Bittrex or other exchanges or service providers, and other factors outside the control of Bittrex. Any Token may decrease in value or lose all of its value due to legislative or regulatory activity, or other government action. … The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you. You hereby assume, and agree that Bittrex will have no responsibility or liability for, any such risks. **You hereby irrevocably waive, release and discharge any and all claims, whether known or unknown to you, against Bittrex, Inc., Bittrex Malta, each of their respective Affiliates and their respective shareholders, members, directors, officers, employees, agents and representatives related to any of the risks set forth herein.**" (Emphasis as in the original text.)

[3]    The Terms of Service of Bittrex International, under section 2.2. "Restricted Locations," provide: "You may not use the Services if you are located in, or a citizen or resident of the United States. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction that is embargoed by

15.    In August 2019, Mr. Abbasi accepted the terms of service of Bittrex International Inc. (the "Terms of Service"), which relate to "any services made available by Bittrex, Inc. or Bittrex Malta Ltd. . . . under the name of 'Bittrex International.'" Being a non-U.S. resident, Mr. Abbasi was transitioned to Bittrex Malta Ltd. ("Malta Opco"), and became a Malta OpCo customer.

16.    To access his closed account, Mr. Abbasi submitted multiple support requests to BUS, where he was no longer a customer, and to Bittrex Global GmbH ("BG"), where he was never a customer.

      **ii.    The OFAC License and Mr. Abbasi's Taking Advantage of the OFAC License**

17.    In April 2018, at substantial expense, BUS filed multiple applications with OFAC, seeking licenses to allow Bittrex to distribute funds to customers in various sanctioned countries, including Iran.

---

the United States, or if you are on any trade or economic sanctions lists, such as the United Nations Security Council Sanctions List, or if you are restricted or prohibited from engaging in any type of trading by the European Union, Hong Kong Monetary Authority, Hong Kong Customs and Excise Department, Office of Foreign Asset Control or any other administrative law enforcement agencies. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction where your use of the Services would be illegal or otherwise violate any applicable law. You represent and warrant that you are not a citizen or resident of any such jurisdiction and that you will not use any Services while located in any such jurisdiction, and that you are not on any trade or economic sanctions list. You also may not use the Services if you are located in, or a citizen or resident of, any other jurisdiction where Bittrex has determined, at its discretion, to prohibit use of the Services. **Bittrex may implement controls to restrict access to the Services from any jurisdiction prohibited pursuant to this Section 2.2.** You will comply with this Section 2.2, even if Bittrex's methods to prevent use of the Services are not effective or can be bypassed." (Emphasis added.)

Moreover, under sections 10.2 and 10.3, the Terms of Service provide: "**Bittrex may, at its discretion and without liability to you, with or without prior notice and at any time, temporarily suspend or permanently terminate your access to all or a portion of any Services**" and "**Bittrex will not be liable for any losses suffered by you resulting from any modification of any Services or from any suspension or termination of your access to all or a portion of any Services (whether pursuant to this Section 10 or for any other reason)**. If and when Services resume, you acknowledge that Token valuations and exchange rates may differ significantly from the valuations and rates prior to such event." (Emphasis added.)

30971852.1

18.     In October 2019, eighteen months after filing the applications, Malta OpCo and BUS obtained a license from OFAC permitting a release of assets to customers in Iran (the "OFAC License"). The OFAC License would expire on March 31, 2020 (the "OFAC Deadline"). Starting in November 2019, Malta OpCo informed all relevant Iran customers—including Mr. Abbasi—that they could withdraw cryptocurrency in their blocked accounts. The license process, and Bittrex's plan to permit customers in Iran to withdraw assets was publicly reported by several major crypto-related websites, including CoinDesk and Cointelegraph.[4]

19.     Thanks to the OFAC License, in February 2020, Mr. Abbasi was able to withdraw all the assets—in the form of Bitcoin ("BTC") and Neo ("NEO") cryptocurrencies—in his account and amounting to 1.25000475 BTC and 79.10953200 NEO ("Withdrawn Crypto"). Following this OFAC-authorized withdrawal, Mr. Abbasi's Bittrex account was closed.

### iii.     Mr. Abbasi's Letters to the Court

20.     Following the beginning of these Chapter 11 Cases, on August 1, 2023, Mr. Abbasi wrote a letter to the Court alleging that he was one of "thousands of Iranians whose accounts on Bittrex were deactivated" and that he has "never been served any notice of Bankruptcy," nor "has Bittrex assigned [him] a UUID." [D.I. 254.] However, Mr. Abbasi mentioned the Bar Date and expressed confusion against which debtor he should be filing a proof of claim, demonstrating that he was familiar with the content of not only the Notice of Commencement of the Chapter 11 Cases, but also the Bar Date Notice.

