**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Wind Down Entity. | (Jointly Administered) |

**PLAN ADMINISTRATOR'S OBJECTION TO CLAIM C598-10942 FILED BY SHARON ANGULO PURSUANT TO SECTIONS 502 AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007**

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), David Maria, as plan administrator (the "Plan Administrator") in the chapter 11 cases of the above-captioned debtors and each of their debtor affiliates (collectively, the "Debtors" or the "Wind Down Entity"), through undersigned counsel, hereby files this objection (the "Objection") to Claim C598-10942 filed by Sharon Angulo ("Ms. Angulo") (the "Angulo Claim" or "Claim"). The Debtors request entry of the Proposed Order attached hereto as **Exhibit A**, disallowing the Angulo Claim in its entirety as the submitted claim is for an unaffiliated company Voyager, which is subject of separate bankruptcy proceedings.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

§ 157(b)(2), and pursuant to Bankruptcy Rule 7008 and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

## BACKGROUND

**I.  The Bankruptcy Cases and Bar Date**

4. On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). Prior to the Petition Date through the Effective Date of the Plan (defined below), the Debtors managed and operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5. Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration").

6.  On October 31, 2023, the Court entered its order [D.I. 517] (the "Confirmation Order") confirming the *Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* (the "Plan").[2]

7.  On November 15, 2023, the Debtors filed a *Notice of Effective Date* [D.I. 563], setting the effective date to the same day (the "Effective Date"). As set forth in the Confirmation Order, as of the Effective Date, all Wind Down Assets vested in the Wind Down Entity, and David Maria was appointed to serve as the Plan Administrator managing the Wind Down Entity. *See* Confirmation Order at ¶¶ 17.G, 52.

8.  Now that the Effective Date has occurred, the Plan Administrator is continuing the claims reconciliation process, and the wind down of the business operations and affairs of the Wind Down Entity.

**II.  Schedules and Bar Date Order**

9.  On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

10. On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS; D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

11. On May 24, 2023, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. [D.I. 107.]

12. In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers. Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served *notice* of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form. [D.I. 201.] The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023. [D.I. 187.]

### III. The Angulo Claim

#### A. Ms. Angulo' History With the Debtors

13. Ms. Sharon Angulo ("Ms. Angulo") created an account with BUS on November 9, 2017. Ms. Angulo never accepted BUS's terms of service and her KYC verification on file has expired.

14. The current balances associated with the account of Ms. Angulo consist of the following cryptocurrencies with a value of $102.29 as of the Petition Date: (i) 0.00000018 (BTC); (ii) 1,093.21969697 (XLM); and (iii) 133.81534375 (WACME).

#### B. Claim 598-10942

15. Ms. Angulo filed Claim C598-10942 on August 29, 2023, selecting Bittrex, Inc. as the Debtor. However, she added a handwritten note "Voyager c/o Stretto" in the area on the proof of claim designated for selecting the debtor.

16. The Angulo Claim lists the following assets: (i) 1,929.99 Bitcoin (BTC); (ii) $320.24 Bitcoin Cash (BCH); (iii) $2,629.80 Ethereum (ETH); (iv) $778.89 Ethereum Classic (v); $896.94 Shiba Inu (SHIB); (vi) $141.74 Stellar Lumens (XLM); and (vii) $167.30 Voyager (VGX), with aggregate market value as of Petition Date of $53,621,987.10.

17. Additionally, the Angulo Claim lists $6,864.90 in fiat currency.

18. Ms. Angulo's basis for the submitted claim is "Crypto Currency."

19. Ms. Angulo marked "no" as answer to the question whether her claim was secured, but then filled out the section alleging that her account was secured by "crypto currency" valued at $6,864.90. She stated the basis of perfection as "Attached." Ms. Angulo marked the amount of the claim that is secured, unsecured, and cure amount all as $6,864.90. Ms. Angulo also marked a fixed annual interest rate with the rate of interest stated as "N/A."

20. Ms. Angulo marked her claim as entitled to priority under 11 U.S.C. § 507(a) and listed the applicable subsection of 11 U.S.C. § 507(a) as "crypto currencies." She also stated "$6,864.90" as the amount entitled to priority.

21. Ms. Angulo listed "individual Voyager Account" as her title on her proof of claim.

22. Ms. Angulo provides four attachments: (i) a screenshot of instructions how and when to submit a proof of claim in the Voyager bankruptcy case; (ii) a screenshot of what appears to be a customer support response from the "Mosaic Experience Team" regarding cancellation of a loan; (iii) a screenshot of a what appears to be a claim amount with Voyager and information related to that claim; (iv) a screenshot of what purports to be a list of cryptocurrencies and their respective claim amounts; and (v) a copy of a FedEx mailing label from Ms. Angulo to Omni Agent Solutions Inc.

