**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Wind Down Entity. | (Jointly Administered) |

**PLAN ADMINISTRATOR'S OBJECTION TO CLAIM C598-232 FILED BY KAREN
JANET J. ROGERS  PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 3007**

Pursuant to sections 502 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), David Maria, as plan administrator (the "Plan Administrator") in the chapter 11 cases of the above-captioned debtors and each of their debtor affiliates (collectively, the "Debtors" or the "Wind Down Entity"), through undersigned counsel, hereby files this objection (the "Objection") to Claim C598-232 filed by Karen Janet J. Rogers  ("Ms. Rogers") (the "Rogers Claim" or the "Claim"). The Plan Administrator requests entry of the Proposed Order attached hereto as **Exhibit A,** allowing the Rogers Claim against BUS in the amount of the assets associated with her account of (i) 0.0000301 BTC; (ii) 402.98372174 IOC; (iii) 49.26689465 OMG; and (iv) 0.97801598 USDT, with a total value as of the petition date of $46.51, and disallowing the remainder of the Rogers Claim.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and pursuant to Bankruptcy Rule 7008 and rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), the Wind Down Entity consents to the entry of a final order by the

Court in connection with this Objection to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105 and

502 of the Bankruptcy Code, and Bankruptcy Rule 3007.

## BACKGROUND

### I.      The Bankruptcy Cases and Bar Date

4.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  Prior to the Petition

Date through the Effective Date of the Plan (defined below), the Debtors managed and operated

their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  An official committee of unsecured creditors has not been appointed in these Chapter 11

Cases.

5.      Additional factual background relating to the Debtors' businesses, capital structure,

and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of*

*Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration").

6.      On October 31, 2023, the Court entered its order [D.I. 517] (the "Confirmation Order") confirming the *Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* (the "Plan").[2]

7.      On November 15, 2023, the Debtors filed a *Notice of Effective Date* [D.I. 563], setting the effective date to the same day (the "Effective Date").  As set forth in the Confirmation Order, as of the Effective Date, all Wind Down Assets vested in the Wind Down Entity, and David Maria was appointed to serve as the Plan Administrator managing the Wind Down Entity.  *See* Confirmation Order at ¶¶ 17.G, 52.

8.      Now that the Effective Date has occurred, the Plan Administrator is continuing the claims reconciliation process, and the wind down of the business operations and affairs of the Wind Down Entity.

## II.    Schedules and Bar Date Order

9.      On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

10.     On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS; D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

11.    On May 24, 2023, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim.  [D.I. 107.]

12.    In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers.  Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served notice of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form.  [D.I. 201.]  The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023.  [D.I. 187.]

## III.    The Rogers Claim

### A.    Ms. Rogers' Contacts with the Debtors

13.    Ms. Rogers created an account with Bittrex, Inc. ("BUS") on August 2, 2017. She accepted the BUS terms of service on February 17, 2021 and an updated version on August 1, 2023. On August 4, 2020, Ms. Rogers contacted the customer support of Bittrex ("Customer Support"), claiming that her account was missing the value of $2,300.  The Customer Support responded that access to Ms. Rogers' account appears to have been compromised on her end and preventatively disabled the account.  After Ms. Rogers provided additional verification, her account was re-enabled

on August 10, 2020.  The account remains in good standing, and Ms. Rogers is able to withdraw

the remaining balance associated with her account.

**B.     Ms. Rogers' Account Holdings at the Petition Date and the Rogers Claim**

14.     As of the Petition Date, Ms. Rogers' account held (i) 0.0000301 BTC; (ii)

402.98372174 IOC; (iii) 49.26689465 OMG; and (iv) 0.97801598 USDT, for a total value of

$46.51.

15.     On August 4, 2023, Ms. Rogers filed the Claim selecting BUS as the debtor.  Ms.

Rogers lists a claim consisting of (i) 662.52991000 Bitcoin (BTC), and (ii) 49.26 OMG Network

(OMG), with market value as of the petition date of $18,405,785.86.

16.     The stated basis of the Claim is "Account Balance."

## OBJECTIONS

**I.     The Rogers Claim Should Be Allowed in Part and Otherwise Disallowed Pursuant to Section 502(b)(1)**

17.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such

claim is unenforceable against the debtor and property of the debtor, under any agreement or

applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to

provide that, with limited exceptions, any defense to a claim that is available outside of the

bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas*

*& Elec. Co.*, 549 U.S. 443, 450 (2007).

