IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Wind Down Entity. | (Jointly Administered) |

**PLAN ADMINISTRATOR'S OBJECTION TO CLAIM C597-53 FILED BY MICHAEL KOCH PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007**

Pursuant to sections 502 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), David Maria, as plan administrator (the "Plan Administrator") in the chapter 11 cases of the above-captioned debtors and each of their debtor affiliates (collectively, the "Debtors" or the "Wind Down Entity"), through undersigned counsel, hereby files this objection (the "Objection") to Claim C597-53 filed by Michael Koch ("Mr. Koch") (the "Koch Claim" or the "Claim"). The Plan Administrator requests entry of the Proposed Order attached hereto as **Exhibit A**, allowing the Koch Claim against BUS in the amount of the assets associated with his account of 56.19640682 IGNIS, with a total value as of the Petition Date of $0.28, and disallowing the remainder of the Koch Claim.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Bankruptcy Rule 7008 and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Wind Down Entity consents to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code, and Bankruptcy Rule 3007.

## BACKGROUND

### I. The Bankruptcy Cases and Bar Date

4. On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). Prior to the Petition Date through the Effective Date of the Plan (defined below), the Debtors managed and operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5. Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration").

6.     On October 31, 2023, the Court entered its order [D.I. 517] (the "Confirmation Order") confirming the *Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* (the "Plan").[2]

7.     On November 15, 2023, the Debtors filed a *Notice of Effective Date* [D.I. 563], setting the effective date to the same day (the "Effective Date"). As set forth in the Confirmation Order, as of the Effective Date, all Wind Down Assets vested in the Wind Down Entity, and David Maria was appointed to serve as the Plan Administrator managing the Wind Down Entity. *See* Confirmation Order at ¶¶ 17.G, 52.

8.     Now that the Effective Date has occurred, the Plan Administrator is continuing the claims reconciliation process, and the wind down of the business operations and affairs of the Wind Down Entity.

**II.     Schedules and Bar Date Order**

9.     On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

10.    On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS; D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

11.    On May 24, 2023, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim. [D.I. 107.]

12. In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers. Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served notice of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form. [D.I. 201.] The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023. [D.I. 187.]

### III. The Koch Claim

#### A. Mr. Koch's Contacts with the Debtors

13. Mr. Koch created an account with Bittrex, Inc. ("BUS") on November 3, 2017. He accepted the BUS terms of service on June 15, 2023. The Debtors' records show that on January 12, 2018, cryptocurrency in the amount of 0.90942502 BTC was withdrawn from Mr. Koch's account. On January 16, 2018, Mr. Koch submitted to BUS a customer support ticket claiming that his account was hacked. The same month, Mr. Koch submitted a hacking complaint to the Washington State Attorney General. BUS responded directly to Mr. Koch and to the Washington State Attorney General to explain that whomever effectuated the withdrawal had access to Mr. Koch's email address and that his login credentials had been compromised outside of the Bittrex environment. The remaining balance associated with Mr. Koch's account was 56.19640682 IGNIS.

In April 2020, BUS terminated its operations in New York State, and as a New York resident, Mr. Koch was advised to withdraw or transfer his cryptocurrency holdings off the BUS platform.

### B.    Mr. Koch's Account Holdings at the Petition Date and the Koch Claim

14.    As of the Petition Date, Mr. Koch's account held 56.19640682 IGNIS, for a total value of $0.28.

15.    On June 8, 2023, Mr. Koch filed the Claim against all four Debtors. Mr. Koch lists a claim consisting of (i) fiat currency in the amount of $7,718.94 with a note "(see attachment)"; and (ii) 7,718.74 USD Bitcoin (BTC).

