# EXHIBIT J

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 11 |
|---|---|
| Desolation Holdings LLC, *et al.*,[1]<br>       Debtors. | Case No. 23-10597 (BLS)<br>(Jointly Administered)<br>Ref. D.I. **92, 276, 558** |

**THIRD FORMAL DEMAND BY ADEL ABBASI TO THE COUNSELS OF THE DEBTORS FOR ADHERENCE TO ETHICAL AND LEGAL STANDARDS IN REPRESENTATION**

This letter serves as a second formal demand from Adel Abbasi ("Mr. Abbasi","I"& "My") to the counsels representing the Debtors, urging strict compliance with ethical and legal guidelines in their representation. It is paramount that you uphold principles of honesty and integrity while advocating for your clients, as required by the professional code of conduct for attorneys. Should an attorney become aware of a client presenting false evidence, it is their duty to rectify the situation. Rule 4.1(b) compels attorneys to reveal significant facts to a third party when such disclosure is necessary to avoid assisting in unlawful activities. Attorneys are also forbidden from making false statements of fact or law to a tribunal or failing to correct a false statement of material fact.

It is evident to me, and I believe it should be equally clear to you as the legal counsel, and your client, the debtor, that Malta OpCo (BITTREX MALTA LTD., registered under number C 88207) did not file an application for the OFAC license. At the time of Bittrex Inc's license application, Malta OpCo entity did not exist. There is no public record indicating that this entity has ever owned or applied for an OFAC license or obtained OFAC permission.

Despite this, you continue to claim that Malta OpCo received a license, as indicated in your responses to my letters and objections (refer to Doc 558 points 17 and 18).

**Firstly,** when Bittrex Inc. applied for the OFAC license, there was no entity known as Malta OpCo.

**Secondly,** you must be aware that Malta OpCo did not apply for the license as all reported customers, if any, belonged to Bittrex, Inc. As such, it was Bittrex Inc. that violated OFAC rules and regulations from at least till October 2017. Bittrex Inc. was the entity that applied for and received the OFAC License and permission.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764).

**Thirdly,** there is no publicly available information from either OFAC, yourself, or the debtor indicating that Malta OpCo holds or has ever received a license from OFAC.

**Fourthly**, by transferring Iranian assets to an offshore entity in 2018, Bittrex Inc. violated OFAC rules and regulations which prohibit such transfer of blocked assets to an offshore entity.

**Moreover**, if Malta OpCo opened an account for me under its name and operations, it would be clear that I was in Iran. Therefore, Malta OpCo knowingly and intentionally violated OFAC regulations by opening accounts for Iranian nationals residing in Iran in 2018.

Also, considering Malta OpCo did not possess a license in 2020, how did your client make a transaction to move the assets of the residents of Iran ? If it was possible to do so without a license, why Bittrex didn't close the account and transfer assets to my outsider wallet in October 2017?

Based on the information that is publicly accessible[2], Bittrex, Inc. was the named entity granted the license, which is generally non-transferable[3] to any other entity or individual. Typically, such a license permits the licensee to conduct all necessary transactions to terminate relations with customers who are ordinarily resident in Iran and refunds their assets. Interestingly, before the license was even issued, Bittrex had already taken steps to close Iranian accounts on its platform and moved them to Bittrex Malta. **Well done!**

**Lastly**, as a lawyer, it is your duty to verify evidence before representing it. How can you represent your client without verifying the actual evidence and instead repeat false statements as proof of claim?

**By way of background:**

1. Bittrex, Inc., a US-based cryptocurrency trading platform, began its operations on December 14, 2013. The platform was developed and managed by a team of crypto enthusiasts with vast experience in development and security. This indicates that the founders of Bittrex had an in-depth understanding of technology and security. Hence, it can be inferred that they intentionally offered their services worldwide with no limitation, bypassing restrictions such as IP or verification processes, including those for Iranian users.

2. Publicly available posts reveal that some Bittrex customers claim that the exchange accepted their Iranian passports and completed their KYC verification process. It appears that Bittrex allowed these customers to access their services, as Iran was included in their KYC process and they even accepted Iranian phone numbers. It is evident that Bittrex responded to inquiries from potential Iranian users prior to account opening, affirming that Iranians could utilize its services.

---

[2] https://ofac.treasury.gov/media/928746/download?inline
[3] https://ofac.treasury.gov/faqs/topic/1506

3. Bittrex knowingly and willingly decided to provide services to Iranian customers, even verifying them with Iranian passports when Iran was listed as one of their supported countries in the residential and citizenship section of their verification form. This is something Bittrex founders were evidently aware of for quite some time.

4. Around October 2017, Bittrex suspended and blocked Iranian accounts and assets.

5. Approximately in April 2018, Bittrex, Inc. filed several applications with OFAC, requesting licenses to allow Bittrex to disburse funds to customers in various sanctioned countries, including Iran (refer to Doc 558 point 17).

6. Around September 10, 2018 (at least five months after Bittrex, Inc.'s OFAC license application), the founders of Bittrex established two offshore Malta entities named "BITTREX MALTA LTD." with the registration number C 88207 known as "Malta OpCo[4]" and Bittrex Malta Holdings Ltd. with the registration number C 88199.



7. "In October 2019, **eighteen[5] months** after filing the applications, **Malta OpCo** and BUS **obtained** a license from OFAC permitting a release of assets to customers in Iran (the "OFAC License"). The OFAC License would expire on March 31, 2020 (the "OFAC Deadline"). Starting in November 2019, **Malta OpCo informed all relevant Iran customers**—including Mr. Abbasi— that they could withdraw cryptocurrency in their blocked accounts." (refer to Doc 558 point 18).

---

[4] https://registry.mbr.mt/ROC/index.jsp
[5] **From the time of Bittrex, Inc.'s license application in April 2018 until October 2019 is a span of 18 months. Additionally, from the registration of Malta OpCo in September 2018 until October 2019 is a period of 13 months.**

**To all recipients of this letter,**

Upon receipt of this communication, you are hereby made aware that certain statements concerning Malta OpCo's OFAC license application and OFAC permission have been found to be erroneous.

It is incumbent upon you to amend all objections or defenses that have used this misleading and incorrect information. You are urged to validate these claims with your client, as failure to do so could imply that you, as their legal counsel, are aiding the debtors in illegal activities.

Furthermore, it is suggested that by not rectifying these inaccuracies, you may be concealing Bittrex's violations of federal law, as well as OFAC rules and regulations. It is crucial to maintain the integrity of these proceedings, and I trust you will take the necessary steps to address these concerns promptly.

**Kind Regards,**
**ADEL ABBASI**[6]
**November 21, 2023**

---

[6] This document contains content that is based on the issues highlighted by Mr. Adel Abbasi concerning certain bankruptcy cases. The specifics have been supplied by Mr. Abbasi, and they mirror his comprehension of the situation based on available data, which may change at any time. Mr. Abbasi assumes no responsibility for any changes or inaccuracies. By utilizing this document, you absolve Mr. Abbasi of any obligations or liabilities pertaining to its use or interpretation. Any usage of this document is at your own risk and discretion. This document may undergo changes as new data becomes available. It should not be viewed as a comprehensive or final report of the situation. Subsequent communications will be shared as needed to provide clarity or modifications to the information in this document.