**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:** To be determined |
| | **Hearing Date:** To be determined |

**AZIM GHADER'S MOTION TO CONTINUE
HEARING ON DEBTORS' OBJECTION TO MR. GHADER'S SURVIVING CLAIMS**

Azim Ghader ("Mr. Ghader"), through his undersigned counsel, hereby moves (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7042(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for a continuance[2] of the December 13, 2023 hearing (the "December Hearing") currently set for the *Debtors' Objection to Proof of Claims* [Docket No. 411] (the "Objection") to Mr. Ghader's Surviving Claims (as defined below). In support of this Motion, Mr. Ghader respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Prior to filing this Motion, Mr. Ghader informally requested a continuance of the December Hearing with counsel to the Debtors, however, counsel indicated that the Debtors objected to such a continuance.

1

*Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Mr. Ghader confirms his consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The legal predicate for the relief requested herein is section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7042(a).

## **PRELIMINARY STATEMENT**[3]

4. Mr. Ghader respectfully requests entry of the Proposed Order continuing the December 13, 2023 Hearing on the Debtors' Objection to Mr. Ghader's Surviving Claims. The relief requested is appropriate because:

    (i) Mr. Ghader is an Iranian citizen who resides in Turkey. He wishes—especially in light of the Debtors' one-sided portrayal of him and his Surviving Claims in the Objection—to attend the hearing on the Objection in person to present live testimony in support of his Surviving Claims. Unfortunately, he will be unable to obtain a visa in time for the December Hearing;

    (ii) Upon information and belief, the Court has set only 30 minutes for the December Hearing. The Hearing is scheduled as an omnibus hearing, not an evidentiary hearing. Mr. Ghader believes the hearing on the Objection will require at least two days of live testimony, including the testimony of an expert on the applicability of the alleged sanctions imposed by the Office of Foreign Assets Control ("<u>OFAC</u>") on the Debtors;

    (iii) The parties have engaged in discovery. However, discovery is not yet complete, including the Debtors' production of important documents relating to the communications by and between the Debtors and OFAC regarding the alleged sanctions and depositions of fact witnesses. Moreover, the discovery produced by the Debtors to date suggests additional discovery is needed in connection

---

[3] Terms capitalized but not defined in the Preliminary Statement are ascribed the definitions provided to them in this Motion.

with the Debtors' outsourcing of their OFAC responsibilities to a third-party vendor, BlockScore; the Debtors' use of Jumio as the agent to sign up Iranian Accounts; and the bases for the Debtors' continued refusal to unfreeze Mr. Ghader's Bittrex account despite Mr. Ghader's ongoing communications with the Debtors;

(iv) Mr. Ghader has submitted an expedited Freedom of Information Act ("FOIA") request to OFAC. The FOIA request seeks relevant information from OFAC as to OFAC's communications with and to the Debtors, including any and all instructions/directives OFAC issued to the Debtors regarding the freezing of Mr. Ghader's Bittrex account. (Information and communications that the Debtors have refused to produce to date.). Despite Mr. Ghader seeking expedited treatment of his FOIA request, OFAC denied his expedited request and advised Mr. Ghader's counsel that there are numerous requests in the queue ahead of Mr. Ghader's;

(v) Mr. Ghader intends to file an adversary proceeding against Bittrex, Inc., Bittrex Malta, Ltd. and certain other affiliated entities and parties. The adversary proceeding will detail, with particularity, the nature, extent and validity of Mr. Ghader's Surviving Claims and the damages he sustained. Mr. Ghader anticipates filing the adversary complaint within the next week. The complaint will assert claims, causes of action and damages for, among other things, breach of contract, conversion, misrepresentation, unjust enrichment, unfair and deceptive business practices, lack of good faith and fair dealing and reckless and wanton conduct. The facts underlying these causes of action are interrelated to the bases for his Surviving Claims, and Mr. Ghader intends to ask the Court to consolidate the Objection with the adversary proceeding so that the matters can be adjudicated without the potential prejudice of *res judicata*; and

(vi) A short continuance will not prejudice the Debtors as, upon information and belief, the Bittrex Exchange will not be fully liquidated until March 2024.

