## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Wind Down Entity. | (Jointly Administered) |

### DECLARATION OF DAVID MARIA IN SUPPORT OF IN SUPPORT OF PLAN ADMINISTRATOR'S OBJECTION TO CLAIM C598-1167 FILED BY FORGEY LAW GROUP, PLLC, JASON M. FORGEY, AND EXCEL TITLE GROUP, LLC PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007

I, David Maria, Plan Administrator of the above-captioned debtors and their debtor affiliates (collectively, the "Debtors" or the "Wind Down Entity"), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Plan Administrator of the Wind Down Entity as of the Effective Date.  I have served as the General Counsel and Chief Legal Officer for Bittrex, Inc. ("BUS") since December 2022 and previously as BUS's Head of Litigation and Regulatory Affairs since May 2021.

2.      In my capacity as the Plan Administrator, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and ongoing restructuring efforts.  Accordingly, I am in all respect competent to make this declaration (the "Declaration").

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

3.       I submit this Declaration in support of the *Plan Administrator's Objection to Claim C598-1167 Filed by Forgey Law Group, PLLC, Jason M. Forgey, and Excel Title Group, LLC Pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007* (the "Objection"),[2] dated as of the date hereof and filed contemporaneously herewith.

4.       I am over the age of eighteen, and, as the Plan Administrator, I am authorized to submit this Declaration.  All statements in this Declaration are based upon my personal knowledge, or my review (or the review of others under my supervision) of (a) business books and records kept by the Debtors in the ordinary course of business, (b) the relevant proofs of claim, (c) the Schedules, and/or (d) the official register of claims filed in these chapter 11 cases.  If called as a witness, I could and would competently testify to the facts set forth in this Declaration.

5.       The Claim was carefully reviewed and analyzed in good faith using due diligence by myself, appropriate personnel of the Wind Down Entity, Berkeley Research Group, LLC, Quinn Emanuel Urquhart & Sullivan LLP, and/or Young Conaway Stargatt & Taylor, LLP.

6.       Prime Trust, LLC ("Prime Trust") is a Nevada retail trust company that provided money services to BUS.  BUS and Prime Trust were parties to a Self-Directed Account Agreement ("Custodial Agreement") pursuant to which BUS maintained an account at Prime Trust ("Custodial Account").  BUS used the Custodial Account to hold fiat currencies deposited by its customers and would credit those amounts to customer accounts, which the customers could then use to purchase cryptocurrencies on the BUS platform.  The Custodial Account held the majority of cash transferred by the Debtors' customers.

7.       The Custodial Agreement authorized Prime Trust to open other accounts for the benefit of BUS, and to "hold as custodian [for BUS] all assets deposited to, or collected with

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

respect to such Account." Prime Trust, in turn, had opened an account at Pacific Mercantile Bank ("PMB" and "PMB Account") for the benefit of BUS. Trust's name for the PMB Account was "Prime Trust FBO PMB 355924" and Prime Trust identified the PMB Account as "Bittrex Clearing."

8.      On August 22, 2020, an individual ("Accountholder") opened an account with BUS.

9.      On August 27, 2020 at 10:52 p.m. PT, the Accountholder deposited $25,000. On August 28, 2020 at 7:35 p.m. PT, the Accountholder purchased 2.168071 BTC for $24,950.10. On August 28, 2020 at 10:45 p.m. PT, the Accountholder withdrew 2.16757132 BTC from the BUS platform.

10.     On August 31, 2020 at 11:32 p.m. PT, the Accountholder deposited $24,500. On September 1, 2020, the Accountholder purchased 2.05187941 BTC for $24,451.10. On September 2, 2020 at 4:39 a.m. PT, the Accountholder withdrew 2.05147941 BTC from the BUS platform.

11.     On September 2, 2023 at 11:58 p.m. PT, the Accountholder deposited $448,840.92. All of these funds were placed in Prime Trust's account at PMB. Prime Trust credited BUS' account, and BUS, in turn, credited the Accountholder's account. On September 3, 2020 at 12:24 a.m. PT, the Accountholder purchased 39.21783989 BTC for $447,945.03. On September 3, 2020 at 1:11 a.m. PT, the Accountholder withdrew 39.21733989 BTC from the BUS platform.

12.     On September 3, 2020, during regular business hours, First United Bank contacted PMB and notified PMB of a potential fraudulent transaction involving Excel Title Group. Later that day, PMB notified Prime Trust, and Prime Trust then notified BUS. By the time Prime Trust notified BUS on September 3, 2020, all assets had been withdrawn by the accountholder from the account in question. After investigating the account, on September 8, 2020, BUS notified Prime

Trust that the Accountholder had purchased cryptocurrencies and withdrawn those cryptocurrencies from the BUS platform.

13.      Attached hereto as **<u>Exhibit A</u>** is a true and correct copy of the *Verified Complaint for Forfeiture in Rem* filed in *United States v. $448,840.92 in United States Currency*, Case No. 4:21-cv-00202 (E.D. Tex.).

14.      Attached hereto as **<u>Exhibit B</u>** is a true and correct copy of the *Affidavit in Support of Complaint for Forfeiture* filed in *United States v. $448,840.92 in United States Currency*, Case No. 4:21-cv-00202 (E.D. Tex.).

15.      Attached hereto as **<u>Exhibit C</u>** is a true and correct copy of the *Verified Claim to Assert Interest in $448,840.92 in United States Currency* filed in *United States v. $448,840.92 in United States Currency*, Case No. 4:21-cv-00202 (E.D. Tex.).

16.      Attached hereto as **<u>Exhibit D</u>** is a true and correct copy of the *Verified Claim* filed in *United States v. $448,840.92 in United States Currency*, Case No. 4:21-cv-00202 (E.D. Tex.).

17.      Attached hereto as **<u>Exhibit E</u>** is a true and correct copy of the *Excel Title Group, LLC, Jason M. Forgey, and Forgey Law Group PLLC's Amended Answer to Complaint for Interpleader and Injunctive Relief and Cross-Claims* filed in *United States v. Bittrex, Inc. et al.*, Case No. 4:22-cv-626 (E.D. Tex.).

18.      Attached hereto as **<u>Exhibit F</u>** is a true and correct copy of the *Defendant Bittrex, Inc.'s Original Answer to Excel Title Group, LLC, Jason M. Forgey, and Forgey Law Group PLLC's Cross-Claims* filed in *United States v. Bittrex, Inc. et al.*, Case No. 4:22-cv-626 (E.D. Tex.).

19.      Attached hereto as **<u>Exhibit G</u>** is a true and correct copy of the *United States's Motion for Reconsideration* filed in *United States v. $448,840.92 in United States Currency*, Case No. 4:21-cv-00202 (E.D. Tex.).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 29, 2023

*/s/ David Maria*
David Maria

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO: 4:21-cv-00202 |
| | § | |
| $448,840.92 IN UNITED STATES | § | |
| CURRENCY, | § | |
| Defendant. | § | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United States of

America, Plaintiff, alleges as follows:

Nature of the Action

1.      This is an action to forfeit property to the United States pursuant to a violation of 18

U.S.C. § 1343 and 18 U.S.C. § 1030.

Defendant in Rem

2.      The Defendant Property is $448,840.92 in United States currency (hereinafter,

"Defendant Property").


Jurisdiction and Venue

3.      The Court has subject matter jurisdiction over an action commenced by the United States

pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

4.      The Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. §

1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or

omissions giving rise to the forfeiture occurred in this district.

Basis for Forfeiture

6.      The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)

because it is property, real or personal, which constitutes or is derived from proceeds traceable to

violations of 18 U.S.C. § 1343 and § 1030, offenses constituting "specified unlawful activity" as

defined by 18 U.S.C. § 1956(c)(7).

Facts

7.      In August 2020, Jason Forgey, the owner and operator of Excel Title Group, located in

the Eastern District of Texas, became a victim of a Business Email Compromise scheme when he

was fraudulently induced into wiring more than $1 million to an account he believed to be

legitimately related to a pending transaction. Upon realizing the fraud, Forgey reported the

matter to his bank and law enforcement and was able to recover a portion of the funds.  The

remaining $448,840.92 had already been forwarded to a third bank account and was not initially

recovered, however the United States Secret Service obtained a federal seizure warrant and was

able to restrain those remaining funds.  The instant complaint now initiates civil action against

those remaining funds.

8.      Additional facts and circumstances supporting the forfeiture of the above-described

property are contained in the Affidavit of United States Secret Service Special Agent Wendy

Cassidy, which is attached hereto and incorporated herein by reference.

Potential Claimants

8.   Potential claimants to the Defendant Property may include:

    a.   Prime Trust, LLC, 330 Rampart Avenue, Suite 260, Las Vegas, NV 89145;
    b.   Bittrex, Inc., 800 5th Avenue, Seattle, WA 98104;
    c.   Jason Forgey, Excel Title Group, LLC, 2770 Main Street, Suite 114, Frisco, TX 75033

Claim for Relief

9.      The United States respectfully requests that the Court forfeit the Defendant Property to

the United States, award costs and disbursements in this action to the United States and order any

other relief that the Court deems appropriate.


                                            Respectfully submitted,

                                            NICHOLAS J. GANJEI
                                            ACTING UNITED STATES ATTORNEY


                                                 /s/ Camelia Lopez
                                            Camelia Lopez
                                            Assistant United States Attorney
                                            State Bar No. 24036990
                                            101 East Park Blvd., Suite 500
                                            Plano, Texas 75074
                                            (972) 509-1201
                                            (972) 509-1209 (fax)
                                            Camelia.Lopez@usdoj.gov

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Wendy Cassidy, hereby state that:

1.    I am a Special Agent with United States Secret Service.

2.    I have read this Complaint, and the information contained herein is true and correct to the best of my knowledge.

3.    The information contained in this Complaint comes from the official files and records of the United States, statements from other law enforcement officers, and my investigation of this case.

