## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Wind Down Entity. | (Jointly Administered) |
| | **Obj. Deadline: January 12, 2024 at 4:00 p.m. (ET)** |
| | **Hrg. Date: January 31, 2024 at 10:00 a.m. (ET)** |

## BITTREX INC.'S SUBSTANTIVE OBJECTION TO
## PROOF OF CLAIM FILED BY FTX TRADING LTD., *ET AL.* (CLAIM NO. 1099)

Bittrex, Inc. ("BUS"), one of the debtors and debtors in possession in the above-captioned case, through its undersigned counsel, hereby files this substantive objection to Claim No. 1099 (the "Claim"), filed by FTX Trading Ltd., et al. (the "Objection") and respectfully states as follows:

### PRELIMINARY STATEMENT

FTX Trading Ltd., Alameda Research Ltd. ("Alameda"), Alameda Research LLC, and certain of their affiliates (collectively the "FTX Debtors") filed the Claim for an unliquidated and contingent amount arising from that certain Master Digital Currency Loan and Security Agreement dated December 11, 2018, originally by and between BUS and Alameda Research LLC (as amended, the "Loan Agreement"). As will be shown below, the Claim must be disallowed and expunged as it does not satisfy the elements necessary to recover and avoid a transfer of an interest of the FTX Debtors' property to BUS under sections 544, 547(b), 548 (a)(1)(B) and 550(a) of the United States Bankruptcy Code (the "Bankruptcy Code"). By this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle WA 98104.

Objection, BUS seeks the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), disallowing and expunging the Claim.  In support of this Objection, BUS respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the above-captioned chapter 11 cases (these "Chapter 11 Cases"), the above-captioned debtors and debtors in possession (the "Debtors"), property of the Debtors' estates, and these matters under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), BUS consents to the entry of a final judgment or order with respect to this Objection if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of these Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief sought herein are section 502 the Bankruptcy Code, Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**GENERAL BACKGROUND**

5.      Bittrex LLC was founded in 2014 in Seattle, Washington.  Bittrex and its affiliated Debtors operated a cryptocurrency exchange as part of a larger group of companies.  The Debtors, together with certain non-debtor entities (collectively, "Bittrex") provided an online platform for access to the exchange to customers in different jurisdictions.

6.      As part of a series of restructurings and expansions, in 2016, Bittrex LLC was converted to a corporation, becoming BUS, and in 2018 became a wholly owned subsidiary of its ultimate parent, Aquila Holdings.  Bittrex expanded its international reach in 2018, establishing Bittrex Malta, which was branded asBittrex International Inc.  In 2019, Bittrex moved its international operations to Liechtenstein and established Bittrex Global GmbH. ("Bittrex Global").

7.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their property as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

8.      Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration").

9.      On October 31, 2023, the Court entered the *Order Confirming the Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* [D.I. 517].

**CLAIMS PROCESS**

10.     On May 24, 2023, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023, as the general bar date for filing proofs of claim and November 4, 2023 as the governmental bar date (collectively, the "Bar Dates") [D.I. 107] (the "Bar Date Order").

11.     On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I. 85-92] (collectively, the "Schedules").

12.     On June 14, 2023, and June 23, 2023, BUS filed its amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7-8 filed in Case No. 23-10598-BLS] (the "Amended Schedules").

13.     On August 13, 2023, the FTX Debtors filed the Claim asserting contingent unliquidated claims for avoidance actions against BUS.

**THE FTX DEBTORS' CLAIM**

14.     In December 2018, Alameda Research LLC and BUS entered into the Loan Agreement under which BUS agreed to lend Alameda Research LLC certain digital currency, with an original value of approximately $3.5 million, upon the terms of certain concurrently issued term sheets.  Loan Agreement, Ex. B.[2]

15.     The Loan Agreement provided that:

---

[2] A true and correct copy of the Loan Agreement is attached as Exhibit 1 to the *Declaration of David Maria in Support of Bittrex Inc.'s Substantive Objection to Proof of Claim Filed by FTX Trading Ltd., et al. (Claim No. 1099)* (the "Maria Declaration"), filed contemporaneously herewith.

