```
 1                      UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3   IN RE:                       .  Chapter 11
                                  .
 4   DESOLATION HOLDINGS LLC,     .  Case No. 23-10597 (BLS)
     et al.,                      .
 5                                .  (Jointly Administered)
                                  .
 6                                .  Courtroom No. 1
                                  .  824 Market Street
 7        Wind Down Entity.       .  Wilmington, Delaware 19801
                                  .
 8                                .  Friday, January 12, 2024
     . . . . . . . . . . . . . . . .  9:30 a.m.
 9
             TRANSCRIPT OF PRETRIAL STATUS CONFERENCE HEARING
10             BEFORE THE HONORABLE BRENDAN L. SHANNON
                   UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtors:            Kenneth Enos, Esquire
13                               YOUNG CONAWAY STARGATT & TAYLOR LLP
                                 Rodney Square
14                               1000 North King Street
                                 Wilmington, Delaware 19801
15
                                 Patricia Tomasco, Esquire
16                               QUINN EMANUEL URQUHART
                                   & SULLIVAN LLP
17                               51 Madison Avenue
                                 22nd Floor
18                               New York, New York 10010

19   (APPEARANCES CONTINUED)

20   Audio Operator:            Dana L. Moore, ECRO

21   Transcription Company:     Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

<u>APPEARANCES (CONTINUED)</u>:

For Azim Ghader:          Donald Detweiler, Esquire
                          WOMBLE BOND DICKINSON (US) LLP
                          Hercules Plaza
                          1313 North Market Street
                          Suite 1200
                          Wilmington, Delaware 19801

                          Rhett DeHart, Esquire
                          WOMBLE BOND DICKINSON (US) LLP
                          5 Exchange Street
                          Charleston, South Carolina 29401

1        (Proceedings commenced at 9:33 a.m.)

2            THE COURT:  Good morning, all.  This is Judge

3   Shannon. I understand from the court reporter that all

4   necessary parties have joined.  This is a hearing in the

5   matter of Desolation Holdings LLC, also known as Bittrex, a

6   post confirmation case, Case No. 23-10597.

7            This is a further pretrial scheduled by the Court

8   and requested by counsel in anticipation of a trial in the

9   matter of certain claim objections and related litigation.

10  That trial is scheduled to start Tuesday, January 16th at 10

11  a.m.  The Court has cleared the 16th and most of the 17th for

12  this trial; just so that you know the time that you have got

13  to work with.

14           My understanding is that there are issues before

15  we turn to comments from counsel.  We did get a request to

16  Chambers for some assistance with respect to technology and

17  my understanding is that Ms. Bello, in my office, will be

18  contacting you to put you directly in touch with IT staff at

19  the Court and, hopefully, we can work those issues out. If

20  people need to come over early on Tuesday morning, we can

21  certainly make arrangements for that, but that should be

22  manageable.  So, hopefully that is responsive to the IT

23  issue.

24           With that, I would hear first from counsel for the

25  debtor.  Ms. Tomasco, good morning.  Its good to see you.

1    MS. TOMASCO:  Good morning, Your Honor. Its good

2  to see you as well.  For the record my name is Patty Tomasco.

3  I am with the law firm of Quinn Emanuel Urquhart & Sullivan.

4  I am here on behalf of David Maria, the plan administrator.

5  Mr. Maria is in the virtual courtroom along with me.

6    We have a presentation for the Court to sort of

7  level set where we are.  It's hard with the flurry of

8  activity over the last few weeks to know where the Court is

9  in terms of that activity. I think it would be helpful to the

10  Court to understand the issues for today to have a brief

11  review of some of the moving parts.

12    THE COURT:  That is perfectly fine.  We will give

13  Ms. Tomasco privileges to share the screen. I assume that is

14  what you are going to ask.

15    MS. TOMASCO:  Actually, I am not ambidextrous. I

16  cannot talk and preview at the same time.  So, I would ask

17  Mr. Enos to assist with the presentation.

18    THE COURT:  Dana, you got that?  Great.

19    So, Mr. Enos will handle that.  I think Chambers

20  did advise, I have another rather harry matter at 10:30.  So,

21  we have an hour for this discussion, but I don't disagree

22  that it would be helpful to have a discussion about precisely

23  what is on the table for next week.

24    So, Ms. Tomasco, you may proceed.

25    MS. TOMASCO:  Thank you, Your Honor.

1           If Mr. Enos could start the slide share.  I think

2  the most important thing to bring to the Court's attention,

3  if the Court has not read it, Docket Item 806 which was filed

4  by Mr. Ghader's counsel on December 26th, 2023.  You will

5  recall that at various times during the claim objection

6  process with Mr. Ghader, he has claimed that he should not

7  have had his account blocked because he was not living in

8  Iran at the time.

9           In Docket Item 806, again, a full three months

10  into the claim objection process, we now have Mr. Ghader's

11  concession that --

12           THE COURT:  I just want to make sure, is this the

13  errata sheet that you are referring to?

14           MS. TOMASCO:  Correct.

15           THE COURT:  Okay. I have it.

16           MS. TOMASCO:  Okay.  The location of Mr. Ghader

17  during the time that he had his account at Bittrex has been

18  the source of much consternation and confusion. I am not

19  saying that this errata completely resolves that issue, but,

20  at least, it is a mark in the ground, a bright line that we

21  can use with which to view other issues.

