**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DESOLATION HOLDINGS LLC, *et al.*,[1]<br><br>Wind Down Entity. | ) Chapter 11<br>)<br>) Case No. 23-10597(BLS)<br>)<br>) (Jointly Administered)<br>)<br>)<br>) **Hearing Date: TBD**<br>) **Objection Deadline: TBD**<br>)<br>) |

**AZIM GHADER'S MOTION FOR**
**RECONSIDERATION PURSUANT TO BANKRUPTCY RULE 9024**

1. Pursuant to Fed. R. Civ. P. 60(b)(1) and (6) (made applicable through Fed. R. Bankr. P. 9024) Azim Ghader ("Mr. Ghader") files this Motion respectfully requesting the Court reconsider the ruling in the Court's January 26, 2024 Letter (the "Letter Ruling;" Docket No. 980) prohibiting Mr. Ghader from arguing "that any contractual arrangement between Mr. Ghader and the Debtors was void *ab initio* due to the pending sanctions regime imposed by OFAC."

2. In support of its Letter Ruling, the Court reasoned that "it was simply too late to raise new theories and arguments on the eve of trial." The Court's Letter Ruling was written without the benefit of briefing and appears contrary to controlling federal and state case law as to whether the Court may examine the enforceability of Bittrex's illegal service agreements – the 2015 Terms of Service and the 2018 Terms of Service (collectively the "TOS") – at any stage of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (090); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

the proceedings. Because (1) Federal law and Washington law[2] make clear that the illegality of a contract **can be raised at any time and cannot be waived**; and (2) courts that have considered the enforceability of a contract made in violation of the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. part 560 have held that a contract made in violation of ITSR is null and void, Mr. Ghader respectfully requests the Court to reconsider its Letter Ruling[3] and permit him, as part of the due administration of justice, to present his argument that any contractual arrangement between Mr. Ghader and the Debtors was void *ab initio*.

---

[2] The 2015 Terms of Service identifies Washington state law as governing, while the 2018 Terms of Service identifies: (a) Washington state law as governing with respect to any tokens made available for trading by Bittrex, Inc.; and (b) the laws of the Republic of Malta governing with respect to any tokens made available for trading by Bittrex Malta pursuant to the 2018 Terms of Service. In their *Objection to Mr. Ghader's Claims* (Docket 411) the Debtors contend that in November, 2018, Mr. Ghader agreed to the 2018 Terms of Service and "became a customer of Malta OpCo." (Objection to Mr. Ghader's claims at para 10. See, *Declaration of Evan Hengel in Support of Objection to Mr. Ghader's Claims,* (Docket No. 412) at paras 8-9). Mr. Ghader disputed, through his testimony at trial, that he agreed to the 2018 Terms of Service. To the extent, the Court finds Mr. Ghader accepted the 2018 Terms of Service (which Mr. Ghader's testimony at the January 17-18, 2024 hearings disputed), Mr. Ghader's position is that the 2018 Terms of Service are also void *ab initio* as a result of violating federal law with respect to any contractual agreement by and between Mr. Ghader, Bittrex, Inc. or any other Bittrex entity that was subject to OFAC.

[3] Significantly, in his *Motion to Continue Hearing on Debtors' Objection to Claims* (Docket No. 641 at para 6.) filed on November 29, 2023, Mr. Ghader advised the Court that the dispute before the Court comes down to the six issues, including whether the Terms of Service were applicable to Mr. Ghader:

 i. what Terms of Service, <u>if any</u>, that form the basis of the parties' contractual rights and obligations, apply to Mr. Ghader's account with the Debtors;
 ii. whether the Debtors were justified in blocking and restricting Mr. Ghader from withdrawing the crypto in his Bittrex account pursuant to the sanctions imposed by OFAC;
 iii. if the OFAC sanctions did apply to Mr. Ghader's account, what obligations did the Debtors have to terminate and return the crypto held in Mr. Ghader's account to Mr. Ghader and did the Debtors comply with such obligations;
 iv. whether Mr. Ghader sat on his rights to withdraw his crypto, as baldly asserted by the Debtors;
 v. what damages did Mr. Ghader sustain as a result of the Debtors' wrongful actions; and
 vi. are such damages limited or waived under the Terms of Service applicable to Mr. Ghader's account.

