**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESOLATION HOLDINGS LLC, *et al.*, [1] | ) | Case No. 23-10597 (BLS) |
| | ) | |
| Wind Down Entity. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 824** |
| | ) | **Objections Due: February 19, 2024** |
| | ) | **(extended for respondent)** |
| | ) | **Hearing: February 28, 2024 at 10:00 a.m.** |

## OPPOSITION OF CLAIMANTS EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC TO PLAN ADMINISTRATOR'S OBJECTION TO PROOF OF CLAIM NO. C598-1167 AND CROSS-MOTION FOR ABSTENTION

Claimants EXCEL TITLE GROUP, LLC ("Excel"), JASON M. FORGEY ("Forgey"), and FORGEY LAW GROUP PLLC ("FLG") (collectively, "Claimants"), by and through their undersigned counsel, hereby submit this Opposition (the "Opposition") to the Plan Administrator's Objection to Proof of Claim No. C598-1167 (the "Claim Objection") (D.I. 824), and Cross-Motion for Abstention ("Cross-Motion), and respectfully state as follows:

### I.
### PRELIMINARY STATEMENT

1.    The Claimants in this matter are Excel Title Group, LLC ("Excel"), its title attorney Jason M. Forgey, Esq. ("Forgey") and Forgey Law Group, PLLC ("FLG").  On August 29, 2023, Claimants filed Proof of Claim No. C598-1167 (the "Claim") (a copy of which is attached hereto as **Exhibit A**) asserting an interest in $448,840.92 (the "Interpleaded Funds") that was seized by the United States Secret Service and subsequently interpled into the registry of the Clerk for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

United States District Court for the Eastern District of Texas, Case No. 4:22-cv-00626 (the "Interpleader Action").

2.    The Interpleader Action was filed at the direction of U.S. District Judge Amos L. Mazzant, III of the Eastern District of Texas (the "Texas Court"), who also presided over a forfeiture action concerning these same funds under Case No. 4:21-cv-00202 (the "Forfeiture Action"). Contrary to the representations in the Plan Administrator's Claim Objection, the Texas Court did not "grant" the government's motion to dismiss the Forfeiture Action and "order[] the government to file an interpleader action . . . ." Claim Objection at ¶7. Rather, Judge Mazzant first denied the government's motion to dismiss the Forfeiture Action due to the prejudice it would cause to Claimants, and then conditionally dismissed the Forfeiture Action subject to the commencement of the Interpleader Action so as to protect Claimants' rights. As is expressly stated in the relevant orders, copies of which are attached hereto as **Exhibit B**, the Texas Court (i) granted the motion to dismiss, in part, (ii) acknowledged that the forfeiture case "is not the right type of case for deciding two claimants' competing claims to an asset that the Government no longer seeks forfeiture of, and (iii) after "considering the posture of the case . . . agree[d] with the Government's alternative suggestion to conditionally dismiss this action subject to the Government's filing an interpleader action." *See,* Exhibit B at p.1.

3.    The Interpleader Action was the direct result of extensive remedial efforts undertaken by Claimants in response to a fraud and the theft of monies intended to payoff a mortgage loan at the closing of a real property sale in Texas. Copies of the various pleadings and supporting documents leading up to the Interpleader Action are attached to the Claim and incorporated herein by reference. True and correct copies of the Docket Sheets for the Forfeiture Action and the Interpleader Action are annexed hereto as **Exhibits C and D**, respectively.

4.      After Bittrex, Inc. and its affiliates (collectively, "Debtors") commenced their chapter 11 cases on May 8, 2023, the Interpleader Action was stayed pursuant to 11 U.S.C. § 362(a).

5.      The Claim was filed in this bankruptcy case by Claimants out of an abundance of caution so as to prevent an argument that Claimants' interest in the Interpleaded Funds is subject to any plan injunction or discharge entered in favor of Debtors.  The substantive law that will determine the Claim is that of the State of Texas and the subject property to which the Claim attaches is situated in a federal court in Texas.  All activities giving rise to the Claim occurred pre-petition, as did the seizure and interpleader of the funds within the Eastern District of Texas.

