## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.,*[1] | Case No. 23-10597 (BLS) |
| Wind Down Entity. | (Jointly Administered) |
| | **Ref. Docket No. 1051** |

### PLAN ADMINISTRATOR'S OBJECTION TO CLAIMANTS EXCEL TITLE GROUP, LLC, JASON M. FORGEY, AND FORGEY LAW GROUP PLLC'S CROSS-MOTION FOR ABSTENTION

David Maria, as plan administrator (the "Plan Administrator") in the chapter 11 cases of the above-captioned debtors and each of their debtor affiliates (collectively, the "Debtors" or the "Wind Down Entity"), through undersigned counsel, hereby files this objection (the "Objection") to *Opposition of Claimants Excel Title Group, LLC, Jason M. Forgey, and Forgey Law Group, PLLC to Plan Administrator's Objection to Proof of Claim C598-1167 and Cross-motion for Abstention* [D.I. 1051] (the "Abstention Motion") filed by Excel Title Group, LLC ("Excel"), Jason M. Forgey ("Forgey"), and Forgey Law Group, PLLC, ("FLG," and, together with "Excel" and "Forgey," the "Claimants"), and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      As set forth in the Claim Objection,[2] this matter is about a claimant who had funds stolen from it by a third party, which then used those funds to buy cryptocurrency on the Bittrex exchange, withdrew the purchased cryptocurrencies, and ran off into the night before the Claimants

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle,  WA 98104.

[2]   All terms not defined herein have the meaning ascribed to them in the *Plan Administrator's Objection to Claim C598-1167 Filed by Forgey Law Group, PLLC, Jason M. Forgey, and Excel Title Group, LLC Pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007* (the "Claim Objection").

or the Debtors knew what was going on.  The United States put it best when it argued that BUS was entitled to the Seized Funds: "Much like when a drug dealer uses his ill-gotten proceeds to purchase a car from a legitimate car dealership, the government cannot seize the cash from the car dealership just because the car is long gone."  Reconsideration Motion at 6-7; *see also* Claim Objection ¶ 25.

2.      Critically, the Claimants do not dispute a single fact set out in the Claim Objection. Instead, they argue that the matter should be heard by the Eastern District of Texas.[3]   The Abstention Motion should be denied.

3.      Courts generally analyze a catalog of factors when determining whether or not to permissively abstain from hearing a particular proceeding under 28 U.S.C. § 1334(c)(1).  While abstention may be appropriate in some cases where a state court proceeding that only involves state-law issues is trial-ready, that is not the case here.  Claimants submitted a proof of claim, thereby initiating the claim objection process, which is one of the core features of the Bankruptcy Code.  Moreover, while Forgey's legal theories are styled as state law claims, they necessarily implicate not only bankruptcy issues, but this Court's confirmation order, which vested all property in the Wind Down Entity.  In other words, contrary to the Claimants' assertion, this Claim Objection implicates bankruptcy law (what is property of the estate) and the Court's own orders (the vesting provision in the confirmation order).  Courts will rarely abstain when the ultimate issue to be decided is whether funds should be recovered for the benefit of the estate's stakeholders.

---

[3]   The Claimants also argue that discovery is necessary, Abstention Motion ¶ 6, 19, 23, but do not identify: (i) what facts are in dispute; and (ii) what discovery, if any, they believe is necessary.  Moreover, Claimants did not seek any discovery in the Interpleader Action before the Petition Date, nor have they sought any discovery (formal or informal) following the filing of the Claim Objection on December 29, 2023.

31346415.2

4.      The remaining abstention factors strongly weigh against abstention.  These Chapter 11 Cases are in wind-down with numerous claim objections being administered in this Court.  The Court is intimately familiar with the Debtors and their business, and releasing this single objection for adjudication in a different court that has not yet had occasion to address the merits of the dispute is inefficient.  Relatedly, Claimants seek abstention to a different federal court (not a state court) and this Court is just as able to analyze state law claims as any other federal court.  And while the Seized Funds are interpleaded in the Eastern District of Texas, it is beyond dispute that this Court has jurisdiction to determine what is and what is not property of the estate, and therefore what is and what is not property of the Wind Down Entity.

5.      Permissive abstention of a claim objection occurs very rarely.  Here, the Forgey Claim touches on determinations of property of the bankruptcy estate, the interpretation of a confirmed plan, and a claim objection that needs to be resolved expeditiously to economically wind down the Wind Down Assets, close the case, and make distributions to all creditors.

