```
1
                         UNITED STATES BANKRUPTCY COURT
2                             DISTRICT OF DELAWARE

3
     IN RE:                        .  Chapter 11
4                                  .  Case No. 23-10597 (BLS)
     DESOLATION HOLDINGS LLC,      .
5    et al.,                       .  (Jointly Administered)
                                   .
6                                  .  Courtroom No. 1
                                   .  824 Market Street
7        Wind Down Entity.         .  Wilmington, Delaware 19801
                                   .
8                                  .  Wednesday, February 28, 2024
     . . . . . . . . . . . . . . . .  11:00 a.m.
9
                            TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE BRENDAN L. SHANNON
                   UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Plan
13   Administrator:            Patricia Tomasco, Esquire
                               Joanna Caytas, Esquire
14                             QUINN EMANUEL URQUHART
                                 & SULLIVAN LLP
15                             51 Madison Avenue
                               22nd Floor
16                             New York, New York 10010

17

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Dana L. Moore, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1   <u>APPEARANCES (CONTINUED)</u>:

2   For Forgey Law Group,
    Jason M. Forgey, and
3   Excel Title Group:          Carl Kunz, III, Esquire
                                MORRIS JAMES LLP
4                               500 Delaware Avenue
                                Suite 1500
5                               Wilmington, Delaware 19801

6                               Mark Ledwin, Esquire
                                WILSON ELSER LLP
7                               1133 Westchester Avenue
                                White Plains, New York 10604
8
    Pro Se Litigant:           Rahwa Berhe
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                               INDEX

2   MOTIONS:                                                  PAGE

3   Agenda
    Item 6: Plan Administrator's Sixth Omnibus              4
4           (Substantive) Objection to Certain
            No Liability Claims [(Sealed) D.I.
5           813, (Redacted) D.I. 814, 12/29/23]

6           Court's Ruling:                                 8

7   Agenda
    Item 7: Plan Administrator's Seventh Omnibus            9
8           (Substantive) Objection to Certain
            No Liability Claims [(Sealed) D.I.
9           816, (Redacted) D.I. 817, 12/29/23]

10          Court's Ruling:                                 12

11  Agenda
    Item 8: Plan Administrator's Objection to Claim         12
12          C598-1167 Filed by Forgey Law Group,
            PLLC, Jason M. Forgey, and Excel Title
13          Group, LLC Pursuant to Section 502 of
            The Bankruptcy Code [(Sealed) D.I. 824,
14          (Redacted) D.I. 826, 12/29/23]

15          Court's Ruling:                                 36

16  Agenda
    Item 9: Plan Administrator's Objection to Claims        37
17          C598-994 and C598-995 Filed by Rahwa Berhe
            Pursuant to Section 502 of the Bankruptcy
18          Code and Bankruptcy Rule 3007 [(Sealed)
            D.I. 986, 1/29/24]
19
            Court's Ruling:                                 39
20

21  DECLARATION:                                            PAGE

22  1) David Maria                                          6

23

24

25

1          (Proceedings commenced at 11:02 a.m.)

2          MS. TOMASCO:  -- filed at Docket Number 1066.  I

3   don't think I need to read through the adjourned matter of

4   the resolved matters --

5          THE COURT:  No.

6          MS. TOMASCO:  That brings us all the way to page

7   4, matter 6 which is the first matter going forward.  I'm

8   pleased to announce that my associate, Joanna Caytas, is in

9   the Courtroom.  She's been presenting to the Court via Zoom

10  because she's had a leg injury.  The Court may not also know

11  that she is a converted tax lawyer and she thought that

12  bankruptcy was so exciting that she changed careers.

13         THE COURT:  That is hard to believe.  Well,

14  actually I can't argue with that.

15         MS. TOMASCO:  I'm surprised by it because, you

16  know, she has an LLM in tax.  So, anyway, this will be her

17  first live argument and so I hope the Court will be

18  welcoming.

19         THE COURT:  Of course.  Welcome.  Ms. Caytas,

20  welcome.

21         MS. CAYTAS:  Good morning, Your Honor.  Joanna

22  Caytas of Quinn Emmanuel on behalf of the plan administrator.

23  Your Honor, the first item on the agenda that we will be

24  addressing today is Item No. 6, which is the plan

25  administrator's sixth substantive omnibus objection to

1   certain non-liability claims.  The objection was filed on

2   Docket Numbers 813, (Sealed), and 814, (redacted).

3            In terms of background, the hearing on the sixth

4   administrator's claim objection was originally scheduled for

5   January 31st, 2024.  The plan administrator filed the

6   certification of counsel at D.I. 1001, and the Court entered,

7   on February 7th, an order sustaining the plan administrator's

8   omnibus claim objection with respect to the claims listed on

9   the revised schedule one to the order.  The order was entered

10  at D.I. 1005.

11           The hearing on the remaining two claims, the

12  claims of Jessica Morgan Meredith and Eugenia Woodland, has

13  been continued to today.  And as a householding matter, with

14  the Court's permission, I will be referring to the dockets of

15  the redacted versions of the pleadings --

16           THE COURT:  Okay.

17           MS. CAYTAS:  -- which is Docket Number 814 for the

18  omnibus claim objection.

19           THE COURT:  I have that.

20           MS. CAYTAS:  First, I'm move into evidence the

21  declaration of David Maria in support of the plan

22  administrators sixth omnibus substantive objection to certain

23  non-liability claims.

24

25

1    THE COURT:  Very good.  Is there any objection to

2 the admission of Mr. Maria's declaration as part of the

3 debtors case in chief for purposes of its claim objection?

4    (No verbal response)

5    THE COURT:  Very well.  Mr. Maria's declaration is

6 admitted.

7    (Maria declaration received into evidence)

8    THE COURT:  Is there any party that intends or

9 expects to cross-examine Mr. Maria regarding the contents of

10 his declaration?

11    (No verbal response)

12    THE COURT:  Very well.  Mr. Maria's declaration is

13 admitted without contradiction.

14    Before we go further, Ms. Caytas, I would ask -- I

15 note I am familiar with all the parties that are live in the

16 Courtroom.  I note that there are a number of parties that

17 are participating remotely.  I would ask -- the debtor is

18 moving forward with its objections to the claims of Ms.

19 Meredith and Ms. Woodland, and I would ask if either Ms.

20 Meredith or Ms. Woodland or anyone on their behalf is

21 participating remotely in this proceeding.