21.     The August 1, 2023 letter at page 2 includes a reference to invalidated deposits of Ontology ("ONT") and OntologyGas ("ONG"), which were cryptocurrencies freely distributed to

---

[4]     *See*         https://www.coindesk.com/markets/2019/11/11/bittrex-will-release-frozen-crypto-to-former-users-in-sanctioned-regimes/; https://cointelegraph.com/public/index.php/news/bittrex-returning-crypto-funds-to-iranian-users-after-2-year-freeze/amp.

the eligible customers.  But Mr. Abbasi was not an eligible customer, including because of the Iranian Sanctions, and the ONT and ONG amounts have been accordingly invalidated.

22.    On August 9, the Court directed the Debtors to respond to Mr. Abbasi's letter.  [D.I. 255.]

23.    On August 14, 2023, the Debtors responded to Mr. Abbasi's letter through their counsel, rejecting any alleged liability and explaining how Mr. Abbasi's inability to withdraw the assets in the account from October 2017 to February 2020 was due to Debtors' obligations in complying with the Iranian Sanctions.  The letter further explained that regarding the balance of LMC, or around April 2019 Bittrex announced to its customers holding LMC that it decided to remove from its exchanges this type of cryptocurrency because it did not have market and urged the affected customers to withdraw the LMC by June 21, 2019 lest the LMC become unrecoverable.  Mr. Abbasi did not withdraw his LMC by the deadline and the LMC became unrecoverable.

24.    On August 16, 2023,  Mr. Abbasi wrote to the Court another letter, enclosing the response of the Debtors' counsel to his August 1, 2023 letter, and alleging bankruptcy fraud because a separate letter from non-Debtor Bittrex Global listing LMC "has led [him] to believe that [his] assets might have been transferred post the bankruptcy filing" and "some creditors have withdrawn their LoMo Coin but in her letter she said it is unrecoverable." [D.I. 276].  The enclosed August 16, 2023 response to the Debtors' counsel's letter contains several questions and alleges that because the letter from Bittrex Global mentions a balance of LoMo Coin (LMC), Mr. Abbasi's account should not have been closed.  However, the account statement enclosed to Mr. Abbasi's letter  clearly states that the 24,937.5 LMC in his account has a value of 0.00 expressed in BTC,

and all other balances are 0.00.  Therefore, the balance in Mr. Abbasi's account has a value of zero.

25.     Further, Mr. Abbasi alleged in his August 16, 2023 letter to the Debtors that Bittrex received but did not disburse ONG and ONT coins to him because Mr. Abbasi was an ineligible customer.  He also alleged that he never received the Notice of Commencement of the Chapter 11 Case, contrary to the letter of the Debtor's counsel referring to the records of Omni Agent Solutions and the Bittrex bankruptcy website.

26.     Mr. Abbasi also alleged in his August 16, 2023 letter to the Debtors that the OFAC license "never got public nor its terms and conditions."  This statement to the Court, as demonstrated above, was false.  In fact, Malta OpCo sent Mr. Abbasi several emails regarding the OFAC License, the OFAC License was publicized in various online news sources, and Mr. Abbasi actually withdrew his valid cryptocurrency before the OFAC License deadline.

**B.    Abbasi Claims**

**i.    Claim C598-981 (the General Proof of Claim)**

27.     Mr. Abbasi filed Claim C598-981 on August 30, 2023.  Mr. Abbasi selected Bittrex, Inc. (BUS) as the debtor.  Mr. Abbasi lists a claim of $200,000.00, specifying that the basis of his claim is described in an attachment.  There is no attachment included with that claim.

28.     Mr. Abbasi lists on Claim C598-981 a Turkish address in the city of Istanbul.

29.     Mr. Abbasi did not assert secured claim status, but he checked the box for fixed interest rate; however, he did not include the actual interest rate.