## OBJECTIONS

### I. The Angulo Claim is Not Entitled to Priority Under Section 507

23.   As set forth above, Ms. Angulo asserts that her Claim is entitled to priority under section "507(a)(__)." She lists the applicable subsection of 11 U.S.C. § 507(a) as "crypto currencies." However, there is no such subsection of section 507(a), and "crypto currencies" are not a valid basis for section 507(1) priority. The Claim is therefore not entitled to priority under section 507.

### II. The Angulo Claim is Not Secured

24.   To the extent Ms. Angulo asserts that her Claim is secured by "crypto currency" valued at $6,864.90, she does not have a lien, and she failed to attach evidence of the perfection of any security interests as required by Bankruptcy Rule 3001(d). Therefore, the Angulo Claim is not secured.

### III. The Angulo Claim Should Be Disallowed Pursuant to Section 502(b)(1), Except as Limited to the Assets That Are in the Account

25.   Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" 11 U.S.C. § 502(b)(1). Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

26.   <u>First</u>, Ms. Angulo appears to be attempting to file a claim against a different debtor that is not an affiliate of Bittrex and that is subject to separate bankruptcy proceedings. On the top of the proof of claim form, Ms. Angulo wrote "Voyager c/o Stretto" in the area designated for selecting the debtor name. In addition, Ms. Angulo listed a token that Bittrex did not have on its

trading platform as of the Petition Date, "Voyager (VGX)," which was a proprietary token of Voyager. Under Ms. Angulo's personal information, she stated "Individual Voyager Account" as her title. She also included as attachments screenshots showing the information how to file a claim against Voyager, her claim amount with Voyager—which is the same amount as one her claim against Bittrex—and information stating, "[y]our claim amount is calculated based on the USD price of crypto assets in your Voyager account as of July 5, 2022."

27. Bittrex, Inc. and Voyager are two separate entities and are in no way related to each other. Bittrex is not responsible for claims against Voyager. To the extent the Angulo Claim against Voyager is asserted against Bittrex, it should be disallowed.

28. <u>Second</u>, to the extent Ms. Angulo is attempting to file a claim against BUS, the assets associated with Ms. Angulo's BUS account are described in paragraph 14 above, and had a market value of $102.29 as of the Petition Date: (i) 0.00000018 (BTC); (ii) 1,093.21969697 (XLM); and (iii) 133.81534375 (WACME). Ms. Angulo incorrectly (and nonsensically) lists on her Claim the following assets: (i) 1,929.99 Bitcoin (BTC); (ii) $320.24 Bitcoin Cash (BCH); (iii) $2,629.80 Ethereum (ETH); (iv) $778.89 Ethereum Classic (v); $896.94 Shiba Inu (SHIB); (vi) $141.74 Stellar Lumens (XLM); and (vii) $167.30 Voyager (VGX), with aggregate market value as of Petition Date of $53,621,987.10; and (viii) $6,864.90 in fiat currency. Ms. Angulo does not have and has never had that amount of cryptocurrency associated with her Bittrex account. She also does not have $6,864.90 in fiat currency associated with her account.

29. Ms. Angulo has not articulated any other claims against BUS or any of the other Debtors. To the extent any part of Ms. Angulo's claim consists of damages, Ms. Angulo cannot claim such damages under the contract with Bittrex, because Ms. Angulo never accepted BUS's terms of service, as she was required to maintain her BUS account.

30. Furthermore, to the extent any part of Ms. Angulo' claim consists of damages, they are expressly disallowed pursuant to BUS' terms of service.

31. Section 17 of BUS' terms of service disclaim liability for incidental, consequential, and punitive damages, as set forth below:

> **17. DISCLAIMER OF DAMAGES**
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT] ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

32. Additionally, BUS' terms of service also limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

> **18. LIMITATION OF LIABILITY**
> IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

33. Pursuant to section 20 of BUS' terms of service, Washington law applies. The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

34. Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous"). The clauses in BUS' terms of service are set out in all caps with bolded headings, and are easily understood. Therefore, to the extent that the Angulo Claim is for damages beyond the maximum liability set forth in section 18 of BUS' terms of service, it must be disallowed.

## CONCLUSION

WHEREFORE, the Plan Administrator respectfully requests that the Court: (i) sustain this Objection; (ii) allow the Angulo Claim that is the C598-10942 against BUS in the amount of the assets associated with Ms. Angulo's account (0.00000018 (BTC); 1,093.21969697 (XLM); and 133.81534375 (WACME)) for purposes of allowance; and (iii) otherwise disallow the Angulo Claim.

| | |
|---|---|
| Date: November 20, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Kenneth Enos*<br>Kenneth Enos (Delaware Bar No. 4544)<br>Robert S. Brady (Delaware Bar No. 2847)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: kenos@ycst.com<br>Email: rbrady@ycst.com<br><br>-and-<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**COUNSEL FOR THE PLAN ADMINISTRATOR** |