18.     Here, Ms. Rogers' assets in her Bittrex account are those described in paragraph 14

above, which had a market value of $46.51 as of the Petition Date.  Ms. Rogers has not, and never

had, all the cryptocurrency in Bitcoin that she listed in her Claim, let alone assets for a value of

$18,405,785.86 in her Bittrex account.

19.     BUS' platform has never been hacked, and historically, any fraud committed against user accounts has been caused by the compromise of account credential outside of the BUS platform.

20.     Ms. Rogers has not articulated any other claims against BUS or any of the other Debtors.   To the extent any of Ms. Rogers' claims consist of damages, they are expressly disallowed pursuant to BUS' terms of service.

21.     BUS' current terms of service repeatedly warn its customers of the risks of engaging in cryptocurrency transactions, which include individuals being targeted and having their account information stolen.   For example, the preamble to the terms of service states that the customer is aware of the risks of hacking.   In section 4, the terms of the service further state that "Any Token and its Underlying Technology may be vulnerable to hacking," and that "[d]ue to the nature of virtual currency, there is an increased risk of fraud."   Indeed, section 4 specifically states that there is a risk that "[u]nauthorized third parties may access or use your Bittrex Account and effect transactions without your knowledge or authorization, whether by obtaining the password to your Bittrex Account, obtaining control over another device or account used by you in connection with any enhanced security measures enabled for your account, obtaining control over your API keys, or by other methods."

22.     Moreover, BUS' terms of service emphasize the importance of securing personal information to their customers.   In section 3.1(d), the terms of service state that the customer will "maintain the security of your Bittrex Account by not sharing your password with others,

safeguarding your personal identifying information, and protecting your password, API keys, and any other information used to access the Services from unauthorized access or use."[3]

23.    The terms of service then clearly state in Section 3.1(g) that customers "are responsible for all activities that occur under your Bittrex Account, and accept all risks of any authorized or unauthorized access to your Bittrex Account," and state that BUS "will not be responsible for any loss due to the compromise of your login credentials."[4]  The terms of service also state in section 3.4 that the customer "will be bound by" any orders or actions "taken by anyone who has accessed or used your Bittrex Account regardless of whether the access is authorized or unauthorized."[5]  And in section 4, the terms of service explicitly state that the customer agrees that BUS "will have no responsibility or liability" based on the risks described in section 4, and that the customer waives, releases, and discharges any such claims against BUS.[6]

24.    Section 17 of BUS' terms of service disclaim liability for incidental, consequential, and punitive damages, as set forth below:

> **17. DISCLAIMER OF DAMAGES**
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR

---

[3]  Similarly, section 3.1(d) of the December 31, 2017 terms of service require the customer to "maintain the security of your Bittrex Account by protecting your password from unauthorized use or access."  In turn, section 3.1(d) of the December 31, 2017 terms of service is similar to terms of service that were in place before December 23, 2017.

[4]  Section 3.1(g) of the December 31, 2017 terms of service likewise state the customer "will be responsible for all activities that occur under your Bittrex Account, and accept all risks of any authorized or unauthorized access to your Bittrex Account."  In turn, section 3.1(g) of the December 31, 2017 terms of service is similar to terms of service that were in place before December 23, 2017.

[5]  *See* December 31, 2017 terms of service § 3.4.

[6]  *See* December 31, 2017 terms of service § 4.

OTHER BUSINESS OR FINANCIAL BENEFIT] ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

25.     Additionally, BUS' terms of service also limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

**18. LIMITATION OF LIABILITY**
IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

26.     Pursuant to section 20 of BUS' terms of service, Washington law applies.  The choice of law clause contained in BUS' terms of service is valid and enforceable.  *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

27.     Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms.  *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a

matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous").  The clauses in BUS' terms of service are set out in all caps with bolded headings, and are easily understood.  Therefore, to the extent that the Rogers Claim is for damages beyond the maximum liability set forth in section 18 of BUS' terms of service, it must be disallowed.

## CONCLUSION

WHEREFORE, the Plan Administrator respectfully requests that the Court: (i) sustain this Objection; (ii) allow the Rogers Claim in the amount of the assets associated with her account (0.0000301 BTC; 402.98372174 IOC; 49.26689465 OMG; and 0.97801598  USDT) for purposes of allowance and distribution; and (iii) otherwise disallow the Rogers Claim.

Date: November 20, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/  Kenneth Enos*

Kenneth Enos (Delaware Bar No. 4544)
Robert S. Brady (Delaware Bar No. 2847)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: kenos@ycst.com
Email: rbrady@ycst.com

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE PLAN
ADMINISTRATOR**