16.    The stated basis of the Claim is "theft/unjust enrichment."

17.    Mr. Koch enclosed several attachments with his Claim: (i) a typed purported summary of ten dates and amounts of fiat transferred between December 17, 2017 and January 3, 2018 from Coinbase to Bittrex, for a total of $7,718.94; (ii) a Nevada Secretary of State confirmation of receipt of complaint from FINRA, dated March 16, 2018, instructing Mr. Koch to fill out the Complaint Form and provide supporting documentation regarding his complaint relating to Bittrex; (iii) the State of Washington, Department of Financial Institutions confirmation of receipt of Mr. Koch's complaint related to Bittrex, dated April 16, 2018; (iv) an email from the Washington Department of Financial Institutions dated May 7, 2018, confirming the receipt of Mr. Koch's complaint regarding Bittrex addressed to same and to the New Jersey Bureau of Securities; (v) ten screenshots of what appear to be transfers of fractional amounts of BTC from an unnamed account to "unknown" between December 17, 2017, and January 3, 2018; (vi) a letter dated May 31, 2023 addressed "To: Whom it May Concern," alleging that "[i]n 2018, Bittrex outright stole [Mr. Koch's] funds on their Bittrex online exchange," and explaining that he attached confirmation letters from the Attorneys General of Washington and Nevada, and that he also filed complaints

with "the FBI IC3, SEC, IRS, and other relevant authorities"; (vii) a proof of mailing from Mr. Koch to Desolation Holdings LLC, stamped as received on June 8, 2023 by Omni Agent Solutions.

**OBJECTIONS**

**I.   The Koch Claim Should Be Allowed in Part and Otherwise Disallowed Pursuant to Section 502(b)(1)**

18.    Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy."  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

19.    Here, Mr. Koch's assets in his BUS account are those described in paragraph 14 above, which had a market value of $0.28 as of the Petition Date.  Mr. Koch does not have all the fiat and cryptocurrency that he listed in his Claim.

20.    BUS' platform has never been hacked, and historically, any fraud committed against user accounts has been caused by the compromise of account credential outside of the BUS platform.

21.    Mr. Koch has not articulated any other claims against BUS or any of the other Debtors.  To the extent any part of the Koch Claim consist of damages, they are expressly disallowed pursuant to BUS' terms of service.

22.    BUS' current terms of service repeatedly warn its customers of the risks of engaging in cryptocurrency transactions, which include individuals being targeted and having their account information stolen.  For example, the preamble to the terms of service states that the customer is aware of the risks of hacking.  In section 4, the terms of the service further state that

"Any Token and its Underlying Technology may be vulnerable to hacking," and that "[d]ue to the nature of virtual currency, there is an increased risk of fraud." Indeed, section 4 specifically states that there is a risk that "[u]nauthorized third parties may access or use your Bittrex Account and effect transactions without your knowledge or authorization, whether by obtaining the password to your Bittrex Account, obtaining control over another device or account used by you in connection with any enhanced security measures enabled for your account, obtaining control over your API keys, or by other methods."

23. Moreover, BUS' terms of service emphasize the importance of securing personal information to their customers. In section 3.1(d), the terms of service state that the customer will "maintain the security of your Bittrex Account by not sharing your password with others, safeguarding your personal identifying information, and protecting your password, API keys, and any other information used to access the Services from unauthorized access or use."[3]

24. The terms of service then clearly state in Section 3.1(g) that customers "are responsible for all activities that occur under your Bittrex Account, and accept all risks of any authorized or unauthorized access to your Bittrex Account," and state that BUS "will not be responsible for any loss due to the compromise of your login credentials."[4] The terms of service also state in section 3.4 that the customer "will be bound by" any orders or actions "taken by anyone who has accessed or used your Bittrex Account regardless of whether the access is

---

[3] Similarly, section 3.1(d) of the December 31, 2017 terms of service require the customer to "maintain the security of your Bittrex Account by protecting your password from unauthorized use or access." In turn, section 3.1(d) of the December 31, 2017 terms of service is similar to terms of service that were in place before December 23, 2017.

[4] Section 3.1(g) of the December 31, 2017 terms of service likewise state the customer "will be responsible for all activities that occur under your Bittrex Account, and accept all risks of any authorized or unauthorized access to your Bittrex Account." In turn, section 3.1(g) of the December 31, 2017 terms of service is similar to terms of service that were in place before December 23, 2017.

authorized or unauthorized."[5] And in section 4, the terms of service explicitly state that the customer agrees that BUS "will have no responsibility or liability" based on the risks described in section 4, and that the customer waives, releases, and discharges any such claims against BUS.[6]

25. Section 17 of BUS' terms of service disclaim liability for incidental, consequential, and punitive damages, as set forth below:

> **17. DISCLAIMER OF DAMAGES**
> IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT] ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

26. Additionally, BUS' terms of service also limit BUS' liability to the amount of fees paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

> **18. LIMITATION OF LIABILITY**
> IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING, FOR AVOIDANCE

---

[5] *See* December 31, 2017 terms of service § 3.4.