5. As noted in Mr. Ghader's Response, the Objection seeks to disallow various proofs of claims filed by Mr. Ghader, a former customer of the Debtors, on four (4) grounds: (i) the Claims were not properly executed and not *prima facie* valid (Objection p.14-15); (ii) certain of the Claims are duplicative (Objection p. 15-16); (iii) the Claims should be disallowed pursuant to section 502(b)(1), except for certain remaining crypto in his account (Objections pp. 16-23); and (iv) Mr. Ghader's claims are not secured (Objection pp. 23-24). In an effort to winnow the issues before the Court, the Debtors and Mr. Ghader agreed to a *Stipulation Regarding Withdrawal of*

*Claims* (the "Claims Stipulation;" Docket No. 468), which Stipulation narrowed the Claims to four (4) remaining Claims before the Court—specifically Claim 599-998, Claim 598-1021, Claim 600-87, and Claim 600-96 (collectively, the "Surviving Claims" as defined in the Claims Stipulation).

6. The dispute before the Court comes down to the six issues:

i. what Terms of Service, if any, that form the basis of the parties' contractual rights and obligations, apply to Mr. Ghader's account with the Debtors;

ii. whether the Debtors were justified in blocking and restricting Mr. Ghader from withdrawing the crypto in his Bittrex account pursuant to the sanctions imposed by OFAC;

iii. if the OFAC sanctions did apply to Mr. Ghader's account, what obligations did the Debtors have to terminate and return the crypto held in Mr. Ghader's account to Mr. Ghader and did the Debtors comply with such obligations;

iv. whether Mr. Ghader sat on his rights to withdraw his crypto, as baldly asserted by the Debtors;

v. what damages did Mr. Ghader sustain as a result of the Debtors' wrongful actions; and

vi. are such damages limited or waived under the Terms of Service applicable to Mr. Ghader's account.

7. In sum, the Objection is not, as the Debtors would like the Court to believe, a straightforward claim objection. Accordingly, Mr. Ghader respectfully requests the Court grant a continuance of the Hearing to: (i) allow the necessary discovery to be completed; (ii) allow for a scheduling conference to be held on the soon to be filed adversarial proceeding (including the potential consolidation of the adversary proceeding with the Objection); and (iii) establishing dates for the trial so that Mr. Ghader can procure, to the best of his abilities, a visa to personally appear at the hearing and present his claims to the Court.[4]

---

[4] In the interim, Mr. Ghader remains amenable to trying to resolve his claims through a Court-appointed mediation process.

## BACKGROUND

a. **General Background**

8. Bittrex Digital Currency Exchange ("Bittrex") was founded in 2014 in Seattle, Washington. Bittrex operated an online virtual currency exchange that enabled its customers to trade virtual currencies, such as Bitcoin, and to store these currencies in Bittrex's "hosted wallet." Bittrex was a closed exchange that could be used only by individuals who opened accounts with Bittrex. Bittrex required customers to deposit digital currencies into their hosted wallet accessed through their Bittrex account, and customers could trade only with other parties participating via the Bittrex Exchange. Amongst other methods, Bittrex generated income through transaction fees and listing fees from various digital asset projects.

9. Bittrex was a Money Services Business that was required to comply with regulations issued by Financial Crimes Enforcement Network ("FinCEN"), the Securities and Exchange Commission ("SEC"), and the Office of Foreign Assets Control ("OFAC"). The evidence will show that Bittrex was plagued with regulatory problems and acted in reckless disregard of federal laws and regulations to Mr. Ghader's detriment.

10. To the extent that it had a compliance program, Bittrex failed to screen Bittrex accounts for violations of OFAC regulations until law enforcement officials discovered Bittrex's malfeasance. Upon information and belief, Bittrex hired Jumio, an online verification company, to verify the identities of potential customers. In February 2016, Bittrex hired a company called BlockScore to screen transactions for compliance with OFAC sanctions, but Bittrex's efforts to screen transactions fell recklessly short. It is undisputed that Bittrex and BlockScore failed to screen Bittrex account holders from sanctioned countries as required by OFAC regulations. Instead, the pair only screened account holders from sanctioned party or terrorist watch lists. Due

to this compliance failure, evidence will show that Bittrex had more than 1,700 accounts opened by Iranian citizens by October 2017, and it had many other accounts opened by citizens of other OFAC-sanctioned countries, such as Cuba, Syria, and Crimea.