I state and verify under penalty of perjury that the foregoing is true and correct.

Wendy Cassidy
Special Agent
United States Secret Service

Dated 3/2/21

**COMPLAINT – U.S. v. $448,840.92**
Page 4 of 4

# Exhibit B

## AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE

1. I, Wendy Cassidy, being duly sworn, depose and state that I am a special agent with the United States Secret Service (USSS) and have been so employed in this capacity since May 3, 2004. I am currently assigned to the Dallas Field Office Cyber Fraud Task Force. Pursuant to 18 U.S.C. § 3056, I am authorized to investigate this matter, obtain search warrants and make arrests. My experience as a Special Agent has included the investigation of cases involving access device fraud, wire fraud, identity theft, computer hacking, and other computer crimes. I have received specific training and have gained experience in interview and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have received specialized training in the investigation of cybercrimes, including classes through which I have obtained certifications or other assessments of proficiency in the forensic analysis of Windows operating systems, network security, and cyber-incident response.

2. The defendant property is $448,840.92 seized from Pacific Mercantile Bank account ███████████ n September 23, 2020, at 949 S. Coast Drive, Suite 105, Costa Mesa, CA 92626, by the USSS pursuant to a federal seizure warrant.

3. This property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C) and (D) because it is property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1030 (Computer Fraud), offenses constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7).

## **FACTS SUPPORTING FORFEITURE**

4. On September 11, 2020, Jason Forgey, the owner and operator of Forgey Law, LLC and Excel Title Group, located in the Eastern District of Texas, reported to the USSS Dallas Field Office that he was a victim of a Business Email Compromise scheme and suffered a loss of $1,237,792.41. Forgey was acting as an escrow agent between NASK Investments LLC and Hunt Servicing Company as the parties engaged in a property refinance transaction. On August 28, 2020, Forgey received an email purportedly from Hunt Servicing Company that contained new wiring instructions for the transaction. Although the email purported to be from Hunt, investigation revealed the email and new wire instructions were fraudulent. Because he believed the email to be genuine, Forgey complied with the instructions and wired $1,237,792.41 from Excel Title Group's account at First United Bank to JP Morgan Chase Bank account ▆▆▆▆▆▆▆▆ Upon realizing that the email containing new wiring instructions was fraudulent, Forgey contacted First United Bank. First United Bank was able to recall a portion of the funds, however, $448,840.92 had already been forwarded to ▆▆▆▆▆▆ an account held by Prime Trust.

5. Further investigation revealed that ▆▆▆▆▆▆ is an account owned by ▆▆▆▆▆▆ ▆▆▆ whom investigators believed to be the victim of a Romance Scam in which ▆▆▆ believed she was facilitating bank transfers for an individual she met online and who was purportedly overseas.

[Conclusion on next page]

## CONCLUSION

6.   Based on the foregoing facts, there is probable cause to believe that the property seized constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1030 (Computer Fraud).  Therefore, this property is subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C) and (D).

WENDY CASSIDY
Special Agent
United States Secret Service

Affidavit in Support of Forfeiture
Page 3 of 3

# EXHIBIT C

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

     **BEFORE ME**, the undersigned notary, on this day personally appeared **JASON MATTHEW FORGEY**, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

> My name is **JASON MATTHEW FORGEY**. I am the Managing Member of **FORGEY LAW GROUP PLLC.** I am capable of making this verification. I have read the foregoing Verified Claim to Assert Interest in $448,840.92 in United States Currency, and the facts stated therein are within my personal knowledge and are true and correct.

_____
**JASON MATTHEW FORGEY**

     **SUBSCRIBED** and **SWORN TO BEFORE ME**, this 21 st day of June, 2021, to certify which witness my hand and official seal of office.

```
NOTARIAL SEAMILLO
Notary Public, State of Texas
Comm. Expires 08-18-2024
Notary ID 1180499-7
```

_____
Notary Public in and for the State of Texas



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:21-CV-00202** |
| | § | |
| **$448,840.92 IN UNITED STATES** | § | |
| **CURRENCY,** | § | |
| | § | |
| **Defendant.** | § | |

**VERIFIED CLAIM TO ASSERT INTEREST**
**IN $448,840.92 IN UNITED STATES CURRENCY**

**EXCEL TITLE GROUP, LLC**, **JASON M. FORGEY, ESQ.** and **FORGEY LAW GROUP PLLC**, by and through their counsel of record, file this Verified Claim pursuant to Rule G(5)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure XIII, and would respectfully show this Honorable Court the following:

**I.**

**(A)**  *Identification of Specific Property Claimed*

     1.    $448,840.92 in United States Currency.

**II.**

**(B)**  *Identity of Claim and Claimants' Interest in Property*

     2.    Excel Title Group, LLC ("Excel"), its title attorney and escrow agent Jason M. Forgey, Esq., ("Forgey") and Forgey Law Group PLLC ("FLG") are the Claimants in this matter.

---

3.      Forgey and FLG acted as a fee attorney and escrow agent for Excel in the closing of certain real estate transactions in Frisco, Texas.  Forgey was involved in the closing of a commercial lending transaction entered into by Origin Bank as Lender and NASK Investments, LLC ███████████ as Borrower.  Funds wired by Origin Bank to pay off the loan being serviced by Hunt Mortgage Capital, LLC ("Hunt Mortgage") were criminally misdirected to a fraudulent bank account.

4.      Prior to closing the NASK loan transaction, FLG was provided what appeared to be genuine, but were fraudulent, wiring instructions for payoff funds to Hunt Mortgage ("Payoff Funds").  FLG provided those wiring instructions to Excel.  Excel's accounting department, having been provided the Payoff Funds by Origin Bank, and relying on the fraudulent wiring instructions, sent $1,237,792.41 from Excel's escrow account ("Escrow Account") at First United Bank to a fraudulent account at JP Morgan Chase Bank ("Chase Bank") owned by ███████████.

5.      The Payoff Funds were wired to Chase Bank on September 1, 2020.  On September 2, 2020, FLG learned that Hunt Mortgage had not received the funds.  The investigation, which immediately ensued, revealed that the wire confirmation showed that funds were sent to an account which was not owned by Hunt Mortgage.

6.      FLG and Forgey took extensive actions to locate the misdirected funds with the assistance of Excel, First United Bank, Origin Bank, Garland Texas Police Department, Federal Bureau of Investigation and the United States Secret Service.  As a result of these immediate actions, Chase Bank returned available funds to the Escrow Account on September 22, 2020 in the amount of $797,817.92.

7.     In conjunction with First United Bank Fraud Department, it was discovered that funds totaling $448,480.92 had been previously wired from the fraudulent Chase Bank account to Pacific Mercantile Bank, and deposited into an account owned by Prime Trust LLC.

8.     The United States Secret Service executed a Wire Warrant on Pacific Mercantile Bank for the account owned by Prime Trust LLC.  The account was frozen.  Funds totaling $448,480.92 were seized pursuant to a federal seizure warrant by the United States Secret Service from Pacific Mercantile Bank account ███████████████ on September 23, 2020 at 949 South Coast Drive, Suite 105, Costa Mesa, California 92626.[1]

9.     Pursuant to the Texas Insurance Code statutory regulations governing the Excel Escrow Account at First United Bank, a shortage of monies from the Escrow Account shall be replaced within forty-five (45) days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable.  Tex. Ins. Code art. 9.39 (Audit Provisions).[2]  If the restitution of the shortage is not made, the Texas Department of Insurance considers the shortage a violation of Texas Insurance Code § 2651.202 and could subject Excel to violations including the cessation of its business.

10.     To that end, Excel, Forgey and FLG replenished the Escrow Account by the forty-five (45) day deadline mandated by the Texas Department of Insurance by using their personal funds to refund the $448,840.92 deficit created by the fraudulent wire criminal activity.  Because Claimants were victims of a criminal wire fraud scheme, and due to the significant personal

---

[1]     Doc 1, Verified Complaint For Forfeiture In Rem; Doc.1-1 Affidavit in Support of Complaint for Forfeiture ¶ 1, 4.

[2]     Tex. Ins. Code art 9.39 §4 (Escrow receivables are the responsibility of the escrow agent and constitute shortages in the account which are deemed to be violations of Article 9.39.  Restitution of every shortage shall be made within forty-five (45) days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable.)

undertaking by Excel, Forgey and FLG to protect and preserve the Escrow Account, Excel, Forgey and FLG file this Claim for the recovery of $448,840.92 in United States Currency.

### III.

11.    This Claim has been made within the time period stated in the Verified Complaint for Forfeiture In Rem as required in Rule G(5)(a)(ii)(A).

June 21, 2021                                          Respectfully submitted,


                                                       /s/ Susan A. Schwartz
                                                       Susan A. Schwartz (TSBN 00797900)
                                                       susan.schwartz@wilsonelser.com
                                                       **WILSON          ELSER          MOSKOWITZ
                                                       EDELMAN & DICKER, LLP**
                                                       901 Main Street, Suite 4800
                                                       Dallas, Texas  75202
                                                       214-698-8000 – telephone
                                                       214-698-1101 – telecopier

                                                       **COUNSEL FOR CLAIMANTS EXCEL
                                                       TITLE GROUP, LLC, JASON M. FORGEY,
                                                       ESQ. AND FORGEY LAW GROUP, PLLC**



### CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the above and forgoing *Verified Claim to Assert Interest in $448,840.92 in United States Currency* was electronically filed with the Clerk of Court, and duly served upon Camelia Lopez, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 101 East Park Blvd., Suite 500, Plano, Texas 75074, via the CM/ECF Court Filing System, pursuant to the requirements of Rule G(5)(a)(i)(D) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions this 21st day of June, 2021.