11212046v.7

Borrower shall, at all times during which any Loans remain outstanding, maintain on deposit in the Collateral Account an amount in Digital Currency (the "Digital Currency Collateral")[3] no less than the Collateral Margin Call Rate specified in the Loan Term sheet multiplied by the aggregate value of the Digital Currency loaned to Borrower under all outstanding Loans as of the Loan Effective Date for such loans calculated at the Spot Rate.[4]

Loan Agreement, 5.3(a)

16.    Furthermore, it provided that:

If at any time while a Loan is outstanding, (x) the value of the Digital Currency borrowed pursuant to such Loan as calculated at the Spot Rate (such rate, the "Margin Call Spot Rate") is greater than (y) (i) the value of the Digital Currency at the "Collateral Spot Price" indicated in the Loan Term Sheet or (ii) the prior Margin Call Spot Rate, as applicable, by the Margin Differential or more, Lender shall have the right to require Borrower to deposit additional Digital Currency Collateral so that the value of the Collateral in the Collateral Account with respect to such loan is at least the "Collateral Margin Call Rate" indicated in the Loan Term Sheet relative to the value of the borrowed Digital Currency at the Margin Call Spot Rate (the "Additional Collateral").

Loan Agreement, 5.3(b)(1)

17.    The Loan Agreement contained a provision that stated that a Margin Call may result if 75% of Digital Currency Loan USD Equivalent Value at time of disbursement (issuance value) is not met in the account (the "Margin Call Rate").  Loan Agreement, Ex. B.  Moreover, the Borrower's failure to deposit Additional Collateral in the Collateral Account[5] within "six (6) hours (twelve (12) hours on a day that is not a Business Day)" from the time the Lender sends a Notification[6] to deposit Additional Collateral in the Collateral Account (as defined in the Agreement) constituted an Event of Default.  Loan Agreement, 5.3(b)(ii).

---

[3]    Per the Loan Agreement, "Digital Currency" means the digital currency specified in the Loan Term Sheet.

[4]    Per the Loan Agreement, "Spot Rate" means the spot rate published by Lender for the applicable Digital Currency.

[5]    Per the Loan Agreement, "Collateral Account" means an account of Borrower maintained with BUS specified in the Loan Term Sheet.

[6]    Per the Loan Agreement, if the Lender required the Borrower to contribute Additional Collateral, Lender

18.     The digital currency loaned by BUS to Alameda Research LLC was placed into the Collateral Account on BUS's crypto exchange and served as collateral for the loans.  In other words, BUS provided Alameda Research LLC with the collateral for its own loan obligations; the digital currency placed into the Collateral Account was never separate property of Alameda Research LLC or any of the other FTX Debtors.

19.     In early 2019, Alameda Research LLC informed Bittrex that it intended to operate primarily out of offices in Hong Kong.  Because BUS had ceased servicing non-U.S. customers upon establishing its international arm, Alameda Research LLC applied for a corporate account at Bittrex International in April 2019.  The application was approved, the Collateral Account was moved to Bittrex International, and Alameda adopted the Bittrex International Terms of Service.  When Bittrex Global became operational in October 2019, the Collateral Account was moved from Bittrex International to Bittrex Global.  As with all customers that were moved from Bittrex International to Bittrex Global, Alameda adopted the Bittrex Global Terms of Service.

20.     On March 14, 2022, Alameda Research LLC and BUS entered into an amended term sheet (the "Amended Term Sheet").  On April 8, 2022, Alameda Research LLC assigned its obligations under the Loan Agreement and any term sheets issued pursuant thereof, to Alameda (the "Assignment").[7]  At the time of the Assignment, the value of the Collateral Account was approximately $69.8 million.  The Amended Term Sheet provided that a:

> Margin Call may result if 35% of Digital Currency Loan USD Equivalent Value not met in the account.  Since loan payback required in the cryptocurrency provided, drop due to market conditions only may not result in Margin Call. Bittrex has discretion whether to Margin Call if account USD value drops below 35% of issuance value.

---

shall send an email notification (the "Notification") to the Borrower's email address setting forth: (y) the Margin Call Spot Rate and (z) the amount of Additional Collateral required based on the Margin Call Spot Rate.

[7] A true and correct copy of the Assignment is attached as Exhibit 2 to the Maria Declaration.

Amended Term Sheet, Ex. B.

21.      Thus, following the Assignment (and in fact well before), the Collateral Account was held on the Bittrex Global exchange, separate and apart from the exchange maintained by BUS.  BUS had no right to access the digital currency in the Collateral Account once it was hosted on the Bittrex Global exchange, nor did BUS have the ability to control Bittrex Global's decisions with respect to the Collateral Account.