22           I put up this demonstrative because its very

23  helpful to me to parse between the laundry list of tort

24  claims that Mr. Ghader lists in his proof of claim, which is

25  every tort claim known to man, and the contract claims that

1  would apply if he is agreeing to the terms of service.  Now,

2  he has admitted that he agreed to the 2015 terms of service.

3  He has not agreed to the 2018 terms of service.  And as the

4  Court knows from the December 13th hearing with respect to

5  the other three Iranian claimants, that is -- we can go with

6  the 2015 terms of service and say definitively that if you

7  signed the 2015 terms of service you have waived

8  consequential damages and loss profits.  So, that is our

9  bright line.

10          The other bright line we have is that provided by

11 Docket Item 806.  In Docket Item 806 Mr. Ghader admits that

12 until January 1st of 2019 he did live in Iran.  So, he can no

13 longer claim that his account was wrongfully blocked as a

14 result of the OFAC sanction, but he also says, in Docket Item

15 806 quoting another pleading one of the things that he said

16 is that Bittrex did not need the OFAC license to release Mr.

17 Ghader's crypto because at no relevant time when he requested

18 access to withdrawal his crypto (indiscernible) Bittrex

19 account he was a resident of Iran.

20          So, those are our gating items.  And I think it's

21 important for the Court to see how this has developed as we

22 have presented to Mr. Ghader all of the evidence we have that

23 he was still in Iran for a long period of time and we still

24 don't know precisely, after a very long deposition, when he

25 left Iran other than this admission that he wrote on the

1   paper.  We don't know where he went after January 1st.  As we

2   get into the evidence, you will see that in order to

3   jurisdictionalize any customer Bittrex had to have definitive

4   proof that they lived in a non-sanctioned country and Mr.

5   Ghader never ever provided that, at least until 2023.

6           So, that is the state of play, Your Honor.  And

7   the reason why I made this four-square grid is to, basically,

8   say you either have a contract claim or you have a tort

9   claim.  Your tort claims are based on some kind of

10   mismanagement of the OFAC sanctions, but now we have Mr.

11   Ghader admitting that he lived in Iran.  And for purposes of

12   this hearing its important to remember that either it's a

13   contract claim and its barred by the terms of service or if

14   it's a tort claim its barred by Washington's three-year

15   statute of limitations because those are the terms of service

16   that you agreed to.  And he has admitted that.

17           So, if it happened before May 8th of 2020 its not

18   a colorable claim that would survive a motion for summary

19   judgment or a motion to dismiss, but we just don't have the

20   vehicle in a contested claim objection.  So, part of this,

21   I'm trying to convey to the Court, is can we get some

22   gatekeeping so that we are not dealing with issues that have

23   nothing to do with a triable issue of fact.  That is my goal

24   today and it will be my goal on Tuesday.

25           MR. DETWEILER:  Your Honor, may I please the

1  Court.

2          THE COURT:  Hang on just a second.

3          MR. DETWEILER:  Okay.

4          THE COURT:  Ms. Tomasco.

5          MS. TOMASCO:  Your Honor, I have just a couple

6  more points to make and then I would be happy to turn the

7  podium over to Mr. Detweiler.

8          MR. DETWEILER:  Thank you.

9          THE COURT:  Okay.

10          MS. TOMASCO:  If we could have the next slide,

11  please.

12          So, you will recall on December 13th of 2023 we

13  had a hearing with the three gentlemen: Momezadeh, Arabpour,

14  and Abbasi.  We discussed very much the OFAC sanctions and we

15  have conceded all along that (indiscernible) platform and it

16  should not have.  What is the question about that.  It is

17  hard for me to understand why we are still talking about

18  this.  Mr. Ghader received ample discovery regarding OFAC

19  that this has to stop.

20          We stated, you know, with respect to discovery,

21  you know, the same rule has to apply to what kind of evidence

22  we let in. It has to have relevant information, the

23  (indiscernible), and expense of the proposed discovery

24  outweighs the likely benefit.  Mr. Ghader apparently, based

25  on conversations and what is in his deposition, he wants to

1 second guess the findings of OFAC with respect to the

2 inadvertent, and that's a finding, fact that Bittrex allowed

3 Iranians onto the platform.

4          If I could look at the next slide.  In the OFAC

5 settlement, our reply Exhibit B, it was the non-intentional

6 violation of OFAC regulations shown by the settled amount

7 that reflects OFAC's determination that Bittrex's apparent

8 violations were not egregious, but be defined, as large as it

9 is, $24 million is a big fine, is a less then one percent of

10 the maximum (indiscernible) penalty.

11          On the next slide, the most important thing from

12 the OFAC, and this will be in the exhibit, press release,

13 OFAC says only after OFAC issued a subpoena in October of

14 2017 to investigate potential sanctions did Bittrex realize

15 that the vendor was not scrutinizing whether customers were

16 in a sanctioned jurisdiction.

17          What you are going to hear today, I presume, is

18 that they want to test that finding.  They want to look

19 behind a five-year government investigation and verify that

20 the government got it right.  I would suggest to the Court

21 that is not only improper, but it is wasting everybody's time

22 for the sake of wasting time and not getting to any probative

23 triable issue of fact.

24          As the Court recalls, on the next slide, we had

25 this same argument before, the results should be the same

1 │ here.  The Court said extensive inquiry into how the OFAC

2 │ regulations came into effect the debtor's engagement or

3 │ involvement with OFAC for its internal communications

4 │ regarding compliance would meaningfully -- would not

5 │ meaningfully inform the Court's analysis of the claim

6 │ objections.