(Ghader Motion to Continue at para 7.) (emphasis added). The same issues were also identified earlier in this proceeding in Mr. Ghader's *Response to the Debtors' Objection to Mr. Ghader's Claims* (Docket No. 470, at para 6-7).

**BASIS FOR RECONSIDERATION**

3. Fed. R. Civ. P. 60(b), made applicable to the dispute before the Court pursuant to Fed. R. Bankr. P. 9024, provides in relevant part as follows:

> **(a) Grounds for Relief from a Final Judgment, Order or Proceeding.** On motion and just terms the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; … and (62) Any other reason that justifies relief.

As set forth below, mistake and other reasons justify the Court's reconsideration of its Letter Ruling.

**I.   The Illegality And Unenforceability Of The TOS May Be Raised And Considered At Any Time.**

4. Under federal law and Washington state law, "[t]he nonenforcement of illegal contracts is a matter of common public interest, and a party to such contract cannot waive his right to set up the defense of illegality" and when illegality of the contract "is made to appear to the court **at any stage of the case**, it becomes the duty of the court to refuse to entertain the action." *Reed v. Johnson*, 27 Wash. 42, 55, 67 P. 381, 386 (1901) (emphasis added) (citing, *e.g.*, *Oscanyan v. Arms Co.*, 103 U.S. 261, 267, 26 L. Ed. 539 (1880) (noting that contractual illegality cannot "be obviated or waived," "even by the express stipulation of the parties," for "it is one which the court itself [i]s bound to raise in the interest of the due administration of justice").[4]

5. Mr. Ghader respectfully submits that the Court has an obligation to consider the unenforceability of the TOS given the TOS violate the ITSR (the Office of Foreign Assets Control ("OFAC") regulations applicable to the dispute before the Court). As one prominent treatise

---

[4] State law likely applies to the substantive question of whether the issue of an illegal contract can be waived, *see Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012), but the Court need not decide the issue because Washington and federal common law are in accord, *see, e.g.*, *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1395 n.5 (9th Cir. 1991) (avoiding a similar issue for similar reasons).

explains, "the doctrine of waiver is inapplicable to any subject when it would be against public policy to permit the waiver, since laws based on public policy, such as the defense of illegality, cannot be evaded by the device of waiver." 5 Williston on Contracts § 12:5 (4th ed. May 2023 update). Thus, "a court will generally of its own motion take notice of anything contrary to public policy if it appears from the pleadings or in evidence," "for to hold otherwise would be to enforce inappropriately an illegal agreement." *Id.*

6.  A long line of additional Washington state court cases – the state law invoked by the TOS – confirms the nonenforcement of illegal contracts is a matter of common public interest, and a party to such contract cannot waive his right to raise the defense of illegality. *See Reed v. Johnson*, *supra* at 386; *see also Beroth v. Apollo Coll., Inc.*, 135 Wash. App. 551, 560, 145 P.3d 386, 392 (2006) ("**The illegality of a contract may be raised at any time** . . . .") (emphasis added); *Cooper v. Baer*, 59 Wash. 2d 763, 763–64, 370 P.2d 871, 872 (1962) ("a party to such contract cannot waive his right to set up the defense of illegality" (internal quotation marks omitted)); *Sherwood & Roberts-Yakima, Inc. v. Leach*, 67 Wash. 2d 630, 639, 409 P.2d 160, 165 (1965) (same); *Vedder v. Spellman*, 78 Wash. 2d 834, 837, 480 P.2d 207, 209 (1971) (same); *Waring v. Lobdell*, 63 Wash. 2d 532, 533, 387 P.2d 979, 981 (1964) ("If illegality appears, the court will deny relief on its own motion. The rule does not allow a defendant to waive the defense of illegality."); *Brower v. Johnson*, 56 Wash. 2d 321, 326, 352 P.2d 814, 818 (1960) ("If illegality appears in evidence, the court will of its own motion deny relief ..."); *Sinnar v. Le Roy*, 44 Wash. 2d 728, 729–30, 270 P.2d 800, 801 (1954) ("The defendant cannot waive the defense if he wishes to do so.."); *Hendry v. Bird*, 135 Wash. 174, 179–80, 237 P. 317, 319, *aff'd*, 135 Wash. 174, 240 P. 565 (1925) (whether "a contract that is void under the statute . . . can be the foundation of a legal obligation arising out of nothing else" and **"may be raised at any time"**) (emphasis added);

*see also Chan v. Whatcom Opportunities Reg'l Ctr., Inc.*, 17 Wash. App. 2d 1043 (2021) ("[V]alidity cannot be given to an illegal contract through any principle of estoppel." (internal quotation marks omitted)).