6.      The Claim concerns state law rights and property that will need to be resolved after discovery and trial.  The resolution of the Claim will not impact or delay the ability of Debtors to confirm a plan given that Debtors are now in the post-confirmation period.  Further, any potential recovery of the Interpleaded Funds will not have any impact on the Debtors' creditors given that Debtors project that all creditors will receive a 100% distribution on their claims.  *See* Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation for Desolation Holdings and its Debtor Affiliates (D.I. 391) ("Plan"); Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Desolation Holdings and its Debtor Affiliates and Exhibit A thereto (D.I. 517).  Accordingly, this Court should abstain from ruling on the Claim Objection, and instead, grant Claimants' cross Motion, and abstain in favor of the federal district court in Texas presiding over the Interpleader Action.

## II.
## STATEMENT OF CLAIM

### A.    FACTUAL BACKGROUND

7.      Forgey and FLG acted as a fee attorney and escrow agent for Excel in the closing of certain real estate transactions in Frisco, Texas.  Forgey was involved in the closing of a

commercial lending transaction entered into by Origin Bank as lender and NASK Investments, LLC (Jay R. Gajavelli) as Borrower. The funds wired by Origin Bank to pay off the loan being serviced by Hunt Mortgage Capital, LLC ("Hunt Mortgage") were criminally misdirected to a fraudulent bank account.

8. Prior to closing the NASK loan transaction, FLG was provided what appeared to be genuine, but were in fact fraudulent, wiring instructions for the payoff funds to Hunt Mortgage ("Payoff Funds"). FLG provided those wiring instructions to Excel. Excel's accounting department, having been provided the Payoff Funds by Origin Bank, and relying on the fraudulent wiring instructions, sent $1,237,792.41 from Excel's escrow account ("Escrow Account") at First United Bank to a fraudulent account at JP Morgan Chase Bank ("Chase Bank") owned by Thi Kim Chi Nguyen.

9. The Payoff Funds were wired to Chase Bank on September 1, 2020. On September 2, 2020, FLG learned that Hunt Mortgage had not received the funds. The investigation, which immediately ensued, revealed the wire confirmation showed that funds were sent to an account which was not owned by Hunt Mortgage.

10. FLG and Forgey took extensive actions to locate the misdirected funds with the assistance of Excel, First United Bank, Origin Bank, the Garland Texas Police Department, the Federal Bureau of Investigation, and the United States Secret Service. As a result of these immediate actions, Chase Bank returned available funds to the Escrow Account on September 22, 2020, in the amount of $797,817.92.

11. In conjunction with First United Bank's Fraud Department, it was discovered that funds totaling $448,480.92 had been previously wired from the fraudulent Chase Bank account to Pacific Mercantile Bank and deposited into an account owned by Prime Trust LLC.

12.    The United States Secret Service executed a wire warrant on Pacific Mercantile Bank for the account owned by Prime Trust LLC, and the account was frozen.  Funds totaling $448,480.92 were seized pursuant to a federal seizure warrant by the United States Secret Service from Pacific Mercantile Bank account x2525 ("PMB x2525") on September 23, 2020, at 949 South Coast Drive, Suite 105, Costa Mesa, California 92626.

13.    Pursuant to the Texas Insurance Code's statutory regulations governing the Excel Escrow Account at First United Bank, a shortage of monies from the Escrow Account shall be replaced within 45 days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable.  Tex. Ins. Code art. 9.39 (Audit Provisions).[2]  If the restitution of the shortage is not made, the Texas Department of Insurance considers the shortage a violation of Texas Insurance Code § 2651.202 and could subject Excel to violations, which include the cessation of its business.

14.    To that end, Excel, Forgey, and FLG replenished the Escrow Account within the 45-day deadline mandated by the Texas Department of Insurance by using their personal funds to refund the $448,840.92 deficit created by the fraudulent wire criminal activity.  Because Claimants were victims of a criminal wire fraud scheme, and due to the significant personal undertaking by Excel, Forgey, and FLG to protect and preserve the Escrow Account, Excel, Forgey, and FLG filed a claim for the recovery of $448,840.92 seized by the United States Secret Service.