## BACKGROUND

6.      The relevant facts, which Claimants do not dispute, are set out in the Claim Objection.  This section only addresses the procedural background of the Forfeiture and Interpleader Actions because a review of those dockets demonstrates that the Eastern District of Texas has not yet had a reason to examine the facts of these cases.

### I.      The Forfeiture Action

7.      On March 16, 2021, the United States filed the Forfeiture Complaint and the Forfeiture Affidavit with respect to the Seized Funds.  On June 21, 2021, the Claimants filed their Forfeiture Claim, asserting that they used their personal funds to make up the shortfall in the refinance transaction.  Forgey Forfeiture Claim ¶ 10.  The next day, BUS filed its Forfeiture Claim,

explaining that it owned the Seized Funds, and that because the accountholder had purchased and withdrawn cryptocurrencies, the government had seized funds *other* than the Claimed Funds.  BUS Forfeiture Claim ¶ 11.

8.      On June 22, 2022, the District Court dismissed the Forfeiture Action, on the condition that the United States of America file an interpleader action and deposit the Seized Funds following the filing of an interpleader action.  *United States of America v. $448,840.92 in United States Currency*, Case No. 4:21-CV00202, D.I. 24 (E.D. Tex.).[4]  The District Court did not dismiss the Forfeiture Action on the merits, nor did it address any underlying facts: it merely granted in part the United States' voluntary motion to dismiss on reconsideration, agreeing with the United States that the Forfeiture Action "is not the right type of case for deciding two claimants' competing claims to an asset that the Government no longer seeks forfeiture of," but "considering the posture of the case," the District Court agreed to the alternative sought by the United States to conditionally dismiss the Forfeiture Action, subject to the United States filing of an interpleader action.  *Id*. at 1.

## II.      The Interpleader Action

9.      On July 22, 2022, the United States filed the Interpleader Complaint.  *United States of America v. Bittrex, Inc. et al.*, Case No. 4:22-cv-626, D.I. 1 (E.D. Tex.).[5]  The United States then deposited the funds into the Court's registry.  Both BUS and Claimants filed answers to the Interpleader Complaint with claims to the Seized Funds.  *Id.*, D.I. 4, 5.  The court entered a scheduling order, D.I. 18, but has not yet entered any orders related to the underlying facts or the

---

[4]   A copy of the docket of the Forfeiture Action is attached to the Abstention Motion as Exhibit C.

[5]   A copy of the docket of the Interpleader Action is attached to the Abstention Motion as Exhibit D.

merits of the claims.  The Interpleader Action was stayed when BUS filed bankruptcy.  Since that

time, no discovery has taken place and all deadlines have been abated.

## OBJECTION TO ABSTENTION MOTION

### I.    THIS COURT SHOULD NOT ABSTAIN

10.    Claimants' arguments that this Court should abstain from ruling on the Forgey

Claim lack merit and should be rejected.

11.    As an initial matter, although Claimants argue that the Court should not retain

jurisdiction over the Claim Objection due to the fact that it is occurring after the Effective Date,

Abstention Motion ¶¶ 6, 33, where determination of what constitutes estate property is involved,

abstention is rarely appropriate.  *Affirmative Ins. Holdings*, *Inc.*, 565 B.R. 566, 584 (Bankr. D. Del.

2017) ("[S]ince determination of whether the disputed funds are property of the estate is intimately

tied to the Court's traditional functions, abstention is inappropriate.  Accordingly, in the exercise

of its discretion the court will not abstain."); *In re Taylor*, 444 B.R. 534, 537 (Bankr. W.D. Pa.

2011) ("The bankruptcy court's jurisdiction to determine what is property of the estate and whether

it should be recovered for the benefit of creditors is paramount.").

12.    That is the case here.  The ultimate question the Court must resolve is whether the

Claimants or the Wind Down Entity (via the Debtors) are entitled to the Seized Funds, and that

question is squarely within this Court's core jurisdiction.  Indeed, the Claimants seek to exercise

rights against property of the Debtors' bankruptcy estate pursuant to Bankruptcy Code section 541

and Bankruptcy Rule 7001(2).  This Court has "***exclusive jurisdiction***" over property of the estate

"***wherever located***."  28 U.S.C. § 1334(e)(1) (emphasis added).  And, property of the Debtors'

estate includes property "wherever located and ***by whomever held***."  11 U.S.C. § 541(a) (emphasis

added); *In re AE Liquidation, Inc.*, 435 B.R. 894, 904 (Bankr. D. Del. 2010) ("The Court agrees

31346415.2

with the Buyer that it has exclusive jurisdiction to determine whether or not the WIP Aircraft was property of the estate at the time of the sale."). Moreover, the Plan and Confirmation Order vested all of the Debtors' assets in the Wind Down Entity free and clear of any other interests. Plan, Art. I.A.116, IV.C.[6] The Claimants had notice of the Plan and did not object to the Plan. *See* D.I. 299, 374, 379, 392, 494, 504, 513. The Debtors' assets vested in the Wind Down Entity, and the effects of the Plan are binding on the Claimants.