22    (No verbal response)

23    THE COURT:  Hearing no response, Ms. Caytas, you

24 may proceed.

25

1    MS. CAYTAS:  As a clarification, Your Honor, the

2 claimants name is Eugenia Woodard.  Her letter was entered

3 under Docket -- it was a handwritten letter.  It was entered

4 in the Docket under an incorrect name.

5    THE COURT:  I have it.

6    MS. CAYTAS:  Your Honor, by this claim objection,

7 the plan administrator requests disallowing and expunging the

8 no liability claims of Jessica Morgan Meredith and Eugenia

9 Woodard.  The claims were listed on schedule one to the

10 original proposed order filed at Docket 814-2 which contained

11 120 claims.  The plan administrator has revealed and analyzed

12 the claims of Jessica Morgan Meredith and Eugenia Woodard and

13 has determined reduced claims are set amounts that cannot be

14 reconciled with the debtors books and records and have been

15 asserted by claimants who do not have an active existing

16 account with the debtors.

17    According to the claims of Jessica Morgan Meredith

18 and Eugenia Woodard, assert claims that are not actual

19 liabilities of the debtors.  Support for this objection has

20 been provided in the declaration of David Maria, which has

21 been entered into evidence.  It was filed at Docket 814-3 at

22 Paragraph 6.  The plan administrator received the response of

23 Jessican Morgan Meredith filed at Docket 929.  The claim of

24 Ms. Meredith is C598-1264 which was listed in row 47 of

25 Schedule 1 to the proposed order.  The plan administrator did

1  reach out to Ms. Meredith but was unable to reach a

2  resolution of her response to the claim objection.

3          The plan administrator also received a response of

4  Ms. Eugenia Woodard filed at Docket 982.  Ms. Woodard's claim

5  is C598-140 listed in row 33 of Schedule 1 to the original

6  proposed order.  In spite of efforts, the plan administrator

7  was unable to resolve the response of Ms. Woodard's claim

8  objection.

9          And unless Your Honor has any questions, we

10 request that the Court sustain the objection and enter the

11 proposed revised order to be uploaded to the docket after the

12 hearing.

13          THE COURT:  Very good.  I have no questions.

14 Again, the Court would ask whether or not there is anyone

15 today participating on behalf of either Ms. Meredith or Ms.

16 Woodard.

17      (No verbal response)

18          THE COURT:  Very well.  The Court has the

19 testimony admitted into evidence today of Mr. Maria regarding

20 the debtors diligent efforts studying its books and records

21 after reviewing the response to the claims.  And the debtor,

22 again, asserts that its books and records reflect no

23 liability to the claimant.  Based upon the record before me

24 then, I am satisfied that the debtors have carried their

25

1  burden and I would be prepared to enter the order once it is

2  uploaded.

3          MS. CAYTAS:  Thank you, Your Honor.

4          The next item on the agenda is Item 7 which was

5  filed at Docket Number 816.  That's the sealed version.  And

6  817 as the redacted version which is the plan administrator's

7  seventh omnibus substantive objection to certain no liability

8  claims of accounts that have migrated to non-debtors.  Again,

9  I will be referring to the docket numbers of redacted

10  versions available in the public dockets; that's Item 817.

11          Similarly, regarding the background, the hearing

12  of the seventh omnibus claim objection was scheduled

13  originally for January 31st, 2024.  On February 5th, the plan

14  administrator filed the certification of counsel at D.I.

15  1002.  On February 7th, the Court entered an order sustaining

16  the plan administrator's seventh omnibus substantive

17  objection to certain no liability claims at D.I. 1006 with

18  respect to the claims listed on the revised Schedule 1 to the

19  order.

20          The hearing on the one remaining claim of Mari

21  Fujioka has been continued to today.  First, I move into

22  evidence the declaration of David Maria in support of the

23  plan administrators seventh substantive omnibus objection to

24  certain no liability claims.  That was filed as Exhibit B to

25

1  the objection at Docket 817-3.  And Mr. Maria is available on

2  Zoom for cross examination.

3          THE COURT:  All right.  I would ask if there's any

4  objection to the admission of Mr. Maria's declaration, again,

5  in support of the debtors request for the claim objection

6  pending.

7          (No verbal response)

8          THE COURT:  Very well.  Mr. Maria's declaration is

9  admitted.

10          (Maria declaration received into evidence)

11          THE COURT:  Is there any party that intends or

12  expects to cross-examine Mr. Maria regarding the contents of

13  this declaration?

14          (No verbal response)

15          THE COURT:  Mr. Maria's declaration and testimony

16  is submitted without contradiction.  You may proceed, Ms.

17  Caytas.

18          MS. CAYTAS:  Thank you, Your Honor.

19          Your Honor, by this claim objection, the plan

20  administrator seeks to disallow and expunge the claim of Mari

21  Fujioka which is a no liability claim migrated of an account

22  migrated to non-debtors.  Mari Fujioka's claim was listed on

23  Schedule 1 to the original proposed order filed at Docket

24  817-2 which is claim C599-3 listed in row 149 of the Schedule

25  1.  The plan administrator has reviewed and analyzed the

1   claim of Ms. Fujioka and has determined that the claim

2   asserts amounts that cannot be reconciled with the debtors

3   books and records and have been asserted by a claimant who

4   does not have an active existing account with the debtors.

5           The claimant migrated her account to non-debtor

6   Bittrex Global Inc. whose affiliates operate customer

7   accounts.  That's Bittrex Global GmbH Liechtenstein and

8   Bittrex Global Bermuda Ltd.  Accordingly, to the claim of

9   Mari Fujioka, asserts amounts that are not actual liabilities

10  of the debtors.  Support for this objection was provided in

11  the declaration of David Maria filed at Docket Number 817-3

12  at Paragraph 6 which has been admitted into evidence.

13          Your Honor, the plan administrator received an

14  informal response to the claim objection from Mari Fujioka.

15  The plan administrator contacted Mari Fujioka but was unable

16  to resolve their response.  And unless Your Honor has any

17  questions, we request that the Court sustain the objection

18  and enter the proposed revised order to be uploaded after the

19  hearing.