30.     Claim C598-981 is not signed—it only includes typed name "Adel Abbasi."

**ii.    Claim C598-982 (the General Proof of Claim)**

31.     Claim C598-982 duplicates Claim C598-981 described above, except now Mr.

Abbasi included attachments consisting of: (a) the letter to the Court dated August 16, 2023 containing (i) Mr. Abbasi's August 16, 2023 response to the August 14, 2023 Debtor's counsel's letter; (ii) the August 14, 2023 Debtor's counsel's letter; (iii) screenshot of Bittrex Global customer support inquiry requesting Mr. Abbasi's deposit, withdrawal, and transaction history, dated "16 days ago"; (iv) screenshot of a Bittrex Global customer support response dated August 1, 2023, stating that "[t]his account currently does not hold a withdrawable balance" and that the "account holdings and transaction history are attached," which is followed by Mr. Abbasi's reply "Could you please guide me how to withdraw my LMC coins from your exchange?"; (v) a screenshot listing account balances of: 24,937.5 LMC with BTC value of 0.00, 0.00 BTC, 0.00 LTC, 0.00 _EAC, 0.00 DOGE, 0.00 VTC, and 0.00 PPC; (v) a screenshot of Bittrex Global support requests list from "16 days ago" and "5 hours ago" regarding "Deposit, withdrawal, and transaction history" and "Inquiry about ONT and ONG Rewards," respectively; (vi) another screenshot of Bittrex Global support requests list from and "5 hours ago" and "16 days ago" and others ranging from "6 years ago" to "4 years ago" regarding verification, withdrawal and OFAC issues; (vii) what appears to be a Turkish proof of mailing dated August 16, 2023 listing Mr. Abbasi's address; and (viii) proof of mailing by DHL from Mr. Abbasi to the Court dated August 17, 2023 [D.I. 276] (collectively, the "Supporting Documentation 1").

32.    Claim C598-982 is not signed—it only includes typed name "Adel Abbasi."

### iii.    Claim C598-1005 (the General Proof of Claim)

33.    Claim C598-1005 duplicates Claim C598-981 described above, except now Mr. Abbasi included attachment consisting of "Addendum to Proof of Claim of Mr. Adel Abbasi Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C598-1005" or "Addendum 1") and no supporting documentation.

### 1. Claim C598-1005: Addendum 1

a.  In the Addendum C598-1005, Mr. Abbasi claims that "Claimant resides in Istanbul, Turkey, and is a citizen of Iran."

b.  As the basis of the claim, Mr. Abbasi states that  he "has experienced a substantial loss in their crypto coin fortune, now only a fraction of its previous value," where "[his] investments have plummeted by a factor of 10."

c.  Mr. Abbasi asserts that as a result, he "is suing Bittrex for the lost coins and damages caused by their misconduct." The theories of damages are a kitchen sink of "various legal grounds, such as fraud, breach of contract, breach of fiduciary duty, conversion, tort, civil conspiracy, emotional distress, personal injury, misrepresentation, breach of the implied duty of good faith and fair dealing, unjust enrichment, negligence, and lost profits."  Mr. Abbasi provides no factual support for these legal theories.

d.  Mr. Abbasi further asserts that "[c]onsequently, all debtors are jointly and severally liable for the full amount of the claimant's claims." Again, Mr. Abbasi provides no legal or factual support for joint and several liability among the four Debtors.

e.  Mr. Abbasi also asserts that "[s]ince Chapter 11 petition, the Debtors are legally accountable to the Claimant for damages exceeding 10 Bitcoins" and that he "is presently evaluating the extent and nature of damages caused by Bittrex's actions, which encompasses compensatory damages, general damages, punitive damages, and other damages, along with interest, costs, and attorneys' fees as permitted by law."

f.  Mr. Abbasi further states that he reserves rights to modify the proof of claim,

including "modifying the Claimant's identity," and reserves various rights to assert "claims under common law against the Debtors and their affiliates, associates, or parent companies, as well as their directors, officers, and employees."

g. Additionally, Mr. Abbasi asserts that "[r]elief may also be sought under relevant sections of the Bankruptcy Code (362, 502, and/or 507)."

h. Mr. Abbasi states in the Addendum C598-1005 that he attached "the documents summarizing this claim," but he attaches no documents with Claim C598-1005 other than (i) Form 410 General Proof of Claim, and (ii) the Addendum 1.

### iv.    Claim C598-1102 (General Proof of Claim and Customer Proof of Claim)

34.    Mr. Abbasi filed Claim C598-1102 on August 31, 2023 against BUS.  Claim C598-1102 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) "Addendum to Proof of Claim of Mr. Adel Abbasi Against Bittrex, Inc., Bittrex Malta Holdings Ltd., Desolation Holdings LLC, and Bittrex Malta Ltd." (the "Addendum C598-1102" or "Addendum 2"), and (iv) Supporting Documentation 1.

### 1.    Claim C598-1102: General Proof of Claim

35.    Mr. Abbasi asserts $200,000.00 with the basis stated as "see attached."

36.    Mr. Abbasi asserts that Claim C598-1102 is secured by other property, specified as "see attached". The basis of perfection of security is also stated as "see attached."

37.    M. Abbasi asserts fixed rate of interest, but the actual rate of interest is not specified.

38.    Claim C598-1102 is not signed—it only includes typed name "Adel Abbasi."

### 2.    Claim C598-1102: Customer Proof of Claim

39.    The Customer Proof of Claim form within Claim C598-1102 does not specify

30971852.1

against which Debtor it is asserted.

40.    Mr. Abbasi asserts claim for: (i) $200,000.00 in fiat currency, and the following cryptocurrencies: (ii) 0.00000782 Bitcoin (BTC), (iii) 24,937.5 LoMo Coin (LMC), (iii) 79.1096 Neo (NEO), (v) 15,000 Ontology (ONT), and (vi) 15,000 OntologyGas (ONG).