[6] *See* December 31, 2017 terms of service § 4.

OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

27.     Pursuant to section 20 of BUS' terms of service, Washington law applies. The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

28.     Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms. *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous").  The clauses in BUS' terms of service are set out in all caps with bolded headings, and are easily understood.  Therefore, to the extent that the Koch Claim is for damages beyond the maximum liability set forth in section 18 of BUS' terms of service, it must be disallowed.

**II.     The Remaining Part of the Koch Claim Should Be Disallowed Pursuant To Section 502(b)(1) Because It Is Time-Barred**

29.     Bankruptcy court routinely disallow claims under section 502(b)(1) when such claims were barred by the statute of limitations as of the petition date. *See, e.g.*, *In re W.R. Grace & Co.*, 626 B.R. 217, 235 (Bankr. D. Del. 2021) ("The expiration of the statute of limitations on a

claim is a common rationale for disallowing a claim under 11 U.S.C. § 502(b)(1)."); *see also* 11 U.S.C. § 558 ("[T]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses.").

30. To sign up for an account, each customer is required to agree to BUS' terms of service, and when a new version of the terms of service is released, each customer is required to agree to that version in order to maintain an active account. Pursuant to section 20 of BUS' terms of service, "any dispute related to" BUS' terms of service "will be governed by and construed and enforced in accordance with the laws of the State of Washington."[7] The choice of law clause contained in BUS' terms of service is valid and enforceable. *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

31. In Washington, actions for injuries to personal property have a three-year statute of limitations, R.C.W. § 4.16.080(2), as do actions for relief upon the ground of fraud, R.C.W. § 4.16.080(4), negligence, *Woodward v. Taylor*, 184 Wash. 2d 911, 924 (2016), and any other injury to a person's rights where a specific statute of limitations does not control, R.C.W. § 4.16.080(2).

32. Here, Mr. Koch claims that his account was hacked in December 2017 and in January 2018, and based on the documents attached to his proofs of claim, he was aware of the account hack shortly thereafter, having received confirmations of receipt of his hacking complaint from various state agencies as early as March 2018. Mr. Koch, however, did not initiate any direct

---

[7] Section 19 of the December 23, 2017 terms of service likewise provides for application of Washington law, as did previous versions.

action against BUS (or any of the other Debtors).  It appears that he merely reported to various state and federal agencies that his account was hacked, and he fails to provide any documentation supporting what he reported or what action was taken by those governmental authorities, other than providing a few confirmation of receipts of his complaint.  The Debtors filed bankruptcy over five years later, on May 8, 2023.  Because Mr. Koch knew of an account hack for over five years before the bankruptcy, and took no action against BUS, the part of his claim against BUS (or any of the other Debtors) exceeding the holdings in his account are barred by the statute of limitations.[8]

## CONCLUSION

WHEREFORE, the Plan Administrator respectfully requests that the Court: (i) sustain this Objection; (ii) allow the Koch Claim in the amount of the assets associated with his account (56.19640682 IGNIS) for purposes of allowance; and (iii) otherwise disallow the Koch Claim.

---

[8] *See, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 874 (N.D. Cal. 2022) (holding that statute of limitations began to run when customer learned that his Twitter account had been hacked, because at that time, the customer had notice that Twitter might be responsible in some way, such as by negligently failing the safeguard the security of the account).

| | |
|---|---|
| Date: November 20, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Kenneth Enos*<br>Kenneth Enos (Delaware Bar No. 4544)<br>Robert S. Brady (Delaware Bar No. 2847)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: kenos@ycst.com<br>Email: rbrady@ycst.com<br><br>-and-<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: susheelkirpalani@quinnemanuel.com<br>Email: pattytomasco@quinnemanuel.com<br>Email: danielholzman@quinnemanuel.com<br>Email: alainjaquet@quinnemanuel.com<br>Email: razmigizakelian@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>**COUNSEL FOR THE PLAN ADMINISTRATOR** |