11. In fact, evidence at trial will show that Bittrex knew Iranian citizens were opening accounts, and it knowingly helped them do so. For example, on April 6, 2017, an Iranian citizen emailed Bittrex with the following question: "I am from Iran and will trade from my country. Isn't that a problem on your side?" The Bittrex employee replied: "You can trade but please make sure you use enhanced verification." *See* **Exhibit B**.

12. Furthermore, in its Frequently Asked Questions (FAQ) section on its website, Bittrex posed this question and answer: "What countries and documents are supported for Enhanced Verification? "Refer to Jumio's documentation here . . . [https://web.archive.org/web/20170221023317/http://www.jumio.com/netverify/supported-countries/] to find the types of identification documents that are supported in each country." *See* **Exhibit C**. This link, prior to Mr. Ghader opening a Bittrex account in 2017, brought potential Bittrex customers to a list of countries, which included Iran, on Jumio's website. Jumio noted that Iranians may access Bittrex using the verification method of: "Passport, other Docs". *Id.* In June 2017, Mr. Ghader opened an account on Bittrex and transferred approximately $1 million in digital currency to Bittrex. Mr. Ghader followed Bittrex's instructions in opening his account, and he provided his Iranian passport as proof of identity with his address in the United Arab Emirates (UAE). Although a citizen of Iran, Mr. Ghader was not a resident of Iran.

13. By way of brief background, the evidence at trial will establish Mr. Ghader spent most of his youth living in Gilan Province located in Northern Iran. In addition to being an Iranian citizen, Mr. Ghader is a citizen of the Commonwealth of Dominica, and he has a Dominica

passport. Prior to 2017, when his businesses began prospering, Mr. Ghader left Gilan Province and Iran. Mr. Ghader has resided for personal convenience in different countries, including Istanbul, Turkey, where he spends the bulk of his time, and the United Arab Emirates. Since 2017, he has also resided, in other countries, including Estonia, Luxembourg, Turkey, United Arab Emirates, and India.

14. Soon after Mr. Ghader opened his Bittrex account, law enforcement officials uncovered Bittrex's violations of OFAC sanctions. In October 2017, OFAC issued a subpoena to Bittrex regarding these sanctions violations, and Bittrex immediately disabled the accounts of all Iranian customers regardless of whether they resided in Iran. When Mr. Ghader asked why his account was disabled, Bittrex misled him and stated that his account was frozen for "security purposes." Eight months later, after Mr. Ghader continued to inquire regarding his account, Bittrex admitted the truth and notified Mr. Ghader that his account was disabled due to OFAC concerns.

15. In May 2018, Bittrex, Inc. filed an application with OFAC to release certain Iranian accounts that it had disabled and blocked. The evidence at trial will establish that **Bittrex, Inc. did not need the OFAC license to release Mr. Ghader's crypto because at no relevant time, when he requested access to withdraw his crypto from his Bittrex Account, was he a resident of Iran.** Yet, despite Mr. Ghader's ongoing communications with Bittrex, Bittrex continued to block and restrict his account. *See, e.g.*, 31 C.F.R. § 560.204 – (the Iranian Sanction Regulations are based on Iranian residency, not citizenship. In other words, an Iranian citizen who lives in a non-sanctioned country is not subject to the sanctions (provided he or she is not on a sanctioned party or terrorists watch list, which Mr. Ghader was not on.))

16. For five (5) years, from 2018 until 2023, Mr. Ghader attempted to withdraw his digital currency from his Bittrex account in two ways: (1) by proving that he was not an Iranian

resident and not subject to the sanctions; and (2) by responding to Bittrex requests for information. *See* Response to Objection (defined below), par. 17–65. Despite his efforts, in each and every instance, Bittrex refused to allow him to access his account and retrieve his crypto currency.