                                                       /s/ Susan A. Schwawrtz
                                                       SUSAN A. SCHWARTZ

## VERIFICATION

**STATE OF OKLAHOMA** §
§
**COUNTY OF TULSA** §

    **BEFORE ME**, the undersigned notary, on this day personally appeared **LUKE STRAWN**

the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant

testified:

> My name is **LUKE STRAWN**. I am the **CHIEF EXECUTIVE OFFICER** of **EXCEL TITLE GROUP, LLC.** I am capable of making this verification. I have read the foregoing Verified Claim to Assert Interest in $448,840.92 in United States Currency, and the facts stated therein are within my personal knowledge and are true and correct.

_____

**LUKE STRAWN**

    **SUBSCRIBED** and **SWORN TO BEFORE ME**, this _____ day of June, 2021, to certify

which witness my hand and official seal of office.

    [NOTARIAL SEAL]       _____

                                      Notary Public in and for the State of Oklahoma

## <u>VERIFICATION</u>

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

    **BEFORE ME**, the undersigned notary, on this day personally appeared **JASON MATTHEW FORGEY**, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

> My name is **JASON MATTHEW FORGEY**. I am the Managing Member of **FORGEY LAW GROUP, PLLC.** I am capable of making this verification. I have read the foregoing Verified Claim to Assert Interest in $448,840.92 in United States Currency, and the facts stated therein are within my personal knowledge and are true and correct.

_____
**JASON MATTHEW FORGEY**

    **SUBSCRIBED** and **SWORN TO BEFORE ME**, this _____ day of June, 2021, to certify which witness my hand and official seal of office.

[NOTARIAL SEAL]        _____
                                      Notary Public in and for the State of Texas

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:21-CV-00202** |
| | § | |
| **$448,840.92 IN UNITED STATES CURRENCY,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

# VERIFIED CLAIM TO ASSERT INTEREST IN $448,840.92 IN UNITED STATES CURRENCY

**EXCEL TITLE GROUP, LLC, JASON M. FORGEY, ESQ.** and **FORGEY LAW GROUP PLLC,** by and through their counsel of record, file this Verified Claim pursuant to Rule G(5)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure XIII, and would respectfully show this Honorable Court the following:

## I.

**(A)** *Identification of Specific Property Claimed*

1. $448,840.92 in United States Currency.

## II.

**(B)** *Identity of Claim and Claimants' Interest in Property*

2. Excel Title Group, LLC ("Excel"), its title attorney and escrow agent Jason M. Forgey, Esq., ("Forgey") and Forgey Law Group PLLC ("FLG") are the Claimants in this matter.

3. Forgey and FLG acted as a fee attorney and escrow agent for Excel in the closing of certain real estate transactions in Frisco, Texas. Forgey was involved in the closing of a

commercial lending transaction entered into by Origin Bank as Lender and NASK Investments, LLC                          as Borrower. Funds wired by Origin Bank to pay off the loan being serviced by Hunt Mortgage Capital, LLC ("Hunt Mortgage") were criminally misdirected to a fraudulent bank account.

4.      Prior to closing the NASK loan transaction, FLG was provided what appeared to be genuine, but were fraudulent, wiring instructions for payoff funds to Hunt Mortgage ("Payoff Funds"). FLG provided those wiring instructions to Excel. Excel's accounting department, having been provided the Payoff Funds by Origin Bank, and relying on the fraudulent wiring instructions, sent $1,237,792.41 from Excel's escrow account ("Escrow Account") at First United Bank to a fraudulent account at JP Morgan Chase Bank ("Chase Bank") owned by

5.      The Payoff Funds were wired to Chase Bank on September 1, 2020. On September 2, 2020, FLG learned that Hunt Mortgage had not received the funds. The investigation, which immediately ensued, revealed that the wire confirmation showed that funds were sent to an account which was not owned by Hunt Mortgage.

6.      FLG and Forgey took extensive actions to locate the misdirected funds with the assistance of Excel, First United Bank, Origin Bank, Garland Texas Police Department, Federal Bureau of Investigation and the United States Secret Service. As a result of these immediate actions, Chase Bank returned available funds to the Escrow Account on September 22, 2020 in the amount of $797,817.92.

7.      In conjunction with First United Bank Fraud Department, it was discovered that funds totaling $448,480.92 had been previously wired from the fraudulent Chase Bank account to Pacific Mercantile Bank, and deposited into an account owned by Prime Trust LLC.

8.      The United States Secret Service executed a Wire Warrant on Pacific Mercantile Bank for the account owned by Prime Trust LLC. The account was frozen. Funds totaling

$448,480.92 were seized pursuant to a federal seizure warrant by the United States Secret Service from Pacific Mercantile Bank account x2525 (PMB x2525) on September 23, 2020 at 949 South Coast Drive, Suite 105, Costa Mesa, California 92626.[1]

9.      Pursuant to the Texas Insurance Code statutory regulations governing the Excel Escrow Account at First United Bank, a shortage of monies from the Escrow Account shall be replaced within forty-five (45) days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable. Tex. Ins. Code art. 9.39 (Audit Provisions).[2] If the restitution of the shortage is not made, the Texas Department of Insurance considers the shortage a violation of Texas Insurance Code § 2651.202 and could subject Excel to violations including the cessation of its business.

10.     To that end, Excel, Forgey and FLG replenished the Escrow Account by the forty-five (45) day deadline mandated by the Texas Department of Insurance by using their personal funds to refund the $448,840.92 deficit created by the fraudulent wire criminal activity. Because Claimants were victims of a criminal wire fraud scheme, and due to the significant personal undertaking by Excel, Forgey and FLG to protect and preserve the Escrow Account, Excel, Forgey and FLG file this Claim for the recovery of $448,840.92 in United States Currency.

## III.

11.     This Claim has been made within the time period stated in the Verified Complaint for Forfeiture In Rem as required in Rule G(5)(a)(ii)(A).

June ___, 2021                          Respectfully submitted,

---

[1]   Doc 1, Verified Complaint For Forfeiture In Rem; Doc.1-1 Affidavit in Support of Complaint for Forfeiture ¶ 1, 4.

[2]   Tex. Ins. Code art 9.39 §4 (Escrow receivables are the responsibility of the escrow agent and constitute shortages in the account which are deemed to be violations of Article 9.39. Restitution of every shortage shall be made within forty-five (45) days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable.)

*/s/ Susan A. Schwartz*

Susan A. Schwartz (TSBN 00797900)
susan.schwartz@wilsonelser.com
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER, LLP**
901 Main Street, Suite 4800
Dallas, Texas 75202
214-698-8000 – telephone
214-698-1101 – telecopier

**COUNSEL FOR CLAIMANTS EXCEL**
**TITLE GROUP, LLC, JASON M. FORGEY,**
**ESQ. AND FORGEY LAW GROUP, PLLC**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the above and forgoing *Verified Claim to Assert Interest in $448,840.92 in United States Currency* was electronically filed with the Clerk of Court, and duly served upon Camelia Lopez, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 101 East Park Blvd., Suite 500, Plano, Texas 75074, via the CM/ECF Court Filing System, pursuant to the requirements of Rule G(5)(a)(i)(D) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

*/s/ Susan A. Schwawrtz*
SUSAN A. SCHWARTZ

## VERIFICATION

**STATE OF OKLAHOMA** §
§
**COUNTY OF TULSA** §

       **BEFORE ME**, the undersigned notary, on this day personally appeared **LUKE STRAWN**

the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant

testified:

> My name is **LUKE STRAWN**. I am the **CHIEF EXECUTIVE OFFICER** of **EXCEL TITLE GROUP, LLC.** I am capable of making this verification. I have read the foregoing Verified Claim to Assert Interest in $448,840.92 in United States Currency, and the facts stated therein are within my personal knowledge and are true and correct.

**LUKE STRAWN**

      **SUBSCRIBED** and **SWORN TO BEFORE ME**, this ⎵ day of June, 2021, to certify

which witness my hand and official seal of office.

[NOTARIAL SEAL]
ELIZABETH DAVIDSON
Notary Public
State of Oklahoma
Commission # 18003689 Expires 04/11/22

Notary Public in and for the State of Oklahoma

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

**BEFORE ME**, the undersigned notary, on this day personally appeared **JASON**

**MATTHEW FORGEY**, the affiant, a person whose identity is known to me. After I administered

an oath to affiant, affiant testified:

> My name is **JASON MATTHEW FORGEY**. I am the Managing
> Member of **FORGEY LAW GROUP, PLLC.** I am capable of
> making this verification. I have read the foregoing Verified Claim
> to Assert Interest in $448,840.92 in United States Currency, and the
> facts stated therein are within my personal knowledge and are true
> and correct.

_____
**JASON MATTHEW FORGEY**

**SUBSCRIBED** and **SWORN TO BEFORE ME**, this _____ day of June, 2021, to certify

which witness my hand and official seal of office.

[NOTARIAL SEAL]          _____

Notary Public in and for the State of Texas

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

**UNITED STATES OF AMERICA**

      **Plaintiff,**

v.