22.      As the eventual collapse of the FTX Debtors approached, Alameda began withdrawing large amounts of digital currency from the Collateral Account.  Bittrex Global froze the Collateral Account on or about November 8, 2022.  The digital currency that was frozen at that time remains with Bittrex Global, and, at no point was the digital currency, or the value thereof, transferred from Bittrex Global to BUS.  BUS does not have access to those assets, as they remain in the possession and control of Bittrex Global.  Indeed, these assets are not identified on BUS's Schedules or Amended Schedules and quite simply are not assets of its estate.

## RELIEF REQUESTED

23.      For the reasons set forth in greater detail below, BUS seeks the entry of the Proposed Order disallowing and expunging the Claim in its entirety.

## BASIS FOR RELIEF

24.      Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5), 101(10).

### A.      The Claim Fails to Allege Any Liability of BUS to Any of the FTX Debtors Other than Alameda.

25.      Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  A proof of claim

filed in accord with the Bankruptcy Rules is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). It benefits from prima facie validity if it "alleges facts sufficient to support a legal liability." *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). "A claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim." *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 543 (Bankr. D. Del. 2016). In determining whether a proof of claim contains sufficient allegations a reviewing court will assume the allegations are true and ask whether the facts establish the necessary elements of a claim. *Allegheny*, 954 F.2d at 173.

26.     Here, the FTX Debtors filed one proof of claim on behalf of 99 entities. Save for Alameda, the proof of claim "fails to allege facts sufficient to support the claim," and thus fails to satisfy the first prong of *Allegheny*. *Id.* at 173. *See In re Mallinckrodt Plc*, No. 20-12522-JTD, 2022 WL 3545583 at *5 (D. Del. Aug. 18, 2022) (holding that the Bankruptcy Court did not err in its holding that where the proofs of claim did not allege any activity by any of the debtors that the appellant asserted, the proofs of claim were so deficient that they ultimately failed to constitute a claim and were consequently disallowed with respect to those entities).

27.     The Claim does not sufficiently allege an avoidance action, as the FTX Debtors failed to allege any conduct by any of the other 98 entities or any relationship between those entities and BUS, much less an antecedent debt. Moreover, it appears that the claims were filed out of an abundance of caution without any real investigation by the other FTX Debtors, even though they were signed under penalty of perjury.[8]

---

[8]     Indeed, the claim was signed once on behalf of all 99 FTX Debtors by their bankruptcy counsel.

28.     Accordingly, the Claim must be disallowed and expunged with respect to the other 98 entities.

**B.     Alameda Fails to Establish Prima Facie Evidence of a Recoverable Avoidable Transfer Under 11 U.S.C. § 547.**

29.     With respect to Alameda, the FTX Debtors have not alleged sufficient facts to establish that BUS received an avoidable preferential transfer because they do not, and cannot, establish that BUS ever received the alleged transfer or any benefit therefrom.  The frozen assets, to the extent giving rise to a preference at all, remain in the possession and control of Bittrex Global, and the FTX Debtors' alleged preference claims must be asserted against Bittrex Global, who is not a debtor in this or any other bankruptcy proceeding in the United States.

30.     Under sections 547(b) and 550(a) of the Bankruptcy Code, a plaintiff must prove seven elements to successfully avoid and recover a preferential transfer.  The elements are: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) on or within the 90 days before the date of the filing of the bankruptcy petition; (6) that enabled the creditor to receive more than it would otherwise have received if the transfer had not been made and the case had proceeded under chapter 7; and (7) that is recoverable from the initial transferee, the mediate or immediate transferee of the initial transferee, or the entity for whose benefit such transfer was made.  11 U.S.C. §§ 547(b), 550(a).  Avoidability and recovery are distinct concepts, and avoidability does not automatically lead to recovery.  Although the avoidance of a transfer is necessary to recover from a transferee, avoidance of a transfer does not automatically entitle the trustee to recovery of the transfer or the value of the transfer.

31.     The term initial transferee is not defined in the Bankruptcy Code, but courts have considered the meaning of "transferee" for purposes of section 550 and have held that "in order

to be a "transferee" of the debtor's funds, one must (1) actually receive the funds, and (2) have full dominion and control over them, for one's own account, as opposed to receiving them in trust or as agent for someone else." *In re Parcel Consultants, Inc.*, 287 B.R. 41, 46 (Bankr. D.N.J. 2022). In defining the terms "dominion and control" courts have held that a "transferee must have the legal right to use the funds for whatever purpose he or she wishes, be it to invest in 'lottery tickets or uranium stocks." *Id*. at 46 (citing *In re Anton Noll, Inc.*, 277 B.R. 875, 879 (1st Cir. B.A.P. 2022).