7 │ So, as we get into the issues before the Court,

8 │ and if we could go to Slide 11, I believe, we do have some

9 │ outstanding discovery requests, but before I talk about those

10 │ this -- these facts inform what we think the order of the

11 │ hearing should be.  We believe that the motion to exclude the

12 │ experts, Stephanie Rice and Adam Zarazinski, should go first.

13 │ It is, in a way, a method of limiting the hearing to the

14 │ issues that create triable issues of fact and not allowing

15 │ the evidence to stray into remote time periods and issues

16 │ that can't move the needle.

17 │ We filed a motion to exclude the expert, Stephanie

18 │ Rice.  She claims to be an expert on OFAC regulations.  She

19 │ is not a lawyer, but its clear that her expert report is

20 │ seeking to invade the province of the Court and determine

21 │ issues of law.  If the OFAC sanction issue is before the

22 │ Court there should be a lawyer arguing that in front of the

23 │ Court and the Court can make its own determination.  This is

24 │ a U.S. law regulatory regime over which the Court has sole

25 │ province in the courtroom to determine.

1        The valuation expert, Adam Zarazinski, Mr.

2   Zarazinski's methodology is, essentially, we can take the

3   exact precise second of the highest valuation of the coins in

4   Mr. Ghader's account during the six-year period and value it

5   as if Mr. Ghader had bene trading minute by minute, second by

6   second during a six-year period and picked, magically, the

7   highest value of the coins in his account.

8        This is -- he does not opine on whether or not

9   this is the appropriate way to value damages for whatever

10  tort Mr. Ghader decides to settle on at the hearing.  We

11  still don't know which one that is.  He doesn't express any

12  opinion about valuation methodology or the proper way to

13  value crypto.  He just does math using third party marketing

14  sites that give the value of various crypto coins over time.

15       We think that those two things should go first

16  because they will help limit the amount of time we need

17  before the Court.  If we could go to the next slide.  Here is

18  how the math would work out. The plan administrator's case is

19  going to be three witnesses: David Maria, Evan Hengel, Azim

20  Ghader that we plan to hire and call as a hostile witness.

21  We are working with the other side for joint exhibits.  We

22  probably will have a handful of exhibits (indiscernible)

23  concerns.  I think that by in large, based on the deposition

24  testimony, that the exhibits are going to overlap.  So, we

25  suggest a single exhibit list and we are going to work on

1  that today.

2       If the claimants' case goes forward, they will

3  have seven witnesses for a total of nine.  They plan to call

4  the other three Iranian claimants that are represented by the

5  same Iranian lawyer in Iran, Momezadeh, Arabpour, Abbasi,

6  Stephanie Rice the expert, Adam Zarazinski, and a gentleman

7  named Ryan Hentz (indiscernible) motion to quash by Mr.

8  Hentz's counsel.

9       We believe that the balance of those witnesses

10 should all not move forward. I think that if we can address

11 that at the beginning of Tuesday's hearing it will help to

12 streamline the evidence.  We have noticed -- once we found

13 out Mr. Ghader planned to call the other three Iranian

14 claimants, they all refused to sit for their deposition we

15 will object to their testimony.  Mr. Ghader's counsel

16 identified them as potential witnesses on December 28th.  The

17 plan administrator asked for their depositions on December

18 29th, set for today, to give them the full 14 days.

19      We have also objected in the motions to exclude

20 the Rice and Zarazinski testimony that is stated therein.  We

21 also learned yesterday that these experts will not be

22 available to testify in person.  We do not consent to that.

23 We also object to calling Ryan Hentz.  Ryan Hentz is a former

24 employee of Bittrex.  Claimants' counsel identified Mr. Hentz

25 as a potential witness on December 11th in an email, but they

1  did not seek his deposition until January 4th of 2024.  Mr.

2  Hentz lives in Durango, Colorado.  He cannot be forced to

3  testify in person and we object to Mr. Hentz testifying at

4  the hearing.

5          THE COURT:  Ms. Tomasco, was Mr. Hentz deposed?

6          MS. TOMASCO:  No, he was not.

7          THE COURT:  Okay.

8          MS. TOMASCO:  That leaves us with the last

9  housekeeping for the Court and that is that Mr. Ghader has

10 filed a motion for sanctions and protective orders.  We

11 responded to that.  As the Court mentioned at the last

12 hearing on Monday, these two things have no factual overlap.

13 In other words, the facts related to the motion for sanctions

14 have nothing to do with the claim objections.  They are not

15 going to inform each other.

16          We do have an out-of-town witness, Ms. Nownes,

17 from Omni who lives in LA.  I don't think it's going to be

18 possible for us to reach this hearing on January 16th.  We

19 propose that today we go ahead and postpone that hearing so

20 that we can definitively ask out of town witnesses to appear

21 and know that they will go forward that day.

22          With that, Your Honor, that is, I believe, the

23 state of play. I have a couple of other responses depending

24 on what Mr. Detweiler says, but that is the position that I

25 have to try and streamline Tuesday's hearing.

1          THE COURT:  All right.  Thank you.

2          Mr. Detweiler.

3          MR. DETWEILER:  Yes.  Good morning, Your Honor.

4 May I please the Court, Donald Detweiler and Rhett DeHart on

5 behalf of Azim Ghader.