7.  Federal cases recognize the same principle: "if the contract was illegal," "there can be no waiver," "even by the express stipulation of the parties" because the objection is "one which the court itself [i]s bound to raise in the interest of the due administration of justice." *Oscanyan*, 103 U.S. at 267-68; *see, e.g.*, *Kaiser*, 455 U.S. at 83-84 ("[A] federal court has a duty to determine whether a contract violates federal law before enforcing it. The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in federal statutes. Where the enforcement of private agreements would violate public policy, it is the obligation of courts to refrain from such exertions of judicial power."); *Cal. Pac. Bank v. Small Bus. Admin.*, 557 F.2d 218, 223 (9th Cir. 1977) ("The court has a duty *sua sponte* to raise the issue [of the illegality of a contract] in the interest of the administration of justice."); *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 447 (D.C. Cir. 1972) ("Invalidity of a contract offensive to public policy cannot be waived by the parties; it is a barrier which the court itself is bound to raise in the interests of the due administration of justice." ); *Sheffield Com. Corp. v. Clemente*, 792 F.2d 282, 286 (2d Cir. 1986) (similar); *Noonan v. Gilbert*, 68 F.2d 775, 776 (D.C. Cir. 1934) (similar); *In re MG Ref. & Mktg., Inc. Litig.*, No. 94 CIV. 2512 (SS), 1997 WL 23177, at *8 (S.D.N.Y. Jan. 22, 1997) ("It is not for the parties to an agreement to excuse the fact that their contract is illegal. Public policy dictates that the Court refrain from enforcing such agreements."); *I.U.B.A.C. Loc. Union No. 31 v. Anastasi Bros.*, 600 F. Supp. 92, 95 (S.D. Fla. 1984) ("[A] party cannot waive the defense of illegality of the contract.").

8.     Thus, like questions of subject matter jurisdiction, questions of contract illegality may be considered **at any stage** of the litigation and cannot be waived. Because enforcing the unlawful TOS would undermine public policy, as expressed through the ITSR, the Court is obligated to consider this issue even at a later stage in the litigation.

**II.    The TOS Are Illegal And Unenforceable.**

9.     Under both federal common law and Washington law, a contract that "is contrary to the terms and policy of an express legislative enactment is illegal and unenforc[a]ble." *Jordan v. Nationstar Mortg., LLC*, 185 Wash. 2d 876, 883, 374 P.3d 1195, 1199 (2016) (quoting *State v. Nw. Magnesite Co.*, 28 Wash. 2d 1, 26, 182 P.2d 643 (1947)); *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("[O]ur cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law."). Because the relevant legal provisions in the ITSR are federal, "federal law governs whether the transaction [here] was illegal." *Bassidji v. Goe*, 413 F.3d 928, 936 (9th Cir. 2005).[5]

10.    Bittrex's transactions with Mr. Ghader were illegal under the ITSR . As the United States explained in reaching a settlement agreement with Bittrex, "Bittrex operated 1,730 accounts that processed 116,421 virtual currency-related transactions totaling approximately $263,451,600.13 in apparent violation of multiple OFAC-administered sanctions programs." Department of the Treasury, *OFAC Settles with Bittrex, Inc. for $24,280,829.20 Related to Apparent Violations of Multiple Sanctions Programs* 1 (Oct. 11, 2022), https://ofac.treasury.gov/media/928746/download?inline. As relevant here, "Bittrex's compliance deficiencies resulted in . . . 94,634 apparent violations of the Iranian Transactions and Sanctions Regulations, 31 C.F.R. §560.204." *Id.* at 2.

---

[5] To the extent the Court finds the TOS are legal and enforceable, the issue of the enforceability of the "Limitations of Liability" set forth in the TOS remains before the Court.