15.    As discussed below, Claimants asserted the following claims to the Interpleaded Funds.

**CLAIM 1:    CONSTRUCTIVE TRUST**

---

[2]  Tex. Ins. Code art. 9.39 §4 (providing that escrow receivables are the responsibility of the escrow agent and constitute shortages in the account which are deemed to be violations of Article 9.39, and restitution of every shortage shall be made within 45 days from the closing date of the bank statement of the account which reflects the transaction creating the escrow receivable).

16563476/1

16.    First, Claimants assert that an equitable constructive trust should be placed over the Interpleaded Funds.  In the alternative, Claimants assert a cross-claim against Bittrex, Inc. seeking an equitable constructive trust over any cryptocurrencies remaining on its platform traceable to the underlying fraud.

17.    As detailed above, Claimants were defrauded, and the fraudster deposited $448,840.92 of this ill-gotten money into a Pacific Mercantile Bank account owned by Debtor Bittrex, Inc.

18.    Upon information and belief, Bittrex, Inc. obtained the funds through bad faith.  It either knew or should have known through reasonable diligence that the Interpleaded Funds were obtained through fraud.

19.    Claimants' claim to impose a constructive trust on the funds raises inherent questions of fact concerning the knowledge and activities of Bittrex, Inc. that will require discovery and a trial.

## CLAIM 2:    UNJUST ENRICHMENT

20.    Second, Claimants assert a claim to the Interpleaded Funds through unjust enrichment.  In the alternative, Claimants assert a cross-claim against Bittrex, Inc. for unjust enrichment seeking any cryptocurrencies remaining on its platform traceable to the underlying fraud.

21.    Again, Bittrex, Inc. either knew or should have known through reasonable diligence that the Interpleaded Funds were obtained through fraud.  Alternatively, Bittrex, Inc. passively obtained a benefit from these funds and it is unconscionable for Bittrex, Inc. to retain this benefit in light of (1) Bittrex, Inc.'s knowledge of the fraud and/or reckless lack of diligence in vetting the transactions on its digital platform, (2) Claimants' diligence in pursuing the fraudster, and (3)

Claimants' use of their own personal funds to make up the $448,840.92 deficit in their escrow account.

22.     As such, Bittrex, Inc. will be unjustly enriched if it is allowed to retain (1) the $448,840.92 in Interpleaded Funds, (2) any portion remaining of the funds, (3) profits obtained through transactions made with the funds, and/or (4) cryptocurrencies purchased with the funds.

23.     Claimants' claim for unjust enrichment also raises inherent questions of fact concerning the knowledge and activities of Bittrex, Inc. that will require discovery and a trial.

**CLAIM 3:     MONEY HAD AND RECEIVED**

24.     Third, Claimants assert an equitable claim to the Interpleaded Funds for money had and received, or in the alternative, for money had and received seeking any cryptocurrencies remaining on its platform traceable to the underlying fraud.

25.     Claimants exercised diligence in pursuing the defrauded money with the assistance of First United Bank, Origin Bank, the Garland Police Department, the Federal Bureau of Investigation, and the United States Secret Service.  As a result of these actions, Chase Bank returned the available funds to the Excel escrow account on September 22, 2020, in the amount of $797,817.92.  Only the $448,840.92 deposited with Bittrex, Inc. remains outstanding.  Claimants transferred an equivalent amount of their personal funds into the escrow account to make it whole again.

26.     By contrast, Bittrex, Inc. either knew or should have known through reasonable diligence that the $448,840.92 was obtained through fraud.  On or about September 3, 2022, Bittrex, Inc. was contacted by Prime Trust (the custodian for certain currencies including the $448,840.92 in this case) asking whether it would like to reverse the transfer of $448,840.92 to/from its bank account.  Bittrex, Inc. reportedly investigated it and determined it could not, or would not, reverse the transaction.  In other words, it either (1) accepted the money with knowledge

7

or reckless disregard it was obtained through fraud, or (2) it had insufficient procedural safeguards to detect or prevent illicit activity on its digital platform.