13.     The Claimants appear to confuse the difference between reorganized debtors and a wind down entity, citing cases pointing out that emergence from bankruptcy "is insufficient to require the bankruptcy court to continue to resolve all disputes involving that party." *In re Fruit of the Loom, Inc*., 407 B.R. 593, 601 (Bankr. D. Del. 2009).[7] Here, the Debtors did not emerge from bankruptcy, and their Chapter 11 Cases are not closed. The Plan Administrator is empowered by the confirmed Plan to act on behalf of the Debtors after the Effective Date. Plan, Art. IV.D. And the Wind Down Entity will be dissolved after the distributions under the Plan are completed. Plan, Art. IV.C.9.

14.     Even putting aside the general principle that courts almost never abstain from determining what is property of the estate, the twelve factors cited by Claimants weigh *against*— not for—abstention. *See In re Integrated Health Servs., Inc*., 291 B.R. 615, 619 (Bankr. D. Del. 2003); *see also In re DBSI, Inc*., 409 B.R. 729, 728-29 (Bankr. D. Del. 2009).

- *First*, Claimants argue that abstaining "would not negatively affect the efficient administration of the Debtors' estate." Mot. ¶ 33. Determining what is property of the Debtors' bankruptcy estate and objections to claims to that property is

---

[6]  *See, e.g., Matter of Linn Energy, L.L.C*., 927 F.3d 862, 867 (5th Cir. 2019). The vesting clause of the Plan closely tracks Linn Energy's vesting clause, where the Fifth Circuit held for the debtors, finding that the vesting clause precluded a constructive trust claim from succeeding once the plan was confirmed.

[7]  *In re Fruit of the Loom* concerned an abstention motion in an adversary proceeding where the plan went effective *seven years earlier.*

central to the timely resolution of these Chapter 11 Cases. The fact that another federal court in Texas may also assert jurisdiction over the property does not negate this Court's own "exclusive jurisdiction" over all estate property "wherever located and by whomever held." 28 U.S.C. § 1334(e)(1).

- *Second* and *third*, the need to determine issues of state law is not a compelling factor in favor of abstention. This is particularly so when the proceeding is pending not in a state court but in another federal court that would simply apply state law to the controversy. This Court is not less able to apply Texas state law than another federal court that happens to be located in Texas. There is no magic to federal court's location in applying the law of another court system.

- *Fourth*, Claimants are incorrect that the Texas proceedings are an adequate substitute for this Court's resolution of the Forgey Claim. The Texas court does not have "exclusive in rem jurisdiction" over the property at issue. Rather, by virtue of 28 U.S.C. § 1334(e), this Court has exclusive jurisdiction over all estate property wherever located. The Court's exclusive jurisdiction includes the jurisdiction to determine what constitutes property of the estate. *See In re Hafen*, 616 B.R. 570, 578 (B.A.P. 10th Cir. 2020) ("The jurisdiction to determine what is property of the bankruptcy estate lies exclusively with the bankruptcy court.").

  Claimants fail to explain how a determination by a Texas court would resolve ownership over those assets or avoid duplicative litigation in this Court. In addition, the proceedings in this Court provide a greater opportunity for interested parties to participate and be aware of the status of the proceedings.

  Additionally, judicial economy does not weigh for abstention, because the progress of the case in the Texas court is nonexistent—the case was stayed upon the Debtors' Notice of Suggestion of Bankruptcy after filing of the parties' answers to the complaint of the United States and shortly after the Texas court entered initial scheduling order followed by granting the Debtors' motion for a protective order. *See* Mot. at Ex. D (copy of the Interpleader Action docket).

- *Fifth*, although it is true this Court's jurisdiction relies on 28 U.S.C. § 1334, Claimants ignore that the Claim Objection is not simply "related to" the Chapter 11 Cases, but represents a paradigmatically core proceeding under the Bankruptcy Code.

- *Sixth*, contrary to Claimants' assertion, a question of what is property of the estate is "inextricably intertwined with the administration of the estate"—indeed it is the determination of what comprises the estate being administered.[8]

---

[8]  Claimants erroneously rely on *In re Fruit of the Loom, Inc.*, 407 B.R. 593. But this line of cases is inapplicable, as it concerns jurisdiction of the bankruptcy court over "a non-debtor [and] reorganized entities related to [d]ebtors …."