20          THE COURT:  Very good.  I have no questions.  I

21  would ask, again, if anyone wishes to be heard with respect

22  to the relief requested and specifically whether or not Ms.

23  Mari Fujioka who is identified on the agenda -- is Ms.

24  Fujioka present in the Courtroom or anyone today on her

25  behalf?

1     (No verbal response)

2     THE COURT:  Is Ms. Fujioka or anyone on her behalf

3  participating remotely in today's proceeding?

4     (No verbal response)

5     THE COURT:  Very well.  I am satisfied that the

6  plan administrator has carried his burden with respect to the

7  relief requested and so ruling the Court relies upon the

8  uncontroverted testimony of Mr. Maria and based upon that,

9  the objection to claims is sustained and the Court would

10  enter the order once it's uploaded.

11     MS. CAYTAS:  Thank you, Your Honor.  And I'll turn

12  the podium to Ms. Tomasco.

13     THE COURT:  Very good.

14     MS. TOMASCO:  Thank you, Your Honor.  Patty

15  Tomasco, again, on behalf of the plan administrator.  The

16  next two items are the plan administrator's objection to

17  claim number 598-1167 filed by the Forgey Law Group, Jason

18  Forgey and Excel Title Group which I call them collectively

19  Forgey.

20     The opposition that we received from the Forgey

21  Law Group contained a motion for abstention -- called a cross

22  motion for abstention which we filed a response.

23     THE COURT:  I saw it.

24     MS. TOMASCO:  It's on the agenda today for the

25  Court to hear argument on the motion for abstention.  And we

1 have exchanged with the Forgey Law Group, proposed scheduling

2 orders, in the event that the Court denies the abstention but

3 we won't put the cart before the horse.  Because the motion

4 for abstention is their motion, I would suggest that we let

5 them go first to which I will respond.

6 　　　　　THE COURT:  I think that I want to make sure I

7 understand my dance card.  So, the debtor objected to the

8 claim.  The claimant Forgey, et cetera, responded in

9 opposition to the claim objection but also said you should

10 abstain, Judge, and this should be work down in, I think, the

11 Eastern District of Texas.  That's being argued to me today.

12 The substance of the claim objection is not before me but

13 would be the subject of scheduling if it remains here.  If it

14 goes to Texas, it'll be an issue for a Texas court.

15 　　　　　MS. TOMASCO:  Correct, Your Honor.

16 　　　　　THE COURT:  Okay.

17 　　　　　MS. TOMASCO:  We thought that would be the most

18 efficient way to proceed.

19 　　　　　THE COURT:  I completely agree and I appreciate

20 council coordinating in advance to come up with a sensible

21 game plan today.

22 　　　　　MS. TOMASCO:  Thank you, Your Honor.

23 　　　　　THE COURT:  All right.  Mr. Kunz, good morning.

24 It's good to see you.

25

1          MR. KUNZ:  Good morning, Your Honor, and it's good

2   to see you as well.  Your Honor, for the record, Carl Kunz

3   from Morris James on behalf of, I think it's actually Forgey.

4   We tried to work this out ahead of time, but apparently, it's

5   Forgey Law Group, PLLC, Jason M. Forgey, and Excel Title

6   Group.

7          THE COURT:  Okay.

8          MR. KUNZ:  My co-counsel, Mark Ledwin, from Wilson

9   Elser is on the line also participating.

10          Your Honor, I will jump right into it.  Not to

11   belabor the point, but there is a plenary action pending in

12   the Eastern District of Texas.  That was a prepetition action

13   where the Forgey Group alleges that it was defrauded.

14          Your Honor, for purposes of what happened down in

15   Texas, I think, just the limited background, the United

16   States ceased approximately $448,000 worth of funds.  They

17   filed an action down there.  That action was not immediately

18   dismissed.  There was a motion for reconsideration and

19   ultimately, Judge Mazzant, of the Eastern District,

20   determined not to dismiss that action but to dismiss it

21   conditionally on the fact that the $448,000 would be

22   interplead into the Eastern District of Pennsylvania.  That

23   action --

24          THE COURT:  Eastern District of Texas.

25

1          MR. KUNZ:  I'm sorry, Eastern District of Texas.

2   My apologies.

3          THE COURT:  No worries.

4          MR. KUNZ:  The gist was, as I understand it, that

5   Judge Mazzant, at that point, was like I'm not going to

6   simply turn these funds over.  There are disputed issues that

7   need to be resolved and I'm going to resolve them here in my

8   court.  So, that matter remains pending.

9          Your Honor, the -- and that, in connection with

10  that action, the parties filed corporate disclosures.  Each

11  party filed corporate disclosures.  Each party filed initial

12  disclosures in the Eastern District of Pennsylvania -- and

13  I'm sorry, then the Court entered a scheduling order that

14  would've governed that and then the debtor filed and the

15  matter was stayed.

16          So, the interesting thing is when you look at the

17  initial disclosures, not a single witness is here.  The

18  Forgey's are located in Texas.  The parties are located in

19  Texas.  The one witness that both parties indicated would be

20  material to this action, I think, is no longer a debtor

21  employee, is located in Florida, Mr. Carter.  He's going to

22  have be subpoenaed to testify or whatever, but literally

23  nothing is happening here in Delaware with respect to these

24  issues.

25

1          Your Honor, as an aside, I also note that in

2    connection with the debtors bankruptcy, they appointed

3    ordinary course professionals of the defense counsel that was

4    handling the matter down in Texas.  I also note, just for

5    purposes of interest, that Ms. Tomasco and, I believe, Ms.

6    Caytas are also located in Houston.

7          So, we've got counsel arguing up here that it

8    should be handled up here, but everything is happening down

9    in Texas or should happen down in Texas.  The additional

10   reason is that issues of Texas law are applicable in that

11   case and, I think, having had Judge Mazzant indicate that he

12   would hear that matter, I think this matter is ripe for

13   abstention.

14         The -- with respect to what the debtors said about

15   this action in their disclosure statement and in their plan,

16   we have to recognize that the plan is 100 percent planned.

17   That's how it's been teed up.  So, any argument that

18   litigating this matter down in Texas will have some impact on

19   the administration of the estate, I think, is hogwash.  It's

20   just simply not the case.  The only benefit that will inure,

21   at least as far as we can figure from any recovery of these

22   funds, would be to the principles of the debtor because the

23   interests flowed through the plan.  So, the owners of the

24   debtor are the ones ultimately who would get any benefit from

25   the recovery of these funds.  So, this isn't even really a

1   dispute between the plan administrator and anybody else.