41.    Mr. Abbasi asserts the claim with the basis stated as "see attached."

42.    Mr. Abbasi does not assert on this proof of claim that Claim C598-1102 is secured, but checks the box that it is secured by other property, specified as "see attachment". The basis of perfection of security is also stated as "see attachment."

43.    The Customer Proof of Claim within Claim C598-1102 is not signed or dated.

### 3.  Claim C598-1102: Addendum 2

44.    Addendum 2 is substantially similar to Addendum 1, except that (a) the background section adds paragraphs to specifically address the Iranian Sanctions,[5] and (b) Mr. Abbasi included Supporting Documentation 1.

#### a.  The Addendum  C598-1102 (Addendum 2)

a.    In his Addendum C598-1102, Mr. Abbasi now asserts that "[p]rior to October 2017, Bittrex LLC, later [BUS] knowingly accepted customers from countries and jurisdictions that were under OFAC sanctions."

b.    He further states that "in October 2017, Bittrex US disabled these accounts and prevented investors from accessing their digital assets, citing an OFAC order as the reason."

c.    Mr. Abbasi admits that he "is one of the affected individuals who lost access to

---

[5]    The Addendum C598-1102 is an almost verbatim copy of the addenda attached to the proofs of claims of at least two other Iranian claimants subject to Iranian Sanctions, with only the name of the claimant changing.

their account information and assets due to Bittrex's actions."

d.  He adds that, "[a]s a result, [he is] unable to determine which coins are in the possession of Bittrex or which entity holds them."

e.  Mr. Abbasi further asserts that "[i]n 2020, Bittrex US claimed to have obtained an OFAC permit to release the frozen assets," but "this did not help the claimant as they were still unable to access their information and assets despite the permission issued by OFAC." That latter statement is patently false, because Mr. Abbasi was able to withdraw his active assets under the OFAC License, as explained above.

f.  Mr. Abbasi further claims that "Bittrex support was uncooperative during this time, and the claimant's support tickets consistently went unresolved." That statement is also false, considering that Mr. Abbasi was able to successfully withdraw his active assets and Supporting Documentation 1 shows dates of his exchanges with customer support.

45.    Like in Addendum 1, Mr. Abbasi asserts in Addendum 2 damages of ten (10) Bitcoins (BTC).

46.    He further states that "[i]t is unclear which debtors possess the assets; therefore, all debtors are jointly and severally liable for the claimant's full claims."

**v.    Claim C598-1104 (General Proof of Claim)**

47.    Claim C598-1104 is substantially identical to Claim C598-1005 described above, except now Mr. Abbasi included attachment consisting of Addendum 2 and Supporting

Documentation 1.

### vi.    Claim C598-1200 (General Proof of Claim and Customer Proof of Claim)

48.    Claim C598-1200 duplicates Claim C598-1102.

### vii.    Claim C599-43 (General Proof of Claim and Customer Proof of Claim)

49.    On August 31, 2023, Mr. Abbasi filed Claim C599-43 against Bittrex Malta Holdings Ltd. ("Malta Holdings") as the debtor.[6] Claim C599-43 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) Addendum 2, and (iv) Supporting Documentation 1.

50.    Except for the different debtor, Claim C599-43 duplicates Claim C598-1200.

### viii.    Claim C599-44 (the General Proof of Claim)

51.    On August 31, 2023, Mr. Abbasi filed Claim C599-44 against Malta Holdings as the debtor.[7] Claim C599-44 consists of: (1) the General Proof of Claim; (ii) Addendum 2, and (iii) Supporting Documentation 1.

52.    Except for the different Debtor, Claim C599-44 duplicates Claim C598-1104.

### ix.    Claim C599-55 (General Proof of Claim and Customer Proof of Claim)

53.    On August 31, 2023, Mr. Abbasi filed Claim C599-55 against Malta Holdings as the debtor.[8] Claim C599-55 consists of: (1) the General Proof of Claim; (ii) the Customer Proof

---

[6]    Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

[7]    Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

[8]    Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

30971852.1

of Claim, (iii) Addendum 2, and (iv) Supporting Documentation 1.

54.    Claim C599-55 is a duplicate of Claim C599-43.

**x.    Claim C599-10030 (the General Proof of Claim)**

55.    On August 31, 2023, Mr. Abbasi filed Claim C599-10030 against Malta Holdings as the debtor.[9]  Claim C599-10030 consists of: (1) the General Proof of Claim; (ii) Addendum 2, and (iii) Supporting Documentation 1.