17. The value of Mr. Ghader's Bittrex account increased manyfold, while he attempted to liquate his Bittrex account. Unfortunately, Bittrex wrongfully and recklessly refused his repeated attempts to retrieve his digital currency. *See*, *e.g.*, Response at pp. 5-17. By the time Bittrex allowed him to withdraw his digital currency in 2023—more than 5 years later—his account had shrunk in value to $273,319.80. In summary, Bittrex was reckless in its compliance, application and enforcement of the Iranian Sanctions Regulations, and it was reckless in refusing to allow Mr. Ghader to access his digital currency for more than five years. This recklessness cost Mr. Ghader millions of dollars.[5]

   b. **The Debtors' Bankruptcy Cases and Objection to Mr. Ghader's Surviving Claims**

18. On May 8, 2023 (the "Petition Date"), Desolation Holdings LLC, Bittrex, Inc., Bittrex Malta Holdings Ltd. and Bittrex Malta Ltd. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have been authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

19. In the Debtors' bankruptcy cases, Mr. Ghader filed 11 Claims against the Debtors (collectively, the "Proofs of Claims").

---

[5] It is hard to overstate the severity of Bittrex's regulatory violations. OFAC fined Bittrex $24 million for the above sanctions violations. **This was the largest action against a crypto firm in OFAC's history.** *See* https://home.treasury.gov/news/press-releases/jy1006. Separately, FinCEN fined Bittrex $29 million for anti-money laundering violations. *See id*. The SEC sued Bittrex for securities violations, and August 2023, Bittrex agreed to pay $24 million in additional fines to settle this third federal investigation. *See* www.sec.gov/news/press-release/2023-150. In 2023, Bittrex announced that it was leaving the United States and would not conduct business with Americans due to the "regulatory climate" in America.

20. On September 29, 2023, the Debtors objected to Mr. Ghader's Proofs of Claims (Docket No. 411) (the "Objection").

21. After the Objection was filed, the Debtors and Mr. Ghader, in good faith, entered into to the Claims Stipulation, which narrowed Mr. Ghader's remaining claims to the four Surviving Claims now at issue, which Surviving Claims are asserted solely against Bittrex, Inc. and Bittrex Malta Ltd.

22. On October 22, 2023, Mr. Ghader filed his response (Docket No. 470) (the "Response") to the Debtors' Objection.

23. Since the Objection and Response were filed, the parties have been engaged in discovery related to the Objection and Surviving Claims. The discovery is not yet completed, and additional discovery—as discussed further below—is needed. The Objection is currently scheduled to be presented to the Court on December 13, 2023.

**BASIS FOR RELIEF**

24. Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is also a generally held principle that the Court holds inherent power to manage its docket and has authority over scheduling the matters to be considered before it.

25. Mr. Ghader seeks a continuance for several reasons.

26. *First*, Mr. Ghader is an Iranian citizen who resides in Turkey. He wishes to attend the hearing on the Objection in person to present live testimony in support of his Surviving Claims. Unfortunately, he will be unable to obtain a visa in time for the December Hearing. Even though he resides in Turkey and not Iran, his Iranian citizenship coupled with his gender will slow the visa approval process, which necessitates a continuance.

27. *Second*, the Court has set only 30 minutes for the December Hearing, which is scheduled as an omnibus hearing and not an evidentiary hearing. Mr. Ghader believes the hearing on the Objection will require at least two days, including the testimony of an expert on the applicability of the alleged sanctions imposed by OFAC relied on by the Debtors. According to the docket, there are many additional matters scheduled to be heard at the December Hearing, and such a limited window to hear Mr. Ghader's claims will be insufficient. Rather than beginning the trial at the December Hearing and postponing it when the parties inevitably run out of time, it would be more efficient to schedule the trial for consecutive days and a time convenient for the Court and the parties. Having definitive trial dates will also assist Mr. Ghader in obtaining his visa.