**$448,840.92 IN UNITED STATES CURRENCY,**

      **Defendant.**

**CASE NO. 4:21-CV00202**

## <u>VERIFIED CLAIM</u>

Bittrex, Inc., by and through its undersigned counsel, hereby makes this Verified Claim asserting Bittrex's interest in the property at issue in this action. In support of this Verified Claim, Bittrex states the following:

1.     Bittrex is an online trading platform where Bittrex's accountholders can trade certain cryptocurrencies, like Bitcoin. Bittrex's accountholders can also liquidate cryptocurrencies into U.S. Dollars on the Bittrex platform.

2.     Bittrex is the owner of the $448,840.92 (the "Seized Property") that the United States has sought to forfeit through its Verified Complaint for Forfeiture In Rem (Docket Entry 1).

3.     On all the dates referenced below, Bittrex maintained a trust account with Prime Trust LLC that was governed by a Self-Directed Account Agreement (the "Custodial Agreement") between Bittrex and Prime Trust.

4.     Under the Custodial Agreement, Bittrex authorized Prime Trust to open other accounts for the benefit of Bittrex and "to hold as custodian [for Bittrex] all assets deposited to, or collected with respect to such Account."

5.    Based on the Custodial Agreement, certain currency, including the Seized Property, was transferred to Prime Trust to hold as a custodian for Bittrex.

6.    Prime Trust, in turn, held these funds in Pacific Mercantile Bank account ▮▮▮▮▮▮▮ (the "PMB Account"), which is a bank account in Costa Mesa, California, that Prime Trust opened for the benefit of its accountholders, including Bittrex. As Prime Trust explained to Bittrex, the account name for the PMB Account was "▮▮▮▮▮▮▮▮▮▮▮▮▮ and Prime Trust's online client dashboard identified the PMB Account as "Bittrex Clearing."

7.    On September 3, 2020, Prime Trust contacted Bittrex about $448,840.92 that had been transferred to the PMB Account, asking whether Bittrex would like to reverse this transfer. Bittrex investigated the matter and learned that (1) an accountholder at Bittrex (the "Accountholder") had deposited this $448,840.92 with Bittrex (through the PMB Account), (2) based on that deposit, Bittrex credited that amount to the Accountholder's Bittrex account, (3) with this account balance, the Accountholder purchased certain cryptocurrencies from other Bittrex accountholders, and (4) after making these purchases, the Accountholder then withdrew these cryptocurrencies from Bittrex. All these events occurred before Prime Trust contacted Bittrex on September 3, 2020.

8.    On September 22, 2020, Prime Trust notified Bittrex that a warrant had been issued and that the Seized Property had been seized from the PMB Account.

9.    As of that date, however, the Accountholder's account at Bittrex had no money or cryptocurrencies credited to the account.

10.    Since the above-referenced seizure, Bittrex has not recovered the $448,840.92 from another source. Nor is this $448,840.92 currently credited to the Accountholder's Bittrex account.

11.    In other words, seeking to seize certain property that it alleges is the fruits or

-2-

instrumentalities of a crime unknown to Bittrex but allegedly committed by the Bittrex Accountholder, the Government has instead seized *other* property from Bittrex—property which Bittrex must use to satisfy obligations to other accountholders.

12. On December 22, 2020, Bittrex submitted to the United States a Seized Asset Claim, seeking the prompt return of the Seized Property. The United States then filed its Complaint, seeking to forfeit the Seized Property.

### Verification Under 28 U.S.C. § 1746

I, James Waschak, hereby verify that I am the Chief Operating Office of Bittrex, Inc., and that I am authorized to make and sign this Verified Claim on behalf of Bittrex. I verify under penalty of perjury that the foregoing is true and correct. Executed on this 21st day of June, 2021.

James Waschak
Chief Operating Officer
Bittrex, Inc.

-3-

Dated:  June 22, 2021     **Respectfully submitted,**

        By: /s/ Jean-Jacques Cabou
          Jean-Jacques Cabou*
          JCabou@perkinscoie.com
          Matthew R. Koerner*
          MKoerner@perkinscoie.com
          PERKINS COIE LLP
          2901 North Central Avenue, Suite 2000
          Phoenix, AZ  85012-2788
          Telephone:  602.351.8000

          *Applications for *pro hac vice* pending.

         **Counsel for Claimant Bittrex, Inc.**

## CERTIFICATE OF SERVICE

  The undersigned certifies that a true and correct copy of the foregoing Verified Claim was electronically filed with the Clerk of the Court, using the CM/ECF Court Filing System.  The undersigned also certifies that a copy of the same was duly served on Camelia Lopez, Assistant United States Attorney, United States Attorney's Office for the Eastern District of Texas, 101 East Park Boulevard, Suite #500, Plano, Texas, 75074, via the CM/ECF system, pursuant to the requirements of Rule G(5)(a)(i)(D) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

         /s/ Jean-Jacques Cabou

152843813.1

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:22-cv-626 |
| | § | Judge Mazzant |
| BITTREX, INC.; | § | |
| EXCEL TITLE GROUP, LLC; | § | |
| JASON M. FORGEY; and | § | |
| FORGEY LAW GROUP, PLLC, | § | |
| | § | |
| Defendant. | § | |

## EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC'S AMENDED ANSWER TO COMPLAINT FOR INTERPLEADER AND INJUNCTIVE RELIEF AND CROSS-CLAIMS

Claimants **EXCEL TITLE GROUP, LLC** ("Excel"), **JASON M. FORGEY** ("Forgey"), and **FORGEY LAW GROUP PLLC** ("FLG"), (collectively, "Claimants" or "Cross-Plaintiffs"), by and through their counsel of record, hereby file this Amended Answer to Complaint for Interpleader and Injunctive Relief ("Complaint") and Cross-Claims, and would respectfully show the Court as follows:

## I.
## ANSWER TO INTERPLEADER

**A.     INTRODUCTION**

1.     Claimants admit the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.     Claimants admit the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.     Claimants admit the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.     Claimants admit the allegations contained in Paragraph 4 of Plaintiff's Complaint.

EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC'S AMENDED ANSWER TO COMPLAINT FOR INTERPLEADER AND INJUNCTIVE RELIEF AND CROSS-CLAIMS

PAGE 1
276362339v 1

5.      Claimants admit the allegations contained in Paragraph 5 of Plaintiff's Complaint.

6.      In Paragraph 6 of Plaintiff's Complaint, Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Bittrex, Inc. Claimants admit all remaining allegations in Paragraph 6.

7.      Claimants admit the allegations contained in Paragraph 7 of Plaintiff's Complaint.

8.      Claimants admit the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9.      Claimants admit the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.     Claimants admit the allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.     Claimants admit the allegations contained in Paragraph 11 of Plaintiff's Complaint.

## B.      PROPERTY AND CLAIMANT DETAILS

12.     In Paragraph 12(a) of Plaintiff's Complaint, Claimants admit that Bittrex, Inc. is a Potential Claimant, but deny that Bittrex, Inc. has any right or entitlement to the interpleaded funds.

13.     Claimants admit the allegations contained in Paragraph 12(b) of Plaintiff's Complaint.

14.     Claimants admit the allegations contained in Paragraph 12© of Plaintiff's Complaint.

15.     Claimants admit the allegations contained in Paragraph 12(d) of Plaintiff's Complaint.

## C.      CONCLUSION AND REQUEST FOR RELIEF

16.     In Paragraph 13 of Plaintiff's Complaint, Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's statement of mind. Claimants admit all remaining allegations in Paragraph 13.

**EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC'S AMENDED ANSWER TO COMPLAINT FOR INTERPLEADER AND INJUNCTIVE RELIEF AND CROSS-CLAIMS**                                    **PAGE 2**

276362339v 1

17.     Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14.

**II.**
**STATEMENT OF CLAIM**

**A.     FACTUAL BACKGROUND**

18.     Excel Title Group, LLC ("Excel"), its title attorney Jason M. Forgey, Esq. ("Forgey") and Forgey Law Group, PLLC ("FLG") are the Claimants in this matter.

19.     Forgey and FLG acted as a fee attorney and escrow agent for Excel in the closing of certain real estate transactions in Frisco, Texas.  Forgey was involved in the closing of a commercial lending transaction entered into by Origin Bank as lender and NASK Investments, LLC (███████████  as Borrower.  Funds wired by Origin Bank to pay off the loan being serviced by Hunt Mortgage Capital, LLC ("Hunt Mortgage") were criminally misdirected to a fraudulent bank account.

20.     Prior to closing the NASK loan transaction, FLG was provided what appeared to be genuine, but were fraudulent, wiring instructions for payoff funds to Hunt Mortgage ("Payoff Funds"). FLG provided those wiring instructions to Excel. Excel's accounting department, having been provided the Payoff Funds by Origin Bank, and relying on the fraudulent wiring instructions, sent $1,237,792.41 from Excel's escrow account ("Escrow Account") at First United Bank to a fraudulent account at JP Morgan Chase Bank ("Chase Bank") owned by ███████████.

21.     The Payoff Funds were wired to Chase Bank on September 1, 2020. On September 2, 2020, FLG learned that Hunt Mortgage had not received the funds. The investigation, which immediately ensued, revealed that the wire confirmation showed that funds were sent to an account which was not owned by Hunt Mortgage.

22.     FLG and Forgey took extensive actions to locate the misdirected funds with the assistance of Excel, First United Bank, Origin Bank, Garland Texas Police Department, Federal Bureau of Investigation and the United States Secret Service. As a result of these immediate actions, Chase Bank returned available funds to the Escrow Account on September 22, 2020 in the amount of $797,817.92.