32.     In determining whether a party is "the entity for whose benefit such transfer was made," under section 550(a)(1), courts have stated that to recover from such entity, the trustee must show that the benefit: (1) was actually received by the beneficiary; (2) is quantifiable; and (3) is accessible to the beneficiary. *In re Samson Res. Corp.*, No. 15-11934 (BLS), 2022 WL 3135288 at *7 (Bankr. D. Del. Aug. 4, 2022).

33.     BUS respectfully requests that the Claim be disallowed as a result of Alameda's failure to establish all of the elements required for the avoidance and recovery of a transfer under sections 547(b) and 550(a) of the Bankruptcy Code.

34.     *First*, BUS is not a "transferee" under section 550. BUS never received the cryptocurrency assets or any value arising from them. Moreover, the cryptocurrency assets are not under BUS's dominion or control, as it cannot access them, much less use them as it pleases. *Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC*), 458 B.R. 155, 158 (Bankr. D. Del. 2011) (quoting *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes").

11212046v.7

35.     *Second,* although, section 550(a)(1) contemplates recovery from "the entity for whose benefit such transfer was made," Alameda cannot recover on this ground because, while the value of the cryptocurrency assets may be quantifiable (despite no value being ascribed to it in the Claim), BUS never received the cryptocurrency assets nor any benefit therefrom and the cryptocurrency assets are not readily accessible by BUS.  Although a handful of cases have authorized a recovery from a party who never received the transfer at issue, a majority of those cases involved guarantors or parties who were otherwise contingently liable on the debt at issue and thus benefitted from the transfer by eliminating a debt even though no funds were received. *See Miller v. Monarch Apparel Grp., Inc. (In re J&M Sales Inc.)*, 644 B.R. 440, 443 (Bankr. D. Del. 2022) (holding that where the defendant's obligation to its factor were reduced whenever the factor received a payment from the debtor, the defendant constituted an entity for whose benefit such transfer was made under section 550).  Here, there is no contingent liability to Alameda that BUS shares with Bittrex Global under the Loan Agreement or otherwise and BUS is not a guarantor.  Therefore, this element cannot be satisfied.

36.     Accordingly, for the foregoing reasons, BUS respectfully requests that the court disallow and expunge the Claim.

**C.     Alameda Fails to Establish Prima Facie Evidence of a Fraudulent Transfer Under 11 U.S.C. § 548.**

37.     To assert a claim for avoidance of a constructively fraudulent transfer under 11 U.S.C. § 548, the plaintiff must allege that there was a transfer for less than reasonably equivalent value at a time when the debtors were insolvent.

38.     The Bankruptcy Code does not define "reasonably equivalent value," but the Third Circuit applies a totality of the circumstances test and considers: "(1) whether the transaction was at arm's length, (2) whether the transferee acted in good faith, and (3) the degree of difference

11

between the fair market value of the assets transferred and the price paid." *See Official Comm. Of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.)*, 428 B.R. 303, 323 (Bankr. D. Del. 2010) (citing *In re R.M.L, Inc.*, 92 F.3d at 1539, 153 (3d Cir. 1996)).

39.    Alameda cannot satisfy these elements for the reasons mentioned above.   The frozen assets are not in the possession of BUS but remain in the possession and control of Bittrex Global, who is not a debtor in this or any other bankruptcy proceeding in the United States.  BUS never received the cryptocurrency assets, never received any value arising from them, and the assets are not readily accessible by BUS.  However, to the extent the Court finds that BUS received a transfer, it would be "in satisfaction of an antecedent debt"[9] under the Loan Agreement, which constitutes reasonably equivalent value.  *See In re Amcad Holdings, LLC,* 579 B.R. 33, 42 (Bankr. D. Del. 2017) ("A payment that reduces the amount owed on a pre-existing obligation constitutes reasonably equivalent value").  Thus, the freezing of the assets in the Collateral Account by Bittrex Global cannot constitute a fraudulent transfer to BUS.

**D.    The Loan Agreement is a Forward Contract and Therefore Exempt from Avoidance Under 11 U.S.C. § 546(e)**

40.    In the unlikely event that the Court finds that Alameda satisfies the elements necessary to avoid and recover the transfer at issue from BUS, BUS respectfully submits that the Loan Agreement is a forward contract; thus the safe-harbor under section 546(e) applies.