6          Your Honor, I appreciate Ms. Tomasco's

7 presentation and we will try to address what she says.  Quite

8 frankly, Your Honor, the debtors have not told you the full

9 story and the triable facts somewhat unique.  Where the case

10 begins is that Mr. Ghader, an Irania citizen, like other

11 Iranian citizens, was offered to trade on the Bittrex

12 exchange.  Bittrex signed up, as Ms. Tomasco admitted and as

13 I will admit at the trial, that Bittrex signed up Iranian

14 citizens onto their exchange. They did so in violation of the

15 Office of Foreign Asset Control rules and regulations.  They

16 got caught by OFAC in October of 2017, October 10th.  They

17 suspended accounts as a result of that and then they went

18 through a licensed process.

19          Your Honor, Mr. Ghader's claims start -- and what

20 you are going to hear and what you heard from Ms. Tomasco is

21 that he agreed to terms of service, he agreed to a 2015 terms

22 of service, and that he agreed to a 2018 terms of service.

23 What is happening here is that, first, the terms of service,

24 the 2015 terms of service were with an entity called Bittrex

25 LLC, not Bittrex Inc., and I know people can disagree on

1   that, but it was Bittrex LLC, not Bittrex Inc., that he

2   agreed to the terms of service.

3          We have said in our pleadings to Your Honor you

4   have to decide whether or not the terms of service are even

5   enforceable in the first instance.  What terms of service are

6   enforceable, if any at all.  We will take the position at the

7   trial that the terms of service are not enforceable, the

8   contract not enforceable as a matter of law, and Mr. Ghader

9   should be returned to his free contract status, what he

10   deposited, his bitcoin and his ARC coin.

11          So, if the contract is illegal, not enforceable

12   because of the violation of OFAC, then you have an issue that

13   Your Honor first must decide is the terms of service

14   themselves even enforceable.  We have ample case law to

15   present to Your Honor on that issue of the OFAC regulations

16   and that being illegal and not enforceable as a matter of

17   law.  So, that is the first issue.

18          Then we move forward to they got caught by OFAC

19   and there's a license.  Just on the first issue, Your Honor,

20   if we are right and the contract is not enforceable then you

21   have to figure out what is the remedy that he is entitled to.

22          Then the second issue is if the contract is

23   enforceable Ms. Tomasco routinely said throughout this case

24   that he agreed to a limitation of liability and that statute

25   of limitations.  We go back and forth, back and forth.  Well,

1  is the limitation of liability enforceable under Washington

2  law.  If Your Honor determines that the terms of service are

3  enforceable can they be enforced under Washington law.  Those

4  are all issues of fact Your Honor is going to have to decide

5  and probably will require briefing on.

6           So, we get past the opening, so to speak, of where

7  we start from the initial allowing Iranian citizens like Mr.

8  Ghader to get on and the contract being legal or not, and

9  what is enforceable under Washington law.

10          She then raises the issue of breach of contract.

11 They have conceded already, it's a six-year statute of

12 limitations on a breach of contract claim in Washington.

13 They can say it's a three-year statute of limitations with

14 respect to the personal injury or negligence claims.  We have

15 also told them there is unfair trade practices, deceptive

16 trade practices claims that by statute under Washington would

17 exist.  There are, you know, other potential issues, for

18 example, as conversion.

19          So, then we go -- I want to just highlight that

20 because there is a lot of facts, issues of fact, that the

21 Court is going to be asked to decide.  We then go to -- and

22 so they haven't told you the full story.  This is where it

23 gets interesting, Your Honor, because they keep referring to

24 Washington law applying.  They got caught by OFAC, October

25 12th they -- October 11th they suspend accounts.  Mr. Ghader

1  will tell you all about his inquiries as to why my account

2  was suspended, and you will hear a lot about that, and they

3  ultimately got their license in November of 2019.

4         What did they do, Your Honor?  This is why the

5  expert is also helpful -- going to be helpful to Your case,

6  to the case.  What they did is -- and the testimony

7  (indiscernible) at his deposition, if I am correct, is they

8  transferred all of the international customers, all of them,

9  not only the Iranians but the Cubans and Syrians as we

10  understand it, but we at least know the Iranians, they

11  transferred them to an entity called Bittrex Malta; Bittrex

12  Malta OpCo or Malta OpCo.

13         So, they got an administrative subpoena before

14  they did the license, what we understand the case to be is

15  they transferred these accounts to Bittrex Malta and the 2018

16  terms of service that Ms. Tomasco wants to rely upon have,

17  you know, law provisions, governing law provisions.  So, if

18  the accounts were transferred to Bittrex Malta and whether

19  they could even do that under OFAC is a question Your Honor

20  will certainly be brought up.

21         The issue then becomes is what law then governs

22  because you transferred his account to Malta and what did

23  Malta say on Iranian sanctions.  What did Malta law say with

24  regard to these limitations of liability?  What they want to

25  do is they want to then say, oh, no, you're still stuck with

1  the Washington, if that's even enforceable from the get-go.

2          And so it raises statute -- they've routinely in

3  this case said, oh, statute of limitations, this and that,

4  without really telling Your Honor or going through all of the

5  aspects of the applicable jurisdiction.  So you have to then

6  look at this from the standpoint of, if the account was

7  transferred to Bittrex Malta, is it -- what does Bittrex

8  Malta say with regard to enforceability, is it enforceable,

9  and so on.