11. Under the ITSR, "the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited." 31 C.F.R. § 560.204. No dispute exists Bittrex violated the ITSR by offering services to Mr. Ghader, an Iranian citizen and resident, to open an account and use its exchange to trade cryptocurrency. Letting Bittrex use the illegal TOS to avoid liability "would command conduct that assertedly renders the promise an illegal undertaking under the federal [laws]." *Kaiser*, 455 U.S. at 79. The ITSR prohibit "any transaction or dealing in or related to" "[g]oods, technology, or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran." 31 C.F.R. § 560.206. The ITSR also prohibit any transaction "that evades or avoids" the general prohibitions. *Id.* § 560.203.

12. Because the TOS violated federal law, the TOS are not legally enforceable, and Mr. Ghader should be permitted to argue that the deposits that he made on the Bittrex exchange from June, 10, 2017 through October 11, 2017, should be returned to him.[6]  Indeed, although "[c]ourts have reached divergent conclusions concerning which law (federal or state law) should be applied to determine enforceability in these circumstances," any disagreement is academic here because "[b]oth federal law and [Washington] law begin from the core proposition that" "courts will not order a party to a contract to perform an act that is in direct violation of a positive law directive, even if that party has agreed, for consideration, to perform that act." *Bassidji*, 413 F.3d at 936; *see Hendry v. Bird*, 135 Wash. 174, 179–80, 237 P. 317, 319, *aff'd*, 135 Wash. 174, 240 P. 565 (1925) ("We cannot conceive of such a thing as a contract that is void under the statute, and yet can be the foundation of a legal obligation arising out of nothing else."); *see also Kaiser*, 455 U.S. at 77; *Jordan*, 185 Wash. 2d at 883, 374 P.3d at 1199.

---

[6] As the evidence at the January hearings established, Mr. Ghader was no longer a resident of Iran as of January 1, 2019.  Therefore, the OFAC sanctions no longer applied to Mr. Ghader after that time.

13. Allowing Bittrex to use the illegal TOS as a shield – to avoid liability – "would command conduct that assertedly renders the promise an illegal undertaking under the federal [laws]." *Kaiser*, 455 U.S. at 79. Moreover, permitting Bittrex to invoke the illegal terms of service would give Bittrex the benefit of its illegal bargain and enable Bittrex to evade the legal restrictions on conducting business in Iran. In short, federal law "provides that [the agreement] is unenforceable," making it null and void. Restatement (Second) of Contracts § 178(1) (1981); *see Morelli v. Ehsan*, 110 Wash. 2d 555, 562, 756 P.2d 129, 132 (1988) (emphasizing "the general rule that illegal agreements are void, and courts will not enforce them").

### III. Federal and State Cases Have Ruled That A Contract Made In Violation Of The ITSR Is Null and Void As A Matter Of Law.

14. Federal and state courts have uniformly ruled that a contract made in violation of the ITSR is null and void. In *Bassidji v. Goe*, the Ninth Circuit held that a party could not enforce a contract made in violation of the ITSR in 31 C.F.R. part 560. The defendant was an American citizen who made financial guarantees that supported an aquaculture business in Iran. 413 F.3d at 930-32. The Iranian plaintiff spent $1,875,000 on the venture, but the defendant refused to honor the contractual guarantees and reimburse the plaintiff. *Id.* at 931. The plaintiff then filed a breach of contract claim, and the defendant moved to dismiss the complaint because that the guarantees were illegal under the ITSR. *Id.* The Ninth Circuit held that the financial guarantees constituted an illegal contract under the ITSR, and that these laws "bar an American court from ordering [the defendant] to pay" the illegal guarantees. *Id.* at 939; *see id.* (emphasizing that "the ensuing transaction would violate the Executive Order," whose terms now appear in the federal regulations). Likewise here, enforcing Bittrex's limitations of liability provision would propound an unlawful transaction in violation of federal law.