### CLAIM 4:    TEXAS UNIFORM FRAUDULENT TRANSFER ACT

27.    Fourth, Claimants assert a claim to the Interpleaded Funds under the Texas Uniform Fraudulent Transfer Act ("TUFTA").   Tex. Bus. & Com. Code § 24.005(a), 24.008.   In the alternative, Claimants assert a claim against Bittrex, Inc. under TUFTA seeking any cryptocurrencies remaining on its platform traceable to the underlying fraud.

28.    As detailed above, Claimants were defrauded, and the fraudster deposited $448,840.92 of this ill-gotten money into a Pacific Mercantile Bank account owned by Bittrex, Inc.

29.    The transfer of the $448,840.92 from Bittrex, Inc.'s accountholder to Bittrex was an intentional fraudulent conveyance as to Claimants under Tex. Bus. & Com. Code § 24.005(a). These transfers were made with actual intent to hinder, delay, or defraud Claimants.  Whether Bittrex, Inc. maintains a viable good faith transferee for value defense is subject to discovery and a trial.  As noted, Bittrex, Inc. either knew of or should have known through reasonable diligence that the $448,840.92 was obtained through fraud.

### III.
### ARGUMENT AND CROSS-MOTION FOR ABSTENTION

### A.    THIS COURT SHOULD ABSATIN IN
### FAVOR OF THE INTERPLEADER ACTION

30.    Pursuant To 28 U.S.C. § 1334(c)(1), a federal court is permitted to abstain from hearing a non-core bankruptcy matter concerning state law issues under certain circumstances. Twelve factors are considered by courts in the Third Circuit when deciding whether to abstain:

(1)  the effect or lack thereof on the efficient administration of the estate;

(2)  the extent to which state law issues predominate over bankruptcy issues;

8

(3)  the difficulty or unsettled nature of the applicable state law;

(4)  the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)  the jurisdictional basis, if any, other than 28 U.S.C. § 1334(c)(1);

(6)  the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)  the substance rather than form of an asserted "core" proceeding;

(8)  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)  the burden of the court's docket;

(10)  the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

(11)  the existence of a right to a jury trial; and

(12)  the presence in the proceeding of non-debtor parties.

*In re Integrated Health Servs., Inc.*, 291 B.R. 615, 619 (Bankr. D. Del. 2003); *see also*, *In re DBSI, Inc.*, 409 B.R. 729, 728-29 (Bankr. D. Del. 2009) (citing the same factors).

31.     Unlike mandatory abstention under 28 U.S.C. § 1334(c)(2), the evaluation of the above factors is not absolute: "Evaluating the[se] twelve factors is not a mathematical formula." *In re LaRoche Industries Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004).  As succinctly put by Judge Walsh of this Court, "[s]ome factors are more substantial than others, such as the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core under 28 U.S.C. § 157." *In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) (citing *In re LaRoche Indus.*, 312 B.R. at 255).  "Ultimately, the

decision as to whether to permissively abstain 'is left up to the broad discretion of the bankruptcy court.'" *In re DBSI,* 409 B.R. at 729 (Bankr. D. Del. 2009) (citations omitted).

32.     In the instant matter, the majority of the Integrated Health factors weigh in favor of this Court abstaining from hearing the Claim Objection in favor of the Interpleader Action currently pending in the Eastern District of Texas.

**1. The Resolution of the Interpleader Action in Texas Federal Court Will Have Minimal Impact on the Post-Confirmation Administration of the Debtors' Estates**

33.     The fact that the Plan Administrator's claim to the Interpleaded Funds at one time was property of the bankruptcy estate does not require this Court to retain jurisdiction over the Claim Objection.  This is so because every claim of a debtor is an asset of the estate and thus this alone is insufficient to warrant the retention of bankruptcy jurisdiction over a claim that is already pending in another jurisdiction.  *In re Integrated Health Servs., Inc.*, 291 B.R. at 619.  Further, any successful recovery of the Interpleader Funds by the Plan Administrator will not impact distributions under the Debtors' Plan that projects a 100% creditor recovery.  And, even if it did, it is insufficient to oppose abstention in light of the other factors weighing in favor of abstention. *Id*. at 620.