- *Seventh*, Claimants assert that the Plan Administrator's Claim Objection is in "substance" not a "core" matter.[9]  That again is incorrect.  The fact that the determination may rest upon state or non-bankruptcy law is irrelevant.  *See Point Blank Sols.*, 449 B.R. at 449 ("That this dispute may involve the application of New York state law does not undermine the core finding.").[10]  Matters before bankruptcy courts typically require reference to applicable state law. *See Butner v. United States*, 440 U.S. 48, 52 (1979).

- *Eighth*, regarding feasibility of severing the state law claims, the Claimants' argument is unintelligible and speculates about severing the Interpleader claims from "any other claims deemed core," without elaborating.  But the state law issues are unable to be severed from the core claims, because they are intrinsic part of the core claims and the adjustment of the debtor-creditor relationship.

- *Ninth*, the determination of this core issue will not unduly burden the Court, which is already adjudicating other claim objections in these Chapter 11 Cases.  Moreover, this Court can best interpret and apply the effects of its Confirmation Order and the confirmed Plan with respect to the vesting and the free and clear provisions of the Plan that govern the Parties' rights.

- *Tenth*, the Claim Objection does not involve "forum shopping."  These cases are properly venued in Delaware, and there has been no challenge to the venue.  The determination of core matters within the Bankruptcy Court cannot possibly constitute forum shopping.  Indeed, these are the Claimants who attempt to forum shop by seeking to have these core matters determined by a Texas court with little to no familiarity with the Debtors or the Plan.

- *Eleventh*, the existence of a jury trial right is irrelevant.  Neither the Debtors nor Claimants are seeking a jury trial, and neither would have a right to a jury trial on core proceeding.  *See Katchen v. Landy*, 382 U.S. 323, 337 (1966).[11]  Claimants

---

*Id.*  Here, the Plan provides for a wind down, not emergence from bankruptcy, and upon the Effective Date assets of the estate of the Debtors vested not in reorganized debtors but in the Wind Down Entity. *See* Plan, Art. IV.

[9]  The Claimants state in their Abstention Motion: "While the form of the Plan Administrator's Claim Objection is technically a 'core' matter under 28 U.S.C. § 157(b)(2)(B), the substance of the Interpleader Action which the Claim Objection seeks to resolve is itself a quintessential non-core, related to matter." Mot. at ¶ 40.

[10]  *See also In re Crown Vill. Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009) ("[T]he presence of issues affected by state law does not alter the core nature of a proceeding."); *In re Reliance Grp. Holdings, Inc.*, 273 B.R. 374, 394–95 (Bankr. E.D. Pa. 2002) (proceeding to determine whether property is property of the estate under Bankruptcy Code § 541 is a core proceeding "arising in" a case under title 11, even if the determination rests upon interpretation of state law).

[11]  The Supreme Court elaborated in *Katchen v. Landy*:

> So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy

31346415.2

also have this factor backwards, because the absence of a jury trial right would be a reason *not* to abstain. *See In re Penson Worldwide*, 587 B.R. 6, 24 (Bankr. D. Del. 2018) (factor does not favor abstention when "[b]oth parties recognize that there is no right to a jury trial").

- *Twelfth*, Claimants have the last factor—presence of non-debtor parties—utterly confused. In virtually any controversy in a bankruptcy court one of the parties will be non-Debtors. The fact that the *Claimants* are non-debtor parties has no bearing on whether *other* non-debtor parties are involved. The Claimants also bizarrely allege that the *Plan Administrator* is a non-debtor party here, because "he is not a debtor but rather a post-confirmation administrator." Mot. at ¶ 45. This ignores the Court's Confirmation Order and the Plan appointing the Plan Administrator as a representative and administrator of the Wind Down Entity whose responsibilities include prosecuting causes of actions and objections to claims. Plan, Art. IV.C.3-4. Moreover, creditors and other parties who may be interested in the outcome of this litigation will be best served by having it proceed in this Court, which ensures full transparency and easy access to hearings and court records.

Because not a single factor supports abstention, the Court should not abstain from adjudicating the Claim Objection.

## **CONCLUSION**

For the reasons set forth herein, the Court should deny Claimants' Abstention Motion.

---

court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.

382 U.S. at 337 (citations omitted).

Dated: February 23, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*

Robert S. Brady (Delaware Bar No. 2847)
Kenneth J. Enos (Delaware Bar No. 4544)
Rebecca L. Lamb (Delaware Bar No. 7223)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: rlamb@ycst.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE PLAN ADMINISTRATOR**