2   It's really a dispute down in Texas.

3          THE COURT:  Can I ask a question?

4          MR. KUNZ:  Sure.

5          THE COURT:  And it might be a better question

6   directed to Ms. Tomasco.  And if you want to defer, that's

7   fine.  It's going to sound like a softball to you, but I'm

8   not clear what interest Bittrex has in these funds.  And,

9   again, I've reviewed the papers.  I didn't do a flow chart

10  and probably I should have.  But somebody stole money through

11  a scam; $448,000 of that was used to purchase crypto.  The

12  purchase occurred and then the Crypto was sold and $448

13  thousand went out and was located in a bank and then was

14  frozen -- or ceased, right.

15         MR. KUNZ:  Generally speaking, I think that's

16  right.  But I believe the account -- I think Ms. Tomasco said

17  the account was in the debtors name.

18         MS. TOMASCO:  So, Bittrex has -- and this is

19  something I'm happy to elaborate on.  Bittrex has an account

20  with Prime Trust and it's called a custodial account.  It's

21  meant to process transactions for customers when they get

22  cash proceeds because proceeds go into that custodial account

23  at Prime Trust.  So, when the funds were seized -- this is

24  very important -- when the funds were seized, the bad actors,

25  Crypto, and funds were gone, off the platform, never -- what

1  they seized was other customers funds at Prime Trust that

2  Bittrex was holding for customers.

3          THE COURT:  Okay.

4          MS. TOMASCO:  So, there's no -- so, to paraphrase

5  Obi-Wan Kenobi, these are not the droids you're looking for.

6  These are not the funds they're looking for.

7          THE COURT:  That's no moon.  All right, I don't

8  want to let you hijack Mr. Kunz's comment.  I appreciate the

9  clarification.  I think I'll have you walk me through it a

10 little bit more clearly.

11          I saw the debtors' representation that this isn't

12 the money and I think I was sort of -- I misperceived how the

13 money was moving.  And I think that's important, but I think

14 it's something that you can make me smart on.  Go ahead.

15          MR. KUNZ:  Sure.  I am not going to be the one

16 that makes you smart on that, Your Honor.  I don't know

17 exactly how the funds --

18          THE COURT:  What I'd like you to do is explain to

19 me how crypto works.

20          MR. KUNZ:  I will definitely defer to Ms. Tomasco

21 on that.  But at its core, Your Honor, there is a plenary

22 proceeding that's pending.  There's been no removal of it.

23 There's been nothing else happening other than that that

24 money is sitting down there.  Now, the debtors argue that its

25 property of the estate.  It's hardly property of the estate

1   when it's in dispute in the hands of a federal court.  I

2   don't know that this court is going to exercise exclusive

3   jurisdiction over funds that were ordered deposited by a

4   United States Federal Court down in the Eastern District of

5   Texas.  That seems to not make any sense.

6           And, in the spirit of full disclosure, and I found

7   this, this morning; I sent it immediately to debtors counsel

8   -- or plan administrators counsel.  This is the Shell

9   Pipeline Corp. case, West Texas -- I'm sorry.  Let me start

10  again.  Shell Pipeline Corp. v. West Texas Marketing Group,

11  its 540 F.Supp 1155.  I shot it to them right before the

12  hearing because I'd literally just found it right before the

13  hearing.  I'm happy to hand the case up to Your Honor.

14          There, Your Honor, in short strokes, the Southern

15  District of Texas in Houston indicated that really the

16  Court's bankruptcy exclusive jurisdiction argument doesn't

17  make any sense when there's been no determination that this

18  property actually belongs to the debtor.  I think the

19  critical -- and it was in the context of an interpleader

20  action by the way.

21          So, we just believe that with no one being

22  affected, this estate, the administration of the estate not

23  being affected -- and let's remember the disclosure statement

24  that the debtors filed said, effectively, none of this

25  litigation that we're listing here will have any material

1  impact on our ability to pay creditors.  So, any argument

2  that it's going to affect the estate or do anything with

3  respect to this estate doesn't fly.  It seems to me that

4  under the circumstances, and I think we relayed this in our

5  reply, that Judge Fitzgerald had in the Tuner case, you know,

6  she made it critical that in that case there was no other

7  matter that was pending anywhere.  There was nothing to

8  transfer to.  There was nothing to abstain from because there

9  wasn't another action.  Here, we have an action.

10        We have parties that have entered appearances in

11 that action.  They have defense counsel in that action.  We

12 have counsel in that action.  Pleadings have been filed in

13 that action.  The Court entered a scheduling order that but

14 for the bankruptcy would have moved the matter forward.  It

15 doesn't make any sense, we believe, under the circumstances

16 set forth in 1334 with respect to permissive abstention this

17 seems to be exactly the kind of case that this Court should

18 not involve itself in.  It should go back, allow the parties

19 to litigate the case in Texas where they admit it will have

20 no benefit -- excuse me, it will have no impact on the

21 administration of this estate.

22        THE COURT:  Okay.  Before you cede the podium, I

23 know you mentioned that you have co-counsel participating.  I

24 would be happy to afford co-counsel an opportunity to add to

25

1  any comments or remarks so that Ms. Tomasco could respond to

2  everyone.

3        (No verbal response)

4          MR. KUNZ:  Mr. Ledwin.

5        (No verbal response)

6          THE COURT:  You need to unmute, sir.

7          MR. LEDWIN:  Yes, Your Honor.  Thank you for the

8  opportunity.  Mark Ledwin appearing as co-counsel for Jason

9  Forgey, Excel Title Group, and Forgey Law.

10         The only comment I will make, Your Honor, with

11 respect to the funds that have been interplead into the Texas

12 Court and who has the right to those funds is that those same

13 arguments were made to the Court in Texas in response to the

14 forfeiture action.  And the Judge down there said, well, I

15 can't rule 100 percent that these funds belong to either of

16 these two parties and therefore I'm directing that you

17 interplead the funds in my Court so that can be decided in an

18 adversarial process, you know, after discovery and trial.