56.    Claim C599-10030 is a duplicate of Claim C599-44.

**xi.    Claim C600-102 (General Proof of Claim and Customer Proof of Claim)**

57.    On August 31, 2023, Mr. Abbasi filed Claim C600-102 against Bittrex Malta Ltd. ("Malta OpCo") as the debtor.  Claim C600-102 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of Claim, (iii) Addendum 2, and (iv) Supporting Documentation 1.

58.    Except for a different debtor, Claim C600-102 is the same as Claim C599-55.

**xii.    Claim C600-104 (the General Proof of Claim)**

59.    On August 31, 2023, Mr. Abbasi filed Claim C600-104 against Malta OpCo as the debtor.  Claim C600-104 consists of: (1) the General Proof of Claim; (ii) Addendum 2, and (iii) Supporting Documentation 1.

60.    Except for a different debtor, Claim C600-104 is a duplicate of Claim C599-10030.

**xiii.    Claim C600-119 (General Proof of Claim and Customer Proof of Claim)**

61.    On August 31, 2023, Mr. Abbasi filed Claim C600-119 against Malta OpCo as the

---

[9]    Malta Holdings only serves as a holding company of Bittrex Malta Ltd. Malta Holdings does not operate a cryptocurrency exchange or otherwise interact with any customers.

debtor.  Claim C600-119 consists of: (1) the General Proof of Claim; (ii) the Customer Proof of

Claim, (iii) Addendum 2, and (iv) Supporting Documentation 1.

      62.    Claim C600-119 is a duplicate of Claim C600-102.

      63.    Mr. Abbasi's claims are summarized in the table below:

| Claim No. | Debtor | General Proof of Claim? | Amount of Fiat | Secured? | Basis of Secured Status | Customer Proof of Claim? | Amount of Fiat 2 | Amount of Crypto | Addendum? | Addendum Damages | Supporting Documentation? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C598-981 | Bittrex, Inc. | Yes | $200,000 | No | N/A | No | N/A | N/A | No | N/A | No |
| C598-982 | Bittrex, Inc. | Yes | $200,000 | No | N/A | No | N/A | N/A | No | N/A | Yes |
| C598-1005 | Bittrex, Inc. | Yes | $200,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | No |
| C598-1102 | Bittrex, Inc. | Yes | $200,000 | Yes | See attachment | Yes | $200,000 | Bitcoin (BTC) - 0.00000782, LoMo Coin (LMC) - 24937.5, Neo (NEO) - 79.1096, Ontology (ONT) - 15000, OntologyGas (ONG) - 15000. | Yes | 10 Bitcoins | Yes |
| C598-1104 | Bittrex, Inc. | Yes | $200,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | Yes |
| C598-1200 | Bittrex, Inc. | Yes | $200,000 | Yes | See attachment | Yes | $200,000 | Bitcoin (BTC) - 0.00000782, LoMo Coin (LMC) - 24937.5, Neo (NEO) - 79.1096, Ontology (ONT) - 15000, OntologyGas (ONG) - 15000. | Yes | 10 Bitcoins | Yes |
| C599-43 | Bittrex Malta Holdings Ltd. | Yes | $200,000 | Yes | See attachment | Yes | $200,000 | Bitcoin (BTC) - 0.00000782, LoMo Coin (LMC) - 24937.5, Neo (NEO) - 79.1096, Ontology (ONT) - 15000, OntologyGas (ONG) - 15000. | Yes | 10 Bitcoins | Yes |
| C599-44 | Bittrex Malta Holdings Ltd. | Yes | $200,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | Yes |
| C599-55 | Bittrex Malta Holdings Ltd. | Yes | $200,000 | Yes | See attachment | Yes | $200,000 | Bitcoin (BTC) - 0.00000782, LoMo Coin (LMC) - 24937.5, Neo (NEO) - 79.1096, Ontology (ONT) - 15000, OntologyGas (ONG) - 15000. | Yes | 10 Bitcoins | Yes |
| C599-10030 | Bittrex Malta Holdings Ltd. | Yes | $200,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | Yes |

30971852.1

| Claim No. | Debtor | General Proof of Claim? | Amount of Fiat | Secured? | Basis of Secured Status | Customer Proof of Claim? | Amount of Fiat 2 | Amount of Crypto | Addendum? | Addendum Damages | Supporting Documentation? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C600-102 | Bittrex Malta Ltd. | Yes | $200,000 | Yes | See attachment | Yes | $200,000 | Bitcoin (BTC) - 0.00000782, LoMo Coin (LMC) - 24937.5, Neo (NEO) - 79.1096, Ontology (ONT) - 15000, OntologyGas (ONG) - 15000. | Yes | 10 Bitcoins | Yes |
| C600-104 | Bittrex Malta Ltd. | Yes | $200,000 | No | N/A | No | N/A | N/A | Yes | 10 Bitcoins | Yes |
| C600-119 | Bittrex Malta Ltd. | Yes | $200,000 | Yes | See attachment | Yes | $200,000 | Bitcoin (BTC) - 0.00000782, LoMo Coin (LMC) - 24937.5, Neo (NEO) - 79.1096, Ontology (ONT) - 15000, OntologyGas (ONG) - 15000. | Yes | 10 Bitcoins | Yes |