28. *Third*, discovery is not yet complete, including the Debtors' production of certain documents relating to: (i) Mr. Ghader's folder that the Debtors submitted to OFAC, containing four spreadsheets that detail his account activity as well as his deposits, trades, and withdrawals; (ii) the instructions that OFAC gave Bittrex regarding whether it was necessary to disable and block Mr. Ghader's account; and (iii) what information Bittrex needed to receive to unblock Mr. Ghader's account. Additional discovery is also needed in connection with the Debtors' outsourcing of their OFAC responsibilities to a third-party vendor, BlockScore, the Debtors use of Jumio as the agent to sign up Iranian Accounts, and the communications between certain of the Debtors' employees and Mr. Ghader relating to the continued blocking and freezing of his Bittrex account. The Debtors' reliance on BlockScore and Jumio, and their role in blocking and restricting Mr. Ghader's account, is a critical issue before the Court that needs to be fully explored.

29. *Fourth*, Mr. Ghader submitted an expedited FOIA request to OFAC seeking relevant information as to OFAC's communications with and to the Debtors, including any and all instructions/directives OFAC issued to the Debtors regarding the freezing of Mr. Ghader's Bittrex

account. Despite Mr. Ghader seeking expedited treatment of his FOIA request, OFAC denied the expedited nature of his request. While OFAC did not provide a specific turnaround time for the FOIA request, OFAC advised Mr. Ghader's counsel that there are numerous requests in the queue prior to Mr. Ghader's request. Therefore, it is highly unlikely that a response will be returned prior to the December Hearing. This information, which is also being sought from the Debtors (but which, to date, the Debtors have refused to provide), is critical to the crux of Mr. Ghader's Surviving Claims. Without this additional discovery, Mr. Ghader is unable to schedule meaningful depositions of the Debtors' representatives.

30. *Fifth*, Mr. Ghader intends to file an adversary proceeding against the Bittrex, Inc., Bittrex Malta, Ltd. and certain other affiliated entities and parties detailing, with particularity, the nature, extent and validity of his Surviving Claims. Mr. Ghader anticipates filing the adversary complaint within the next week. The complaint will assert claims, causes of action and damages for, among other things, conversion, misrepresentation, unjust enrichment, unfair and deceptive business practices, breach of contract, breach of good faith and fair dealing, and reckless and wanton conduct. The facts underlying these causes of action are interrelated to the bases for his Surviving Claims.

31. Bankruptcy Rule 7042(a) makes applicable Rule 42(a) of the Federal Rules of Civil Procedure which provides:

> Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a); *see also* Fed. R. Bankr. P. 3007(b) (2007 Comm. Notes) (providing that "[i]f a claim objection is filed separately from a related adversary proceeding, the court may consolidate the objection with the adversary proceeding under Rule 7042). Given the interrelatedness of the Debtor's Objection and the causes of action to be asserted in the forthcoming adversary proceeding, as well as Mr. Ghader's intention to request that the Court consolidate the Objection and adversary proceeding, the hearing on the Debtor's Objection should be continued to a later date to allow the forthcoming complaint to proceed without the potential prejudice of *res judicata* issues.

32. Sixth, a continuance will not prejudice the Debtors because, upon information and belief, the Bittrex Exchange will not be fully liquidated until March 2024. Although a continuance would not prejudice the Debtors, the Debtors have indicated to Mr. Ghader's counsel that they oppose Mr. Ghader's request for a continuance.

## NOTICE

33. Notice of this Motion will be given to: (a) the U.S. Trustee for the District of Delaware; (b) counsel to the Debtors; (c) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Mr. Ghader submits that no other or further notice is required.

*[Remainder of page intentionally left blank]*

**CONCLUSION**

WHEREFORE, Mr. Ghader respectfully requests the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting a continuance of the December 13, 2023 Hearing on the Debtor's Objection and his Response and such further relief as the Court deems just and proper.

Dated: November 29, 2023
      Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Elazar A. Kosman*
Donald J. Detweiler (DE Bar No. 3087)
Elazar A. Kosman (DE Bar No. 7077)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com
      elazar.kosman@wbd-us.com

*Counsel to Azim Ghader*