23.     In conjunction with First United Bank Fraud Department, it was discovered that funds totaling $448,480.92 had been previously wired from the fraudulent Chase Bank account to Pacific Mercantile Bank, and deposited into an account owned by Prime Trust LLC.

24.     The United States Secret Service executed a Wire Warrant on Pacific Mercantile Bank for the account owned by Prime Trust LLC. The account was frozen. Funds totaling $448,480.92 were seized pursuant to a federal seizure warrant by the United States Secret Service from Pacific Mercantile Bank account ███████████ on September 23, 2020 at 949 South Coast Drive, Suite 105, Costa Mesa, California 92626.

25.     Pursuant to the Texas Insurance Code statutory regulations governing the Excel Escrow Account at First United Bank, a shortage of monies from the Escrow Account shall be replaced within forty-five (45) days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable. Tex. Ins. Code art. 9.39 (Audit Provisions).[1] If the restitution of the shortage is not made, the Texas Department of Insurance considers the shortage a violation of Texas Insurance Code § 2651.202 and could subject Excel to violations including the cessation of its business.

---

[1] Tex. Ins. Code art. 9.39 §4 (Escrow receivables are the responsibility of the escrow agent and constitute shortages in the account which are deemed to be violations of Article 9.39. Restitution of every shortage shall be made within forty-five (45) days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable.").

26.     To that end, Excel, Forgey and FLG replenished the Escrow Account by the fortyfive (45) day deadline mandated by the Texas Department of Insurance by using their personal funds to refund the $448,840.92 deficit created by the fraudulent wire criminal activity. Because Claimants were victims of a criminal wire fraud scheme, and due to the significant personal undertaking by Excel, Forgey and FLG to protect and preserve the Escrow Account, Excel, Forgey and FLG file this Claim for the recovery of $448,840.92 in United States Currency.

27.     As discussed below, Claimants/Cross-Plaintiffs assert the following claims for the interpleaded funds, and cross-claims against Bittrex, Inc.

**B.     CLAIM 1: CONSTRUCTIVE TRUST**

28.     First, Cross-Plaintiffs assert that an equitable constructive trust should be placed over the interpleaded funds. In the alternative, Cross-Plaintiff's assert a cross claim against Bittrex, Inc. seeking an equitable constructive trust over any cryptocurrencies remaining on its platform traceable to the underlying fraud.

29.     The Court has supplemental jurisdiction of this cross claim under 28 U.S.C.S. § 1367(a) because it arises out of the same transaction and occurrence alleged in the Plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

30.     As detailed above in paragraphs 18-26, Cross-Plaintiffs were defrauded, and the fraudster deposited $448,840.92 of this ill-gotten money into a Pacific Mercantile Bank account owned by Defendant Bittrex, Inc.

31.     Bittrex obtained the funds through bad faith. It either knew or should have known through reasonable diligence that the funds were obtained through fraud.

32.     Bittrex has been unjustly enriched by retaining (1) the $448,840.92, (2) any portion remaining of the funds, (3) profits obtained through transactions made with the funds, and/or (4) cryptocurrencies purchased with the funds. Cross-Plaintiff's seek an award of the forgoing.

**C.     CLAIM 2: UNJUST ENRICHMENT**

33.     Second, Cross-Plaintiffs assert a claim to the interpleaded funds through unjust enrichment. In the alternative, Cross-Plaintiff's assert a cross claim against Bittrex, Inc. for unjust enrichment seeking any cryptocurrencies remaining on its platform traceable to the underlying fraud.

34.     The Court has supplemental jurisdiction of this cross claim under 28 U.S.C.S. § 1367(a) because it arises out of the same transaction and occurrence alleged in the Plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

35.     As detailed above in paragraphs 18-26, Cross-Plaintiffs were defrauded, and the fraudster deposited $448,840.92 of this ill-gotten money into a Pacific Mercantile Bank account owned by Defendant Bittrex, Inc.

36.     Bittrex either knew or should have known through reasonable diligence that the funds were obtained through fraud. Alternatively, Bittrex passively obtained a benefit from these funds and it is unconscionable for Bittrex to retain this benefit in light of (1) Bittrex's knowledge of the fraud and/or reckless lack of diligence in vetting the transactions on its digital platform, (2) Cross-Plaintiffs' diligence in pursuing the fraudster, and (3) Cross-Plaintiffs' use of their own personal funds to make up the $448,840.92 deficit in their escrow account.

37. Bittrex has been unjustly enriched by retaining (1) the $448,840.92, (2) any portion remaining of the funds, (3) profits obtained through transactions made with the funds, and/or (4) cryptocurrencies purchased with the funds. Cross-Plaintiff's seek an award of the forgoing.

**D. CLAIM 3: MONEY HAD AND RECEIVED**

38. Third, Cross-Plaintiffs assert an equitable claim to the interpleaded funds for money had and received. In the alternative, Cross-Plaintiff's assert a cross claim against Bittrex, Inc. for money had and received seeking any cryptocurrencies remaining on its platform traceable to the underlying fraud.

39. The Court has supplemental jurisdiction of this cross claim under 28 U.S.C.S. § 1367(a) because it arises out of the same transaction and occurrence alleged in the Plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

40. As detailed above in paragraphs 18-26, Cross-Plaintiffs were defrauded, and the fraudster deposited $448,840.92 of this ill-gotten money into a Pacific Mercantile Bank account owned by Defendant Bittrex, Inc.

41. Cross-Plaintiffs exercised diligence in pursuing the defrauded money with the assistance of First United Bank, Origin Bank, Garland Police Department, Federal Bureau of Investigation, and the United States Secret Service. As a result of these actions, Chase Bank returned the available funds to the Excel escrow account on September 22, 2020 in the amount of $797,817.92. Only the $448,840.92 deposited with Bittrex, Inc. remains outstanding. Cross-Plaintiffs transferred an equivalent amount of their personal funds into the escrow account to make it whole again.

42. By contrast, Bittrex, Inc. either knew of should have known through reasonable diligence that the $448,840.92 was obtained through fraud. On or about September 3, 2022, Bittrex, Inc. was contacted by Prime Trust (the custodian for certain currencies including the $448,840.92 in this case) asking whether it would like to reverse the transfer of $448,840.92 to/from its bank account. Bittrex, Inc. reportedly investigated, and determined that it could not or would not reverse the transaction. In other words, it either (1) accepted the money with knowledge or reckless disregard that it was obtained through fraud, or (2) it had insufficient procedural safeguards to detect or prevent illicit activity on its digital platform.

43. In equity, justice and law the $448,840.92 belong to Cross-Plaintiffs. In the alternative, (1) any portion of the funds retained by Bittrex, (2) any profits obtained through transactions made with the funds, and/or (3) any cryptocurrencies purchased with the funds, should belong to Cross-Plaintiffs. Cross-Plaintiff's seek an award of the forgoing.

## E. CLAIM 4: TEXAS UNIFORM FRAUDULENT TRANSFER ACT

44. Fourth, Cross-Plaintiffs assert a claim to the interpleaded funds under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Tex. Bus. & Com. Code § 24.005(a), 24.008. In the alternative, Cross-Plaintiff's assert a cross claim against Bittrex, Inc. under TUFTA seeking any cryptocurrencies remaining on its platform traceable to the underlying fraud.

45. The Court has supplemental jurisdiction of this cross claim under 28 U.S.C.S. § 1367(a) because it arises out of the same transaction and occurrence alleged in the Plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC'S AMENDED ANSWER TO COMPLAINT FOR INTERPLEADER AND INJUNCTIVE RELIEF AND CROSS-CLAIMS

PAGE 8

276362339v 1

46. As detailed above in paragraphs 18-26, Cross-Plaintiffs were defrauded, and the fraudster deposited $448,840.92 of this ill-gotten money into a Pacific Mercantile Bank account owned by Defendant Bittrex, Inc.

47. As defined by TUFTA, Cross-Plaintiffs have a "claim" against Bittrex's unidentified accountholder ("Accountholder") for the $448,840.92 obtained through fraud. Tex. Bus. & Com. Code § 24.002(3). Cross-Plaintiffs are a "creditor" on that claim. Tex. Bus. & Com. Code § 24.002(4). Bittrex's Accountholder is a "debtor" on that claim. Tex. Bus. & Com. Code § 24.002(6).

48. The transfer of the $448,840.92 from Bittrex's Accountholder to Bittrex was fraudulent as to Cross-Plaintiffs. Tex. Bus. & Com. Code § 24.005(a). Further, any subsequent transfers (i.e. purchasing cryptocurrencies, and then withdrawing those cryptocurrencies) were also fraudulent as to Cross-Plaintiffs. These transfers were made with actual intent to hinder, delay, or defraud Cross-Plaintiffs.

49. Cross-Plaintiffs seek an award of the full $448,840.92. Tex. Bus. & Com. Code § 24.008(a)(1)&(3)(C). In the alternative, Cross-Plaintiffs seek an award of (1) any portion remaining of the funds, (2) profits obtained through transactions made with the funds, and/or (3) cryptocurrencies purchased with the funds.

## F. DISCOVERY RULE

50. To the extent the statute of limitations is raised as a defense, Cross-Plaintiffs plead the discovery rule. As detailed in paragraphs 18-26, Cross-Plaintiffs exercised due diligence in pursuing its claims. Cross-Plaintiffs could not have become aware of these claims prior to June 22, 2021, when Bittrex, Inc. filed its verified claim in *United States of America v. $448,840.92 in United States Currency*; Case No. 4:21-CV00202.