41.    "Section 546(e) of the Bankruptcy Code provides forward contract merchants with a complete defense to avoidance actions."  *In re Borden Chemicals & Plastics Operating Ltd. P'ship*, 336 B.R. 214, 217  (Bankr. D. Del. 2006) (quoting *William v. Morgan Stanley Capital*

---

[9]    An antecedent debt is a debt that was incurred before the transfer of payment from the debtor.  *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 35 (Bankr. D. Del. 2011).

*Group Inc. (In re Olympic Natural Gas Co.)*, 294 F.3d 737, 740 (5th Cir. 2002).  To qualify for

this exception, the transfer recipient must demonstrate that: (1) it is a forward contract merchant;

and (2) the transfer to be avoided is a settlement payment.[10]  *In re Olympic Natural Gas Co.*, 294

F.3d at 740.

       42.      The Code defines a forward contract merchant as a "person whose business

consists of entering into forward contracts as or with merchants in a commodity" as defined in

section 761(8)."  11 U.S.C. § 101(26).  A forward contract is "a contract (other than a commodity

contract, as defined in section 761) for the purchase, sale, or transfer of a commodity [] with a

maturity date more than two days after the date the contract is entered into." 11 U.S.C. §§ 101(25).

Although there has been some debate as to whether cryptocurrency assets are "commodities,"[11]

several courts have said that they are.  *See, e.g., Commodity Futures Trading Comm'n v.

McDonnell*, 287 F. Supp. 3d at 213, 217 (E.D.N.Y. 2018) (holding virtual currencies are

commodities subject to CFTC regulatory protections); *Lagemann v. Spence*, 2020 WL 5754800,

at *11-12 (S.D.N.Y. May 18, 2020) (holding that plaintiffs had established their right to a

judgment under the CEA after the defendant misappropriated their cryptocurrency investments);

*Commodity Futures Trading Comm'n v. Gelfman Blueprint, Inc.*, 2018 WL 6320653, at *4

(S.D.N.Y. Oct. 2, 2018) (holding virtual currencies are encompassed in the definition of

commodity under the Commodity Exchange Act).  Furthermore, the fact that cryptocurrency may

be regulated as an "investment contract" under the Securities Act of 1933, "does not mean that a

---

[10]    Section 101(51A) defines settlement payments in the context of forward contracts as a "preliminary settlement payment, a partial payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or any other similar payment commonly used in the forward contract trade.  11 U.S.C. § 101(51A).

[11]    *Voyager Digital Holdings, Inc*., 649 B.R. 111, 119 (Bankr. S.D.N.Y. 2023) ("[r]egulators themselves cannot seem to agree as to whether cryptocurrencies are commodities that may be subject to regulation by the CFTC, or whether they are securities that are subject to securities laws, several courts have found that cryptocurrencies are commodities").

cryptocurrency is not a 'commodity' within the meaning of the [Commodity Exchange Act]." *Diamond Fortress Techs., Inc. v. EverID, Inc*., 2022 WL 1114528, at *7 (Del. Super. Ct. Apr. 14, 2022).

43.     Here, the Loan Agreement expressly provides that it is a forward contract, with a maturity date greater than two days after the date on which the contract was entered, and that BUS is a forward contract merchant.  Loan Agreement, 7.1(n).  Moreover, the transfer of property constituted a settlement payment, as courts interpret that term very broadly.  *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 422 (2d Cir. 2014) (holding that the "statutory definition [of settlement payment] should be broadly construed"); *Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer Sav. & Loan Ass'n*, 878 F.2d 742, 747 (3d Cir. 1989) (transferring securities to a safekeeping account for a purchaser constituted a settlement payment).

44.     Accordingly, BUS respectfully submits that the Loan Agreement is a forward contract and therefore benefits from the exception under section 546(e).

## **RESERVATION OF RIGHTS**

45.     Nothing in this objection shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; or (e) waiver of any of the Debtors' claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

11212046v.7

## NOTICE

46.     Notice of this Objection will be provided to the following parties or their respective counsel: (a) the Office of the United States Trustee; (b) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (c) the FTX Debtors.  BUS respectfully submits that, in light of the nature of the relief requested, no further notice is necessary.

## NO PREVIOUS REQUEST

47.     No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, BUS respectfully requests that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: December 29, 2023
      Wilmington, Delaware

Respectfully submitted,

*/s/ R. Stephen McNeill*
L. Katherine Good (No. 5101)
R. Stephen McNeill (No. 5210)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
    Email:  kgood@potteranderson.com
           rmcneill@potteranderson.com

*Conflicts Counsel to Bittrex, Inc.*

11212046v.7