10          We then go, Your Honor, then to the calculation of

11  the damages.  And what Mr. Ghader has -- he filed his proof

12  of claim; he prepared it, he filed it, he tried to be as

13  complete and honest as possible, despite being called a liar

14  and a fraudster, you know, different adjectives have been

15  used in this case.  He filed it based on, my account got

16  frozen, I've calculated it based on -- and his understanding,

17  and we'll have case law on this point -- that I'm entitled to

18  the highest point in time, under crypto cases, that what he

19  can say is that, if there was a breach of contract or if

20  there is a negligence claim for like a conversion claim, then

21  the case law, we believe, will suggest to Your Honor at trial

22  -- and we think the evidence will help prove this up -- is

23  that the case law says you get the currency at its highest

24  point in time during the alleged infraction, whether it's a

25  breach or a negligence claim, that you get to value your

1  currency at the highest point, and that's what Mr. Ghader

2  did.  I know nobody -- the debtors certainly don't like, but

3  he took -- had certain currency, he converted it to bitcoin,

4  and he came up with the value of bitcoin on his petition

5  date.

6         We looked at that and we said, okay, Mr. Ghader,

7  this is one way you calculated it.  We look also, you know,

8  with the breach of contract claim, the idea that, if the

9  contract is illegal or void, you might be entitled to get

10 your -- back your prepetition, where you were prior to or at

11 the time that all of this happened, or you can get -- you

12 know, if you get the highest point, it's not as of the

13 petition date, it's as of when these acts were

14 (indiscernible) that's where the experts come in.  That's

15 where the expert comes in and says, okay, we've looked at,

16 you know, what his account had and we're looking at the

17 highest point in time, and we use Bittrex data -- we don't

18 use market data, but we use the Bittrex data to come up with

19 the valuation for Mr. Ghader, which is less than the $20

20 million number that he will testify to as to how he prepared

21 it.

22         And so the expert is going to give you some names.

23 He'll say, here's what, you know, he deposited in.  If the

24 contract is void and Your Honor determines that he's entitled

25 to return of that, then you'll know what that is.  If it's on

1  October 11th or thereabouts, and we look to -- and Your Honor

2  finds that the case law is applicable, then we go to

3  ultimately a determination of what's the highest point; is it

4  reasonable using Bittrex data?  Here's what it is.

5          And then, if he used market data, which the

6  debtors used when they valued the currency, the remaining

7  currency of Mr. Ghader, you're going to get a much higher --

8  much significantly higher number.

9          So all of this is to say, Your Honor, while they

10 say (indiscernible) and they say a breach of contract, there

11 is what jurisdiction applies, what base are we on?  Are we on

12 Washington or are we on Malta?  Are we on Bittrex Global?

13 Because there's even evidence that there's at least IT

14 association or some of the account may have been associated

15 with Bittrex Global.  All fact issues that are going to have

16 to be hear facts on and then ultimately decided by the Court.

17         I'll turn it over to my colleague Mr. DeHart with

18 regard to Hentz and the motion for sanctions.  We recognize

19 that this is -- Your Honor is likely not going to have time

20 for a motion for sanctions.  We did have a meet-and-confer

21 yesterday; we thought it went very well.  We've agreed on,

22 you know, the witnesses.  We're going to -- a process to get

23 the exhibits at least identified today, and then parties'

24 potential objections by probably Monday morning, and then

25 we'll deal with, you know, objections at the hearing.

1          But before turning it over, though, I just want to
2  make sure I have, you know, that --
3          THE COURT:  I think I'd --
4          MR. DETWEILER:  -- what the debtors are saying --
5          THE COURT:  -- I'd like your --
6          MR. DETWEILER:  Oh.
7          THE COURT:  -- I do want to make sure that you
8  address where Ms. Tomasco opened, which was I think in
9  relation to the debtors' motions in limine relating to your
10 two proposed experts, I just want to understand --
11         MR. DETWEILER:  Yeah.
12         THE COURT:  -- your thoughts on that and try to
13 figure out how we move forward.
14         MR. DETWEILER:  Yeah.  So where we are on that is
15 that there's two motions in limine, we told them we're going
16 to address them by the time of this status conference.  We
17 think there are -- we certainly will meet the standards of
18 qualification, reliability, and fit, which Your Honor has to
19 look at, qualification, reliability, and fit, and you know
20 the standards better than anyone as to them.  We think it's
21 just a waste of time, but we will probably have, Your Honor,
22 some response to you, whether written or orally, prior to the
23 hearing.  I'm not sure it necessarily needs to go at the
24 outset, but we're happy to leave that to the discretion of
25 the Court as to how you wanted to handle it.

1          THE COURT:  Okay.

2          MR. DETWEILER:  So --

3          THE COURT:  Okay.

4          MR. MARIA:  Your Honor, if I may jump in?  And I

5  try to stay quiet in these, but I just have to say the

6  statements that Mr. Detweiler attributed to me in my

7  deposition were an egregious mischaracterization of what I

8  said during that deposition.  I just wanted to make that

9  clear for the record.

10          THE COURT:  Mr. Maria, you will have an

11  opportunity to have that discussion, guided by Ms. Tomasco,

12  at the appropriate time.

13          I think Mr. DeHart -- or, Mr. Detweiler, are you

14  done or did you want to pass it over to Mr. DeHart?

15          MR. DETWEILER:  Let me turn it over to Mr. DeHart,

16  and he can talk about Hentz and the other discovery issues,

17  there's the -- with regard to OFAC and what we're looking for

18  with regard to OFAC.

19          THE COURT:  Okay.  Mr. DeHart?

20          MR. DETWEILER:  Thank you, Your Honor.

21          THE COURT:  Good morning.  Oops, I'm sorry, sir,

22  you're muted.