15. Another federal court reached the same conclusion in *Shanehsaz v. Johnson*, 259 F. Supp. 3d 894 (S.D. Ind. 2017). There, the plaintiff invested in a business in Iran in exchange for interest-bearing promissory notes from an Iranian citizen. *Id.* at 896-97. The plaintiff alleged that the defendant, an American citizen, stole the promissory notes, and he filed suit seeking to recover the notes. The defendant argued that she did not steal the notes, and even if the notes were stolen, the notes were null and void in violation of the ITSR. *Id.*

16. The *Shanehsaz Court* granted summary judgment in favor of the defendant and held the promissory notes were an illegal contract in violation of the ITSR, 31 C.F.R. part 560. *Id.* at 900-01. The court refused to order the return of the notes – much less enforce the terms of the notes – based on the longstanding rule that "an act done in disobedience to the law creates no right of action which a court of justice will enforce." *Id.* at 901 (quoting *Miller v. Ammon,* 145 U.S. 421, 427 (1892)). Even though the cause of action was "not an action on the contract," the court refused to allow the plaintiff to use the judicial process "to evade the prohibition on investing and achieve a return on his illegal investment," particularly since federal law "expressly prohibits any such attempt to evade or avoid the other prohibitions enumerated throughout part 560." *Id.* The court held that the plaintiff "may not invoke the power of the Court to obtain any recovery based upon an entitlement to the fruits of his illegal transaction because the recovery itself would further violate the law." *Id.* at 901-02. So too here, where allowing Bittrex to invoke and enforce part of the illegal transaction would violate federal law.

17. Like the financial guarantees in *Bassidji* and the promissory notes in *Shanehsaz,* the TOS are illegal and should be held null and void. In June of 2017, Bittrex approved and opened a trading account for Mr. Ghader; accepted approximately $1.3 million in digital currency from him through October 11, 2017; executed his requested trades on its exchange; and earned fees of

9

.5 percent of the value of the digital currency traded on each trade. Because Mr. Ghader was a resident of Iran during this relevant time period, all of these transactions violated the ITSR. In short, while Bittrex argues that Mr. Ghader is bound and limited by the TOS, it is undisputed that the TOS were illegal, and Bittrex was prohibited from entering into any terms of service with Mr. Ghader in the first place.

18. Other courts have likewise refused to enforce contracts prohibited by the ITSR. *See DMT S.A. v. Enercon Indus. Corp.*, No. 07-C-656, 2008 WL 1869031, at *4 n.3 (E.D. Wis. Apr. 24, 2008) ("Enforcement of the agreement between the parties on DMT's asserted theories would contradict the strong language of Executive Order 13059 and 31 C.F.R. § 560 et seq., barring transactions by U.S. entities involving, directly or indirectly, including via reexportation through a third country, goods, technologies, or services to Iran."); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 559, 13 Cal. Rptr. 3d 174, 194 (2004) (likewise rejecting a claim "based on an agreement that violates" the Iranian sanctions laws); *Nazariyan v. Rostami*, No. B311036, 2021 WL 5446950, at *4 (Cal. Ct. App. Nov. 22, 2021) (similar); *see also Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 243 (2d Cir. 1991) (prohibiting a party from "enforcing [several] agreements in a United States court because they are admittedly part and parcel of a larger plan to violate the United States trade embargo").

19. In short, federal law prohibited Bittrex from providing services to Mr. Ghader (31 C.F.R. § 560.206(a), and Bittrex should not be allowed to "enforce the illegal agreement itself." *Jackson Purchase Rural Elec. Co-op. Ass'n v. Loc. Union 816, Int'l Bhd. of Elec. Workers*, 646 F.2d 264, 267 (6th Cir. 1981). As the court reasoned in *Shanehsaz,* the "deterrent effect of part 560 would be magnificently dulled if [Bittrex], having engaged in transactions that run afoul of the [ITSR] regulations, could nonetheless turn to the courts as a conduit to" benefiting from its bargain.

*Id.* at 902; *accord Kashani*, 118 Cal. App. 4th at 558, 13 Cal. Rptr. 3d at 193 (holding that a contract made in violation of the ITSR was illegal and unenforceable because "effective deterrence of the [Iranian Transaction Regulations] will result from the refusal to enforce the agreement").[7]

### IV. Federal And State Cases Have Held That A Contract Made In Violation Of The ITSR Is Also Void As A Matter Of Public Policy.