34.     Indeed, given that the Debtor and Plan Administrator never sought to remove the Interpleader Action to this Court under 28 U.S.C. § 1452, and then waited until post-confirmation to file the Claim Objection, is strongly indicative of the minimal impact that the outcome of the Interpleader Action will have on the administration of the Debtors' confirmed Plan, and it suggests that the Court either does not have, or should not, exercise jurisdiction over the dispute.  At this point, there simply is no "close nexus" to the bankruptcy case or plan administration that warrants this Court *not* abstaining.  *In re Resorts Intl.,* 372 F.3d at 154,167–170 (3d Cir. 2004) (finding the malpractice action being pursued there lacked a "close nexus" . . . "to the bankruptcy plan or proceeding and affect[ed] only matters collateral to the bankruptcy process," as "resolution of the[]

10

malpractice claims [would] not affect the estate" and would "have only incidental effect on the reorganized debtor").

In *Resorts*, the Third Circuit wrote:

> The malpractice action could result in an increase in the Litigation Trust's finite assets. But *the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus* sufficient to confer "related to" bankruptcy court jurisdiction post-confirmation.

372 F.3d at 170 (emphasis added).

### 2.   State Law Issues Predominate in the Interpleader Action

35.     As discussed above, all of the issues raised in the Interpleader Action are governed by Texas state law.  There are no federal or bankruptcy issues raised in the Interpleader Action by any of the parties thereto.

### 3.   Difficulty of Applicable State Law

36.     Although the respective causes of action asserted in the Interpleader Action may not necessarily be novel standing alone, the applicability of Texas state law to a fraudulent crypto currency transaction is a novel application of the law. Further, courts have ruled in favor of abstention where the presiding judge in the pending action is familiar with the parties and claims. *See Argus Grp. 1700 Inc. v. Steinman*, 206 B.R. 757, 766 (E.D. Pa. 1997).  Here, Judge Mazzant of the Eastern District of Texas initially denied a motion by the government to dismiss the Forfeiture Action outright due to the prejudice such would cause Claimants.  Thereafter, Judge Mazzant conditionally dismissed the Forfeiture Action subject to the commencement of the Interpleader Action so as to protect Claimants' interest in the seized funds.  Debtors did not file an objection to the government's request to interplead the funds.  Importantly, Judge Mazzant has a strong understanding of the claims giving rise to the Interpleader Action and the Texas state law that will decide those claims.

### 4.  Related Pending Proceeding

37.    There can be little doubt that the Claim Objection brought by the Plan Administrator is duplicative of the Interpleader Action pending in the Eastern District of Texas.  It involves the same issues and the same parties.  There are no unique bankruptcy grounds raised to disallow Claimants' claim to the Interpleaded Funds.  Rather, the Plan Administrator simply disputes the rights of Claimants to the Interpleaded Funds under Texas law.

### 5.  Independent Basis for Federal Jurisdiction

38.    There is no basis for jurisdiction over the Claim Objection asserted by the Plan Administrator other than 28 U.S.C. § 1334.

### 6.  Relation to the Main Bankruptcy Case

39.    While the Plan Administrator's claim to the Interpleaded Funds is related to these chapter 11 cases, the nexus is minimal given the post-confirmation status of the bankruptcy cases and the implementation of the Plan paying creditors 100%.  Indeed, in *In re Fruit of the Loom, Inc.,* 407 B.R. 593, in agreeing to abstain a matter, the Delaware Bankruptcy Court noted that, although the plaintiffs were "reorganized entities related to Debtors, are *former* debtors, '[m]erely having once been a debtor in a bankruptcy case is insufficient to require the bankruptcy court to continue to resolve all disputes involving that party.'"  407 B.R. 593, 601 (Bankr. D. Del. 2009), *quoting LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.),* 312 B.R. 249, 255 (Bankr. D. Del.2004) (emphasis added).