19         There's no -- I'm not quite sure whose account

20 these funds were in, at what time, and how the fraudster

21 perpetrated his fraud, but I do know that the funds were

22 ceased as proceeds of that fraud and that ultimately directed

23 to be interpleaded to the court so that the parties could

24 determine who has rightful ownership of those funds.

25

1          And we would just ask that the court in Texas be

2    permitted to conclude the interpleader action.  There's no

3    argument that that Judge can't proceed with this matter

4    promptly, fully, and fairly.

5          THE COURT:  Okay.

6          MR. LEDWIN:  And, therefore, we would -- I'm going

7    to add to Mr. Kunz's argument that we seek abstention.  We

8    believe it's utterly appropriate here.

9          THE COURT:  Very good.  Thank you, Mr. Ledwin.

10   Ms. Tomasco.

11         MS. TOMASCO:  Thank you, Your Honor.

12         THE COURT:  I want you to start where you finished

13   a moment ago because I want to understand -- and if I did not

14   perceive it when I reviewed the materials for today's

15   hearing, and I really -- I was struggling to see what the

16   connection was and I would appreciate you kind of bringing

17   that into sharper relief for me because obviously that's a

18   matter of some significance.

19         MS. TOMASCO:  Correct, Your Honor.  So, here is

20   what happened: part of the proceeds of this illicit wire

21   transfer went to a Chase bank account and part of it went

22   into a Bittrex account where it was used to purchase

23   cryptocurrencies that were then transferred to some kind of

24   wallet, right.

25

1        When they went in -- when the funds went initially

2   into the Bittrex system that used Prime Trust, which as you

3   know is another debtor here in Delaware, it went into the

4   Prime Trust system which was meant to facilitate

5   cryptocurrency transactions and conversion of cryptocurrency

6   to fiat for customers.  Those accounts are in, what we call,

7   and you will hear about this more later when we are dealing

8   with Prime Trust, custodial account because it was associated

9   with a particular customer's transactions of converting

10  crypto to cash or cash to crypto.

11        So, in other words the fraudster, it's a

12  Vietnamese name, so I am just going to call it fraudster,

13  deposited proceeds from the wire transfer into a Bittrex

14  account, Bittrex used Prime Trust to hold those funds.  By

15  the time the federal government issued a seizure notice to

16  Prime Trust, hwihc at that time was using as its custodial

17  bank Pacific Mercantile Bank, by the time the feds issued

18  that seizure the funds had been used to purchase crypto for

19  that account and that crypto had been transferred probably to

20  a cold wallet, maybe to some other cryptocurrency exchange,

21  but all of that happened before the seizure happened.

22        So, when the seizure comes in, the seizure

23  actually attached to funds that were being held for other

24  Bittrex customers.  So, the feds then say we agree this is

25  like when, you know, a drug dealer goes and buys a car from a

1  legitimate car dealership.  You can say, well, yes, this is

2  proceeds of the fraud, but you can't go seize a different car

3  on that car lot just because that fraudster --

4           THE COURT:  Because the car drove off.

5           MS. TOMASCO:  -- the car drove off.  That is what

6  we are dealing with here.  All right, so that's the story.

7           The Judge didn't say, oh, you know, I don't

8  believe Bittrex's claim. The government believed Bittrex's

9  claim but the Judge said a forfeiture action is the wrong

10  vehicle to decide competing claims to property.  That is what

11  he said.  He didn't say anything about the merits of

12  Bittrex's claim.

13           So, in that case though they had a discovery

14  schedule that was a yearlong.  That is what they want, they

15  want to drag this out.  When we proposed to them a discovery

16  schedule that was somewhat more truncated that would get us

17  to trial in April or May they rebuffed us and said that is

18  not what the District Court ordered.

19           So, how is this related to the bankruptcy.  I

20  think Your Honor can probably make the connections already in

21  your head and that is that these fiat funds are designated

22  for a particular customer's accounts already. And you know

23  how we have dealt with the customers in the plan, they get

24  paid in full but because we have subordinated other claims.

25

1          We subordinated general unsecured creditors, which

2    those should get paid in full, but we have also subordinated

3    intercompany claims.  And to say that this is all going to go

4    back to the founders is a little bit glib. If you read the

5    plan, it was carefully constructed to make sure that we could

6    honor customer crypto accounts and pay them in full.  Its not

7    a certainty, it's based on projections.

8          So, if we look at that timeline about when the --

9    you know, the underlying conduct happened on August 28th of

10   2020.  The funds were seized on September 23rd of 2020 long

11   after the crypto had left the Bittrex system.  Finally, the

12   United States filed a forfeiture complaint and the District

13   Court dismissed it on June 22nd of 2022.  So, we are already

14   two years after, by the time the District Court gets this,

15   the fraudulent conduct.

16         Now we filed bankruptcy, we gave notice.  We filed

17   a suggestion of bankruptcy soon after we filed bankruptcy.

18   We filed a suggestion of bankruptcy in the Eastern District

19   of Texas.  The Forgey group filed their proof of claim.  What

20   makes that so momentous?  I mean I don't have to tell you,

21   but we have Katchen v. Landy, and (11:33:58), and all of the

22   things that make that a magical moment, but they filed a

23   proof of claim.  What they allege in their proof of claim

24   were a couple of amazing things, but it's a proof of claim.

25

1        So, why is this case very different then the case

2   he emailed to Mr. Enos this morning.  Well, a couple of

3   things. I have had Mr. Izakelian looking at, so I'm relying

4   on him to tell me all the great parts of this case.  But the

5   most important thing is that in the Shell case, I will call

6   it, first of all it was 1982 right after the bankruptcy code

7   was adopted. So, its relying on a lot of pre-code cases for

8   its conclusions.  But the most important thing is there was

9   never a proof of claim filed in that case.

10       Shell never filed a proof of claim, ECI never

11  filed a proof of claim.  In fact, the Court said ECI has

12  cited no authority and the Court's research has failed to

13  reveal any in which an interpleader action naming a debtor as

14  a claimant has been construed as the assertion of a claim

15  against the debtor or against his property.

16       So, this is a case we just got this morning,

17  haven't had a chance to shepardize it, haven't had a chance

18  to look at its forebearers, but let me tell you what the law

19  is today and that is this: we have three independent basis

20  that abstention cannot apply here.  Whether funds are

21  property of the estate the claimants have put an issue by

22  asserting a constructive trust against the funds.