## OBJECTIONS

### I.    The Abbasi Claims Are Not Properly Executed And Therefore Not Prima Facie Valid

64.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim under Section 502(a) of the Bankruptcy Code. However, a claimant's proof of claim is entitled to the presumption of *prima facie* validity only until the debtor effectively rebuts the presumption of validity. *In re TK Holdings, Inc.*, 2021 WL 2949344, at *4 (D. Del. July 14, 2021). The burden of proof then shifts to the creditor. *Id.*

65.    To be properly executed, a proof of claim must be in writing, substantially conform to the Official Form, be executed by the creditor or the creditors' authorized agent, and if the claim is based on a writing, it must attach the writing. Rule 3001; *In re Cluff*, 313 B.R. 323, 332 (Bankr. D. Utah 2004). One of "the most serious omission of compliance is the lack of any signature

certifying the claim as true, accurate and correct as required by Official Form 10." *In re Avery*, No. 15-30074, 2015 WL 4498181, at *2 (Bankr. N.D. Ohio July 22, 2015).[10]

66.    Here, Mr. Abbasi did not sign his Claims.  He merely typed his name on the General Proofs of Claims and did not provide any form of signature or dated attestation on the Customer Proofs of Claims.  Therefore, Mr. Abbasi failed to properly execute his claims.  Accordingly, the Abbasi Claims are not prima facie valid.

## II.    Claims C598-981, C598-982,  C598-1005, C598-1102,  C598-1104, C598-1200, C599-43, C599-44, C599-55, C599-10030, and C600-119 Are Duplicative

67.    Mr. Abbasi filed several duplicate claims:

a.    Claim C598-1104 is a duplicate of Claim C598-1005;

b.    Claim C598-1200 is a duplicate of Claim C598-1102;

c.    Claim C599-55 is a duplicate of Claim C599-43;

d.    Claim C599-10030 is a duplicate of Claim C599-44;

e.    Claim C600-119 is a duplicate of Claim C600-102 (together, "Duplicate Claims").

68.    Mr. Abbasi also filed several cross-debtor duplicate claims asserting the same amount, type, and basis of claim against different debtors:

a.    Claims C598-1102,  C598-1200, C599-43, and C599-55 are cross-debtor duplicates of Claim C600-102.

b.    Claims C598-981, C598-982,  C598-1005, C598-1104, C599-44, and C599-10030 are  cross-debtor  duplicates  of  C600-104  (together,  "Cross-Debtor  Duplicate

---

[10]    Footnote 1 in *In re Aveni* states: "The court in *In re Nittany Enterprises*, 502 B.R. 447, 454 (Bankr.W.D.Va.2012), states that "[a] signature on a proof of claim is not required by either the Bankruptcy Code or the Bankruptcy Rules." This court disagrees with this statement, as it is hard to interpret Rule 3001(b)(through use of the words "shall be executed by the creditor") and Rule 9011(a)(through use of the words "shall be signed") as not requiring a signature by somebody." 2015 WL 4498181, at *2 n.1.

Claims").

69.     Regardless of Mr. Abbasi's reasons for filing the Duplicate Claims and Cross-Debtor Duplicate Claims, any failure to disallow them will result in Mr. Abbasi potentially receiving an unwarranted double and multiple recovery against the Debtors' estate, to the detriment of other creditors in the Chapter 11 Case.   Accordingly, the Debtor objects to the Duplicate Claims and Cross-Debtor Duplicate Claims and requests entry of the Order disallowing and expunging the Duplicate Claims and Cross-Debtor Duplicate Claims.

70.     The Debtors' Plan provides for a single recovery to each customer and provides for payment in full of customer claims before any other pre-petition creditors are paid.   Even if Mr. Abbasi could prove claims against multiple Debtors, Mr. Abbasi cannot receive more than one recovery of his claim, if any survive this Objection.

## III.     Abbasi Claims Should Be Disallowed Pursuant to Section 502(b)(1)

71.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"   11 U.S.C. § 502(b)(1).   Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

72.     Here, the Abbasi Claims should be disallowed under section 502(b)(1) for the following reasons.

73.     <u>First</u>,   the amount of fiat currency submitted on Mr. Abbasi's Customer Proof of Claim does not match the balance associated with Mr. Abbasi's account, because his fiat balance

is zero.  Mr. Abbasi knowingly falsely included fiat currency in the customer proofs of claims even

though he did not hold $200,000 in fiat currency in his account on the Bittrex platform.