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Claimants/Cross-Plaintiffs pray:

    a.   That the entire interpleaded funds be awarded to Cross-Plaintiffs;

    b.   That Claimants/Cross-Plaintiffs be awarded their costs;

    c.   Any other relief both at law and in equity to which Claimants/Cross-Plaintiff's may be entitled and will ever pray.

October 11, 2022             Respectfully submitted,

                                        */s/Susan A. Schwartz*
                                        Susan A. Schwartz (TSBN 00797900)
                                        susan.schwartz@wilsonelser.com
                                        Mark R. Lankford (TSBN 24100134)
                                        mark.lankford@wilsonelser.com
                                        **WILSON ELSER MOSKOWITZ**
                                        **EDELMAN & DICKER, LLP**
                                        901 Main Street, Suite 4800
                                        Dallas, Texas 75202
                                        214-698-8000 – telephone
                                        214-698-1101 – telecopier

                                        **COUNSEL FOR CLAIMANTS EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP, PLLC**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the above and forgoing *Excel Title Group, LLC, Jason M. Forgey, and Forgey Law Group, PLLC's Amended Answer to Complaint for Interpleader and Injunctive Relief and Cross-Claims* was electronically filed with the Clerk of Court and duly served upon (1) Camelia Lopez, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 101 East Park Blvd., Suite 500, Plano, Texas 75074 and (2) Christopher D. Sileo and Santosh Aravind, SCOTT DOUGLASS & MCONNICO LLP, 303 Colorado Street, Suite 2400, Austin, Texas 78701, via the CM/ECF Court Filing System this 11th day of October, 2022.

                                        */s/Susan A. Schwartz*
                                        SUSAN A. SCHWARTZ

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-626 |
| | § | Judge Mazzant |
| BITTREX, INC.; | § | |
| EXCEL TITLE GROUP, LLC; | § | |
| JASON M. FORGEY; and | § | |
| FORGEY LAW GROUP, | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANT BITTREX, INC.'S ORIGINAL ANSWER TO EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC'S CROSS-CLAIMS

Defendant Bittrex, Inc. ("Bittrex") files its Original Answer to Excel Title Group, LLC, Jason M. Forgey, and Forgey Law Group PLLC's ("Cross-Plaintiffs") Cross-Claims (Dkt. No. 9), and would show the Court as follows:

### INTRODUCTION

Bittrex is an online trading platform where Bittrex's accountholders can trade certain cryptocurrencies, like Bitcoin. Bittrex's accountholders can also liquidate cryptocurrencies into U.S. Dollars on the Bittrex platform. As explained in its Original Answer and Statement of Claim to the Interpleaded Funds, Dkt. No. 4, Bittrex is the sole party entitled to property at issue, and it is not subject to any cross-claims by Cross-Plaintiffs for two primary reasons. First, Bittrex had no part in the underlying criminal conduct. The United States even admitted as much in a Motion for Reconsideration it filed in the original forfeiture action. *See United States v. $448,840.92 in United States Currency*, Case No. 4:21-cv-202-ALM, Dkt. 17, at 6 (the "EDTX Civil Forfeiture Action") ("But the funds paid to [Bittrex] are not forfeitable because [Bittrex] was not part of the underlying

1

criminal conduct."). Second, even if the Property were forfeitable (it was not), Bittrex and its customers are innocent owners of the Property, *see* 18 U.S.C. § 983(d)(1), which the United States again admitted in its same Motion for Reconsideration, *see* EDTX Civil Forfeiture Action, Dkt. 17, at 8 ("Bittrex has a valid innocent owner defense to forfeiture."). The alleged fraudster's money passed through Bittrex accounts – that is true. But by the time Bittrex was alerted to the alleged fraud, the fraudster had used the money to purchase cryptocurrencies from other Bittrex customers and then withdrawn the cryptocurrencies from Bittrex. Subsequently, the Government wrongly seized Bittrex's money. Bittrex is entitled to the seized money. Nothing about Cross-Plaintiffs' claim to the funds or purported cross-claims changes these indisputable facts.

## RESPONSES TO ALLEGATIONS

### A.  FACTUAL BACKGROUND

18.     In paragraph 18, Bittrex admits that Cross-Plaintiffs are potential claimants to the interpleaded funds but denies that they have any right or entitlement to the interpleaded funds.[1]

19.     Bittrex lacks sufficient information to admit or deny the allegations in paragraph 19.

20.     Bittrex lacks sufficient information to admit or deny the allegations in paragraph 20.

21.     Bittrex lacks sufficient information to admit or deny the allegations in paragraph 21.

22.     Bittrex lacks sufficient information to admit or deny the allegations in paragraph 22.

---

[1] Because the allegations pertaining to Bittrex begin in paragraph 18 of Cross-Plaintiffs' pleading, Bittrex will begin its paragraphs at number 18.

23.     Bittrex admits that funds totaling $448,480.92 had been previously wired from a Chase Bank account to Pacific Mercantile Bank, and that the account was one that had been opened by Prime Trust LLC. Bittrex lacks sufficient information to admit or deny the remainder of the allegations in paragraph 23.

24.     In paragraph 24, Bittrex admits that it was notified on September 22, 2020 that a warrant had been issued, and that $448,480.92 had been debited from the Pacific Mercantile Bank account ▉▉▉▉ Bittrex also admits that the account was frozen on September 3, 2020. Bittrex states that the search warrant was obtained by Walter Carter, a commissioned peace officer by the City of Garland, Texas, and that the search warrant was signed by Natalie Banuelos, Municipal Judge of the City of Garland, Texas. Bittrex admits that the location listed in the warrant was Pacific Mercantile Bank, N.A., 949 South Coast Drive, 3rd Floor, Costa Mesa, CA 92626. Bittrex also admits that the United States ultimately obtained or seized the funds, but Bittrex lacks sufficient information to admit or deny how the United States came to possess those funds.

25.     Bittrex lacks sufficient information or admit or deny the allegations in paragraph 25.

26.     Bittrex lacks sufficient information to admit or deny the allegations in paragraph 26.

27.     No response is required to paragraph 27.

**B.     CLAIM 1: CONSTRUCTIVE TRUST**

28.     To the extent Cross-Plaintiffs make allegations against Bittrex in paragraph 28, Bittrex denies the allegations.  Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

29.     Bittrex admits the allegations in paragraph 29.

30.     Bittrex admits only that $448,840.92 was deposited into a Pacific Mercantile Bank account, opened by Prime Trust LLC to hold as a custodian for Bittrex. Bittrex lacks sufficient information to admit or deny the remainder of the allegations in paragraph 30.

31.     Bittrex denies the allegations in paragraph 31.

32.     Bittrex denies the allegations in paragraph 32. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought

### C.     CLAIM 2: UNJUST ENRICHMENT

33.     To the extent Cross-Plaintiffs make allegations against Bittrex in paragraph 33, Bittrex denies the allegations. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

34.     Bittrex admits the allegations in paragraph 34.

35.     Bittrex admits only that $448,840.92 was deposited into a Pacific Mercantile Bank account, opened by Prime Trust LLC to hold as a custodian for Bittrex. Bittrex lacks sufficient information to admit or deny the remainder of the allegations in paragraph 35.

36.     Bittrex denies the allegations in paragraph 36.

37.     Bittrex denies the allegations in paragraph 37. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

### D.     CLAIM 3: MONEY HAD AND RECEIVED

38.     To the extent Cross-Plaintiffs make allegations against Bittrex in paragraph 38, Bittrex denies the allegations. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

39.     Bittrex admits the allegations in paragraph 39.

40. Bittrex admits only that $448,840.92 was deposited into a Pacific Mercantile Bank account, opened by Prime Trust LLC to hold as a custodian for Bittrex. Bittrex lacks sufficient information to admit or deny the remainder of the allegations in paragraph 40.

41. Bittrex lacks sufficient information to admit or deny the allegations in paragraph 41.

42. Bittrex admits only that on September 3, 2020, Prime Trust contacted Bittrex about $448,840.92 that had been transferred to the Pacific Mercantile Bank account ███████ asking whether Bittrex would like to reverse this transfer. Bittrex investigated the matter and learned that (1) an accountholder at Bittrex had deposited this $448,840.92 with Bittrex (through the Pacific Mercantile Bank account), (2) based on that deposit, Bittrex credited that amount to the accountholder's Bittrex account, (3) with this account balance, the accountholder purchased certain cryptocurrencies from other Bittrex accountholders, and (4) after making these purchases, the accountholder then withdrew these cryptocurrencies from Bittrex. All these events occurred before Prime Trust contacted Bittrex on September 3, 2020. Bittrex denies the remainder of the allegations in paragraph 42.

43. Bittrex denies the allegations in paragraph 43. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

### E.     CLAIM 4: TEXAS UNIFORM FRAUDULENT TRANSFER ACT

44. To the extent Cross-Plaintiffs make allegations against Bittrex in paragraph 44, Bittrex denies those allegations. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

45. Bittrex admits the allegations in paragraph 45.

46.     Bittrex admits only that $448,840.92 was deposited into a Pacific Mercantile Bank account, opened by Prime Trust LLC to hold as a custodian for Bittrex. Bittrex lacks sufficient information to admit or deny the remainder of the allegations in paragraph 46.

47.     Bittrex lacks sufficient information to admit or deny the allegations in paragraph 47. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

48.     Bittrex denies the allegations in paragraph 48 to the extent Cross-Plaintiffs allege that Bittrex committed any alleged wrongdoing against Cross-Plaintiffs. Bittrex lacks sufficient information to admit or deny the remainder of the allegations in paragraph 48.