23          MR. DEHART:  Judge Shannon?

24          THE COURT:  Yes, sir.

25          MR. DEHART:  May it please the Court, Your Honor,

1   my name is Rhett DeHart, I'm from Womble Bond Dickinson in

2   Charleston, South Carolina; I'm partners with Mr. Detweiler.

3           Before I address the two issues that he wanted me

4   to address, I wanted to follow up on this terms of service

5   issue, Your Honor.  We have prepared a memorandum for Your

6   Honor that, if it pleases the Court, we could file it today,

7   but bottom line, Your Honor, there are a long line of Federal

8   Court cases, including two Supreme Court cases, that hold

9   that a contract made in violation of federal law or federal

10  regulations are null and void and unenforceable.  And in

11  fact, Your Honor, there are five cases nationally that

12  address this issue in the context of the Iranian sanctions

13  and --

14          THE COURT:  Let me touch on that for just a second

15  because we had a colloquy last week -- or earlier this week I

16  think you were on, and it was a discussion about making

17  pretrial briefing or pretrial submissions versus post-trial.

18  I think my -- I don't think I ruled, but I think I suggested

19  that in the press of time it probably would not be the best

20  use of everyone's time to do pretrial submissions.  I don't

21  know if you've had a discussion with Ms. Tomasco about making

22  that submission.

23          Obviously, I understand, you know, the -- from Mr.

24  Detweiler's comments and from, you know, comments in our

25  earlier hearings about the -- all of the issues that are

1  raised here, but I don't want to travel too far down a path

2  at this status conference if -- unless the debtor says, you

3  know, we'll be happy to file a brief in advance of the

4  hearing in connection with that because, you know, otherwise,

5  I think it would probably be better to have that issue argued

6  and then maybe be the subject of a post-trial submission.

7  But I'm at your pleasure, but I don't want to get too far

8  into a legal argument this morning.

9        MR. DEHART:  No, sir, Your Honor.  And forgive me,

10  the only reason I mention it, I remember exactly what you

11  said about pretrial briefing and I just wanted to let you

12  know that we have -- you know, we have briefed this and, as

13  an officer of the Court, I'll tell you in advance and we can

14  file this after the hearing, but the five cases that have

15  addressed this issue have held that a contract or terms of

16  service made in violation of Iranian sanctions are null and

17  void and unenforceable.  And each court, you know, had sort

18  of different reasons, but all five courts had one consistent

19  theme and that theme was, if a contract made in violation of

20  Iranian sanctions were upheld, it would not deter other

21  companies from violating the sanctions.

22        So we're very confident that Bittrex's 2015 terms

23  of service as to Mr. Ghader is null and void because it was

24  made in -- it was an illegal contract, Your Honor, it was

25  made in violation of the Iranian sanctions and a federal

1  statute.

2       And anyway, Judge, I just wanted to bring that to

3  your attention.  We're confident that the terms of service

4  are void.

5       As to the statute of limitations, Mr. Detweiler

6  did a fine job on that, but one of our causes of action is

7  under the Washington State Unfair Trade Practices Act.  Some

8  of the key disputes in this case occurred in March and April

9  of 2020; therefore, the statute of limitations under that

10 would not expire until 2024 and, of course, Mr. Ghader filed

11 his proof of claim well before the statute of limitations run

12 in that case.  So we're confident there's no violation of

13 statute of limitations, we're confident the terms of service

14 are void.

15       As to Mr. Hentz, Your Honor, we would like to call

16 him.  Just to give you a little bit of background, he was the

17 director of customer relations at Bittrex during the relevant

18 time.  And, Judge Shannon, after the cases two -- one is that

19 Bittrex was reckless and irresponsible in allowing -- and

20 just for the record, Your Honor, I do want to say something.

21 This is not a criticism of Mr. Maria or Ms. Tomasco, none of

22 them were involved in Bittrex back in the day.  I know Mr.

23 Maria was the general counsel recently, but this is not a

24 criticism of them, this happened in 2017.  But one of our --

25 we have two theories in the case, is one that Bittrex was,

1  you know, grossly reckless in allowing the Iranian customers

2  to join, and, secondly, we have a theory that after they got

3  the OFAC license that they devoted insufficient resources to

4  process these thousands and thousands and thousands of

5  claims.  And I think Mr. Hentz, he was the director of

6  customer relations, he would be in a position to say --

7           MS. TOMASCO:  Your Honor, I have to interrupt

8  here, and I don't like interrupting, but this is where I

9  really do have to interrupt.  During Mr. Maria's deposition,

10  Mr. DeHart mentioned that he had received, quote-unquote,

11  "information" that there were 75,000 customer tickets and

12  only three people to cover it.

13          Now, I have asked them for the source of that

14  statement because it appears nowhere in the discovery, and I

15  don't see how it's related to Mr. Hentz --

16          THE COURT:  Hang on --

17          MS. TOMASCO:  -- at all.

18          THE COURT:  -- can I interrupt?  I think we're

19  getting kind of far afield.  I have a trial that's scheduled

20  to start on Tuesday morning.  Let me share with you a couple

21  observations and then we need to figure out in the next 17

22  minutes anything else that you want to share with me in

23  advance of arriving here in the First State, a couple things.

24          First, as to Mr. Arabpour and the other two

25  individuals, they have not agreed to testify or appear to be

1  deposed.  The Court will not permit them to participate or

2  testify, and I certainly would not permit them to do so

3  remotely.