20. The TOS also violate public policy. As noted above, the ITSR prohibit any "transaction or dealing" related to provision of services in Iran. *Kaiser*, 455 U.S. at 79; *see* 31 C.F.R. § 560.206(a). Even if there were a question about whether giving effect to a wholly unlawful agreement would violate federal law, any "interest in [the agreement's] enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." Restatement (Second) of Contracts § 178. In weighing general "public policy against enforcement of a term," courts consider "the strength of that policy as manifested by legislation or judicial decisions," "the likelihood that a refusal to enforce the term will further that policy," "the seriousness of any misconduct involved and the extent to which it was deliberate," and "the directness of the connection between that misconduct and the term." *Id.*; *see Bassidji*, 413 F.3d at 933 n.8 ("Federal common law follows the Restatement (Second) of Conflict of Laws, which also provides for a public policy exception to enforceability.").

21. Here, **all of these factors** support the unenforceability of the TOS. As explained above, federal law expresses a broad, strong prohibition on these types of service agreements in Iran. As the Fourth Circuit explained:

> The President issued [Executive Order 12959] "to deal with Iran's unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." Exec. Order No. 12959.

---

[7] According to the OFAC settlement, Bittrex allowed residents in sanctioned countries to trade more than $263 million in digital currency on its platform, and it earned fees from each of these trades. *See OFAC Settles*, *supra*, at 1. According to the Securities and Exchange Commission, Bittrex earned more than $1.2 billion in total trading fees from 2017-2022, while its CEO William Shihara earned $130 million during his tenure at Bittrex.

> The order is clothed with the most serious of purposes, and it is couched in the broadest of terms. It prohibits, with only limited exceptions, the exportation "of *any* goods, technology . . . or services," the reexportation "of *any* goods or technology," the entering into "*any* transaction . . . by a United States person relating to goods or services of Iranian origin," and "*any* new investment by a United States person in Iran." *Id.* (emphasis added). Moreover, it bars "*any* transaction . . . that evades or avoids" its restrictions. *Id.* (emphasis added). The obvious purpose of the order is to isolate Iran from trade with the United States.

*United States v. Ehsan*, 163 F.3d 855, 859 (4th Cir. 1998); *see Bassidji*, 413 F.3d at 931-32 (similar).

22. As other courts have held in cases involving violations of the Iranian sanctions, "[a]n agreement in violation of trade restrictions promulgated for national security reasons and therefore for the purposes of protecting the public should be unenforceable." *Kashani*, 118 Cal.App. 4th at 557, 13 Cal. Rptr. 3d at 193. That is because, given the serious policy involved, "[t]he penalty is not disproportionate to the severity of the offense, and any 'forfeiture' is not unfair." *Id.*

23. Enforcing Bittrex's unlawful terms of service in this case would undermine this important public policy and fail to provide effective deterrence. If this Court upheld the TOS as to Mr. Ghader, it would give an unscrupulous American company a perverse incentive to evade the ITSR and rely on a contract to limit the rights of customers in sanctioned countries, as Bittrex is attempting to do here. By contrast, if companies like Bittrex realize that they will receive no relief from the courts to enforce contracts in violation of the ITSR, such companies will be less likely to enter such illegal arrangements in the first place. Put another way, enforcing the TOS "would be inconsistent with the rationale for the doctrine of unenforceability of illegal contracts: 'Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place.'" *Kashani*, 118 Cal. App. 4th at 558, 13 Cal. Rptr. 3d at 194; *see Nazariyan*, 2021 WL 5446950, at *3 ("By refusing

to entertain the enforcement of illegal contracts [in violation of the ITSR and the IEEPA], courts maintain their integrity while at the same time deterring the formation of such contracts.").

24. Nor can Bittrex blame Mr. Ghader for opening an account. Bittrex conceded that it allowed Iranians to open accounts and trade on its platform from 2014 until late 2017. Thus, Bittrex "had no justified expectation that its agreement with [Mr. Ghader] was lawful, nor was it misled" by Mr. Ghader. *Jackson Purchase*, 646 F.2d at 268. When Mr. Ghader opened and then verified his account on Bittrex, he made no attempt to disguise his Iranian residency. Indeed, there was no need to do so because Bittrex openly allowed Iranian residents to join Bittrex. As OFAC noted in the settlement press release, OFAC fined Bittrex $24 million for 116,421 violations of multiple sanctions laws, including the ITSR. Bittrex allowed persons located in Iran, the Crimea region of Ukraine, Cuba, Sudan, and Syria from using its platform to engage in approximately $263 million worth of virtual currency-related transactions between March 2014 and December 2017. *See OFAC Settles*, supra, at 1-2.