### 7.  The Substance Rather than the Form of an Asserted "Core" Proceeding

40.    While the form of the Plan Administrator's Claim Objection is technically a "core" matter under 28 U.S.C. § 157(b)(2)(B), the substance of the Interpleader Action which the Claim Objection seeks to resolve is itself a quintessential non-core, related to matter.  The Interpleader Action involves the Debtors' pre-petition conduct, Claimants, and others.  It involves solely state

16563476/1

law claims and issues, and it was commenced pre-petition in a non-bankruptcy forum and remains pending there. Further, Claimants' Proof of Claim expressly reserved the right to seek abstention in favor of the Interpleader Action. While the resolution of the Interpleader Action in favor of the Plan Administrator may or may not provide an economic benefit to the post-confirmation Debtors, that alone does not render the Interpleader Action a "core" proceeding.

**8.  Feasibility of Severing the State Law Claims**

41.     For the reasons discussed immediately above, there are no core bankruptcy matters that need to be severed from the Interpleader Action. Although the resolution of the Interpleader Action may or may not impact the financial aspects of the Debtors' confirmed Plan, that fact is insufficient to find that the Interpleader claims are core and unable to be severed from any other claims deemed core.

**9.  Burden on the Court's Docket**

42.     While the issues and claims raised by the Interpleader Action will require judicial resources to be expended regardless of which court hears the matter, Claimants note that it is Judge Mazzant who presided over the Forfeiture Action and who directed the Interpleader Action be filed in his court.

**10. Likelihood of Forum Shopping**

43.     As noted, Judge Mazzant denied the motion by the United States to dismiss the Forfeiture Action and instead directed the funds be interpleaded into court. Debtors did not file an objection to the interpleader of the funds in Texas. To the extent that the Plan Administrator's Claim Objection is seeking a short-cut around the Interpleader Action pending in the Eastern District of Texas, such actions could be viewed as forum shopping.

**11. Existence of the Right to a Jury Trial**

44.     No parties in the Interpleader Action have asserted a right to trial by jury.

16563476/1

**12. The Presence of Non-Debtor Parties in the Proceeding**

45.     Excel, Forgey, and FLG are all non-debtor parties who are situated in Texas.  While the Plan Administrator may be considered a successor to the Debtors, he is not a debtor but rather a post-confirmation administrator.

46.     In sum, bankruptcy courts have held that evaluating the 12 factors applicable to a request for permissive abstention is not a mathematical formula.  However, when the majority of factors weigh in favor of abstention, a court should abstain.  Abstention is particularly prudent when the factors favoring abstention are the more substantive ones.  In the present matter, the various abstention factors overwhelmingly support that this Court defer to Judge Mazzant of the Eastern District of Texas where the Interpleader Action is pending.

**IV.**
**PRAYER**

WHEREFORE, Claimants respectfully request that this Court enter an order denying the Claim Objection and providing for the following relief:

a.   Abstaining from hearing the issues raised by the Claim Objection in favor of the final resolution of those issues in the Interpleader Action;

b.   In the alternative, entering a pre-trial order and discovery schedule pursuant to Federal Rule of Bankruptcy Procedure 9014(c); and

c.   Any other relief to which Claimants may be entitled.

*(Remainder of page intentionally left blank)*

Dated:  February 19, 2024

Respectfully submitted,

**MORRIS JAMES LLP**

*/s/ Carl N. Kunz, III*
Carl N. Kunz, III (DE Bar No. 3201)
Jason S. Levin (DE Bar No. 6434)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail:  ckunz@morrisjames.com
E-mail:  jlevin@morrisjames.com

-and-

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
Mark G. Ledwin, Esq.
1133 Westchester Avenue
White Plains, New York 10604
Telephone:  (914) 872-7148
E-mail:  mark.ledwin@wilsonelser.com

*Counsel for Claimants Excel Title Group, LLC
Jason M. Forgey and Forgey Law Group, PLLC*

16563476/1