23       Now, Your Honor is very familiar with how

24  constructive trusts are treated in bankruptcy, but the second

25  part of it is that constructive trusts would be contrary to

1  the language of the plan and the confirmation order that vets

2  property of the estate in the winddown entity free and clear

3  of all claims.  So, those two things mean that the Court is

4  going to interpret its confirmation order and the Court is

5  going to have to determine whether or not a constructive

6  trust can survive a Chapter 11 petition in the first place;

7  one that has not been perfected, one that has not been

8  determined by a State Court prepetition.  I think the answer

9  to that is a resounding no.

10          This is not a case that claimants confusingly cite

11  to numerous cases in which abstention applied where the post-

12  confirmation entity was seeking to add to the estate such as

13  Resorts International when they're filing a malpractice claim

14  against the accounting agency. This is the opposite. It is a

15  claim against the estate for part of the bankruptcy res that

16  the Court has ordered vest in the winddown entity free and

17  clear of claims.

18          So, those cases about abstention when the debtor

19  is asserting or the post-confirmation entity is asserting

20  claims outward have nothing to do with this case.  This is a

21  quintessentially core matter. It is a claim against the

22  bankruptcy estate.

23          So, I am going to talk about a case because I

24  argued it in front of the Fifth Circuit and that is the Linn

25  Energy case and you will find it fascinating.

1          THE COURT:  Let me guess, you won.

2          MS. TOMASCO:  I did.

3          THE COURT:  Okay.

4          MS. TOMASCO:  I was one for three, Your Honor, in

5  front of the Fifth Circuit.  So, I was proud of that one.

6          The Linn Energy case, in the Linn Energy case it

7  was a plan that has the exact same vesting procedures. I know

8  it's the same one because I copied that plan and I know its

9  progeny.  So, it's the same vesting provision in both the

10  confirmation order and in the plan. And in that case the

11  State of Oklahoma was asserting a constructive trust and said

12  that confirmation order didn't apply to them because it

13  wasn't property of the estate, so the bankruptcy court didn't

14  have jurisdiction over it.

15          In that case the Fifth Circuit roundly rejected

16  that provision citing the Supreme Court's decision in

17  Traveler's.  We cited Espinosa.  For whatever reason the

18  Firth Circuit didn't rely so much on Espinosa, but both of

19  those cases say, emphatically, that the confirmation of a

20  plan is res judicata as to all of the claims that could have

21  been litigated as part of confirmation.  This is one of those

22  things.  We said that the property vest in the plan

23  administrator free and clear of claims and that is exactly

24  what we meant.

25

1        That is the short version of my argument, Your

2   Honor.  We can go through each of the cases that we cite,

3   largely abstention is not appropriate.  It is the bankruptcy

4   court's province to determine what is and is not property of

5   the estate.  I think the story that applies here is that this

6   is property of the estate.  These are fiat funds that were

7   put into the Bittrex platform by other customers.  This is

8   not a bank account where Bittrex is using it to, you know,

9   pay bills.  These are fiat funds that were put into a

10  specific bank account at Prime Trust to facilitate

11  transactions for customers.

12        So, the cases we cite <u>Affirmative Insurance</u>

13  <u>Holdings</u>, <u>AE Liquidation</u>, <u>In Re Taylor</u>, those cases are

14  emphatic that this Court has jurisdiction and should be the

15  only Court that determines what is and is not property of the

16  estate.

17        Abstention almost never applies to a claim

18  objection.  In other words, by submitting your claim you

19  submitted to the equity jurisdiction of the bankruptcy court

20  and the adjustment of the debtor/creditor relationship is the

21  public right that is covered by the bankruptcy power in the

22  constitution. I know you know the cites, so I won't repeat it

23  for you.

24        This core jurisdiction regime doesn't change

25  merely because another federal court has a prepetition

1  interpleader complaint. I have, in response to the filed case

2  there is a similar case involving not oil, but livestock.

3  They're kind of similar. If you think about it they're

4  fungible and they tend to get stuck in feed lots and

5  pipelines when the debtor files bankruptcy, so there is a lot

6  of analogs there.

7         In this case, this is 2012 by Bankruptcy Judge

8  Basil Lorch where he said, essentially, you know, I am going

9  to remove the interpleader action from the Texas Court that

10 has it so that I can determine it.  Now, in that case also

11 there was not a proof of claim filed by the counterparty --

12        THE COURT:  But there were competing claims to the

13 asset --

14        MS. TOMASCO:  -- but there were competing claims

15 to it.

16        THE COURT:  -- from the debtor and from a

17 claimant.  And the Bankruptcy Court at that point exercised

18 its discretion to determine whether or not who owned what.

19        MS. TOMASCO:  Right. Now contrast -- and I can

20 hand this up if you would like, Your Honor, if you need to

21 read it. I seem to think that Judge Basil Lorch had a pretty

22 good reputation as, you know -- may I approach, Your Honor?

23        THE COURT:  Sure.

24        MS. TOMASCO:  But in this case the Bankruptcy

25 Court, you know, withdrew the reference or removed the action

1  from the Texas District Court and determined that only that

2  Court could determine title to that estate.

3          Now one other thing that is interesting about the

4  case that we just got this morning, the Shell case, is that

5  in that case the bankruptcy judge had removed the underlying

6  interpleader action but then remanded it back to the District

7  Court.  Two things are interesting about that. Both the

8  Bankruptcy Court and the District Court were in the same

9  district. So, they were just moving it between the fourth

10 floor and the eighth floor.

11         So, I think that is important to remember about

12 the case that we got this morning, the Shell case, and that

13 is that the notice of removal had already been remanded by

14 the Bankruptcy Court.  The Bankruptcy Court decided whatever

15 the nature of that dispute was it wasn't significant enough

16 that he needed to keep it. It didn't impact the bankruptcy

17 sufficiently in order for him to keep it.  That has not

18 happened here, but that is what happened in the Eastern

19 Livestock case which is 1159093 in the Southern District of

20 Indiana case.

21         THE COURT:  That's Judge Lorch's decision.

22         MS. TOMASCO:  Correct.

23         THE COURT:  Okay.

24         MS. TOMASCO:  Also indicating that the fact that

25 there is a prepetition interpleader of funds is no impediment

1  to it being property of the estate. Obviously, property of

2  the estate is wherever located and by whomever held.  There

3  are no exceptions for interpleaders and we couldn't find any

4  case that said specifically that.