74.    <u>Second</u>, the amounts of cryptocurrencies listed on Mr. Abbasi's proofs of claims

have no basis in reality.  Mr. Abbasi submitted claims for the following cryptocurrencies: (i)

0.00000782 Bitcoin (BTC), (ii) 24,937.5 LoMo Coin (LMC), (iii) 79.1096 Neo (NEO), (iv) 15,000

Ontology (ONT), and (v) 15,000 OntologyGas (ONG).    However, Mr. Abbasi was able to

withdraw all the active assets in his account amounting to 1.25000475 BTC and 79.10953200 NEO

in February 2020.  Even Mr. Abbasi's Supporting Documentation 1 shows that his account has a

zero balance of BTC.  Moreover, Mr. Abbasi's Supporting Documentation 1 shows invalidated

amounts of Ontology ("ONT") and OntologyGas ("ONG").  As explained above and in the letter

of Debtors' counsel to Mr. Abbasi that was also included in Supporting Documentation 1, ONT

and ONG were cryptocurrencies freely distributed to the eligible customers; however, Mr. Abbasi

was not an eligible customer, including for the reason of the Iranian Sanctions, and the ONT and

ONG amounts have been accordingly invalidated in Mr. Abbasi's account.    Furthermore,

Supporting Documentation 1 shows invalidated 2019 deposits of ONT and ONG amounting to

only 1.543 ONG and 15.821 ONT, which is nowhere near the amounts of 15,000 ONT and 15,000

ONG listed on his proofs of claims.  Finally, Mr. Abbasi's Supporting Documentation 1 shows the

value of the 24,937.5 LoMo Coin (LMC) in his account as 0.00 BTC.  That is because, as explained

above, LMC was removed from the Bittrex platform due to lack of market for the token, and, in

spite of warning that the LMC would become unrecoverable if Mr. Abbasi did not remove it from

the Bittrex platform before the deadline of June 21, 2019, Mr. Abbasi failed to do so, LMC became

delisted from the Bittrex platform, and the 24,937.5 LMC in Mr. Abbasi's account became

unrecoverable.

75.    <u>Third</u>, even if Mr. Abbasi would be able to withdraw any invalidated or otherwise unrecoverable crypto—which he is not—the only debtor is Malta OpCo—not BUS or Malta Holdings.

76.    <u>Fourth</u>, Mr. Abbasi's inability to withdraw the assets in the account from October 2017 until February 2020 is not imputable to the Debtors because Debtors were required to comply with the Iranian Sanctions.

77.    Beginning in November 2019, when the OFAC License became available, Bittrex informed Mr. Abbasi that he could withdraw the assets from his blocked account.  Mr. Abbasi took action to comply with regulatory requirements to withdraw his active assets and the Debtors were thus able to allow his withdrawals in February 2020.

78.    <u>Fifth</u>, under the Terms of Service to which Mr. Abbasi agreed, Bittrex was contractually entitled to block Mr. Abbasi's account in light of the OFAC Sanctions.[11]    Also, Section 10.3 of the Terms of Service excludes any liability or damages resulting from any blockage of Mr. Abbasi's account pursuant to the Iranian Sanctions (or any other reasons):

---

[11]    Specifically, section 2.2  "Restricted Locations" of the Terms of Service provides: "You may not use the Services if you are located in, or a citizen or resident of the United States. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction that is embargoed by the United States, or if you are on any trade or economic sanctions lists, such as the United Nations Security Council Sanctions List, or if you are restricted or prohibited from engaging in any type of trading by the European Union, Hong Kong Monetary Authority, Hong Kong Customs and Excise Department, Office of Foreign Asset Control or any other administrative law enforcement agencies. You may not use the Services if you are located in, or a citizen or resident of any state, country, territory or other jurisdiction where your use of the Services would be illegal or otherwise violate any applicable law. You represent and warrant that you are not a citizen or resident of any such jurisdiction and that you will not use any Services while located in any such jurisdiction, and that you are not on any trade or economic sanctions list. You also may not use the Services if you are located in, or a citizen or resident of, any other jurisdiction where Bittrex has determined, at its discretion, to prohibit use of the Services. **Bittrex may implement controls to restrict access to the Services from any jurisdiction prohibited pursuant to this Section 2.2.** You will comply with this Section 2.2, even if Bittrex's methods to prevent use of the Services are not effective or can be bypassed." (Emphasis added.)

Moreover, section 10.2 of the Terms of Service states: "Bittrex may, at its discretion and without liability to you, with or without prior notice and at any time, temporarily suspend or permanently terminate your access to all or a portion of any Services."

> **"Bittrex will not be liable for any losses suffered by you resulting from any modification of any Services or from any suspension or termination of your access to all or a portion of any Services** (whether pursuant to this Section 10 or for any other reason).  If and **when Services resume, you acknowledge that Token valuations and exchange rates may differ significantly from the valuations and rates prior to such event**.  (Emphasis added.)