49.     To the extent Cross-Plaintiffs make allegations against Bittrex in paragraph 49, Bittrex denies those allegations. Bittrex denies that Cross-Plaintiffs are entitled to any of the relief sought.

**F.     DISCOVERY RULE**

50.     Bittrex denies the allegations in paragraph 50.

**G.     PRAYER**

51.     No response is required to the statements in Cross-Plaintiffs' Prayer.

**<u>DEFENSES AND AFFIRMATIVE DEFENSES</u>**

52.     Bittrex's assertion of any defense is not an admission or concession that Bittrex bears the burden of proof on any asserted defense. The burden of proof on any defense shall be determined by applicable law.

53.     Cross-Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

54.     Cross-Plaintiffs' claims are barred, in whole or in part, because Bittrex obtained the $448,840.92 "in the due course of business, in good faith, and for valuable consideration[.]" *Matter*

*of Approximately $80,600.00*, 537 S.W.3d 207, 212 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

55.    Cross-Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

56.    Cross-Plaintiffs' claims asserted under the Texas Uniform Fraudulent Transfer Act are barred, in whole or in part, because Bittrex is a good faith transferee who took the $448,840.92 for a reasonably equivalent value. Tex. Bus. & Com. Code Ann. § 24.009 (a)-(d).

57.    Cross-Plaintiffs' claims asserted under the Texas Uniform Fraudulent Transfer Act are barred, in whole or in part, because Bittrex's actions were done for a "legitimate purpose." *See In re 1701 Commerce, LLC*, 511 B.R. 812, 841 (Bankr. N.D. Tex. 2014).

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Bittrex respectfully prays (1) that Cross-Plaintiffs take nothing by their cross-claims, (2) that the Court enter an order permitting the Government to deposit the funds at issue with the Clerk of Court and ordering that the action shall proceed as an interpleader, and (3) that the Court issue judgment that Bittrex is entitled to the entire amount of the interpleaded funds, its costs, and any other relief deemed just and proper.

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX  78701-3234
(512) 495-6300 – Telephone
(512) 495-6399 – Facsimile

By:  _____
Christopher D. Sileo
State Bar No. 24027977
csileo@scottdoug.com

Santosh Aravind
State Bar No. 24095052
saravind@scottdoug.com

**ATTORNEYS FOR BITTREX, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon counsel for all parties via the ECF electronic noticing system for the Eastern District of Texas on November 1, 2022.

Christopher D. Sileo

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **No. 4:21-cv-00202** |
| | § | **Judge Mazzant** |
| **$448,840.92 IN UNITED STATES** | § | |
| **CURRENCY** | § | |
| **Defendant** | § | |

## UNITED STATES'S MOTION FOR RECONSIDERATION

### I. INTRODUCTION

The United States respectfully requests the Court to reconsider its Memorandum Opinion and Order (Order) (*dkt*. 13). The government no longer believes it can establish forfeitability of the Defendant Property, but even if it could, Claimant Bittrex is able to establish a valid innocent owner defense. Therefore, the government cannot prevail in the instant matter. Moreover, because Claimant Forgey's claim is not actually a counterclaim against the government and Forgey cannot be prejudiced by the dismissal, the government's Motion to Dismiss should be granted.

### II. LEGAL BASIS FOR RECONSIDERATION

The court may reconsider an interlocutory order pursuant to Rule 54(b), which allows courts to revise any order or other decision that adjudicates fewer than all the claims or the rights and liabilities of the parties at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. FED. R. CIV. P. 54(b); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Under Rule 54(b), the trial court is free to reconsider and reverse its interlocutory decision for any reason it deems sufficient, even in the absence of new evidence

or an intervening change in or clarification of the substantive law. *Shah v. Plano Indep. Sch. Dist.*, 2018 WL 5795456, *3 (E.D.Tex. Nov. 5, 2018) (Mazzant, J.). (citing *Austin*, 864 F.3d at 336 (citations omitted)). Rule 54(b) allows parties to seek reconsideration of interlocutory orders and allows the court to revisit—and revise—any other order or decision that does not end the action. *Id.*, citing *Dolores Lozano v. Baylor Univ.*, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (citations omitted). The Fifth Circuit has explained that the power afforded to district courts under Rule 54(b) flexible and reflects the inherent power of the rendering district court to afford such relief from interlocutory orders as justice requires. *Austin*, 864 F.3d at 336-37 (citing *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). That's why the district court is allowed to reconsider and reverse a prior interlocutory decision for "any reason it deems sufficient." Here, the government respectfully presents grounds that provide a sufficient reason for the district court to reconsider, revisit, and revise its previous ruling on the government's Motion to Dismiss.

## III. RELEVANT FACTS

### A. Timeline of Events Leading to the In Rem Action

On August 28, 2020, claimant Jason Forgey, acting on behalf of Excel Title Group, LLC, and Forgey Law Group PLLC, fell victim to a Business Email Compromise scam. This unfortunate situation, which has befallen many title companies in recent times, occurs when victims receive an email containing bogus wiring instructions for a seemingly legitimate corporate purpose. In this case, Forgey authorized a wire transfer of $1,237,792.41 on September 1, 2020, to an account he mistakenly believed was the proper account to receive the proceeds of a legitimate and pending real estate transaction. The next day, Forgey realized this potential

fraud, so he immediately initiated a recall notice through his bank. Fortunately, his bank was able to recall $797,817.92 from the initial receiving account. However, investigators learned that the remaining $448,840.92 had already been forwarded to a "Prime Trust" non-depository trust account at Pacific Mercantile Bank (PMB) in California. Investigators in Texas reached out PMB to alert them of the fraud and a federal seizure warrant was subsequently obtained and served on PMB on September 23, 2020. The U.S. Secret Service initiated an administrative forfeiture action against the funds located in the account. Forgey timely filed a petition for remission as an owner and victim of fraud, pursuant to 28 C.F.R. § 9.4, and Bittrex, a cryptocurrency exchange, also timely filed its claim.

In its claim, Bittrex provided documents demonstrating a custodial relationship between PMB and Bittrex, namely that PMB was holding the funds as custodian for Bittrex while Bittrex had already credited their customer's—the fraudster's—account with an equal value of cryptocurrency. Nevertheless, at the time the claim was filed, attorneys for the government and the U.S. Secret Service believed that because the actual dollars were still in the PMB account, they were still potentially forfeitable as proceeds of fraud. The United States Attorney's Office decided to pursue the forfeiture by filing a verified complaint supporting a civil in rem forfeiture action and did so timely on March 16, 2021.

## B.    The Decision to Dismiss

Bittrex timely filed its claim and answer in the civil judicial forfeiture action on June 22, 2021, and July 12, 2021, respectively. While not necessary to preserve his property interest (which had already been preserved by way of his filing a remission petition), Forgey also filed a claim on June 21, 2021. Throughout July and August 2021, the government more closely

examined Bittrex's claim and determined that Bittrex was in fact an innocent owner of the Defendant Property. Bittrex provided additional documents to the government that showed that Bittrex had a customer to whose account the fraudulent proceeds were credited, and Bittrex allowed that customer to trade those funds as cryptocurrency immediately upon deposit of the fiat currency into the Prime Trust Account at PMB and before Bittrex was put on notice by law enforcement of any fraud. These transactions took place without moving the fiat currency out of PMB, which is why the bank still showed the funds on deposit. After consulting with the Money Laundering Asset Recovery Section of the Department of Justice in Washington, the U.S. Attorney's Office was advised that it could not legally prevail in the *in rem* action, and the best course of action at that point was to dismiss the case with the government and Bittrex agreeing to bear their own attorney's fees.

There remained, however, a pending criminal investigation into the underlying Business Email Compromise scheme. The government decided—as it has in many, many civil forfeiture actions—- that the most prudent course of action was to dismiss the civil case and pursue the forfeiture of proceeds in an *in personam* criminal action, and that it could do so by seizing and forfeiting substitute assets, if a conviction was secured, in lieu of the actual funds which had long since disappeared.

C.     **Government's Communication with Forgey and Failure to Respond to the Objection**

While the administrative and civil judicial forfeiture actions were pending, agents with the U.S. Secret Service and the undersigned Assistant United States Attorney were contacted several times and had numerous conversations with Jason Forgey about the status of the forfeiture action. It was clear this criminal event was a devastating one, and the government

assured Forgey it would do all it could to prevail in the civil forfeiture action so that it could then restore the proceeds to Excel Title Group through the appropriate Justice Department policies and procedures. Consistent with those policies and procedures, Forgey submitted his petition for remission.  But all along, Forgey's ability to recover from forfeited proceeds was entirely contingent on the government's ability to forfeit those funds in the first place. Forgey could only recover the proceeds if—and only if—the government prevailed in the civil action.

After the government realized that it could not prevail in the civil action, and sometime between August 10 and August 27, 2021, the undersigned Assistant United States Attorney called Mr. Forgey to let him know the government would be dismissing the action but that it would continue to pursue the forfeiture in a criminal proceeding. Although Mr. Forgey was understandably upset, no further communication between Mr. Forgey, or his title company's legal counsel, and the government took place. The government filed the Motion to Dismiss on Friday, September 3, 2021.