4           With respect to the motions in limine, the Court

5  will direct, if Mr. Ghader chooses to respond to them, any

6  response would be due by 4:00 p.m. on Monday.  Discussion and

7  argument about the motions in limine will be the first thing

8  that we deal with in connection with commencing the trial.

9           The debtor will not be afforded a reply on the

10  motions in limine.  That's not a sanction or anything, I just

11  want to make sure that -- I mean, if you were filing a reply,

12  it would arrive about an hour before the hearing and I just

13  have a fairness sense.  This is a motion in limine regarding

14  two separate expert witnesses.  I have reviewed the debtors'

15  submissions and I want the benefit of, as Mr. Detweiler

16  offered, that, you know, there are points that need to be

17  made in connection with this, and I will make a ruling in

18  that respect.  So that's what I would want.

19           And then, with respect to Mr. Hentz, again, I

20  think both parties have agreed that he is outside the

21  subpoena power of the Court; the Court will not permit him to

22  testify remotely.  If he is available to testify, then we can

23  have an argument about him testifying in court, but there's

24  been enough attention and back-and-forth with respect to

25  whatever role Mr. Hentz may have played and whatever

1   information he may have to share.  I'm not satisfied that

2   Rule 43 applicable to this proceeding would be vindicated by

3   permitting his testimony remotely.  So, if Mr. Hentz is going

4   to testify, he will need to be here in Delaware.

5           One other point that I would make, and I don't

6   know if I'm anticipating the parties' agreement, but I am

7   trying to make sure that we cover the pretrial items that we

8   have, I think that it does make good sense to push the

9   sanctions issue to a different date.  I understand that it

10  may be some of the same witnesses and certainly, you know,

11  some of the same circumstances, but these are two different

12  issues, and there are enough moving parts with this right now

13  that I don't believe that it would be the most productive use

14  of our time and our energy to have this issue kind of hanging

15  out there, particularly, as Ms. Tomasco noted, there may be

16  additional witnesses that have nothing to do with the

17  claimant dispute that would sort of have to be here and cool

18  their heels, assuming that we would be able to get to them in

19  the timeline that we have.

20          So those are at least a few observations that I

21  have.  I don't know that we've covered all of the issues that

22  the parties have, but, again, I want the benefit of -- and,

23  look, I'm not cutting off this discussion about Mr. Hentz or

24  Mr. Maria.  Clearly, Mr. Maria testified, and there's strong

25  feelings on both sides about what that testimony was, I am

1  looking forward to hearing all of that on Monday or Tuesday,

2  but today is not the day to have that discussion and today is

3  not necessarily -- if I had more time, I would probably get

4  deeper into the discussion and perhaps we would be able to

5  more appropriately frame the dispute, but I think we're going

6  to have to deal with it when we all get here into the

7  courtroom.

8          So, Mr. DeHart, I interrupted you.  Ms. Tomasco

9  was responding on issues that are, I think, appropriately

10 reserved on both sides for the Court and the parties to deal

11 with when we get there, but I wanted to give some guidance

12 about what we're -- what I think we should be doing and

13 focused on Tuesday when we gather.

14         Mr. DeHart, I interrupted you.  Did you have

15 additional points you wish to raise?

16         MR. DEHART:  No, Judge, I'm really angry you

17 interrupted -- I'm joking -- I had about ten more seconds to

18 go when you interrupted me, so forgive me, Judge.  So I'm

19 going to be quick.

20         The only thing I had to say is, Ms. Tomasco I

21 think makes a good suggestion to sort of hold the hearing

22 open and deal with the sanctions on January 23rd -- January

23 31st, Your Honor, that would give us time to depose Mr. Hentz

24 between the 16th and the 31st.  And we would like Your Honor

25 after --

1          THE COURT:  Hold up.  No, no, no, no, no.  I did

2    not say that we're holding the hearing open, I said we're not

3    conducting the sanctions hearing, that's a separate motion.

4    I am conducting the claim objection trial on Tuesday.  If --

5          MR. DEHART:  If I can -- I guess my question, Your

6    Honor, do you plan on concluding it next week or --

7          THE COURT:  I -- yeah, I certainly have every

8    expectation and intention of concluding that trial on -- you

9    know, on Wednesday.  I've offered you Monday -- I'm sorry,

10   I've offered you Tuesday and Wednesday.  I'm clearing as much

11   of my calendar as I can for this dispute.

12          You know, I think the way that I put it earlier

13   this week is, if you can convince me that the record is not

14   sufficiently developed, then I will have to deal with that,

15   but I'm expecting that Counsel will be prepared to fully

16   present their cases and move forward.

17          This matter was intended or requested by the

18   debtor to go forward at a hearing in the second week of

19   December.  Over the debtors' objection, I adjourned it to the

20   middle of January.  I expect that this hearing is going

21   forward.  I don't want any uncertainty.  We're kicking the

22   sanctions hearing because I think that that's an independent

23   issue and I think that it would be, frankly, burdensome on

24   both sides to have that issue sort of in abeyance while

25   everybody is focused on a lot of back-and-forth in connection

1  with the claim objection.  So that's where we are.