25. Mr. Ghader followed Bittrex's instructions in opening his account. All he had to do was supply an email address and password. After opening the account, he began to trade on Bittrex's exchange. He subsequently voluntarily submitted to Bittrex's account verification process so that he could enjoy the benefits of a verified account - larger trades and withdrawals. Indeed, as established at trial, as part of the "verification process," Mr. Ghader provided Bittrex with his Iranian passport as proof of identity as well as his Iranian phone number. He also utilized an IP address from Iran as part of the verification process. While Mr. Ghader provided a mailing address in the United Arab Emirates (UAE) as part of the verification process, he did this so that he could receive mail from countries like the United States. (Commercial letter carriers, including FedEx and UPS, are prohibited under the ITSR from delivering mail in Iran but are allowed to

deliver mail in the UAE. *See* FedEx, *Reminder of Contract Terms* 1 (2020), http://tinyurl.com/mmc6d8m7.) At a minimum, Mr. Ghader is "no more at fault in entering into the transaction than" Bittrex.[8] *Kashani*, 118 Cal. App. 4th at 558, 13 Cal. Rptr. 3d at 193. Thus, equity requires rejection of Bittrex's effort to invoke its unlawful TOS to limit its own liability.

26. In conclusion, Bittrex's violations of federal law "are not mere technicalities with no consequence," but instead "are considered to be contrary to the security interests of the United States." *Id.*, 118 Cal. App. 4th at 559, 13 Cal. Rptr. 3d at 194.  More importantly, the enforceability of the illegal contract **can be raised at any time and cannot be not waived**, with the Court, as the trier of fact, examining the very issue that it has precluded by its Letter Ruling as part of its deliberations.

27. Mr. Ghader respectfully submits reconsideration of the Court's Letter Ruling – prohibiting Mr. Ghader from raising the void *ab initio* argument before the Court – is just and appropriate under Fed. R. Civ. P. 60(b)(1) for mistake (regarding the Court's ability to consider the enforceability of the TOS in the first instance) and Fed. R. Civ. P. 60(b)(6) for any other reason that justifies relief (including federal and state law that compels a finding that the TOS are void and unenforceable).[9]

---

[8] It should be noted that the ITSR prohibits U.S. citizens and companies, **but not Iranian residents**, from engaging in such transactions. As OFAC FAQ 11 *Who must comply with OFAC regulations?* explains: "U.S. persons must comply with OFAC regulations, including all U.S. citizens and permanent resident aliens regardless of where they are located, all persons and entities within the United States, all U.S. incorporated entities and their foreign branches. In the cases of certain programs, foreign subsidiaries owned or controlled by U.S. companies also must comply. Certain programs also require foreign persons in possession of U.S.-origin goods to comply." Therefore, while Bittrex violated the ITSR by providing services to Iranian residents, **Iranian residents did not violate the ITSR or any U.S. law by using these services**. Allowing Bittrex to benefit from a contract which was illegal for it enter, to the detriment of Mr. Ghader, who was not prohibited under the ITSR, would be an inequitable outcome.

[9] Mr. Ghader did not accept the 2018 Terms of Service, but even if he had, these TOS would also be void under the ITSR.

| | |
|---|---|
| Dated: February 9, 2024<br>Wilmington, Delaware | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Elazar A. Kosman*<br>Donald J. Detweiler (DE Bar No. 3087)<br>Elazar A. Kosman (DE Bar No. 7077)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile:  (302) 252-4330<br>Email: don.detweiler@wbd-us.com<br>         elazar.kosman@wbd-us.com<br><br>-and-<br><br>*/s/ M. Rhett DeHart*<br>M. Rhett DeHart (admitted *pro hac vice*)<br>WOMBLE BOND DICKINSON (US) LLP<br>5 Exchange Street<br>Charleston, South Carolina 29401<br>Telephone: (843) 722-3400<br>Facsimile: (843) 723-7398<br>Email: rhett.dehart@wbd-us.com<br><br><br>*Counsel to Azim Ghader* |

15