5           We can go through the abstention factors, but I

6  will say that the efficient administration of this estate

7  because these are, essentially, funds that were held on the

8  account of various customers, the disposition of these funds

9  has been already foreclosed by the confirmation of the plan

10  vesting these funds in the plan administrator free and clear

11  from the constructive trust.

12          The pendency of the other action was in the

13  Eastern District of Texas.  It was pre-discovery.  The only

14  thing that had happened is that here was a scheduling order

15  that had been entered.  Obviously, this is very related to

16  this bankruptcy case because of the nature of Bittrex's

17  relationship with its customers.

18          I don't think its worth pounding on this, but this

19  is a core proceeding if I've ever seen one.  Its got core

20  proceeding on numerous grounds, not just because it's a claim

21  objection, but it also concerns the determination of what is

22  and what is not property of the estate.

23          There are no independent state law causes of

24  action other then what is in the proof of claim.  So, we know

25  from Butner v. United States that this Court interprets --

1          THE COURT:  Applies state law.

2          MS. TOMASCO:  -- claims, applies state law.  So,

3   the presence of state law claims is so what.  What we have

4   here is a proof of claim that asserts state law causes of

5   action that this Court can apply.

6          THE COURT:  This boils down almost entirely to a

7   question of how promptly or efficiently one Court or another

8   can get this done. It's not a question of access to a jury,

9   its not a question of access to a Court with adequate

10  resources or familiarity or jurisdiction to address this

11  issue.

12          I mean I get the core arguments, etc., and I think

13  the core arguments might even suggest that I lack authority

14  perhaps even to abstain, but maybe that is a step further.

15  That is primarily it. I mean when we circle your back your

16  comment at the outset was, we were concerned by a yearlong

17  discovery schedule, and we want to get this done, and this

18  has been sitting down there for a number of years.

19  Obviously, its been sitting since the bankruptcy filed

20  because of the stay. So, that is what it is.  That is the nub

21  of it, right?

22          MS. TOMASCO:  Well, I am going --

23          THE COURT:  There is no competing applicable law

24  or anything else?

25

1        MS. TOMASCO:  Yeah, because I -- number one, I

2   believe that, you know, whether or not there can be a

3   constructive trust claim at this point, whether or not, you

4   know, Bittrex's interactions with its customers and how it

5   processed those transactions those are things that the Court,

6   first of all, already knows, you know, in its core.  You

7   confirm the plan.  You heard a lot of testimony about how

8   Bittrex operated.

9        So, I think you are more efficient.  But I also

10  think that you have exclusive jurisdiction that you must

11  exercise. I don't want to go too far with that because I know

12  that even in the most core of core proceedings the Court can

13  abstain, but it's extremely rare and this just doesn't get

14  there. This Court is going to be able to interpret its own

15  confirmation order, to apply that confirmation order to the

16  claim objection, and to consider the fact that these funds

17  were put in this bank account at Prime Trust as a result of

18  its customers transacting on the platform.  All of those

19  things are within this Court's exclusive knowledge, if not

20  jurisdiction, Your Honor.

21       THE COURT:  I understand. Mr. Kunz, reply.

22       MR. KUNZ:  Thank you, Your Honor.  Very briefly.

23  First of all, I think if Your Honor looks at the proposed

24  scheduling order that was part of the docket issued its not a

25  year. Discovery is basically over in less then six months.

1    There is motions for summary judgment due a month after that.

2    There was a pretrial order scheduled.  At most, even taking

3    into account a pretrial order, it was nine months from

4    beginning to end.

5         The Court certainly, I think, could deal with it

6    efficiently to answer Your Honor's question. They also

7    already had two hearings on it. So, that Court is familiar

8    with the facts of these cases and what the issues are in the

9    case. The Court in Texas has the race and I think this is key

10   for abstention.

11        Let's not forget what the debtors said about these

12   litigations in their disclosure statement. With respect to

13   this one in particular, on page 27 of the disclosure

14   statement, the last line: "The interpleader action is pending

15   and Bittrex expects that these funds will be awarded and

16   returned to Bittrex at the conclusion of the matter."  That

17   wasn't I'm going to remove it. They haven't removed it yet.

18   They've had three years to remove that case to this Court –-

19   excuse me, remove that case to, I guess, maybe a Bankruptcy

20   Court in Texas and then up here.  They haven't done it.

21        They have counsel down there.  We have Texas

22   counsel here, I don't know why.  I mean I do know why, but I

23   also –- but from an efficiency standpoint they have defense

24   counsel who is an ordinary course professional of the estate

25   who can handle the litigation down there.  You have a Judge

1   who has expressed interest in handling the litigation down

2   there, is familiar with it, and I think can address the

3   issues. It seems to me from a practical standpoint I don't

4   know why this Court would want to get involved in it.

5            Thank you.

6            THE COURT:  All right. I am going to take it under

7   advisement and I will rule promptly.  A couple of things:

8            First, obviously, from the colloquy with counsel

9   on both sides there was a part of the steps of this

10  transaction that I didn't necessarily appreciate before we

11  started and I very much appreciate getting that clarified.

12           The other issues, I don't think, are in material

13  dispute. I do not expect to write an opinion on this.  There

14  is a mountain of case law on abstention, its 14 different

15  factors, and so I think I pretty clearly understand the bid

16  and the ask. I would expect to rule by letter on this and do

17  so promptly in order to keep the process moving forward.  But

18  I don't have any question about what is in front of me and

19  what each side is looking for and why.

20           So, I do intend to take it under advisement.

21  Again, I appreciate the parties coordination in advance to,

22  sort of, put first things first, allow us to address this

23  issue and, again, I promise to do so promptly in order to

24  allow the process to move forward whether here or Texas.

25           Are there any questions?

1          MS. TOMASCO:  No, Your Honor.

2          MR. KUNZ:  Thank you.

3          THE COURT:  Sure.  I think we have one more matter

4   on the agenda, correct?