79.  <u>Sixth</u>, section 4 of the Terms of Service lists several risks—including potential devaluation of account assets, any kind of losses, inability to receive financial benefits available to other customers, and restrictions to the account—that may materialize because of cryptocurrencies becomes defunct/delisted or governmental actions (such the Iranian Sanctions).[12]  Mr. Abbasi's defunct or delisted crypto falls in the risk categories listed in section 4, as well as the ONT and ONG rewards that Mr. Abbasi implies (but does not prove) that he was entitled to receive, and any (unproven) loss Mr. Abbasi allegedly suffered because his account was frozen.  Section 4 then disclaims any liability and damages related to such risks:

80.  Mr. Abbasi's unproven allegations that his "cryptocurrency fortune has significantly depreciated in value" because his account was frozen falls in the risk categories listed in section 4.  Section 4 then disclaims any liability and damages related to such risks:

> You hereby irrevocably waive, release and discharge any and all claims, whether known or unknown to you, against Bittrex, Inc., Bittrex Malta, each of their respective Affiliates and their respective shareholders, members, directors, officers, employees, agents and representatives related to any of the risks set forth herein."

---

[12]  Specifically, section 4 of the Terms of Service state: "Bittrex may suspend or cease to support the transfer, storage or trading of any Token at any time at Bittrex's discretion. Other exchanges and service providers may do the same. . . . You may be unable to withdraw Tokens prior to Bittrex ceasing to support transfer of any such Tokens, resulting in the loss of any such Tokens remaining in your Bittrex Account. Any Token may decrease in value or lose all of its value due to various factors including discovery of wrongful conduct, market manipulation, changes to Token Properties or perceived value of Token Properties, Attacks, suspension or cessation of support for a Token by Bittrex or other exchanges or service providers, and other factors outside the control of Bittrex. Any Token may decrease in value or lose all of its value due to legislative or regulatory activity, or other government action. . . . The risks described in this Section 4 may result in loss of Tokens, decrease in or loss of all value for Tokens, inability to access or transfer Tokens, inability to trade Tokens, inability to receive financial benefits available to other Token holders, and other financial losses to you."

30971852.1

81. <u>Sixth</u>, section 16 of the Terms of Service generally disclaims liability for incidental,

consequential, and punitive damages, as set forth below:

> IN NO EVENT WILL BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH DAMAGES.

82. Additionally, the Terms of Service limit the Debtors' liability to the amount of fees

paid by a customer to Malta OpCo or BUS in the 12 months preceding the event giving rise to the

claim:

> IN NO EVENT WILL THE LIABILITY OF BITTREX, INC., BITTREX MALTA, EACH OF THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX) EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO

BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

83.    Pursuant to section 19 of the Terms of Service:

> With respect to any Tokens that are made available for trading by Bittrex Inc., the interpretation and enforcement of these Terms, and any dispute related to these Terms or the Services, will be governed by and construed and enforced in accordance with the laws of the State of Washington, without regard to conflict of law rules or principles (whether of Washington or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. With respect to any Tokens that are VFAs and that are made available for trading by Bittrex Malta, the interpretation and enforcement of these Terms with respect thereto, and any dispute related to these Terms or the Services with respect thereto, will be governed by and construed and enforced in accordance with the laws of the Republic of Malta, without regard to conflict of law rules or principles (whether of Malta or any other jurisdiction) that would cause the application of the laws of any other jurisdiction.

84.    The choice of law clause contained in the Terms of Service is valid and enforceable.

*See*, *e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).   Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms.   *See*, *e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous").   For example, in *Debono Edward Av Dr Noe vs. No Stop Technology Limited*

(C49765) – 1049/2010 – First Hall Civil Court, Malta (Apr. 3, 2012), the court confirmed that Regulation (EC) No 593/2008 on the law applicable to contractual obligations applied as the "supreme law." And Article 3(1) of the said regulation states that "a contract shall be governed by the law chosen by the parties." The clauses in the Terms of Service are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Abbasi Claims are for damages beyond the maximum liability set forth in Terms of Service, they must be disallowed.

## IV.    The Abbasi Claims Are Not Secured

85.    Mr. Abbasi further asserts that Claims C598-1102, C598-1200, C599-43,  C599-55, C600-102, and C600-119 are secured. However, Mr. Abbasi does not have lien, and he failed to attach evidence of the perfection of any security interests as required by Bankruptcy Rule 3001(d). Therefore, Claims C598-1102, C598-1200, C599-43,  C599-55, C600-102, and C600-119 are not secured, nor are any of the other Abbasi Claims.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court sustain this Objection and disallow the Abbasi Claims.

Date: November 13, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Kenneth J. Enos
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE DEBTORS**

11606-00001C/14492887.3

30971852.1