Forgey's objection to the Motion was a surprise.  Because this was an action initiated by the government, and because such dismissals are routinely granted in the Eastern District of Texas, and Mr. Forgey's interests were protected by his rights as a crime victim to receive restitution in any ensuing criminal action, the government took for granted the strength of its position and did not prepare a response to the objection.   Retrospectively, the government realizes that responding to Forgey's objection would have helped explain the factual and legal bases for the dismissal.  The government assures this Court it will not take such matters for granted in the future.

# IV. ANALYSIS

**A.     The government cannot prevail in the *in rem* forfeiture action.**

1.     <u>The government cannot establish forfeitability.</u>

Because this is a civil forfeiture case *in rem*, the government has to show that the Defendant Property itself is forfeitable. If a wrongdoer used a blue pickup truck to commit offense, the government cannot forfeit the wrongdoer's red pickup truck instead. When a wrongdoer uses forfeitable money to purchase something like Bitcoin, the Bitcoin becomes forfeitable because the "taint" follows the property. *See*, *e.g.*, *United States v. U.S. Currency in the Amount of $43,920.00*, 2010 WL 1486005, *3 (W.D.Mo. Apr. 14, 2010) (if defendant used fraud proceeds to gamble, any gambling winnings are traceable to the fraud proceeds). But the funds paid to the Bitcoin exchange are not forfeitable because the Bitcoin exchange was not part of the underlying criminal conduct. The tainted—and, thus forfeitable—proceeds would be the Bitcoin the wrongdoer bought. It's the connection to the wrongdoing that makes the Bitcoin forfeitable.

When the government filed the instant action, it proceeded on the theory that the Defendant Property was proceeds of criminal activity at the time of the seizure. (*Dkt.* 1 at 2). Following further investigation and discussion with forfeiture experts in Washington, the government has learned that forfeiture theory is no longer viable. On September 2, 2020, Bittrex received $448,840.92 from its customer and in turn, immediately credited that customer's account with an equivalent amount of cryptocurrency. Once the proceeds were converted into cryptocurrency, they were no longer represented in the Prime Trust Account at PMB. At the time of the seizure, the Prime Trust funds were actually Bittrex's revenue from the sale of

cryptocurrency and not forfeitable proceeds of criminal conduct. The proceeds of the criminal

scheme had already been returned to the fraudster in the form of the cryptocurrency, or whatever

else that customer converted it into. Notably, within three hours Bittrex's customer had traded

and withdrawn the full amount, and no funds remained in that account after September 3, 2020.

Much like when a drug dealer uses his ill-gotten proceeds to purchase a car from a legitimate car

dealership, the government cannot seize the cash from the car dealership just because the car is

long gone.

2. Even if the property were forfeitable, Bittrex is an Innocent Owner and Forgey is not.

The law provides that an innocent owner's interest in property shall not be forfeited. In

order to prevail on a claim as an innocent owner, a claimant must prove certain facts by a

preponderance of the evidence, namely, the claimant must first prove that he acquired an

ownership interest in the specific property to be forfeited. An "ownership interest" includes a

leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest

from someone else. An "owner" does not include a person who is simply a general, unsecured

creditor, a bailee, or a nominee who exercises no dominion or control over the property.

In this case Claimant Bittrex asserted that it acquired an innocent ownership interest in

the property after the date the United States contends that the property was used, or was intended

to be used, for illegal activity. If Bittrex's interest arose after the illegal act, with certain

exceptions not applicable here, it must prove that it is an owner of the property and was a bona

fide purchaser of the interest in the property; and that it did not know, and was reasonably

without cause to know, that the property was used or was intended to be used for an illegal

purpose. Both facts must be established. The Model Jury instructions for "Interest Acquired After Illegal Conduct, 18 U.S.C. 983(d)(3)" provide this helpful illustration:

> For example, a drug dealer uses his farm to grow marijuana. The farm is forfeitable. The drug dealer removes all his crops and sells the farm to Jane Buyer for $100,000.00. Jane Buyer's interest arose after the illegal act, but since she paid money for the farm and did not know of the illegal use and had no reason to know, she would be an innocent owner and her interest in the property would not be forfeited. If, however, the drug dealer gave his property to Sally Girlfriend, since she was not a bona fide purchaser, her interest would be forfeited. And, if the drug dealer sold the property to Jane Buyer, but before she bought the property, she saw the marijuana being grown on the property, her interest would be forfeited.

Title 18 U.S.C. Sec. 983(d)(6) defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and does not include (i) a person with only a general unsecured interest in, or claim against, the property or estate of another; (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or (iii) a nominee who exercises no dominion or control over the property.

The term "bona fide purchaser" is a commercial term and means a person who buys property in an arm's-length transaction, that is, in good faith and for equivalent value.

There are three straightforward reasons why Bittrex is entitled to the Defendant Property. First, Bittrex is an owner because it acquired the funds by valid assignment of an ownership interest when its client transferred the money into their own account at Bittrex, via Prime Trust at PMB. Second, Bittrex acquired the funds and in return, exchanged an equivalent value of cryptocurrency to its customer, making Bittrex a "bona fide purchaser." Finally, Bittrex exchanged the funds before it knew of its fraudulent origin. Accordingly, Bittrex has a valid innocent owner defense to forfeiture.

Conversely, Forgey has no ownership interest in Defendant Property. As explained above, the Defendant Property is Bittrex's commission payment that it received in exchange for converting the customer-fraudster's funds into cryptocurrency. The government (and by extension Forgey) would have an ownership interest in the fraudster's cryptocurrency, but not in Bittrex's earnings.

**B.   Forgey cannot be prejudiced by the dismissal because he has no ownership interest in the Defendant Property.**

To be prejudiced by the dismissal, Forgey would need to have an ownership interest in the funds subject of this *in rem* forfeiture suit. Because Bittrex was an innocent owner of the Defendant Property, Forgey had no ownership interest in those funds. In reality, Forgey will be prejudiced if this case is *not* dismissed because he stands more to lose in terms of time and expense if the case were to proceed to trial, only to lose on the merits.

The government itself cannot forfeit the Defendant Property. Because Forgey's interest in the Defendant Property is completely derivative of the government's ability to forfeit the Defendant Property, he cannot suffer prejudice. A party cannot suffer prejudice unless it loses some substantive right or property interest that it could have asserted itself. There is no way that Forgey could have seized and independently expropriated the Defendant Property. His only potential interest in the Defendant Property derived from its forfeitability.

**C.   Forgey mistakenly asserts his claim as a "counterclaim."**

Forgey's characterization of his claim as a "counterclaim" to challenge the availability of dismissal under Rule 41(a)(2) is misplaced. Specifically, Forgey has not filed a counterclaim against the government. He has only filed a claim to the Defendant Property, which makes him an intervenor. *United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 34 (1st Cir.

1991)(Fifth Circuit declined to follow on other grounds); *United States v. 1866.75 Board Feet and 11 Doors and Casings*, 2008 WL 839792 (E.D.Va. 2008). Because he is an intervenor, Forgey's standing is equal to, and cannot be any greater than, the standing of the original parties. 7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1920 (3d ed.) (an intervenor "has equal standing with the original parties"). Because the government has no right to forfeit the Defendant Property, Forgey cannot do so either. If Forgey is allowed to stand in the way of the dismissal of a case that the government has determined has no merit, he would be effectively given the same power of the government—despite that no individual citizen has forfeiture authority.

Indeed, the case law on this is scant but it does exist. In *United States v. One 1990 Arctic Cat EXT Snowmobile* (1996 WL 132107, *1-2 (S.D.N.Y. 1996), that court held that "a claim is not a counterclaim that claimant has a right to maintain;" and that the government has a right to dismiss a civil forfeiture case even if a claim is pending. *Id.* That's because the government— and only the government—has the right to bring a civil forfeiture action based on violations of federal criminal law.

## V. ATTORNEYS' FEES

In the event this Court determines that the Order denying the government's motion to dismiss should stand, the government respectfully requests that the Court make a ruling that the government will not be responsible for any other party's attorneys' fees that are incurred as a result of contesting the forfeiture because it is not the government's choice to pursue the *in rem* action.

# CONCLUSION

For the foregoing reasons, the government respectfully requested this Court reconsider its original Order and enter a new order granting the Motion to Dismiss.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_/s/ Robert Austin Wells_
ROBERT AUSTIN WELLS
Assistant United States Attorney
Texas Bar No. 24033327
110 N. College, Suite 700
Tyler, TX 75702
Tel: (903) 590-1400
Fax: (903) 590-1436
Robert.wells3@usdoj.gov

CAMELIA LOPEZ
Assistant United States Attorney
State Bar No. 24036990
101 East Park Blvd., Suite 500
Plano, Texas 75074
(972) 509-1201
(972) 509-1209 (fax)
Camelia.Lopez@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via electronic filing to all counsel of record on this the 20th day of December, 2021.

 /s/ Robert Austin Wells
ROBERT AUSTIN WELLS
Assistant United States Attorney

**CERTIFICATE OF CONFERENCE**

Although this motion is exempt from the local certificate-of-conference rules, I nonetheless conferred with counsel for both sets of claimants. I hereby certify that I have conferred with counsel for claimant Bittrex and learned Bittrex is unopposed to the relief sought herein. I have conferred with counsel for claimants Jason Forgey and Excel Title Group, LLC, Susan Schwartz, and learned that those claimants seek to continue negotiations and discussions with the government to resolve their dispute. The government files this motion today in light of the potential application of a deadline to file a motion to reconsider, but the government will continue to work with Jason Forgey and Excel Title Group over the coming two weeks to determine whether an agreement can be reached concerning the future of this lawsuit.

 /s/ Robert Austin Wells
ROBERT AUSTIN WELLS
Assistant United States Attorney