2           MR. DETWEILER:  So, Your Honor, just briefly, the

3  only other issue was the OFAC issue.  Ms. Tomasco referenced

4  OFAC and OFAC findings, OFAC findings through the consent

5  order.  We had requested the Bittrex contract with

6  BlockScore, who was apparently an OFAC consultant to Bittrex.

7  The BlockScore was referenced in Bittrex's letter to OFAC,

8  saying -- you know, basically saying it was BlockScore's

9  fault, we hired them, they didn't do it.  That's a very rough

10 summary and perhaps slightly overstated, but it's basically

11 BlockScore, we relied upon BlockScore.  We want the

12 BlockScore contract; they won't give it to us.

13          We also asked for -- there are letters to OFAC, we

14 asked for their communications with OFAC on January 10th,

15 2018 and on January 17th, 2018.  Those were letters from

16 counsel to OFAC explaining certain issues with regard to the

17 Iranians.  We did talk to Ms. Tomasco yesterday; she was

18 going to look into it.  We said, look, we don't -- we want

19 the letters, we don't want confidential information or who's

20 been -- what's reported, but we do think it's important for

21 Your Honor to hear about the OFAC consent order, what was

22 actually told to OFAC, and we still would like that for

23 purposes of the hearing.

24          THE COURT:  Ms. Tomasco?

25          MS. TOMASCO:  Your Honor, if we're getting into

1  outstanding discovery requests, again, I do -- this is part

2  of my effort to keep the parties to their pleadings.  What

3  I've heard today does not give me any comfort that the

4  claimant is going to honor the representations that he made

5  in his pleadings, specifically that the 2015 terms of service

6  applied to Mr. Ghader.  He said that in his response that is

7  filed at Docket Entry 470.

8           So we've been conducting discovery all along based

9  on what Mr. Ghader said in Docket Item 470, and now we're

10  hearing that he is no longer conceding that he agreed to the

11  2015 terms of service and that he's going to rely on a whole

12  host of new theories that are not contained in the pleadings

13  and for which we have not had the opportunity for discovery.

14          The first thing that we -- that would make sense

15  to me is that the parties need to be limited to what's in

16  their pleadings.  We are not going to fall into the trap of

17  trial by consent of addressing legal issues and factual

18  issues that are not put into the parties' pleadings, and that

19  is precisely what the claimant wants to do.  At every turn,

20  we disprove his theories and he makes up a new one, and that

21  has to stop.

22          The idea that you could say that the OFAC consent

23  decree that said specifically that Bittrex -- Bittrex's

24  failure to screen for Iranian residents was inadvertent,

25  there's nothing more to be said about that.  We admit that

1  Iranians got on the platform.  What they fail to mention is

2  that Mr. Ghader represented that he lived in Dubai at the

3  time that he signed up and took significant efforts to

4  disguise his IP location so that even, if we were dealing

5  with a more robust compliance system, he might have slipped

6  through.  So the idea that you can look behind what OFAC

7  determined after a five-year investigation and they're going

8  to grade OFAC's paper with respect to the OFAC sanctions,

9  it's so far afield from what the pleadings say and it's so

10 far afield from the proper inquiry for a claim objection when

11 Mr. Ghader has received 99 percent of his cryptocurrencies

12 back as a result of definitively proving he didn't live in

13 Iran finally in 2023.

14          MR. DEHART:  Judge, just one --

15          MS. TOMASCO:  So --

16          MR. DEHART:  Excuse me, I didn't mean to interrupt

17 you, Ms. Tomasco.

18          If I could just address Ms. Tomasco's claim that

19 Mr. Ghader agreed to the 2015 terms of service, you know,

20 that may well have been the case, Judge, but as I noted every

21 case earlier that found that a contract in violation of the

22 Iranian sanctions is null and void and unenforceable, in all

23 those cases the parties originally agreed to the contract, so

24 it was just later held to be unenforceable.

25          So it doesn't matter if Mr. Ghader agreed to a

1  contract that was illegal at a time he didn't know it.  So

2  all the case law we're going to show you, of course the

3  parties originally agreed to the contract; after it was found

4  to be in violation of federal law, that's when the courts

5  found it was void and unenforceable.  So that's not anything

6  inconsistent with Mr. Ghader's claim.

7          THE COURT:  Okay, here's what we're going to do.

8  I am not going to direct the debtor to produce the BlockScore

9  contract or the letters that were the discussion of our prior

10 hearing a few days ago.  I am concerned about the drift of

11 the issues that are being raised to the Court, but I will

12 deal with that as we move through the trial, and I'm

13 concerned that it may be a somewhat cumbersome exercise.

14         My understanding is that the Court is prepared to

15 communicate with the parties on IT issues, and I believe that

16 the parties are conferring with respect to exhibits that

17 would hopefully streamline some of the issues with respect to

18 presentation of testimony.

19         In addition, the Court has advised with respect to

20 the timing for submissions in connection with the motions in

21 limine and that will be the first issue that's addressed when

22 we convene at 10:00 a.m. on Tuesday.

23         And I think, with that, we are adjourned.  Thank

24 you, Counsel.

25         COUNSEL:  Thank you, Your Honor.

1        (Proceedings concluded at 10:24 a.m.)

2

3

4

5

6

7

8                              CERTIFICATION

9        I certify that the foregoing is a correct

10  transcript from the electronic sound recording of the

11  proceedings in the above-entitled matter to the best of my

12  knowledge and ability.

13

14  /s/ Tracey J. Williams                    January 12, 2024

15  Tracey J. Williams, CET-914

16  Certified Court Transcriptionist

17  For Reliable

18

19

20

21

22

23

24

25