5          MS. TOMASCO:  That is correct.  Your Honor, the

6   next time on the agenda is the plan administrator's objection

7   to the claims filed by Rahwa Berhe, Claims No. 598-994, and

8   598-995.  The informal story behind this is that Ms. Berhe

9   had been interacting with Matthew Dundon who had been

10  contacting us about scheduling and that sort of thing.

11  Recently Mr. Dundon advised me that he and the employment law

12  firm in New York had withdrawn from representing Ms. Berhe.

13         So, instead of going forward with the claim

14  objection in light of that news we decided to set it as a

15  scheduling conference to allow Ms. Berhe to either appear

16  with counsel or to say what she wants to do with her claim.

17         THE COURT:  All right.  According to my records

18  Ms. Berhe is participating today remotely.  Ms. Berhe, this

19  is Judge Shannon. Are you able to see and hear me?

20         MS. BERHE:  Yes, sir.

21         THE COURT:  Ms. Berhe, you have a claim that has

22  been filed against the estate and the debtor, the company has

23  objected to that claim which creates a contested legal

24  proceeding in front of me.  I trust you were able to hear Ms.

25  Tomasco and I would like -- today we are conducting,

1   essentially, a status conference to get a sense of where we

2   are going with this litigation and I would appreciate your

3   thoughts and any information you have with respect to your

4   claim and whether you are represented and how we should move

5   forward with this litigation. Okay.

6           MS. BERHE:  Okay.  So, I am appearing pro se today

7   and I would like to request an extension to respond to the

8   objection that I may have additional time to retain counsel.

9           THE COURT:  I don't think I have any issue with

10  that.  Ms. Tomasco had reported that your counsel has

11  withdrawn from representing you. So, are you looking for new

12  counsel?

13          MS. BERHE:  That is correct.

14          THE COURT:  Okay.  Ms. Tomasco, any thoughts on

15  that?

16          MS. TOMASCO:  Your Honor, the original response

17  deadline was February 12th and so there is nothing filed on

18  the docket that is in the nature of a response.  We would

19  suggest moving this to the next omnibus at the end of March

20  and that would make the response date, the new response date,

21  sometime in the middle of March.

22          THE COURT:  Here is what I think I would like to

23  do: rather then set a response date Ms. Berhe was represented

24  by counsel and has reported to the Court that she intends to

25  engage counsel.  I am hopeful that that will occur promptly,

1 but rather then set a deadline and risk that Ms. Berhe has

2 defaulted while she is looking for counsel or she doesn't get

3 a response in I think it would be better to set this for a

4 further status conference at our next scheduled hearing.

5         Ms. Berhe, I have a couple of observations that I

6 would share with you, but before we move forward could you

7 remind me what our next scheduled date is.

8         MS. TOMASCO:  March 20th.  Hold on.

9         THE COURT:  Sure.  I just don't want any

10 confusion.

11         MS. TOMASCO:  Yes, its March 20th at 11 a.m.

12         THE COURT:  All right.  Ms. Berhe, this is Judge

13 Shannon.  You have asked for an adjournment and I am going to

14 grant that.  I will adjourn without date your response

15 deadline.  We have another hearing scheduled for the 20th of

16 March at 11 a.m., and I would hope and expect that by that

17 hearing you will have counsel that will assist you or you

18 will have confirmed that you will be proceeding and

19 representing yourself in this dispute.

20         There will not be an objection or a response

21 deadline in advance of that hearing on the 20th.  Again, the

22 primary thing that I would like to hear and see on the 20th

23 would be that you have got counsel who is appearing for you,

24 with you, who will engage with counsel for the debtor and

25

1  work up a schedule by which we can get a response, etc., but

2  I think that is the most sensible way to proceed.

3           Again, I don't disagree with Ms. Tomasco, the

4  debtor is moving diligently through its claims administration

5  process and has expressed concerns in other proceedings about

6  the delay associated with this.  I don't have nay reservation

7  about granting your request for an adjournment, that is a

8  pretty typical request and I'm sure Ms. Tomasco was confident

9  that I would grant that if you asked it.

10          Again, I think what we will do is we will carry

11  this, we will have a further status conference in three

12  weeks' time on the 20th and it would be my hope and

13  expectation that you have been able to engage counsel to

14  assist you in connection with that.

15          Ms. Berhe, I would be happy to hear anything else

16  that you have to report this morning.

17          MS. BERHE:  Nothing else on my side. Those next

18  steps are clear and thank you for that.

19          THE COURT:  Okay.  The last thing, and this is

20  obvious, and you don't need me to give you advice, but when

21  you get counsel, obviously, they are going to need to circle

22  up with Ms. Tomasco and debtors' counsel in order to make

23  sure that everybody figures out what the schedule is and what

24  the gameplan is.

25

1        If there are issues or concerns, we can have a

2 discussion about that on the 20th, but, again, I do expect

3 that this matter will be up and running in the near term.

4 But for purposes of right now no action will be taken by the

5 Court and your response deadline is adjourned without date.

6 That is a matter we can revisit on the 20th, okay.

7        MS. BERHE:  Thank you, Your Honor.

8        THE COURT:  Ms. Berhe, do you have any questions

9 this morning?

10        MS. BERHE:  No, sir.

11        THE COURT:  Ms. Tomasco, do you have any questions

12 or anything to add?

13        MS. TOMASCO:  Nothing, Your Honor.  The next thing

14 on the agenda that was filed is the fee applications, which

15 apparently have been approved. So, we thank the Court.

16        THE COURT:  Happy to oblige. I did have -- they

17 were, obviously, submitted in accordance with our local rules

18 so I had an opportunity to review them in advance of today's

19 hearing and they have all, I believe, been entered.

20        I don't think we are at final fee applications

21 yet, are we?

22        MS. TOMASCO:  Those were final.

23        THE COURT:  Okay.  Right, I am looking at the

24 backside of the index.  So, that does dispose of that issue.

25 Are there any other matters before us today?

1          MS. TOMASCO:  That is it on the agenda, Your

2    Honor. If there is something then its news to me.

3          THE COURT:  All right.  With that then we will

4    adjourn. The Forgey matter is under advisement and I

5    appreciate everyone's time and attention today.  We stand in

6    recess.  Thank you, counsel.

7          (Proceedings concluded at 11:58 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2           We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                February 28, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                February 28, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25